

**MEDLIN &
HARGRAVE**
A PROFESSIONAL CORPORATION

JOSHUA A. ROSENTHAL
*jrosenthal@mhlawcorp.com*

April 25, 2008

*Via E-Filing and U.S. Mail*

Honorable Susan Illston
Unisted States District Court,
Northern District of California
450 Golden Gate Ave.
Courtroom 10, 19ᵗʰ Floor
San Francisco, CA 94102

      Re:    *Pacific Real Estate Man. Company, Inc. et al. v. CMG Mortgage, Inc. et al.*
              *U.S. District Court, Northern District of California*
              *Case No.: C07-3140 MEJ*

Dear Judge Illston:

      Defendant CMG Mortgage, Inc. ("CMG") is moving to compel compliance with an inspection demand propounded on James Bowman and Pacific Real Estate Management Co. (collectively "Plaintiffs"). This brief only addresses one response. CMG asked Plaintiffs to produce all loan files for loans <u>started</u> in the six month period immediately preceding Plaintiffs' termination on January 31, 2007. Plaintiffs responded to the inspection demand, without objection, by stating that any responsive documents had already been returned to CMG. Logically, as will be explained, CMG knew this could not be true. Accordingly, CMG then had to subpoena nine title companies and Plaintiffs' current employer to confirm that, in truth, there were actually many responsive documents in Plaintiffs' possession, custody and/or control, which were not produced. Not only have Plaintiffs misrepresented the facts in their response, Plaintiffs' misrepresentation caused CMG to expend significant time, and money, in an effort to obtain documents from third parties, all of which could have been, and should have been, provided by Plaintiffs.

      CMG first sought production of these documents in December of 2007. Due to Plaintiff's stonewalling, CMG spent the next four months attempting to secure the same information from third parties. Accordingly, CMG respectfully requests a decision on this matter as quickly as the Court's schedule permits. This motion is concurrently being filed with a motion for sanctions. The discovery cut off in this matter is June 18, 2008, and the trial is set for August 25, 2008. Due to plaintiff's counsel's previously scheduled vacation, and at his request, we have withheld initiating this process until now.

THE ORDWAY BUILDING | ONE KAISER PLAZA, SUITE 1305 | OAKLAND, CA 94612 | TEL (510) 832-2900 | FAX (510) 832-2945

**MEDLIN & HARGRAVE**
*A Professional Corporation*

Honroable Susan Illston
Re: *Pacific Real Estate Management Company, Inc. et al v. CMG Mortgage, Inc. et al.*
April 25, 2008
Page 2

**Demand At Issue**

On December 12, 2007, CMG served an inspection demand on Plaintiffs. The demand at issue sought:

> **Copies of all loan files started by any loan officer or employee
> at the VANCOUVER BRANCH or FEDERAL WAY
> BRANCH between September 1, 2006 and February 1, 2007.**

Plaintiff provided a response to this inspection demand on January 17, 2008 which stated:

> **Plaintiff is unable to comply because he has no documents in
> his possession, custody, or control responsive to this request.
> All such documents were shipped to Defendants by or before
> March 2007.**

**Facts**

A brief summary of this action and the relationship of the parties is as follows:

Plaintiff Jim Bowman ("Bowman") and his company, plaintiff Pacific Real Estate Management Co., Inc., ("PREMCO") sued CMG for an alleged failure to pay wages and for money allegedly due under contracts between the parties. Bowman was the branch manager for two CMG branch offices in Washington state. Bowman's company, PREMCO, had a contract with CMG whereby it provided services and facilities to CMG, in connection with the operations of the two branch offices.

