**DECLARATION OF JOSHUA A. ROSENTHAL**

I, Joshua A. Rosenthal, declare:

1. I am an attorney at law duly licensed to practice before this court all courts of this state and an attorney with Medlin & Hargrave, a P.C.

2. Attached hereto as Exhibit A is a true and correct copy of one of the Branch Management & Employment Agreements between CMG and plaintiffs.

3. Attached hereto as Exhibit B is a true and correct copy of the request for production of documents propounded by CMG on December 12, 2008.

4. Attached hereto as Exhibit C is a true and correct copy of the response to the production of documents served by plaintiffs on January 17, 2008.

5. Attached hereto as Exhibit D is a true and correct copy of a letter I sent to plaintiffs' counsel on February 26, 2008.

6. Attached hereto as Exhibit E is a true and correct copy of a the subpoena served on Sierra Pacific Mortgage on April 3, 2008.

7. Attached hereto as Exhibit F is a true and correct copy of a document provided to me by Sierra Pacific Mortgage on April 2, 2008. Sierra Pacific Mortgage's counsel Tony Eaton told me that this was a document that indicated the loans closed by Bowman's office and an indication of the dates he was paid commissions.

8. Attached hereto as Exhibit G is a true and correct copy of the objection to the subpoena served by Sierra Pacific Mortgage, Inc.

9. Attached hereto as Exhibit H is a true and correct copy of the meet and confer letter I sent on April 3, 2008 to plaintiffs's counsel regarding plaintiffs' deficient response to plaintiffs' inspection demand.

10. Attached hereto as Exhibit I is a true and correct copy of the plaintiffs' April 10, 2008 response to Exhibit H.

11. On or about April 11, 2008, I talked with plaintiffs' counsel Alan Cohen regarding whether he would be providing the requested documents and he told me he would not, in part, because Sierra Pacific Mortgage told him not to.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and if sworn as a witness, I could and would testify competently thereto.

Executed at Oakland, California, on April 25, 2008.

Joshua A. Rosenthal

# EXHIBIT A

#455

# BRANCH MANAGEMENT AND EMPLOYMENT AGREEMENT

This Branch Management and Employment Agreement (hereinafter referred to as "Agreement") is entered into as of the Effective Date, as that term is defined herein, by and between CMG Mortgage, Inc., a California corporation doing business as Pacific Guarantee Mortgage (hereinafter referred to as "PGM"), and Jim Bowman (hereinafter referred to as "Branch Manager").

## RECITALS

WHEREAS PGM and Branch Manager desire to reduce to writing their understanding and agreement pursuant to which Branch Manager will assist PGM in the management, administration and supervision of activities of its staff and employees, and the activities of all unlicensed assistants and support personnel, at PGM's branch office located at 2505 South 320th Street, Suite 260 Federal Way, WA 98003 ("Branch Office"); and,

WHEREAS PGM and Branch Manager also desire to reduce to writing the terms and conditions of Branch Manager's employment with PGM;

In consideration of the covenants, agreements and representations contained herein, PGM and Branch Manager agree as follows:

1. **PGM.** PGM represents that PGM is duly licensed by all applicable governmental authorities and is doing business as a mortgage broker under the name Pacific Guarantee Mortgage. Concurrently with the execution of this Agreement, PGM will obtain the necessary branch license for the Branch Office.

2. **Employment at Will.** PGM employs Branch Manager and Branch Manager accepts employment with PGM as branch manager of PGM's Branch Office. Either PGM or Branch Manager may terminate this Agreement in accordance with the provisions of paragraph 19 herein, or with or without cause, at any time on thirty (30) days notice to the other pursuant to the notice provisions of paragraph 12 herein. The rights and duties set forth in this paragraph may not be modified in any way except pursuant to the terms of paragraph 21 (e) herein.

3. **Licensed Status.** Branch Manager represents that he/she holds all such licenses as required by state and/or federal law to conduct mortgage brokerage activity at PGM's Branch Office, and that he/she has a minimum of three (3) years of full time experience in mortgage brokerage activity gained during the immediately preceding five (5) year period. Branch Manager further represents that while this Agreement is in effect he/she will maintain in good standing each and every such license.

4. **Devotion to PGM's Business.** During the term of this Agreement, all of Branch Manager's time and attention dedicated to mortgage loan brokerage and/or origination, shall be devoted solely to the business of PGM at the Branch Office. During the term of this Agreement, Branch Manager shall not engage in any other business duties or pursuits whatsoever, or directly or indirectly render any services of a business, commercial or professional nature to any other person or organization, whether for compensation or otherwise, without the prior written consent

of PGM. During the term of this Agreement, Branch Manager shall not, directly or indirectly, either as an employee, employer, consultant, agent, principal partner, stockholder, corporate officer, director, or in any other individual or representative capacity, engage or participate in any business that is in competition in any manner whatsoever with the business of PGM

5. **Duties of Branch Manager.** Branch Manager shall do and perform all services, acts, or things necessary or advisable to fulfill his/her duties as such, subject to the direction of PGM and to the policies established by it. Pursuant thereto, PGM and Branch Manager intend for Branch Manager to assist PGM in administering reasonable supervision over the activities of all licensed activity at Branch Office, and over the activities of unlicensed assistants and support personnel, assigned to PGM's Branch Office. "Reasonable supervision" includes, as appropriate, the establishment of policies, rules, procedures and systems to review, oversee, inspect and manage:

a) transactions requiring a license;

b) documents which may have a material effect upon the rights or obligations of a party to every such transaction;

c) filing, storage and maintenance of all documents created in connection with every such transaction;

d) the handling of trust funds, (Branch Manager agrees not to establish or use a trust account unless approved by PGM, in advance, and in writing);

e) advertising of any service for which a license is required, (Branch Manager agrees that all advertising material must be approved by PGM, in advance, and in writing);

f) familiarizing licensed employees, and unlicensed assistants and support personnel, with the requirements of federal and state laws relating to the prohibition of discrimination;

g) familiarizing licensed employees with the requirements of federal and state laws relating to disclosures to be given in connection with mortgage loan transactions;

h) regular and consistent reports of licensed activities of all employees;

i) ensuring that in every transaction Branch Manager, and every employee associate involved in each such transaction, honors all affirmative obligations owed to each client, as required by federal law, state law and/or ethical practices, including but not limited to: the duty of utmost *care, integrity, honesty and loyalty*; the duty to disclose all material loan terms or any other material facts that may affect the decision to borrow and to encumber real property; the duty to maintain *confidentiality*, except to the extent that information must be disclosed to a potential lender in order to permit the lender to make an informed and considered

decision to extend credit; and the duty to recommend a *competitive* loan product in the right class of loans (e.g., "A", "A-", "B", "C", etc.) when considering the borrower's income and credit history, financial standing and net worth (including the capacity to repay the loan), personal and financial needs, the loan terms requested at the time of application, the type and location of the proposed real property security, the purpose for obtaining the loan, and any time limits the borrower has imposed to receive the loan in question;

j)   assist in ensuring that all independent contractors serving the Branch Office are properly licensed by any applicable state licensing authority and in good standing throughout the duration of their employment (including such things as timely payment of annual licensing fees and assessments and compliance with continuing education requirements);

k)   assist in ensuring that Branch Office and its employees function in compliance with all applicable state and federal employment laws including, but not limited to the Federal Fair Labor Standards Act.

Additionally, subject to PGM policies and procedures, Branch Manager shall be responsible for the general management of the Branch Office, consistent with the intent of this Agreement and sound business practices, including but not limited to:

a)   recruiting of employees and support staff;

b)   creation, maintenance and monitoring of relationships with suppliers, vendors, lenders, real estate agents and other settlement service providers to ensure courtesy, efficient, legal and ethical conduct of business;

c)   accurate reporting to PGM, in such form and such manner as PGM may require, of all mortgage loan transactions and related financial information as necessary to carry out the terms and covenants of this Agreement;

d)   maintenance of any and all records and other data at the Branch Office for such periods and in such manner as state and/or federal law may require;

e)   locating, securing and arranging for the lease of Branch Facilities as necessary to conduct the business of the Branch Office;

f)   maintenance of all mortgage loan files originated by Branch Office (whether closed, cancelled, withdrawn or denied) on site, or as PGM may otherwise approve, in writing, for such period of time as required by state and/or federal law. All mortgage loan files are to be delivered to PGM upon termination of this Agreement; and,

g)   primary responsibility to ensure that all employees of Branch Office are covered under the scope of all applicable state licensing requirements for loan originators

and are duly licensed and in good standing throughout the duration of their employment (including such things as timely payment of annual licensing fees and assessments and compliance with continuing education requirements).

6. **Duties of PGM.** PGM shall assume responsibility for all accounting and the disbursement of all funds for the operation of the Branch Office. PGM shall forward to Branch Manager a monthly statement of income and expenses of the Branch Office, determined in accordance with the provisions of paragraph 9 below. In addition, PGM shall have those other and further duties and responsibilities set forth on Schedule A attached hereto and incorporated herein. The parties understand and agree that said schedule is subject to amendment by PGM by notice given in accordance with the provisions of paragraph 11 below. Any such amendment shall become a part of this Agreement thirty (30) days after notice.

7. **Compliance with Laws, Regulations and Policies.** PGM and Branch Manager each acknowledge that state and federal law impose certain obligations on PGM with regard to the supervision, employment and compensation of any person who acts on behalf of PGM in furtherance of licensed activity. PGM shall review and supervise the activities of Branch Manager as required by law, and as more particularly set forth above, Branch Manager shall assist PGM in carrying out its supervisory obligations. However, this Agreement shall not be construed as, and is not intended as, PGM's relinquishment of overall responsibility for the supervision of the acts of salesperson associates licensed to PGM. Branch Manager agrees to comply with all federal, state and local laws, rules, regulations, policies and procedures to which PGM and/or Branch Manager are subject as a result of engaging in mortgage brokerage activity, including without limitation, those of HUD and guidelines of Fannie Mae, Freddie Mac and other investors. Branch Manager agrees to provide to borrowers and potential borrowers such disclosures, in such form and in such manner as PGM, in its sole discretion, shall require from time to time. The parties understand and agree that changes in federal, state and/or local laws, rules, regulations, policies and procedures may necessitate, in PGM's sole discretion, future amendment of this Agreement in order to maintain full compliance. Accordingly, such amendments may be made by notice given in accordance with the provisions of paragraph 11 below. Any such amendment shall become a part of this Agreement thirty (30) days after notice.

8. **Errors and Omissions Insurance.** PGM shall obtain and keep in place professional liability insurance in such amounts and subject to such deductibles, endorsements, exceptions and exclusions as PGM, in its sole discretion, shall deem appropriate. The proportionate costs of such insurance attributable to PGM's Branch Office shall be considered an expense of operations in the calculation of Net Profits, as that term is defined herein.

9. **Compensation.** As compensation for the services to be rendered by Branch Manager hereunder, PGM shall pay Branch Manager one hundred percent (100%) of all Net Profits realized from the operation of the Branch Office. The term "Net Profits," as used herein, shall mean Net Income from operations after Expenses but before taxes, in conformity with mortgage industry accounting practices, all as determined according to sound accounting principles. Net Income shall be determined by deducting Expenses from Gross Income. The term "Gross Income" shall mean all income earned and derived from the Branch Office. The

term "Expenses" shall mean all operating expenses of the Branch Office, including those items of Expense identified elsewhere in this Agreement and including but not limited to the following:

a) rent, copiers, office supplies, telephone service and utilities;

b) commissions, salaries, payroll costs and expenses, and benefits of all employees and loan agents, including but not limited to commissions paid to Branch Manager in his/her capacity as a loan agent;

c) all costs incurred by PGM in connection with the repurchase, by reason of fraud, of any loans originated by the Branch Office. Such costs may include, without limitation, disputes or settlements involving demands to repurchase loans;

d) loss or costs, including reasonable attorneys' fees arising out of suits, actions, audits, foreclosures, or legal proceedings of any nature, arising out of the activities or operations of the Branch Office;

e) all costs incurred by PGM in connection with Early Pay-offs or Early Payment Defaults, by reason of fraud, of any loans originated by the Branch Office;

f) all costs (including up-front fees) to lock and/or extend locked loans; and,

g) monthly shortages resulting from, but not limited to, non-collection of fees paid for credit reports, appraisals, etc.

Additionally, as set forth in Schedule B, which schedule is incorporated herein, there shall be other fees and expenses associated with Branch Office loan activity which shall be treated as Expenses. The parties understand and agree that Schedule B is subject to amendment by PGM by notice given in accordance with the provisions of paragraph 11 below. Any such amendment shall become a part of this Agreement thirty (30) days after notice.

Net Profits for any one month shall be paid to Branch Manager, or Branch Manager's designee, on the 30th day following the last day of that month. All such payments to Branch Manager shall be considered an Expense of the Branch Office.

**10. No solicitation.** After termination of this Agreement, Branch Manager shall not solicit PGM's prospective or existing clients or customers based upon PGM-generated leads obtained during the term of this Agreement, nor may he/she solicit any client or customer with existing contractual obligations to PGM. Furthermore, after termination of this Agreement, Branch Manager shall not solicit Branch Office personnel in accordance with paragraph 21(v) of this Agreement.

