David R. Medlin       (SBN 77417)
G. Bradley Hargrave   (SBN 173911)
Joshua A. Rosenthal   (SBN 190284)
MEDLIN & HARGRAVE
A Professional Corporation
One Kaiser Plaza, Suite 1305
Oakland, CA  94612
Telephone:   (510) 832-2900
Facsimile:   (510) 832-2945
E-mail:      *jrosenthal@mhlawcorp.com*

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| James W. Bowman, Jr. and Pacific Real Estate Management Company, Inc., a Washington Corporation,<br><br>                    Plaintiffs,<br>vs.<br><br>CMG Mortgage Inc., a California Corporation; CMG Mortgage, Inc., d/b/a Pacific Guarantee Mortgage, CMG Mortgage Services, Inc., a California Corporation, CMG Mortgage Services, Inc. d/b/a Pacific Guarantee Mortgage,<br><br>                    Defendants.<br>_____ / | Case No.: C 07 3140 SI<br><br>NOTICE OF MOTION, MOTION AND SUPPORTING MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO COMPEL COMPLIANCE WITH SUBPOENA<br><br>Date:  June 6, 2008<br>Time:  9:00 a.m.<br>Dept:  Courtroom 10<br>Judge: Honorable Susan Illston<br><br>File date: June 14, 2007<br>Trial date: August 28, 2008 |

## I.  NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on June 6, 2008, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 10 of the above-entitled court, attorneys for Defendants CMG Mortgage Inc. will and hereby do move this court to compel compliance with a subpoena served on third party witness, Sierra Pacific Mortgage, Inc., pursuant to FRCP 45(C)(2)(b)(i).

This Motion to Compel is based on this Notice, the Memorandum of Points and Authorities filed concurrently herewith, the declaration of Joshua A. Rosenthal, the pleadings on file herein and on such oral and documentary evidence that may be presented at the hearing on this matter.

///

///

1

NOTICE OF MOTION, MOTION AND SUPPORTING MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO COMPEL C 07 3140 SI
M:\CMG\85-0706-02 Bowman\Motion\Motion to compel compliance\P's & A's1.wpd

## II. STATEMENT OF ISSUES PRESENTED

Defendant CMG Mortgage, Inc. ("CMG") is moving to compel compliance with a subpoena served on Sierra Pacific Mortgage, Inc. ("Sierra Pacific"). Sierra Pacific served only objections to the subpoena and refused to produce responsive documents. Counsel for defendant CMG was in contact with counsel for Sierra Pacific, who refused to produce the documents requested, even with a protective order, absent a court ordering. As will be explained herein, the documents requested are directly relevant to CMG's defenses in this matter. Sierra Pacific, plaintiff Bowman's current employer, has colluded with Bowman to refuse to produce documents that establish that Bowman engaged in theft from CMG, his former employer. The misappropriated funds will act as an offset of plaintiffs' damages, to the extent there are any, could completely bar recovery on an unclean hands defense and could constitute an independent action for breach of contract and violation of the Uniform Trade Secrets Act.

Plaintiff Jim Bowman ("Bowman") and his company, plaintiff Pacific Real Estate Management Co., Inc., ("PREMCO") (collectively referred to as "Plaintiffs") sued CMG for an alleged failure to pay wages and for money allegedly due under contracts between the parties. Bowman was the branch manager for two CMG branch offices in Washington state. Bowman's company, PREMCO, had a contract with CMG whereby it provided services and facilities to CMG, in connection with the operations of the two branch offices.

Bowman, in his capacity as branch manager, was paid in two ways. First, he was paid based on his individual performance as a CMG loan officer. Thus, he was paid twice a month on the basis of how many loans he personally closed. Second, Bowman received the net profits of both branches, as part of a profit sharing plan. He received this money once a month, if there were, and to the extent there were, any net profits. The net profit/profit sharing calculation was based upon the actual profits of the branches and was calculated by determining gross revenue of the branches, offset by any and all expenses of the branches. PREMCO was paid separately, and directly, for the services it provided to CMG. All payments to PREMCO are considered an expense of the branches, for purposes of determining any net/profit sharing.

