LAW OFFICES OF
# ALAN F. COHEN

101 MONTGOMERY STREET
SUITE 2050
SAN FRANCISCO, CA 94104
TEL: 415.984.1943
FAX: 415.984.1953
cohenlaw@mindspring.com

May 8, 2008

**Via E-Filing and U.S. Mail**

Honorable Susan Illston
United States District Court
Northern District of California
450 Golden Gate Ave.
Courtroom 10, 19th Floor
San Francisco, CA 94102

Re: *Bowman et al. v. CMG Mortgage, Inc. et al.* – Case No. 3:07-cv-03140-SI

Plaintiffs' Motion to Compel Production of Documents

Dear Judge Illston:

Plaintiffs James Bowman and Pacific Real Estate Management Company, Inc. (PREMCO) request that the Court compel Defendants CMG Mortgage, Inc., and CMG Mortgage Services, Inc. to produce documents in response to three categories of requests having to do with:

1) Unlawful "security deposits" extracted by Defendants from their employee, Mr. Bowman;

2) Unlawful "Reserves" also extracted by Defendants;

3) Previous complaints against Defendants.

Plaintiffs have exhausted attempts to resolve this dispute informally and therefore seek relief through the procedure outline in the Court's Case Management Conference Order.

Accompanying this letter brief is a supporting Declaration of Alan F. Cohen attaching the following relevant exhibits:

Tab A:  Plaintiff's Request for Production of Documents
Tab B:  Defendants' Response to the Request for Production of Documents
Tab C:  Plaintiff's meet and confer letter, dated March 21, 2008
Tab D:  Defendants' response to Plaintiffs' letter, dated April 3, 2008
Tab E:  HUD Mortgage Letter 00-15
Tab F:  Branch Management and Employment Agreement
Tab G:  Facilities Agreement
Tab H:  Excerpts from deposition of Paul Chevez

**Statement of Relevant Facts and Issues**

This is an employment case, brought by Mr. Bowman against his former employers after they failed to pay him all wages owed at the time of his termination. Defendants are mortgage brokers and also operate a mortgage bank, originating and financing residential mortgages from their headquarters in San Ramon, California.

Defendants employed Mr. Bowman from December 2003 until January 31, 2007 as a Branch Manager of two branches in Washington State.

Like most of Defendants' other Branch Managers, Mr. Bowman was employed under a "net branching" arrangement. This means is that the Branch Managers' compensation is tied to the net profits of their branches, calculated by subtracting Branch operating Expenses from Gross Income. Just what properly constituted "Expenses" and "Gross Income" in the parties' agreements are contested issues in this case. A copy of this agreement is attached under Tab F to the Cohen Decl.

Net branch arrangements are disfavored by the Department of Housing and Urban Development because loans insured by HUD may only be originated, serviced, purchased, held, or sold by HUD-approved mortgagees. The lender or broker violates HUD regulations if the net branch is in any respect a separate entity rather than a mere arm of the mortgagee. *See, e.g., HUD Mortgagee Letter 00-15*, attached under Tab E of the supporting Declaration. Numerous aspects of Defendants' agreements with Mr. Bowman were prohibited by HUD, because they required him, among other things, to enter into contracts with vendors under his own name or that of his corporation, PREMCO, to indemnify Defendants against losses, and to pay directly for branch expenses. *Id.*

Defendants' agreements with Mr. Bowman were also unlawful under employment law principles, because they sought at every turn to make him an insurer of Defendants' business losses. This if forbidden under California law. *See, e.g., Hudgins v. Neiman Marcus Group, Inc.* (1995) 34 Cal.App.4th 1109, 1118-1124.[1] In fact, the closer one looks at Defendants' net branching arrangement, the more one finds unlawful employment practices. Where it suited Defendants, they treated Mr. Bowman and the Branch Managers as employees; where it suited them to treat the Branch Managers as independent entities they did so, to the Branch Manager's great detriment. As a means of skirting HUD regulation, Defendants also required the Branch Managers to maintain a separate corporate entity; Defendants then entered into a so-called "Facilities Agreement" with both the Branch Manager and the separate entity.

Defendants' Facilities Agreement required Mr. Bowman to pay them a "security deposit" which Defendants could apply, at their sole discretion, to any debt Defendants claimed Mr. Bowman owed them. See Tab G at ¶ 2.1. This is an unlawful cash bond. Labor Code § 402. Defendants may take the position contract is not with Mr. Bowman, their employee, but only with a separate corporation, PREMCO. This argument fails for at least three reasons: 1) the language of the agreement plainly shows that Mr. Bowman is a party, 2) any money paid by PREMCO came from Mr. Bowman, and 3) Defendants may not skirt the strictures of remedial employment laws by requiring the employee to interpose a corporate entity between themselves and their employee.

