

**MEDLIN & HARGRAVE**
A PROFESSIONAL CORPORATION

JOSHUA A. ROSENTHAL
*jrosenthal@mhlawcorp.com*

May 16, 2008

*Via E-Filing and U.S. Mail*

Honorable Susan Illston
Unisted States District Court, Northern District of California
450 Golden Gate Ave. Courtroom 10, 19th Floor
San Francisco, CA 94102

    Re:    *Pacific Real Estate Man. Company, Inc. et al. v. CMG Mortgage, Inc. et al.*
            *U.S. District Court, Northern District of California, Case No.: C07-3140 MEJ*
            <u>Defendants' Opposition To Plaintiffs' Motion To Compell Inspection Demand</u>

Dear Judge Illston:

       This letter brief is in opposition to plaintiffs' motion to compel production of documents. Defendants would like to point out that plaintiffs dedicate about a page and a half of briefing to a "recitation of relevant facts and issues" that are a barely veiled attempt to argue the law and facts of this case. The "facts and issues" alleged in the recitation are neither relevant to the discovery in dispute nor are they correct recitations of the law. Additionally, the "issues" as presented by plaintiffs include recitations to cancelled mortgagee letters. However, defendants feel obligated to respond to the attacks and inaccuracies so as to ensure that their silence is not mistaken for acceptance. With respect to the information sought, it was either not sought by plaintiffs in the request or is not something they are entitled to, is overbroad and is information freely available in the public record. Accordingly, plaintiffs are not entitled to the information they are seeking.

<u>Response To Plaintiff's Recitation of Facts & Issues</u>

       Plaintiffs allege in their letter brief that all money that plaintiff James Bowman ("Bowman") ever received or should have received from CMG Mortgage, Inc. ("CMG") was wages to Bowman. As plaintiffs know, there was a contractual relationship between CMG and Bowman as an employee, and a separate agreement involving CMG and his corporation plaintiff Pacific Real Estate Management Company ("PREMCO'). The relationship was set up in compliance with HUD guidelines and all Labor Code requirements to pay Bowman wages twice a month for his individual loan activity, a profit sharing distribution each month, if the revenue of the branch was greater than the expenses, and reimbursement of expenses to PREMCO.

       Plaintiffs make the disingenuous argument that despite the two separate contracts, all money to be paid was wages because it is impossible for an employee to also own a corporation and have that corporation contract with another corporation. Plaintiffs also make the blatantly false argument that the Department of Housing & Urban Development ("HUD") frowns on arrangements such as this one, referred to as net branching.

**MEDLIN & HARGRAVE**
*A Professional Corporation*

---

Honroable Susan Illston
Re: *Pacific Real Estate Management Company, Inc. et al v. CMG Mortgage, Inc. et al.*
May 16, 2008
Page 2

Plaintiffs refer to HUD Mortgagee Letter 00-15 as the sole authority for the proposition that HUD holds net branching in disfavor. First, and most importantly, HUD Mortgagee Letter 00-15 was cancelled on August 14, 2006 (Exhibit A) and replaced with the HUD Handbook 4060.1 REV 2 (Exhibit B). Thus, any citation to the mortgagee letter is the equivalent of citing to a repealed law or an overturned decision. This citation by plaintiffs was either incredible sloppiness or a deliberate attempt to mislead.

In fact, the HUD Handbook has pages and pages dedicated to how net branches should be set up to be in compliance with HUD rules. Specifically, the HUD Handbook states:

> A Branch Manager's compensation may be based upon the "net" profit of the branch. For example, the FHA approved mortgagee may collect the revenue from the branch, pay the branch expenses, and then pay the branch manager the remaining revenues, if any, as a commission. Such an arrangement is, essentially, an alternative compensation program for the branch manager and is an acceptable arrangement if all other branch requirements are met. (Exhibit B, p. 2-7).

In compliance with HUD regulations, CMG paid Bowman, as Branch Manager, branch expenses based on the net profits of the branch. This was done by taking into account all revenue of the branch less any expenses of the branch. Despite this language in the HUD Handbook and his contracts, Bowman claims that he is entitled to all revenue earned by his branch, and for all expenses of his branches to be paid by CMG. Plaintiffs seem to not know the definition of profits or forget the definition when it is convenient.

Bowman claims that the contracts he entered into with defendants require him to indemnify defendants for any losses, require the branch manager to be responsible for expenses and provide that Bowman be an insurer of defendants business losses. However, this is a deliberate attempt to manipulate the plain language of the contracts and ignore the difference between the obligations of the corporation and the employment of Bowman.

