1  David R. Medlin      (SBN 77417)
   G. Bradley Hargrave  (SBN 173911)
2  Joshua A. Rosenthal  (SBN 190284)
   MEDLIN & HARGRAVE
3  A Professional Corporation
   One Kaiser Plaza, Suite 1305
4  Oakland, CA  94612
   Telephone:    (510) 832-2900
5  Facsimile:    (510) 832-2945
   E-mail:       jrosenthal@mhlawcorp.com
6
   Attorneys for Defendants
7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10 James W. Bowman, Jr. and Pacific Real Estate      Case No.: C 07 3140 SI
   Management Company, Inc., a Washington
11 Corporation,                                      DECLARATION OF JOSHUA A.
                                                     ROSENTHAL IN SUPPORT OF
12                     Plaintiffs,                   OPPOSITION TO PLAINTIFFS' MOTION
                                                     TO COMPEL PRODUCTION OF
13            vs.                                    DOCUMENTS

14 CMG Mortgage Inc., a California Corporation;
   CMG Mortgage, Inc., d/b/a Pacific Guarantee
15 Mortgage, CMG Mortgage Services, Inc., a          Dept:   Courtroom 10
   California Corporation, CMG Mortgage Services,    Judge:  Honorable Susan Illston
16 Inc. d/b/a Pacific Guarantee Mortgage,
                                                     File date: June 14, 2007
17                     Defendants.                   Trial date: August 28, 2008
   _____/

18

19 **DECLARATION OF JOSHUA A. ROSENTHAL**

20        I, Joshua A. Rosenthal, declare:

21        1.      I am an attorney at law duly licensed to practice before this court all courts of this state

22 and an attorney with Medlin & Hargrave, a P.C.

23        2.      Attached hereto as Exhibit A is a true and correct copy of the Transmittal letter indicating

24 cancellation of HUD Mortgagee Letter 00-15.

25        3.      Attached hereto as Exhibit B is a true and correct copy of the FHA Title II Mortgagee

26 Approval Handbook 4060.0 REV-2 dated August 14, 2006.

27 ///

28 ///

                                    1

1    I declare under penalty of perjury under the laws of the United States that the foregoing is true

2  and correct, and if sworn as a witness, I could and would testify competently thereto.

3    Executed at Oakland, California, on May 16, 2008.

4

5

6                                    ____/s/_____
                                    Joshua A. Rosenthal

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JOSHUA A. ROSENTHAL
M:\CMG\85-0706-02 Bowman\Motion\Plaintiffs motion to compel inspection demand\Decl of JAR.wpd

# Exhibit A



**U. S. Department of Housing and Urban Development**
**Office of Housing**

---

Special Attention of:
Directors of Housing
Directors, Single Family Homeownership Centers
Directors, Multifamily Housing HUBs &
Divisions
Field Office Managers, Chiefs
Area Coordinators, State Coordinators

# Transmittal

Handbook No. 4060.1 REV-2
Issued:  August 14, 2006

---

1.   **This transmits:** Handbook 4060.1 REV-2, FHA Title II Mortgagee Approval Handbook.

2.   **Explanation of changes:** This handbook incorporates the Department's FHA Title II mortgagee approval and renewal requirements specified in 24 CFR Parts 202, 203, 206, 241, and 266 in addition to all Mortgagee Letters issued since September 30, 1993 pertaining to the FHA mortgagee approval requirements. Other significant changes to this handbook include:

   a.    "Principal activity" for non-supervised mortgagees and non-supervised loan correspondents has been clarified to state that a non-supervised entity must have at least 50 percent of its gross revenues derived from mortgage lending activities [See paragraphs 2-27(D) and 2-29(C)].

   b.    All employees must be issued W-2s [see paragraph 2-9(A)].

   c.    Each traditional and nontraditional branch will no longer be required to have a separate branch manager [see paragraph 2-12(B)].

   d.    The use of satellite offices for taking single-family loan applications has been eliminated due to the expansion of the originating lending area of registered branch offices (see paragraph 2-19).

3.   **Cancellations:**
   a.    Handbook 4060.1 REV-1, dated September 30, 1993;
   b.    Mortgagee Letter 94-39, dated August 9, 1994;
   c.    Mortgagee Letter 94-46, dated October 5, 1994;
   d.    Mortgagee Letter 94-47, dated October 6, 1994;
   e.    Mortgagee Letter 95-6, dated January 25, 1995;
   f.    Mortgagee Letter 95-36, dated August 2, 1995, except for Item #5;
   g.    Mortgagee Letter 95-37, dated August 9, 1995;
   h.    Mortgagee Letter 96-12, dated February 29, 1996, except for Item #2;

---

**HULL: Distribution:** W-3-1

i. Mortgagee Letter 96-64, dated November 21, 1996;
j. Mortgagee Letter 99-17, dated May 14, 1999;
k. Mortgagee Letter 00-15, dated May 1, 2000;
l. Mortgagee Letter 00-40, dated November 3, 2000;
m. Mortgagee Letter 01-01, dated January 5, 2001, paragraph 6 only;
n. Mortgagee Letter 03-03, dated February 25, 2003;
o. Mortgagee Letter 04-06, Dated June 30, 2004;
p. Mortgagee Letter 04-19, dated April 30, 2004;
q. Mortgagee Letter 05-24, dated May 17, 2005;
r. Mortgagee Letter 05-37, dated September 28, 2005;
s. Mortgagee Letter 05-40, dated October 29, 2005;

4. **Filing Requirements:**

Remove:                                            Insert:

Handbook 4060.1 REV-1,                     Handbook 4060.1 REV-2,
dated September 30, 1993                     dated:  August 14, 2006

_____
Brian D. Montgomery
Assistant Secretary for Housing --
 Federal Housing Commissioner

Exhibit B



**Handbook 4060.1 REV-2**

**U.S. Department of Housing and Urban Development**

## Office of Housing

# Program Participants and Departmental Staff

# FHA Title II Mortgagee Approval Handbook

**August 14, 2006**



EQUAL HOUSING
OPPORTUNITY

**HULL: Distribution:** W-3-1

# FOREWORD

**Scope.** This Handbook covers the Department's requirements and policies for FHA approval and annual renewal of mortgagees for participation in the FHA Title II mortgage insurance programs. It provides information to HUD staff and participating mortgagees on procedures for obtaining and retaining FHA approval as a mortgagee.  The Handbook also provides basic information on the Department's program for monitoring the loan origination and servicing performance of mortgagees, the Mortgagee Review Board, and civil money penalties.

**Enabling Legislation.** The U.S. Department of Housing and Urban Development is authorized by legislation to approve mortgage lenders to participate in FHA mortgage insurance programs, and to regulate those lenders. This authority is contained in the *National Housing Act* (12 U.S.C. 1701 et seq.) and the *Department of Housing and Urban Development Act* (42 U.S.C. 3531 et seq.).

**Regulations.** This Handbook incorporates the provisions of the Department's mortgagee approval regulations as set forth in 24 CFR Parts 202, 203, 206, 241, and 266.

**Handbook Organization:**

- **Chapter 1:**   Overview
- **Chapter 2:**   Requirements for initial and continued FHA approval
- **Chapter 3:**   Applying for approval, appealing denials and being approved
- **Chapter 4:**   Annual renewal of FHA approval
- **Chapter 5:**   Branches, lending areas for single family originations, principal-authorized agents, and loan correspondent-sponsors
- **Chapter 6:**   Changes subsequent to FHA approval
- **Chapter 7**:   Quality Control Plan
- **Chapter 8:**   Monitoring, Administrative Sanctions, Credit Watch and Neighborhood Watch

# REFERENCES

1.  5 U.S.C. App. 3  *Inspector General Act of 1978*
2.  12 U.S.C. §1701 et seq.  *National Housing Act*
3.  12 U.S.C. §2601 et seq.  *Real Estate Settlement Procedures Act of 1974*
4.  12 U.S.C. §2801 et seq.  *Home Mortgage Disclosure Act of 1975*
5.  15 U.S.C. §1601 et seq.  *Federal Truth in Lending Act*
6.  15 U.S.C. §1691 et seq.  *Equal Credit Opportunity Act*
7.  18 U.S.C. §709  *False advertising or misuse of names to indicate Federal agency*
8.  31 U.S.C. §7501 et seq.  *The Single Audit Act of 1984, as amended*
9.  42 U.S.C. §3601 et seq.  *Fair Housing Act*
10. 42 U.S.C. §3531 et seq.  *Department of Housing and Urban Development Act*
11. 24 CFR Part 24  *Government Suspension and Debarment*
12. 24 CFR Part 25  *Mortgagee Review Board*
13. 24 CFR Part 30  *Civil Money Penalties*
14. 24 CFR Part 202  *Approval of Lending Institutions and Mortgagees*
15. 24 CFR Part 203  *Single Family Mortgage Insurance*
16. 24 CFR Part 206  *Home Equity Conversion Mortgage Insurance*
17. 24 CFR Part 241  *Supplementary Financing for Insured Project Mortgages*
18. 24 CFR Part 266  *Housing Finance Agency Risk-Sharing Programs for insured Affordable Multifamily Project Loans*
19. 24 CFR Part 3500  *Real Estate Settlement Procedures Act Regulations*
20. GAO "Yellow Book," *Government Auditing Standards*
21. HUD IG Handbook 2000.04, *Consolidated Audit Guide for Audits of HUD Program*
22. HUD Handbook 4000.2, *Mortgagees' Handbook, Application Through Insurance (Single Family)*
23. HUD Handbook 4000.4,  *Single Family Direct Endorsement Program*
24. HUD Handbook 4060.2, *Mortgagee Review Board*
25. HUD Handbook 4155.1, *Mortgage Credit Analysis for Mortgage Insurance on One-to Four-Family Properties*
26. HUD Handbook 4330.1, *Administration of Insured Home Mortgages*
27. HUD Handbook 4350.4, *Insured Multifamily Mortgagee and Field Office Remote Monitoring*
28. HUD Handbook 4430.1, *Initial Closing Requirements for Project Mortgage Insurance*

**Download Locations for Most Recent Version of References**
Statistics:  http://www.gpoaccess.gov/index.html.
HUD Regulations and handbooks:  http://www.hudclips.org/cgi/index.cgi.
GAO "Yellow Book":  http://www.gao.gov/govaud/ybk01.htm

4060.1 REV-2

# ACRONYMS

AAFB ...................Area Approved for Business
CAIVRS ...............Credit Alert Interactive Voice Response System
CPA ......................Certified Public Accountant
DAS......................Deputy Assistant Secretary
DBA (or dba)........Doing Business As
DCF......................Data Collection Form
DE ........................Direct Endorsement
Fannie Mae...........Federal National Mortgage Association
FDIC ....................Federal Deposit Insurance Corporation
FDT......................Financial Data Templates
FHA......................Federal Housing Administration
Freddie Mac .........Federal Home Loan Mortgage Corporation
GAAP...................Generally Accepted Accounting Principles
GAAS...................Generally Accepted Auditing Standards
GAGAS................Generally Accepted Government Auditing Standards
GAO .....................General Accountability Office
Ginnie Mae...........Government National Mortgage Association
HECM .................Home Equity Conversion Mortgage (Reverse Mortgage)
HMDA .................Home Mortgage Disclosure Act
HOC .....................FHA Single Family Homeownership Center
HUD.....................Department of Housing and Urban Development
IG .........................Inspector General for HUD
LASS....................Lender Assessment Sub-system
LDP......................Limited Denial of Participation
LLC ......................Limited Liability Company
MRB.....................Mortgagee Review Board
NCUA ..................National Credit Union Administration
P&U Division.......Processing and Underwriting Division in a HOC
QAD.....................Quality Assurance Division
QC Plan................Quality Control Plan
RESPA .................Real Estate Settlement Procedures Act
RMCR ..................Residential Mortgage Credit Reports
SAS ......................Statement of Auditing Standards
SSN ......................Social Security Number
V-form..................Annual Verification Report
Yellow Book ........Government Auditing Standards issued by GAO

# TABLE OF CONTENTS

## CHAPTER 1. OVERVIEW

Paragraph                                            Page

1-1    **Approval** ............................................................... 1-1

1-2    **Types of Approved Mortgagees** .......................... 1-2

1-3    **Renewal of FHA Approval** ................................... 1-3

1-4    **HUD's Lender Web Page** ...................................... 1-3

1-5    **FHA Connection** .................................................... 1-3

1-6    **HUDCLIPS** ............................................................ 1-3

1-7    **HUD Handbooks** .................................................... 1-4

1-8    **Frequently Asked Questions** ............................... 1-4

1-9    **FHA Lender List on HUD's Web Site** ................. 1-4

1-10   **Performance Requirements** .................................. 1-4

1-11   **Reports and Examinations** ................................... 1-4

1-12   **Home Mortgage Disclosure Act of 1974 (HMDA)** ... 1-4

1-13   **Administrative Actions, Administrative Sanctions, and**
       **Civil Money Penalties** ......................................... 1-4

1-14   **Reporting Fraud, Illegal Acts, and Unethical Practices to HUD** ................. 1-5

1-15   **Mortgagee's Address for Communication** .......... 1-5

1-16   **Contacting the Department** ................................. 1-5

1-17   **OMB Approval of Information Collections** ........ 1-5

## CHAPTER 2. MORTGAGEE REQUIREMENTS FOR INITIAL AND CONTINUING APPROVAL

### Part A. Requirements for all Mortgagees

2-1    **Introduction** .......................................................... 2-1

2-2    **Business Form** ....................................................... 2-1

2-3    **State Licensing Requirements** ............................ 2-2

2-4    **Mortgagee Name** .................................................. 2-3

2-5    **Net Worth Requirements** .................................... 2-3

2-6    **Liquid Assets** ........................................................ 2-5

2-7    **Application Fees** ................................................... 2-5

2-8    **Operating Expenses** ............................................. 2-6

2-9    **Employees and Officers** ...................................... 2-6

2-10   **Ineligible Participants** ......................................... 2-8

2-11   **Office Facilities** ................................................... 2-8

2-12   **Staffing Requirements** ......................................... 2-10

2-13   **Outsourcing** .......................................................... 2-10

2-14   **Prohibited Branch Arrangement** ...................... 2-11

2-15   **Communications Capability and Responsibility** ... 2-12

2-16   **Fair Housing and Other Federal Laws** ............. 2-13

2-17   **Misrepresentative Advertising** .......................... 2-13

2-18   **Loan Origination Requirement** ......................... 2-14

2-19   **Geographic Restrictions for Loan Origination and Underwriting** ............. 2-14

| 2-20 | **Loan Servicing Responsibility** | 2-15 |
| 2-21 | **Escrow Funds** | 2-15 |
| 2-22 | **Prohibited and Permissible Payments** | 2-16 |
| 2-23 | **Quality Control** | 2-17 |
| 2-24 | **Requirement to Notify HUD of Changes Subsequent to Approval** | 2-17 |

**Part B. Additional Requirements for Specific Mortgagee Types**

| 2-25 | **Introduction** | 2-18 |
| 2-26 | **Supervised Mortgagees** | 2-18 |
| 2-27 | **Non-supervised Mortgagees** | 2-18 |
| 2-28 | **Supervised Loan Correspondents** | 2-19 |
| 2-29 | **Non-supervised Loan Correspondents** | 2-20 |
| 2-30 | **Investing Mortgagees** | 2-21 |
| 2-31 | **Governmental Institutions** | 2-22 |

**CHAPTER 3. MORTGAGEE APPROVAL PACKAGE AND PROCEDURES**

**Part A. Submission of Application**

| 3-1 | **Introduction** | 3-1 |
| 3-2 | **Required Documentation** | 3-1 |
| 3-3 | **Documentation for Specific Business Forms** | 3-7 |

**Part B. Processing of Application**

| 3-4 | **Introduction** | 3-8 |
| 3-5 | **Requests for Additional Information** | 3-8 |
| 3-6 | **Mortgagee Approval Processing** | 3-8 |
| 3-7 | **Approval Notifications** | 3-10 |
| 3-8 | **Disapproval** | 3-10 |

**Part C. Appeals of Disapproval**

| 3-9 | **INITIAL APPEAL** | 3-11 |
| 3-10 | **Final Appeal** | 3-11 |

**Part D. Newly Approved Mortgagees**

| 3-11 | **Introduction** | 3-12 |
| 3-12 | **Immediately Upon Approval** | 3-12 |
| 3-13 | **FHA Mortgage Insurance Premiums and Claims** | 3-12 |
| 3-14 | **Direct Endorsement (DE)** | 3-12 |

**CHAPTER 4. ANNUAL RENEWAL OF FHA APPROVAL**

| 4-1 | **Requirement for Annual Renewal** | 4-1 |
| 4-2 | **Yearly Verification Report** | 4-1 |
| 4-3 | **Annual Renewal Fees** | 4-1 |
| 4-4 | **Annual Submission of Audited Financial Statements** | 4-2 |

     A.    Required Reports by Type of Mortgagee For Electronic Submission ..... 4-3
     B.    Types of Mortgagee for Which Submission are Not Required ............... 4-6
     C.    Extensions ................................................................................................ 4-6
4-5    **LASS Review Procedures** ......................................................................... 4-6
     A.    Auditor's Report .................................................................................... 4-7
     B.    Annual Submission ............................................................................... 4-7
4-6    **Acceptance of LASS Submission** ............................................................ 4-11
4-7    **Deficient LASS Submission** .................................................................... 4-11
4-8    **Rejected LASS Submission** ..................................................................... 4-12
4-9    **Termination of FHA Mortgagee Approval** ........................................... 4-12
4-10  **Requests for Information** ......................................................................... 4-13

## CHAPTER 5.  BRANCH OFFICES, PRINCIPAL-AUTHORIZED AGENT RELATIONSHIPS AND ADDITIONAL SPONSORS

### Part A. Branch Offices

5-1     **Introduction** ................................................................................................ 5-1
5-2     **Originating at Branch Offices** ................................................................... 5-1
5-3     **Underwriting at Branch Offices** ............................................................... 5-1
5-4     **Servicing at Branch Offices** ...................................................................... 5-1
5-5     **Centralized Centers** ................................................................................... 5-1
5-6     **Mortgagees Permitted to Maintain Branch Offices** ................................ 5-1
5-7     **Registration of a New Branch** .................................................................. 5-1
5-8     **Direct Lending Branch Office** .................................................................. 5-2

### Part B. Principal-Authorized Agent Relationship

5-9     **Introduction** ................................................................................................ 5-4
5-10   **Principal** .................................................................................................... 5-4
5-11   **Authorized Agent** ...................................................................................... 5-4
5-12   **Origination and Underwriting** ................................................................. 5-4
5-13   **Mortgagee Name in Loan Closing** ........................................................... 5-5
5-14   **Establishing the Relationship** .................................................................. 5-5
5-15   **Origination Fee** ......................................................................................... 5-5

### Part C. Additional Sponsors

5-16   **Adding Sponsors for a Loan Correspondent** ........................................... 5-5
5-17   **Registration Procedure** ............................................................................ 5-5

## CHAPTER 6.  CHANGES SUBSEQUENT TO APPROVAL

6-1     **Reporting Business Changes** ..................................................................... 6-1
6-2     **Change of Home Office Location or Telephone** ....................................... 6-2
     A.    Address Changes .................................................................................... 6-2
     B.    Telephone and Fax Numbers and Email Address .................................... 6-2
6-3     **Change of Branch Office Location or Telephone Number** ........................ 6-3

A.    Within the Same State ......................................................... 6-3
B.    To Another State................................................................... 6-3
6-4    **Termination of Principal-Authorized Agent Relationship**........................ 6-3
6-5    **Termination of Loan Correspondent-Sponsor Agreement** ........................ 6-3
6-6    **Permission for Supervised Loan Correspondent to Service** ..................... 6-3
6-7    **Change of Fiscal Year** ................................................................... 6-3
6-8    **Change of Legal Name** ................................................................. 6-4
6-9    **Changes to "Doing Business As" (dba) Name** ................................... 6-4
6-10   **Loss of Direct Endorsement Underwriter** ........................................ 6-4
6-11   **Change of Senior Officer** ............................................................. 6-4
6-12   **Change in a Partnership** .............................................................. 6-4
6-13   **Change of Shareholder, Ownership, or Control** ............................... 6-5
6-14   **Change in Charter or Federal Taxpayer Identifying Number**. .............. 6-5
6-15   **Change in Character of Business (Principal Activity)** ........................ 6-6
6-16   **Conversion of Mortgagee Type** .................................................... 6-6
6-17   **Merger or Consolidation** ............................................................. 6-9
6-18   **Sale or Acquisition** .................................................................... 6-11
6-19   **Termination of Supervision** ........................................................ 6-13
6-20   **Termination of Fidelity Bond or Errors and Omissions** .................... 6-13
6-21   **Net Worth Deficiency** ................................................................ 6-13
6-22   **Liquid Assets Deficiency** ............................................................ 6-14
6-23   **Operating Loss** ......................................................................... 6-14
6-24   **Bankruptcy or Liquidation** ......................................................... 6-14
6-25   **Voluntary Withdrawal of FHA Approval** ....................................... 6-14
6-26   **All Other Business Changes** ........................................................ 6-14

CHAPTER 7 QUALITY CONTROL PLAN

7-1    GENERAL .................................................................................... 7-1

Part A. Overall Requirements

7-2    **Goals of Quality Control** ............................................................. 7-1
7-3    **Basic Elements of Quality Control**................................................. 7-1
7-4    **Quality Control as a Risk Assessment Tool** .................................... 7-6

Part B. Quality Control for Single Family Origination

7-5    **Quality Control from Beginning to End**.......................................... 7-6
7-6    **Basic Requirements for Quality Control of Single Family Production** ........ 7-7
7-7    **Specific Elements for the Production Portion of
       the Quality Control Program** ...................................................... 7-11
7-8    **Review of Procedural Compliance in Production**............................. 7-13
       A.    Fair Lending…......................................................... 7-13
       B.    Home Mortgage Disclosure Act......................................... 7-14
       C.    Ineligible Participants ................................................... 7-14
       D.    Real Estate Settlement Procedures Act ............................... 7-14

|  | E. | Escrow Funds | 7-15 |
|  | F. | Mortgage Insurance Premiums | 7-15 |
|  | G. | Timely and Accurate Insurance | 7-15 |
|  | H. | Underwriting | 7-15 |
|  | I. | Advertising | 7-15 |
| 7-9 | | **Other Quality Control Issues Regarding Single Family Production.** | 7-15 |
|  | A. | Automated Underwriting | 7-15 |
|  | B. | Streamline Refinances | 7-16 |
|  | C. | Specific Programs | 7-16 |

**Part C. Quality Control for Single Family Servicing**

| 7-10 | | **Basic Requirements for Quality Control over Single Family Servicing** | 7-17 |
|  | A. | Areas to be reviewed | 7-17 |
|  | B. | Timeliness and Frequency | 7-18 |
|  | C. | Sample Size | 7-18 |
| 7-11 | | **Review of Procedural Compliance in Servicing** | 7-18 |
|  | A. | Real Estate Settlement Procedures Act | 7-18 |
|  | B. | Ineligible Participants | 7-18 |
|  | C. | Fair Lending | 7-19 |
|  | D. | Transfer of Servicing | 7-19 |
| 7-12 | | **Required Elements for the Servicing Portion of the Quality Control Program** | 7-19 |

**Chapter 8  MORTGAGEE MONITORING, ADMINISTRATIVE SANCTIONS, CONTRACT TERMINATION, AND CREDIT WATCH STATUS**

**Part A. Monitoring Single Family Activities**

| 8-1 | **Introduction** | 8-1 |
| 8-2 | **On-site Reviews** | 8-1 |
| 8-3 | **Results and Referrals** | 8-1 |

**Part B. Administrative Sanctions and MRB Actions**

| 8-4 | | | **Basics** | 8-2 |
|  | A. | | Limited Denial of Participation (LDP) | 8-2 |
|  | B. | | Debarment or Suspension | 8-2 |
|  | C. | | Mortgagee Review Board (MRB) Action | 8-2 |
|  |  | 1. | Administrative Actions | 8-3 |
|  |  | 2. | Civil Money Penalties | 8-3 |

**Part C. Credit Watch Termination Initiative**

| 8-5 | | **Overview** | 8-3 |
|  | A. | Review of Early Defaults and Claims | 8-3 |
|  | B. | Outcome | 8-3 |
|  | C. | Process | 8-3 |

**4060.1 REV-2**

**Part D. Neighborhood Watch**

8-6    **Overview**.................................................................................................... 8-3

**Index**

# CHAPTER 1
# OVERVIEW

1-1    Approval: The term "mortgagee" means both mortgagees and loan correspondents in this handbook unless specified otherwise.  The requirements for approval vary depending on: (1) the mortgage function(s) that the mortgagee intends to perform, (2) which FHA loan programs it wants to participate in, i.e. single family and/or multifamily, and (3) the mortgagee's organizational type. Requirements for approval under the Title I home improvement loan and manufactured home loan programs are contained in HUD Handbook 4700.2.

   A.    **Application for Mortgagee Approval.**  A mortgagee may become an FHA-approved mortgagee upon meeting the Department's approval requirements, and submitting an acceptable HUD form 11701, *Application for Approval*, the appropriate non-refundable application fee, and other materials as described in Chapters 2 and 3 of this Handbook.

   B.    *Additional Approvals*

      1.    **Single Family Direct Endorsement Authority** allows mortgagees (but not loan correspondents) to underwrite single-family mortgages without FHA's prior review and submit them directly for endorsement (i.e. FHA mortgage insurance).  This authority may be granted by a FHA Single Family Homeownership Center (HOC).  The term "DE mortgagee" used in this handbook means a mortgagee who has received unconditional DE approval from one of the HOCs and is also commonly known as an underwriting mortgagee.  They underwrite loans for a loan correspondent as their sponsor.  See HUD Handbook 4000.4 for details.

      2.    **Multifamily Accelerated Processing** allows mortgagees to underwrite and close multifamily mortgages for FHA insurance without FHA's review prior to closing.  The Office of Multifamily Housing may grant this authority. Refer to the Multifamily Accelerated Processing Guide.

   C.    **Branch Offices, and Principal-Authorized Agent Relationships.**  Most mortgagees may register branches for conducting their FHA mortgage functions.  The most common function is the origination of single-family insured mortgages, which can be done within the lending area of each registered branch.  A mortgagee, other than a loan correspondent or an investing mortgagee, may use the principal-authorized agent relationship to originate and underwrite single-family insured mortgages.  See Chapter 5 for details.

1-2     **Types of Approved Mortgagees.**  FHA classifies approved mortgagees based on the functions they will perform and type of organization.  FHA may approve the following types of mortgagees.

