Alan F. Cohen (State Bar No. 194075)
**LAW OFFICES OF ALAN F. COHEN**
101 Montgomery Street, Suite 2050
San Francisco, CA 94104
415.984.1943 (tel.)
415.984.1953 (fax)
cohenlaw@mindspring.com

Angela M. Xavier (State Bar No. 165152)
Attorney At Law
900 Cherry Avenue, Suite 300
San Bruno, CA 94066
Telephone: (650) 355-0414
Facsimile: (650) 355-0842

Attorneys for Plaintiffs James W. Bowman, Jr. and
Pacific Real Estate Management Company, Inc.

**UNITED STATES DISTRICT COURT**

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES W. BOWMAN, JR. and PACIFIC REAL ESTATE MANAGEMENT COMPANY, INC., a Washington Corporation<br><br>Plaintiffs,<br><br>v.<br><br>CMG MORTGAGE, INC., a California Corporation; CMG MORTGAGE, INC., d/b/a PACIFIC GUARANTEE MORTGAGE, CMG MORTGAGE SERVICES, INC., a California corporation; CMG MORTGAGE SERVICES, INC., d/b/a PACIFIC GUARANTEE MORTGAGE,<br><br>Defendants. | Case No.: C-07-3140-SI<br><br>**NOTICE OF MOTION AND PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ALAN F. COHEN**<br><br>Date: June 6, 2008<br>Time:<br>Dept.: Courtroom 10<br>Hon. Susan Illston<br><br>Trial Date: August 25, 2008 |

TO ALL INTERESTED PARTIES AND TO THEIR ATTORNEYS OF RECORD:

///

1

**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

PLEASE TAKE NOTICE that on June 6, 2008 at _____ or as soon thereafter as counsel may be heard by the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, in Courtroom 10, the Honorable Susan Illston presiding, Plaintiffs James W. Bowman, Jr. and Pacific Real Estate Mortgage Company, Inc. ("PREMCO") will and hereby do move the Court for leave to file a Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 15(a).

Leave to amend the complaint is necessary to reach a full and fair resolution of the parties' disputes: it brings the pleadings into conformity with the parties' current understanding of the facts and evidence; it refines the legal description of the parties' rights and obligations arising out of the facts and circumstances alleged in the initial pleadings; it adds two defendants whose presence in the action is necessary for proper resolution of Plaintiffs' claims; and it allows Plaintiffs to seek remedies for harms relating back to the original complaint but concealed by Defendants and only recently revealed in the course of discovery.

Under the "extreme liberality" granted requests for leave to the amend the pleadings, the Federal Rules require that "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *Eminence Capital, LLC v. Aspeon, Inc.* (9th Cir. 2003) 316 F.3d 1048, 1051. There are no grounds for denying this motion. Justice requires that Plaintiffs must be allowed to recover all damages caused by Defendants, and Defendants cannot show that they would unduly prejudiced by the amendments, or that Plaintiffs are acting in bad faith or have been dilatory.

This motion is based on this Notice of Motion and Motion and the accompanying Memorandum of Points and Authorities, the supporting Declaration of Alan F. Cohen, the proposed Second Amended Complaint attached hereto, the pleadings and papers on file herein and upon such other matters as may be presented to the Court at the time of the hearing.

LAW OFFICES OF ALAN F. COHEN

Dated: May 19, 2008                By  /s/ Alan Cohen
                                       Alan F. Cohen
                                       Attorneys for Plaintiffs

2

**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      Introduction and Statement of Facts**

Plaintiff James Bowman was employed in Defendants' residential mortgage brokerage business as the Branch Manager of two retail mortgage branches in Washington State.  The terms and conditions of his employment were controlled by two form contracts drafted by Defendants, a Branch Management and Employment Agreement and a separate Facilities Agreement.  These agreements established a relationship known in the industry as a "net branch" arrangement, in which the Branch Manager was compensated by the net income earned and derived from the branch after operating expenses were counted against revenues.  Just what constituted income "earned and derived from the branch" and "expenses" under these agreements are contested issues.

