David R. Medlin     (SBN 77417)
G. Bradley Hargrave   (SBN 173911)
Joshua A. Rosenthal   (SBN 190284)
MEDLIN & HARGRAVE
A Professional Corporation
One Kaiser Plaza, Suite 1305
Oakland, CA  94612
Telephone:   (510) 832-2900
Facsimile:   (510) 832-2945
E-mail:   *jrosenthal@mhlawcorp.com*

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| James W. Bowman, Jr. and Pacific Real Estate Management Company, Inc., a Washington Corporation, <br><br> Plaintiffs, <br> vs. <br><br> CMG Mortgage Inc., a California Corporation; CMG Mortgage, Inc., d/b/a Pacific Guarantee Mortgage, CMG Mortgage Services, Inc., a California Corporation, CMG Mortgage Services, Inc. d/b/a Pacific Guarantee Mortgage, <br><br> Defendants. | Case No.: C 07 3140 SI <br><br> NOTICE OF MOTION, MOTION AND SUPPORTING MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR LEAVE TO FILE COUNTER-CLAIM AND AMEND ANSWER <br><br> Date:  June 6, 2008 <br> Time:  9:00 a.m. <br> Dept:  Courtroom 10 <br> Judge: Honorable Susan Illston <br><br> File date: June 14, 2007 <br> Trial date: August 25, 2008 |

## I.   NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on June 6, 2008, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 10 of the above-entitled court, attorneys for Defendants CMG Mortgage Inc. will and hereby do move this court to grant Defendants leave to file a counter-claim pursuant to Federal Rule of Civil Procedure 13 (Exhibit H) and amend their answer pursuant to Federal Rule of Civil Procedure 15(a) (Exhibit I).  Should Plaintiffs' motion for leave to amend their first amended complaint be granted, CMG will not need leave to file an amended answer as it will have to file a new answer to the amended complaint anyway.  However, if Plaintiffs' motion for leave to amend is not granted, CMG is seeking leave to amend its answer to clarify its affirmative

1

defenses in light of the information it has gathered in the discovery process. CMG requests this relief under FRCP 15(a).

This Motion to Compel is based on this Notice, the Memorandum of Points and Authorities filed concurrently herewith, the declaration of Joshua A. Rosenthal, the pleadings on file herein and on such oral and documentary evidence that may be presented at the hearing on this matter.

## II.     STATEMENT OF ISSUES PRESENTED

Plaintiff Jim Bowman ("Bowman") and his company, Plaintiff Pacific Real Estate Management Co., Inc., ("PREMCO") (collectively referred to as "Plaintiffs") sued CMG for an alleged failure to pay wages and for money allegedly due under contracts between the parties. Bowman was the branch manager for two CMG branch offices in Washington state. Bowman's company, PREMCO, had a contract with CMG whereby it leased office space and facilities to CMG, in connection with the operations of the two branch offices.

Per the contracts at issue, CMG notified Plaintiffs of termination of the two branches in December of 2006. The termination was effective at the close of business on January 31, 2007. Pursuant to Bowman's employment agreement, any loan <u>started</u> prior to 5 p.m., on the day of termination, was to have been closed by CMG after termination, with all income derived therefrom belonging to CMG. (See Exhibit A, para. 20). Loans which are in process at the time of a loan agent's termination are commonly referred to in the industry as "pipeline" loans.

In December of 2006 and January of 2007, the entire loan process, from initial in-take to funding, was taking about 45 days, on average. At this same time Plaintiffs' branches had been closing, on average, about 30 loans per month, i.e., about 1 loan each day. Obviously in order to continuously close 1 loan every day, this necessarily means that, on average, the branches were also starting a new loan almost every day. These loans at various stages, in process, are the pipeline loans.

Because Bowman reported there were no pipeline loans at termination, CMG propounded an inspection demand to obtain information about Bowman's loan production, i.e., to learn about the ultimate disposition of pipeline loans as to which CMG would clearly be owed money. (Exhibit B).

2

The requested documents, if produced, would demonstrate when each loan was started, whether it was transferred to another broker, when it closed and how much money was earned on it. Plaintiffs' response was that all responsive documents had been returned to CMG. (Exhibit C, page 7). In other words, once again, Plaintiffs were contending that there were zero loans in process at termination. For this to be true it would mean that not one loan had been started in the 45 or so days immediately preceding termination, and at the same time, that every single loan in process had closed. This would truly be an incredible set of circumstances, entirely unique in the industry, and certainly unlike CMG's experiences with scores of branch offices throughout the country.