Bowman, in his capacity as branch manager, was paid in two ways. First, he was paid based on his individual performance as a CMG loan officer. Thus, he was paid twice a month on the basis of how many loans he personally closed. Second, Bowman received the net profits of both branches, as part of a profit sharing plan. He received this money once a month, if there were, and to the extent there were, any net profits. The net profit/profit sharing calculation was based upon the actual profits of the branches and was calculated by determining gross revenue of the branches, offset by any and all expenses of the branches. PREMCO was paid separately, and directly, for the services it provided to CMG. All payments to PREMCO are considered an expense of the branches, for purposes of determining any net/profit sharing.

**MEDLIN & HARGRAVE**
*A Professional Corporation*

_____

Honroable Susan Illston
Re: *Pacific Real Estate Management Company, Inc. et al v. CMG Mortgage, Inc. et al.*
April 25, 2008
Page 3

Per the contracts at issue, CMG notified Plaintiffs of termination of the two branches in December of 2006. The termination was effective at the close of business on January 31, 2007. Pursuant to Bowman's employment agreement, any loan started prior to 5 p.m., on the day of termination, was to have been closed by CMG after termination, with all income derived therefrom belonging to CMG. (See Exhibit B, para. 20). Loans which are in process at the time of a loan agent's termination are commonly referred to in the industry as "pipeline" loans.

In December of 2006 and January of 2007, the entire loan process, from initial in-take to funding, was taking about 45 days, on average. At this same time Plaintiffs' branches had been closing, on average, about 30 loans per month, i.e., about 1 loan each day. Obviously in order to continuously close 1 loan every day, this necessarily means that, on average, the branches were also starting a new loan almost every day. These loans at various stages, in process, are the pipeline loans.

Because Bowman not having any reported pipeline loans at termination, CMG propounded the inspection demand at issue to obtain information about Bowman's loan production, i.e., to learn about the ultimate disposition of pipeline loans as to which CMG would clearly be owed money. The requested documents, if produced, would demonstrate when each loan was started, whether it was transferred to another broker, when it closed and how much money was earned on it. Plaintiffs' response was that all responsive documents had been returned to CMG. In other words, once again, Plaintiffs were contending that there were zero loans in process at termination. For this to be true it would mean that not one loan had been started in the 45 or so days immediately preceding termination, and at the same time, that every single loan in process had closed. This would truly be an incredible set of circumstances, entirely unique in the industry, and certainly unlike CMG's experiences with scores of branch offices throughout the country.

Since Plaintiffs refused to honor their discovery obligation, CMG had no choice but to select nine title companies which Plaintiffs had done business with in the past (CMG knew this information based on checks it had received from previous loans closed by Plaintiffs) and issued subpoenas seeking checks paid by those title companies to Bowman or PREMCO, as well as the corresponding closing statements for any such checks. This was an expensive shot in the dark, because there was no guarantee that these particular title companies had worked on any relevant transactions in February or March of 2007. Additionally, CMG was forced to subpoena records from Bowman's current employer.

Pursuant to its obligations per FRCP 45, CMG notified Plaintiffs before it served these subpoenas. Initially, Plaintiffs opposed the issuance of the subpoenas. As part of its meet and confer efforts, CMG sent Exhibit D to explain why the documents were important and why Plaintiffs'

**MEDLIN & HARGRAVE**
*A Professional Corporation*

---

Honroable Susan Illston
Re: *Pacific Real Estate Management Company, Inc. et al v. CMG Mortgage, Inc. et al.*
April 25, 2008
Page 4

objection was frivolous. Plaintiffs relented and withdrew their objection to the subpoenas. Ultimately, however, Plaintiffs' objection served to further delay matters.

CMG served the subpoenas and received relevant responses from two of the title companies. Specifically, CMG learned that, contrary to Plaintiffs' now demonstrably false assertion, in truth and in fact, at least two loans were closed by Bowman in February, 2007 and one in early March, 2007. Obviously, given an average turn around time of 45 days, loans closed in early March, but most certainly loans closed in February, had to have been started before January 31, 2007. CMG's suspicion that the discovery response provided by Plaintiffs was false and misleading was thus confirmed.