Nothing contained in this paragraph is intended to preclude Branch Manager from purchasing and/or developing, at his/her own cost and expense, customer lists which shall be considered the separate property of Branch Manager and not subject to the provisions of this paragraph 10.

11. **Notices.** Any notice required or permitted under this Agreement shall be in writing, delivered to the party at the address set forth for such party below, and shall be deemed effectively delivered upon (i) personal delivery, (ii) one (1) day after deposit for overnight delivery with Federal Express or a comparable national express courier, or (iii) two (2) days after deposit in the United States mail, by first-class mail, postage prepaid. Notices shall be delivered to the parties at the following addresses:

*If to PGM:*

Christopher M. George
Pacific Guarantee Mortgage
c/o CMG Mortgage Services, Inc.
3160 Crow Canyon Road, Suite 350
San Ramon, CA 94583

*If to Branch Manager:*

Jim Bowman
Pacific Guarantee Mortgage
2505 South 320th Street, Suite 260
Federal Way, WA 98003

A party may designate another address for notice purposes upon written notice thereof pursuant to the provisions of this paragraph.

12. **Indemnity.**

a) Branch Manager shall indemnify, defend, and hold PGM, its officers, directors, shareholders and affiliates, and their respective successors and assigns, harmless from and against any and all liability, claims, losses, costs, expenses, penalties, fines, forfeitures, judgments, or damages, including reasonable attorneys' fees and court costs, arising out of or in connection with any fraud or willful misconduct of Branch Manager.

b) PGM shall indemnify Branch Manager for all that Branch Manager loses in direct consequence of the discharge of his/her duties as such, or which result from his/her obedience to the directions of PGM, even though unlawful, unless Branch Manager, at the time of obeying such directions believed them to be unlawful. However, this paragraph shall not, in any respect, release or exempt Branch Manager from his/her duties under paragraph 7 of this Agreement, nor from his/her independent obligation(s) pursuant to his/her status as a licensed real estate broker/salesperson.

13. **Mandatory Negotiation, Mediation and Arbitration.** The parties will attempt in good faith to resolve through negotiation any dispute, claim or controversy arising out of or relating to this Agreement. Either party may initiate negotiations by providing written notice in letter form to the other party, in accordance with the provisions of paragraph 11 above. Such notice shall set forth the subject of the dispute and the relief requested. The recipient of such notice will respond in writing within five days with a statement of its position on and recommended solution to the dispute. If the dispute is not resolved by this exchange of correspondence, the representatives of each party with full settlement authority will meet at a mutually agreeable time and place within ten days of the date of the initial notice in order to exchange relevant information and perspectives, and to attempt to resolve the dispute. If the

dispute is not resolved by these negotiations, the matter will be submitted to JAMS, or its successor, for mediation in accordance with the terms of this paragraph 13.

Either party may commence mediation by providing to JAMS and the other party a written request for mediation, pursuant to the provisions of paragraph 11 above. Such request shall set forth the subject of the dispute and the relief requested. The parties will cooperate with JAMS and with one another in selecting a mediator from JAMS' panel of neutrals, and in scheduling the mediation proceedings. The parties covenant that they will participate in the mediation in good faith, and that they will share equally in its costs. All offers, promises, conduct and statements, whether oral or written, made in the course of the mediation by any of the parties, their agents, employees, experts and attorneys, and by the mediator or any JAMS employees, are confidential, privileged, and inadmissible for any purpose, including impeachment, in any arbitration or other proceeding involving the parties, provided that evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its use in the mediation.

Either party may initiate arbitration in accordance with this paragraph 13 by filing a written demand for arbitration at any time following the initial mediation session or 45 days after the date of filing the written request for mediation, whichever occurs first. The mediation may continue after the commencement of arbitration if the parties so desire. Unless otherwise agreed by the parties, the mediator shall be disqualified from serving as arbitrator in the case. It is the intent of the parties to this Agreement that any and every dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, which can not be resolved by negotiation and/or mediation, be resolved by binding arbitration. This includes, but is not limited to the determination of the scope or applicability of this agreement to arbitrate. Arbitration shall be conducted in San Francisco, California, before a sole arbitrator, in accordance with the laws of the State of California for agreements made in and to be performed in California. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures. Judgment on the Award may be entered in any court having jurisdiction. The arbitrator shall, in the Award, allocate all of the costs of the arbitration and the mediation, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail.

The provisions of this paragraph 13 may be enforced by any court having jurisdiction, and the party seeking enforcement shall be entitled to an award of all costs, fees and expenses, including attorneys' fees, to be paid by the party against whom enforcement is ordered.

14.     **Proprietary Information.** All loan files, records, documents, lists, rate sheets, product guidelines, investor/secondary market information, databases, trade secrets (as defined in paragraph 21(q)), manuals (including policies and procedures), training manuals, forms, marketing materials, hardware and software obtained from PGM, and similar items relating to the business of PGM, (collectively "Proprietary Information") whether prepared by Branch Manager or otherwise, coming into the possession of the Branch Office, its personnel and/or Branch Manager during the term of this Agreement shall be, and remain, the exclusive property of PGM.

Nothing contained in this paragraph is intended to preclude Branch Manager from purchasing, at his/her own cost and expense, databases, marketing materials, hardware and/or software, which shall be considered the separate property of Branch Manager and not subject to the provisions of this paragraph 14.

15.   **Branch Facilities.** "Branch Facilities" shall include, but not be limited to office space, furnishing and business equipment. Branch Manager shall arrange for the execution by PGM of a month-to-month lease for appropriate Branch Facilities for a Fair Market Rent. "Fair Market Rent" shall mean a fixed monthly amount that does not vary with the volume or the value of mortgage loans originated by the Branch Office, and that is no more than the fair market rent paid by other similar businesses for comparable facilities in the geographic area in which the Branch Office is located.

16.   **Name.** The Branch Office shall conduct business under the name Pacific Guarantee Mortgage, or such other name as PGM shall approve in advance, in writing. Branch Manager acknowledges and agrees that the name Pacific Guarantee Mortgage, and any and all derivations thereof, including but not limited to PGM trade names, trademarks and/or logos used in the conduct of the business of the Branch Office, are proprietary and belong exclusively to PGM. Upon termination of this Agreement for any reason, Branch Manager shall cease to use, in any manner, the name Pacific Guarantee Mortgage, and all derivations thereof, together with all PGM trade names, trademarks and logos, and during the term of this Agreement, shall acquire no license, proprietary rights to, or interest in them, or in any derivations thereof.

17.   **Solicitation of Mortgage Loans in Other States.** Branch Manager shall limit solicitation of mortgage loan activity by Branch Manager and Branch Office personnel to the state in which the Branch Office is located, unless Branch Manager first receives the prior written approval of PGM. Such approval shall be subject to reasonable conditions, including but not limited to the requirement that PGM and all affected Branch Office personnel currently hold such licenses as necessary for the subject state and that Branch Manager and the affected personnel demonstrate a thorough familiarity with such state's laws and regulations related to loan solicitation and mortgage loan origination.

18.   **Authority to Contract.** Branch Manager shall have no authority to enter into any agreement in the name of PGM. Branch Manager agrees to indemnify and hold PGM harmless from and against any and all liability arising out of any agreement entered into without the prior written consent of PGM. This covenant of indemnity shall include all costs of defense, including reasonable attorney's fees, for any such claim asserted.

19.   **Events of Default/Termination.** This Agreement shall terminate upon any of the following events or for any of the following causes:

a) Immediately following notice of a material breach of any covenant, condition, representation of contractual obligation of a party, given by the party that is or could be adversely affected thereby; provided said breach remains uncured for a period of ten (10) days following such written notice of said breach;

b) Immediately in the event of insolvency, bankruptcy or receivership of either party; or,

c) Immediately in the event of Branch Manager's fraud or intentional breach of duty to a client.

Upon termination of this Agreement for any reason, Branch Manager shall promptly return to PGM all originals and copies of all Proprietary Information obtained by Branch Manager from PGM. Branch Manager acknowledges and agrees that all such materials are the sole and exclusive property of PGM, and agrees not to utilize such materials for any purpose other than as contemplated by this Agreement, or at all upon termination.

20. **Status of Loans in Process at Termination.** Except in the case of termination for Branch Manager's fraud or intentional breach of duty to a client, and subject to any applicable law to the contrary, any mortgage loans which are in process or which have been originated by the Branch Office, up to and including any mortgage loans originated through 5:00 p.m., on the day of termination of this Agreement, shall be processed, submitted and closed by PGM. Branch Manager shall receive compensation related thereto in accordance with the terms of this Agreement, as if such loans had been closed prior to termination, provided that all loan files and other PGM property have been returned to PGM. All rights of Branch Manager to compensation under this Agreement shall immediately terminate in the event of termination of this Agreement by reason of Branch Manager's fraud or intentional breach of duty to a client.

21. **Miscellaneous.**

**a. Effective Date.** The "Effective Date" of this Agreement shall be the date that it is signed by PGM.

**b. Assignment.** PGM shall have the right to assign its rights and duties under this Agreement to any party without the consent of Branch Manager. Any such assignee of PGM shall be an intended third-party beneficiary of the representations, warranties, covenants, agreements and remedies contained herein. Branch Manager shall have no right to assign his/her rights or duties under this Agreement without PGM's prior written consent, which may be withheld by PGM in its sole discretion.

**c. Choice of Law.** This Agreement shall be governed by and construed under the laws of the State of California, without regard to conflicts of laws principles.

**d. Integration.** This Agreement is the entire agreement between the parties regarding the subject matter and supersedes any prior oral or written agreement among them regarding the subject matter contained herein.

**e. Amendment.** Except as set forth herein, this Agreement may not be amended or modified orally and no provision of this Agreement may be waived or amended except in a writing which makes reference to this Agreement and which is signed by PGM.

    **f. Severability.** If a court of competent jurisdiction finds any provision in this Agreement to be invalid, illegal, or otherwise unenforceable, that determination will not affect any other provision of this Agreement. The invalid provision will be severed from this Agreement and all remaining provisions will continue to be of full force and effect.

    **g. Interpretation.** Any ambiguities in this Agreement will not be strictly construed against the drafter of the language concerned but will be resolved by applying the most reasonable interpretation under the circumstances giving full consideration to the intentions of the parties at the time of contracting. This Agreement will not be construed against any party by reason of its preparation.

    **h. No Third Party Beneficiaries.** Except as expressly set forth in paragraph 21 (b), above, this Agreement has been made by, and is made solely for the benefit of Branch Manager and PGM, and PGM's successors and permitted assigns. Except as expressly set forth in paragraph 21 (b), above, nothing in this Agreement is intended to confer any rights or remedies under or because of this Agreement on any persons or entities other than the parties to it and their respective successors and permitted assigns. Nothing in this Agreement is intended to relieve or discharge the obligation or liability of any third person or entity to any party to this Agreement.

    **i. Waiver.** No waiver of any provision of this Agreement or consent to any action shall constitute a waiver of any other provision of this Agreement or consent to any other action. No waiver or consent shall constitute a continuing waiver or consent, or commit a party to provide a future waiver.

    **j. Further Assurances.** Branch Manager shall execute and deliver any and all additional papers, documents and other assurances and shall do any and all acts and things reasonably necessary in connection with his/her performance of his/her obligations hereunder to carry out the intent of this Agreement.

    **k. Captions.** All captions and headings in this Agreement are for reference only and may not be used in the interpretation of this Agreement or any related document.

    **l. Counterparts.** This Agreement may be executed in counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument. The parties agree that a signed copy of this Agreement transmitted by one party to the other by facsimile transmission shall be binding upon the sending party to the same extent as a signed original of this Agreement.

    **m. Attorneys' Fees.** In the event that any action or arbitration is brought by either party to enforce the terms of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs.

    **n. Venue.** PGM and Branch Manager agree that the proper venue for any legal action brought under this Agreement is either the County of Contra Costa, California or the United States District Court for the Northern District of California, as appropriate.

**o. Survival Upon Termination.** Branch Manager's representations, warranties, covenants and other obligations and agreements contained in this Agreement, including without limitation Branch Manager's indemnification obligations, shall survive any termination of this Agreement.

**p. Non-exclusive Remedies.** No remedy under this Agreement is exclusive of any other available remedy, but each remedy is cumulative and is in addition to other remedies given under this Agreement or existing in law or in equity.

**q. Confidentiality.** Each party understands, acknowledges and agrees that certain trade secrets and customer lists exist which are wholly owned and controlled by the other. These shall be referred to herein collectively as "trade secrets" and consist of information and materials that are valuable and not generally known by such party's competitors. All trade secrets, however maintained, shall be and remain the exclusive property of the originator thereof. Each party agrees not to disclose any of the other's trade secrets, directly or indirectly, or use them in any way, either during the term of this Agreement or at any time thereafter, except as required in the course of performance of this Agreement.

**r. Offset.** Amounts past due and owing by Branch Manager to PGM under this Agreement may, at PGM's option and in its sole discretion, be offset by PGM against any payments or other indebtedness then or thereafter owed by PGM to Branch Manager.

**s. Statute of Limitations.** Any action arising under this Agreement or because of its breach must be commenced within one year after the cause of action accrues.