///

1    Per the contracts at issue, CMG notified Plaintiffs of termination of the two branches in
2 December of 2006.  The termination was effective at the close of business on January 31, 2007.
3 Pursuant to Bowman's employment agreement, any loan <u>started</u> prior to 5 p.m., on the day of
4 termination, was to have been closed by CMG after termination, with all income derived therefrom
5 belonging to CMG.  (See Exhibit A, para. 20).  Loans which are in process at the time of a loan
6 agent's termination are commonly referred to in the industry as "pipeline" loans.

7    In December of 2006 and January of 2007, the entire loan process, from initial in-take to
8 funding, was taking about 45 days, on average.  At this same time Plaintiffs' branches had been
9 closing, on average, about 30 loans per month, i.e., about 1 loan each day.  Obviously in order to
10 continuously close 1 loan every day, this necessarily means that, on average, the branches were also
11 starting a new loan almost every day.  These loans at various stages, in process, are the pipeline
12 loans.

13    Because Bowman reported there were no pipeline loans at termination, CMG propounded an
14 inspection demand to obtain information about Bowman's loan production, i.e., to learn about the
15 ultimate disposition of pipeline loans as to which CMG would clearly be owed money.  (Exhibit B).
16 The requested documents, if produced, would demonstrate when each loan was started, whether it
17 was transferred to another broker, when it closed and how much money was earned on it.  Plaintiffs'
18 response was that all responsive documents had been returned to CMG.  (Exhibit C). In other words,
19 once again, Plaintiffs were contending that there were zero loans in process at termination.  For this
20 to be true it would mean that not one loan had been started in the 45 or so days immediately
21 preceding termination, and at the same time, that every single loan in process had closed.  This
22 would truly be an incredible set of circumstances, entirely unique in the industry, and certainly
23 unlike CMG's experiences with scores of branch offices throughout the country.

24    Since Plaintiffs refused to honor their discovery obligation, CMG had no choice but to select
25 nine title companies which Plaintiffs had done business with in the past (CMG knew this
26 information based on checks it had received from previous loans closed by Plaintiffs) and issued
27 subpoenas seeking checks paid by those title companies to Bowman or PREMCO, as well as the
28 corresponding closing statements for any such checks.  This was an expensive shot in the dark,

because there was no guarantee that these particular title companies had worked on any relevant transactions in February or March of 2007. Additionally, CMG was forced to serve the subpoena at issue to obtain the records from Bowman's current employer.

CMG served the subpoenas and received relevant responses from two of the title companies. (Exhibit D). Specifically, CMG learned that, contrary to Plaintiffs' now demonstrably false assertion, in truth and in fact, at least two loans were closed by Bowman in February, 2007 and one in early March, 2007. Obviously, given an average turn around time of 45 days, loans closed in early March, but most certainly loans closed in February, had to have been started before January 31, 2007. CMG's suspicion that the discovery response provided by Plaintiffs was false and misleading was thus confirmed.

As indicated, CMG also subpoenaed this same information from Bowman's current employer, Sierra Pacific Mortgage. Sierra Pacific Mortgage first refused to comply because it claimed the subpoena was not in technical compliance with Rule 45. CMG disagreed, but in order to appease Sierra Pacific Mortgage, and to expedite compliance, CMG re-served the subpoena. (Exhibit E). In response, Sierra Pacific Mortgage provided only a summary of the dates loans were closed by Bowman and the amounts due to him. (Exhibit F). However, Sierra Pacific refused to provide the necessary documents in the loan file to substantiate the information and then served a lengthy objection refusing otherwise to comply with the subpoena at all. (Exhibit G). It is worth noting, however, that Sierra Pacific Mortgage acknowledges the existence of 29 responsive files, of which in excess of 15 were closed within 45 days of February 1, 2007, (thus, almost certainly CMG pipeline loans).