During their relationship, Defendants also deducted from Mr. Bowman's Net Income so-called "Reserves," which they treated the same way as the security deposits, arrogating to themselves the right to take Mr. Bowman's Reserves to pay branch

---

[1] California law applies because Mr. Bowman's employment agreements, drafted entirely by Defendants, contain a California choice of law provision. See Branch Management Agreement (Tab F) at ¶ 21(c); Facilities Agreement (Tab G) at ¶ 5.1. It is worth noting, however, that Defendants' employment agreements are equally unlawful under Washington law. See, e.g., WAC 296-126-028 (Wage deductions during on-going employment); WAC 296-126-025 (Deductions from final wages).

expenses (which were whatever they defined them to be). This is nothing other than a cash bond, which California law forbids an employer to demand or extract from employees. Labor Code §§ 400-410.

On March 18 of this year, Defendants' Chief Financial Officer, Paul Chevez, revealed for the first time in deposition that Defendants did not segregate the security deposits and Reserves but commingled them with their operating accounts and used them for corporate operating funds. See Tab H. In other words, Defendants were taking money they were supposed to hold in trust and using it for their own benefit. **This is a crime**:

> Any employer or prospective employer, or agent or officer thereof, who misappropriates any such property, mingles it with his own, or uses it for any other purpose than that herein set forth is **guilty of theft** and shall be punished in accordance with the provisions of the Penal Code relating to theft

Labor Code § 405 (emphasis added). The discovery at issue in this motion is largely concerned with unraveling this theft.

### The Discovery Requests at Issue

    **1.    The Security Deposits and Reserves**

Plaintiffs' request number 6 read:

> All DOCUMENTS evidencing, pertaining to, or referring to reserves BOWMAN and PREMCO were required to maintain in the course of their relationship with YOU. This request seeks documents evidencing the nature and amount of reserves, the use of those reserves, and all DOCUMENTS evidencing YOUR reasons for requiring the reserves.

Request number 7 seeks the same documents relating to security deposits. See Tab A at 5:27-6:7.

Defendants are obligated to hold these monies in trust for Mr. Bowman, with all the duties of a trustee that entails. Labor Code § 405. He is therefore entitled not only to those documents available in a contract action but those to which he is entitled as the beneficiary of a violated trust.

In response to these requests, Defendants produced only the accounting records for Mr. Bowman's branches. They have not produced any other documents "evidencing, pertaining to, or referring to" the reserves. They have not, for example, produced other accounting records, documents discussing their reserve policies, their communications concerning the reserves (whether internally or externally, *e.g.*, to their accountants or bankers), anything showing how the money was used, and, most importantly, <u>they have not produced the bank records evidencing the location and status of the reserves</u>.

Defendants have argued that these documents lie outside the scope of the requests but the broad language of the requests defeats that. They have ignored the plain language of the request, which was expressly defined broadly to include <u>all</u> documents evidencing, pertaining to, or referring to the <u>nature and amount</u> of the reserves, the <u>use</u> of those reserves, and the <u>reasons</u> for requiring the reserves.

They may also argue that their bank records are private, but <u>they failed to raise this objection in their Responses</u>. See Tab B at 4:12-17. Any such objection is therefore

waived. *Richmark Corp. v. Timber Falling Consultants*, 959 F2d 1468, 1473 (9th Cir. 1992). Moreover, to the extent corporations even have cognizable privacy rights such rights are not absolute but must bend to the compelling public interest of determining the truth of Defendants' conduct. The Labor Code expressly makes defendants' conduct a crime and a breach of fiduciary duty. There is no argument available to Defendants that would allow them to hide their actions behind the mantle of a qualified privacy right. *See, e.g., Ragge v. MCA/Universal Studios*, 165 F.R.D. 601, 604 -605 (C.D.Cal., 1995)

> [B]y its very nature, litigation has a tendency to make public the sort of information that individuals otherwise would prefer to keep private. Public disclosure, in the end, is not only natural and generally unavoidable but also necessary and healthy to a process so dependant on accuracy and truth.

"While initiating a lawsuit does not, by itself, automatically grant plaintiffs the right to rummage unnecessarily and unchecked through the private affairs of anyone they choose . . . . [a] balance must be struck." *Id.* Plaintiff's requests strike the correct balance – they are no broader than necessary and make no intrusion into Defendants' affairs that cannot be justified under the facts of this case.