Bowman was not paid any net profits at the time of his termination because there were no net profits to pay. Since the net profits are calculated as the revenue less expenses, there were no net profits. A PREMCO branch originated 2 loans in which lenders are compelling repurchases by CMG. The amount at issue exceeds $550,000 in total. This is an expense of the branch. According to the HUD Handbook and the contracts, this amount is offset from the revenue of the branch. Since the expenses are more than the revenue, there is no net profit to distribute. This is not indemnification by Bowman of defendants, as it does not require Bowman to pay the full amount of the loss to CMG. It is simply an expense, which is offset against revenue. This is how profit sharing works and it is disingenuous for plaintiffs to claim that this is an unlawful deduction of expenses from an employee's wages, especially when HUD specifically permits it and he agreed to the set up in 4 different contracts. <u>Prachasaisoradej v. Ralph's Grocery Co., Inc.</u> (2007) 42 Cal.4th 217, 236.

**MEDLIN & HARGRAVE**
*A Professional Corporation*

---

Honroable Susan Illston
Re: *Pacific Real Estate Management Company, Inc. et al v. CMG Mortgage, Inc. et al.*
May 16, 2008
Page 3

      Plaintiffs take umbrage with the Facilities Agreements, which creates a sub-lease arrangement with PREMCO whereby PREMCO sub-leases to CMG the facilities of the branch, such as the lease of the office space and the office equipment on a month to month basis. PREMCO paid the expenses on a monthly basis, sublet it to CMG on a month to month basis and submitted the bills to CMG for payment. Because CMG received the benefit of a month to month lease on equipment and space, it paid the expenses at 125% of the amount paid by PREMCO. This was to PREMCO's advantage. For example, if CMG took over a five year lease and had to terminate the relationship, it would have to kick PREMCO out of the space in which it had built its business. It advantages CMG because CMG does not have to enter into a 5 year lease on an office. Further, it is fully in compliance with the HUD rules which require CMG to ultimately be responsible for expenses of the branch - which it is. There is no bill that went unpaid because of CMG's refusal to pay upon a request of plaintiffs. Further, since CMG sub-leases the facilities from PREMCO, the contractual relationship and obligation for all expenses is with CMG.

      Moving towards facts that are relevant to this dispute, plaintiffs do not like the fact that PREMCO paid a security deposit to CMG. Plaintiffs ignore the fact that the Facilities Agreements are with PREMCO and instead want to think of them as being with Bowman[1], the employee. The security deposit was held by CMG to pay for any expenses of the branches, should revenue not be sufficient. The security deposit was always paid by PREMCO and changed from time to time as expenses changed. The deposit was calculated as approximately 2 months of personnel costs for the branches. When personnel costs decreased in a quarter, PREMCO would get a refund of part of the security deposit.

      Plaintiffs refuse to accept that there is a corporate business relationship and an employment relationship and the two relationships can be separate. Plaintiffs go so far as to say that since PREMCO is owned by Bowman, any money paid by PREMCO is actually paid by Bowman and, thus, is requiring an employee to pay a security deposit. Such a proposition is preposterous. It ignores the fact that a corporation is a separate legal entity. If what plaintiffs say is true, then PREMCO as a plaintiff should be dismissed from this action. Additionally, defendants should bring a cross action for fraud against Bowman for deceiving CMG into thinking that his corporate entity was distinct from Bowman the individual.

      Thus, plaintiffs jump to the illogical conclusion that since there is no difference between Bowman the employee and a corporation he owns (a very bad conclusion to draw for tax purposes or if his corporation is ever sued and the plaintiff tries to pierce the corporate veil on an alter ego theory), that the security deposit/reserves are an unlawful misappropriation of employee funds. The security deposit/reserves are paid by the corporation and are part of the contract between PREMCO and CMG. Thus, the security deposit/reserves issue is a red herring.

---

[1] Bowman did sign the Facilities Agreements, but he is the president of PREMCO, so he had to sign the documents. There is no authority cited by plaintiffs that prohibit an employee in one capacity to enter into an agreement between his corporation and another company which automatically requires him to then be considered an employee in the business to business contract.

**MEDLIN & HARGRAVE**
*A Professional Corporation*

---

Honroable Susan Illston
Re: *Pacific Real Estate Management Company, Inc. et al v. CMG Mortgage, Inc. et al.*
May 16, 2008
Page 4

### The Discovery Requests At Issue

Plaintiffs are essentially claiming that their request for all documents pertaining to or referring to reserves which plaintiffs were required to maintain in the course of the relationship, somehow included a request for CMG's bank records. The request specified that it was seeking documents evidencing the nature and amount of the reserves, the use of the reserves and all reasons for the reserves.