    A.    **Supervised Mortgagee.**  This designation is limited to financial institutions that are members of the Federal Reserve System, and financial institutions whose accounts are insured by the Federal Deposit Insurance Corporation (FDIC), or the National Credit Union Administration (NCUA).  Examples of supervised mortgagees are banks, savings associations, and credit unions.  Supervised institutions may choose instead to apply as supervised loan correspondents or investing mortgagees.  For details regarding approval as a supervised mortgagee, see paragraph 2-26.

        A subsidiary or an affiliate of a supervised mortgagee must apply separately for FHA approval as either a non-supervised mortgagee or non-supervised loan correspondent.  FHA approval only applies to the legal entity that is the actual applicant and does not cover any of its subsidiaries or affiliates.

    B.    **Non-supervised Mortgagee (i.e., mortgage lenders).**  This designation applies to non-depository financial entities that have as their principal activity the lending or investment of funds in real estate mortgages.  For details regarding approval, see paragraph 2-27.

    C.    **Non-supervised Loan Correspondent (i.e., mortgage brokers).**  This designation applies to non-depository financial entities that have as their principal activity the origination of FHA-insured mortgages for sale or transfer to one or more Sponsors who underwrite the mortgages.  Sponsors must be DE mortgagees.  For details regarding approval, see paragraph 2-29.

    D.    **Supervised Loan Correspondent.**  A mortgagee that qualifies for approval as a supervised mortgagee may be approved as a supervised loan correspondent and must have one or more sponsors who underwrite the mortgages.  Sponsors must be DE mortgagees.  For details regarding approval, see paragraph 2-28.

    E.    **Investing Mortgagee**.  This designation applies to an organization, including a charitable or not-for-profit institution or pension fund, which is not approved as another type of institution and that invests funds under its own control. It may purchase, hold, and sell FHA insured mortgages but may not originate them. Investing mortgagees may only service FHA

insured mortgages with the prior permission of FHA.   For details regarding approval, paragraph 2-30.

F.      Governmental Institution, Government-sponsored enterprises, public housing agencies and State housing agencies:  A governmental institution may be approved as a mortgagee. For details regarding approval, see paragraph 2-31.

Examples are:
>           Federal government agency;
>           State government agency (including a State Housing Agency);
>           Municipal government agency (including a Public Housing Agency);
>           Federal Reserve Bank;
>           Federal Home Loan Bank;
>           Federal Home Loan Mortgage Corporation (Freddie Mac); and
>           Federal National Mortgage Association (Fannie Mae).

1-3    **Renewal of FHA Approval.**  Each FHA approved mortgagee must renew its approval annually. The Department reviews information on each mortgagee to determine if continued approval is appropriate.  All mortgagees submit an annual verification report.  Most pay an annual renewal fee and non-supervised mortgagees and non-supervised loan correspondents must also submit audited financial statements and supplementary reports.  See Chapter 4 for details on the renewal process.

1-4    **HUD's Lender Web Page.**  All relevant material needed by mortgagees is available through HUD's lender web page at http://www.hud.gov/groups/lenders.cfm. There are links on this page on how to become a FHA approved lender, information needed by approved mortgagees and links to the various systems used by FHA approved mortgagees who participate in the various FHA insured loan programs.  In addition, there is a link to what is commonly known as the starter kit comprising the material a newly approved mortgagee normally needs.

1-5    **FHA Connection.**   Mortgagees participating in FHA mortgage insurance programs must register for the FHA Connection that is the main portal that mortgagees use for online business transactions supporting the entire loan processing life cycle.   The FHA Connection home page is at: https://entp.hud.gov/clas.  It has various links on how to get started using the FHA Connection including how to register, FAQs and the FHA Connection Guide.

1-6    **HUDCLIPS.**  The most recent versions of HUD's laws, regulations, Federal Register publications, handbooks, mortgagee letters and HUD forms are available

on line at HUD's web site called HUDCLIPS at: http://www.hudclips.org/cgi/index.cgi.

1-7    **HUD Handbooks.** When handbooks are revised or changed, a suffix is added to the Handbook number such as REV-2 or CHG-5. In order to avoid citing an obsolete version of any handbook, all Handbooks will only be cited by the Handbook number only, such as 4060.1. The most recent versions of all handbooks are available in HUDCLIPS. Active links are provided in this handbook to any handbook that can be downloaded as a single file.

1-8    **Frequently Asked Questions.** The best FAQs related to this handbook are available on the Frequently Asked Questions page of the FHA Connection web site under the Lender Approval link.

1-9    **FHA Lender List on HUD's Web Site.** All approved mortgagees and their registered branch offices included on a HUD's web site at: http://www.hud.gov/ll/code/llslcrit.html.

1-10   **Performance Requirements.** Mortgagees must comply with the *Fair Housing Act;* Executive Order 11063 on Equal Opportunity in Housing; the *Equal Credit Opportunity Act* (ECOA); the *Real Estate Settlement Procedures Act;* the *Home Mortgage Disclosure Act;* and program statutory, regulatory and handbook requirements.

1-11   **Reports and Examinations.** FHA may, at any time, require a Title II mortgagee to report on any matter related to its FHA operations. This may include the inspection of a mortgagee's mortgage loan files, reports, records, books, or accounts. Representatives of the Office of Inspector General and/or Quality Assurance Division may periodically visit a mortgagee's office to review its origination and servicing procedures. See Chapter 8 for additional information.

1-12   **Home Mortgage Disclosure Act of 1974 (HMDA).** All FHA approved mortgagees are subject to HMDA. Reporting criteria and requirements are specified in the "A Guide To HMDA Reporting - Getting It Right!" and on the Federal Financial Institutions Examination Council (FFIEC) HMDA web site is at http://www.ffiec.gov/hmda.

1-13   **Administrative Actions, Administrative Sanctions, and Civil Money Penalties.** The Department's Mortgagee Review Board (MRB) is authorized to take administrative action against an approved mortgagee that does not comply with FHA requirements, the Real Estate Settlement Procedures Act (RESPA), or the non-discrimination requirements of the *Equal Credit Opportunity Act*, the *Fair Housing Act*, or Executive Order 11063 on Equal Opportunity in Housing. HUD, separately from the Mortgagee Review Board may take various types of administrative action against an approved mortgagee. See Chapter 8 for details.

1-14    **Reporting Fraud, Illegal Acts, and Unethical Practices to HUD.**  Fraud, illegal acts, irregularities, and unethical practices, by any participant (including mortgagees, mortgagors, or any other party that has an interest in the mortgage transaction) must follow the procedures on page 7-5, paragraph J.

1-15    **Mortgagee's Address for Communication.**  A mortgagee's home office must be its designated facility to which the Department directs all communications about the management affairs of the mortgagee, and from which the public obtains information on the activities of the mortgagee with one exception.  If a mortgagee has an administrative office separate from its home office and wants the Department to direct all communications about the management affairs of the mortgagee to that office, it may request that the Department direct communication to that office.  Mortgagees must keep all of their addresses current in FHA's automated systems using the FHA Connection.

1-16    **Contacting the Department.**  Go to the home page of the <u>FHA Connection</u> and click on the "Contact Us" link for a list of contact points by topic

1-17    **OMB Approval of Information Collections.**  All information collections in this handbook are covered under the Office of Management and Budget's (OMB) Control Number 2502-0005.  HUD may not collect this information, and you are not required to provide this information, unless it displays a currently valid OMB control number.

4060.1 REV-2

# CHAPTER 2
# REQUIREMENTS FOR INITIAL AND CONTINUING FHA APPROVAL

## Part A.  Requirements for all Mortgagees

2-1  **Introduction.**  A mortgagee must meet the following general requirements to be approved for participation in the FHA mortgage insurance programs.  A mortgagee also must meet the specific requirements that apply to the type of mortgagee for which it seeks approval.  The additional requirements are specified in Part B of this chapter.

2-2  **Business Form.**  A mortgagee seeking approval must be a corporation, partnership, or other chartered institution, and must be a permanent organization having succession.  A sole proprietorship or trust is not an acceptable business form for approval as a FHA mortgagee.

  A.  **Corporation.**  To be approved as a FHA mortgagee a corporation must be an entity, chartered in the United States; and meet all applicable laws regarding corporations.

  The corporation must be able to survive the death or incapacity of an officer or shareholder.  In determining official capacity or ownership, the Department, while accepting familial relationships, requires that there be a bona fide intent to share responsibilities and duties.  If a related individual has no substantive role in the management or operation of the mortgagee, ownership interest by that related party is aggregated with that of the individual having the operational or management role.  However, in determining ownership, all classes of stock for each owner must be aggregated to determine someone's ownership interest.

  B.  **Partnership.**  A partnership may be approved as a FHA mortgagee.  However, each general partner that is a corporation or other chartered institution that consists of two or more persons.  An individual person or a personal corporation is not eligible as a general partner in an approved mortgagee.

  1.  ***Managing General Partner.***  One general partner must be designated as the managing general partner.  The managing general partner must have as its principal activity the management of one or more partnerships, all of which are mortgage lenders, property improvement or manufactured home lenders; and must have exclusive authority to deal with FHA on behalf of each partnership.  The managing general partner, if itself a FHA approved mortgagee, may only be an investing mortgagee.  The managing general partner must meet the requirements with respect to officers.

2.    ***Partnership Agreement.***  The partnership agreement must specify that the partnership will exist for a minimum term of 10 years. In the event that a partner withdraws, the partnership must be specifically authorized to continue its existence.

C.    **Limited Liability Company (LLC).**  A limited liability company is an unincorporated legal entity created under applicable State law combining legal and tax attributes of corporations and partnerships.  The owners are referred to as members and generally have their liability limited to their investment.  A LLC is neither a partnership nor a corporation but rather a different kind of legal entity formed and operated under the State's LLC laws.  Some States do not allow LLCs to be used in certain businesses. For FHA, the key factors as to whether an LLC may be approved are permanence and succession of the LLC.   The LLC's Articles of Organization and/or Operating Agreement must:

- Specify that the LLC consist of two or more members.  A single member LLC is acceptable only if the member is a corporation consisting of two or more persons;
- Specify a minimum term of existence of at least ten years;
- Provide for succession;
- Authorize continuance in the event of the withdrawal or death of a member; and
- Specify that the LLC will not terminate until all FHA-insured mortgages have been transferred to another approved mortgagee.

The LLC must submit its Operating Agreement.  Some States' LLC laws may conflict with FHA requirements, thus precluding approval of an LLC as a FHA lender in those States.  Also, there is the possibility that an LLC formed in one State may not have the same legal standing in another State. State laws must be considered in both the application and approval processes.  A managing member must be designated as the FHA contact. A single-member LLC is an acceptable form of business for approval as a FHA mortgagee only if the single member is a corporation consisting of two or more persons.

2-3    **State Licensing Requirements.**  A mortgagee must obtain all required business licenses prior to, or in conjunction with, approval as a FHA mortgagee.  Except for a supervised mortgagee, copies of all required licenses must be submitted with the application.  A state-licensed mortgagee must also submit a letter certifying to the Department that it has not been refused a license or sanctioned.  If the mortgagee has been subject to an action against its license, it must submit documentation concerning the action.

4060.1 REV-2

2-4    **Mortgagee Name.**  All applicants must submit documentation that they have State approval for both their legal name and any "doing business as" name they use.  All applications for approval as a non-supervised mortgagee, non-supervised loan correspondent, or investing mortgagee whose legal or dba name includes "national," "Federal," or another restricted word, must as part of their application provide documentation that they have a legal right to its use (see 18 U.S.C. §709. False advertising or misuse of names to indicate Federal agency).  Generally, this right is only available to applicants that are a wholly owned subsidiary of a federally regulated financial institution.

2-5    **Net Worth Requirements.**  Except for investing mortgagees and government institutions, mortgagees must meet specified net worth requirements for initial approval and to maintain approval.  Adjusted net worth is owners' equity in the mortgagee less unacceptable assets.  Adjusted net worth must equal or exceed the minimum requirement for the mortgagee.  The net worth requirement for a supervised mortgagee or a non-supervised mortgagee increases after approval according to its FHA-insured single-family mortgage volume.

A.    *Requirements.*

1.    *Supervised and Non-supervised Mortgagees.*

a.    *Initial Approval.*  For initial approval, any supervised mortgagee or non-supervised mortgagee must have an adjusted net worth of not less than $250,000.  Supervised applicants are not required to verify adjusted net worth in their application, but may be asked to verify compliance during application processing.

b.    *Continued Approval.*  For continued approval, any supervised mortgagee or non-supervised mortgagee must maintain an adjusted net worth of one percent of the volume of FHA single family insured mortgages the mortgagee originated, purchased, or serviced during the prior fiscal year, but not less than $250,000, up to a maximum requirement of $1 million.  Supervised mortgagees are not required to verify adjusted net worth to renew their approval, but may be asked to verify compliance during the renewal process.

c.    *Mortgage Volume.*  In calculating mortgage volume, only single-family FHA-insured mortgages are counted.  The mortgage volume for a sponsor of a loan correspondent includes the aggregate original principal amount of mortgages purchased from its loan correspondents during

the mortgagee's fiscal year. HECMs are included at their maximum claim amount irrespective of outstanding principal.

To determine mortgage volume at the end of the fiscal year under audit:

- Start with the aggregate unpaid principal balance in the servicing portfolio as of the end of the mortgagee's fiscal year;
- Add the aggregate original principal amount of insured mortgages endorsed during the fiscal year;
- Add the aggregate original principal amount of insured mortgages purchased from sponsored loan correspondents during the fiscal year; and
- Subtract from this total the aggregate outstanding principal balance of insured mortgages originated by the mortgagee or purchased from its loan correspondent(s) during the mortgagee's fiscal year that were retained for servicing.

Examples of calculations to determine net worth requirements are included in chapter 7 of the most recent version of HUD IG Handbook 2000.04, *Consolidated Audit Guide for Audits of HUD Programs*.

2. ***Mortgagee Approved Only for Multifamily Programs.*** Any mortgagee approved for participation only in the multifamily mortgage insurance programs must have an adjusted net worth of not less than $250,000, but is not subject to net worth requirements based on mortgage volume.

3. ***Supervised and Non-supervised Loan Correspondents.*** For initial approval and for continued approval, a loan correspondent must have and maintain an adjusted net worth of at least $63,000, plus $25,000 for each registered branch office up to a maximum required adjusted net worth of $250,000. Loan correspondents are not subject to net worth requirements based on mortgage volume. Supervised entities are not required to verify adjusted net worth, but may be asked to verify compliance during the approval or renewal process.

4. ***Investing Mortgagee.*** There is no specific net worth requirement for this type of mortgagee. However, it must have funds or funding arrangements for investment. See paragraph 2-30 for details.

5.    ***Governmental Institution.***  There is no specific net worth requirement for this type of mortgagee.

B.    ***Calculation of Adjusted Net Worth.***  All calculations must be prepared by a CPA pursuant to chapter 7 of the most recent version of HUD IG <u>Handbook 2000.04</u>, *Consolidated Audit Guide for Audits of HUD Programs*.  Applicants seeking approval as a non-supervised mortgagee or non-supervised loan correspondent must also submit to the FHA a CPA certified audit report; see paragraph 3-2(A)(6) for details.

## 2-6    Liquid Assets.

A.    ***Requirement.***  A supervised or non-supervised mortgagee or loan correspondent must maintain liquid assets of 20 percent of its adjusted net worth or $100,000 whichever is lesser.  Supervised applicants are not required to verify liquid assets in their application, but may be asked to verify compliance during application processing.

B.    ***Acceptable.***  Cash and cash equivalents constitute liquid assets.  Cash includes cash on hand, checking accounts, savings accounts, and certificates of deposit.  Cash equivalents are readily marketable investments, e.g. securities readily convertible into cash.  To be considered a liquid asset, the cash or cash equivalent must not be restricted or otherwise reserved for any purpose other than the payment of a current liability.

C.    ***Unacceptable.***  FHA does not consider a line of credit or loans or mortgages held for resale by the mortgagee to be liquid assets.

## 2.7    Application Fees.  *All fees are nonrefundable*

A..    ***Fee Amount.***

1.    ***Mortgagee Approval***.  The fee is $1,000 except for those entities already approved as a Title I lender, governmental institutions or non-depository not-for profit entities.

2.    ***Branch Office Registration.***  The fee is $300, except for governmental institutions or non-depository not-for profit entities.

B.    ***Fee Payment.***  The application fee must be mailed to HUD's lockbox together with the HUD form, *Application Fee for Title II Mortgagee Approval* to the following address:

U.S.  Department of HUD
P.O.  Box 198619
Atlanta, GA 30384

Copies of the check and application fee form must accompany the FHA
lender application form.  If not, a copy of the front and back of the
cancelled check will be requested.

2-8    **Operating Expenses.**  A mortgagee must pay all its own operating expenses.
This includes expenses of its main and branch offices involved in originating or
servicing any FHA insured mortgages.  Operating expenses include, but are not
limited to, equipment, furniture, office rent, overhead, employee compensation,
and similar expenses.

2-9    **Employees and Officers.**  An approved mortgagee must employ trained
personnel that are competent to perform their assigned responsibilities.

A.    ***Employees.***  Employees are those individuals who are under the direct
supervision and control of an FHA approved mortgagee and where the
individuals are exclusively employed by the FHA approved mortgagee in
the mortgage lending and real estate fields.  The mortgagee must
demonstrate the essential characteristics of the employer-employee
relationship upon inquiry by the Department.  [See also paragraphs 2-9(D)
and 2-9(G)]

Compensation of employees may be on a salary, salary plus commission,
or commission only basis and includes bonuses.  All compensation must
be reported on Form W-2.  Employees who perform underwriting and loan
servicing activities may *not* receive commissions.

B.    ***Officers.***  Individuals are officers for the purposes of FHA requirements if
they bear the corporate title of Vice President or higher and also include
Branch Managers.  A mortgagee must have one or more officers with
authority over the mortgagee's loan origination and servicing operations.
An officer is either a corporate officer, or a principal of a non-corporate
entity, who has authority to legally bind the corporation or entity.  In the
case of a government institution, this role would be filled by a designated
staff person(s).  At least one officer must spend full time managing and
directing the mortgagee's operations.  That officer must have a minimum
of three years acceptable experience in the mortgage activities for which
the mortgagee is seeking approval.  Relevant training may be substituted
for some of the required experience.  An applicant must submit, with its
application, current resumes documenting this experience.  In determining
the acceptability of an officer's experience, the Department will consider:

- Experience in originating single family and multifamily mortgages;
- Experience in servicing single family and multifamily mortgages;
- Experience in investing funds in real estate mortgages;
- Experience in managing other individuals performing these services; and

- Experience in real estate sales or brokerage does *not* qualify.

A Branch Manager's compensation may be based upon the "net" profit of the branch. For example, the FHA approved mortgagee may collect the revenue from the branch, pay the branch expenses, and then pay the branch manager the remaining revenues, if any, as a commission. Such an arrangement is, essentially, an alternative compensation program for the branch manager and is an acceptable arrangement if all other branch requirements are met.

C. ***Companies with Joint Officers.*** If a mortgagee has any of the same officers, stockholders, partners, or members as another entity, the officers may represent more than one entity if:

1. There is a clear and effective separation of the two entities, and mortgagors know at all times exactly with which entity they are doing business.

2. There is a duly appointed or elected senior officer, with the required minimum three years of acceptable experience, designated to conduct exclusively the affairs of the mortgagee during normal business hours.

D. ***Control and Supervision of Staff.*** A mortgagee must exercise control and responsible management supervision over its home office and branch employees. Control and supervision must include, at a minimum, regular and ongoing reviews of employee performance and of work performed.

E. ***Signatory Authority.*** Any employee who signs applications for mortgage insurance on behalf of the mortgagee must be a Vice President, or be authorized to bind the mortgagee in matters involving the origination and servicing of insured mortgages.

F. ***Conducting Mortgagee Business.*** During his/her normal duty hours, employees, who are involved with FHA transactions, may conduct only the business of the mortgagee.

G.    *Full Time, Part Time and Outside Employment.*  A mortgagee may employ staff full time or part-time (less than the normal 40 hour work week).  They may have other employment including self-employment.  However, such outside employment may not be in mortgage lending, real estate, or a related field.  Direct endorsement underwriters are included in this provision.  An underwriter may not work on a part-time basis for any other mortgagee, even underwriting conventional mortgage loans.  An underwriter may not underwrite loans for a parent or subsidiary of the underwriter's approved employer.  A direct endorsement underwriter's authority is through the employer and does not extend under any corporate "umbrella."

2-10    **Ineligible Participants.**  An applicant is ineligible for approval if the mortgagee or any officer, partner, director, principal, or employee of the applicant mortgagee is:

A.    Suspended, debarred, under a limited denial of participation (LDP), or otherwise restricted under 24 CFR Part 24 or 25 or under similar provisions of any other Federal agency;

B.    Under indictment for, or has been convicted of, an offense that reflects adversely upon the applicant's integrity, competence or fitness to meet the responsibilities of an approved mortgagee;

C.    Subject to unresolved findings contained in a HUD or other governmental audit, investigation, or review;

D.    Engaged in business practices that do not conform to generally accepted practices of prudent mortgagees or that demonstrate irresponsibility; and

E.    Under investigation for any HUD-related violation.

2-11    **Office Facilities.**    The mortgagee may conduct its loan origination and/or servicing activities from any approved and adequately staffed office.   A mortgagee is fully responsible for the actions of its offices.  Mortgagees that lease space from a real estate agent must assure compliance with RESPA requirements.

A.    *Home office.*  Each applicant must identify which location they consider their main or home office for FHA mortgage activities.  It doesn't have to be the entity's corporate office.  A mortgagee's home office facilities must:

1.    Have adequate office space and equipment;

2.    Be in a location conducive to mortgage lending;

4060.1 REV-2

3.     Be located in a commercial space that is separate and apart from any other entity.  A mortgagee may share general reception-type entrances or lobbies with another business;

4.     Be clearly identified to the public so that loan applicants and mortgagors will know, at all times, exactly with whom they are doing business.  This includes a permanently affixed business sign and other common means of identification used by a business entity;

5.     Display a fair housing poster;

B.     ***Traditional branch office.***  A traditional branch office is a separately located unit of the mortgagee in commercial space.  A traditional branch office must:

1.     Have adequate office space and equipment;

2.     Be in a location conducive to mortgage lending;

3.     Be separated from any other entity by walls or partitions. (Entrances and reception areas may be shared.);

4.     Be identified to the public;

5.     Display a fair housing poster;

6.     Provide privacy for conducting interviews; and

C.     ***Nontraditional branch office.***  A nontraditional branch office is required to meet branch office staffing requirements and the following requirements concerning office facilities:

1.     It may be located in non-commercial space, but it must have adequate office space and equipment and must conform to the local government use requirements.

2.     It must display a fair housing poster if the public is ever received.

D.     ***Direct lending branch office***.  A direct lending branch is an office whose origination operation only uses a call center and/or the Internet for contacting consumers.  It must meet the office facilities and staff requirements of a traditional branch office except that it must have a separate manager and can be collocated with a lender's home office or one

of its traditional branches.  See paragraph 5-8 for the approval criteria of a direct lending branch.

2-12    **Staffing Requirements.**  An approved mortgagee must have sufficient staff or permitted contractor support for loan origination, processing, underwriting, servicing, and collection activities, to the extent that the mortgagee engages in these activities.

    A.    ***Home office.***  The mortgagee must have a home office staff of at least two full time employees.  A shared receptionist, while permitted, may not be used to meet this requirement.

    B.    ***Branch office.***  A mortgagee must have at least one full time employee at each branch office.  A manager must be assigned to each traditional and nontraditional branch office.  A separate manager must be located at each direct lending branch.

    C.    ***Branch Managers, Loan Officers and Underwriters.***  Loan officers (also known as loan originators) of FHA-insured mortgages must be employees of the mortgagee.  Underwriters of FHA-insured mortgages must be employees of the mortgagee; its authorized agent; or, if the mortgagee is a loan correspondent, its sponsors.  Managers, loan originators and underwriters may not be independent contractors or contract employees.

    D.    ***Centralized Centers***.  Processing and/or underwriting functions may be centralized in any office(s) of the mortgagee or performed at each office of the mortgagee.

2-13    **Outsourcing.**  A mortgagee may contract out certain administrative and clerical functions that do not materially affect underwriting decisions or increase the risk to FHA.  However, the mortgagee is still responsible for the quality of the mortgages and must ensure compliance with program requirements and RESPA requirements.  The management, underwriting, and loan originator functions may not be contracted out.

    A.    ***Types of functions that may be contracted out are:***

- Clerical Assistance;
- Loan processing:  typing of loan documents, mailing out and collecting verification forms, ordering credit reports, and/or preparing for endorsement and shipping loans to investors;
- Loan servicing:  ministerial processing of a foreclosure action, preservation and protection, and/or tax services;
- Legal functions;
- Quality control reviews; and

- Such other functions as may be approved in advance by the Department.

B. ***Provider Requirements.*** The functions listed above in paragraph 2-13(A) may not be contracted out to third party loan originators, real estate brokers, or similar entities. An approved mortgagee may own or have an ownership interest in a separate business entity that offers such contract services. An affiliated business arrangement, in which affiliated or related companies make referrals to each other, is regulated under RESPA. (See RESPA [12 U.S.C. §2602]: (7) the term "affiliated business arrangement" means an arrangement in which (A) a person who is in a position to refer business incident to or a part of a real estate settlement service involving a federally related mortgage loan, or an associate of such person, has either an affiliate relationship with or a direct or beneficial ownership interest of more than 1 percent in a provider of settlement services; and (B) either of such persons directly or indirectly refers such business to that provider or affirmatively influences the selection of that provider.)

Mortgagees may not contract with entities or persons that are suspended, debarred, or under a relevant LDP or have agreed to a voluntary exclusion under 24 CFR part 24.

C. ***Costs of Outsourced Services.*** The costs of such services may not be imposed on a FHA borrower or mortgagor as allowed in the various FHA loan programs.

2-14 **Prohibited Branch Arrangement.** An approved mortgagee may not originate or service FHA insured mortgages from branches that do not meet FHA requirements.

A. ***Separate Entities Acting as a Branch Office***. An approved mortgagee is prohibited from engaging an existing, separate mortgage company or broker to function as a branch of the approved mortgagee and allowing that separate entity to originate insured mortgages under the approved mortgagee's FHA mortgagee number. This constitutes a prohibited branch arrangement. Separate entities may not operate as "branches" or "DBAs" of a FHA approved mortgagee. If the separate entity was purchased and legally merged into the approved mortgagee in compliance with applicable state law(s), the approved mortgagee must provide a copy of the merger documents and state license(s) to FHA's Lender Approval and Recertification Division, as described in paragraph 6-17.