Such net branch arrangements are disfavored by the Department of Housing and Urban Development because the net branches are often less a true branch of the mortgage broker than an independent operation operating under the licensed broker's name.  Among other things, HUD rules prohibit brokers from requiring branch managers to personally obligate themselves on the brokers' debts, or to enter into contracts in their own names rather than in the name of the broker.  Defendants' net branch arrangement violated these rules and similarly violated unwaivable statutory employment rights; where it suited Defendants' purposes they treated Mr. Bowman like an employee, but where it offered an advantage, Defendants treated him and his branch as an independent contractor.

For example, Defendants required Mr. Bowman to lease the branch offices through a separate corporation he owned, PREMCO, and required him to front many of the operating expenses of the branch.  They also required him to indemnify them against losses such as costs related to later foreclosures on loans originated by his branches. Defendants also required Mr. Bowman to pay "security deposits" and maintain "Reserves" that Defendants claim can be applied to pay off branch expenses, or any other loss they can pin to Mr. Bowman for that matter.

All of these practices are unlawful; the "Reserve" requirement, for example, is no more than an attempt to extract a cash bond from an employee, which is forbidden by the Cash Bond Law, Cal. Labor Code § 400 *et seq*. An employer may not make its employees an insurer of the employer's business losses. *See, e.g., Hudgins v. Neiman Marcus Group, Inc.* (1995) 34 Cal.App.4th 1109, 1118-1124.[1]

Defendants terminated Mr. Bowman, effective January 31, 2007, when he refused to sign an even more onerous set of agreements. Defendants then refused to pay Mr. Bowman all wages he was owed on his last day of employment and refused to return his Reserves and security deposits to him. This suit followed.

## II. Relevant Procedural History

Mr. Bowman's original complaint alleged breach of contract, Labor Code § 203 waiting-time penalties, statutory causes of action for non-payment of wages under the Labor Code, conversion, and breach of the implied covenant of good faith and fair dealing. Sued were two CMG entities, CMG Mortgage, Inc. and CMG Mortgage Services, Inc., under their own names and under fictitious business names. The proposed Second Amended Complaint joins two new defendants, CMG's owner and president Christopher M. George (he is the C.M.G. in CMG), and CMG Financial Services, Inc., which discovery has revealed to be the holding company through which Mr. George owns the other CMG companies. It also alleges the following new causes of action, all arising out of the events underlying the original complaint: intentional fraud, fraud by concealment, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, failure to reimburse expenses (Labor Code § 2802), wrongful termination in violation of public policy, and unfair competition (Bus. & Prof. Code § 17200).

The parties originally held off on discovery pending an initial shot at mediation, which unfortunately failed to resolve the matter. The first deposition in the case by either party therefore was Plaintiff's deposition of Defendants' CFO, Paul Chevez, on March 18, 2008.

---

[1] California law applies because the agreements Mr. Bowman signed all contain a California choice of law provision. It is worth noting, however, that Defendants' employment agreements are equally unlawful under Washington law. *See, e.g.,* WAC 296-126-028 (Wage deductions during on-going employment); WAC 296-126-025 (Deductions from final wages).

**A.     The New Causes of Action**

Mr. Chevez testified to the remarkable fact that Defendants had never segregated Mr. Bowman's Reserves or security deposits (or those of any other Branch Manager) into their own accounts but had commingled those funds with CMG's operating funds. He also testified that these funds were funneled in and out of accounts used to fund mortgages for CMG. In other words, unbeknownst to Mr. Bowman, Defendants were using his entrusted money to fund their business. This is a breach of Defendants' fiduciary duties, as the Labor Code makes it clear that any funds received from an employee must be held in trust, with all the obligations to protect, segregate, make productive, and not misappropriate the trust corpus that entails. Labor Code § 405. Defendants' actions are also a crime. *Id.*[2]

The most important of the proposed Second Amended Complaint's new allegations arise directly out of these very recent revelations. Without exception, all of the new allegations stem from the events alleged within Mr. Bowman's original complaint and therefore relate back to the original filing. The earlier complaints had alleged the failure to return Mr. Bowman's Reserves but did not allege claims that the Reserves had been misused, or that Defendants had breached a fiduciary duty, because Plaintiffs were not previously aware of these facts. Similarly, while Plaintiffs believed Defendants were not entitled to the Reserves, they were unaware that Defendants were fraudulently concealing a forbidden purpose in obtaining and exploiting the Reserves. There can be no contesting the fact Plaintiffs have acted in good faith and have not delayed in introducing these new allegations.