Since Plaintiffs refused to honor their discovery obligation, CMG had no choice but to select 9 title companies which Plaintiffs had done business with in the past (CMG knew this information based on checks it had received from previous loans closed by Plaintiffs) and issued subpoenas seeking checks paid by those title companies to Bowman or PREMCO, as well as the corresponding closing statements for any such checks. This was an expensive shot in the dark, because there was no guarantee that these particular title companies had worked on any relevant transactions in February or March of 2007. Additionally, CMG was forced to serve a subpoena to obtain the records from Bowman's current employer.

CMG served the subpoenas and received relevant responses from two of the title companies. (Exhibit D). Specifically, CMG learned that, contrary to Plaintiffs' now demonstrably false assertion, in truth and in fact, at least two loans were closed by Bowman in February, 2007 and one in early March, 2007. Obviously, given an average turn around time of 45 days, loans closed in early March, but most certainly loans closed in February, had to have been started before January 31, 2007. CMG's suspicion that the discovery response provided by Plaintiffs was false and misleading was thus confirmed. However, CMG did not receive a loan application or any other document that indicated when the loan started. This just is much stronger evidence that Bowman had started loans prior to January 31, 2008, because it is very unlikely that these loans were completed in less than 45 days.

CMG also subpoenaed this same information from Bowman's current employer, Sierra

3

1  Pacific Mortgage.  Sierra Pacific Mortgage first refused to comply because it claimed the subpoena
2  was not in technical compliance with Rule 45.  CMG disagreed, but in order to appease Sierra
3  Pacific Mortgage, and to expedite compliance, CMG re-served the subpoena. (Exhibit E).  In
4  response,  Sierra Pacific Mortgage provided only a summary of the dates loans were closed by
5  Bowman and the amounts due to him. (Exhibit F).  However, Sierra Pacific refused to provide the
6  necessary documents in the loan file to substantiate the information and then served a lengthy
7  objection refusing otherwise to comply with the subpoena at all.  (Exhibit G).  CMG had to file a
8  motion to compel compliance with the subpoena.  After filing of the motion, CMG and Sierra
9  Pacific came to an agreement on or about May 14, 2008, regarding production of the documents and
10 expect the documents by the end of May, 2008, heavily redacted.  As of the filing of this motion,
11 CMG has not yet received the documents that were sought in the subpoena.  CMG did receive a
12 document that indicated that between 15-20 loans closed within 45 days of January 31, 2007.
13 However, CMG still has not received any documents indicating when the loans were started.
14        At the first session of James Bowman's deposition on or about April 30, 2008, James
15 Bowman first admitted to the fact that the two branches he operated for CMG started loans prior to
16 the termination date but did not close with CMG. (Exhibit J, 292:10-293:15).  This was the first
17 time that CMG had substantiated its suspicion that Bowman had misappropriated its loan files and
18 customer information.
19        CMG suspected that Bowman misappropriated its loan files at the time it filed its answer, but
20 could not substantiate the suspicion.  Thus, CMG made an affirmative defense referring to its
21 suspicion that Bowman had misappropriated these files. (Defendants' Answer to First Amended
22 Complaint, Seventh Affirmative Defense).   Despite Bowman's false discovery responses, it took
23 over 5 months to confirm CMG's suspicions.  However, immediately thereafter CMG filed this
24 motion.
25        CMG asked Plaintiffs to stipulate to the filing of this counter-claim.  However, they refused.
26 Plaintiffs have also asked CMG to stipulate to the filing of a second amended complaint and
27 Defendants have refused that request.  However, this is not just Defendants being stubborn in
28
                                                       4

refusing to stipulate to an amendment of the complaint when they wants to file a counter-claim. As will be discussed at greater length in Defendants' opposition to Plaintiff's motion for leave to amend, Plaintiffs' cross-complaint seeks to change the entire litigation landscape 3 months before the trial date. Plaintiffs' amended complaint, if allowed, adds new defendants and will require at least a 9 month trial continuance to allow for more discovery, FRCP 12(b)(6) motions as well as summary adjudication motions. CMG's counter-claim is just a clarification of an affirmative defense that it had alleged at the time it filed its answer. There is no need for any further discovery on the issue as it had been a matter fully discovered and addressed during the discovery process. Thus, CMG's motion should be granted as the proposed counter-claim is just a clarification of an affirmative defense already plead and it will not require moving the trial date. In contrast, Plaintiffs' proposed amended complaint adds new parties, including CMG's president in his individual capacity, is based on information he had from the outset of the litigation, adds new facts and legal theories and will require a continuance of the trial date. Such a continuance at this late date will severely prejudice CMG and cost it significantly more in legal fees when this amended could have been made months ago.