As indicated, CMG also subpoenaed this same information from Bowman's current employer, Sierra Pacific Mortgage. Sierra Pacific Mortgage first refused to comply with the subpoena at all, ostensibly because the subpoena set the location for compliance in Sacramento (as a convenience to the deponent). Sierra Pacific Mortgage refused to comply because it claimed the subpoena was not in technical compliance with FRCP. CMG disagreed, but in order to appease Sierra Pacific Mortgage, and to expedite compliance, CMG re-served the subpoena. (Exhibit E). In response, Sierra Pacific Mortgage provided only a summary of the dates loans were closed by Bowman and the amounts due to him. (Exhibit F). However, Sierra Pacific refused to provide the necessary documents in the loan files to substantiate the information and then served a lengthy objection refusing otherwise to comply with the subpoena at all. (Exhibit G). CMG will separately bring a motion to compel compliance with said subpoena. It is worth noting, however, that Sierra Pacific Mortgage acknowledges the existence of 29 responsive files, of which in excess of 15 were closed within 45 days of February 1, 2007, (thus, almost certainly CMG pipeline loans).

Now that the truth is out, Plaintiffs and Sierra Pacific Mortgage have redoubled their efforts to stonewall and block production of these obviously very incriminating documents. Of course, Plaintiffs have had to shift positions. Now, Plaintiffs admit that they are in fact in possession of responsive documents, but refuse to produce them on two new grounds. First, Plaintiffs purport to be protecting the privacy rights of third parties, the borrowers. (Exhibit H see meet and confer section). However, Plaintiffs never before objected on that ground and thus, do not have the right to raise the objection at this late date. Moreover, pursuant to the contract between CMG and Bowman, these loan files belong to CMG, contain CMG's trade secrets and are themselves CMG's property. Thus, this is not third party private information to which CMG is not entitled. But for Plaintiffs' wrongful conduct, these files would still be in CMG's possession and CMG would have realized the income earned on them.

**MEDLIN & HARGRAVE**
*A Professional Corporation*

_____

Honroable Susan Illston
Re: *Pacific Real Estate Management Company, Inc. et al v. CMG Mortgage, Inc. et al.*
April 25, 2008
Page 5

As a fallback, Plaintiffs attempt to explain away their clearly false and misleading response to the subject inspection demand by a bit of sophistry as to the term "loan files." Plaintiffs contend that the term "loan files" has a specific and esoteric meaning, which does not include the documents in the actual loan files. This argument is disingenuous in the extreme. Plaintiffs now admit they are in possession of the individual documents (likely in electronic format) that would constitute responsive documents (i.e., loan applications, good faith estimates, closing statements). However, what Plaintiffs are essentially saying is, "I don't have the physical file with the manilla folder, therefore I don't have to provide the documents that were in the loan file."

There is no law to argue in this brief. Plaintiffs provided a response to discovery that was not true. Defendants had to make significant efforts, at great expense in both time and money, to demonstrate the falsity of Plaintiffs' response. Now that it has been demonstrated discovery that Plaintiffs' statement is not true, Plaintiffs are still attempting to avoid complying with their obligations by untimely objections and disingenuous arguments. CMG respectfully requests that Plaintiffs be ordered to provide documents responsive to CMG's inspection demand by producing all such loan files in their possession, custody and/or control, forthwith.

**Meet & Confer Efforts**

In compliance with its meet and confer obligations, once CMG had proof that the discovery response at issue provided by Plaintiffs was inaccurate and false, CMG sent a meet and confer letter on April 3, 2008. Plaintiffs responded to the meet and confer letter on April 10, 2008. (Exhibit I). I personally called counsel for Plaintiffs on or about April 10, 2008 to discuss his response to the meet and confer letter. The conclusion I reached was that he would not voluntarily be producing the documents. His subsequent letter confirmed that fact.

Sincerely,

Joshua A. Rosenthal

JAR:xt
court.03.jar.wpd
cc:    Client
       Angela Xavier