**t. No Partnership or Joint Venture Intended.** PGM and Branch Managor intend that, to the maximum extent permissible by law, this Agreement shall not be construed as a partnership and/or joint venture.

**u. Regulatory Compliance.** PGM and Branch Manager recognize the importance of full compliance at all times with all state and federal laws, rules and regulations governing mortgage loan origination. Accordingly, notwithstanding anything to the contrary contained elsewhere herein, the parties recognize and agree that PGM retains the right to amend this Agreement as necessary, in its reasonable discretion, to ensure full compliance with all state and federal laws, rules and regulations. Any such amendment shall become a part of this Agreement thirty (30) days after notice thereof is given in accordance with paragraph 11 above.

**v. Anti-Poaching.** Branch Manager agrees not to solicit or in any way entice to leave, interview, hire or contract, either directly or indirectly, with any employees or independent contractors affiliated with PGM, or any of its affiliates, during the term of this Agreement, and for a period of two (2) years following termination of this Agreement.

**w. Jury Trial.** Pursuant to the provisions of paragraph 14 above, Branch Manager and PGM each agree to waive trial by jury in any action or proceeding arising out of this Agreement.

x. **Condition Precedent.** It is understood and agreed that the respective rights, duties and obligations of the parties hereto are expressly made subject to and conditioned upon the completion of the transaction by and between PGM and RBC, which transaction is expected to conclude on or about June 30, 2003. PGM will notify Jim Bowman once said transaction is concluded.

IN WITNESS WHEREOF, the undersigned have executed this Agreement at San Ramon, California.

Dated: ______________________

**CMG Mortgage Services, Inc., doing business as Pacific Guarantee Mortgage**

By: ______________________
Christopher M. George, President

Dated: 12/1/03

**Branch Manager**

By: ______________________
Jim Bowman

# EXHIBIT B

David R. Medlin (SBN 77417)
G. Bradley Hargrave (SBN 173911)
Joshua A. Rosenthal (SBN 190284)
MEDLIN & HARGRAVE
A Professional Corporation
One Kaiser Plaza, Suite 1305
Oakland, CA 94612
Telephone: (510) 832-2900
Facsimile: (510) 832-2945
E-mail: *jrosenthal@mhlawcorp.com*

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

James W. Bowman, Jr. and Pacific Real Estate Management Company, Inc., a Washington Corporation,

Plaintiffs,

vs.

CMG Mortgage Inc., a California Corporation; CMG Mortgage, Inc., d/b/a Pacific Guarantee Mortgage, CMG Mortgage Services, Inc., a California Corporation, CMG Mortgage Services, Inc. d/b/a Pacific Guarantee Mortgage,

Defendants.

_______________________________________/

Case No.: C 07 3140 SI

REQUEST FOR PRODUCTION OF DOCUMENTS UNDER RULE 34

Defendants CMG Mortgage Inc., CMG Mortgage, Inc., d/b/a Pacific Guarantee Mortgage, CMG Mortgage Services, Inc., CMG Mortgage Services, Inc. d/b/a Pacific Guarantee Mortgage requests plaintiffs James W. Bowman, Jr. and Pacific Real Estate Management Company, Inc., a Washington Corporation respond within 30 days to the following requests. The time and date for the inspection shall be 10:00 a.m. on January 14, 2008. The place for the inspection shall be the law offices of Medlin & Hargrave, a P.C., One Kaiser Plaza, Suite 1305, Oakland, California 94612.

**DEFINITIONS**

The terms "YOU" and "YOUR" shall mean and refer to the responding parties.

The term "VANCOUVER BRANCH" shall mean and refer to the Pacific Guarantee Mortgage branch that was located at 500 West 8th Street, Suite 100, Vancouver, WA 98660.

///

The term "FEDERAL WAY BRANCH" shall mean and refer to the Pacific Guarantee Mortgage branch that was located at 2505 South 320th Street, Suite 260, Federal Way, WA 98003

**REQUEST NO. 1**

That responding parties produce and permit propounding parties to inspect and to copy each of the following documents:

a) All documents evidencing YOUR claim that propounding parties failed to pay in excess of $1.2 million in expenses for the VANCOUVER BRANCH and FEDERAL WAY BRANCH, in violation of the facilities agreements for said branches.

b) All documents evidencing YOUR claim that YOU suffered losses in excess of $500,000 as a result of having to close the office located at 500 West 8th Street, Suite 100, Vancouver, WA 98660 in September of 2007.

c) All documents evidencing YOUR claim that propounding parties are liable for any losses YOU suffered as a result of having to close the office located at 500 West 8th Street, Suite 100, Vancouver, WA 98660 in September of 2007.

d) All documents evidencing YOUR claim that propounding parties overpaid any compensation to loan officers or employees that worked at the VANCOUVER BRANCH or FEDERAL WAY BRANCH.

e) All contracts signed by any loan officers or employees that worked at the VANCOUVER BRANCH or FEDERAL WAY BRANCH, whom you claim were overpaid any compensation.

f) All documents evidencing YOUR claim that Jim Bowman withdrew any funds from any retirement account as a result of any action by propounding parties.

g) All documents evidencing YOUR claim that propounding parties withheld any money owed to YOU as a result of 401k contributions for loan officers or employees that worked at the VANCOUVER BRANCH or FEDERAL WAY BRANCH.

h) All documents evidencing YOUR claim that YOU are entitled to any unvested 401k contributions made by propounding parties for loan officers or employees that worked at the VANCOUVER BRANCH or FEDERAL WAY BRANCH.

i) All documents evidencing YOUR claim that propounding parties withheld any money owed to YOU as a result of paying any taxes on behalf of the VANCOUVER BRANCH or FEDERAL WAY BRANCH.

j) All documents evidencing YOUR claim that any money paid for taxes by propounding parties on behalf of the VANCOUVER BRANCH or FEDERAL WAY BRANCH was not, in fact, owed.

k) All documents evidencing YOUR claim that propounding parties withheld any money owed to YOU for any accounting fees charged by propounding parties.

l) Copies of all loan files started by any loan officer or employee at the VANCOUVER BRANCH or FEDERAL WAY BRANCH between September 1, 2006 and February 1, 2007.

m) All documents identified in YOUR initial disclosures.

n) All documents evidencing any communications between YOU and any of the propounding parties

o) All documents and drafts of documents evidencing any contracts or agreements between YOU and propounding parties.

Date: December 12, 2007

MEDLIN & HARGRAVE
A PROFESSIONAL CORPORATION

By: ______________________
Joshua A. Rosenthal,
Attorneys for Defendants

**PROOF OF SERVICE BY MAIL**

I am over the age of eighteen years and not a party to the within action. My business address is One Kaiser Plaza, Suite 1305, Oakland, California 94612, which business is located in the county where the mailing described below took place.

I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the United States Postal Service. On the date set forth below, at my place of business in Oakland, California, I served the within:

**REQUEST FOR PRODUCTION OF DOCUMENTS UNDER RULE 34**

by placing a true copy thereof enclosed in a sealed envelope, with postage fully prepaid, for collection and mailing with the United States Postal Service where it would be deposited with the United States Postal Service that same day in the ordinary course of business, addressed as follows:

Angela M. Xavier
Attorney At Law
900 Cherry Avenue, Suite 300
San Bruno, CA 94583

Alan F. Cohen
101 Montgomery Street, Suite 2050
San Francisco, CA 94104

I certify and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on December 12, 2007, at Oakland, California.

Xinh Truong

# EXHIBIT C

ORIGINAL

Alan F. Cohen (State Bar No. 194075)
LAW OFFICES OF ALAN F. COHEN
101 Montgomery Street, Suite 2050
San Francisco, CA 94104
415.984.1943 (tel.)
415.984.1953 (fax)
cohenlaw@mindspring.com

Angela M. Xavier (State Bar No. 165152)
900 Cherry Avenue, Suite 300
San Bruno, CA 94066
650.355.0414 (tel.)
650.355.0842 (fax)

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES W. BOWMAN, JR. and PACIFIC REAL ESTATE MANAGEMENT COMPANY, INC., a Washington Corporation<br><br>Plaintiffs,<br><br>*v.*<br><br>CMG MORTGAGE, INC., a California Corporation; CMG MORTGAGE, INC., d/b/a PACIFIC GUARANTEE MORTGAGE, CMG MORTGAGE SERVICES, INC., a California corporation; CMG MORTGAGE SERVICES, INC., d/b/a PACIFIC GUARANTEE MORTGAGE,<br><br>Defendants. | Case No.: C-07-3140-SI<br><br>**RESPONSE TO DEFENDANTS' REQUEST FOR PRODUCTION OF DOCUMENTS UNDER RULE 34** |

PROPOUNDING PARTY: DEFENDANTS CMG MORTGAGE, INC., CMG MORTGAGE, INC., d/b/a PACIFIC GUARANTEE MORTGAGE, CMG MORTGAGE SERVICES, INC., CMG MORTGAGE SERVICES, INC., d/b/a PACIFIC GUARANTEE MORTGAGE

RESPONDING PARTY: PLAINTIFFS JAMES BOWMAN AND PACIFIC REAL ESTATE MANAGEMENT COMPANY, INC.

SET NO: ONE

**PRELIMINARY STATEMENT**

Plaintiffs' responses to the Request for Production of Documents Under Rule 34 ("Request") are made based on Plaintiffs' present knowledge, information and belief. Said responses are at all times subject to such additional or different information or documents that discovery or further investigation may disclose and are subject to such refreshing of recollection, and such additional knowledge of facts, as may result from Plaintiffs' further discovery or investigation. Plaintiffs reserve the right to make any use of, and to introduce at any hearing and at trial, any information or documents responsive to the Discovery Request obtained through subsequent discovery or investigation.

To the extent that Plaintiffs respond to these Document Request by stating that Plaintiffs will provide documents which Plaintiffs or any other party to this litigation deem to embody material that is private, business confidential, proprietary, trade secret, or otherwise protected from disclosure pursuant to California Constitution, article I, section 1, Division 8 of the California Evidence Code or any other applicable source of privacy right arising under statute, constitutional provision or case law, Plaintiffs will do so only upon the entry of, and subject to, an appropriate protective order against the unauthorized use or disclosure of such information.

To the extent that the only documents in Plaintiffs' possession, custody or control responsive to a request are those produced by Defendants in initial disclosures, Plaintiffs will not re-produce those documents back to Defendants. Similarly, to the extent Plaintiffs have produced all documents within their possession, custody, or control to Defendants as part of their initial disclosure, Plaintiffs will not produce another copy of such documents. A contrary interpretation of the rules of discovery would be wasteful and unnecessary, and would impose an undue and unreasonable burden and expense on the responding party.

Plaintiffs reserve all objections or other questions as to the competency, relevance, materiality, privilege or admissibility as evidence in any subsequent proceeding in or trial of this or any other action for any purpose whatsoever of Plaintiffs' responses herein and of any document or thing identified or provided in response to the Request.

Plaintiffs reserve the right to object on any ground at any time to such other or supplemental Request for Production or any other discovery as Defendant may at any time propound involving or relating to the subject matter of this Request.

**SPECIFIC RESPONSES AND OBJECTIONS TO DOCUMENT REQUEST**

**Request No. 1(a):**

All documents evidencing YOUR claim that propounding parties failed to pay in excess of $1.2 million in expenses for the VANCOUVER BRANCH and FEDERAL WAY BRANCH, in violation of the facilities agreements for said branches.

**Response to Request 1(a)**

Plaintiff objects to this Request to the extent that it: seeks documents protected by the attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, and overbroad as to the phrase "evidencing YOUR claim;" seeks documents equally or more readily available to Defendants and therefore is unduly burdensome and calculated to harass and annoy Plaintiff; seeks documents protected by the right of privacy. Notwithstanding and without waiving the above objections Plaintiff will comply.

**Request No. 1(b):**

All documents evidencing YOUR claim that YOU suffered losses in excess of $500,000 as a result of having to close the office located at 500 West 8th Street, Suite 100, Vancouver, WA 98660 in September of 2007.

**Response to Request 1(b)**

Plaintiff objects to this Request to the extent that it: seeks documents protected by the attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, and overbroad as to the phrase "evidencing YOUR claim;" seeks documents equally or more readily available to Defendants and therefore is unduly burdensome and calculated to harass and annoy Plaintiff;

seeks documents protected by the right of privacy. Notwithstanding and without waiving the above objections Plaintiff will comply.

**Request No. 1(c):**

All documents evidencing YOUR claim that propounding parties are liable for any losses YOU suffered as a result of having to close the office located at 500 West 8th Street, Suite 100, Vancouver, WA 98660 in September of 2007.

**Response to Request 1(c)**

Plaintiff objects to this Request to the extent that it: seeks documents protected by the attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, and overbroad as to the phrase "evidencing YOUR claim;" seeks documents protected by the right of privacy; fails to describe the documents sought with sufficient particularity because it appears to seek a legal conclusion, not documents. Notwithstanding and without waiving the above objections Plaintiff will comply.

**Request No. 1(d):**

All documents evidencing YOUR claim that propounding parties overpaid any compensation to loan officers or employees that worked at the VANCOUVER BRANCH or FEDERAL WAY BRANCH.