## III. ARGUMENT

### A. FRCP 45 Allows A Subpoenaing Party To Obtain The Requested Documents.

FRCP 45(C)(2)(b)(I) allows a party to move the issuing court for an order for compliance of the subpoena. The subpoena at issue was properly served on Sierra Pacific on April 3, 2008. Thereafter Sierra Pacific served objection to the entire subpoena and refused to provide documents in response to any of the categories sought. The objections are improper and CMG is seeking that compliance be compelled.

Defendants will respond to each objection - as they are similar as to each request.

1) Sierra Pacific objected that the subpoena was served by facsimile. In fact, the subpoena was personally served and defendants have attached the proof of service hereto. See Exhibit E.

2) Sierra Pacific has objected that the documents are not likely to lead to the discovery of admissible evidence. While this may be a proper objection for a party to litigation, it is completely improper for a third party to make. Sierra Pacific has no standing to raise a relevancy objection nor does it have any basis for knowing what is and is not relevant in a lawsuit that it is not a party to.

3) Sierra Pacific objected that the documents being sought by the subpoena are documents that should be sought from James Bowman. While this is probably not a proper objection - CMG has tried to obtain both the loan related documents from Bowman as well as the checks sought by the subpoena. Bowman's counsel has stated that it will not produce the loan related documents because Sierra Pacific will not allow him to. (Exhibit H). Additionally, Bowman has refused to produce the check indicating compensation for loan activity in the inspection demand propounded on him. (Exhibit I).

Defendants would gladly drop the demand that Sierra Pacific comply with this subpoena if Bowman would comply with his discovery obligations. Further, it is either disingenuous for Sierra Pacific to make the argument that the loan related documents are ones that should be produced by Bowman if it is telling Bowman not to produce them (as represented by Bowman's counsel in his April 10, 2008 letter). Alternatively, Bowman's counsel is not being honest in his April 10, 2008, meet and confer letter when he states that Sierra Pacific won't allow Bowman to release the information.

**B.    The Documents Sought.**

Defendants are seeking two categories of documents from Sierra Pacific - the first 12 request records of payments for loan activities to Bowman or the former CMG branches related to any loan activity for the two month period after plaintiffs' termination. This is to determine how much

money was earned by plaintiffs on loans that were started while plaintiffs' were still affiliated with defendants. Of course, this is information that Bowman could have provided himself, but refused to do so. This includes checks or payments from title companies or lenders directly to Sierra Pacific and payments made by Sierra Pacific to Bowman, the branches or his employees.

This was actually information that was provided by Sierra Pacific, just not in a form that can be used as evidence. (Exhibit F). Sierra Pacific provided a heavily redacted spreadsheet with the payment date of funds to plaintiffs and the amounts. However, without any connection to the loans at issue, it is impossible to use the information provided. What CMG asked for were the checks that so indicate these payments. Sierra Pacific provided a list of the amounts and the payments. Thus, providing the actual checks should not be a problem. There seems to be no basis for Sierra Pacific's objection, in light of the information that it provided. Additionally, providing copies of the payments from the title companies to Sierra Pacific on closed loans just indicates how much money was received by Sierra Pacific on a closed loan. It doesn't concern any privacy rights of third parties or trade secrets. It just shows how much was paid. This information is extremely important to CMG because these are loans that should have been closed with CMG and this is income that should have been earned by CMG. It acts as a set off against any money sought by plaintiffs and it could act as a complete bar to his claims. Thus, there is simply no excuse not to provide these documents. Copies of the checks are evidence of the payment to Bowman. Since the subpoena was properly served and Sierra Pacific obviously understands the documents sought, it should be compelled to comply with requests 1-12.

Request 13 seeks the loan applications and the HUD-1's (closing statements) of all loans started by Bowman or the branches between February 1, 2007 and April 1, 2007. The loan application would indicate when the loan was started and the closing statement would indicate when the loan closed and how much money was earned in connection with the loan. Sierra Pacific has objected that the privacy rights of its customers are at stake.