Good cause exists to compel production because Plaintiffs have no other means to obtain this information. Mr. Bowman is entitled to learn where his money is, how it's been used, and what profit or loss Defendants have realized through use of these funds. As the beneficiary of a trust, he is entitled to an accounting, to recover these amounts from the trustee both under the common law and under the Labor Code, and to numerous other remedies as well. He is entitled to learn whether or not a crime has been committed, whether the corporate employers alone have breached their fiduciary duty, and whether the corporations' owner, Christopher George, or other individuals benefited from the breach and therefore are personally liable to Mr. Bowman. *See, e.g., City of Atascadero v. Merrill*, *Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 483.

Defendants must be compelled to produce all documents relating to the Reserves and security deposits, including policies, communications, and all bank and accounting records showing where the money is, where it has been, and what it has been used for.

2. **Other complaints against Defendants**

Request No. 22 sought:

> All complaints (civil, criminal, arbitral, or administrative) or similar DOCUMENTS in which CMG Mortgage, Inc., CMG Mortgage Services, Inc., Pacific Guarantee Mortgage, CMG Financial Services, or any of YOUR affiliates, subsidiaries, or parent entities are named as parties.

This is an unexceptional and standard-issue request in any litigation. Defendants objected to the request on two grounds: "not likely to lead to the discovery of admissible evidence" and "overbroad and unduly burdensome and harassing." They expanded on this in their April 3 letter, holding out the *reductio ad absurdum* scenario of a five-year-old foreclosure lawsuit in Georgia (presumably the state, not the nation) as being outside the scope of discovery in this action. These objections are without merit.

Defendants' president, Christopher George, testified in deposition that CMG believes that Mr. Bowman is personally liable for any suits relating to foreclosures arising from loans made from his branches. Thus, despite Defendants' attempt to paint

Re: *Bowman v. CMG et al.*, Case No. 3:07-cv-03140-SI
May 8, 2008
Page 5

it as absurd, the outcome of a seemingly-unrelated foreclosure suit in another state suddenly <u>is</u> relevant to the claims or defenses of the parties. How did the foreclosure affect the branch manager's bottom line? Did Defendants interpret the contracts to mean that such losses were "Expenses" under the Branch Management Agreement? Was the contract enforced? Was the legality of this arrangement litigated and ruled on by a court? Are Defendants bringing their complaints against Mr. Bowman in bad faith?

Other complaints against Defendants may or may not in the end lead to the discovery of admissible evidence, but the request itself is certainly "reasonably calculated to lead to the discovery of admissible evidence," which is all that is required under Rule 26(b)(1). For example, other parties may have brought claims against Defendants similar to those of Mr. Bowman's First Amended Complaint or proposed Second Amended Complaint; alternatively, since Defendants have noticed their intent to bring counter-claims against Mr. Bowman, he is entitled to learn whether they have brought such claims before and what outcome resulted. Even litigation concerning dissimilar claims is reasonably calculated to lead to evidence concerning Defendants' mortgage operations, an understanding of which is at the heart of the claims here and which may be relevant to the claims or counter-claims.[2]

There is no great burden in having to produce previous complaints against Defendants. Plaintiffs are informed and believe that Defendants have maintained the same legal counsel for years. Defendants have not demonstrated – and cannot demonstrate – any undue burden or expense in this straightforward request. Plaintiffs sought only the complaints themselves, not the entire litigation file. This is not unduly burdensome. Good cause further exists to compel production of these documents because Plaintiffs cannot otherwise locate all such complaints without going to every court and every administrative body in the nation and making an individualized request regarding each Defendant or agent of Defendant. These documents are not equally available to Plaintiffs.

**Conclusion**

For the reasons set forth above and such other good cause as the Court determines to exist, Plaintiffs respectfully request that the Court order Defendants to produce all responsive documents.

Sincerely,

Alan F. Cohen

cc: Joshua Rosenthal
Angela Xavier

---

[2] For example, in *Wymac Capital, Inc. v. Anderson*, Contra Costa County Superior Court Case No. C03-02882, CMG was apparently sued for hiring a competitor's former employee and thus misappropriating loans, customer information, and trade secrets – all of which appears to be strikingly similar to the acts it now accuses Mr. Bowman of committing. Plaintiffs should not depend on the fortuity of coming across an unpublished appellate opinion to obtain information that is plainly discoverable directly from Defendants. *See Wymac Capital, Inc. v. Anderson*, Not Reported in Cal.Rptr.3d, 2008 WL 1851321 (Cal.App. 1 Dist.,2008).