Defendants complied with the request by producing responsive documents (which included the Facilities Agreements, emails indicating that PREMCO was going to have to increase the security deposit or was getting a refund, emails indicating how the amount was calculated and the purpose of the security deposits, monthly accounting statements which indicate the security deposits being held, etc.)[2]

Plaintiffs claim that this request actually requires CMG's bank account records indicating where the security deposits went after they were provided by PREMCO. First and foremost, the request clearly does not request bank records and it is impossible to tell that is something plaintiffs were actually seeking in the request. If it was clear that is what plaintiffs were seeking, defendants would have certainly objected that the request is harassing, violates the privacy rights of the defendants and seeks information not likely to lead to the discovery of admissible evidence. However, plaintiffs did not ask for bank records and instead of actually propounding a discovery request that seeks bank records, are trying to twist a discovery request into asking for something that it clearly did not. Defendants complied with the request by producing responsive documents. CMG's bank records are not responsive documents.

Further, CMG's bank records will not tell plaintiffs anything. Assuming money is received and a record of that money appears on accounting statements, it doesn't matter where it goes. There is no requirement that the deposits paid by a corporation be segregated like an attorney-client trust account. Money is fungible. So, as long as records are maintained, it does not matter if the money went into a bank account or into a desk drawer. That it's availability for distribution or to pay expenses is all that matters. Thus, if plaintiffs made a proper request for the bank records, CMG's objection that the request is unduly violative of defendants' privacy rights and that the request seeks information not likely to lead to the discovery of admissible evidence would be proper.

### Other Complaints Against Defendants

Plaintiffs made the overbroad and harassing discovery request that defendants provide documents related to all civil, criminal and administrative complaints made against them without limitation as to time. As defendants pointed out and plaintiffs cannot comprehend, CMG is a national mortgage broker and lender. It is named in dozens of a lawsuit every year. In many states a foreclosure action, a quiet title

---

[2] Defendants probably should have refused to comply with the request because it seeks evidence regarding reserves Bowman <u>and</u> PREMCO were required to maintain. Only PREMCO was required to maintain the security deposits/reserves - not Bowman - a distinction lost on plaintiffs.

**MEDLIN & HARGRAVE**
*A Professional Corporation*

---

Honroable Susan Illston
Re: *Pacific Real Estate Management Company, Inc. et al v. CMG Mortgage, Inc. et al.*
May 16, 2008
Page 5

action, a partition action, a boundary dispute between neighbors, an easement dispute, a statutory waste action are all actions where CMG will be named because they are in the chain of title as a lien holder even though its loans always sold shortly after recording. Virtually all of these lawsuits are ones in which CMG has no liability. However, plaintiffs are demanding that defendants find every one of these lawsuits, most of which CMG does not even answer, and provide them over the approximately 15 years CMG has been in existence. This is likely dozens, perhaps hundreds of lawsuits.

This is clearly information in the public record. If the information is so important to plaintiffs they can search the public record for CMG and pull all of the irrelevant and useless lawsuits themselves. Bunnell v. Superior Court (1967) 254 Cal. App. 2d 720, 723-724. Thus, the request is burdensome and harassing. Further, in light of the hundreds of lawsuits CMG has been named in over its life span and the overbreadth of this request, the utility of the information contained in these lawsuits is far outweighed by the significant amount of time that will be required to compile the information. Columbia Broadcasting System, Inc. v. Superior Court (1968) 263 Cal. App. 2d 12, 19. It would be easier to conduct a public records search of all states in which CMG does business to find all lawsuits that it was named as a party than to go through its voluminous records to find these lawsuits. In that event, it should be plaintiffs that undertake that task because they want the information because it is harassing to ask defendants to do it.

In light of plaintiffs' refusal to narrow the scope of the request by subject area or time, it is seeking to oppress defendants to obtain information that is not likely to lead to the discovery of admissible information. Not that the information sought in a narrower request would be in the least bit relevant - however, at least it would be slightly more acceptable than the overbroad and harassing request as it now stands.

### Conclusion

For the reasons set forth herein, plaintiffs are not entitled to the further discovery they seek. They have misstated the law and misstated the facts in their superfluous and prejudicial introductory recitation. Additionally, they are seeking documents that are not responsive to one discovery request and are seeking to harass and oppress defendants by seeking documents that are available in the public record and are completely irrelevant to this dispute and unlikely to lead to the discovery of further admissible evidence. Defendants respectfully request that plaintiffs' motion be denied.

Thank you for your consideration of this matter.

Sincerely,

Joshua A. Rosenthal

JAR:alb
Opposition.wpd
cc:   Client, Angela Xavier, Alan Cohen