B. ***Certain Employment Agreements***. A FHA approved mortgagee must pay all of its operating expenses including the compensation of all employees of its main and branch offices. Other operating expenses that must be paid by the

FHA approved mortgagee include, but are not limited to, equipment, furniture, office rent, utilities and other similar expenses incurred in operating a mortgage lending business.  A branch compensation plan that includes the payment of operating expenses by the branch manager, any other employee or by a third party is a prohibited arrangement. The following includes some, but not all, examples of unacceptable provisions in employment agreements:

- Require all contractual relationships with vendors such as leases, telephones, utilities, and advertising to be in the name of the "employee" (branch) and not in the name of the FHA approved mortgagee;
- Require the "employee" (branch) to indemnify the FHA approved mortgagee if it incurs damages from any apparent, express, or implied agency representation by or through the "employee's" (branch's) actions; and
- Require the "employee" (branch) to issue a personal check to cover operating expenses if funds are not available from an operating account.

2-15    **Communications Capability and Responsibility.**  Except for a mortgagee that only services multifamily mortgages, a mortgagee's home office and each branch office must be able to provide prompt responses to applicant or mortgagor inquiries by one of the following methods:

- The office staff need not maintain complete records on each mortgage in it area, but it must be able to secure such information for the applicant or mortgagor;
- Have toll-free telephone service at an office that can provide needed information; and
- Accept collect telephone calls from mortgagors at an office that can provide the same sort of information as that described above.

To ensure equal opportunity for persons with hearing or speech impairments, it may be necessary for offices to purchase a TTY (telecommunications device for hearing and speech impaired persons) or provide equally effective communication systems.  If an office offers a toll-free telephone number for non-disabled persons, it must also offer a toll-free opportunity for hearing and speech impaired persons, e.g., a relay system.

2-16    **Fair Housing and Other Federal Laws.**

A.    A mortgagee must comply with the *Fair Housing Act*, Executive Order 11063 on Equal Opportunity in Housing, the *Equal Credit Opportunity Act* (ECOA), the *Real Estate Settlement Procedures Act* (RESPA), the *Home Mortgage Disclosure Act* (HMDA), and all other Federal laws relating to the lending or investing of funds in real estate mortgages.

B.    A mortgagee must fully cooperate with any investigations brought by HUD pursuant to the any authority.  A mortgagee must make all officers and employees available for interviews and must promptly provide (within not more than 30 days) information and documents requested by HUD, in the format HUD requests.  Failure to fully cooperate may result in administrative action by the Mortgagee Review Board and possible referral to the U.S. Department of Justice for further action.

C.    ***Fair housing posters.***  A mortgagee must post and maintain a fair housing poster at each place of business that participates in activities covered by Section 805 of the *Fair Housing Act* (i.e. making or purchasing of loans or providing other financial assistance: a) for purchasing, constructing, improving, repairing, or maintaining a dwelling; or b) secured by residential real estate).  Fair housing posters must be prominently displayed so as to be readily apparent to all persons seeking residential real estate related transactions or brokerage services.

2-17  **Misrepresentative Advertising.**  An approved mortgagee may not use misrepresentative advertising.  If a mortgagee determines its branches or employees have engaged in such activity, then mortgagees must take action necessary to ensure that such practices do not occur again. All advertisements must emphasize the name of the company and not the government. See 18 U.S.C. §709 *False advertising or misuse of names to indicate Federal agency* and 18 U.S.C. §1017 *Government seals wrongfully used.*

A.    ***Examples.***  This list is illustrative and should not be considered all-inclusive.

- Improperly using the name or seal of FHA or HUD to imply that the advertisement is from or is endorsed by FHA or HUD;
- Improperly advertising on a government type form designed to simulate an official Federal government document; and
- Stating that the advertisement "will serve as your official MIP account notice".

B.    ***Actions.***  When HUD finds advertising abuses by mortgagees, it will take prompt action, as appropriate:

- The Mortgagee Review Board may sanction the mortgagee and/or impose civil money penalties; or
- A referral may be made to the Department's Inspector General for its review; or further referral to the Department of Justice which has jurisdiction over criminal prosecution; or a referral may be made to the

Federal Trade Commission which has jurisdiction over deceptive trade practices.

2-18    **Loan Origination Requirement.**  All mortgagees must follow all applicable statutes, regulations and HUD written instructions, including program handbooks and mortgagee letters on loan originations.  Non-FHA approved mortgage brokers meeting the requirements in <u>Mortgagee Letter 00-10</u> may participate in the origination of a FHA Insured Reverse Mortgages (HECMs).

With few exceptions, a mortgagee must originate, close, fund, and submit mortgages for FHA insurance endorsement in its own name.  A mortgagee may not perform only a part of the loan origination process, such as taking the loan application, and routinely transfer the underwriting package (appraisal report and/or mortgage credit package) to another mortgagee except between a loan correspondent and its sponsor, and a principal and its authorized agent.  A loan correspondent may process an application and submit it to one of its sponsors for underwriting.  The loan correspondent must close the loan in its own name, or in the name of the sponsor that underwrote the loan.  An Authorized Agent may perform any part of the loan origination process, including underwriting, on behalf of its Principal; however the loan must be closed in the name of the Principal.  For further information on the Principal-Authorized Agents, see chapter 5, Part B.

2-19    **Geographic Restrictions for Loan Origination and Underwriting.**  Each office of a mortgagee (main office or branch office) is authorized to operate only in those states, the District of Columbia, and/or Puerto Rico as designated by the Department.  Geographic restrictions apply to the loan origination component of taking a loan application and underwriting.  The processing of loan applications can be done at any office of a mortgagee.  Approved mortgagees may purchase, hold, service, and sell insured FHA mortgages without regard to geographic restrictions.  Offices must not be located so as to avoid receiving applications from, or providing assistance to, minority loan applicants.

   A.   ***Origination Lending Area for Home Offices, Traditional Branches and Nontraditional Branches:***  The single family origination lending area of each office is based on its geographic location and is composed of one or more States.  This lending area is also known as the Area Approved for Business (AAFB) and can be verified via the FHA Connection.  A complete table of all lending areas is included in the Lender Approval FAQs in the FHA Connection FAQ section.

   B.   ***Origination Lending Area for Direct Lending Branches:***  The single family origination lending area of these branches are determined on a case-by-case basis, but normally contain all of the HUD Field Office jurisdictions in all States where the lender is State approved, registered or

exempt to conduct direct lending.  See paragraph 5-8 for the approval criteria of a direct lending branch.

C.    *Underwriting Area of a DE Mortgagee.*  A DE mortgagee's initial approval to underwrite is granted by its respective HOC and covers all HUD Field Office jurisdictions within its AAFB plus those of any loan correspondents it sponsors and the AAFB for mortgagee that it established an Authorized Agent-Principal relationship.

D.    *Streamline Refinance.*  There are no geographic restrictions on the origination of streamline refinanced single-family loans.  See HUD Handbook 4155.1 for details on streamline refinancing.

E.    *Sponsoring Loan Correspondents*.  DE Mortgagees may sponsor loan correspondents operating in any HUD Field Office jurisdiction, whether or not they have origination approval for the same office.  The DE mortgagee uses their FHA Connection account to add a loan correspondent they want to sponsor.

F.    *Multifamily Mortgagees.*  A mortgagee participating in the Department's multifamily mortgage insurance programs may originate project mortgages in the jurisdiction of any Field Office.  The mortgagee must request and receive written permission from each Field Office in whose jurisdiction it seeks to do business.

2-20    **Loan Servicing Responsibility.**  Each mortgagee that services or sub services FHA insured single-family mortgages must be an approved mortgagee and must follow the requirements of HUD Handbook 4330.1, *Administration of Insured Home Mortgages*.  Multifamily servicing mortgagees must meet the requirements of HUD Handbook 4350.4, *Insured Multifamily Mortgagee and Field Office Remote Monitoring.*

A Title II mortgagee may assign or otherwise transfer an insured Title II mortgage only to another approved Title II mortgagee.  The transferee or assignee may be any lender type except a non-supervised loan correspondent.

2-21    **Escrow Funds.**

A.    *Use of Escrow Funds.*  Mortgagees may not use mortgagor escrow funds for any purpose other than for which they were received.  Escrow commitment deposits, work completion deposits, and all periodic payments received by the mortgagee, including ground rents, taxes, assessments, and insurance premiums, must be deposited with one or more financial institutions in a special account or accounts fully insured by the FDIC or the NCUA.  This requirement may be modified only with the

written permission of the Department.  See HUD Handbook 4330.1 for details on escrow accounts.

B.    ***Reporting of Escrow Funds.***  If escrow funds are reported on the balance sheet, they must be fully offset by a corresponding liability and must be segregated on the balance sheet.  A mortgagee may not report escrows as its own assets.  The annual audit of non-supervised mortgagees and loan correspondents must cover such fiduciary accounts.

2-22    **Prohibited and Permissible Payments.**  A mortgagee may not pay any fee, kickback, compensation or thing of value (including a fee representing all or part of the mortgagee's origination fee) to any person or entity in connection with a FHA insured mortgage transaction, except for services actually performed and permitted by the Department.

A.    ***Prohibited Payments.***  A mortgagee is not permitted to:

1.    Advance funds to a real estate agent, real estate broker, mortgage broker, or packager as an advance of anticipated commissions on sales to be financed with a FHA-insured mortgage loan to be provided by the mortgagee.

2.    Make low interest or no interest loans to a real estate broker, real estate agent, mortgage broker, packager, builder or any other party from whom the mortgagee accepts proposals involving FHA-insured mortgages.

3.    Pay a gratuity or make a gift valued above items that are customarily distributed in the normal course of advertising, public relations, or as a general promotion device, to any person or entity involved in FHA-insured mortgage transactions of the mortgagee.

4.    Pay any compensation or fee that is prohibited by RESPA.

B.    ***Permissible Payments for Services Performed.***  In connection with FHA insured mortgages and mortgage insurance applications, a mortgagee may pay fees permitted by program policy as identified in HUD Handbooks, Mortgagee Letters or Circular Letters.  Generally, the policy for:

1.    Single Family Origination is in HUD Handbook 4000.2 , *Mortgagees' Handbook, Application Through Insurance (Single Family)*, HUD HUD Handbook 4000.4, *Single Family Direct Endorsement Program*, or HUD Handbook 4155.1, *Mortgage*

*Credit Analysis for Mortgage Insurance on One to Four-Family Properties.*

2.    Single Family Servicing is in HUD Handbook 4330.1, *Administration of Insured Home Mortgages*.

3.    Multifamily Development is in HUD Handbook 4430.1, *Initial Closing Requirements for Project Mortgage Insurance.*.

4.    Multifamily Servicing is in HUD Handbook 4350.4, *Insured Multifamily Mortgagee and Field Office Remote Monitoring*.

2-23    **Quality Control.**  A mortgagee must maintain a written Quality Control Plan for the origination and servicing of FHA insured mortgages.  The Quality Control Plan and its implementation must meet the requirements set forth in chapter 7. Mortgagees are required to report to HUD any fraud, illegal acts, irregularities or unethical practices.

2-24    Requirement to Notify HUD of Changes Subsequent to Approval.  A mortgagee must notify the Department in writing within a specific number of days of any business change that affects its standing as an approved institution, or which changes the information on which it was originally approved, including: corporation conversion, merger, consolidation, succession, liquidation, termination; or a change in its charter provisions, name, bylaws, location, ownership, character of business, or senior officers; or a significant reduction in its revenues, assets or net worth.  See chapter 6 for details.

## Part B.  Additional Requirements for Specific Mortgagee Types

2-25    **Introduction.**  A mortgagee may be approved to participate in the Department's mortgage insurance programs as one of the following designated types of mortgagee.  In addition to the general approval requirements of Part A of this chapter, it must meet specific requirements for its particular mortgagee type.

2-26    **Supervised Mortgagees.**  A supervised mortgagee is a financial institution that is a member of the Federal Reserve System or an institution whose accounts are insured by the FDIC or the NCUA.  Such a mortgagee is not required to have mortgage lending as a principal activity as described in paragraph 2-29(C).  A subsidiary or an affiliate of a supervised financial institution is ***not*** considered to be supervised for approval as an FHA mortgagee.  Examples of supervised mortgagees are banks, savings associations, and credit unions.

A.    ***Permissible Mortgage Lending Activities.***  A supervised mortgagee may originate, underwrite, purchase, hold, service, and sell FHA insured mortgages and submit applications for mortgage insurance.

B.    ***Branch Offices.***  A supervised mortgagee may maintain FHA registered branch offices that originate insured mortgages.  Specific approval requirements are in chapter 5.  The mortgagee is fully responsible to HUD for the actions of its offices.

C.    ***Fiduciary Relationships.***  Approval of a financial institution as a supervised mortgagee constitutes approval for it to act in a fiduciary capacity in investing fiduciary funds, which are under its individual or joint control.  When such a fiduciary relationship is ended, any insured mortgages held in the fiduciary estate must be transferred to an approved supervised mortgagee; the fiduciary relationship must permit the transfer.

2-27   **Non-supervised Mortgagees.**  A non-supervised mortgagee is a financial entity that has as its principal activity the lending or investing of funds in real estate mortgages.

A.    ***Permissible Mortgage Lending Activities.***  A non-supervised mortgagee may originate, underwrite, purchase, hold, service, and sell FHA insured mortgages and submit applications for mortgage insurance.

B.    ***Branch Offices.***  A non-supervised mortgagee may maintain FHA approved branch offices for the origination of FHA insured mortgages as described in chapter 5.

C.    ***Warehouse Line of Credit Requirement.***  A non-supervised mortgagee, except a mortgagee approved for participation only in the multifamily mortgage insurance programs, must maintain a warehouse line of credit or other mortgage-funding program acceptable to the Department. Acceptable programs include table funding and concurrent funding arrangements.  The program must be adequate to fund the mortgagee's average 60-day origination production pipeline, but not less than a $1 million warehouse line of credit or funding program.  The line of credit must be issued directly to the mortgagee.  In lieu of a warehouse line of credit, a mortgagee may have a letter from a financial institution stating that it will fund all mortgages originated by the mortgagee.

D.    ***Principal Activity.***  A non-supervised mortgagee must spend a majority of its time and assets in the production of real estate mortgages and in the lending or investment of funds in real estate mortgages, or a directly related field.  For FHA purposes, the principal activity of a non-supervised mortgagee, other than one organized as a not-for-profit entity, must contribute at least one-half of the entity's gross revenues, unless otherwise approved by FHA.

E.    ***Annual Certified Audit Report.***  For continued approval, a non-supervised mortgagee must submit to the Department an acceptable audit report within 90 days after the close of the mortgagee's fiscal year.  The audit report must be prepared in accordance with the requirements of the most recent off HUD IG Handbook 2000.04, *Consolidated Audit Guide for Audits of HUD Programs*.

2-28   **Supervised Loan Correspondents.**  A mortgagee that meets the Department's definition of a supervised mortgagee may apply for and receive approval as a loan correspondent.  The approval must be requested by at least one Sponsor.  An approved loan correspondent is required to have at least one qualified sponsor at all times.

A.    ***Sponsor.***  A sponsor of a loan correspondent must be a DE mortgagee.

1.    ***Responsibility for Loan Correspondents.***  The Sponsor is responsible to the Department for the actions of each of its loan correspondents in originating FHA-insured mortgages.  A Sponsor must supervise and perform quality control reviews of each of its loan correspondents.  See chapter 7 for details.

2.    ***Underwriting.***  The Sponsor performs loan underwriting on behalf of a loan correspondent.  All mortgages originated by the loan correspondent must be closed in the name of the loan correspondent or the sponsor underwriting the loan.

B.    ***Permissible Mortgage Lending Activities.***  A supervised loan correspondent may originate FHA insured mortgages and submit applications for mortgage insurance.

1.    ***Sale only to Sponsor(s).***  It may not sell or otherwise transfer any FHA mortgage to any mortgagee other than its registered Sponsor that underwrote the loan, without prior written approval from the Department.

2.    ***Servicing.***  A supervised loan correspondent may service FHA-insured mortgages in its own portfolio with the prior permission of the Department.  Such requests should be submitted to the Lender Approval and Recertification Division.

C.    ***Funding agreement.***  A supervised loan correspondent must have a letter or written agreement from each of its Sponsors that the Sponsor will purchase all FHA mortgages that the loan correspondent originates and that the Sponsor underwrites.

Case 3:07-cv-03140-SI    Document 51-2    Filed 05/16/2008    Page 44 of 131

4060.1 REV-2


D.    ***Branch Offices.***    A supervised loan correspondent may maintain FHA registered branch offices for the origination of insured mortgages as described in chapter 5, Part A.

2-29    **Non-supervised Loan Correspondents.**    A non-supervised loan correspondent is a financial entity that has as its principal activity the origination of mortgages for sale or transfer to one or more registered Sponsors.    An approved loan correspondent is required to have at least one qualified sponsor at all times.

A.    ***Selection of a Sponsor.***    A Sponsor of a loan correspondent must be a DE mortgagee.

1.    ***Responsibility for Loan Correspondents.***    The Sponsor is responsible to the Department for the actions of each of its loan correspondents in originating FHA-insured mortgages.  A Sponsor must supervise and perform quality control reviews of each of its loan correspondents.  See chapter 7 for details.

2.    ***Underwriting.***    The Sponsor performs the loan underwriting function on behalf of the loan correspondent.  All mortgages originated by the loan correspondent must be closed in the name of the loan correspondent or the Sponsor underwriting the loan.

B.    ***Permissible Mortgage Lending Activities.***    A non-supervised loan correspondent may originate FHA insured mortgages and submit applications for mortgage insurance.

1.    ***Sale only to Sponsor(s).***    It may not sell or otherwise transfer any FHA mortgage to any mortgagee other than its registered Sponsor that underwrote the loan, without prior written approval from the Department.

2.    ***May not hold, purchase, or service.***    It may not hold, purchase, or service FHA-insured mortgages.

C.    ***Principal Activity.***    A non-supervised loan correspondent must spend a majority of its time and assets in the production of real estate mortgages and in the lending or investment of funds in real estate mortgages, or a directly related field.  For FHA purposes, the principal activity of a non-supervised loan correspondent, other than one organized as a not-for-profit entity, must contribute at least one-half of the entity's gross revenues, unless otherwise approved by FHA.

4060.1 REV-2

D.      *Funding agreement.*  It must have a written agreement with each of its Sponsors to fund all mortgages that it originates and that the Sponsor underwrites

E.      *Branch Offices.*  A loan correspondent may maintain FHA registered branch offices for the origination of insured mortgages as described in chapter 5, Part A.

2-30    **Investing Mortgagees.**  An investing mortgagee is an organization, including a charitable or not-for-profit institution or pension fund, that invests funds under its own control.

A.      *Permissible Mortgage Lending Activities.*  An investing mortgagee may purchase, hold, and sell FHA-insured mortgages.  It may not submit applications for mortgage insurance.  It may not service insured mortgages without the prior approval of the Department, and must arrange for an approved mortgagee to service all insured mortgages the investing mortgagee acquires and monitor the performance of any service they hire.

B.      *Special Requirements.*  An investing mortgagee must meet the following requirements:

1.      It must have lawful authority to purchase insured mortgages in its own name.

2.      It must have available, or have arranged for, funds sufficient to support a projected investment in real estate mortgages of at least $1 million.  For example, a $1 million line of credit is acceptable.

2-31    **Governmental Institutions.**  Any of the following may be approved as a mortgagee:

- A Federal, State or municipal government agency;
- A Public Housing Authority or State Housing Agency;
- A Federal Reserve Bank;
- A Federal Home Loan Bank;
- Freddie Mac; and
- Fannie Mae.

A.      *Permissible Mortgage Lending Activities.*  A governmental institution may originate, underwrite, purchase, hold, service, and sell FHA insured mortgages and submit applications for mortgage insurance to the extent authorized by Federal, State, or local law.

B.     ***Branch Offices.***   These mortgagees may maintain branch offices that originate and service insured mortgages as described in chapter 5, Part A.

C.     ***Audit Requirements.***   Except upon request, a governmental institution is not required to submit an audit to obtain or retain approval to participate in the Department's mortgage insurance programs.  The *Single Audit Act Amendments of 1996* placed State and local governments, colleges and universities, and other not-for-profit grantees under the same audit process.  As a result of this modification of the *Single Audit Act*, the Office of Management and Budget (OMB) issued uniform standards for the audit of such entities receiving Federal financial assistance, in Circular A-133, *Audits of States, Local Governments, and Non-Profit Organizations.*   For additional information see HUD IG Handbook 2000.04, *Consolidated Audit Guide for Audits of HUD Programs* and AICPA Statement of Position 98-3, *Audits of States, Local Governments, and Not-for-Profit Organizations Receiving Federal Awards.*

4060.1 REV-2

# CHAPTER 3
## MORTGAGEE APPROVAL PACKAGE AND PROCEDURES

### Part A.  Submission of Application

3-1    **Introduction.**  This part explains the documentation that the mortgagee must submit when applying for FHA approval.

3-2    **Required Documentation.**  The documentation that must be submitted by the mortgagee as part of the application package varies according to the type of mortgagee status for which the applicant seeks approval**.**  The following documentation (indicated by an "X") must be submitted**.**  HUD may request additional documentation.

| | | Supervised Mortgagee | Nonsupervised Mortgagee | Supervised Loan Correspondent | Nonsupervised Loan Correspondent | Investing Mortgagee | Government Institution |
|---|---|---|---|---|---|---|---|
| 1 | Sponsor cover letter | | | X | X | | |
| 2 | Fee* | X | X | X | X | X | |
| 3 | Application Form | X | X | X | X | X | X |
| 4 | CREDIT REPORTS | | X | | X | X | |
| 5 | Resumes | | X | | X | X | X |
| 6 | Financial statements | | X | | X | | |
| 7 | Licenses | | X | | X | X | |
| 8 | State DBA approval** | X | X | X | X | X | X |
| 9 | Facilities evidence | | X | | X | | |
| 10 | Fidelity bond | X | X | | | X | X |
| 11 | E&O insurance | X | X | | | X | X |
| 12 | Quality Control Plan | X | X | X | X | X*** | X |
| 13 | Funding program | | X | X | X | X | |
| 14 | Sanctions letter | | X | | X | X | |

*Not required for non-profits       **Where a DBA is used       ***Only if Servicing

A.    **Explanation of Required Documentation.**

1.    ***Sponsor Cover Letter.***  An application from a mortgagee applying for approval as a loan correspondent must be accompanied by a letter from an approved direct endorsement mortgagee that will be its Sponsor, signed by an executive officer of the Sponsor, requesting approval of the loan correspondent.  The letter must contain the Sponsor's mortgagee Identification Number.  The letter may also state the mortgagee will fund all loans where it is the sponsor.

2.    ***Application Fee.***  Evidence that the application fee has been transmitted: copies of the check and the HUD form, *Application Fee for Title II Mortgagee Approval*, as transmitted to the lock box (see paragraph 2-7C).  If a copy of the check is not included, a copy of the front and back of the canceled check will be requested.

3.    ***Application Form.***  HUD form 11701, *Application for Approval-- FHA Lender and/or Ginnie Mae Mortgage Backed Securities Issuer*.

4.    ***Credit Reports.***  An applicant, other than a supervised institution or a governmental institution, must order and pay for credit reports and submit the complete originals, with the application, directly to the Lender Approval and Recertification Division, HUD Headquarters.

   a.    Required are:

      (1)    Personal credit reports for the principals of the applicant, including the chairman of the board, president, vice presidents and any person or entity owning 25 percent or more of the mortgagee's voting stock or a controlling interest.  Personal credit reports must be either Residential Mortgage Credit Reports (RMCR) or three-merged reports. Other types, e.g. in-file credit reports, are not acceptable.

      (2)    A commercial credit report, or a Dun & Bradstreet report, if a principal owner is a business entity.

      (3)    A commercial credit report or a Dun & Bradstreet report on the applicant.  This is required even if the applicant is a start-up company.

4060.1 REV-2

b.    A written explanation must be submitted by the applicant for all negative items disclosed by any credit report. Credit Reports are evaluated pursuant to the FHA underwriting guidelines as set forth at HUD Handbook 4155.1, including any updates and/or revisions.

5.    ***Resumes.***  The applicant must submit current resumes on senior officers with qualifying mortgage origination or servicing experience covering at least the previous seven years of employment. A Government Institution must provide resumes on the senior staff person or persons designated to meet staffing and experience requirements.  For details regarding experience requirements, refer to paragraph 2-9(B).

Instead of resumes or other documentation of experience, institutions applying to become supervised mortgagees or supervised loan correspondents may submit a list of officers involved with mortgage lending, together with each officer's Social Security Number.

6.    ***Financial Statements.***  The applicant must submit its most current CPA prepared audited financial statements for the period ended not more than 12 months prior to submission of the application. The financial statements must be supplemented by a computation of adjusted net worth pursuant to chapter 7 of the most recent version of HUD IG Handbook 2000.04, *Consolidated Audit Guide for Audits of HUD Programs* that also must be audited by the CPA.

For an ongoing business concern, a full set of financial statements is required:

- Balance sheet;
- Income statement;
- Cash flow statement;
- Retained earnings statement;
- Footnotes; and
- Auditor's report containing an unqualified (clean) opinion.

All financial statements must be prepared in accordance with Generally Accepted Accounting Principles (GAAP). The audit must be performed in accordance with Generally Accepted Auditing Standards (GAAS) by a Certified Public Accountant (or a Public Accountant licensed on or before Dec. 31, 1970) licensed to perform audits in the state in which the applicant's home office is

located and who has not been suspended, debarred, or otherwise excluded from performing audits of mortgagees. The audit report must be complete, original and contain the auditor's report on the audit firm's letterhead stationery.

a.    ***New Company.*** If the applicant is a new company and has had no revenues or cash flow, the income statement and cash flow statement are not required.

b.    ***Audited financial statements over six months old.*** If the audited financial statements are for a period ended more than six months but less than 12 months prior to submission of the application, additional financial statements must be submitted. This shall be in the form of a full set of financial statements (unaudited) and a computation of adjusted net worth. The unaudited financial statements must be certified by management and be for the most recent interim accounting period, but not older than three months.

c.    ***Corrected Deficiency in Adjusted Net Worth.*** If the computation of adjusted net worth shows inadequate adjusted net worth at the date of the financial statements and the applicant has corrected this deficiency prior to issuance of the auditor's report, then the auditor will report this as a subsequent event. A new computation of adjusted net worth must be provided and the audit reports shall be dual dated, when subsequent events relate to adjusted net worth. If the auditor's report has already been issued, the auditor must verify that the applicant subsequently met the net worth requirement and issue an opinion on it, including a new computation of adjusted net worth.

7.    ***Licenses.*** An applicant applying for approval as a non-supervised mortgagee or a non-supervised loan correspondent must obtain all required licenses prior to, or in conjunction with, approval as a FHA mortgagee. Copies must be submitted with the application. If the State does not require that mortgage lenders be licensed, the applicant must certify to that in writing. If a State conditions the issuance of a State license upon the lender having a FHA approval, the Department can evidence its approval by signing the applicant's HUD Form 11701 which can then be provided to the State. However, the FHA ID number will not be issued until FHA receives a copy of the State license.