Because Defendants failed to protect Mr. Bowman's funds and, in fact, misused them for their own ends, he is entitled to a wide range of damages and remedies beyond those requested in the existing pleadings. These include not only recovery of the wrongly withheld money but all

---

[2] Labor Code § 405 provides: "Any property put up by any employee or applicant as a bond shall not be used for any purpose other than liquidating accounts between the employer and employee or for return to the employee or applicant and shall be held in trust for this purpose and not mingled with the property of the employer. No contract between the employer and employee or applicant shall abrogate the provisions of this section. Any employer or prospective employer, or agent or officer thereof, who misappropriates any such property, mingles it with his own, or uses it for any other purpose than that herein set forth is guilty of theft and shall be punished in accordance with the provisions of the Penal Code relating to theft."

the additional remedies available to a wronged beneficiary, such as an amount equal to the value lost by failure to invest and properly protect the entrusted funds, amounts equal to the profit Defendants realized through the misuse of these funds, and a constructive trust over the resulting proceeds as necessary. It may well be that Mr. Bowman will prove to be an equitable owner of the CMG corporations by virtue of having been forced to invest funds into the business.

The remaining new causes of action similarly arise directly out of the original allegations of the complaint. For example, the cause of action under Labor Code § 2802 for failure to reimburse expenses relates back to the allegations of unpaid expenses and withheld security deposits and Reserves that have been at issue since this lawsuit was filed. The claim for wrongful termination in violation of public policy likewise arises out of CMG's termination of Mr. Bowman's Branch Management Agreement alleged in paragraph 16 of the First Amended Complaint.

**B.     The New Defendants**

There are two new defendants named in the SAC: CMG Financial Services, Inc., the apparent parent company of the existing Defendants, and Christopher George. For whatever reason, Defendants failed to alert either the Court or the Plaintiffs to the existence of the parent entity when they filed their Certification of Interested Parties with the Court on September 11, 2007. The SAC addresses this failure. As to Mr. George, he was not sued before out of an abundance of caution, as Plaintiffs wanted to be absolutely certain that he was an appropriate and necessary party to the case. That is now abundantly clear. Mr. George not only misrepresented his reasons for withholding Reserves from Mr. Bowman's revenues (telling the branch managers that he was required to do so by HUD), he also concealed the fact that he was misappropriating the reserves to further his own personal as well as corporate interests. He has committed fraud and has either breached a fiduciary duty himself or has aided and abetted the breach of a fiduciary duty for his own personal gain. He is personally liable to Mr. Bowman (and potentially to all other net branch managers) in the full measure of a trustee who has violated his trust.

**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

### III. Legal Discussion

**A.    The policy that leave to amend shall be freely given is applied with "extreme liberality"**

Modern rules of pleading expressly provide that a plaintiff must be allowed to amend his or her pleadings at any point in the proceedings to allow a full and fair resolution of an existing action. This flexibility in matters of pleading is ingrained in the federal rules: Fed. R. Civ. Pro. 15(a) states that "the court should freely give leave [to amend] when justice so requires." This policy is applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.,* (9th Cir. 2003) 316 F.3d 1048, 1051. "When a suit is filed . . . , the defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be, and that the form of the action or the relief prayed or the law relied on will not be confined to their first statement. *Martell v. Trilogy Ltd.* (9th Cir. 1989), 872 F.2d 322, 326.

As the Supreme Court has held, Rule 15 provides the parties with flexibility in presenting their claims and defenses. It assures that cases will be heard on their merits and avoids injustices which sometimes resulted from strict adherence to earlier technical pleading requirements. *Foman v. Davis,* 371 U.S. 178, 182 (1962).

Because Plaintiffs only recently discovered the evidence of CMG's and Mr. George's concealment, fraud, and breaches of fiduciary duties, and because the facts underlying the new allegations of the complaint arise out of the same events alleged in the initial complaint, these causes of action relate back to Plaintiff's initial complaint. *Martell v. Trilogy Ltd.*, s*upra*. Plaintiffs had no way of discovering the evidence of this further misfeasance by Defendants prior to Mr. Chevez's deposition in late March.