### III.   ARGUMENT

#### A.   FRCP 13 Allows For CMG To File This Counter Claim/Cross-Complaint.

FRCP 13 allows for the filing of the proposed claim. The claim is a compulsory counter claim in that it arose out of the same transaction or occurrence as the matters alleged in the complaint. At the time CMG filed its answer it suspected that Bowman might have misappropriated the loan files, as alleged in the cross-claim. However, it could not confirm that information at the time it filed the answer. To protect itself, it alleged an affirmative defense that it was informed and believed that Bowman might have misappropriated the files because it was very suspicious that Bowman had been closing nearly 30 loans a month in the months prior to termination and then did not close one loan with CMG after his termination. CMG did not have affirmative proof of Bowman's misappropriation until he admitted it in his deposition on April 30, 2008. (Exhibit J, 292:10-293:15). Thus, this is a claim that did not mature until after the filing of the answer and is

5

1  permissible pursuant to FRCP 13(e).

2  As stated above, it was Bowman's attempt to conceal his acts that caused the delay in
3  discovering this misappropriation. He was asked in an inspection demand served in December of
4  2007, to provide all loan files started prior to January 31, 2007, and he stated that he already
5  returned all of them to CMG, which was not true. (Exhibit C, page 7). CMG had to subpoena 9 title
6  companies and Bowman's current employer to prove that wasn't true. CMG still does not have all
7  of the information it needs regarding this claim, in large part because Bowman refuses to produce
8  the documents. Such refusal is currently the subject of a motion to compel.

9  The claim that is being made in the proposed counter-claim is that Bowman breached his
10 contract after he was terminated by not closing loans with CMG and misappropriating CMG's
11 customer information and loan files. This is related to the contracts at issue in the complaint, will
12 act as an offset of the damages claimed by Plaintiffs in the complaint, to the extent there are any, and
13 could act as an unclean hands defense. Thus, it is part of the same case and controversy as the
14 underlying complaint.

15 Additionally, the court has the power to convert the seventh affirmative defense, which was a
16 recitation of CMG's suspicion that Bowman misappropriated loan files, into a counter claim. FRCP
17 8(c). Finally, should the court not find this claim to be compulsory, the court's has supplemental
18 jurisdiction over counterclaims that are not compulsory but sufficiently related to plaintiffs' claims
19 that they form part of the same constitutional case or controversy. HB Gen. Corp. v. Manchester
20 Partners, L.P. (3rd Cir. 1996) 95 F.3d 1185, 1198.

21 As stated above, since this was already an affirmative defense and CMG has been conducting
22 discovery on the issue since December, 2007, it is not anything new to Plaintiffs. It is certainly not
23 an area that they haven't had an opportunity to discover. Additionally, it is not an area that they
24 need to discover because they possess all of the documents necessary to defend the counter-claim.
25 Bowman was the one that started the loans prior to January 31, 2007 and closed them elsewhere.
26 His only defense is that someone at CMG told him he could do that - a contention which is flatly
27 false (and parol evidence in contradiction of an integration clause in the BMA's). Thus, there is no
28

6

need to extend discovery or continue the trial date due to this proposed counter-claim.

**B.    FRCP 15(a) Allows Defendants to Amend Their Answer.**

If Plaintiffs' motion for leave to amend is granted, Defendants will not need leave to file an amended answer because they will have to answer the amended complaint. However, if leave to amend the first amended complaint is not granted, Defendants seek to amend their answer. Through the discovery process, Defendants have learned information that bolsters their existing affirmative defense. Thus, in an abundance of caution, Defendants want to make sure that the affirmative defenses are perfectly clear. FRCP 15(a) states that the court should freely give leave when justice requires.