**Response to Request 1(d)**

Plaintiff objects to this Request to the extent that it: seeks documents protected by the attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, and overbroad as to the phrase "evidencing YOUR claim;" seeks documents equally or more readily available to Defendants and therefore is unduly burdensome and calculated to harass and annoy Plaintiff. Notwithstanding and without waiving the above objections Plaintiff will comply.

**Request 1(e)**

All contracts signed by any loan officers or employees that worked at the VANCOUVER BRANCH or FEDERAL WAY BRANCH, whom you claim were overpaid any compensation.

**Response to Request 1(e)**

Plaintiff objects to this Request to the extent that it: seeks documents protected by the attorney-client privilege or attorney work-product doctrine; seeks documents more readily available to Defendants and therefore is unduly burdensome and calculated to harass and annoy Plaintiff. Notwithstanding and without waiving the above objections Plaintiff will comply, to the extent that such documents are in his possession, custody or control.

**Request 1(f)**

All documents evidencing YOUR claim that Jim Bowman withdrew any funds from any retirement account as a result of any action by propounding parties.

**Response to Request 1(f)**

Plaintiff objects to this Request to the extent that it: seeks documents protected by the attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, and overbroad as to the phrase "evidencing YOUR claim;" seeks documents equally or more readily available to Defendants and therefore is unduly burdensome and calculated to harass and annoy Plaintiff. Notwithstanding and without waiving the above objections Plaintiff will comply. To the extent responsive documents contain non-responsive information outside the scope of discovery and protected by the right of privacy, such documents will only be produced in redacted form.

**Request 1(g)**

All documents evidencing YOUR claim that propounding parties withheld any money owed to YOU as a result of 40lk contributions for loan officers or employees that worked at the VANCOUVER BRANCH or FEDERAL WAY BRANCH.

**Response to Request 1(g)**

Plaintiff objects to this Request to the extent that it: seeks documents protected by the attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, and overbroad as to the phrase "evidencing YOUR claim;" seeks documents equally or more readily available to Defendants and therefore is unduly burdensome and calculated to harass and annoy Plaintiff. Notwithstanding and without waiving the above objections Plaintiff will comply.

**Request 1(h)**

All documents evidencing YOUR claim that YOU are entitled to any unvested 401k contributions made by propounding parties for loan officers or employees that worked at the VANCOUVER BRANCH or FEDERAL WAY BRANCH.

**Response to Request 1(h)**

Plaintiff objects to this Request to the extent that it: seeks documents protected by the attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, and overbroad as to the phrase "evidencing YOUR claim;" seeks documents equally or more readily available to Defendants and therefore is unduly burdensome and calculated to harass and annoy Plaintiff; fails to describe the documents sought with sufficient particularity because it appears to seek a legal conclusion, not documents. Notwithstanding and without waiving the above objections Plaintiff will comply.

**Request 1(i)**

All documents evidencing YOUR claim that propounding parties withheld any money owed to YOU as a result of paying any taxes on behalf of the VANCOUVER BRANCH or FEDERAL WAY BRANCH.

**Response to Request 1(i)**

Plaintiff objects to this Request to the extent that it: seeks documents protected by the attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, and overbroad as to the phrase "evidencing YOUR claim;" assumes that taxes were owed or paid on behalf of the Vancouver or Federal Way branches; seeks documents equally or more readily available to Defendants and therefore is unduly burdensome and calculated to harass and annoy Plaintiff. Notwithstanding and without waiving the above objections Plaintiff will comply.

**Request 1(j)**

All documents evidencing YOUR claim that any money paid for taxes by propounding parties on behalf of the VANCOUVER BRANCH or FEDERAL WAY BRANCH was not, in fact, owed.

**Response to Request 1(j)**

Plaintiff objects to this Request to the extent that it: seeks documents protected by the attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, overbroad and unintelligible, as it appears to seek information relating to legal authority as opposed to documents; as to the phrase "evidencing YOUR claim;" assumes that taxes were owed or paid on behalf of the Vancouver or Federal Way branches; seeks documents equally or more readily available to Defendants and therefore is unduly burdensome and calculated to harass and annoy Plaintiff; fails to describe the documents sought with sufficient particularity because it appears to seek a legal conclusion, not documents. Notwithstanding and without waiving the above objections, and to the extent they understand the request, Plaintiffs respond that they cannot comply because they have no such documents within their possession, custody, or control.

**Request 1(k)**

All documents evidencing YOUR claim that propounding parties withheld any money owed to YOU for any accounting fees charged by propounding parties.

**Response to Request 1(k)**

Plaintiff objects to this Request to the extent that it: seeks documents protected by the attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, and overbroad as to the phrase "evidencing YOUR claim;" seeks documents equally or more readily available to Defendants and therefore is unduly burdensome and calculated to harass and annoy Plaintiff. Notwithstanding and without waiving the above objections Plaintiff will comply.

**Request 1(*l*)**

Copies of all loan files started by any loan officer or employee at the VANCOUVER BRANCH or FEDERAL WAY BRANCH between September 1,2006 and February 1, 2007.

**Response to Request 1(*l*)**

Plaintiff is unable to comply because he has no documents in his possession, custody, or control responsive to this request. All such documents were shipped to Defendants by or before March 2007.

**Request 1(m)**

All documents identified in YOUR initial disclosures.

**Response to Request 1(m)**

Plaintiff objects to this Request to the extent that it: seeks documents protected by the attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, and overbroad in that if fails to describe the documents sought with particularity; seeks documents equally or more readily available to Defendants and therefore is unduly burdensome and calculated to harass and annoy Plaintiff; seeks documents protected by the right of privacy. Notwithstanding and without waiving the above objections, and to the extent that he can respond to such an overbroad request, Plaintiff will comply.

**Request 1(n)**

All documents evidencing any communications between YOU and any of the propounding parties

**Response to Request 1(n)**

Plaintiff objects to this Request to the extent that it: seeks documents protected by the attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, and overbroad as to the term "evidencing;" seeks documents equally or more readily available to Defendants and therefore is unduly burdensome and calculated to harass and annoy Plaintiff. Notwithstanding and without waiving the above objections Plaintiff will comply.

**Request 1(o)**

All documents and drafts of documents evidencing any contracts or agreements between YOU and propounding parties.

**Response to Request 1(o)**

Plaintiff objects to this Request to the extent that it: seeks documents protected by the attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, and overbroad as to the phrase "evidencing;" seeks documents equally or more readily available to Defendants and therefore is unduly burdensome and calculated to harass and annoy Plaintiff. Notwithstanding and without waiving the above objections Plaintiff will comply.

LAW OFFICES OF ALAN F. COHEN

Dated: January 17, 2008

By ______________________
Alan F. Cohen
Attorneys for Plaintiffs

LAW OFFICES OF
ALAN F. COHEN

9

PLAINTIFF'S RESPONSE TO REQUEST FOR PRODUCTION, Set One
Case No. C-07-3140 SI

**DECLARATION OF SERVICE**

I, Alan F. Cohen, declare that I am a resident of the State of California, am over the age of eighteen years, and not a party to the within action. I am a member of the bar of this Court. My address is 101 Montgomery Street, Ste. 2050, San Francisco, CA 94104.

On the date set forth below I served a true and correct copy of:

1. **RESPONSE TO DEFENDANTS' REQUEST FOR PRODUCTION OF DOCUMENTS UNDER RULE 34**

☒ (FIRST CLASS MAIL) by placing such copy in a sealed envelope postage thereon fully prepaid, with the United States Postal Service for mailing this day from San Francisco, California.

☐ (HAND DELIVERY) by hand delivery on to the party(ies) indicated below:

☐ (FACSIMILE) by consigning such copy to a facsimile operator for transmittal on this date to the party(ies) indicated.

☐ (OVERNIGHT COURIER) by consigning such copy in a sealed envelope postage thereon fully prepared, with the United States Postal Service or an overnight courier for next day delivery to the party(ies) indicated.

I served the above document(s) on the following persons:

David R. Medlin
G. Bradley Hargrave
Joshua Rosenthal
Medlin & Hargrave
One Kaiser Plaza, Suite 1305
Oakland, A 94612

***Attorneys for Defendants CMG Mortgage, Inc. et al.***

I am readily familiar with my firm's practices for processing of correspondence for delivery according to the instructions indicated above, under which correspondence would be deposited in the mail or other delivery service set forth above on the date below. The above-referenced documents were placed for deposit in accordance with the office's practice. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at San Francisco, California on January 17, 2008.

Alan F. Cohen

LAW OFFICES OF
ALAN F. COHEN

# EXHIBIT D



MEDLIN &
HARGRAVE
A PROFESSIONAL CORPORATION

JOSHUA A. ROSENTHAL
*jrosenthal@mhlawcorp.com*

February 26, 2008

***Via Facsimile & U.S. Mail***

Alan F. Cohen
101 Montgomery Street, Suite 2050
San Francisco, CA 94104

Re: ***Pacific Real Estate Man. Company, Inc. et al. v. CMG Mortgage, Inc. et al.***
***U.S. District Court, Northern District of California***
***Case No.: C07-3140 MEJ***

Dear Mr. Cohen:

This letter concerns the subpoena for documents I plan on serving on title companies with which Mr. Bowman and his company closed loans, which loans were started while the branches at issue were still CMG branches. When we talked on the phone regarding the subpoenas, you stated that you were concerned that the subpoenas could infringe on the privacy rights of third parties to the lawsuit and were overbroad. Accordingly, you plan on objecting to the subpoenas, by filing a motion to quash, but would like us to delay serving the subpoenas for two weeks, in order to accommodate your schedule. In addition to the subpoenas to the title companies, please be advised that I will also be serving the same subpoena on Sierra Pacific Mortgage.

I have expressed to you my concern in waiting to serve the subpoenas, in light of the fast approaching discovery cut off and the fact that we need these documents before we depose your client. Additionally, I anticipate that getting documents from third parties can be a time consuming process. You requested that we delay serving the subpoenas so you don't have to file the motion to quash while you are in trial. In recognition of your trial schedule, we discussed a possible compromise solution.

I propose that we serve the subpoenas on the title companies immediately, with a compliance date of no later than March 10, 2008. I will instruct the deposition officer to hold onto the documents pending your motion to quash. We will agree to an abbreviated schedule for the motion to quash so that it may be heard prior to your client's deposition. As you know, the Court requires discovery disputes to be submitted via letter brief. You can submit your letter

**MEDLIN & HARGRAVE**
*A Professional Corporation*

Alan Cohen
Re: *Pacific Real Estate Management Company, Inc. et al v. CMG Mortgage, Inc. et al.*
February 26, 2008
Page 2

brief by March 10, 2008 and explain to the Court our agreement and that we would like the matter decided in advance of March 21, 2008, in light of the deposition schedule. CMG will file its opposition by March 12, 2008. Please let me know if you agree to these terms.

I hope that when you have concluded your trial you will take the opportunity to examine the subpoenas with greater detail and reconsider your position. I believe that you will see that a motion to quash is not proper. The Vancouver and Federal Way branches were closing, on average, in excess of 30 loans a month in the months immediately prior to termination. The contracts at issue require all loans started while employed by CMG to be completed with CMG, even after termination (See, Paragraph 20 of the Branch Management Agreements). And, of course, the gross proceeds of all such loans belong to CMG. For your information, nothing like this has ever before occurred when a CMG branch has been terminated. I can also tell you that in years of representing literally dozens, if not scores of net branching operations, this office has never seen this before. Universally, there are always loans in progress on the date of termination. Here, however, in stark contrast, after January 31, 2007, CMG received no income from any loans in progress ("Pipeline Loans") from either the Vancouver or Federal Way branches. As a practical reality, this means that Mr. Bowman either stopped every loan in progress that hadn't closed as of January 31, 2007 (and risked breaching fiduciary duties to every such borrower, as well as forfeiting all potential income from those loans) or he closed those loans with another broker and did not tell CMG. The former would be a profound breach of fiduciary duty to his borrowers. The latter would be a breach of his contracts with CMG, would constitute unclean hands and could amount to employee embezzlement.

In its inspection demand, CMG asked Mr. Bowman for all loan files started by any loan officer or employee at the Vancouver or Federal Way branches between September 1, 2006 and February 1, 2007. Mr. Bowman's response was that he could not comply with the request because all responsive documents had been shipped to CMG. The only imaginable fact scenario which would make such a response truthful is: (i) every loan in progress at the time of Mr. Bowman's notice of termination (rather miraculously and conveniently) just happened to close prior to his termination; and, (ii) no loan was started from the date of Mr. Bowman's notice of termination until (again, conveniently) no sooner than the day immediately following his termination. Mr. Bowman would have us believe that this quite astounding and entirely unique set of circumstances just happened to have occurred, for the first and only time, in connection with his departure from CMG. Common sense dictates that these subpoenas will almost certainly produce information establishing that Mr. Bowman did in fact start loans while employed by CMG and closed them elsewhere. If that is in fact the result of these subpoenas, CMG will seek appropriate sanctions. And, of course, we will seek leave to file an appropriate cross-complaint.