To the extent that there are any privacy rights at stake, the overwhelming need for this information outweighs any privacy interests of third parties. <u>Saca v J.P. Moylineaux Studio Ltd.</u>2008 WL 62181, page 4 (E.D. Cal. 2008) . The federal courts have held that in interpreting the

privacy rights of third parties, the need for the information in the litigation is to be balanced with the sensitivity of the information sought. <u>Valley Bank of Nevada v. Superior Court</u> (1975) 15 Cal.3d 652, 657. The information being sought is not particularly intrusive into the privacy rights of the third party borrowers. CMG had offered to Sierra Pacific to redact much of the information on the loan applications, because all CMG is interested in was the date the loan application was taken and information to identify the loans. However, Sierra Pacific did not take CMG up on its offer. Declaration of Joshua A. Rosenthal, Para. 11 Additionally, CMG offered to allow Sierra Pacific to redact information from the closing statement that included any private information about the borrower because CMG was only interested in the closing date, the amount of the loan and the amount payed to Sierra Pacific. However, Sierra Pacific refused that compromise as well. Declaration of Joshua A. Rosenthal, Para. 11. In subsequent discussions, counsel for Sierra Pacific has suggested that perhaps these issues could be resolved by the execution of a protective order. Declaration of Joshua A. Rosenthal, Para. 12.

      Sierra Pacific is also insisting that CMG provide notice to the consumer pursuant to California Code of Civil Procedure Section 1983.6. However, CMG cannot do that, as it does not know the identity of the consumers. As Sierra Pacific is aware, CMG knows that Bowman conducted loan activity with Sierra Pacific during a two month period after CMG terminated him. However, CMG does not know the specifics of the loans. Thus, CMG cannot provide consumer notice because it does not have the identity of the consumers. Sierra Pacific has the identity of the consumers and it is the only party, other than Bowman, that can provide such notice. The court has required the party in possession of such information to provide notice to the consumer where necessary. <u>Valley Bank of Nevada v. Superior Court</u> (1975) 15 Cal.3d 652, 658. If this court requires the consumers receive notice, CMG respectfully requests that Sierra Pacific be ordered to provide the notice since it is the only party in possession of the information. In a conversation on May 2, 2008, counsel for Sierra Pacific agreed that he could perhaps agree to provide the consumer notice and that would probably satisfy his client's concerns. Declaration of Joshua A. Rosenthal, Para. 12. If these issues are resolved prior to the hearing of this matter, CMG will certainly take the motion off calendar.

1    Thus, CMG is asking the court to either order the documents produced as requested, perhaps
2 with a discovery protective order in place, or order them produced and redacted so CMG can have
3 the information it needs and Sierra Pacific can feel comfortable with providing the information.
4 Sierra Pacific's counsel had represented that it was seeking court guidance, which to CMG's counsel
5 means he will not produce the documents without a court order.  These actions have certainly
6 frustrated the litigation process, but CMG respectfully requests that this court order Sierra Pacific's
7 compliance with the subpoena.

## IV.    CONCLUSION

9    Sierra Pacific was served with a proper subpoena seeking documents related to loan activity
10 by Plaintiffs in violation of Plaintiffs' contract with CMG.  The information sought will, act as an
11 offset against any money being sought by plaintiffs, could act as a complete bar to plaintiffs
12 recovery and will support stand alone causes of action against plaintiffs for theft of trade secrets and
13 breach of contract.  Thus, the importance of the information to the lawsuit is very high.  As
14 demonstrated, CMG did everything it could to seek this information from other sources, including
15 Bowman who refused (and is the subject of a motion to compel currently pending).  In light of the
16 importance of the information, CMG respectfully requests that this court order the documents be
17 produced pursuant to the subpoena.  If necessary, it is requested that the court order any relief such
18 as redaction or a protective order, in order to protect any privacy interests of third parties, if any are
19 being threatened by this subpoena.

21 Date:   May 2, 2008                    **MEDLIN & HARGRAVE**
                                          A PROFESSIONAL CORPORATION

                                          /s/
                                          Joshua A. Rosenthal,
                                          Attorneys for Defendants