8.    ***State Approval of "dba".***  If a mortgagee or any of its branch offices is using a "Doing Business As" (dba) name, it must submit with the application a copy of the DBA statement or assumed name certificate filed with the State.  See also paragraph 2-14, regarding prohibited branch arrangements.

9.    ***Evidence of Acceptable Facilities.***  An applicant applying for approval as a non-supervised mortgagee or a non-supervised loan correspondent must provide sufficient evidence that its facilities meet FHA requirements.  See paragraph 2-13.  The applicant must submit photographs of its facilities, including its entrance, with evidence of permanent identification to the public.  The applicant must submit a floor plan, which may be hand-drawn.  The applicant must also submit a certification, signed by a senior officer, that the facilities comply with FHA requirements.  These submissions are in lieu of an on-site visit by FHA to the mortgagee's office facilities; however, FHA may still conduct an on-site visit.  Evidence of acceptable facilities is not required for branch offices.

10.   ***Fidelity Bond.***  All mortgagees, except loan correspondents, are required to maintain base coverage of $300,000 in fidelity bonds covering the mortgagee's employees and agents.  The Department does not require that it be the beneficiary of such coverage.  A fidelity bond that is generally acceptable to the secondary market agencies, such as Ginnie Mae, Fannie Mae, and Freddie Mac, will meet FHA's requirement.  An applicant must provide evidence of such coverage.  A governmental institution may be exempt from this requirement if it maintains alternative insurance coverage approved by the Secretary, that assures the faithful performance of the responsibilities of the mortgagee.

11.   ***Errors and Omissions Insurance.***  All mortgagees, except loan correspondents, are required to maintain base coverage of $300,000 in errors and omissions insurance coverage.  The Department does not require that it be the beneficiary of such coverage.  Errors and omissions insurance that is generally acceptable to the secondary market agencies, such as Ginnie Mae, Fannie Mae or Freddie Mac, will meet FHA's requirement.  An applicant must provide evidence of such coverage.  A governmental institution may be exempt from this requirement if it maintains alternative insurance coverage approved by the Secretary, that assures the faithful performance of the responsibilities of the mortgagee.

12.    ***Quality Control Plan.***  The applicant must submit a copy of its Quality Control Plan.  See chapter 7 for details.

13.    ***Funding Program.***  The applicant must provide a letter or letters establishing or confirming acceptable funding arrangements totaling not less than $1 million, unless applying as a supervised mortgagee or Government Institution.

   a.    ***A Non-supervised Mortgagee***, except a mortgagee approved for participation only in the multifamily mortgage insurance programs, must maintain a warehouse line of credit or other mortgage funding program acceptable to the Department.  Acceptable programs include table funding and concurrent funding arrangements.  The program must be adequate to fund the mortgagee's average 60-day origination production pipeline, but not less than a $1 million warehouse line of credit or funding program.  The line of credit must be issued directly to the mortgagee.  In lieu of a warehouse line of credit, a mortgagee may have a letter from a financial institution stating that it will fund all mortgages originated by the mortgagee.

   b.    ***A Non-supervised Loan Correspondent*** must comply with the same funding requirements as a non-supervised mortgagee or have a written agreement or letter from each of its Sponsors to fund all mortgages that the sponsor underwrites.  The application package must include, for each Sponsor, either:

   •    A separate agreement between the Sponsor and the non-supervised loan correspondent, which includes the funding provisions, or warehouse line of credit, or
   •    A Sponsor letter containing the written agreement that the Sponsor will fund all mortgages it underwrites that were originated by the non-supervised loan correspondent.

   c.    ***A Supervised Loan Correspondent*** must have a letter or written agreement from each of its Sponsors that the Sponsor will purchase all FHA mortgages that the loan correspondent originates and that the Sponsor underwrites.

        d.      ***An Investing Mortgagee*** must have, or have arranged for, funds sufficient to support a projected investment in real estate mortgages of at least $1 million.

14.    ***Sanctions Letter.***  The applicant must certify that neither it nor any of its officers, directors, or principals, has been denied an operating license or otherwise sanctioned by any licensing or regulatory body**.**  A state-licensed mortgagee must submit with its application for approval, a letter certifying to the Department that the mortgagee sought and has not been refused a license, and has not been sanctioned by any State or States in which it will originate insured mortgages**.**  If the mortgagee or any of its officers, directors, or principals has been sanctioned or subject to an action by the State against its license, the applicant must submit a copy of the documents concerning the action together with a written explanation.

## 3-3    Documentation for Specific Business Forms.

A.    ***Partnership--Additional Documentation Required.***  A partnership seeking approval as a mortgagee must include the following additional documentation with its application package:

1.    ***Names and Employer Identification Numbers of all general partners.***

2.    ***Identity of the designated managing general partner.***  The officers and directors of the managing general partner must be listed, together with their Social Security Numbers, on the application, HUD form 11701.

3.    ***Principal business activity of managing general partner.***  Evidence that the principal business activity of the managing general partner is the management of one or more partnerships, all of which are mortgage lenders, property improvement or manufactured home lenders; and that it has exclusive authority to deal with FHA on behalf of each partnership.

4.    ***Partnership term of existence.***  Evidence that the partnership will exist for a minimum term of ten years and that in the event that a partner withdraws, the partnership is specifically authorized to continue its existence.

If the mortgagee certifies that it meets the requirements for partnerships as described in paragraph 2-2(B), a copy of the Partnership Agreement does not have to be submitted, unless requested by FHA.

B.    ***Limited Liability Company--Additional Documentation Required.***

1.    Names and Taxpayer Identifying Numbers of all members.

2.    Names of managing member and FHA contact.

3.    Copy of Operating Agreement.

4.    Copy of Articles of Organization.

C.    ***Not-for-profit Entity.***  A non-depository not-for-profit entity must provide evidence of its not-for-profit status.  It may do this by providing a copy of its IRS Exemption Letter.

# Part B.  Processing of Application

3-4    **Introduction**.  This Part explains the Department's procedures and processing requirements for an application for FHA mortgagee approval.  The Lender Approval and Recertification Division in the Office of Lender Activities and Program Compliance, HUD Headquarters, is responsible for analyzing mortgagee application packages received, approving or disapproving applicants, and maintaining a record of approved mortgagees.

3-5    **Requests for Additional Information**.  If additional documentation or information is needed to complete the processing of the application and to determine approval or disapproval, FHA may request it directly from the applicant.  If the required documentation or information is not submitted within a reasonable time, as prescribed by FHA, the application review will be terminated.  Application fees are not refundable.  If the application is resubmitted, the applicant must pay a new fee.

3-6    **Mortgagee Approval Processing.**  Applications for mortgagee approval are reviewed by the Lender Approval and Recertification Division.  This includes, but is not limited to, reviewing:

A.    ***The mortgagee's application package***.  The HUD Form 11701 and the required documentation, are reviewed for completeness, consistency, and accuracy.

B.    ***Application fees.***  Fees are examined for accuracy and correctness of the amounts remitted.

C.    ***Credit Reports.***  Credit reports are reviewed in accordance with FHA underwriting guidelines to ascertain financial responsibility.

D.    ***Financial Statements***.  When a mortgagee is required to submit financial statements, the financial statements are reviewed to ascertain the financial soundness of the applicant and the potential risk to FHA.

   1.    ***Form***

   - The financial statements were audited by a Certified Public Accountant (or a Public Accountant licensed on or before Dec. 31, 1970), licensed to practice in the state in which the applicant has its home office, and who has not been suspended, debarred, or otherwise excluded from performing audits of mortgagees;
   - The financial statements are current or supplemented by un-audited financial statements certified by management as described in paragraph 3-2(A)(6)(b);
   - The audit was performed in accordance with Generally Accepted Auditing Standards (GAAS);
   - The financial statements are in accordance with Generally Accepted Accounting Principles (GAAP);
   - The Certified Public Accountant has issued an unqualified opinion on the financial statements;
   - The financial statements are complete as appropriate to the applicant.  A Computation of Adjusted Net Worth must always be included; and
   - The audit report is complete, original, and contain the auditor's report on the audit firm's letterhead stationery.

   2.    ***Content***

   - Revenues must be more than one-half from mortgage lending (for an existing business applying as a non-supervised mortgagee or loan correspondent);
   - Adjusted net worth must meet FHA requirements;
   - Liquid assets must meet FHA requirements; and
   - The financial statements are accurate and consistent.

E.    ***Evidence of Acceptable Home Office Facilities.***  Evidence submitted regarding facilities is reviewed to ascertain that FHA's requirements have been met, including that appropriate permanent signage is in place.

F.    ***Principals.***  The reviewer checks the principals of the mortgagee in the Department's automated credit alert system (CAIVRS) which lists

defaulted Federal debts; the Department's LDP lists; the Government-wide list of debarred and suspended parties; and other databases containing information on criminal, civil, Federal debts, enforcement, or disciplinary actions taken by Federal or State regulators in the mortgage and financial services industry, and reports of serious misconduct.  If any derogatory information is disclosed, the application may be disapproved.

3-7    **Approval Notifications.**    Upon approval, a mortgagee will be assigned an identification number, notified, and provided with various materials.  For details, see Part D of this chapter.

3-8    **Disapproval.**    If a mortgagee fails to meet the Department's approval requirements, its application will be disapproved**.**  The mortgagee will be sent a written notice that sets forth the reasons for the disapproval**.**  The basis for disapproving an application may include, but is not limited to the following examples:

- Failure to meet the standards for approval as described in this Handbook or the Department's regulations at 24 CFR Part 202;

- Lack of financial responsibility by the applicant, directors, major stockholders, or principals, particularly in areas related to real estate lending and especially if such irresponsibility has resulted in monetary loss to the Federal government (e.g. foreclosure of a FHA insured or VA guaranteed mortgage, tax liens (State and county included), defaulted government loans, or any other Federal debt.)  This includes bankruptcy discharged within the prior year and adverse credit report findings;

- Any reason that FHA determines could adversely affect the mortgagee's ability to participate in FHA's mortgage insurance programs**.**  For example, a director's or principal's previous participation or termination of employment by a mortgage lender for cause relating to job performance if the applicant cannot provide a satisfactory explanation;

- Misrepresentation of a corporation's status regarding its FHA approval or misrepresentation of the meaning of such status;

- Using in its name certain words that are proscribed by law, which could mislead a person to believe that the mortgagee is a Federal agency or has a relationship with or is endorsed by the Federal government**.**  For details, see paragraph 2-4;

- Suspension, debarment, or other restrictions under 24 CFR Part 24 or 25 or under similar procedures of any other Federal agency;

- Indictment for, or conviction of, a felony; and

- Unresolved material findings of HUD or other Government audits or investigations.

## Part C.  Appeals of Disapproval

3-9     **Initial Appeal**.  Upon written notice that the application has been disapproved (for reasons other than an incomplete submission), the applicant has 30 days to submit a written appeal of the disapproval to the Director, Office of Lender Activities and Program Compliance.

A.     ***Documentation Required.***  The mortgagee's appeal must be in writing and include any documentation requested in the disapproval letter.

B.     ***Review of Appeal***.  The Director, Office of Lender Activities and Program Compliance, after review of the appeal, either rescinds or affirms the disapproval.

- ***Application Approved.***  If the Director reverses the disapproval, the applicant will be assigned a mortgagee identification number and notified; or

- ***Disapproval Affirmed.***  If the Director affirms the disapproval, the applicant will be notified in writing.

3-10    **Final Appeal.**  Upon receipt of a letter from the Director affirming the disapproval, the applicant has 30 days to submit an appeal of that decision to the Deputy Assistant Secretary (DAS) for Single Family Housing.

A.     ***Documentation Required.***   The appeal must be in writing and accompanied by all previous correspondence concerning the case.

B.     ***Review of Appeal.***  The Deputy Assistant Secretary (DAS) for Single Family Housing, after review of the appeal, either rescinds of affirms the disapproval.

- ***Application Approved.***  If the DAS reverses the disapproval, the applicant will be assigned a mortgagee identification number and notified; or.

- ***Disapproval Affirmed.***  If the DAS affirms the disapproval, the applicant will be notified in writing.  The DAS's decision is the final agency action.  The applicant may re-apply in one year from the date of the disapproval letter.

# Part D.  Newly Approved Mortgagees

3-11    **Introduction.**  This Part describes what happens and what is required once a mortgagee receives its initial approval**.**

3-12    **Immediately Upon Approval.**

   A.    ***Mortgagee Identification Number.***  FHA assigns a 10-digit mortgagee identification number**.**  This number must be used in all correspondence regarding FHA mortgages and in dealing with FHA.

   B.    ***Notification of Approval.***  The Lender Approval and Recertification Division will notify the mortgagee of its approval and provide the mortgagee with its FHA mortgagee ID number.  It will then send the formal approval package consisting of an approval letter, copy of the signed approved application, a FHA lender seal, Equal Housing Opportunity decals, Equal Housing Opportunity posters and additional information on participating in the FHA loan programs.

   C.    ***FHA Connection Registration.***  All mortgagees are required to sign up for a FHA Connection account which can be done as soon as they are notified of their approval at: https://entp.hud.gov/clas.

   D.    ***FHA Lender List.***  All mortgagees and their registered branches will be added to HUD's web site at: http://www.hud.gov/ll/code/llslcrit.html.

   E.    ***Notification to Sponsor.***  If the mortgagee is a loan correspondent, a copy of the signed approved application is sent to the initial Sponsor and to all other sponsors processed with the application.

   F.    ***Starter Kit.***  FHA maintains a Starter Kit page on its website at www.hud.gov/fha/sfh/lender/mtgeekit.html which provides links to all relevant HUD Handbooks and Mortgagee Letters.

   G.    ***Forms.***  Specific forms are required for FHA mortgage insurance transactions**.**  Forms are not included in the Starter Kit; however, forms can be downloaded from the forms section of HUDCLIPS.

3-13    **FHA Mortgage Insurance Premiums and Claims.**  All financial transactions by mortgagees with regard to FHA mortgage insurance (premiums and claims) are done electronically via of the FHA Connection.

3-14    **Direct Endorsement (DE).**  After a mortgagee has been approved as a supervised mortgagee or as a non-supervised mortgagee, it may apply to the appropriate

**4060.1 REV-2**

Homeownership Center for DE authority.  See HUD Handbook 4000.4, *Single Family Direct Endorsement Program* for details.

# CHAPTER 4
# ANNUAL RENEWAL OF FHA APPROVAL

4-1    **Requirement for Annual Renewal.**  A mortgagee must renew its approval each year.  In addition to continuing to meet all the requirements it met for initial approval, it must also execute the *Title II Yearly Verification Report*.  A mortgagee, except a governmental entity, must pay an annual recertification fee.  A non-supervised mortgagee or non-supervised loan correspondent must submit an acceptable audited financial statements and supplementary reports.

4-2    **Yearly Verification Report.**  Annually, each mortgagee must complete and return to the Department a *Title II Yearly Verification Report* (V-Form) which can be downloaded from their Institution Profile page in the Lender Approval part of the FHA Connection.  See instructions at:  https://entp.hud.gov/pdf/mp_lndapp.pdf.  The report must be completed by the mortgagee, signed by a senior officer (vice president or above) and returned to FHA within 30 days after the close of the mortgagee's fiscal year.  A copy should be given to a non-supervised mortgagee's auditor for review and as proof of FHA approval.

   A.    ***Update By Mortgagee.***  The mortgagee must make the necessary changes to its institution profile in the FHA Connection to ensure the V-Form information is correct before downloading, signing and submitting the form.

   B.    ***Branch Office Information.***  The report displays the total number of registered branch offices of the mortgagee.  If the number is incorrect or, within the past year, branches have moved, changed or added a "dba" or changed managers, the mortgagee should record the corrections through the Lender Approval functions on FHA Connection before downloading, signing and submitting the form.

4-3    **Annual Renewal Fees.**  All mortgagees except governmental institutions must pay an annual renewal fee within 30 days after the close of the mortgagee's fiscal year.

   A.    ***Amount.***  A mortgagee must remit a $500 annual renewal fee for its approved main office and $200 for any registered branch office that was registered at least six months prior to the end of the mortgagee's fiscal year.  No renewal fee is due for branches registered in the last six months of a mortgagee's fiscal year.  In addition, no fee is required for a non-registered office or any office that the mortgagee deletes through the Lender Approval functions on FHA Connection before they pay their renewal fee.

B.     **Payment.**  This payment must be made by accessing pay.gov via the FHA Connection by using the "Pay Now" button that has been added to the Institution Profile page of each mortgagee.  Delete any branches that are not being renewed before clicking on the "Pay Now" button, in order to be charged the correct amount.  See instructions at: https://entp.hud.gov/pdf/mp_lndapp.pdf.

4-4     **LASS Submission of Annual Audited Financial Statements.**  Within 90 days after the close of its fiscal year, non-supervised mortgagees and non-supervised loan correspondents must submit their audited financial and compliance data electronically through LASS.  The LASS homepage at http://www.hud.gov/offices/hsg/sfh/lass/prodlass.cfm contains links on how to register to use LASS, FAQs, latest updates and additional links to many items including the LASS User Manual.  LASS consists of: (1) specifically designed financial data templates (FDT) which collects financial data; (2) a data collection form (DCF) which will collect information about the mortgagee and the auditor reporting on the financial statements, internal controls, compliance data, and the attachment of the mortgagee's signed audit reports, including the compliance and internal control reports to their financial statements and (3) a Note and Finding template which allows for the attachment of the mortgagee's audited footnotes, auditor's finding, and mortgagee's corrective action plans.

The hard copy basic financial statements and auditor reports must be issued prior to the mortgagee initiating their electronic submission of their financial and compliance data and are the basis for the mortgagee's electronic submission.  The basic financial statements must be prepared and audited in accordance with HUD IG most recent Handbook 2000.04, *Consolidated Audit Guide for Audits of HUD Programs*; and *GAO's* most recent *Government Auditing Standards* (the "Yellow Book").  The audit must be done by a Certified Public Accountant (or a Public Accountant licensed on or before Dec. 31, 1970) qualified to perform the audit and licensed to practice in the State in which the mortgagee has its home office, and who has not been suspended, debarred, or otherwise excluded from performing audits of mortgagees.  When requested by the Department, a mortgagee must submit any other materials that may be needed to make a determination regarding continuation of approval.

If the auditor becomes aware of illegal acts or fraud that have occurred or are likely to have occurred, the auditor must report instances of fraud and illegal acts.  The auditor must report directly to the HUD District Inspector General for Audit.  For details, see Chapter 1 of the most recent version of HUD IG Handbook 2000.04, *Consolidated Audit Guide for Audits of HUD Programs.*  The Office of the Inspector will notify the appropriate offices within the Department, including the Office of Lender Activities and Program Compliance.

**4060.1 REV-2**

A.    ***Required Reports by Type of Mortgagee For LASS Submission.***

1.    ***Non-supervised Mortgagee.***  A non-supervised mortgagee, unless exempt per paragraph 4-4(B)(5), must maintain the following documents to support their electronic submission:

a.    ***Audited financial statements***

- Balance sheet;
- Income statement;
- Cash flow statement;
- Statement of Equity; and
- Footnotes.

b.    ***Computation of adjusted net worth including a Statement of Auditing Standards (SAS) 29 opinion.***  The SAS 29 opinion can be issued in a separate report or included within the Independent Auditor's Report on the Financial Statements.

c.    ***Independent Auditor's Report on the Financial Statements.***

d.    ***Independent Auditor's Report on Internal Control.***

e.    ***Independent Auditor's Report on Compliance with Specific Requirements Applicable to Major/Non-Major HUD Programs.***  Major program mortgagees are subject to an audit of their compliance with HUD major programs. Non-major program mortgagees are subject to a review of their compliance with HUD non-major programs.  Major program means an individual assistance program or a group of programs in a category of Federal financial assistance, which exceeds $300,000 during the applicable year. A project, which has an outstanding HUD-insured or guaranteed loan balance exceeding $300,000 as of the reporting date, shall be considered a major program. A mortgagee or loan correspondent, which originates and/or services an aggregate of FHA-insured loans exceeding $300,000 during the period under audit, is considered a major program.

f.    ***Schedule of Audit Finding.***  When reporting deficiencies in internal control or instances noncompliance the auditor should generate a schedule of finding.  The auditor should

place their findings in proper perspective by providing a description of the work performed that resulted in the finding. To the extent possible the auditor should develop the elements of criteria, condition, cause, effect, and recommendations to assist management in understanding the need for taking corrective action.

g.  ***Corrective Action Plan.***  If the auditor has noted any findings then the mortgagee must submit a corrective action plan, which addresses each finding.

2.  ***Non-supervised Loan Correspondent.***  A non-supervised loan correspondent, unless exempt per paragraph 4-4(B)(5), must maintain the following documents to support their electronic submission:

a.  ***Audited financial statements.***

- Balance sheet;
- Income statement;
- Cash flow statement;
- Statement of Equity; and
- Footnotes.

b.  ***Computation of adjusted net worth including a Statement of Auditing Standards (SAS) 29 opinion.***  The SAS 29 opinion can be issued in a separate report or included within the Independent Auditor's Report on the Financial Statements.

c.  ***Independent Auditor's Report on the Financial Statements.***

d.  ***Independent Auditor's Report on Internal Control.***

e.  ***Independent Auditor's Report on Compliance with Specific Requirements Applicable to Major/Non-major HUD Programs.***  Major program mortgagees are subject to an audit of their compliance with HUD major programs. Non-major program mortgagees are subject to a review of their compliance with HUD non-major programs. Major program means an individual assistance program or a group of programs in a category of Federal financial assistance, which exceeds $300,000 during the applicable year. A project, which has an outstanding HUD-insured or

guaranteed loan balance exceeding $300,000 as of the reporting date, shall be considered a major program. A mortgagee or loan correspondent, which originates and/or services an aggregate of FHA-insured loans exceeding $300,000 during the period under audit, is considered a major program.

For Title II loan correspondents, the requirement for the auditor to review and report on the mortgagee's compliance has been modified under the condition that the Sponsor agrees to assume the responsibility of assuring compliance for each loan correspondent under their sponsorship. In those instances where the Sponsor agrees to assume the responsibility of assuring compliance of loan correspondents under their sponsorship the Sponsor must communicate annually in writing to the individual loan correspondents their intent to assume responsibility for their compliance. The Sponsor must indicate the areas of compliance that they will be assuming. The Sponsor must issue annually a written report summarizing the results of their compliance testing. In addition, the Sponsor must accumulate and retain the supporting information that served as the basis for the written annual compliance report issued to the loan correspondent. Nevertheless, in accordance with Government Auditing Standards (the "Yellow Book") it is incumbent upon the auditor to test and report on those areas of compliance not assumed by the Sponsor. In addition, the auditor must determine where applicable that the Sponsors are testing and reporting the results of their compliance reviews. Accordingly, when meeting the requirements of *Government Auditing Standards*, the auditor should issue a *Report on Compliance and on Internal Control Over Financial Reporting Based on an Audit of Financial Statements Performed in Accordance with GOVERNMENT AUDITING STANDARDS*. The report may vary depending on whether there are reportable instances of noncompliance or material weaknesses. However, if the non-supervised loan correspondent is also approved under the Title I program, then separate reports on internal control and compliance will have to be issued for that program.

f.    ***Schedule of Audit Finding.*** When reporting deficiencies in internal control or instances noncompliance the auditor should generate a schedule of finding. The auditor should

place their findings in proper perspective by providing a description of the work performed that resulted in the finding. To the extent possible the auditor should develop the elements of criteria, condition, cause, effect, and recommendations to assist management in understanding the need for taking corrective action.

g.   **Corrective Action Plan.**   If the auditor has noted any findings then the mortgagee must submit a corrective action plan, which addresses each finding.

B.   **Types of Mortgagee for Which LASS Submission are Not Required.**

1.   **Supervised Mortgagee.**

2.   **Supervised Loan Correspondent.**

3.   **Investing Mortgagee.**

4.   **Governmental Institution.**

5.   **Newly Approved Mortgagee.**   If the mortgagee's initial approval date is less than six months prior to the end of its fiscal year and the audited financial statements submitted for approval are for the period ended not more than six months prior to the end of its fiscal year, then the mortgagee is not required to submit new audited financial statements for recertification, nor is an annual recertification fee due. However, the audited financial statements submitted with its next renewal must cover the period from the date of its initial audited financial statements to the end of its fiscal year. The period covered by the renewal audit cannot exceed 18 months.

C.   **Extensions.**   Extensions are granted only in cases of catastrophic events beyond the control of lender or auditor. Extension requests must be submitted through LASS. The request must be received no earlier than 45 days prior to the submission due date and no later than 15 days prior to the submission due date.

4-5   **LASS Review Procedures.**   Each annual LASS submission by a non-supervised mortgagee or non-supervised loan correspondent is reviewed to determine compliance with the Department's net worth, liquidity, audit reporting and other financial requirements for continued approval. The review consists of, but is not limited to, the following procedures.

A.    **Auditor's Report.**  HUD reviews the information provided in the LASS submission to verify:

1.    The audit was done by a qualified auditor, the audit firm contact is identified, and contact information and identifying information on the audit firm is provided.

2.    The attestation was done by a qualified auditor, the attester is identified, and contact information and identifying information on the audit firm is provided.

3.    The period covered by the financial statements corresponds to the date recorded in FHA records as stated in the mortgagee history profile screen.

4.    The audit was done in accordance with:

- Generally Accepted Auditing Standards (GAAS);
- Generally Accepted Government Auditing Standards *(GAGAS)* as contained in the most recent General Accountability Office (GAO) Audit Guide -- Government Auditing Standards (commonly known as the "Yellow Book"); and
- The most recent version of HUD IG Handbook 2000.04 *Consolidated  Audit Guide for Audits of HUD Programs*

5.    The financial statements comply with Generally Accepted Accounting Principles (GAAP).

6.    The auditor's opinion on the financial statements, including all notes.  In addition, the auditor must express a SAS 29 opinion on the mortgagee's computation of its adjusted net worth.

B.    **Annual Submission.**  HUD reviews the mortgagee's LASS submission for completeness and consistency and to verify that it includes:

1.    **Audited Financial Statements.**

- **Balance Sheet.**  All accounts are properly classified and reported within the FDT.  All unacceptable assets must be clearly identifiable.  Escrows must be excluded from assets of the mortgagee;
- **Income Statement.**  Revenues from mortgage and non-mortgage related activities must be clearly identifiable and properly classified;

- *Statement of Equity;*
- *Statement of Cash Flows;*
- *Notes to the financial statements.* Footnotes must be attached and must comply with GAAP;
- *Computation of Adjusted Net Worth for FHA Requirements.* Mortgagee has maintained their Net Worth required for their program type; and
- *Liquidity*. Mortgagee has maintained their required Liquidity for their program type.

2. *Independent Auditor's Report on Internal Control.* Through review of the LASS submission, HUD verifies that the audit contains the required and properly prepared report on internal control structure.