**B.    Amendment to add additional defendants promotes fairness**

Joinder of the two new defendants should come as no surprise. Mr. George was named as an interested party in Defendants' Certification of Interested Parties; CMG Financial Services, Inc. unaccountably was not, but also should have been identified under the rules. Given Defendants' failure to mention the parent company in the Certification required by Northern

District Local Rule 3-16, they are estopped from claiming any prejudice (not that any exists) by joinder now.

The claims against both new Defendants arise out of the same series of occurrences and transactions giving rise to the claims against the existing Defendants. Testimony to date reveals that Mr. George, the president and sole owner of the CMG companies, made the ultimate decision on virtually every occurrence at issue since the beginning of this case. Testimony has also recently revealed that Mr. George personally benefited at Plaintiffs' expense in ways that were all too clear to him but previously unknown to Plaintiffs. There is no basis for denying amendment to add the new Defendants to this action. None of the Defendants, old or new, can claim surprise or lack of notice of any aspect of this case.

### C. Plaintiffs have not been dilatory and no undue prejudice would result from amending the complaint

Defendants may argue that they would be unduly prejudiced by allowing leave to amend, but they cannot make a sufficient showing of *undue* prejudice as to outweigh Plaintiffs' right to seek a full resolution of this action on its merits. *Shipner v. Eastern Air Lines, Inc.*, 868 F.2d 401, 406–407 (11th Cir. 1989) (burden is on party opposing the motion to show that justice requires denial). Under these facts, amendment is proper and required by Rule 15. Indeed, Defendants themselves are responsible for Plaintiffs' inability to add these allegations and defendants to this action earlier. Had Defendants not concealed the facts, Plaintiffs potentially might have brought these claims in a previous iteration of their complaint. Defendants are still concealing evidence, as witnessed by their continual pattern of obstructionism in discovery (Plaintiffs have been forced to bring one motion to compel discovery to date, which is pending, and expect to file at least one more shortly). Plaintiffs will respond to any argument of purported prejudice raised by Defendants in their reply brief, if necessary.

LAW OFFICES OF ALAN F. COHEN

Dated: May 19, 2008                    By  /s/ Alan Cohen
                                           Alan F. Cohen
                                           Attorneys for Plaintiffs

## DECLARATION OF ALAN F. COHEN

1. I am one of the attorneys of record for James W. Bowman, Jr. and Pacific Real Estate Mortgage Company, Inc. ("PREMCO"), Plaintiffs in this action. I have personal knowledge of the facts below, and could and would testify competently hereto if called upon to do so.

2. Attached as Exhibit A is the Second Amended Complaint ("SAC") that is the subject of this motion.

3. Before bringing this motion I asked Defendants to stipulate to the filing of Plaintiff's Second Amended Complaint. I sent a draft of the Second Amended Complaint to Defendants' counsel, Joshua Rosenthal of the firm of Medlin & Hargrave. Despite the fact that Defendants have voiced an intent to amend *their* pleadings to bring a cross-complaint for the first time in this action, they have unaccountably refused to stipulate to filing the SAC.

4. The parties originally held off on discovery pending an initial shot at mediation, which unfortunately failed to resolve the matter. The first deposition in the case by either party was Plaintiff's deposition of Defendants' CFO, Paul Chevez, on March 18, 2008.

5. Mr. Chevez testified that Defendants had never segregated Mr. Bowman's Reserves or security deposits (or those of any other Branch Manager) into their own accounts but had commingled those funds into CMG's operating funds. He also testified that these funds were funneled in and out of accounts used to fund mortgages for CMG. In other words, unbeknownst to Mr. Bowman, Defendants were using his entrusted money to fund their business.

6. Plaintiffs had no previous means of knowing the facts revealed for the first time by Mr. Chevez in his March 18 deposition.

///

///

7. Plaintiffs have not delayed this filing and are bringing this motion for leave to amend in good faith.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 19th day of May, 2008, at San Francisco, California.

                          LAW OFFICES OF ALAN F. COHEN

                          By _____
                              Alan F. Cohen
                              Attorney for Plaintiffs

**MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**