At Plaintiff Bowman's deposition on April 30, 2008, Defendants discovered the nature of many of Plaintiffs' claims. Thus, Defendants would like to more clearly state their affirmative defense related to the allegation that Bowman misappropriated loan files and customers and would like to more clearly state the defense to Defendants' claims related to the one year limitation period provided for in the contracts at issue in this case. While Defendants are confident that these defenses exist and are stated in the existing answer, in an abundance of caution Defendants want to clarify and expand on their affirmative defenses, based on the information gained at the deposition.

For example, Defendants originally understood that Plaintiffs' claims were only for expenses and wages not paid at termination. At Bowman's deposition, it was confirmed that Plaintiffs are seeking damages going back almost four years prior to the filing of the complaint. The limitation period in the contract is a contractual limitation that limits the ability to recover damages, if any, incurred more than a year from bringing an action and doesn't need a specific affirmative defense. Thus, a separate affirmative defense is not legally necessary. However, Defendants would still like it alleged so there is no confusion. Defendants were not aware of the full extent of damages being sought until the first session of Bowman's deposition. (Exhibit J, 271:4-271:14). Thus, they need to amend the answer at this point. (See Exhibit I, Fifth Affirmative Defense, page 18-19)

Additionally, as discussed above, it was learned at Bowman's deposition that Bowman violated the Branch Management and Employment Agreements by not closing loans with CMG after

7

NOTICE OF MOTION, MOTION AND SUPPORTING MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO FOR LEAVE TO FILE A COUNTER-CLAIM AND AMENDED ANSWER C 07 3140 SI
M:\CMG\85-0706-02 Bowman\Motion\Motion to file x comp and amend answer\P's & A's1.wpd

1 termination. Thus, to the extent that Defendants do not have the opportunity to file their proposed
2 counter-claim, they would like to bolster their affirmative defense based on the new information
3 obtained at the deposition. (See Exhibit J, Seventh Affirmative Defense, pages 19-20). Finally,
4 Defendants seek to add a 13th Affirmative Defense related to the fact that a conversion claim will not
5 lie for violation of the Labor Code. (See Exhibit J, Thirteenth Affirmative Defense, pages 20-21)
6     A court has the power to permit Defendants to amend their answer to set forth a defense
7 omitted from the original answer. FRCP 15(a). Such amendments are freely permitted. <u>Williams v</u>
8 <u>Lampe</u> (7th Cir. 2005) 399 F.3d 867, 870. Federal policy strongly favors determination of cases on
9 their merits. Therefore, the role of pleadings is limited, and leave to amend is freely given.
10 <u>Formand v. Davis</u> (1962) 371 U.S. 178, 182. As stated, the existing answer encompasses the
11 affirmative defenses that Defendants seek to bolster. However, in an abundance of caution and in an
12 effort to make its defenses absolutely clear, Defendants seek to file the proposed amended answer.

13 **IV.   CONCLUSION**

14     CMG's motion for leave to amend to file a counter-claim should be granted. Due to Plaintiff
15 Bowman's refusal to comply with his discovery obligations and his untruthful answers in discovery
16 requests, CMG was not able to confirm the existence of this counter-claim until April 30, 2008.
17 Thus, this claim could not be filed until this point. Allowing this claim will not require any
18 additional discovery and will not require moving the trial date of August 25, 2008. In light of FRCP
19 13, Defendants respectfully request leave to file its counter-claim which is attached hereto as Exhibit
20 H.
21     CMG's motion to file an amended answer should also be granted. In light of the fact that
22 CMG learned of many of the facts that have caused this amendment at Bowman's deposition, it is
23 necessary to amend at this point to insure that all of Defendants' defenses are clearly alleged. In
24 light of the liberal pleading allowances of FRCP 15(a), Defendants respectfully request leave to file
25 its amended answer which is attached hereto as Exhibit I.

26

27 Date:  May 20, 2008                **MEDLIN& HARGRAVE**
                                      A PROFESSIONAL CORPORATION
28

1
2      /s/
       Joshua A. Rosenthal,
3      Attorneys for Defendants
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NOTICE OF MOTION, MOTION AND SUPPORTING MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF FRCP 12(b)(6) MOTION TO DISMISS C 07 3140 SI
M:\CMG\85-0706-02 Bowman\Motion\Motion to file x comp and amend answer\P's & A's1.wpd