MEDLIN & HARGRAVE
*A Professional Corporation*

Alan Cohen
Re: *Pacific Real Estate Management Company, Inc. et al v. CMG Mortgage, Inc. et al.*
February 26, 2008
Page 3

You raised the privacy interests of third parties as a reason for your objection. However, that is not a valid objection. First, any checks paid to Mr. Bowman as proceeds for loan activity are not privileged. Moreover, Mr. Bowman is claiming damages as a result of CMG terminating its relationship with the Vancouver and Federal Way branches. Thus, his income after the termination of the branches is relevant. In any event, if Mr. Bowman received money in breach of the contract he is seeking to enforce, that undoubtedly outweighs any privacy interest he may have in the information.

With respect to the HUD-1, ordinarily there is no non-public personally identifiable financial information ("NPI") concerning the borrower listed on the HUD-1. Rather, it lists all of the charges in connection with a loan - much of which is in the public record. It certainly does not contain the type of NPI contained in a loan file such as bank statements, social security numbers, tax returns, W2's, 1099's, etc. Thus, any objection on this ground is frivolous.

Please confirm that this proposal is acceptable. If you have any questions, please do not hesitate to contact me.

Sincerely,

Joshua A. Rosenthal

JAR:xt
cohen.04.jar.wpd

cc: Angela Xavier
Client

# EXHIBIT E

AO88 (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

Northern DISTRICT OF California

James W. Bowman, Jr. et al.

V.

CMG Mortgage, Inc., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] C 07 3140 SI

TO: Sierra Pacific Mortgage Co., Inc.
50 Iron Point Circle, Suite 200
Folsom, CA 95630

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

Please See Attachment

| PLACE | DATE AND TIME |
|---|---|
| Legal Department, One Hour Legal Services, 1280 Boulevard Way, Suite 205, Walnut Creek, CA 94595 | 4/14/2008 10:00 am |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Attorney for defendants | 4/3/2008 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Joshua A. Rosenthal, Medlin & Hargrave, P.C., One Kaiser Plaza, Suite 1305, Oakland, CA 94612

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

SERVED ON (PRINT NAME) | MANNER OF SERVICE

SERVED BY (PRINT NAME) | TITLE

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ______________________
DATE

______________________
SIGNATURE OF SERVER

______________________
ADDRESS OF SERVER

______________________

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

Attachment

1.      Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) issued from February 1, 2007 to April 1, 2007 by YOU, or at YOUR direction, to Pacific Trust Lending or any of its employees, agents or assigns as commissions or any other payment in connection with any loan origination activity. For purposes of this subpoena duces tecum, the terms "YOU" and YOUR" shall refer to the responding party.

2.      Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) issued from February 1, 2007 to April 1, 2007 by YOU, or at YOUR direction, to Pacific Real Estate or any of its employees, agents or assigns as commissions or any other payment in connection with any loan origination activity.

3.      Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) issued from February 1, 2007 to April 1, 2007 by YOU, or at YOUR direction, to Pacific Real Estate Management Company or any of its employees, agents or assigns as commissions or any other payment in connection with any loan origination activity.

4.      Records of all compensation of any form (including, but not limited to, check, cash, wire transfer of otherwise) issued from February 1, 2007 to April 1, 2007 by YOU, or at YOUR direction, to James Bowman or any of his employees, agents or assigns as commissions or any other payment in connection with any loan origination activity.

5.      Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) issued from February 1, 2007 to April 1, 2007 by YOU, or at YOUR direction, to any business entity or person located at 500 West 8th Street, Suite 100, Vancouver, WA 98660, or any employees, agents or assigns of such person and/or entity, as commissions or  any other payment in connection with any loan origination activity.

6.      Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) issued from February 1, 2007 to April 1, 2007 by YOU, or at YOUR direction, to any business entity or person located at 2505 South 320th Street, Suite 260, Federal Way, WA 98003, or any employees, agents or assigns of such person and/or entity, as commissions or any other  payment in connection with any loan origination activity.

7.      Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) received by YOU from, or at the direction of, any title company, escrow company, mortgage lender, mortgage banker or mortgage broker from February 1, 2007 to April 1, 2007 as a result of any loan origination activity by Pacific Trust Lending or any of its employees, agents or assigns.

8.      Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) received by YOU from, or at the direction of, any title company, escrow company, mortgage lender, mortgage banker or mortgage broker from February 1, 2007

to April 1, 2007 as a result of any loan origination activity by Pacific Real Estate or any of it employees, agents or assigns.

     9.     Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) received by YOU from, or at the direction of, any title company, escrow company, mortgage lender, mortgage banker or mortgage broker  from February 1, 2007 to April 1, 2007 as a result of any loan origination activity by Pacific Real Estate Management Company or any of its employees, agents or assigns.

     10.     Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) received by YOU from, or at the direction of, any title company, escrow company, mortgage lender, mortgage banker or mortgage broker  from February 1, 2007 to April 1, 2007 as a result of any loan origination activity by James Bowman or any of his employees, agents or assigns.

     11.     Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) received by YOU from, or at the direction of, any title company, escrow company, mortgage lender, mortgage banker or mortgage broker  from February 1, 2007 to April 1, 2007 as a result of any loan origination activity by any business entity or person located at 2505 South 320th Street, Suite 260, Federal Way, WA 98003 or any employees, agents or assigns of such person and/or entity.

     12.     Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) received by YOU from, or at the direction of, any title company, escrow company, mortgage lender, mortgage banker or mortgage broker  from February 1, 2007 to April 1, 2007 as a result of any loan origination activity by any business entity or person located at 500 West 8th Street, Suite 100, Vancouver, WA 98660 or any employees, agents or assigns of any such person and/or entity.

     13. For each record of compensation produced in compliance with any of the above requests:

     a)     the HUD-1 or HUD-1A for each related mortgage loan transaction.

     b)     Any 1003 loan applications for each related mortgage loan transaction.

**PROOF OF SERVICE BY MAIL**

I am over the age of eighteen years and not a party to the within action. My business address is One Kaiser Plaza, Suite 1305, Oakland, California 94612, which business is located in the county where the mailing described below took place.

I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the United States Postal Service. On the date set forth below, at my place of business in Oakland, California, I served the within:

**SUBPOENA IN A CIVIL CASE-SIERRA PACIFIC MORTGAGE CO., INC.**

by placing a true copy thereof enclosed in a sealed envelope, with postage fully prepaid, for collection and mailing with the United States Postal Service where it would be deposited with the United States Postal Service that same day in the ordinary course of business, addressed as follows:

Angela M. Xavier
Attorney At Law
900 Cherry Avenue, Suite 300
San Bruno, CA 94583

Alan F. Cohen
101 Montgomery Street, Suite 2050
San Francisco, CA 94104

I certify and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on April 3, 2008, at Oakland, California.

Xinh Truong

AO88 (Rev. 12/06) Subpoena in a Civil Case

PROOF OF SERVICE

| | | |
|---|---|---|
| SERVED | 2:10PM DATE 4/3/08 | PLACE 50 IRON POINT CIRCLE, STE 200 FOLSOM, CA 95630 |
| SIERRA PACIFIC MORTGAGE CO., INC. | | |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| JAMIE SCOTT, EXECUTIVE ASSISTANT, AUTHORIZED TO ACCEPT | | PERSONAL |
| SERVED BY (PRINT NAME) | | TITLE |
| GARI GREENHALGH | | REGISTERED CALIFORNIA PROCESS SERVER #92-007/SACRAMENTO COUNTY |

DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ____________________
DATE

SIGNATURE OF SERVER

ONE HOUR LEGAL
1280 BOULEVARD WAY, #205
WALNUT CREEK, CA 94596
925-947-3470

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

| *Attorney or Party without Attorney:* JOSHUA A. ROSENTHAL<br>MEDLIN & HARGRAVE<br>ONE KAISER PLAZA, SUITE 1305<br>Oakland, CA 94612<br>*Telephone No:* 510-832-2900 *FAX No:* 510-832-2945 | | | | *For Court Use Only* |
|---|---|---|---|---|
| *Attorney for:* Plaintiff | *Ref. No. or File No.:* 85-0706-01 CMG BOWMAN | | | |
| *Insert name of Court, and Judicial District and Branch Court:* United States District Court, Northern District Of California | | | | |
| *Plaintiff:* BOWMAN<br>*Defendant:* CMG | | | | |
| **PROOF OF SERVICE SUBPOENA IN A CIVIL** | *Hearing Date:* Mon, Apr. 14, 2008 | *Time:* 10:00AM | *Dept/Div:* | *Case Number:* C073140SI |

1. *At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUBPOENA IN A CIVIL CASE; ATTACHMENT

3. a. *Party served:* SIERRA PACIFIC MORTGAGE CO., INC.
   b. *Person served:* JAMIE SCOTT, EXECUTIVE ASSISTANT, AUTHORIZED TO ACCEPT

4. *Address where the party was served:* 50 IRON POINT CIRCLE, SUITE 200, Folsom, CA 95630

5. *I served the party:*
   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on: Thu., Apr. 03, 2008 (2) at: 2:10PM
   b. *I received this subpena for service on:* Thursday, April 03, 2008

6. *Witness fees were not demanded or paid.*

7. *Person Who Served Papers:*
   a. GARI GREENHALGH

1280 BOULEVARD WAY #205
WALNUT CREEK, CA 94595
(925) 947-3470
FAX (925) 947-3480
WWW.ONEHOUR.NET

Recoverable Cost Per CCP 1033.5(a)(4)(B)

d. *The Fee for Service was:* $110.00

e. I am: (3) registered California process server
   (i) Employee
   (ii) *Registration No.:* #92-007
   (iii) *County:* SACRAMENTO

8. *I declare under penalty of perjury under the laws of the State of California and under the laws of the United States Of America that the foregoing is true and correct.*

Date:Fri, Apr. 04, 2008

(GARI GREENHALGH)

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | | |
|---|---|---|
| SERVED | 2:10PM DATE 4/3/08 SIERRA PACIFIC MORTGAGE CO., INC. | PLACE 50 IRON POINT CIRCLE, STE 200 FOLSOM, CA 95630 |
| SERVED ON (PRINT NAME) | JAMIE SCOTT, EXECUTIVE ASSISTANT, AUTHORIZED TO ACCEPT | MANNER OF SERVICE: PERSONAL |
| SERVED BY (PRINT NAME) | GARI GREENHALGH | TITLE: REGISTERED CALIFORNIA PROCESS SERVER #92-007/SACRAMENTO COUNTY |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ____________________
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER: ONE HOUR LEGAL
1280 BOULEVARD WAY, #205
WALNUT CREEK, CA 94596
925-947-3470

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT F

**Joshua A. Rosenthal**

**From:** Anthony R. Eaton [aeaton@wilkefleury.com]
**Sent:** Wednesday, April 02, 2008 3:32 PM
**To:** jrosenthal@mhlawcorp.com
**Subject:** Information Request
**Attachments:** bowman.pdf

Josh,

Attached is the information we have gathered.

Thanks,

Tony

Anthony Eaton
Wilke, Fleury, Hoffelt, Gould & Birney, LLP
400 Capitol Mall, 22nd Floor
Sacramento, CA 95814
Tel (916) 441-2430
Fax (916) 442-6664
Email: aeaton@wilkefleury.com

---

**CONFIDENTIALITY NOTICE: E-mail may contain confidential information that is legally privileged. Do not read this e-mail if you are not the intended recipient.**

**This e-mail transmission and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or uae of any of the information contained in or attached to this transmission is strictly prohibited. If you have received this transmission in error, please immediately notify us by reply e-mail, by forwarding the message to postmaster@wilkefleury.com <mailto:postmaster@wilkefleury.com> or by telephone at (916) 441-2430 and destroy the original transmission and its attachments without reading or saving in any manner. Thank you.**

---

loans closed 2/1/07 - 3/31/07

| | FIRST_NAME | LAST_NAME | LOAN_ OFFICE | LOAN_OFFICER_NAME | FUNDED_DATE |
|---|---|---|---|---|---|
| | | | 59002 | | 21-Feb |
| | | | 59002 | | 21-Feb |
| | | | 58992 | | 14-Feb |
| | | | 59002 | | 9-Feb |
| | | | 58996 | | 20-Feb |
| | | | 58996 | | 27-Feb |
| | | | 58996 | | 27-Feb |
| | | | 59004 | | 22-Feb |
| | | | 59004 | | 26-Feb |
| | | | 59001 | | 26-Feb |
| | | | 59004 | | 19-Mar |
| | | | 59000 | | 9-Mar |
| | | | 59000 | | 8-Mar |
| | | | 59000 | | 8-Mar |
| | | | 59004 | | 30-Mar |
| | | | 5900 | | 28-Mar |
| | | | 59001 | | 5-Mar |
| | | | 5900 | | 13-Mar |
| | | | 59002 | | 14-Mar |
| | | | 59001 | | 20-Mar |
| | | | 59002 | | 30-Mar |
| | | | 59004 | | 26-Mar |
| | | | 59001 | | 30-Mar |
| | | | 5899 | | 16-Mar |
| | | | 59001 | | 29-Mar |
| | | | 59001 | | 29-Mar |
| | | | 58989 | | 9-Mar |
| | | | 59000 | | 28-Mar |
| | | | 59000 | | 28-Mar |

29

GENERAL LEDGER DETAIL REPORT

SIERRA PACIFIC MORTGAGE CO.