3. *Independent Auditor's Report on Compliance with Specific Requirements Applicable to Major/Non-major HUD Programs.* Through review of the LASS submission, HUD verifies that the audit contains required and properly prepared compliance report: the CPA's *Report on the Internal Control Structure* and *Report on Compliance with Specific Requirements Applicable to Major HUD Programs* (if aggregate balances originated or serviced were $300,000 or more) or *Report on Compliance with Specific Requirements Applicable to Non-major HUD Program Transactions*. HUD checks that the reports are in accordance with:

- HUD IG most recent Handbook 2000.04, *Consolidated Audit Guide for Audits of HUD Programs;*
- *GAO's* most recent Government Auditing Standards (the "Yellow Book"), and
- Statement of Auditing Standards (SAS) Number 74, *Compliance Auditing Considerations in Audits of Governmental Entities and Recipients of Governmental Financial Assistance*, Feb. 1995.

If a loan correspondent submits the alternative Report on Compliance and on Internal Control Over Financial Reporting Based on an Audit of Financial Statements Performed in Accordance with Government Auditing Standards, the report must adhere to Government Auditing Standards reporting requirements.

4. *Audit Findings & Corrective Action Plans.* HUD verifies that there is an acceptable audit finding and corrective action plan for every reportable condition and/or material weakness and material noncompliance indicator.

5.     ***Adjusted Net Worth.***   HUD reviews the mortgagee's financial statements and notes to the LASS submission to determine if there are unacceptable assets**.**  Unacceptable assets are listed in chapter 7 of the most recent version of HUD IG Handbook 2000.04, *Consolidated Audit Guide for Audits of HUD Programs*. Unacceptable assets must be deducted from owner's equity as shown in the Balance Sheet**.**  The computation must be shown in the *Computation of Adjusted Net Worth*.

a.     ***Correction of Deficiency Before Audit Report is Issued.***  If the mortgagee's adjusted net worth falls below FHA requirements, HUD reviews the notes to the financial statements to determine if there has been a subsequent event that brings the mortgagee's net worth to ***FHA*** requirements**.**

b.     ***Correction of Deficiency After Audit Report is Issued.*** When the mortgagee has corrected a deficiency in its Adjusted Net Worth after the date of the auditor's report, then the mortgagee must submit documentation to support that sufficient amount of capital has been contributed to the company to correct the deficiency.  This documentation must include the audit finding, written by the financial statement auditor, on the lack of compliance with the net worth requirement and the corrective action plan, written by the mortgagee, detailing how the deficiency was corrected and how the compliance will be monitored.  The mortgagee's corrective action plan must describe the form of the capital contribution, the exact date of the contribution, and the amount or value of the contribution. Also, the auditor must provide a signed statement that they verified the subsequent capital contribution to the mortgagee's books and records.

c.     ***Failure to Meet Net Worth Requirement.***  Analysis of the LASS submission and notes that reveals that the mortgagee's adjusted net worth does not meet FHA requirements is grounds for administrative action by HUD's Mortgagee Review Board.

d.     ***Failure to Maintain Required Net Worth.***  If the review of a LASS submission discloses that the mortgagee does not consistently maintain the required net worth throughout the year, the Department may request that the mortgagee

submit interim audited or compiled financial statements and consider further actions. The failure to consistently maintain the required net worth is grounds for an administrative action by the Mortgagee Review Board.

6.   **Liquid Assets.**  HUD reviews the Balance Sheet, Statement of Cash Flows, and notes to the mortgagee's LASS submission to verify that the mortgagee has, and has consistently maintained, adequate liquid assets.

   a.   **Correction of Deficiency Before Audit Report is Issued.**  If the mortgagee's total liquid assets fall below FHA requirements, HUD reviews the notes to the financial statements to determine if there has been a subsequent event that brings the mortgagee's liquid assets to FHA requirements.

   b.   **Correction of Deficiency After Audit Report is Issued.**  When the mortgagee has corrected a deficiency in its liquid assets after the date of the auditor's report, then the mortgagee must submit documentation to support that sufficient amount of cash and/or acceptable cash equivalents has been infused into the company to correct the deficiency.  This documentation must include the audit finding, written by the financial statement auditor, on the lack of compliance with the requirement and the corrective action plan, written by the mortgagee, detailing how the deficiency was corrected and how the compliance will be monitored.  Also, the auditor must provide a signed statement that they verified the subsequent liquid asset infusion to the mortgagee's books and records.  Depending on the situation, HUD may require a higher level of assurance or additional documentation.

   c.   **Failure to Meet Liquid Assets Requirement.**  Analysis of the LASS submission and notes that reveals that the mortgagee's total liquid assets do not meet FHA requirements is grounds for administrative action by the Mortgagee Review Board.

   d.   **Failure to Maintain Required Liquid Assets.**  If HUD's review of LASS submission discloses that the mortgagee does not consistently maintain the required liquid assets throughout the year, the Department may request that the mortgagee submit interim audited or compiled financial

statements and consider further actions. The failure to consistently maintain the minimum liquid assets is grounds for an administrative action by the Mortgagee Review Board.

7.  ***Revenues.*** The principal source of revenues of a non-supervised mortgagee or non-supervised loan correspondent must be from its mortgage lending operations, property improvement or manufactured home lending activities. The mortgagee may include in its revenues activity from loans secured by real property or unsecured Title I insured loans.

8.  ***Indications of Noncompliance.*** HUD reviews the financial statement submission, including the notes to the financial statements and the other documentation, for any indication of fraud, illegality, or practices not in compliance with FHA requirements. The review also provides a means to determine whether the mortgagee meets the FHA principal activity requirement.

    If violations of FHA requirements, fraud, or illegality are identified, the mortgagee is referred to the Quality Assurance Division, the Office of Inspector General, and/or the Mortgagee Review Board for further action or, where appropriate, a letter is sent to the mortgagee requesting an explanation.

9.  ***Reports on Compliance and Internal Control.*** Where the auditor has reported noncompliance or material weaknesses in the compliance report or internal control report, the mortgagee's management must provide a *Corrective Action Plan*, which details the actions to be taken to correct the noncompliance or weaknesses. Depending on the nature of the findings, the mortgagee may be referred to the Quality Assurance Division, the Office of Inspector General, or the Mortgagee Review Board for further appropriate action.

4-6    **Acceptance of LASS Submission.** After HUD has reviewed all the information contained in the LASS submission and has determined it is acceptable, the mortgagee is recertified from a financial standpoint. Mortgagees can check the status of their LASS submission within the LASS system, which will show its status as "Audit Accepted".

4-7    **Deficient LASS Submission.** In some instances, FHA will determine the submission is deficient. When this occurs, the mortgagee must adhere to the review comments attached to the submission and follow the instructions in the

LASS user manual on how to cure a deficient submission. Failure to submit an acceptable cure within the prescribed timelines outlined in the LASS user manual may result in the loss of a mortgagee's FHA approval.

4-8    **Rejected LASS Submission.** In some instances HUD will reject a submission. A rejected submission allows the mortgagee to modify the submission to correct a deficiency that in HUD's opinion may have been attributed to an oversight by the mortgagee and the auditor. Once the submission has been changed the mortgagee must transmit the submission to the auditor for review. If the auditor agrees with the content of the template then they will transmit the submission back to the mortgagee for submission to HUD. If the auditor disagrees with the content of the template then they indicate their disagreement and the submission is returned to the mortgagee for modification. The process continues until the auditor has deemed the submission acceptable. The mortgagee transmits the revised submission to HUD through the LASS system. Failure to submit an acceptable submission within the prescribed timelines outlined in the LASS user manual may result in the loss of a mortgagee's FHA approval.

4-9    **Termination of FHA Mortgagee Approval**.

   A.    *Notice of Violation.* If a mortgagee, when required, fails to pay its annual renewal fee, return its annual verification report, or in the case of non-supervised mortgagees and non-supervised loan correspondents, submit an acceptable LASS submission, the Mortgagee Review Board may send the mortgagee a Notice of Violation that gives the mortgagee 30 days from receipt of the notice to comply.

   B.    *Notice of Withdrawal – Termination of Approval.* If the mortgagee fails to comply with the Notice of Violation, the Mortgagee Review Board may send the mortgagee a Notice of Withdrawal terminating its approval upon receipt of the notice.

   C.    **Appeal of Notice of Withdrawal**. All mortgagees have a 30-day period to appeal their termination and request reinstatement.

      1.    **Annual Fee.** Reinstatement requests due to nonpayment of the annual fee must be sent directly to the Lender Approval and Recertification Division. The terminated mortgagee will be sent a Settlement Agreement, which must be executed and returned with payment of the required annual fee and a $1,000 reinstatement fee. Once the settlement agreement and required monies are received and reviewed, the mortgagee will be reinstated.

      2.    **LASS Submission of Audited Financial Statements.** Reinstatement requests due to either an unacceptable or no LASS

submission must be made through the LASS system. The terminated mortgage must submit an audit submission that meets all of our reporting and threshold requirements. In addition, where applicable the mortgagee must submit a corrective action plan that adequately resolves all reported internal control weaknesses and noncompliance. Once the submission has been accepted the mortgagee must execute a Settlement Agreement online in LASS and then submit a $1,000 reinstatement fee directly to the Lender Approval and Recertification Division. Once the reinstatement fee is received the mortgagee will be reinstated and then must complete the LASS submission of their annual audit.

If the termination was based on both nonpayment of the annual fee and no acceptable LASS submission, two settlement agreements will be required, but only one reinstatement fee must be paid.

Terminated mortgagees who don't appeal or seek reinstatement within the 30 day period may not reapply for FHA approval until 12 months after the effective date of their termination.

4-10    **Requests for Information.**  Under the Department's regulations at 24 CFR 202.5(g), mortgagees must provide, upon request, not only a copy of their latest financial statements, but any additional information that the Department requests to be submitted to an examination of that portion of the mortgagee's records that relates to its FHA insured mortgage activities.

4060.1 REV-2

# CHAPTER 5
# BRANCH OFFICES, PRINCIPAL-AUTHORIZED AGENT RELATIONSHIPS, AND ADDITIONAL SPONSORS

## Part A. Branch Offices

5-1    **Introduction.**   All mortgagees or loan correspondents, except for investing mortgagees may register any of its offices that meet the staffing and office facilities for a branch office as detailed in paragraphs 2-11 and 2-12.   This registration must remain active for a branch to conduct FHA related mortgage operations.   The mortgagee is fully responsible to HUD for the actions of its branch offices.

5-2    **Originating at Branch Offices.**  If a mortgagee is approved to originate single-family FHA mortgages, it may take loan applications for properties located in the branch's single-family origination ending area.  A complete listing of lending area is Table of *Lending Areas for Single Family Origination.*   All other origination functions can be performed in any registered branch without regard to where the property is located.

5-3    **Underwriting at Branch Offices.**   If a mortgagee is approved as a DE mortgagee, it may perform underwriting functions in any of its registered branch locations for any loan application where the mortgagee is identified as the originator, sponsor, authorized agent or principal for the subject loan in the FHA Connection.

5-4    **Servicing at Branch Offices.** If a mortgagee is approved to service FHA mortgages, it may perform the servicing functions in any registered branch without regard to where the mortgaged properties are located.

5-5    **Centralized Centers**.  Processing and/or underwriting functions may be centralized in any office(s) of the mortgagee or performed at each office of the mortgagee.    All centralized locations must be registered branches of the mortgagee.

5-6    **Mortgagees Permitted to Maintain Branch Offices.**   Any mortgagee, except an investing mortgagee, may register branch offices.

5-7    **Registration of a New Branch.**  All mortgagees register their new branches on-line through the FHA Connection as explained in the FHA Connection User Guide located at: https://entp.hud.gov/pdf/mp_lndapp.pdf.  All loan correspondents must register their new branches by submitting HUD form 92001-B, *Branch Office Notification.*  The registration information, in both cases, includes the name and Social Security Number (SSN) of the manager assigned to oversee the operation

of the branch.  The branch manager's SSN is matched against the Credit Alert Interactive Voice Response System (CAIVRS).  If a match is found, an error message will display.  The Federal debt must be paid, under a repayment plan or cleared by the relevant agency before this individual may be approved as the branch manager

A.    **Registration Fee.**  A non-refundable $300 registration fee is required for each branch office and must be mailed to HUD's lock box address shown in paragraph 2-7, together with its transmittal form.  The mortgagee's 10 digit FHA identification number for its home office must be inserted in the memo section of the check and the transmittal form.

B.    **Mortgagees.**  Mortgagees, other than a loan correspondents, register new branches electronically through the FHA Connection - Lender Approval - Title II Branch Functions - Add a Branch.  All required fields are shown on the screen.  If the registration is successful, the branch is electronically assigned an identification number and the number is transmitted back to the mortgagee immediately.

Title I Branch Registration.  Title II mortgagees that are also approved a Title I lender, may also register Title I branches using FHA Connection.  If the Title I branch is physically located at the same address as the Title II branch, no additional fee is required.  If the Title I branch is not located at an address of an already approved Title II branch, then a non-refundable registration fee is required.  See HUD Handbook 4700.2, *Title I Lender Approval Handbook*, regarding the fee amount and lock box address.

C.    **Loan Correspondents.**   Loan correspondents must register their branch offices by submitting HUD form 92001-B, *Branch Office Notification* to the Lender Approval and Recertification Division.  In addition, non-supervised loan correspondents must have an adjusted net worth of not less than $63,000 with an additional net worth of $25,000 for each registered branch office, up to a combined maximum of $250,000 already on file with FHA or they will be required to submit such documentation of compliance.  If the financial statements submitted show insufficient adjusted net worth, an updated balance sheet, prepared and signed by the CPA, may be submitted to show evidence of compliance.

5-8    **Direct Lending Branch Office.**  A mortgagee may request a separate FHA branch ID number for a traditional type branch that will be used for the sole purpose of direct lending.  Each mortgagee will be limited to only one branch ID number for its direct lending operation.  This operation must have a separate manager and may be co-located in an existing office or established at a new location.  The following is process for registering a direct lending branch:

All requests for approval of a direct lending branch must be submitted to Lender Approval and Recertification Division in FHA and cannot be registered via the FHA Connection.  The request must include:

A.    A fully executed HUD form 92001-B, *Branch Office Notification form*;

B.    A statement that it agrees to originate only direct mortgages through the branch ID number and not use the ID number to order case numbers for loans that are not originated through any means other than their internet and/or call center operation. This is required so the Department will be able to track and evaluate this type of origination.

C.    A list of the States where the mortgagee plans to originate FHA single family mortgages by direct lending.  Mortgagees will be granted approval to only originate in the States requested.

D.    A certification as of the date of the request that:

1.    The mortgagee has updated its quality control plan to include specific elements covering direct market lending.

2.    The mortgagee has already obtained the appropriate State license or registration and meets all other State requirements to originate loans in the specific States included in the request.  State exemptions that allow FHA approved mortgagees to originate a small number of loans is not acceptable.

3.    The mortgagee agrees to notify HUD in writing if it no longer meets the requirements of any of these States.  This will result in the State being removed from the lending area of the direct lending branch.

4.    Neither the mortgagee nor any of its officers, directors, or principals or employees have been denied a license or otherwise sanctioned by any Federal, State, or Local agency or have been suspended, debarred, or otherwise denied participation in HUD programs.

Mortgagees are reminded that false certifications may subject the mortgagee and/or its agents to sanctions, including but not limited  to, debarment, reprimand, withdrawal, and civil money penalties.

E.    Each request must include a $300 check payable to HUD as a non-refundable processing fee.

F.    The Department will review all information and certifications provided and will also determine whether the mortgagee is in good standing with the Department, including that it:

1.    Has no unresolved issues regarding renewal of its FHA approval.

2.    Has no actions pending or unresolved issues with the Mortgagee Review Board; and

3.    Has no unresolved audit findings with HUD's Quality Assurance Division or HUD's Office of the Inspector General.

G.    A mortgagee may request additional States be added to the lending area of its direct lending branch at any time after its initial registration for no additional fee.

## Part B.  Principal- Authorized Agent Relationship

5-9    **Introduction.**  The principal-authorized agent relationship provides mortgagees flexibility in the origination of FHA insured single-family loans in situations where a mortgagee wishes to collaborate with another mortgagee.  This process provides mortgagees flexibility to offer diversified loan products or programs because of the ability to team with firms that may have more expertise in specialized areas.  This includes products such as HECM or 203(k).  It also can be utilized to handle unique situations such as when a mortgagee no longer has a DE underwriter on its staff or for some reason does not have a particular expertise or capacity.  In almost all cases, mortgagees use this procedure when they need assistance in the underwriting of a loan.

5-10    **Principal.**  The principal in the relationship can only be an FHA approved non-supervised mortgagee, supervised mortgagee or government mortgagee.  FHA approved loan correspondents cannot serve as a principal.

5-11    **Authorized Agent.**  The authorized agent can only be an FHA approved non-supervised mortgagee or supervised mortgagee.  FHA approved loan correspondents cannot serve as an authorized agent.

5-12    **Origination and Underwriting.**  Either party can originate or underwrite the loan as long as they have the appropriate approval.  However, since the authorized agent typically underwrites the loan, its FHA lender ID number is shown in the sponsor field of an FHA case file.  Also, since the principal typically takes the application, its ID is in the originator field of the case file.  Both mortgagees are responsible for the part of the origination and underwriting processing they perform.

5-13    **Mortgagee Name in Loan Closing.**  Per regulation Section 202.3(a)(3), the loan must close in the name of the principal.  Either party can submit the closed loan for insurance for the benefit of the principal.

5-14    **Establishing the Relationship.**  The relationship must be set up by the authorized agent via the FHA Connection as explained in the Lender Approval Section of the FHA Connection User Guide located at:  https://entp.hud.gov/pdf/mp_lndapp.pdf.

5-15    **Origination Fee.**  As in all originations, the amount of the origination fee each lender receives is a contractual matter to be determined by the two parties, which in these cases are the principal and authorized agent.  The total fees charged to a mortgagor may not exceed the amount allowed for the type of FHA single-family loan as contained in the appropriate handbooks and mortgagee letters.

### Part C.  Additional Sponsors

5-16    **Adding Sponsors for a Loan Correspondent.**  A loan correspondent may have more than one sponsor.  Only supervised mortgagees, non-supervised mortgagees, and Governmental Institutions may sponsor loan correspondents.

5-17    **Registration Procedure.**  The additional sponsor relationship is requested by the sponsor.  It is done electronically through FHA Connection - Lender Approval - Sponsor Relations - Add a loan correspondent.  An acknowledgment message is returned to the sponsor immediately.

4060.1 REV-2

# CHAPTER 6
## CHANGES SUBSEQUENT TO APPROVAL

6-1    **Reporting Business Changes.**  A mortgagee is required to notify the Department within a specified number of business days of any business change that affects its standing as an approved institution, or which changes the information on which it was originally approved.  Generally, notification consists of a letter to FHA, signed by an executive officer of the mortgagee.  Certain changes may require additional documentation.  The notice must be sent or faxed to the Director, Lender Approval and Recertification Division.  Failure to notify HUD may lead to processing delays or sanctions by the Mortgagee Review Board.

| Type of Change | Days | Paragraph |
|---|---|---|
| Change of home office location or telephone number | 10 | 6-2 |
| Change of branch office location or telephone number | 10 | 6-3 |
| Termination of Principal-Authorized Agent Relationship | 10 | 6-4 |
| Termination of Loan Correspondent-Sponsor Agreement | 10 | 6-5 |
| Permission for Supervised Loan Correspondent to service | When Approval Required | 6-6 |
| Change of Fiscal Year | 10 | 6-7 |
| Change of name | 10 | 6-8 |
| Changes to "Doing Business As" ("dba") name | 10 | 6-9 |
| Loss of DE underwriter | Immediate | 6-10 |
| Change of senior officer | 10 | 6-11 |
| Changes in a partnership | Immediate | 6-12 |
| Change of shareholder, ownership, or control | 10 | 6-13 |
| Changes in charter or Federal Taxpayer ID Number | 10 | 6-14 |
| Change in character of business (principal activity) | 10 | 6-15 |
| Conversion of mortgagee type | When Approval Required | 6-16 |

| Type of Change | Days | Paragraph |
|---|---|---|
| Merger or consolidation | 10 | 6-17 |
| Sale or acquisition | 10 | 6-18 |
| Termination of Supervision | 10 | 6-19 |
| Termination of fidelity bond or E&O insurance | 10 | 6-20 |
| Net Worth Deficiency | 30 | 6-21 |
| Liquid Assets Deficiency | 30 | 6-22 |
| Operating loss | 30 | 6-23 |
| Bankruptcy or liquidation | 30 | 6-24 |
| Voluntary withdrawal | n/a | 6-25 |
| All other business changes | 10 | 6-26 |

6-2     **Change of Home Office Location or Telephone Number.**  The Department maintains the following addresses for the home office of a mortgagee:

- *Geographic Address*, Address where the office is physically located;
- *Mailing Address*, Address to which HUD correspondence is sent;
- *Premium Address*, Address of the office to which premiums are to be billed;
- *Payee Address*, Address is used to mail Advice of Payment letters;
- *Conditional and Firm Commitment (CHUMS) Address*, Address HUD will use to conduct business relating to applications for insurance; and
- *Endorsement Address*, Address to which the confirmation will be sent of payment of the "one-time" mortgage insurance premium.

A.     ***Address Changes.***  Mortgagees update all of their addresses via their FHA Connection account.  However, they may not change the "State" part of the Geographic Address of the home office.  If an office has relocated to a different State, the mortgagee must submit a request to the Lender Approval and Recertification Division to update the address.  A mortgagee whose address in incorrect for delivery of its FHA Connection Coordinator's registration information, should submit a request for correction to the Lender Approval and Recertification Division.

4060.1 REV-2

    B.    ***Telephone and Fax Numbers and Email Address.***  Because FHA often has a need to contact mortgagees by telephone or fax or by email, a mortgagee must update this information through the Lender Approval functions of the FHA Connection.  The numbers are also displayed on searchable lists of FHA approved mortgagees on HUD's web site.

**6-3    Change of Branch Office Location or Telephone Number.**

    A.    ***Within the Same State.***  The mortgagee must update the addresses for each branch through the Lender Approval functions under the FHA Connection.

    B.    ***To Another State.***  A mortgagee cannot change the "State" part of the Geographic Address of a branch office.  If an office has relocated to a different State, the mortgagee must submit a request to the Lender Approval and Recertification Division to update the address.

**6-4    Termination of Principal-Authorized Agent Relationship.**  If a Principal/Authorized Agent relationship is terminated by either party, then either party must also terminate the relationship in FHA's systems via the Lender Approval functions under the FHA Connection.

**6-5    Termination of Loan Correspondent-Sponsor Relationship.**  If a loan correspondent/sponsor relationship is terminated by either party, then either party must also terminate the relationship in FHA's systems via the Lender Approval functions under the FHA Connection.  Because a loan correspondent must have at least one sponsor, loss of all sponsors is grounds for FHA to withdraw the loan correspondent's approval.  In such cases, the loan correspondent has 30 days to establish a relationship with at least one new sponsor.  If the loan correspondent fails to establish a new Sponsor relationship, then its FHA approval will be withdrawn.

**6-6    Permission for Supervised Loan Correspondent to Service.**  Upon application to the Department, a supervised loan correspondent may be granted permission to service its own FHA-insured mortgages**.**  The "application" consists of a letter to the Lender Approval and Recertification Division.  Generally, permission is granted only when the mortgagee has converted from a supervised mortgagee and has an outstanding portfolio of FHA-insured mortgages.

**6-7    Change of Fiscal Year.**  A mortgagee is allowed to change its fiscal year**.**  The mortgagee must submit a written request to the Lender Approval and Recertification Division.  HUD may, at its discretion, require the mortgagee to submit financial statements and a computation of adjusted net worth certified by its management**.**  This requirement depends on the length of time since the

mortgagee last submitted audited financial statements to the Department. Every period must eventually be audited. In no case may more than 18 months elapse between the dates of *audited* financial statements.

6-8     **Change of Legal Name.** For a change of name, a mortgagee must submit the following to the Lender Approval and Recertification Division

A.     Acceptable documentation showing the name change, such as:

- The amendment to its articles of incorporation;
- Resolution by the mortgagee's Board of Directors; and
- Charter amendment for a supervised institution.

B.     When required by the State, evidence that the name change has been accepted by the State in which the home office is located.

6-9     **Changes to "Doing Business As" (dba) Name.** A mortgagees makes changes to its "doing business as" through the FHA Connection and certify it has the appropriate approval to use the dba name. Although a mortgagee may have more than one "dba," each home or branch office is limited to one "dba" name in the FHA Connection. See paragraph 2-4, regarding names including restricted words such as "national" or "Federal."

6-10     **Loss of Direct Endorsement Underwriter.** If a mortgagee with Direct Endorsement (DE) authority loses its only DE underwriter, it must immediately obtain and register a qualified replacement. Without a registered DE underwriter, the mortgagee will be unable to underwrite FHA mortgages. If it is unable to obtain and register a replacement, then the mortgagee must either enter into a Principal-Authorized Agent relationship or convert to loan correspondent status. For Principal-Authorized Agents, see chapter 5 Part B. For conversion, see paragraph 6-16.

6-11     **Change of Senior Officer.** If a mortgagee has an addition or substitution of a principal, including but not limited to chairman of the board, president, vice president, director, or LLC member, the mortgagee must notify HUD of the change. A Residential Mortgage Credit Report must be submitted on the new individual. A supervised mortgagee or supervised loan correspondent does not have to comply with the credit report requirement.

6-12     **Change in a Partnership.** If a managing general partner withdraws or is removed from the partnership, a new managing general partner must be substituted and the Department must be immediately notified of the change. The mortgagee must immediately notify the Department of any amendments to the partnership agreement that would affect the partnership's actions under any of the mortgage insurance programs. Newly admitted partners must agree to the

management of the partnership by the designated managing general partner. Before a partnership is terminated, all FHA insured mortgages held by the partnership must be transferred to an approved mortgagee.

6-13    **Change of Shareholder, Ownership, or Control.** Whenever an individual or entity, that previously owned less than 25 percent of voting stock of a mortgagee, acquires voting stock resulting in ownership of 25 percent or more, the mortgagee must notify HUD.  A resume and Residential Mortgage Credit Report must be submitted on any such individual; for a business entity, a commercial credit report, or a Dun & Bradstreet report, must be submitted.  If a mortgagee's controlling ownership changes, a new application and fee may be necessary.  The mortgagee should contact the Lender Approval and Recertification Division in advance to determine what will be required.  A change of ownership or control resulting from a merger or consolidation is covered in paragraph 6-17; a change of ownership or control resulting from acquisition of the mortgagee is covered in paragraph 6-18.