*DETAIL POSTINGS FOR DATES 02/01/07 THRU 04/01/07*

| ACCOUNT NO / PER | DATE | JOURNAL | POSTING REMARKS | BEGINNING BAL | DEBIT | CREDIT | NET CHANGE | ENDING BAL |
|---|---|---|---|---|---|---|---|---|
| 3220-318 | | Loan Origination Fees: | | 00 | | | | 00 |
| 02 | 02/23/07 | OJ-J0551 | | | | 7,008 56 | | 7,008 56CR |
| 02 | 02/22/07 | OJ-J0551 | | | | 605 00 | | 7,613 56CR |
| 02 | 02/28/07 | GJ-J0641 | | | | 680 00 | | 8,293 56CR |
| 03 | 03/01/07 | CR-J0151 | | | | 4,966 20 | | 13,259 76CR |
| 03 | 03/06/07 | CR-J0166 | | | | 1,350 00 | | 14,609 76CR |
| 03 | 03/06/07 | CR-J0166 | | | | 3,315 51 | | 17,925 27CR |
| 03 | 03/08/07 | GJ-J0752 | | | | 6,173 28 | | 24,098 55CR |
| 03 | 03/08/07 | GJ-J0752 | | | | 582 00 | | 24,680 55CR |
| 03 | 03/09/07 | CR-J0174 | | | | 2,370 00 | | 27.050 55CR |
| 03 | 03/09/07 | CR-J0174 | | | | 797 00 | | 27,847 55CR |
| 03 | 03/09/07 | CR-J0174 | | | | 9,158 01 | | 37,005 56CR |
| 03 | 03/09/07 | OJ-J0830 | | | | 4,391 78 | | 41,397 34CR |
| 03 | 03/13/07 | OJ-J0888 | | | | 3,464 27 | | 44,861 61CR |
| 03 | 03/26/07 | CR-J0229 | | | | 3,826 06 | | 48,687 67CR |
| 03 | 03/26/07 | CR-J0229 | | | | 4,837 28 | | 53,524 95CR |
| 03 | 03/26/07 | CR-J0229 | | | | 11 89 | | 53,536 84CR |
| 03 | 03/26/07 | CR-J0229 | | | | 2,807 13 | | 56,343 97CR |
| 03 | 03/29/07 | CR-J0239 | | | | 997 37 | | 57,341 34CR |
| 03 | 03/30/07 | GJ-J1125 | | | | 5,333 38 | | 62,674 72CR |
| 03 | 03/30/07 | GJ-J1128 | | | | 1,480 19 | | 64,154 91CR |
| | | | | 00 | 00 | 64,154 91 | 64,154 91CR | 64,154 91CR |
| | | | REPORT TOTAL: | 00 | .00 | 64,154.91 | 64,154.91CR | 64,154.91CR |

# EXHIBIT G

WILKE, FLEURY, HOFFELT, GOULD & BIRNEY, LLP
ANTHONY R. EATON (SBN 238070)
400 Capitol Mall, Twenty-Second Floor
Sacramento, CA 95814
Telephone: (916) 441-2430
Facsimile: (916) 442-6664

Attorneys for Non-Party
SIERRA PACIFIC MORTGAGE COMPANY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES W. BOWMAN,<br>Plaintiff,<br>v.<br>CMG Mortgage, Inc., et al.<br>Defendants. | Case No. C 07 3140 SI (as stated on subpoena) |

**SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL, "ATTORNEY FOR DEFENDANTS"**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure SIERRA PACIFIC MORTGAGE COMPANY, INC. ("Sierra Pacific"), a non-party, objects to the Subpoena issued by Joshua A. Rosenthal ("Subpoena") on the following grounds.

**GENERAL OBJECTIONS**

1. Sierra Pacific generally objects to the Subpoena on the ground that the Subpoena was delivered to Sierra Pacific via facsimile to a general facsimile number. Delivery by fax to a general facsimile number at a corporation does not constitute valid service of a subpoena under Federal Rule of Civil Procedure 45.

2. Sierra Pacific generally objects that the Subpoena fails to allow reasonable time to comply as required by Federal Rule of Civil Procedure 45.

WILKE, FLEURY, HOFFELT, GOULD & BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

351334.1

- 1 -

SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL

3. Sierra Pacific generally objects that notice of the Subpoena has not been served to all parties as required by Federal Rule of Civil Procedure 45.

4. Sierra Pacific generally objects that the Subpoena subjects it to undue burden and cost to recover and produce any potentially responsive documentation.

5. Sierra Pacific generally objects to the Subpoena in that the document requests are not reasonably calculated to lead to the discovery of admissible evidence and, therefore, are outside the permissible scope of discovery.

6. Sierra Pacific generally objects to the Subpoena on the ground that it is overbroad in terms of the breadth of the document requests themselves.

7. Sierra Pacific generally objects to the Subpoena to the extent it purports to impose burdens beyond the scope allowable under the applicable Federal Rules of Civil Procedure.

8. Sierra Pacific generally objects to the Subpoena to the extent that it purports to seek or require the production of documents subject to, and in violation of the Consumer's Right to Privacy, Sierra Pacific's borrowers (who are also not parties to this lawsuit) Rights to Privacy and any other applicable privilege or protection.

9. Sierra Pacific generally objects to the production of any of Sierra Pacific's confidential or proprietary documents.

10. Sierra Pacific generally objects that the Subpoena purports to seek trade secrets and confidential commercial information in violation of Federal Rule of Civil Procedure 45.

**SPECIFIC OBJECTIONS**

**REQUEST NO. 1:**

Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) issued from February 1, 2007 to April 1, 2007 by YOU, or at YOUR direction, to Pacific Trust Lending or any of its employees, agents or assigns as commissions or any other payment in connection with any loan origination activity. For purposes of this subpoena deuces tecum, the terms "YOU" and "YOUR" shall refer to the responding party.

**OBJECTION TO REQUEST NO. 1:**

Sierra Pacific incorporates its General Obligations.

Sierra Pacific specifically objects to this document request on the ground that it is vague and ambiguous. The request is vague and ambiguous to the extent it seeks records of all compensation of any form issued to "Pacific Trust Lending or any of its employees, agents or assigns" without identifying Pacific Trust Lending and/or any of its employees, agents or assigns. The request is also vague and ambiguous to the extent that it seeks records of "commissions or any other payment in connection with any loan origination activity" without defining what falls under the term "loan origination activity."

Sierra Pacific further objects that this request is overbroad as to scope to the extent that it is not limited to records that have any bearing on, or relationship to, the matters at issue in the underlying action.

Sierra Pacific further objects to this document request on the ground that it seeks documents not relevant to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence.

Sierra Pacific further objects to this document request on the ground that it seeks documents from a non-party to this litigation that should be sought and obtained from the parties to the litigation and/or from James Bowman, the plaintiff in the related action.

Sierra Pacific further objects to this document request on the ground that it seeks production of confidential documents, the disclosure of which would violate the constitutional right to privacy of persons not a party to the underlying litigation.

Sierra Pacific further objects that disclosure of the requested documents would be in violation of California Code of Civil Procedure §1985.3.

Sierra Pacific further objects to this request to the extent that it seeks production of trade secrets and other confidential commercial information such as the identity and personal/financial information of the customers/borrowers of Sierra Pacific. Such information is critical in the marketing of mortgage services.

**REQUEST NO. 2:**

Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) issued from February 1, 2007 to April 1, 2007 by YOU, or at YOUR

direction, to Pacific Real Estate or any of its employees, agents or assigns as commissions or any other payment in connection with any loan origination activity.

**OBJECTION TO REQUEST NO. 2:**

Sierra Pacific incorporates its General Obligations.

Sierra Pacific specifically objects to this document request on the ground that it is vague and ambiguous. The request is vague and ambiguous to the extent it seeks records of all compensation of any form issued to "Pacific Real Estate or any of its employees, agents or assigns" without identifying Pacific Real Estate and/or any of its employees, agents or assigns. The request is also vague and ambiguous to the extent that it seeks records of "commissions or any other payment in connection with any loan origination activity" without defining what falls under the term "loan origination activity."

Sierra Pacific further objects that this request is overbroad as to scope to the extent that it is not limited to records that have any bearing on, or relationship to, the matters at issue in the underlying action.

Sierra Pacific further objects to this document request on the ground that it seeks documents not relevant to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence.

Sierra Pacific further objects to this document request on the ground that it seeks documents from a non-party to this litigation that should be sought and obtained from the parties to the litigation and/or from James Bowman, the plaintiff in the related action.

Sierra Pacific further objects to this document request on the ground that it seeks production of confidential documents, the disclosure of which would violate the constitutional right to privacy of persons not a party to the underlying litigation.

Sierra Pacific further objects that disclosure of the requested documents would be in violation of California Code of Civil Procedure §1985.3.

Sierra Pacific further objects to this request to the extent that it seeks production of trade secrets and other confidential commercial information such as the identity and personal/financial

information of the customers/borrowers of Sierra Pacific. Such information is critical in the marketing of mortgage services.

**REQUEST NO. 3:**

Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) issued from February 1, 2007 to April 1, 2007 by YOU, or at YOUR direction, to Pacific Real Estate Management Company or any of its employees, agents or assigns as commissions or any other payment in connection with any loan origination activity.

**OBJECTION TO REQUEST NO. 3:**

Sierra Pacific incorporates its General Obligations.

Sierra Pacific specifically objects to this document request on the ground that it is vague and ambiguous. The request is vague and ambiguous to the extent it seeks records of all compensation of any form issued to "Pacific Real Estate Management Company or any of its employees, agents or assigns" without identifying Pacific Real Estate Management Company and/or any of its employees, agents or assigns. The request is also vague and ambiguous to the extent that it seeks records of "commissions or any other payment in connection with any loan origination activity" without defining what falls under the term "loan origination activity."

Sierra Pacific further objects that this request is overbroad as to scope to the extent that it is not limited to records that have any bearing on, or relationship to, the matters at issue in the underlying action.

Sierra Pacific further objects to this document request on the ground that it seeks documents not relevant to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence.

Sierra Pacific further objects to this document request on the ground that it seeks documents from a non-party to this litigation that should be sought and obtained from the parties to the litigation and/or from James Bowman, the plaintiff in the related action.

Sierra Pacific further objects to this document request on the ground that it seeks production of confidential documents, the disclosure of which would violate the constitutional right to privacy of persons not a party to the underlying litigation.

Sierra Pacific further objects that disclosure of the requested documents would be in violation of California Code of Civil Procedure §1985.3.

Sierra Pacific further objects to this request to the extent that it seeks production of trade secrets and other confidential commercial information such as the identity and personal/financial information of the customers/borrowers of Sierra Pacific. Such information is critical in the marketing of mortgage services.

**REQUEST NO. 4:**

Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) issued from February 1, 2007 to April 1, 2007 by YOU, or at YOUR direction, to James Bowman or any of his employees, agents or assigns as commissions or any other payment in connection with any loan origination activity.

**OBJECTION TO REQUEST NO. 4:**

Sierra Pacific incorporates its General Obligations.

Sierra Pacific specifically objects to this document request on the ground that it is vague and ambiguous. The request is vague and ambiguous to the extent it seeks records of all compensation of any form issued to "James Bowman or any of his employees, agents or assigns" without identifying any of James Bowman's employees, agents or assigns. The request is also vague and ambiguous to the extent that it seeks records of "commissions or any other payment in connection with any loan origination activity" without defining what falls under the term "loan origination activity."

Sierra Pacific further objects that this request is overbroad as to scope to the extent that it is not limited to records that have any bearing on, or relationship to, the matters at issue in the underlying action.

Sierra Pacific further objects to this document request on the ground that it seeks documents not relevant to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence.

Sierra Pacific further objects to this document request on the ground that it seeks documents from a non-party to this litigation that should be sought and obtained from the parties to the litigation and/or from James Bowman, the plaintiff in the related action.

Sierra Pacific further objects to this document request on the ground that it seeks production of confidential documents, the disclosure of which would violate the constitutional right to privacy of persons not a party to the underlying litigation.

Sierra Pacific further objects that disclosure of the requested documents would be in violation of California Code of Civil Procedure §1985.3.

Sierra Pacific further objects to this request to the extent that it seeks production of trade secrets and other confidential commercial information such as the identity and personal/financial information of the customers/borrowers of Sierra Pacific. Such information is critical in the marketing of mortgage services.

**REQUEST NO. 5:**

Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) issued from February 1, 2007 to April 1, 2007 by YOU, or at YOUR direction, to any business entity or person located at 500 West 8th Street, Suite 100, Vancouver, WA 98660, or any employees, agents or assigns of such person and/or entity, as commissions or any other payment in connection with any loan origination activity.

**OBJECTION TO REQUEST NO. 5:**

Sierra Pacific incorporates its General Obligations.

Sierra Pacific specifically objects to this document request on the ground that it is vague and ambiguous. The request is vague and ambiguous to the extent it seeks records of all compensation of any form issued to "any business entity or person located at 500 West 8th Street, Suite 100, Vancouver, WA 98660, or any employees, agents or assigns of such person and/or entity" without identifying any such entities and/or any of those entities' employees, agents or assigns. The request is also vague and ambiguous to the extent that it seeks records of "commissions or any other payment in connection with any loan origination activity" without defining what falls under the term "loan origination activity."