6-14    **Change in Charter or Federal Taxpayer Identifying Number.**

A.    ***Change Resulting in New Federal Taxpayer Identifying Number.***  If a mortgagee reincorporates the approved institution, changes the institution's charter, changes the State where the company is incorporated or otherwise chartered, or completes any other change that results in the company receiving a different Federal Taxpayer Identifying Number, the mortgagee is required to submit a new application for mortgagee approval and pay the fee for a new mortgagee approval as specified in paragraph 2-7.  If a new mortgagee identification number is issued, HUD will leave the old mortgagee identification number active for approximately 45 days to allow completion of processing of loans in process under that identification number.  When a new mortgagee identification number is issued, the mortgagee must cease originating cases under the old number.

B.    ***Change Not Resulting in Change of Federal Taxpayer Identifying Number.***  If the change does not result in a new Federal Taxpayer Identifying Number, then the mortgagee must submit the following to the Lender Approval and Recertification Division:

1.    Certification as to the nature of the conversion and that there has been no change in the Federal Taxpayer Identifying Number or depositor insurance (in the case of a supervised mortgagee).

2.    Certification that the institution will continue to comply with the approval requirements of this Handbook.

3.    Certification that the newly chartered entity will continue to be responsible for the assets and liabilities of the former institution. This would include any problems found subsequently by the Department in the origination or servicing of any Title II mortgages originated or serviced by the institution prior to the adoption of the new charter.

4.    Copy of the new charter and a complete description of the changes. In lieu of the above, the mortgagee must submit a new application for mortgagee approval and pay the fee for a new mortgagee approval as specified in paragraph 2-7.

C.    ***Special Cases.***   There may be instances where the Federal Taxpayer Identifying Number may not change, but the change in the business entity is such that HUD may require a new application.

6-15   **Change in Character of Business (Principal Activity).**  If there is a change in the character of an approved non-supervised mortgagee's business such that it may no longer qualify under the "principal activity" rule (see paragraph 2-27(D) or 2-29(C), as applicable and 24 CFR 202.7(a) or 202.8(a)(2), as applicable.), and this change in character is permanent, it must withdraw from the program. If the change is temporary, it must notify the Department and provide to the Department a Corrective Action Plan detailing how it will reestablish mortgage lending as its principal activity.

6-16   **Conversion of Mortgagee Type.**  A mortgagee that converts its status from one type to another during its fiscal year must continue to comply with all annual recertification requirements. To convert its mortgagee type, a mortgagee must complete a new <u>HUD form 11701</u>, *Application for Approval, FHA Lender and/or Ginnie Mae Mortgage Backed Securities Issuer*, and pay a non-refundable $300 conversion fee. A mortgagee or loan correspondent must demonstrate that it has adequate net worth to meet the requirements of the type of mortgagee to which it is converting. The conversion application and its supporting documentation must be sent the Director, Lender Approval and Recertification Division. The non-refundable $300 conversion fee must be mailed to HUD's lock box address shown in paragraph 2-7, together with its transmittal form. The mortgagee's 10 digit FHA identification number for its home office must be inserted in the memo section of the check and the transmittal form.

A.    ***Supervised Mortgagee to Supervised Loan Correspondent.***  In this type of conversion, the mortgagee must submit:

- Transmittal letter, showing the mortgagee's ID number, name, address and nature of request;
- Copy of the check for the conversion fee and the transmittal form;

- Sponsor Letter, in which the sponsor agrees to sponsor the supervised loan correspondent and purchase all FHA mortgages originated by the supervised loan correspondent and underwritten by the Sponsor; and
- Certification that all FHA-insured mortgages held or serviced has been transferred to another FHA mortgagee that is approved to service FHA-insured mortgages; or a request for permission to hold or service FHA-insured mortgages.

B.    ***Supervised Loan Correspondent to Supervised Mortgagee.***  In this type of conversion, the mortgagee must submit:

- Transmittal letter, showing the mortgagee's ID number, name, address and nature of request;
- Copy of the check for the conversion fee and the transmittal form;
- Evidence of errors and omissions insurance for a minimum of $300,000; and
- Evidence of a fidelity bond for a minimum of $300,000.

C.    ***Supervised Entity to Non-supervised Entity.***  In this type of conversion, the mortgagee must submit:

- Transmittal letter, showing the mortgagee's ID number, name, address and nature of request;
- Copy of the check for the conversion fee and the transmittal form;
- A new HUD form 11701, *Application for Approval, FHA Lender and/or Ginnie Mae Mortgage-Backed Securities Issuer*; and
- The same documentation as for a new application for approval with all the required documentation for that type of mortgagee.

D.    ***Non-supervised Mortgagee to Non-supervised Loan Correspondent.***  In this type of conversion the mortgagee must submit:

- Transmittal letter, showing the mortgagee's ID number, name, address and nature of request;
- Copy of the check for the conversion fee and the transmittal form;
- Sponsor letter showing evidence of an acceptable funding agreement; and
- Certification that all FHA-insured mortgages held or serviced has been transferred to another FHA mortgagee that is approved to hold and service FHA-insured mortgages.

E.    ***Non-supervised Loan Correspondent to Non-supervised Mortgagee.***  In this type of conversion, the mortgagee must submit:

- Transmittal letter, showing the mortgagee's ID number, name, address and nature of request;
- Copy of the check for the conversion fee and the transmittal form;
- Copy of its most recent audited financial statements and, if these are more than six months old, management certified financial statements and computation of adjusted net worth. (see paragraph 3-2(A)(6);
- Evidence of an acceptable funding program. (see paragraph 2-27.C);
- Evidence of errors and omissions insurance for a minimum of $300,000; and
- Evidence of a fidelity bond for a minimum of $300,000.

Once this conversion is approved, the mortgagee will no longer have any sponsors and needs to contact the appropriate Homeownership Center for obtaining approval as a DE mortgagee if they wish to underwrite single family loans.

F.    **Conversion to Investing Mortgagee.**    In this type of conversion, the mortgagee must submit:

- Transmittal letter, showing the mortgagee's ID number, name, address and nature of request;
- Copy of the check for the conversion fee and the transmittal form;
- A new HUD form 11701, *Application for Approval, FHA Lender and/or Ginnie Mae Mortgage-Backed Securities Issuer*;
- Evidence that it meets the requirements specified in paragraph 2-30(B), regarding legal authority to purchase insured mortgages and availability of funding; and
- Certification that all servicing of FHA-insured mortgages has been transferred to another approved FHA mortgagee that is approved to service FHA-insured mortgages.

G.    **Conversion from Investing Mortgagee.**    In this type of conversion, the mortgagee must submit:

- Transmittal letter, showing the mortgagee's ID number, name, address and nature of request;
- Copy of the check for the conversion fee and the transmittal form;
- Submit the same documentation as for a new application for approval with all the required documentation for that type of mortgagee; and
- If conversion is to a loan correspondent, certify that all FHA-insured mortgages held or serviced have been transferred to

4060.1 REV-2

another FHA mortgagee that is approved to hold and service FHA-insured mortgages.

6-17    **Merger or Consolidation.**  Mergers can take a variety of forms.

    A.    ***Two or More HUD/FHA-Approved Mortgagees Merge.***

        1.    ***Non-surviving Entity.***  The non-surviving entity must:

            a.    Submit a letter signed by an executive officer informing the Department that it is merging with another entity**.**  The letter must:

- Indicate which mortgagee will survive;
- Provide the mortgagee identification numbers for each mortgagee involved;
- Provide the date the merger occurred or will occur; and
- Request termination of its approval.

            b.    If the non-surviving mortgagee was a Sponsor of FHA-approved loan correspondents, it must notify its loan correspondents of its request for termination.

            c.    Once the non-surviving entity ceases to exist or its approval is terminated, whichever comes first:

- It may not accept any new applications for Title II mortgages;
- It may no longer purchase Title II mortgages;
- It may no longer service Title II mortgages; and
- It may no longer submit claims to the Department.

            d.    When the non-surviving mortgagee holds a portfolio of Title II mortgages, it must arrange to transfer the loans to the surviving mortgagee or some other approved FHA mortgagee approved to service FHA mortgages.  See paragraphs 6-17(A)(2)(e) and (f).  There is a continued obligation to pay insurance premiums due and to meet all other obligations associated with the insured mortgages.

        2.    ***Surviving Entity.***  The surviving entity must:

a.      Submit a letter describing the merger and certifying that 1) any loan correspondents not continuing with sponsorship have been notified, 2) all loan correspondents of the non-surviving mortgagee will be sponsored by the surviving mortgagee or 3) the non-surviving mortgagee was not the sponsor of any loan correspondents.

b.      Submit a copy of the document which evidences the merger.  A supervised mortgagee, must submit a copy of the letter from the supervisory authority which approved the merger.

c.      Submit a list identifying each of the non-surviving entity's branch offices which will remain open under the auspices of the surviving entity, and pay the branch office registration fee specified in paragraph 2-7.

d.      Register each of the non-surviving entity's loan correspondents, if any, that the surviving entity will continue to sponsor in the FHA Connection.  Sponsorship is not automatically transferred.  Each of the non-surviving entity's loan correspondents, for which the surviving entity will not continue sponsorship, must be given 30 days written notice by the Sponsor.

e.      If the surviving mortgagee acquires only a portion of the non-surviving mortgagee's Title II mortgages, one of the parties must submit a *Mortgage Record Change* transaction for each mortgage that will not be acquired by the surviving mortgagee.

f.      If the surviving mortgagee acquires all of the non-surviving mortgagee's outstanding Title II mortgages, it is not necessary to submit *Mortgage Record Changes*.  All loans will be transferred to the surviving entity by HUD when the merger is processed.

B.      *An Approved Mortgagee Merges with a Non-approved Mortgagee.*

1.      *Non-approved Mortgagee Survives*.

a.      The non-surviving mortgagee must comply with the provisions of paragraph 6-17(A)(1).

4060.1 REV-2

b.   If the surviving mortgagee wishes to originate or hold Title II mortgages or submit claims for mortgages previously held by the non-surviving mortgagee, it must become FHA-approved. To become approved, it must follow the approval procedures of this Handbook. The mortgagee should include with its application a letter describing the merger, and, if applicable, its intentions regarding the non-surviving mortgagee's outstanding Title II mortgages and sponsored loan correspondents. Immediately after becoming approved, the mortgagee should register each of the non-surviving entity's branch offices which will remain open under the auspices of the surviving entity, and pay the branch registration fee specified in paragraph 2-7. The mortgagee must register each of the loan correspondents it is sponsoring in the FHA Connection.

2.   *Approved Mortgagee Survives*.  The surviving mortgagee must:

a.   submit a letter describing the merger.

b.   Submit a copy of the document which evidences the merger. A supervised mortgagee, must submit a copy of the letter from the supervisory authority which approved the merger.

6-18   **Sale or Acquisition.**  The sale or acquisition of a FHA-approved mortgagee may take the form of stock, assets or operations being acquired or some combination of these. The mortgagee may cease to exist, becoming part of the acquiring company, it may continue as a subsidiary or affiliate of the acquiring company, or may become an independent company. Each of these is handled differently.

A.   *An Approved Mortgagee Acquired by Another Approved Mortgagee.*  The necessary action depends upon whether the acquired mortgagee will cease to exist or will continue as a subsidiary or affiliate of the acquiring mortgagee.

1.   *Continuation as Subsidiary or Affiliate.*  If the mortgagee being acquired will continue to operate as a subsidiary or affiliate of the acquiring mortgagee, the acquiring mortgagee must submit a letter describing the transaction including the names of all parties, their FHA mortgagee identification numbers, and the date of the acquisition. The letter must also explain that the acquired entity will continue as a subsidiary or affiliate of the acquiring entity. The acquired mortgagee must notify the Department by letter that it has been acquired and will continue to operate as a subsidiary or

affiliate of the acquiring mortgagee.  The acquired mortgagee may continue to operate under its existing Title II mortgagee Identification Number.

2.   ***Dissolution of Mortgagee.***  If the mortgagee being acquired will be dissolved,

   a.   The non-surviving entity must submit a letter signed by an executive officer informing the Department of details regarding its acquisition and requesting termination of its approval.  The mortgagee must comply with the provisions of paragraphs 6-17(A)(1).

   b.   The surviving entity must submit to HUD a copy of the articles of dissolution and a letter describing the acquisition and, if applicable, its intended disposition or sale of FHA insured loans held or serviced by the non-surviving mortgagee.  The letter must also certify that 1) any loan correspondents not continuing with sponsorship have been notified, 2) all loan correspondents of the non-surviving mortgagee will be sponsored by the surviving mortgagee or 3) the non-surviving mortgagee was not the sponsor of any loan correspondents.   The surviving mortgagee must comply with paragraphs 6-17(A)(2)(c) through (f).

B.   ***An Approved Mortgagee Acquired by an Entity that is Not Approved.***

1.   ***Acquiring Entity Requires Approval to Participate in Program.***  If the acquiring entity wishes to be able to originate, hold, or service Title II mortgages, it must apply for approval under the applicable provisions of this Handbook.

   If the acquired mortgagee will not be continuing as a subsidiary or affiliate, the acquiring entity should include with its application a letter describing the acquisition and, if applicable, its intentions regarding the non-surviving mortgagee's outstanding Title II mortgages and sponsored loan correspondents.  Immediately after becoming approved, the mortgagee should register each of the non-surviving entity's branch offices which will remain open under the auspices of the surviving entity, and pay the branch registration fee specified in paragraph 2-7(A).  The mortgagee may electronically register each of the loan correspondents it is sponsoring or follow the alternate procedures described in paragraph 5-12.

2.  ***Acquired Mortgagee to Continue as Subsidiary or Affiliate.*** If the acquired entity will continue to operate as a subsidiary or affiliate of the acquiring mortgagee, it may continue to operate as a Title II mortgagee under its own name, whether or not the acquiring entity becomes FHA-approved. The mortgagee must submit a letter describing the acquisition and its future operating status.

3.  ***Acquired Mortgagee Ceases to Exist.*** If the acquired entity will cease to exist, it must comply with the provisions of paragraph 6-18(A)(2)(a).

C.  ***The Approved Mortgagee Becomes Independent.*** When an approved mortgagee, which has been a subsidiary or part of a larger entity, becomes independent, it must notify HUD and provide details of the change. Based on this, HUD may require additional information. For changes in senior officers, directors, or ownership, the mortgagee must submit documentation as specified in paragraphs 6-11 and 6-13.

D.  ***The Approved Mortgagee Acquires an Entity that is Not Approved.*** If the acquired entity will operate as a subsidiary or affiliate of the acquiring mortgagee and wishes to be able to originate, hold or service Title II mortgage, it must apply for approval under the applicable provisions of this Handbook.

6-19 **Termination of Supervision.** A supervised mortgagee is required to notify the Department in writing within 10 business days after the termination of supervision by its supervising agency. If the mortgagee qualifies for approval as another type of mortgagee, it must submit a new application, with the appropriate non-refundable fee, for approval to participate in the Department's mortgage insurance programs.

6-20 **Termination of Fidelity Bond or Errors and Omissions Insurance.** If a mortgagee's fidelity bond or errors and omissions insurance is terminated and the mortgagee is unable to obtain a new policy within ten business days, to continue as a FHA approved mortgagee, it must convert to a loan correspondent (see paragraph 6-16).

6-21 **Net Worth Deficiency.** An approved mortgagee must maintain at least the minimum required adjusted net worth at all times. If at any time it falls below the required minimum, the mortgagee must notify the Lender Approval and Recertification Division and submit a Corrective Action Plan. Failure to comply is grounds for an administrative action by the Mortgagee Review Board.

6-22 **Liquid Assets Deficiency.** An approved mortgagee must maintain at least the minimum required liquid assets at all times. If at any time it falls below the

required minimum, the mortgagee must notify the Lender Approval and Recertification Division and submit a Corrective Action Plan. Failure to comply is grounds for an administrative action by the Mortgagee Review Board.

6-23    **Operating Loss.**  A mortgagee must submit financial statements within 30 days of the end of each fiscal quarter in which the mortgagee experiences an operating loss of 20 percent or greater of its net worth. The interim financial statements may be either audited or un-audited, and the mortgagee must continue to submit them until it shows an operating profit for two consecutive quarters, or until its next annual recertification by FHA, whichever is later.

6-24    **Bankruptcy or Liquidation.**

   A.    ***Business.***  A mortgagee must submit a statement of Adjusted Net Worth within 30 days of commencement of voluntary or involuntary bankruptcy, conservator ship, receivership or any transfer of control to a Federal or State supervisory agency. A current original Dun and Bradstreet or business credit report must be submitted. HUD must be notified of each change of status in the bankruptcy proceedings. HUD reserves the right to require the mortgagee to submit court documents.

   B.    ***Personal.***  If an officer or principal of the mortgagee commences voluntary or involuntary bankruptcy, within 30 days the mortgagee must notify HUD. A current original credit report for that officer or principal must be submitted. HUD must be notified of each change of status in the bankruptcy proceedings.

6-25    **Voluntary Withdrawal of HUD/FHA Approval.**  A mortgagee may request a voluntary withdrawal of its FHA approval by submitting written notification, signed by a senior officer, to the Lender Approval and Recertification Division. The request will not be honored while there is an administrative action or Mortgagee Review Board action pending against the mortgagee. Any mortgagee whose approval is voluntarily withdrawn may reapply for FHA approval at any time after its withdrawal.

6-26    **All Other Business Changes.**  Any other business change that affects a mortgagee's approval status or its conduct of business with the Department must be reported in writing to the Lender Approval and Recertification Division within 10 days.

# CHAPTER 7
# QUALITY CONTROL PLAN

7-1    **General.** All FHA approved mortgagees, including loan correspondents, must implement and continuously have in place a Quality Control Plan for the origination and/or servicing of insured mortgages as a condition of receiving and maintaining FHA approval.  This applies to both the Single Family and the Multifamily Housing programs.  A copy of the plan must be submitted when applying for mortgagee approval.

Quality Control must be a prescribed and routine function of each mortgagee's operations whether performed by a mortgagee's staff or an outside source. Mortgagees applying for approval to originate only or service only may submit a plan that pertains only to the function they will perform.  A mortgagee that will perform both origination and servicing must submit a plan that covers both functions.

This Chapter sets forth basic requirements that all mortgagees must meet, along with a degree of flexibility, so that each mortgagee may develop a program that fits its circumstances while conforming to FHA's requirements.  Mortgagees should consider that some of the requirements might not be applicable to their operation.  It is necessary to perform Quality Control only on those activities in which a mortgagee is engaged.

## Part A. Overall Requirements

7-2    **Goals of Quality Control.** The following are the overriding goals of Quality Control.  Mortgagees must design programs that meet these basic goals:

- Assure compliance with FHA's and the mortgagee's own origination or servicing requirements throughout its operations;
- Protect the mortgagee and FHA from unacceptable risk;
- Guard against errors, omissions and fraud; and
- Assure swift and appropriate corrective action.

Failure to comply with specific Quality Control requirements may result in sanctions and the imposition of Civil Money Penalties by the Mortgagee Review Board (MRB).

7-3    **Basic Elements of Quality Control.** There are several basic elements that are required in all Quality Control Programs that apply to both origination and servicing.

A.   **Plan Form and Execution.** All Quality Control Programs must be in writing.  Mortgagees must have fully functioning Quality Control Programs from the date of their initial FHA approval until final surrender or termination of their approval.

B.   **Independence.** The Quality Control function must be independent of the origination and servicing functions.  This independence may be accomplished in a variety of ways. Depending on a mortgagee's operations, loan volume, staff size or other factors, a mortgagee may prefer one method over another.  Quality Control functions may be performed using:

    1.   **In-House Staff.** Mortgagees may establish a unit that is dedicated solely to Quality Control.  Staff performing Quality Control reviews must not be involved in the day-to-day processes that they are reviewing.

    2.   **Outside Firms.** Mortgagees may engage outside sources to perform the Quality Control function.  The FHA approved sponsors of loan correspondents are acceptable as such outside sources.  A mortgagee contracting out any part of its Quality Control function is responsible for ensuring that the outside source is meeting HUD's requirements.  Any agreement with the outside source must be in writing, state the roles and responsibilities of each party, and be available for review by HUD staff.

C.   **Qualified Staff.** Mortgagees must properly train staff involved in Quality Control and provide them access to current guidelines relating to the operations that they review.  It is not necessary for mortgagees to maintain these guidelines in hard copy format if they are accessible in an electronic format.  Many of the statutes, regulations, HUD Handbooks and Mortgagee Letters which establish the requirements for FHA programs are available on the web page for HUDCLIPS at: http://www.hudclips.org/cgi/index.cgi.

D.   **Timeliness.** Mortgagees must ensure that quality control reviews are performed on a regular and timely basis.  Depending on a mortgagee's production volume, origination reviews may be performed weekly, monthly, or quarterly.  The review of a specific mortgage should be completed within 90 days of closing.  Reviews of different aspects of servicing will vary in frequency; however, delinquent servicing and loss mitigation activities should be reviewed monthly.  Timeliness is discussed further in the Origination and Servicing sections of this Chapter.

E.     **System of Loan File Review.** The Quality Control Program must provide for the review of a representative sample of a mortgagee's loans.  This review must evaluate the accuracy and adequacy of the information and documentation used in reaching decisions in either the origination or servicing processes.  Specific elements for items to review are discussed in the Origination and Servicing sections of this Chapter.

F.     **Adequate Scope and Sampling.** The Quality Control reviews must thoroughly evaluate the mortgagee's origination and/or servicing functions to determine the root cause of deficiencies.  The mortgagee must expand the scope of the Quality Control review when fraud or patterns of deficiencies are uncovered; scope means both an increased number of files as well as more in-depth review.  All aspects of the mortgagee's operation, including but not limited to all branch offices or sites, FHA approved loan correspondents, authorized agents, loan officers or originators, processors, underwriters, appraisers, closing personnel, all FHA loan programs, servicing personnel, loss mitigation procedures, escrow analysis, and assumptions, must be subject to the mortgagee's Quality Control reviews. Sample Size is discussed in the Origination and Servicing sections of this Chapter.

G.     **Site Review.** A mortgagee's offices, including traditional, nontraditional branch and direct lending offices engaged in origination or servicing of FHA-insured loans, must be reviewed to determine that they are in compliance with the Department's requirements.

1.     **Review Items.** The review must include, but not necessarily be limited to, confirmation of the following items:

- The office is properly registered with FHA and the address is current;
- Operations are conducted in a professional, business-like environment;
- If located in commercial space, the office is properly and clearly identified for any walk-in customers; has adequate office space and equipment; is in a location conducive to mortgage lending; and is separated from any other entity by walls or partitions (entrances and reception areas may be shared);
- If located in non-commercial space, the office has adequate office space and equipment; displays a fair housing poster if the public is received; if it is open to receive the public, it must be accessible to persons with disabilities, including those with mobility impairments; if it is not open to the public, but used occasionally to meet with members of the

public, alternate means of accommodation may be used to serve persons with disabilities;

- The servicing office provides toll-free lines or accepts collect calls from mortgagors;
- The office is sufficiently staffed with trained personnel;
- Office personnel have access to relevant statutes, regulations, HUD issuances and Handbooks, either in hard copy or electronically;
- Procedures are revised to reflect changes in HUD requirements and personnel are informed of the changes;
- Personnel at the office are all employees of the mortgagee or contract employees performing functions that FHA allows to be outsourced; and
- The office does not employ or have a contract with anyone currently under debarment or suspension, or a Limited Denial of Participation.

2.  ***Frequency.*** Technology enables mortgagees to conduct effective Quality Control remotely. Annual visits are mandatory for offices meeting certain higher risk criteria such as high early default rates, new branches or new key personnel, sudden increases in volume, and past problems. Other sites must be reviewed to assure compliance with FHA's requirements at a frequency and in a manner determined appropriate by the mortgagee. The criteria used by the mortgagee to determine the frequency of on-site reviews must be in writing and available for review by HUD at the corporate office and any branch office that is not being reviewed annually.

3.  ***Staffing.*** When it is not feasible for Quality Control staff to visit each branch, qualified personnel from another office of the mortgagee, not involved in the day-to-day processes they are reviewing, or an outside firm may perform the review.

H.  ***Affiliate Review.*** The Department requires mortgagees to ensure that their contractors, agents, and loan correspondents are acceptable to FHA and operate in compliance with FHA requirements.

1.  ***Sponsors.*** A sponsor's Quality Control Program must provide for a review of loans originated and sold to it by each of its loan correspondents. sponsors should determine the appropriate percentage to review based on volume, past experience and other factors. Sponsors must document the methodologies and results.

2.   ***Loan Correspondents.*** Loan correspondents may arrange with their sponsor(s) to perform Quality Control provided:

- The arrangement with the sponsor(s) is detailed in writing;
- The aggregate number and scope of reviews meet FHA requirements;
- Loans are reviewed within 90 days of closing;
- Findings are clear as to source and cause; and
- Results are available in a timely manner to both mortgagees and HUD.

3.   ***Whole Loan and Servicing Purchasers.*** Mortgagees acquiring loans must confirm that mortgage insurance premiums have been paid, insurance is in force, security instruments have been recorded, and that the files and records are complete and as expected.

I.   ***Reporting and Corrective Action.*** Review findings must be reported to the mortgagee's senior management within one month of completion of the initial report. Management must take prompt action to deal appropriately with any material findings. The final report or an addendum must identify actions being taken, the timetable for their completion, and any planned follow-up activities.

J.   ***Notification to HUD.*** Findings of fraud or other serious violations must be immediately referred, in writing (along with any available supporting documentation) to the Director of the Quality Assurance Division in the HUD Homeownership Center (HOC) having jurisdiction (determined by the State where the property is located). In lieu of submitting a paper report, mortgagees must use the Lender Reporting feature in the Neighborhood Watch Early Warning System. If HUD staff is suspected of involvement, refer to the Office of Inspector General at 451 7th Street, SW, Room 8256, Washington, DC 20410.

A mortgagee's Quality Control Program must ensure that findings discovered by employees during the normal course of business and by quality control staff during reviews/audits of FHA loans are reported to HUD within 60 days of the initial discovery.

K.   ***File Retention.*** The Quality Control review report and follow-up, including review findings and actions taken, plus procedural information (such as the percentage of loans reviewed, basis for selecting loans, and who performed the review) must be retained by the mortgagee for a period of two years. These records must be made available to HUD on request.

L.      **Restricted Participation.** Determine that no one is employed for HUD origination, processing, underwriting or servicing who is debarred, suspended, subject to a Limited Denial of Participation (LDP) or otherwise restricted from participation in HUD/FHA programs. Mortgagees must periodically check employee list, at least semi-annually.

7-4     **Quality Control as a Risk Assessment Tool.** The Department recommends that Quality Control reports to mortgagee management include an assessment of risks. Mortgagees may develop a system of evaluating each Quality Control sample on the basis of the severity of the violations found during the review. The system should enable a mortgagee to compare one month's sample to previous samples so the mortgagee may conduct trend analysis.