Sierra Pacific further objects that this request is overbroad as to scope to the extent that it is not limited to records that have any bearing on, or relationship to, the matters at issue in the underlying action.

Sierra Pacific further objects to this document request on the ground that it seeks documents not relevant to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence.

Sierra Pacific further objects to this document request on the ground that it seeks documents from a non-party to this litigation that should be sought and obtained from the parties to the litigation and/or from James Bowman, the plaintiff in the related action.

Sierra Pacific further objects to this document request on the ground that it seeks production of confidential documents, the disclosure of which would violate the constitutional right to privacy of persons not a party to the underlying litigation.

Sierra Pacific further objects that disclosure of the requested documents would be in violation of California Code of Civil Procedure §1985.3.

Sierra Pacific further objects to this request to the extent that it seeks production of trade secrets and other confidential commercial information such as the identity and personal/financial information of the customers/borrowers of Sierra Pacific. Such information is critical in the marketing of mortgage services.

**REQUEST NO. 6:**

Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) issued from February 1, 2007 to April 1, 2007 by YOU, or at YOUR direction, to any business entity or person located at 2505 South 320th Street, Suite 260, Federal Way, WA 98003, or any employees, agents or assigns of such person and/or entity, as commissions or any other payment in connection with any loan origination activity.

**OBJECTION TO REQUEST NO. 6:**

Sierra Pacific incorporates its General Obligations.

Sierra Pacific specifically objects to this document request on the ground that it is vague and ambiguous. The request is vague and ambiguous to the extent it seeks records of all

compensation of any form issued to "any business entity or person located at 2505 South 320th Street, Suite 260, Federal Way, WA 98003, or any employees, agents or assigns of such person and/or entity" without identifying any such entities and/or any of those entities' employees, agents or assigns. The request is also vague and ambiguous to the extent that it seeks records of "commissions or any other payment in connection with any loan origination activity" without defining what falls under the term "loan origination activity."

Sierra Pacific further objects that this request is overbroad as to scope to the extent that it is not limited to records that have any bearing on, or relationship to, the matters at issue in the underlying action.

Sierra Pacific further objects to this document request on the ground that it seeks documents not relevant to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence.

Sierra Pacific further objects to this document request on the ground that it seeks documents from a non-party to this litigation that should be sought and obtained from the parties to the litigation and/or from James Bowman, the plaintiff in the related action.

Sierra Pacific further objects to this document request on the ground that it seeks production of confidential documents, the disclosure of which would violate the constitutional right to privacy of persons not a party to the underlying litigation.

Sierra Pacific further objects that disclosure of the requested documents would be in violation of California Code of Civil Procedure §1985.3.

Sierra Pacific further objects to this request to the extent that it seeks production of trade secrets and other confidential commercial information such as the identity and personal/financial information of the customers/borrowers of Sierra Pacific. Such information is critical in the marketing of mortgage services.

**REQUEST NO. 7:**

Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) received by YOU from, or at the direction of, any title company, escrow company, mortgage lender, mortgage banker or mortgage broker from February 1, 2007 to April

WILKE, FLEURY, HOFFELT, GOULD & BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

351334.1

- 9 -

SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL

1, 2007 as a result of any loan origination activity by Pacific Trust Lending or any of its employees, agents or assigns.

**OBJECTION TO REQUEST NO. 7:**

Sierra Pacific incorporates its General Obligations.

Sierra Pacific specifically objects to this document request on the ground that it is vague and ambiguous. The request is vague and ambiguous to the extent that it seeks records of compensation received "as a result of any loan origination activity by Pacific Trust Lending or any of its employees, agents or assigns" without defining what falls under the term "loan origination activity" or identifying Pacific Trust Lending and/or any of its employees, agents or assigns.

Sierra Pacific further objects to this request in that it calls for speculation and lacks foundation in that Sierra Pacific is unaware of any direction relative to compensation given by any (as of yet unidentified) title companies, escrow companies, mortgage lenders, mortgage bankers or mortgage brokers.

Sierra Pacific further objects to this request to the extent that it seeks production of trade secrets and other confidential commercial information such as the identity and personal/financial information of the customers/borrowers of Sierra Pacific. Such information is critical in the marketing of mortgage services.

Sierra Pacific further objects that this request is overbroad as to scope to the extent that it is not limited to records that have any bearing on, or relationship to, the matters at issue in the underlying action.

Sierra Pacific further objects to this document request on the ground that it seeks documents not relevant to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence.

Sierra Pacific further objects to this document request on the ground that it seeks production of confidential documents, the disclosure of which would violate Sierra Pacific's right to privacy as an entity which is not a party to the underlying litigation.

WILKE, FLEURY, HOFFELT, GOULD & BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

351334.1

- 10 -

SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL

**REQUEST NO. 8:**

Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) received by YOU from, or at the direction of, any title company, escrow company, mortgage lender, mortgage banker or mortgage broker from February 1, 2007 to April 1, 2007 as a result of any loan origination activity by Pacific Real Estate or any of its employees, agents or assigns.

**OBJECTION TO REQUEST NO. 8:**

Sierra Pacific incorporates its General Obligations.

Sierra Pacific specifically objects to this document request on the ground that it is vague and ambiguous. The request is vague and ambiguous to the extent that it seeks records of compensation received "as a result of any loan origination activity by Pacific Real Estate or any of its employees, agents or assigns" without defining what falls under the term "loan origination activity" or identifying Pacific Real Estate and/or any of its employees, agents or assigns.

Sierra Pacific further objects to this request in that it calls for speculation and lacks foundation in that Sierra Pacific is unaware of any direction relative to compensation given by any (as of yet unidentified) title companies, escrow companies, mortgage lenders, mortgage bankers or mortgage brokers.

Sierra Pacific further objects to this request to the extent that it seeks production of trade secrets and other confidential commercial information such as the identity and personal/financial information of the customers/borrowers of Sierra Pacific. Such information is critical in the marketing of mortgage services.

Sierra Pacific further objects that this request is overbroad as to scope to the extent that it is not limited to records that have any bearing on, or relationship to, the matters at issue in the underlying action.

Sierra Pacific further objects to this document request on the ground that it seeks documents not relevant to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence.

WILKE, FLEURY, HOFFELT, GOULD & BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

351334.1

- 11 -

SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL

Sierra Pacific further objects to this document request on the ground that it seeks production of confidential documents, the disclosure of which would violate Sierra Pacific's right to privacy as an entity which is not a party to the underlying litigation.

**REQUEST NO. 9:**

Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) received by YOU from, or at the direction of, any title company, escrow company, mortgage lender, mortgage banker or mortgage broker from February 1, 2007 to April 1, 2007 as a result of any loan origination activity by Pacific Real Estate Management Company or any of its employees, agents or assigns.

**OBJECTION TO REQUEST NO. 9:**

Sierra Pacific incorporates its General Obligations.

Sierra Pacific specifically objects to this document request on the ground that it is vague and ambiguous. The request is vague and ambiguous to the extent that it seeks records of compensation received "as a result of any loan origination activity by Pacific Real Estate Management Company or any of its employees, agents or assigns" without defining what falls under the term "loan origination activity" or identifying Pacific Real Estate Management Company and/or any of its employees, agents or assigns.

Sierra Pacific further objects to this request in that it calls for speculation and lacks foundation in that Sierra Pacific is unaware of any direction relative to compensation given by any (as of yet unidentified) title companies, escrow companies, mortgage lenders, mortgage bankers or mortgage brokers.

Sierra Pacific further objects to this request to the extent that it seeks production of trade secrets and other confidential commercial information such as the identity and personal/financial information of the customers/borrowers of Sierra Pacific. Such information is critical in the marketing of mortgage services.

Sierra Pacific further objects that this request is overbroad as to scope to the extent that it is not limited to records that have any bearing on, or relationship to, the matters at issue in the underlying action.

WILKE, FLEURY, HOFFELT, GOULD & BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

351334.1

- 12 -

SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL

Sierra Pacific further objects to this document request on the ground that it seeks documents not relevant to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence.

Sierra Pacific further objects to this document request on the ground that it seeks production of confidential documents, the disclosure of which would violate Sierra Pacific's right to privacy as an entity which is not a party to the underlying litigation.

**REQUEST NO. 10:**

Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) received by YOU from, or at the direction of, any title company, escrow company, mortgage lender, mortgage banker or mortgage broker from February 1, 2007 to April 1, 2007 as a result of any loan origination activity by James Bowman or any of his employees, agents or assigns.

**OBJECTION TO REQUEST NO. 10:**

Sierra Pacific incorporates its General Obligations.

Sierra Pacific specifically objects to this document request on the ground that it is vague and ambiguous. The request is vague and ambiguous to the extent that it seeks records of compensation received as a result of any loan origination activity by James Bowman or any of his employees, agents or assigns" without defining what falls under the term "loan origination activity" or identifying any of James Bowman's employees, agents or assigns.

Sierra Pacific further objects to this request in that it calls for speculation and lacks foundation in that Sierra Pacific is unaware of any direction relative to compensation given by any (as of yet unidentified) title companies, escrow companies, mortgage lenders, mortgage bankers or mortgage brokers.

Sierra Pacific further objects to this request to the extent that it seeks production of trade secrets and other confidential commercial information such as the identity and personal/financial information of the customers/borrowers of Sierra Pacific. Such information is critical in the marketing of mortgage services.

Sierra Pacific further objects that this request is overbroad as to scope to the extent that it is not limited to records that have any bearing on, or relationship to, the matters at issue in the underlying action.

Sierra Pacific further objects to this document request on the ground that it seeks documents not relevant to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence.

Sierra Pacific further objects to this document request on the ground that it seeks production of confidential documents, the disclosure of which would violate Sierra Pacific's right to privacy as an entity which is not a party to the underlying litigation.

**REQUEST NO. 11:**

Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) received by YOU from, or at the direction of, any title company, escrow company, mortgage lender, mortgage banker or mortgage broker from February 1, 2007 to April 1, 2007 as a result of any loan origination activity by any business entity or person located at 2505 South 320th Street, Suite 260, Federal Way, WA 98003 or any employees, agents or assigns of such person and/or entity.

**OBJECTION TO REQUEST NO. 11:**

Sierra Pacific incorporates its General Obligations.

Sierra Pacific specifically objects to this document request on the ground that it is vague and ambiguous. The request is vague and ambiguous to the extent that it seeks records of compensation received "as a result of any loan origination activity by any business entity or person located at 2505 South 320th Street, Suite 260, Federal Way, WA 98003 or any employees, agents or assigns of such person and/or entity" without defining what falls under the term "loan origination activity" or identifying any business entity or person located at 2505 South 320th Street, Suite 260, Federal Way, WA 98003 and/or any employees, agents or assigns of such person and/or entity.

Sierra Pacific further objects to this request in that it calls for speculation and lacks foundation in that Sierra Pacific is unaware of any direction relative to compensation given by

WILKE, FLEURY, HOFFELT, GOULD & BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

351334.1

- 14 -

SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL

any (as of yet unidentified) title companies, escrow companies, mortgage lenders, mortgage bankers or mortgage brokers.

Sierra Pacific further objects to this request to the extent that it seeks production of trade secrets and other confidential commercial information such as the identity and personal/financial information of the customers/borrowers of Sierra Pacific. Such information is critical in the marketing of mortgage services.

Sierra Pacific further objects that this request is overbroad as to scope to the extent that it is not limited to records that have any bearing on, or relationship to, the matters at issue in the underlying action.

Sierra Pacific further objects to this document request on the ground that it seeks documents not relevant to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence.

Sierra Pacific further objects to this document request on the ground that it seeks production of confidential documents, the disclosure of which would violate Sierra Pacific's right to privacy as an entity which is not a party to the underlying litigation.

**REQUEST NO. 12:**

Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) received by YOU from, or at the direction of, any title company, escrow company, mortgage lender, mortgage banker or mortgage broker from February 1, 2007 to April 1, 2007 as a result of any loan origination activity by any business entity or person located at 500 West 8th Street, Suite 100, Vancouver, WA 98660 or any employees, agents or assigns of such person and/or entity.

**OBJECTION TO REQUEST NO. 12:**

Sierra Pacific incorporates its General Obligations.

Sierra Pacific specifically objects to this document request on the ground that it is vague and ambiguous. The request is vague and ambiguous to the extent that it seeks records of compensation received "as a result of any loan origination activity by any business entity or person located at 500 West 8th Street, Suite 100, Vancouver, WA 98660 or any employees, agents

WILKE, FLEURY, HOFFELT, GOULD & BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

351334.1

- 15 -

SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL

or assigns of such person and/or entity" without defining what falls under the term "loan origination activity" or identifying any business entity or person located at 500 West 8th Street, Suite 100, Vancouver, WA 98660 and/or any employees, agents or assigns of such person and/or entity.

Sierra Pacific further objects to this request in that it calls for speculation and lacks foundation in that Sierra Pacific is unaware of any direction relative to compensation given by any (as of yet unidentified) title companies, escrow companies, mortgage lenders, mortgage bankers or mortgage brokers.

Sierra Pacific further objects to this request to the extent that it seeks production of trade secrets and other confidential commercial information such as the identity and personal/financial information of the customers/borrowers of Sierra Pacific. Such information is critical in the marketing of mortgage services.