Management can also use this tool to respond quickly to a sudden decline in the quality of its loans and help identify and correct the problem. Mortgagees may consider a ratings system such as the following for each loan reviewed, then aggregate these into an overall rating for the sample.

A.      **Low Risk.** No, or a minor, problem was identified with the origination or servicing of the loan.

B.      **Acceptable Risk.** A variety of issues were identified pertaining to processing, documentation or decisions made but none were material to creditworthiness, collateral security or insurability of the loan.

C.      **Moderate Risk.** The records contained significant unresolved questions or missing documentation. Failure to resolve these issues has created a moderate risk to the mortgagee and FHA.

D.      **Material Risk.** The issues identified during the review were material violations of FHA or mortgagee requirements and represent an unacceptable level of risk. For example, a significant miscalculation of the insurable mortgage amount or the applicant's capacity to repay, failure to underwrite an assumption or protect abandoned property from damage, or fraud. Mortgagees must report these loans, in writing, to the Quality Assurance Division in the FHA Homeownership Center having jurisdiction.

## Part B. Quality Control for Single Family Origination

7-5     **Quality Control from Beginning to End.** Quality Control for origination has historically been performed only at the end of the process, that is, after a loan has closed. In order to make it more useful, mortgagees are encouraged to implement Quality Control throughout the loan origination process. The following recommendations will help mortgagees accomplish these ends:

A.   ***Monitor Application Process.*** Mortgagees should monitor the intake of mortgagor information to ensure sufficient questions are asked to elicit a complete picture of the mortgagor's financial situation, the source of funds for the transaction, the intended use of the property, and that employees working with the mortgage applicant are knowledgeable of the origination process to fully describe the mortgagor's responsibilities in obtaining a FHA-insured mortgage. This may involve periodically monitoring calls and following up with applicants regarding their treatment and understanding of the process and their obligations (e.g., to avoid misrepresentation and falsification). Mortgagees must also verify the identity of the loan applicant.

B.   ***Conduct Pre-funding Reviews.*** Mortgagees may want to sample cases prior to closing to evaluate the quality of processing and underwriting. Using such reviews, mortgagees may detect problems prior to closing while problems can still be corrected. This would be especially beneficial in cases involving loans with higher risk characteristics. An important part of pre-funding reviews is reverification (by telephone or in writing) of the applicant's employment, source of funds and residency history. If a written reverification received during a pre-funding Quality Control review is satisfactory, another written reverification is not required if the loan is selected for post-closing review.

C.   ***Identify Patterns.*** Mortgagees must identify patterns of early defaults by location, program, loan characteristic, loan correspondent or sponsor. Mortgagees may use HUD's *Neighborhood Watch - Early Warning System* to identify patterns. Mortgagees must identify commonalities among participants in the mortgage origination process to learn the extent of their involvement in problem cases. Loans involving appraisers, loan officers, processors, underwriters, etc. who have been associated with problems must be included in the review sample.

7-6   **Basic Requirements for Quality Control of Single Family Production.** In order for a Quality Control Program to be useful and acceptable to FHA, there are several requirements that must be met. Mortgagees must adhere to each of the requirements below when conducting reviews.

A.   ***Timeliness.*** Loans must be reviewed within 90 days from the end of the month in which the loan closed. This requirement is intended to ensure that problems left undetected prior to closing are identified as early after closing as possible.

B.   ***Frequency.*** For mortgagees closing more than 15 loans monthly, quality control reviews must be conducted at least monthly and must address one

month's activity.  Mortgagees closing 15 or fewer loans monthly may perform quality control reviews on a quarterly basis.

C.     ***Sample Size and Loan Selection.*** Because it is not feasible to review all loans originated during a period, the Program must require that an appropriately sized sample is selected and evaluated during each review. A mortgagee who originates and/or underwrites 3,500 or fewer FHA loans per year must review 10 % of the FHA loans it originates.  A mortgagee who originates and/or underwrites more than 3,500 FHA loans per year may review 10 % of its loans or a statistical random sampling that provides a 95 % confidence level with 2 % precision.  Each review must document how the sample size and selections were determined.

Regardless of the percentage of loans being reviewed, the mortgagee must comply with the following:

1.     ***Targeting Loans for Review.*** The Quality Control Program must contain provisions to select loans meeting the conditions stated below.  It may not be feasible to select loans from each category every month, but an effort must be made to select loans from each category as often as possible.  An emphasis should be placed on any participants that have large volumes of loans, show sudden increases in loan volumes or loan default rates, have recently begun a relationship with the mortgagee, or concentrate in soft market areas.

       a.     Loans must be reviewed from all branch offices and all sources including authorized agents and loan correspondents;

       b.     Mortgagees must review the work of each of the loan processors, loan officers, and underwriters based on the sample selected.  In addition, mortgagees must review the work of roster appraisers, real estate companies, and builders with whom they do a significant amount of business; and

       c.     The sample must include all FHA programs in which the mortgagee participates including, but not limited to, 203(b), 203(k), 234(c), and Home Equity Conversion Mortgages.

2.     ***Recommendations for Selecting Individual Loans.*** The Department's experience in reviewing loans that went into early default has shown that many have one or more of the characteristics listed below.  It is recommended that mortgagees

consider these characteristics, or any additional ones they find useful, in identifying loans to be reviewed.

- 2-4 unit properties;
- New construction or rehab loans;
- Properties transferred within the past year;
- Substantial seller concessions;
- Non-occupying co-mortgagors or multiple mortgagors;
- Housing expenses increasing by 1.5 times or more;
- Large or multiple earnest money deposits (money orders);
- Large increase in bank account balance;
- Sale of personal property for funds to close;
- Gifts or loans of funds to close;
- Self-employed; and
- Loans risk assessed as "refers" by automated underwriting systems.

D.    **Early Payment Defaults.** In addition to the loans selected for routine quality control reviews, mortgagees must review all loans going into default within the first six payments.  As defined here, early payment defaults are loans that become 60 days past due.

E.    **Documentation Review and Verification.** The Quality Control Program must provide for the review and confirmation of information on all loans selected for review.

1.    **Credit Report.** A new credit report must be obtained for each borrower whose loan is included in a Quality Control review, unless the loan was a streamline refinance or was processed using a FHA approved automated underwriting system exempted from this requirement.  A credit report obtained for a Quality Control review may be a Residential Mortgage Credit Report, a three repository merged in-file report or, when appropriate, a business credit report.  The report must comply with the credit report standards described in HUD Handbook 4155.1 (as revised).  A full Residential Mortgage Credit Report must be obtained from a different credit source on cases in which the in-file report reveals discrepancies with the original credit report.

2.    **Credit Document Reverification.** Documents contained in the loan file should be checked for sufficiency and subjected to written reverification.  Examples of items that must be reverified include, but are not limited to, the mortgagor's employment or other income, deposits, gift letters, alternate credit sources, and other sources of funds.  Sources of funds must be acceptable as well as

verified.  Other items that may be reverified include mortgage or rent payments.  If the written reverification is not returned to the mortgagee, a documented attempt must be made to conduct a telephone reverification.  If the original information was obtained electronically or involved alternative documents, a written reverification must still be attempted. Any discrepancies must be explored to ensure that the original documents (except blanket verification releases) were completed before being signed, were as represented, were not handled by interested third parties and that all corrections were proper and initialed.   All conflicting information in the original documentation should have been resolved before the complete file was submitted to the underwriter.

3.    ***Appraisals.*** A desk review of the property appraisal must be performed on all loans chosen for a Quality Control review except streamline refinances and HUD Real Estate Owned (REO) sales. The desk review must include a review of the appraisal data, the validity of the comparables, the value conclusion ("as repaired" to meet safety and soundness requirements in HUD Handbook 4905.1 (as revised)), any changes made by the underwriter and the overall quality of the appraisal.

Mortgagees are expected to perform field reviews on 10 % of the loans selected during the sampling process outlined previously in paragraph 7-6 C and D.  Field reviews must be performed by licensed appraisers listed on FHA's Roster of Appraisers. Mortgagees should select loans for field reviews based on factors such as those listed previously in paragraph 7-6(C)(2) and the following:

- Property complaints received from mortgagors;
- Discrepancies found during desk reviews;
- Large adjustments to value;
- Comparable sales more than six months old;
- Excessive distances from comparables to the subject property;
- Repetitive sales activity for the subject property;
- Investor-sold properties;
- Identity of interest between buyer and seller;
- Seller identity differs from owner of record; and
- Vacant properties.

In addition, a field review should be completed on loans selected in accordance with paragraphs 7-6(C) and (D) where the desk review revealed significant problems/deficiencies with the appraisal

report. If serious deficiencies or patterns are uncovered, mortgagees must report these items, in writing, to the Quality Assurance Division in the HUD Homeownership Center having jurisdiction.

4. ***Occupancy Reverification.*** In cases where the occupancy of the subject property is suspect, mortgagees must attempt to determine whether the mortgagor is occupying the property. The failure of the mortgagor to occupy the property may be an indication that the loan contains other problems. If it is found that the mortgagor is not occupying a property mortgaged as owner-occupied, mortgagees must report this, in writing, to the Quality Assurance Division in the HUD Homeownership Center having jurisdiction. It also would be advisable to review other similar loans for occupancy.

F. ***Underwriting Decisions.*** Each Direct Endorsement loan selected for a quality control review must be reviewed for compliance with HUD underwriting requirements, sufficiency of documentation and the soundness of underwriting judgments.

G. ***Condition Clearance and Closing.*** Each loan selected for a quality control review must be reviewed to determine whether:

- Conditions which were required to be satisfied prior to closing were in fact met prior to closing;
- The seller was the owner of record, or was exempt from the owner of record requirement in accordance with HUD regulations;
- The loan was closed and funds disbursed in accordance with the mortgagee's underwriting and subsequent closing instructions; and
- The closing and legal documents are accurate and complete.

7-7 **Specific Elements for the Production Portion of the Quality Control Program.** A mortgagee's Quality Control Program must provide for a review of mortgage loan files to evaluate the loan origination and underwriting functions. The Department has found that the items listed below are typically found in a good Quality Control Program. Minimally, the Quality Control Program must address these elements as well as any others that might be useful in the evaluation.

A. Determine whether the information in the preliminary loan application, final application and all credit documents is consistent or reconciled.

B.  Determine whether the appraised value was established using reasonable comparables, reasonable adjustments, and in expectation of repairs required to meet minimum safety and soundness requirements.

C.  Determine whether loan documents requiring signature (other than blanket verification releases) were signed by the mortgagor or employee(s) of the mortgagee only after completion; and that all corrections were initialed by the mortgagor or employee(s) of the mortgagee.

D.  Determine whether verifications of employment, verifications of deposit or credit reports are suspect due to handling by any interested third party or the mortgagor.

E.  Determine whether the loan file contains a financial statement, tax returns and the appropriate type of credit report if the mortgagor is self-employed.

F.  Determine whether more than one credit report was ordered and whether all credit reports were submitted with the loan package to HUD/FHA or the Direct Endorsement Underwriter.

G.  Determine whether outstanding judgments shown on the credit report were shown on the HUD form 92900, Mortgage Credit Analysis Worksheet (MCAW) and acceptably explained in accompanying documentation.

H.  Determine whether the loan file contains pertinent documentation of the mortgagor's source of funds for the required investment, the acceptability of that source, and that any obligation to repay the funds is included on HUD form 92900. This is especially important in cases where the source was other than the applicant's accounts at a financial institution.

I.  Determine whether all conflicting information or discrepancies in the application file were resolved and properly documented in writing prior to submission of the loan for underwriting.

J.  Determine whether there are sufficient and documented compensating factors if the debt ratios exceed FHA limits.

K.  Determine the accuracy and completeness of underwriting conclusions and mortgagee documentation.

L.  Determine whether all conditions were cleared prior to closing.

M.  Determine whether the HUD-1 Settlement Statement was accurately prepared and properly certified.  Assure that only FHA allowable fees and charges were paid by the mortgagor.  The HUD-1 should be compared

with other relevant loan documents to determine whether the mortgagor made the required minimum investment and whether any credits resulted in an over-insured mortgage.

N.    Determine whether the loan file contains all required loan processing, underwriting and legal documents.

O.    Determine whether the loan was submitted for insurance within 60 days of closing or included a payment history showing the loan was current when it was submitted for mortgage insurance.

P.    Determine whether the seller acquired the property at the time of or soon before closing, indicating a possible property "flip."

Q.    If possible, determine whether the mortgagor transferred the property at the time of closing or soon after closing, indicating the possible use of a "straw buyer" in the transaction.

R.    Determine whether all items requiring documentation have been properly evidenced and retained in the file.

7-8    **Review of Procedural Compliance in Production.** In addition to a review of a mortgagee's case files, there are certain other areas of a mortgagee's operation that must be reviewed and corrected if deficient.

A.    ***Fair Lending.*** The Quality Control Program must verify that the mortgagee's operations are in compliance with the various fair lending laws including the following:

- Fair Housing Act;
- Equal Credit Opportunity Act (15 U.S.C. §1691 et seq.); and
- Federal Truth in Lending Act (15 U.S.C. §1601 et seq.).

Additional fair lending matters are discussed below. Possible violations or incidences of discrimination must be reported to the Office of Fair Housing and Equal Opportunity in HUD's Headquarters in a timely manner.

1.    ***Rejected Applications.*** Of the total loans rejected, a minimum of 10 % or a statistical random sampling that provides a 95 % confidence level with 2 % precision must be reviewed, concentrating on the following areas:

- Ensuring that the reasons given for rejection were valid;

- Ensuring that each rejection has the concurrence of an officer or senior staff person of the company, or a committee chaired by a senior staff person or officer;
- Ensuring that the requirements of the Equal Credit Opportunity Act are met and documented in each file;
- Ensuring that no Civil Rights violations are committed in rejection of applications; and

Where possible discrimination is noted, the mortgagee is expected to take immediate corrective action.

2.   ***Mortgagee Practices.*** Ensure that the mortgagee is in compliance with the Department's requirements concerning Tiered Pricing, Overages and Premium Pricing.

3.   ***Minimum Loan Amounts.*** Mortgagees are prohibited from setting minimum loan amounts.

4.   ***Fair Housing Logo.*** Verify that fair housing and equal opportunity signs and logos are displayed in offices and on stationery and documents.

B.   ***Home Mortgage Disclosure Act.*** The Quality Control Program must verify that the mortgagee is in compliance with the Home Mortgage Disclosure Act reporting requirements and the Department's requirements for reporting FHA-insured mortgages. The check should include confirmation that the report is made timely, information being reported is accurate, and information is being reported correctly. Refer to current HUD requirements.

C.   ***Ineligible Participants.*** The Quality Control Program must verify that the mortgagee is ensuring that none of the participants in a mortgage transaction (excluding the seller of a principal residence) is debarred or suspended, or is under an LDP for the program and jurisdiction. Periodically check employee list, at least semi-annually. There also must be procedures to determine if the mortgage applicant is ineligible due to a delinquent federal debt (eligibility is influenced by repayment arrangements, extenuating circumstances and the age of the debt).

D.   ***Real Estate Settlement Procedures Act.*** The Quality Control Program must verify that the mortgagee is in compliance with the provisions of RESPA, including, but not limited to:

- Distributing the *Special Information Booklet* to mortgage applicants;
- Providing applicants with Good Faith Estimates of the settlement costs relating to obtaining a mortgage not later than 3 business days after the application is received or prepared;
- Providing applicants with their HUD-1;
- Disclosing transfer of servicing; and
- Disclosing business relationships with affiliated entities.

E.    ***Escrow Funds.*** The Quality Control Program must verify that escrow funds received from mortgagors are not used for any purpose other than that for which they were received.  Mortgagees must also ensure that the funds are maintained in an account separate from the mortgagee's general operating account.

F.    ***Mortgage Insurance Premiums.*** The Quality Control Program must verify that HUD/FHA Mortgage Insurance Premiums (MIPs) that are due upfront (prior to insurance) are remitted within the time period established by FHA, or if not, that the remittance includes late charges and interest penalties.  Mortgagees must address any pattern of late submissions and promptly take corrective measures.

G.    ***Timely and Accurate Insurance.*** The Quality Control Program must determine whether mortgages are being submitted to HUD for insurance within 60 calendar days of closing.  If mortgages have been submitted beyond the 60 days, the Quality Control Program should verify that the mortgage was current when submitted and met the payment requirements of HUD Handbook 4165.1 (as revised).  Mortgagees must address any pattern of late submissions and promptly take corrective measures.  The Quality Control Program also should include a review of the Mortgage Insurance Certificate for accuracy.

H.    ***Underwriting Reports.*** The Quality Control Program should include a review of reports available to mortgagees, including underwriting reports and notices of return (regarding cases rejected for insurance due to errors or omissions).

I.    ***Advertising.*** Ensure that branch offices or employees are not engaging in false or misleading advertising practices.  Refer to paragraph 2-17.

**7-9    Other Quality Control Issues Regarding Single Family Production.**

A.    ***Automated Underwriting.*** Mortgagees using an automated underwriting system should consider how best to design their Quality Control Programs

to evaluate loans underwritten by these systems.  The following are only basic requirements:

1.    **Sample.** The Quality Control sample must include loans that fairly represent the percentage of loans underwritten in this manner.

2.    **Requirements.** The Quality Control Program must verify that correct information has been entered into the automated underwriting system, including data identifying the borrower(s), property, mortgage, income, assets, and source of funds.  Copies of the assessment by the automated underwriting system must be included in the loan file in addition to the normal documentation required for an FHA mortgage transaction.   Whenever the automated underwriting system cannot "accept" the application, the basis of the automated underwriter system's decision on the loan must be documented and retained.

3.    **Referred Applications.** The Quality Control Program must verify that applications receiving a "refer" are manually underwritten by an underwriter before a final decision is made on the application.

4.    **Exemptions to Individual Quality Control Program Requirements.** A new credit report is not required.

5.    **Overrides.** The Quality Control Program must verify that if manual downgrades or overrides are applied, that no patterns of illegal discrimination against loan applicants are revealed and that the downgrade or override was proper.

B.    **Streamline Refinances.** Mortgages made under FHA's streamline refinancing requirements typically will contain very few documents. Streamline refinances should be included in the Quality Control sample; however, they should comprise a very small proportion of the sample unless streamline refinances are a significant proportion of the mortgagee's production.  The reviews may be limited to the functions performed when originating such loans and confirmation that the loan was eligible for streamline processing.

C.    **Specific Programs.** Mortgages originated under specific FHA programs warrant special attention.

1.    **Section 203(k) Loans.** The Quality Control Program of mortgagees originating or purchasing 203(k) loans must provide for reviews of the handling of rehabilitation escrows and disbursements, the rehabilitation loan agreements, the scope of the

repairs, the timeliness of their completion, and borrower complaints about quality. Also, mortgagees should conduct physical inspections on a sampling of 203(k) loans.

In addition, the Quality Control Program of mortgagees originating 203(k) loans must clearly define standards for the 203(k) consultant's performance in its Quality Control Program. These standards must be provided to each consultant that the mortgagee relies on in the 203(k) program. Mortgagees must evaluate and document the performance of these consultants on at least an annual basis, to include a review of the consultant's actual work product. Mortgagees must not use the services of consultants who have demonstrated previous poor performance. Fraud or malfeasance should be documented and reported to the Department for possible administrative action.

2. ***Home Equity Conversion Mortgages (HECMs).*** The Quality Control Program of mortgagees originating HECMs should provide for reviews to ensure that the homeowners received the appropriate counseling and that any referral fees paid are reasonable for the service provided and disclosed in the loan file.

## Part C. Quality Control for Single Family Servicing

7-10    **Basic Requirements for Quality Control over Single Family Servicing.** In general, servicing activities vary on individual loans and over the course of the year. As a result, sampling for servicing reviews will be focused on specific aspects of servicing rather than against the entire portfolio.

A.    ***Areas to be reviewed.*** Servicers must review all aspects of their servicing operations as they relate to FHA-insured mortgages. The areas listed below must be reviewed to ensure that all FHA, RESPA, and other pertinent requirements are being met.

- Servicing delinquent accounts;
  - Loss Mitigation efforts;
  - Reporting under the Single Family Default Monitoring System (SFDMS);
- Foreclosure processing;
- MIP billings;
- Deficiency judgments;
- Claims, and claims without conveyance of title;
- New loans, servicing transfers, acquisitions;
- Customer service;
- Fees and charges;

- Escrow administration;
- ARM adjustments and disclosures;
- HECM disbursement reporting;
- Section 235 recertifications;
- Assumption processing;
- Handling of prepayments;
- Paid-in-full mortgages; and
- Maintenance of records.

B.    ***Timeliness and Frequency.*** Quality Control of servicing must be an ongoing function.  Due to the importance of these aspects of servicing, mortgagees must perform monthly reviews of delinquent loan servicing, claims, and foreclosures.  The other items listed in the previous paragraph must be reviewed at least quarterly and should address activity that occurred within the prior three months.

C.    ***Sample Size.*** Mortgagees servicing fewer than 3,500 loans, in their total FHA portfolio, must review 10% of the FHA loans for each area of servicing outlined in Paragraph 7-10(A), in accordance with the review period described in 7-10(B).  Mortgagees servicing more than 3,500 loans may use an appropriately sized statistical sampling that provides a 95 % confidence level with 2 % precision for the review of each area of servicing --- provided the total population of the area of servicing outlined in Paragraph 7-10(A), for the review period described in 7-10(B), is sufficient to apply a statistical random sampling methodology.   All mortgagees, regardless of their portfolio size, must document the total population and how the sample size and selections were determined for each area of servicing outlined in Paragraph 7-10(A).

## 7-11    Review of Procedural Compliance in Servicing.

A.    ***Real Estate Settlement Procedures Act.*** The Quality Control Program must determine whether the mortgagee is in compliance with the provisions of RESPA in its escrow account administration.

B.    ***Ineligible Participants.*** The Quality Control Program must determine whether the mortgagee is ensuring that none of the participants in an assumption (excluding the seller of a principal residence) has been debarred or suspended, or is under an LDP for the program and jurisdiction.  There also must be procedures to determine if the mortgage assumptor is ineligible due to a delinquent federal debt (eligibility is influenced by repayment arrangements, extenuating circumstances and the age of the debt).

C. **Fair Lending.** The Quality Control Program must include a review of the mortgagee's operations, including assumption processing, to assure compliance with the various fair lending laws including the Fair Housing Act and the Equal Credit Opportunity Act.  Possible violations or incidences of discrimination must be reported, in writing with supporting documentation, to the Office of Fair Housing and Equal Opportunity in HUD Headquarters.  Patterns of disproportionate aggressiveness or forbearance in foreclosures on the basis of race, color, religion, sex, handicap, familial status or national origin under the Fair Housing Act or the same prohibited areas in addition to age or martial status under the Equal Credit Opportunity Act.

D. **Transfer of Servicing.** The Quality Control Program must include a review of the transfer of servicing provisions as provided under Section 6 of RESPA.

**7-12  Required Elements for the Servicing Portion of the Quality Control Program.** Mortgagees must service mortgages in compliance with HUD regulations, Handbook 4330.1 (as revised), Mortgagee Letters and instructions for the submission of claims.  A mortgagee's Quality Control Program for servicing must provide for a review of all aspects of loan servicing.  Mortgagees must include the following elements in the evaluation.

A. Determine whether loan-servicing records are promptly established after loan closing and if the servicing records contain all necessary documentation.

B. Determine whether mortgagors are promptly notified when the mortgagee acquires servicing from another mortgagee and whether loan servicing records are established immediately upon transfer of a loan to the mortgagee's loan servicing portfolio.

C. Determine whether loans purchased contain all necessary documents.

D. Determine whether all Mortgage Insurance Premiums (MIP) are paid timely and in the correct amounts.  The Quality Control review must include an analysis to determine whether a monthly or risk-based premium is due.  This review must include a sampling of recently purchased loans.

E. Determine whether the *Mortgage Record Change* was reported to HUD on loans sold to another servicer.  Also, determine whether the selling servicer reported the transfer of recently purchased loans.  This may be done by examining the portfolio using the FHA Connection.

F.  Determine whether requests from mortgagors concerning their individual mortgage accounts are responded to promptly.  Determine whether complaints are promptly and effectively handled.

G.  Determine whether escrow account functions are being performed properly.  This includes ensuring that:

•   Funds are maintained in an account separate from the mortgagee's general operating account;
•   Mortgagors are billed the proper amounts;
•   Disbursements are made promptly as the items for which the escrow was established become due and payable;
•   Bills are requested and obtained when not automatically received;
•   Excessive balances are promptly refunded to the mortgagor or applied to the unpaid principal balance if the mortgagor so requests; and
•   Escrow shortages are promptly reported to the mortgagor and the mortgagor is informed of all options to remedy the shortage.

H.  Determine whether fees and charges imposed on the mortgagor are permitted and do not exceed the amount allowed by HUD/FHA and the provisions of the mortgage and mortgage note.  For example:

•   Allowed fees:  such as late charges, inspection fees, assumption fees, and attorney's fee (only for the initiation of foreclosure proceedings); and
•   Prohibited fees:  such as prepayment fees or reinstatement fees.

I.  Determine whether ARM adjustments are calculated correctly and implemented timely, after mortgagors are properly notified.

J.  Determine whether Section 235 recertification's are performed annually, that assistance payments are accurately computed and billed using the proper formula, that the income used for computing the assistance payments is compared to the income included in the mortgagor's income verification, and that mortgagors are properly notified of any changes to their payment.  Determine if the prior year's income increased and/or a job change occurred necessitating computation and collection of any overpaid assistance.

K.  Determine whether qualifying assumptions were properly underwritten. Determine whether a *Mortgage Record Change* (identifying assumptor's name and Social Security Number) is promptly reported to HUD when the mortgage is assumed.

L.    Determine whether effective collection activities are pursued in a timely fashion. Determine whether contact is attempted with all co-mortgagors, co-signors and former mortgagors, as appropriate.

M.    Determine whether accurate documentation of collection efforts is maintained, including:

- referral of the mortgagor to a HUD-approved counseling agency; and
- mailing of HUD pamphlet HUD-426 to mortgagors no later than the second month of delinquency.

N.    Determine whether a personalized interview (face-to-face or telephone) with the mortgagor is attempted before three full mortgage installments become delinquent. If the interview was not conducted, documentation must be provided of an exception allowed by HUD.

O.    Determine whether accurate and timely submission of required reports is being made to the Single Family Default Monitoring System.

P.    Determine whether mortgagor information is reported to credit reporting bureaus when appropriate.

Q.    Determine whether property inspections to protect and preserve the property are performed in accordance with HUD requirements.

R.    Determine whether all appropriate Loss Mitigation tools (i.e. special forbearance, loan modification, partial claim, pre-foreclosure sale, and deed-in-lieu) have been considered and documented, and that mortgagors are provided every reasonable opportunity to remedy a delinquency or default prior to the decision to foreclose.