Sierra Pacific further objects that this request is overbroad as to scope to the extent that it is not limited to records that have any bearing on, or relationship to, the matters at issue in the underlying action.

Sierra Pacific further objects to this document request on the ground that it seeks documents not relevant to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence.

Sierra Pacific further objects to this document request on the ground that it seeks production of confidential documents, the disclosure of which would violate Sierra Pacific's right to privacy as an entity which is not a party to the underlying litigation.

**REQUEST NO. 13:**

For each record of compensation produced in compliance with any of the above requests:

a) The HUD-1 or HUD-1A for each related mortgage loan transaction.

b) Any 1003 loan applications for each related mortgage loan transaction.

**OBJECTION TO REQUEST NO. 13:**

Sierra Pacific incorporates its General Obligations.

WILKE, FLEURY, HOFFELT, GOULD & BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

351334.1

- 16 -

SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL

Sierra Pacific further objects that this request is overbroad as to scope to the extent that it is not limited to records that have any bearing on, or relationship to, the matters at issue in the underlying action.

Sierra Pacific further objects to this document request on the ground that it seeks documents not relevant to the subject matter of this action or reasonably calculated to lead to the discovery of admissible evidence.

Sierra Pacific further objects to this document request on the ground that it seeks documents from a non-party to this litigation that should be sought and obtained from the parties to the litigation and/or from James Bowman, the plaintiff in the related action.

Sierra Pacific further objects to this document request on the ground that it seeks production of confidential documents, the disclosure of which would violate the constitutional right to privacy of persons not a party to the underlying litigation.

Sierra Pacific further objects to this request to the extent that it purports to seek or require the production of documents subject to, and in violation of the Consumer's Right to Privacy, Sierra Pacific's borrowers (who are also not parties to this lawsuit) Rights to Privacy and any other applicable privilege or protection.

Sierra Pacific further objects that disclosure of the requested documents would be in violation of California Code of Civil Procedure §1985.3.

Sierra Pacific further objects to this request to the extent that it seeks production of trade secrets and other confidential commercial information such as the identity and personal/financial information of the customers/borrowers of Sierra Pacific. Such information is critical in the marketing of mortgage services.

Dated: April 10, 2008

WILKE, FLEURY, HOFFELT,
GOULD & BIRNEY, LLP

BY: ______________________
ANTHONY R. EATON
Attorneys for Non-Party
SIERRA PACIFIC MORTGAGE COMPANY, INC.

**PROOF OF SERVICE**

I, Victoria Garner, declare:

I am a citizen of the United States and employed in Sacramento County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 400 Capitol Mall, Twenty-Second Floor, Sacramento, California 95814. On April 10, 2008, I served a copy of the within document(s):

**SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL, "ATTORNEY FOR DEFENDANTS"**

[X] by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

[ ] by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Sacramento, California addressed as set forth below.

[X] by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for delivery.

[ ] by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

Joshua A. Rosenthal
Medlin & Hargrave, P.C.
One Kaiser Plaza, Suite 1305
Oakland, CA 94612
Fax: (510) 832-2945

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on April 10, 2008, at Sacramento, California.

Victoria Garner

Victoria Garner

**PROOF OF SERVICE**

I, Victoria Garner, declare:

I am a citizen of the United States and employed in Sacramento County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 400 Capitol Mall, Twenty-Second Floor, Sacramento, California 95814. On April 10, 2008, I served a copy of the within document(s):

**SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL, "ATTORNEY FOR DEFENDANTS"**

☒ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Sacramento, California addressed as set forth below.

☐ by placing the document(s) listed above in a sealed __________ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a __________ agent for delivery.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

Alan Cohen
101 Montgomery Street, Suite 2050
San Francisco, CA 94104
Fax: (415) 984-1953

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on April 10, 2008, at Sacramento, California.

Victoria Garner

Victoria Garner

# EXHIBIT H



MEDLIN &
HARGRAVE
A PROFESSIONAL CORPORATION

JOSHUA A. ROSENTHAL
*jrosenthal@mhlawcorp.com*

April 3, 2008

***Via Facsimile & U.S. Mail***

Alan F. Cohen
101 Montgomery Street, Suite 2050
San Francisco, CA 94104

**Re:** ***Pacific Real Estate Man. Company, Inc. et al. v. CMG Mortgage, Inc. et al.***
***U.S. District Court, Northern District of California***
***Case No.: C07-3140 MEJ***

Dear Mr. Cohen:

Please consider this letter a meet and confer attempt with respect to your clients' inspection demand response. Inspection demand 1(*l*) sought:

Copies of all loan files started by any loan officers or employees at the Vancouver Branch or Federal Way Branch between September 1, 2006 and February 1, 2007.

Plaintiff's response was:

Plaintiff is unable to comply because he has no documents in his possession, custody or control responsive to this request. All such documents were shipped to Defendants by or before March 2007.

As you know, we issued subpoenas to about 9 title companies and Sierra Pacific Mortgage. What we discovered is about 29 loans closed by the offices located at the Vancouver and Federal Way locations. During February and March of 2007, it was taking an average of 45 days for a loan to close. Thus, it would have been impossible for the Vancouver and/or Federal Way offices to start most, if not all, of these loans prior to January 31, 2007. The response provided by your clients to the above inspection demand is simply not credible. There are loans that closed in the middle of February, 2007. This would mean that your clients started a loan on February 1, 2007 and closed it within a few weeks. That is simply impossible.

MEDLIN & HARGRAVE
*A Professional Corporation*

Alan Cohen
Re: *Pacific Real Estate Management Company, Inc. et al v. CMG Mortgage, Inc. et al.*
April 3, 2008
Page 2

Thus, the response provided by your clients is incorrect and misleading. The response states that all responsive loan files were provided to CMG. That simply is not true. There were loan files that were started prior to January 31, 2007 that were then closed in February and March of 2007 with Sierra Pacific Mortgage. These files were not provided to CMG. Even if your clients gave their only copy of the loan file to Sierra Pacific Mortgage upon closing, the response provided is not accurate. The loans that were started prior to January 31, 2007 and closed thereafter were provided to Sierra Pacific Mortgage, not CMG. Moreover, even if it can be believed that your clients did not retain any copy of the loan file after the loan closed with Sierra Pacific Mortgage, it certainly maintained electronic records of the documents that comprise the file through Calyx Point, the loan software program your clients use.

Due to your clients' misleading and false response to this inspection demand CMG had to subpoena records of title companies and Sierra Pacific Mortgage to prove this misrepresentation. This was done at significant cost to CMG both in attorney time and costs of service. We are hereby demanding that you comply with your discovery obligations and provide all documents comprising the loan files of the loans started prior to January 31, 2007 and completed thereafter.

As you know, we are re-subpoenaing Sierra Pacific Mortgage for records of payments made in February and March, 2007 and 1003's and HUD-1's. It is costing significantly more money and effort to obtain this information from third parties than if your clients had complied with the discovery request initially propounded. Thus, I would encourage your clients to make sure the requested documents are produced immediately and before further expenditure of money and effort to obtain the documents. Rest assured, CMG will seek the costs of discovering this information from third parties from plaintiffs. Additionally, you signed the inspection demand response stating that all loan files started prior to January 31, 2007 had been provided to CMG. Per Rule 11, an attorney that signs a document is certifying the information being provided has evidentiary support to the best of his knowledge. Perhaps you did not know or understand what was being sough when you provided the response. However, the nature of the documents being sought have been explained to you in detail. You have had reason to know for some time that the response provided is not correct.

Now that we have affirmative evidence that your clients closed loans started with CMG, we have affirmative proof that your clients have breached the Branch Manager Agreements by not closing all loans started prior to January 31, 2007 with CMG. Branch Management and Employment Agreement, Para. 20. He also has misappropriated CMG's trade secrets. The loan files, whether prepared by the Branch or coming into possession of the Branch, are CMG's proprietary information. Branch Management and Employment Agreement, Para. 14. Since Bowman used that proprietary information for his own benefit and did not pay the money otherwise due to CMG, it has misappropriated CMG's trade secrets. This activity constitutes

**MEDLIN & HARGRAVE**
*A Professional Corporation*

Alan Cohen
Re: *Pacific Real Estate Management Company, Inc. et al v. CMG Mortgage, Inc. et al.*
April 3, 2008
Page 3

independent breaches of the agreements and independent torts against Mr. Bowman. Thus, your failure to provide the information that you know constitutes misappropriation of CMG's trade secrets and money makes the discovery violation all the more egregious.

CMG is demanding an amended response to the inspection demand and documents in compliance with inspection demand 1(*l*). I expect a response no later than April 10, 2008. If you wish to discuss this matter, please do not hesitate to contact me.

Sincerely,

Joshua A. Rosenthal

JAR:xt
cohen.06.jar.wpd

cc:    Angela Xavier
       Client

# EXHIBIT I

LAW OFFICES OF
ALAN F. COHEN

101 MONTGOMERY STREET
SUITE 2050
SAN FRANCISCO, CA 94104
TEL: 415.984.1943
FAX: 415.984.1953
cohenlaw@mindspring.com

April 10, 2008

**Via email and U.S. Mail**

Joshua Rosenthal
Medlin & Hargrave, P.C.
One Kaiser Plaza, Suite 1305
Oakland CA 94612

Re: *Bowman v. CMG, Inc. et al.* – Discovery Issues

Dear Josh:

I am writing to follow up on our telephone conversation earlier and to respond to your letters dated April 3.

**Plaintiff's Special Interrogatory No. 1**

First, thank you for your courtesy in agreeing to an informal correction of Special Interrogatory No. 1. You agreed that Defendants will respond to the interrogatory as if it had referenced "service release premiums" rather than "service *yield* premiums." In return, you asked for and I agreed to grant an additional week for you to respond to the interrogatories.

It also sounded as if you were likely going to object to the interrogatory rather than respond substantively; if I got the wrong impression, then the following discussion is irrelevant. We did not pursue this issue, but I am writing now to meet and confer over this issue in hopes that we will not have to bring this matter before the Court.

Defendants drafted Mr. Bowman's Branch Management Agreement to provide that he was to receive Net Profits based on "all income earned and derived from the Branch Office." This is exceedingly broad phrasing which, by its plain language, encompasses more than just loan origination fees to include all income generated by the Branches, including the aforementioned service release premiums. In this breach of contract action, Mr. Bowman is entitled to an award that includes all such income flowing from the Branch operations. Defendants are free to contest this point, I suppose, but they will have to do so at trial or by dispositive motion, after Plaintiffs have had an opportunity to conduct discovery.

**Defendants' Meet & Confer Letter**

Defendants' document request sought copies of "loan files" started by any employee of the Vancouver or Federal Way branches between September 1, 2006 and February 1, 2007. As Mr. Bowman responded originally, he does not have in his possession, custody, or control any such "loan files" as that term is commonly used in his industry. What you are now asking for are other documents that might relate to such loans, including database records. That is not what you asked for; it is not Mr. Bowman's duty to supplement an inartfully drafted document request by anticipating what you really meant.

Based on the plain language of your request, you are not entitled to the documents you are now asking for, and the court would probably deny any motion to compel based on that alone. More importantly, however, the information within these documents is protected by the borrowers' financial privacy rights. The documents referenced in your letter have to do with loans brokered by Mr. Bowman's employer, Sierra Pacific Mortgage. It is my understanding that Sierra Pacific's counsel has informed you that they, too, believe your requests seek private information and that they will not produce any such documents absent an order from the Court. Mr. Bowman is a Sierra Pacific employee; he cannot produce documents his employer deems to be private regardless of whether they are within his possession, custody, or control. For Mr. Bowman to produce these records would breach his obligations to both the borrowers and his employer. If he were to produce these documents he would likely be fired and perhaps subjected to additional civil and possibly criminal liability in the bargain. If you disagree, you will have to take this matter up with Sierra Pacific.

**Plaintiff's Meet & Confer Letter**

I have reviewed your response to Plaintiffs' meet and confer letter of March 21. Your objections to production are groundless. While corporations may have a limited right of privacy in certain situations, that cannot by any stretch of the imagination encompass basic information such as organizational charts or bylaws. I can only interpret such baseless objections as a further indication that Defendants have much to hide.

If your objection to Request No. 22 is that it is overbroad, I am happy to narrow it to exclude foreclosure lawsuits or the like. I invite you to meet and confer further so we can arrive at language that would satisfy both of us.

I agree that Request No. 23 is vague and withdraw my complaint about your response.

As to Requests Nos. 6 and 7, your objection is misplaced. The requests are worded very broadly: they ask for documents "evidencing, pertaining to, or referring to" reserves and security deposits. CMG's accounting and banking records would satisfy all three criteria. You state that we should ask for the banking records specifically, but that is not necessary given the broad but unexceptional language in the request. You also state that you would then object to the requests, but please note that you did not object to the original request and therefore have waived such objections even if they were valid (which they are not).

I will not reiterate the other points raised in my meet and confer letter. If you are willing to change your position in response to the above or in response to a more careful reading of my original letter, please let me know by the end of the day on Friday, April 11. Otherwise, we will clearly have exhausted all reasonable efforts to resolve the disputes informally and will proceed to appeal directly to the Court.

Sincerely,

Alan F. Cohen

cc:     Angela Xavier
        Client