S.    Determine whether additional assistance to remedy the delinquency (e.g. oral and written forbearance agreements and refinances) is reasonable given the financial data submitted by the mortgagor. Determine whether reasonable partial payments are accepted in accordance with requirements.

T.    Determine whether foreclosure proceedings are initiated and completed in a timely manner, and in compliance with HUD requirements (e.g., decision to foreclose had concurrence of management).

U.    Determine whether disaster moratorium requirements are met.

V.    Determine whether deficiency judgments are taken where required.

W.    Determine whether there are sufficient controls to ensure that claims for insurance benefits are accurately prepared, properly calculated, fully supported, and submitted in a timely manner to HUD. The review must include, but should not be limited to, the following items:

- Preservation and protection;
- Appraisal costs;
- Foreclosure costs of acquiring the property;
- Costs associated with pursuing a deficiency judgment;
- Taxes;
- Special assessments;
- Association fees;
- Hazard insurance premiums;
- Periodic MIP;
- Uncollected mortgage interest; and
- Debenture interest.

All fees included must comply with the reasonable and customary fees specified by the FHA Single Family Homeownership Center having jurisdiction over REO in the location or with Fannie Mae guidelines.

X.    Determine whether interest charges in prepayments are accurate. Determine whether the note and security instrument are promptly satisfied, the termination of FHA mortgage insurance is properly reported to FHA on paid-in-full mortgages, and escrow balances are promptly refunded. Determine whether security instruments are promptly released.

Y.    Determine whether the documents required to be retained as originals and the remaining paper documents or acceptable imaged or microfilmed versions are retained for a minimum of the life of the loan plus three years, and any additional time required due to payment of a claim or Section 235 subsidies.

Z.    Determine whether the servicing of 203(k) loans has been completed in accordance with FHA guidelines (i.e., reviews of the handling of rehabilitation escrows and disbursements, the rehabilitation loan agreements, the scope of the repairs, the timeliness of their completion, and borrower complaints about quality). In addition, mortgagees should conduct physical inspections on a sampling of 203(k) loans.

Page Intentionally Left Blank

# CHAPTER 8
# MORTGAGEE MONITORING, ADMINISTRATIVE SANCTIONS AND MRB ACTIONS, CREDIT WATCH AND NEIGHBORHOOD WATCH

## Part A. Monitoring Activities

8-1    **Introduction.**    Various offices within HUD monitor the performance of mortgagees originating or servicing single family insured mortgages.    The objectives of the mortgagee monitoring program are:

   A.    To ensure that mortgagee practices are in compliance with statutory, regulatory and administrative loan origination and servicing requirements;

   B.    To identify mortgagees representing a high risk to the Department's insurance funds and take appropriate actions to mitigate losses; and

   C.    To provide consistency in the resolution of problems relating to non-compliance with FHA's loan origination and servicing requirements by approved mortgagees.

8-2    **On-site Reviews.** These reviews, conducted at mortgagees' offices, consist of an opening conference; interviews with mortgagee officials and their employees; reviews of individual case files, logs and computer records; reviews of the mortgagee's policies, procedures, and Quality Control Program; and an exit conference; followed, as appropriate, by selected reverifications, such as interviews with mortgagors. Mortgagees are given a few days notice prior to an origination review and approximately one month's notice prior to a servicing review.    Mortgagees are expected to have files requested by FHA monitors available for their review.

   On-site comprehensive reviews of national and large national lenders evaluate, not only mortgagee files, records, and practices, but also the lender's overall operations and policies with respect to lender relationships, quality control and risk management, wholesale loans and riskier FHA product lines.    These reviews are conducted using staff and resources from one or more of the QADs in the Homeownership Centers and Headquarters.

8-3    **Results and Referrals.**    Upon completion of the on-site review, an exit conference is held to discuss problems and deficiencies in loan files and in the mortgagee's operations. Minor findings, which have been resolved by the mortgagee, may be closed out at the exit conference.    Following the completion of the post on-site review activities, the QAD will send a letter to the mortgagee's home office identifying any problems found and actions needed, or refer the

matter for further handling.  Mortgagees are expected to respond to findings letters promptly, and include a detailed description and appropriate documentation on any refuted findings.

Referrals may be made to:

- Office of Fair Housing and Equal Opportunity (fair lending issues);
- Office of Consumer and Regulatory Affairs (RESPA issues);
- HUD's Enforcement Center (suspension or debarment actions);
- Mortgagee Review Board;
- Office of Inspector General  (fraud or illegal activities are suspected); and
- State licensing agencies – eg. Secretary of State, Real Estate Commissioner, Appraisal Review Board, Department of Banking, Bar Association.

## Part B. Administrative Sanctions and MRB Actions

8-4    **Basics.** HUD may take an administrative action against individuals, companies and lenders for actions or omissions in connection with FHA mortgage insurance programs.

A.    ***Limited Denial of Participation (LDP).***  Serious, isolated, violations of FHA requirements may lead to an LDP of an individual or company (other than an approved mortgagee) by the Homeownership Center, Multifamily Hub or Center, or a Deputy Assistant Secretary.  The LDP precludes the party from participating in the HUD programs specified, within the jurisdiction of the HUD official taking the action, for up to one year (see 24 Code of Federal Regulations (CFR) Part 24).

B.    ***Debarment or Suspension.*** Violations of statutes or serious or repeated violations of FHA requirements may lead to a debarment or suspension of an individual, a company, or with approval of the MRB, a lender, by the Department's Enforcement Center or an Assistant Secretary.  These actions preclude the party from participating in most Federal domestic programs (see 24 CFR Part 24).

C.    ***Mortgagee Review Board (MRB) Action.*** The Department's Mortgagee Review Board (MRB) is authorized to impose civil money penalties on a mortgagee or other party, and to take administrative action against any approved mortgagee that does not comply with FHA requirements or the non-discrimination requirements of the *Equal Credit Opportunity Act*, the *Fair Housing Act*, or Executive Order 11063. The Department's regulations on the Mortgagee Review Board and civil money penalties are in 24 CFR Parts 25 and 30.

1.   ***Administrative Actions.*** The Board may issue a letter of reprimand, place a mortgagee on probation, suspend or withdraw a mortgagee's approval, or enter into a Settlement Agreement. The Board may also issue a cease and desist order where there is reasonable cause to believe that a mortgagee is violating, or has violated the Department's requirements. The nature and extent of the violations determines the type of administrative action that the Board may take.

2.   ***Civil Money Penalties.*** The Board is authorized to impose a civil money penalty of up to $6,500 per violation, per day of its continuance, against a party that knowingly and materially violates FHA program regulations or requirements. A civil money penalty may be imposed against a mortgagee in addition to any other administrative action taken by the Board.

## Part C. Credit Watch Termination Initiative

8-5   **Overview.**  Credit Watch Termination Initiative holds single family mortgagees accountable for poorly performing loans that they originated or underwrote.  This process is administered by the Quality Assurance Division (QAD) in FHA Headquarters (see 24 CFR 202.2 and 202.3(c)(2)).

A.   ***Review of Early Defaults and Claims.*** QAD compares the proportion of a mortgagee's loans that became 90 days delinquent early in their term to the proportion of early defaults and claims on all insured loans.

B.   ***Outcome.***  A mortgagee (or branch) with default and claim rates that are two or more times the average for a HUD Field Office jurisdiction may become ineligible to originate or underwrite further single family insured mortgages in that area.

C.   ***Process.***  Before any restriction takes effect, a mortgagee will have an opportunity to present its analysis of the early defaults and claims, and conclusions about its accountability to FHA officials in Washington, DC.

## Part D. Neighborhood Watch

8-6   **Overview:**  The Neighborhood Watch Early Warning System is a web-based software application that displays loan performance data for single family mortgagees and appraisers, by loan types and geographic areas using FHA-insured single family loan information.

Origination loan information is displayed for a two-year period and is updated on a monthly basis.  The default data includes current defaults, and defaults within

the first and first two years from endorsement.  Results can be displayed for distinct categories of FHA lenders (e.g. sponsors, loan correspondents) and can be viewed for numerous reporting periods (e.g. current month, 24 months of quarterly data).  Servicing data is updated monthly and can be viewed by single servicer or all servicers.

To support its users, the Neighborhood Watch system has an extensive Help menu as well as a Feedback feature.  Lenders can access Neighborhood Watch via the FHA Connection.  Details on its use are contained in the Single Family Housing portion of the FHA Connection Guide.

# INDEX

Acquisition,
    Between Approved Mortgagees ................................................................6-18(A)
    By Non-approved Mortgagee ................................................................6-18(B)
Acronyms, List of ........................................................... See page iii of Forward
Additional Sponsors for a Loan Correspondent........................................... 5-16
Address
    Mortgagee Address in FHA Records ...................................... 1-15, 6-2,
    Office of Lender Activities and Its Divisions. .......... See FAQs in FHA Connection
Administrative Actions & Sanctions, and Civil Money Penalties ................................. 1-13
    Administrative Actions ........................................................ 8-4(C)(1)
    Civil Money Penalities ......................................................... 8-4(C)(2)
    Debarment or Suspension ....................................................8-4(B)
    Limited Denial of Participation (LDP) ...................................8-4(A)
    Mortgagee Review Board (MRB) Actions .................................8-4(C)
Areas Approved for Business.................................................................... 2-19
Civil Money Penalties ............................................................................ 1-14
Advertising, Misrepresentative ............................................................... 2-17
Annual Audit Requirements
    Extensions .....................................................................4-4(C)
    Newly Approved Mortgagee.............................................. 4-4(B)(5)
    Nonsupervised Loan Correspondent....................................4-4(A)(2)
    Nonsupervised Mortgagee ............................................... 4-4(A)(1)
    When Not Required ..........................................................4-4(B)
Annual Audit, Review of LASS Submissions ................................................ 4-5
Annual Renewal of FHA Approval
    Annual Renewal Fees ....................................................... 4-3
    Annual Submission of Audited Financial Statements......................... 4-4
    Failure to Comply ........................................................... 4-2
    Summary of Requirements ................................................. 4-1
    Yearly Verification Report ................................................. 4-2
Appeal
    Disapproval of Initial Application ......................................... 3-9
    Notice of Withdrawal.......................................................4-9(C)
Application Form ................................................. 1-1(A), 3-2(A)(3)
Application, Initial
    Application Processing ...................................................... 3-4
    Approval of Application ..................................................... 3-7
    Disapproval of Application ................................................. 3-8
    Formal Notice of Initial Approval.........................................3-12(D)
    Required Documents......................................................... 3-2
        Application Fee ......................................................3-2(A)(2)
        Application Form 11701 ..........................................3-2(A)(3)

        Credit Reports ...................................................................3-2(A)(4)
        Errors and Omissions Insurance ................................3-2(A)(11)
        Evidence of Acceptable Facilities.................................3-2(A)(9)
        Fidelity Bond .................................................................3-2(A)(10)
        Financial Statements ......................................................3-2(A)(6)
        Funding Program ..........................................................3-2(A)(13)
        Licensing...........................................................................3-2(A)(7)
        Quality Control Plan ...................................................3-2(A)(12)
        Resumes .............................................................................3-2(A)(5)
        Sanctions Letter.............................................................3-2(A)(14)
        Sponsor Cover Letter ......................................................3-2(A)(1)
        State Approval of "dba" .................................................3-2(A)(8)
Approval Requirements ...........................................................See Chapter 2
        Business Form.............................................................................2-2
        Corporation ........................................................................2-2(A)
        Limited Liability Company................................................2-2(C)
        Liquid Assets.................................................................................2-6
        Mortgagee Name ........................................................................2-4
        Net Worth Requirements.........................................................2-5
        Partnership ..........................................................................2-2(B)
        State Licensing Requirements...............................................2-3
Approvals
        Direct Endorsement ..............................................................1-1(A)
        Multifamily Accelerated Processing................................1-1-(B)
        Newly Approved Mortgagees .............................................3-11
        Renewal of Mortgagee Approval ..........................................1-3
        Types of Mortgagee Approvals ...............................................1-2
        Voluntary Withdrawal of FHA Approval .........................6-25
Authorized Agent-Principal Relationship ...................................5-9
Bankruptcy.........................................................................................6-24
Branch Office
        Centralized Centers...................................................................5-5
        Change of Address or Telephone Number .........................6-3
        Direct Lending Branch..............................................................5-8
        Manager .........................................................................................2-8
        Mortgagees Permitted to Maintain Branch Offices ..........5-6
        Originating at Branch Offices ................................................5-2
        Servicing by Branch Offices ...................................................5-4
        Staffing.....................................................................................2-12(B)
        Summary of Branch Office Requirements...........................5-1
        Underwriting at Branch Offices ............................................5-3
Business Form
        Approval Requirements .............................................................2-2
        Character of Business (Principal Activity), Change to .....6-15
        Charter, Change to. ..................................................................6-14

Reporting Changes.............................................................. 6-1
Changes
    Address and/or Telephone Number............................................6-2, 6-3
    Bankruptcy or Liquidation ............................................... 6-24
    Character of Business (Principal Activity), Change to ..................... 6-15
    Charter, Change to. ...................................................... 6-14
    Control, Change in ....................................................... 6-13
    Conversion of Mortgagee Type............................................. 6-16
    dba...................................................................... 6-9
    Errors and Omissions Insurance .......................................... 6-20
    Federal Taxpayer Identifying Number ..................................... 6-14
    Fidelity Bond, Termination .............................................. 6-20
    Fiscal Year ............................................................. 6-7
    Legal Name .............................................................. 6-8
    Liquid Assets Deficiency ................................................ 6-22
    Loss of Underwriter ..................................................... 6-10
    Merger or Consolidation ................................................. 6-17
    Net Worth Deficiency .................................................... 6-21
    Operating Loss .......................................................... 6-23
    Partnership, Change in .................................................. 6-12
    Reporting Changes ....................................................... 6-1
    Requirement to Notify HUD of Changes Subsequent to Approval ............. 2-24
    Sale or Acquisition ..................................................... 6-18
    Senior Officer .......................................................... 6-11
    Shareholder, Ownership or Control ....................................... 6-13
    Termination of Supervision............................................... 6-19
    Voluntary Withdrawal of FHA Approval .................................... 6-25
Civil Money Penalties.............................................1-14 & 8-4(C)(2)
Compensation, Employees.............................................. 2-9(A)
Conducting Mortgagee Business ....................................... 2-9(F)
Contacting the Department ........................................... 1-16
Control, Change in .................................................. 6-13
Conversion of Mortgagee Type......................................... 6-6
Corporation, Approval Requirements ..................................2-2(A)
Credit Watch Termination Initiative ................................. 8-5
Deficiency
    Liquid Asset Requirement............................................. 6-22
    Net Worth Requirement ............................................... 6-21
Direct Endorsement (DE) Mortgagee ................................. 1-1(A), 3-13
    Loss of Underwriter ................................................. 6-10
    Underwriting Area ...................................................2-19(C)
Documentation for Specific Business Forms............................ 3-3
Doing Business As (dba) Name, Change of ............................. 6-9
Employee
    Compensation ........................................................2-9(A)

Control and Supervision of Staff ................................................2-9(D)
Employees and Officers ............................................................ 2-9
Employees ................................................................................2-9(A)
Full Time, Part Time and Outside Employment ..........................2-9(G)
Enabling Legislation .................................................. See page i of Forward
Errors and Omissions Insurance ...................................................3-2(A)(11)
Escrow Funds.............................................................................. 2-21
Evidence of Acceptable Facilities................................................3-2(A)(9)
Extension Requests of LASS Submissions..................................4-4(C)
Fair Housing and Other Federal Laws ........................................ 2-16
Federal Taxpayer Identifying Number, Change to......................... 6-14
Fees
    Annual Renewal Fee ........................................................... 4-3
    Branch Registration ............................................................5-7(A)
    Conversion of Mortgagee Type.......................................... 6-16
    Initial Application. ............................................................... 2-7
FHA Connection ......................................................................... 1-5
FHA Monitoring Activities ......................................................... 8-1
    On-site Reviews .................................................................. 8-2
    Results and Referrals .......................................................... 8-3
Fidelity Bond
    Requirement.........................................................................3-2(A)(10)
    Termination ......................................................................... 6-20
Financial Statements
    Annual Renewal.................................................................. 4-4
    Initial Approval ...................................................................3-2(A)(6)
Fiscal Year, Change of ................................................................ 6-7
Frequently Asked Questions ....................................................... 1-8
Funding Program ........................................................................3-2(A)(13)
Geographic Restrictions for Loan Origination and Underwriting ............... 2-19
Governmental Institutions, Additional Approval Requirements.................... 2-31
Handbooks ................................................................................... 1-8
Home Mortgage Disclosure Act of 1974 (HMDA) ....................... 1-12
Home Office
    Change of Address or Telephone ........................................ 6-2
    Staffing .............................................................................2-12(A)
HUD's Lender Web Page ............................................................ 1-4
HUDCLIPS ................................................................................. 1-7
Ineligible Participants. ................................................................2-10
Information Requests, By FHA ................................................... 4-10
Investing Mortgagee
    Additional Approval Requirements .....................................2-30
    Conversion from ................................................................6-16(G)
    Conversion to ....................................................................6-16(F)
LASS Submissions ..................................................................... 4-4

Acceptance of LASS Submission ............................................... 4-6
Deficient LASS Submission ...................................................... 4-7
Extension Requests .............................................................4-4(C)
Rejected LASS Submission ...................................................... 4-8
Legal Name, Change of ................................................................. 6-8
Lender Approvals, Types of .......................................................... 1-2
Lender Lists on HUD's Web Site .................................................... 1-9
Lender Operations
Examination by HUD ............................................................. 1-12
Mortgagee's Address for Communication ...................................... 1-16
Operating Expenses .............................................................. 2-8
Reports Submitted to FHA ...................................................... 1-12
Lending Area ............................................................................. 2-19
Licenses ............................................................................3-2(A)(7)
Limited Liability Company
Additional Documentation Required .........................................3-3(B)
Approval Requirements .......................................................2-2(C)
Liquid Asset Requirement
Approval Requirements. ......................................................... 2-6
Deficiency ...................................................................... 6-22
Renewal Requirement .......................................................4-5(A)(6)
Liquidation ............................................................................... 6-24
Loan Officer ............................................................................... 2-8
Loan Servicing Responsibility ...................................................... 2-20
Mergers ................................................................................. 6-17
Approved Mortgagee and Non-approved Mortgagee ...................6-17(B)
Two Approved Mortgagees ..................................................6-17(A)
Misrepresentative Advertising ..................................................... 2-17
Mortgage Lender ........................................................... 1-1 & 1-2(B)
Mortgage Broker ........................................... 1-1,  1-2(C) & 2-18
Mortgagee Identification Number ................................................3-12(A)
Mortgagee Name
Approval Requirements .......................................................... 2-4
Change .......................................................................... 6-8
Mortgagee
Mergers ......................................................................... 6-17
Ownership, Change in ........................................................ 6-13
Sale or Acquisition ............................................................ 6-18
Types ............................................................................ 1-2
Mortgagee Review Board (MRB) Actions ....................................8-4(C)
Multifamily Accelerated Processing .......................................... 1-1-(B)
Nationwide Branch (Direct Lending Branch) ................................... 5-8
Neighborhood Watch ................................................................. 8-6
Net Branching ........................................................................ 2-14
Net Worth Requirement

Approval Requirements ........................................................ 2-5
Deficiency .......................................................................... 6-21
Renewal Requirements ............................... 4-4(A)(1)(b),  4-4(A)(2)(b),  4-5(B)(5)
Nonsupervised Loan Correspondent
      Additional Approval Requirements ............................... 2-29
      Conversion to Nonsupervised Mortgagee ..................... 6-16(E)
Nonsupervised Mortgagees
      Additional Approval Requirements ............................... 2-27
      Conversion to Nonsupervised Loan Correspondent .................... 6-16(D)
Not-for-profit Entity ............................................................ 3-3(C)
Notice of Violation .............................................................. 4-9(A)
Notice of Withdrawal – Termination of Approval ..................... 4-9(B)
Office Facilities
      Direct Lending Branch Office ..................................... 2-13(D)
      Home office .............................................................. 2-13(A)
      Nontraditional branch office ....................................... 2-13(C)
      Traditional branch office ............................................ 2-13(B)
Officers ............................................................................. 2-9(B)
      Companies with Joint Officers .................................... 2-9(C)
OMB Approval of Information Collections ............................. 1-17
Operating Loss ................................................................... 6-23
Origination Lending Areas .......................................... 2-19(A)&(B)
Outsourcing Mortgagee Operations ...................................... 2-13
Ownership, Change in .......................................................... 6-13
Partnership
      Additional Documentation Required ............................. 3-3(A)
      Approval Requirements .............................................. 2-2(B)
      Change in ................................................................. 6-12
Performance Requirements of Lenders .................................. 1-10
Principal-Authorized Agent Relationship ............................... 5-10
      Establishing the Relationship ...................................... 5-14
      Mortgagee Name in Loan Closing ............................... 5-13
      Origination and Underwriting ..................................... 5-12
      Origination Fee ......................................................... 5-15
      Principal ................................................................... 5-10
      Termination .............................................................. 6-4
Prohibited
      Branch Arrangements (including Net Branching) ........... 2-14
      Prohibited and Permissible Payments .......................... 2-22
      Words in Mortgagee Name ......................................... 2-4
Quality Control Plan
      Adequate Scope and Sampling .................................... 7-3(F)
      Affiliate Review ........................................................ 7-3(H)
      as a Risk Assessment Tool ......................................... 7-4
      Basic Elements ......................................................... 7-3

File Retention ........................................................................7-3(K)
General ................................................................................ 7-1
Goal of Quality Control ........................................................ 7-2
Independence .....................................................................7-3(B)
Notification to FHA .............................................................7-3(J)
Plan Form and Execution ...................................................7-3(A)
Qualified Staff ....................................................................7-3(C)
Reporting and Corrective Action ........................................ 7-3(I)
Requirements for Approval ...........................2-23, 3-2(A)(12)
Restricted Participation .....................................................7-3(L)
Site Review ........................................................................7-3(G)
System of Loan File Review ...............................................7-3(E)
Timeliness .........................................................................7-3(D)
Quality Control for Multifamily Servicing ............................... 7-14
Quality Control for Single Family Origination
Conduct Prefunding Reviews .............................................7-5(B)
Identify Patterns ................................................................7-5(C)
Monitor Application Process ...............................................7-5(A)
Quality Control from Beginning to End ............................... 7-5
Quality Control for Single Family Production
Advertising ........................................................................ 7-8(I)
Automated Underwriting ....................................................7-9(A)
Basic Requirements ........................................................... 7-6
Condition Clearance and Closing .......................................7-6(G)
Documentation Review and Verification ............................. 7-6(E)
Early Payment Defaults .....................................................7-6(D)
Escrow Funds ....................................................................7-8(E)
Fair Lending ......................................................................7-8(A)
Frequency ..........................................................................7-6(B)
HECM Loans ..................................................................... 7-9(C)(2)
HMDA ...............................................................................7-8(B)
Ineligible Participants ........................................................7-8(C)
Mortgage Insurance Premiums ..........................................7-8(F)
RESPA ..............................................................................7-8(D)
Sample Size and Loan Selection ........................................7-6(C)
Section 203(k) Loans ........................................................ 7-9(C)(1)
Specific Elements ............................................................... 7-7
Streamline Refinances .......................................................7-9(B)
Timeliness .........................................................................7-6(A)
Timely and Accurate Insurance .........................................7-8(G)
Underwriting Decisions ......................................................7-6(F)
Underwriting ......................................................................7-8(H)
Quality Control for Single Family Servicing
Areas to be reviewed .........................................................7-10(A)
Basic Requirements .......................................................... 7-10

4060.1 REV-2

Fair Lending ..................................................................................... 7-11(C)
Ineligible Participants ...................................................................... 7-11(B)
Required Elements ............................................................................. 7-12
RESPA ............................................................................................. 7-11(A)
Sample Size ...................................................................................... 7-10(C)
Timeliness and Frequency ............................................................... 7-10(B)
Transfer of Servicing ....................................................................... 7-11(D)
References, List of ............................................................... See page ii of Forward
References, Online locations .................................................. See page ii of Forward
Registration, Branches
      Direct Lending Branch Offices ....................................................... 5-8
      Loan Correspondent Branches .................................................... 5-7(C)
      Mortgagee Branches .................................................................. 5-7(B)
      New Branch ...................................................................................... 5-7
      Registration Fee .......................................................................... 5-7(A)
Regulations .............................................................................. See page i of Forward
Renewal of Approval, Summary ................................................... 1-3, 4-1
Reporting Fraud, Illegal Acts, and Unethical Practices to HUD .................... 1-14
Reports, Submitted by Lenders ............................................................ 1-11
Requirement to Notify HUD of Changes Subsequent to Approval ............ 2-24
Resumes .......................................................................................... 3-2(A)(5)
Sale or Acquisition of Mortgagee ....................................................... 6-18
Sanctions Letter ........................................................................... 3-2(A)(14)
Senior Officer, Change of ..................................................................... 6-11
Servicing, Permission for Supervised Loan Correspondent to Service .......... 6-6
Shareholders Change in ....................................................................... 6-13
Signatory Authority ............................................................................ 2-9(E)
Single Family Homeownership Centers ................................................ 7-13
Sponsor
      Cover Letter ................................................................................ 3-2(A)(1)
      Registration ...................................................................................... 5-17
      Termination of Sponsorship ............................................................. 6-5
Staff
      Control and Supervision ................................................................ 2-9(D)
      Staffing Requirements ....................................................................... 2-12
Starter Kit ......................................................................................... 3-12(G)
State Approval of "dba" .................................................................. 3-2(A)(8)
State Licensing Requirements ................................................................. 2-3
Streamline Refinance, Lending Area .................................................. 2-19(D)
Supervised Entity, Conversion to Nonsupervised Entity ........................ 6-16(C)
Supervised Loan Correspondent
      Additional Approval Requirements ................................................... 2-28
      Conversion to Nonsupervised Entity .......................................... 6-16(C)
      Conversion to Supervised Mortgagee ......................................... 6-16(B)
Supervised Mortgagee

Additional Approval Requirements ................................................. 2-26
Conversion to Nonsupervised Entity ..................................... 6-16(C)
Conversion to Supervised Loan Correspondent ........................... 6-16(A)
Termination of Supervision.................................................. 6-19
Termination
Errors and Omissions Coverage............................................ 6-20
FHA Approval............................................................... 4-9
FHA Mortgagee Approval................................................... 4-9
Fidelity Bond ............................................................. 6-20
Loan Correspondent-Sponsor Agreement................................. 6-5
Principal-Authorized Agent Relationship ................................. 6-4
Supervision of a Supervised Mortgagee ................................. 6-19
Voluntary Termination ................................................... 6-25
Voluntary Withdrawal of FHA Approval ..................................... 6-25
W-2 Compensation, Employees............................................. 2-9(A)