David R. Medlin      (SBN 77417)
G. Bradley Hargrave   (SBN 173911)
Joshua A. Rosenthal   (SBN 190284)
MEDLIN & HARGRAVE
A Professional Corporation
One Kaiser Plaza, Suite 1305
Oakland, CA  94612
Telephone:    (510) 832-2900
Facsimile:    (510) 832-2945
E-mail:      jrosenthal@mhlawcorp.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| James W. Bowman, Jr. and Pacific Real Estate Management Company, Inc., a Washington Corporation, | Case No.: C 07 3140 SI |
| Plaintiffs, | DECLARATION OF JOSHUA A. ROSENTHAL IN SUPPORT OF MOTION FOR LEAVE TO FILE COUNTER-CLAIM AND AMEND ANSWER |
| vs. | |
| CMG Mortgage Inc., a California Corporation; CMG Mortgage, Inc., d/b/a Pacific Guarantee Mortgage, CMG Mortgage Services, Inc., a California Corporation, CMG Mortgage Services, Inc. d/b/a Pacific Guarantee Mortgage, | Date:    June 6, 2008<br>Time:    9:00 a.m.<br>Dept:    Courtroom 10<br>Judge:  Honorable Susan Illston |
| Defendants. | File date: June 14, 2007<br>Trial date: August 25, 2008 |

**DECLARATION OF JOSHUA A. ROSENTHAL**

I, Joshua A. Rosenthal, declare:

1.     I am an attorney at law duly licensed to practice before this court all courts of this state and an attorney with Medlin & Hargrave, a P.C.

2.     Attached hereto as Exhibit A is a true and correct copy of one of the Branch Management & Employment Agreements between CMG and James Bowman.

3.     Attached hereto as Exhibit B is a true and correct copy of the request for production of documents propounded by CMG on December 12, 2008.

4.     Attached hereto as Exhibit C is a true and correct copy of the response to the production of documents served by plaintiffs on January 17, 2008.

1

5.      Attached hereto as Exhibit D are true and correct copy of the documents received back from two title companies in response to subpoenas.

6.      Attached hereto as Exhibit E is a true and correct copy of the subpoena served on Sierra Pacific Mortgage on April 3, 2008.

7.      Attached hereto as Exhibit F is a true and correct copy of a document provided to me by Sierra Pacific Mortgage on April 2, 2008.  Sierra Pacific Mortgage's counsel Tony Eaton told me that this was a document that indicated the loans closed by Bowman's office and an indication of the dates he was paid commissions.

8.      Attached hereto as Exhibit G is a true and correct copy of the objection served by Sierra Pacific Mortgage's to CMG's subpoena.

9.      Attached hereto as Exhibit H is a true and correct copy of CMG Mortgage, Inc.'s proposed counter-claim against James Bowman.

10.      Attached hereto as Exhibit I is a true and correct copy of Defendants' proposed amended answer to the first amended complaint.

11.      Attached hereto as Exhibit J is a true and correct copy of selected portions of the deposition of James Bowman taken on April 30, 2008.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and if sworn as a witness, I could and would testify competently thereto.

Executed at Oakland, California, on May 20, 2008.


_____/s/_____
Joshua A. Rosenthal

DECLARATION OF JOSHUA A. ROSENTHAL
M:\CMG\85-0706-02 Bowman\Motion\Motion to file x comp and amend answer\Decl of JAR1.wpd

# EXHIBIT A

Case 3:07-cv-03140-SI    Document 55-2    Filed 05/20/2008    Page 4 of 126
MAR-27-2006 MON 12:41 PM Pacific Guarantee Mtg.    FAX NO. 5109707930    P. 01
Case 3:07-cv-0314    T    Document 9-3    Filed 08/22/2    7    Page 2 of 13

#455

## BRANCH MANAGEMENT AND EMPLOYMENT AGREEMENT

This Branch Management and Employment Agreement (hereinafter referred to as "Agreement") is entered into as of the Effective Date, as that term is defined herein, by and between CMG Mortgage, Inc., a California corporation doing business as Pacific Guarantee Mortgage (hereinafter referred to as "PGM"), and Jim Bowman (hereinafter referred to as "Branch Manager").

### RECITALS

WHEREAS PGM and Branch Manager desire to reduce to writing their understanding and agreement pursuant to which Branch Manager will assist PGM in the management, administration and supervision of activities of its staff and employees, and the activities of all unlicensed assistants and support personnel, at PGM's branch office located at 2505 South 320th Street, Suite 260 Federal Way, WA 98003 ("Branch Office"); and,

WHEREAS PGM and Branch Manager also desire to reduce to writing the terms and conditions of Branch Manager's employment with PGM;

In consideration of the covenants, agreements and representations contained herein, PGM and Branch Manager agree as follows:

1.    **PGM.** PGM represents that PGM is duly licensed by all applicable governmental authorities and is doing business as a mortgage broker under the name Pacific Guarantee Mortgage. Concurrently with the execution of this Agreement, PGM will obtain the necessary branch license for the Branch Office.

2.    **Employment at Will.** PGM employs Branch Manager and Branch Manager accepts employment with PGM as branch manager of PGM's Branch Office. Either PGM or Branch Manager may terminate this Agreement in accordance with the provisions of paragraph 19 herein, or with or without cause, at any time on thirty (30) days notice to the other pursuant to the notice provisions of paragraph 12 herein. The rights and duties set forth in this paragraph may not be modified in any way except pursuant to the terms of paragraph 21 (e) herein.

3.    **Licensed Status.** Branch Manager represents that he/she holds all such licenses as required by state and/or federal law to conduct mortgage brokerage activity at PGM's Branch Office, and that he/she has a minimum of three (3) years of full time experience in mortgage brokerage activity gained during the immediately preceding five (5) year period. Branch Manager further represents that while this Agreement is in effect he/she will maintain in good standing each and every such license.

4.    **Devotion to PGM's Business.** During the term of this Agreement, all of Branch Manager's time and attention dedicated to mortgage loan brokerage and/or origination, shall be devoted solely to the business of PGM at the Branch Office. During the term of this Agreement, Branch Manager shall not engage in any other business duties or pursuits whatsoever, or directly or indirectly render any services of a business, commercial or professional nature to any other person or organization, whether for compensation or otherwise, without the prior written consent

MAR-27-2006 MON 12:41 PM Pacific Guarantee Mrtg.   FAX NO. 5109707930   P. 02

Case 3:07-cv-03140-SI   Document 55-2   Filed 05/20/2008   Page 5 of 126

Case 3:07-cv-0314...   Document 9-3   Filed 08/22/2...7...   Page 3 of 13

of PGM. During the term of this Agreement, Branch Manager shall not, directly or indirectly, either as an employee, employer, consultant, agent, principal partner, stockholder, corporate officer, director, or in any other individual or representative capacity, engage or participate in any business that is in competition in any manner whatsoever with the business of PGM

   5.   **Duties of Branch Manager.** Branch Manager shall do and perform all services, acts, or things necessary or advisable to fulfill his/her duties as such, subject to the direction of PGM and to the policies established by it. Pursuant thereto, PGM and Branch Manager intend for Branch Manager to assist PGM in administering reasonable supervision over the activities of all licensed activity at Branch Office, and over the activities of unlicensed assistants and support personnel, assigned to PGM's Branch Office. "Reasonable supervision" includes, as appropriate, the establishment of policies, rules, procedures and systems to review, oversee, inspect and manage:

   a)   transactions requiring a license;

   b)   documents which may have a material effect upon the rights or obligations of a party to every such transaction;

   c)   filing, storage and maintenance of all documents created in connection with every such transaction;

   d)   the handling of trust funds, (Branch Manager agrees not to establish or use a trust account unless approved by PGM, in advance, and in writing);

   e)   advertising of any service for which a license is required, (Branch Manager agrees that all advertising material must be approved by PGM, in advance, and in writing);

   f)   familiarizing licensed employees, and unlicensed assistants and support personnel, with the requirements of federal and state laws relating to the prohibition of discrimination;

   g)   familiarizing licensed employees with the requirements of federal and state laws relating to disclosures to be given in connection with mortgage loan transactions;

   h)   regular and consistent reports of licensed activities of all employees;

   i)   ensuring that in every transaction Branch Manager, and every employee associate involved in each such transaction, honors all affirmative obligations owed to each client, as required by federal law, state law and/or ethical practices, including but not limited to: the duty of utmost *care, integrity, honesty and loyalty*; the duty to disclose all material loan terms or any other material facts that may affect the decision to borrow and to encumber real property; the duty to maintain *confidentiality*, except to the extent that information must be disclosed to a potential lender in order to permit the lender to make an informed and considered

Case 3:07-cv-03140-SI    Document 55-2    Filed 05/20/2008    Page 6 of 126

MAR-27-2006 MON 12:41 PM Pacific Guarantee Mrtg.    FAX NO. 51nq707930    P. 03

Case 3:07-cv-0314.    .I    Document 9-3    Filed 08/22/2.  7    Page 4 of 13

decision to extend credit; and the duty to recommend a *competitive* loan product in the right class of loans (e.g., "Λ", "A-", "B", "C", etc.) when considering the borrower's income and credit history, financial standing and net worth (including the capacity to repay the loan), personal and financial needs, the loan terms requested at the time of application, the type and location of the proposed real property security, the purpose for obtaining the loan, and any time limits the borrower has imposed to receive the loan in question;

j)    assist in ensuring that all independent contractors serving the Branch Office are properly licensed by any applicable state licensing authority in good standing throughout the duration of their employment (including such things as timely payment of annual licensing fees and assessments and compliance with continuing education requirements);

k)    assist in ensuring that Branch Office and its employees function in compliance with all applicable state and federal employment laws including, but not limited to the Federal Fair Labor Standards Act.

Additionally, subject to PGM policies and procedures, Branch Manager shall be responsible for the general management of the Branch Office, consistent with the intent of this Agreement and sound business practices, including but not limited to:

a)    recruiting of employees and support staff;

b)    creation, maintenance and monitoring of relationships with suppliers, vendors, lenders, real estate agents and other settlement service providers to ensure courtesy, efficient, legal and ethical conduct of business;

c)    accurate reporting to PGM, in such form and such manner as PGM may require, of all mortgage loan transactions and related financial information as necessary to carry out the terms and covenants of this Agreement;

d)    maintenance of any and all records and other data at the Branch Office for such periods and in such manner as state and/or federal law may require;

e)    locating, securing and arranging for the lease of Branch Facilities as necessary to conduct the business of the Branch Office;

f)    maintenance of all mortgage loan files originated by Branch Office (whether closed, cancelled, withdrawn or denied) on site, or as PGM may otherwise approve, in writing, for such period of time as required by state and/or federal law. All mortgage loan files are to be delivered to PGM upon termination of this Agreement; and,

g)    primary responsibility to ensure that all employees of Branch Office are covered under the scope of all applicable state licensing requirements for loan originators

Case 3:07-cv-03140-SI    Document 55-2    Filed 05/20/2008    Page 7 of 126

MAR-27-2006 MON 12:42 PM Pacific Guarantee Mrtg.    FAX NO. 5109707930    P. 04

Case 3:07-cv-0314-_I    Document 9-3    Filed 08/22/2  7    Page 5 of 13

and are duly licensed and in good standing throughout the duration of their employment (including such things as timely payment of annual licensing fees and assessments and compliance with continuing education requirements).

6.    **Duties of PGM.** PGM shall assume responsibility for all accounting and the disbursement of all funds for the operation of the Branch Office. PGM shall forward to Branch Manager a monthly statement of income and expenses of the Branch Office, determined in accordance with the provisions of paragraph 9 below. In addition, PGM shall have those other and further duties and responsibilities set forth on Schedule A attached hereto and incorporated herein. The parties understand and agree that said schedule is subject to amendment by PGM by notice given in accordance with the provisions of paragraph 11 below. Any such amendment shall become a part of this Agreement thirty (30) days after notice.

7.    **Compliance with Laws, Regulations and Policies.** PGM and Branch Manager each acknowledge that state and federal law impose certain obligations on PGM with regard to the supervision, employment and compensation of any person who acts on behalf of PGM in furtherance of licensed activity. PGM shall review and supervise the activities of Branch Manager as required by law, and as more particularly set forth above, Branch Manager shall assist PGM in carrying out its supervisory obligations. However, this Agreement shall not be construed as, and is not intended as, PGM's relinquishment of overall responsibility for the supervision of the acts of salesperson associates licensed to PGM. Branch Manager agrees to comply with all federal, state and local laws, rules, regulations, policies and procedures to which PGM and/or Branch Manager are subject as a result of engaging in mortgage brokerage activity, including without limitation, those of HUD and guidelines of Fannie Mae, Freddie Mac and other investors. Branch Manager agrees to provide to borrowers and potential borrowers such disclosures, in such form and in such manner as PGM, in its sole discretion, shall require from time to time. The parties understand and agree that changes in federal, state and/or local laws, rules, regulations, policies and procedures may necessitate, in PGM's sole discretion, future amendment of this Agreement in order to maintain full compliance. Accordingly, such amendments may be made by notice given in accordance with the provisions of paragraph 11 below. Any such amendment shall become a part of this Agreement thirty (30) days after notice.

8.    **Errors and Omissions Insurance.** PGM shall obtain and keep in place professional liability insurance in such amounts and subject to such deductibles, endorsements, exceptions and exclusions as PGM, in its sole discretion, shall deem appropriate. The proportionate costs of such insurance attributable to PGM's Branch Office shall be considered an expense of operations in the calculation of Net Profits, as that term is defined herein.

9.    **Compensation.** As compensation for the services to be rendered by Branch Manager hereunder, PGM shall pay Branch Manager one hundred percent (100%) of all Net Profits realized from the operation of the Branch Office. The term "Net Profits," as used herein, shall mean Net Income from operations after Expenses but before taxes, in conformity with mortgage industry accounting practices, all as determined according to sound accounting principles. Net Income shall be determined by deducting Expenses from Gross Income. The term "Gross Income" shall mean all income earned and derived from the Branch Office. The

MAR-27-2006 MON 12:42 PM Pacific Guarantee Mrtg.    FAX NO. 5108707930    P. 05
Case 3:07-cv-03140-SI    Document 55-2    Filed 05/20/2008    Page 8 of 126
Case 3:07-cv-0314. .I    Document 9-3    Filed 08/22/2 7    Page 6 of 13

term "Expenses" shall mean all operating expenses of the Branch Office, including those items of Expense identified elsewhere in this Agreement and including but not limited to the following:

a)    rent, copiers, office supplies, telephone service and utilities;

b)    commissions, salaries, payroll costs and expenses, and benefits of all employees and loan agents, including but not limited to commissions paid to Branch Manager in his/her capacity as a loan agent;

c)    all costs incurred by PGM in connection with the repurchase, by reason of fraud, of any loans originated by the Branch Office. Such costs may include, without limitation, disputes or settlements involving demands to repurchase loans;

d)    loss or costs, including reasonable attorneys' fees arising out of suits, actions, audits, foreclosures, or legal proceedings of any nature, arising out of the activities or operations of the Branch Office;

e)    all costs incurred by PGM in connection with Early Pay-offs or Early Payment Defaults, by reason of fraud, of any loans originated by the Branch Office;

f)    all costs (including up-front fees) to lock and/or extend locked loans; and,

g)    monthly shortages resulting from, but not limited to, non-collection of fees paid for credit reports, appraisals, etc.

Additionally, as set forth in Schedule B, which schedule is incorporated herein, there shall be other fees and expenses associated with Branch Office loan activity which shall be treated as Expenses. The parties understand and agree that Schedule B is subject to amendment by PGM by notice given in accordance with the provisions of paragraph 11 below. Any such amendment shall become a part of this Agreement thirty (30) days after notice.

Net Profits for any one month shall be paid to Branch Manager, or Branch Manager's designee, on the 30th day following the last day of that month. All such payments to Branch Manager shall be considered an Expense of the Branch Office.

10.    **No solicitation.** After termination of this Agreement, Branch Manager shall not solicit PGM's prospective or existing clients or customers based upon PGM-generated leads obtained during the term of this Agreement, nor may he/she solicit any client or customer with existing contractual obligations to PGM. Furthermore, after termination of this Agreement, Branch Manager shall not solicit Branch Office personnel in accordance with paragraph 21(v) of this Agreement.

Nothing contained in this paragraph is intended to preclude Branch Manager from purchasing and/or developing, at his/her own cost and expense, customer lists which shall be considered the separate property of Branch Manager and not subject to the provisions of this paragraph 10.

MAR-27-2006 MON 12:42 PM Pacific Guarantee Mrtg.    FAX NO. 5109707930    P. 06

Case 3:07-cv-0314  31    Document 9-3    Filed 08/22/2  07    Page 7 of 13

11.    Notices. Any notice required or permitted under this Agreement shall be in writing, delivered to the party at the address set forth for such party below, and shall be deemed effectively delivered upon (i) personal delivery, (ii) one (1) day after deposit for overnight delivery with Federal Express or a comparable national express courier, or (iii) two (2) days after deposit in the United States mail, by first-class mail, postage prepaid. Notices shall be delivered to the parties at the following addresses:

| If to PGM: | If to Branch Manager: |
|---|---|
| Christopher M. George | Jim Bowman |
| Pacific Guarantee Mortgage | Pacific Guarantee Mortgage |
| c/o CMG Mortgage Services, Inc. | 2505 South 320th Street, Suite 260 |
| 3160 Crow Canyon Road, Suite 350 | Federal Way, WA 98003 |
| San Ramon, CA 94583 | |

A party may designate another address for notice purposes upon written notice thereof pursuant to the provisions of this paragraph.

12.    Indemnity.

a) Branch Manager shall indemnify, defend, and hold PGM, its officers, directors, shareholders and affiliates, and their respective successors and assigns, harmless from and against any and all liability, claims, losses, costs, expenses, penalties, fines, forfeitures, judgments, or damages, including reasonable attorneys' fees and court costs, arising out of or in connection with any fraud or willful misconduct of Branch Manager.

b) PGM shall indemnify Branch Manager for all that Branch Manager loses in direct consequence of the discharge of his/her duties as such, or which result from his/her obedience to the directions of PGM, even though unlawful, unless Branch Manager, at the time of obeying such directions believed them to be unlawful. However, this paragraph shall not, in any respect, release or exempt Branch Manager from his/her duties under paragraph 7 of this Agreement, nor from his/her independent obligation(s) pursuant to his/her status as a licensed real estate broker/salesperson.

13.    Mandatory Negotiation, Mediation and Arbitration. The parties will attempt in good faith to resolve through negotiation any dispute, claim or controversy arising out of or relating to this Agreement. Either party may initiate negotiations by providing written notice in letter form to the other party, in accordance with the provisions of paragraph 11 above. Such notice shall set forth the subject of the dispute and the relief requested. The recipient of such notice will respond in writing within five days with a statement of its position on and recommended solution to the dispute. If the dispute is not resolved by this exchange of correspondence, the representatives of each party with full settlement authority will meet at a mutually agreeable time and place within ten days of the date of the initial notice in order to exchange relevant information and perspectives, and to attempt to resolve the dispute. If the

dispute is not resolved by these negotiations, the matter will be submitted to JAMS, or its successor, for mediation in accordance with the terms of this paragraph 13.

Either party may commence mediation by providing to JAMS and the other party a written request for mediation, pursuant to the provisions of paragraph 11 above. Such request shall set forth the subject of the dispute and the relief requested. The parties will cooperate with JAMS and with one another in selecting a mediator from JAMS' panel of neutrals, and in scheduling the mediation proceedings. The parties covenant that they will participate in the mediation in good faith, and that they will share equally in its costs. All offers, promises, conduct and statements, whether oral or written, made in the course of the mediation by any of the parties, their agents, employees, experts and attorneys, and by the mediator or any JAMS employees, are confidential, privileged, and inadmissible for any purpose, including impeachment, in any arbitration or other proceeding involving the parties, provided that evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its use in the mediation.

Either party may initiate arbitration in accordance with this paragraph 13 by filing a written demand for arbitration at any time following the initial mediation session or 45 days after the date of filing the written request for mediation, whichever occurs first. The mediation may continue after the commencement of arbitration if the parties so desire. Unless otherwise agreed by the parties, the mediator shall be disqualified from serving as arbitrator in the case. It is the intent of the parties to this Agreement that any and every dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, which can not be resolved by negotiation and/or mediation, be resolved by binding arbitration. This includes, but is not limited to the determination of the scope or applicability of this agreement to arbitrate. Arbitration shall be conducted in San Francisco, California, before a sole arbitrator, in accordance with the laws of the State of California for agreements made in and to be performed in California. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures. Judgment on the Award may be entered in any court having jurisdiction. The arbitrator shall, in the Award, allocate all of the costs of the arbitration and the mediation, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail.

The provisions of this paragraph 13 may be enforced by any court having jurisdiction, and the party seeking enforcement shall be entitled to an award of all costs, fees and expenses, including attorneys' fees, to be paid by the party against whom enforcement is ordered.

14.    **Proprietary Information.** All loan files, records, documents, lists, rate sheets, product guidelines, investor/secondary market information, databases, trade secrets (as defined in paragraph 21(q)), manuals (including policies and procedures), training manuals, forms, marketing materials, hardware and software obtained from PGM, and similar items relating to the business of PGM, (collectively "Proprietary Information") whether prepared by Branch Manager or otherwise, coming into the possession of the Branch Office, its personnel and/or Branch Manager during the term of this Agreement shall be, and remain, the exclusive property of PGM.

MAR-27-2008 MON 12:43 PM Pac fic Guarantee Mtg.    FAX NO. 510 707930    P. 08
Case 3:07-cv-03140-SI    Document 55-2    Filed 05/20/2008    Page 11 of 126

Case 3:07-cv-0314, 31    Document 9-3    Filed 08/22/2 7    Page 9 of 13

Nothing contained in this paragraph is intended to preclude Branch Manager from purchasing, at his/her own cost and expense, databases, marketing materials, hardware and/or software, which shall be considered the separate property of Branch Manager and not subject to the provisions of this paragraph 14.

15.    **Branch Facilities.** "Branch Facilities" shall include, but not be limited to office space, furnishing and business equipment. Branch Manager shall arrange for the execution by PGM of a month-to-month lease for appropriate Branch Facilities for a Fair Market Rent. "Fair Market Rent" shall mean a fixed monthly amount that does not vary with the volume or the value of mortgage loans originated by the Branch Office, and that is no more than the fair market rent paid by other similar businesses for comparable facilities in the geographic area in which the Branch Office is located.

16.    **Name.** The Branch Office shall conduct business under the name Pacific Guarantee Mortgage, or such other name as PGM shall approve in advance, in writing. Branch Manager acknowledges and agrees that the name Pacific Guarantee Mortgage, and any and all derivations thereof, including but not limited to PGM trade names, trademarks and/or logos used in the conduct of the business of the Branch Office, are proprietary and belong exclusively to PGM. Upon termination of this Agreement for any reason, Branch Manager shall cease to use, in any manner, the name Pacific Guarantee Mortgage, and all derivations thereof, together with all PGM trade names, trademarks and logos, and during the term of this Agreement, shall acquire no license, proprietary rights to, or interest in them, or in any derivations thereof.

17.    **Solicitation of Mortgage Loans in Other States.** Branch Manager shall limit solicitation of mortgage loan activity by Branch Manager and Branch Office personnel to the state in which the Branch Office is located, unless Branch Manager first receives the prior written approval of PGM. Such approval shall be subject to reasonable conditions, including but not limited to the requirement that PGM and all affected Branch Office personnel currently hold such licenses as necessary for the subject state and that Branch Manager and the affected personnel demonstrate a thorough familiarity with such state's laws and regulations related to loan solicitation and mortgage loan origination.

18.    **Authority to Contract.** Branch Manager shall have no authority to enter into any agreement in the name of PGM. Branch Manager agrees to indemnify and hold PGM harmless from and against any and all liability arising out of any agreement entered into without the prior written consent of PGM. This covenant of indemnity shall include all costs of defense, including reasonable attorney's fees, for any such claim asserted.

19.    **Events of Default/Termination.** This Agreement shall terminate upon any of the following events or for any of the following causes:

a)    Immediately following notice of a material breach of any covenant, condition, representation of contractual obligation of a party, given by the party that is or could be adversely affected thereby; provided said breach remains uncured for a period of ten (10) days following such written notice of said breach;

Case 3:07-cv-03140-SI    Document 55-2    Filed 05/20/2008    Page 12 of 126    P. 09
MAR-27-2006 MON 12:43 PM Pacific Guarantee Mtg.    FAX NO. 51??707930
Case 3:07-cv-0314(_ _I    Document 9-3    Filed 08/22/2(_ /    Page 10 of 13

b) Immediately in the event of insolvency, bankruptcy or receivership of either party; or,

c) Immediately in the event of Branch Manager's fraud or intentional breach of duty to a client.

Upon termination of this Agreement for any reason, Branch Manager shall promptly return to PGM all originals and copies of all Proprietary Information obtained by Branch Manager from PGM. Branch Manager acknowledges and agrees that all such materials are the sole and exclusive property of PGM, and agrees not to utilize such materials for any purpose other than as contemplated by this Agreement, or at all upon termination.

20.    **Status of Loans in Process at Termination.** Except in the case of termination for Branch Manager's fraud or intentional breach of duty to a client, and subject to any applicable law to the contrary, any mortgage loans which are in process or which have been originated by the Branch Office, up to and including any mortgage loans originated through 5:00 p.m., on the day of termination of this Agreement, shall be processed, submitted and closed by PGM. Branch Manager shall receive compensation related thereto in accordance with the terms of this Agreement, as if such loans had been closed prior to termination, provided that all loan files and other PGM property have been returned to PGM. All rights of Branch Manager to compensation under this Agreement shall immediately terminate in the event of termination of this Agreement by reason of Branch Manager's fraud or intentional breach of duty to a client.

21.    **Miscellaneous.**

a. **Effective Date.** The "Effective Date" of this Agreement shall be the date that it is signed by PGM.

b. **Assignment.** PGM shall have the right to assign its rights and duties under this Agreement to any party without the consent of Branch Manager. Any such assignee of PGM shall be an intended third-party beneficiary of the representations, warranties, covenants, agreements and remedies contained herein. Branch Manager shall have no right to assign his/her rights or duties under this Agreement without PGM's prior written consent, which may be withheld by PGM in its sole discretion.

c. **Choice of Law.** This Agreement shall be governed by and construed under the laws of the State of California, without regard to conflicts of laws principles.

d. **Integration.** This Agreement is the entire agreement between the parties regarding the subject matter and supersedes any prior oral or written agreement among them regarding the subject matter contained herein.

e. **Amendment.** Except as set forth herein, this Agreement may not be amended or modified orally and no provision of this Agreement may be waived or amended except in a writing which makes reference to this Agreement and which is signed by PGM.

**f. Severability.** If a court of competent jurisdiction finds any provision in this Agreement to be invalid, illegal, or otherwise unenforceable, that determination will not affect any other provision of this Agreement. The invalid provision will be severed from this Agreement and all remaining provisions will continue to be of full force and effect.

**g. Interpretation.** Any ambiguities in this Agreement will not be strictly construed against the drafter of the language concerned but will be resolved by applying the most reasonable interpretation under the circumstances giving full consideration to the intentions of the parties at the time of contracting. This Agreement will not be construed against any party by reason of its preparation.

**h. No Third Party Beneficiaries.** Except as expressly set forth in paragraph 21 (b), above, this Agreement has been made by, and is made solely for the benefit of Branch Manager and PGM, and PGM's successors and permitted assigns. Except as expressly set forth in paragraph 21 (b), above, nothing in this Agreement is intended to confer any rights or remedies under or because of this Agreement on any persons or entities other than the parties to it and their respective successors and permitted assigns. Nothing in this Agreement is intended to relieve or discharge the obligation or liability of any third person or entity to any party to this Agreement.

**i. Waiver.** No waiver of any provision of this Agreement or consent to any action shall constitute a waiver of any other provision of this Agreement or consent to any other action. No waiver or consent shall constitute a continuing waiver or consent, or commit a party to provide a future waiver.

**j. Further Assurances.** Branch Manager shall execute and deliver any and all additional papers, documents and other assurances and shall do any and all acts and things reasonably necessary in connection with his/her performance of his/her obligations hereunder to carry out the intent of this Agreement.

**k. Captions.** All captions and headings in this Agreement are for reference only and may not be used in the interpretation of this Agreement or any related document.

**l. Counterparts.** This Agreement may be executed in counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument. The parties agree that a signed copy of this Agreement transmitted by one party to the other by facsimile transmission shall be binding upon the sending party to the same extent as a signed original of this Agreement.

**m. Attorneys' Fees.** In the event that any action or arbitration is brought by either party to enforce the terms of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs.

**n. Venue.** PGM and Branch Manager agree that the proper venue for any legal action brought under this Agreement is either the County of Contra Costa, California or the United States District Court for the Northern District of California, as appropriate.

**o. Survival Upon Termination.** Branch Manager's representations, warranties, covenants and other obligations and agreements contained in this Agreement, including without limitation Branch Manager's indemnification obligations, shall survive any termination of this Agreement.

**p. Non-exclusive Remedies.** No remedy under this Agreement is exclusive of any other available remedy, but each remedy is cumulative and is in addition to other remedies given under this Agreement or existing in law or in equity.

**q. Confidentiality.** Each party understands, acknowledges and agrees that certain trade secrets and customer lists exist which are wholly owned and controlled by the other. These shall be referred to herein collectively as "trade secrets" and consist of information and materials that are valuable and not generally known by such party's competitors. All trade secrets, however maintained, shall be and remain the exclusive property of the originator thereof. Each party agrees not to disclose any of the other's trade secrets, directly or indirectly, or use them in any way, either during the term of this Agreement or at any time thereafter, except as required in the course of performance of this Agreement.

**r. Offset.** Amounts past due and owing by Branch Manager to PGM under this Agreement may, at PGM's option and in its sole discretion, be offset by PGM against any payments or other indebtedness then or thereafter owed by PGM to Branch Manager.

**s. Statute of Limitations.** Any action arising under this Agreement or because of its breach must be commenced within one year after the cause of action accrues.

**t. No Partnership or Joint Venture Intended.** PGM and Branch Manager intend that, to the maximum extent permissible by law, this Agreement shall not be construed as a partnership and/or joint venture.

**u. Regulatory Compliance.** PGM and Branch Manager recognize the importance of full compliance at all times with all state and federal laws, rules and regulations governing mortgage loan origination. Accordingly, notwithstanding anything to the contrary contained elsewhere herein, the parties recognize and agree that PGM retains the right to amend this Agreement as necessary, in its reasonable discretion, to ensure full compliance with all state and federal laws, rules and regulations. Any such amendment shall become a part of this Agreement thirty (30) days after notice thereof is given in accordance with paragraph 11 above.

**v. Anti-Poaching.** Branch Manager agrees not to solicit or in any way entice to leave, interview, hire or contract, either directly or indirectly, with any employees or independent contractors affiliated with PGM, or any of its affiliates, during the term of this Agreement, and for a period of two (2) years following termination of this Agreement.

**w. Jury Trial.** Pursuant to the provisions of paragraph 14 above, Branch Manager and PGM each agree to waive trial by jury in any action or proceeding arising out of this Agreement.

Page 11 of 12

Case 3:07-cv-03140-SI · Document 55-2 Filed 05/20/2008 Page 15 of 126 P. 12
MAR-27-2006 MON 12:43 PM Pacific Guarantee Mtg. FAX NO. 5109707930
Case 3:07-cv-03140 Document 9-3 Filed 08/22/20 Page 13 of 13

x. **Condition Precedent.** It is understood and agreed that the respective rights, duties and obligations of the parties hereto are expressly made subject to and conditioned upon the completion of the transaction by and between PGM and RBC, which transaction is expected to conclude on or about June 30, 2003. PGM will notify Jim Bowman once said transaction is concluded.

IN WITNESS WHEREOF, the undersigned have executed this Agreement at San Ramon, California.

Dated: _____

CMG Mortgage Services, Inc., doing business as Pacific Guarantee Mortgage

By: _____
Christopher M. George, President

Dated: 12/1/03

Branch Manager

By: _____
Jim Bowman

Page 12 of 12

.

# EXHIBIT B

1  David R. Medlin      (SBN 77417)
   G. Bradley Hargrave  (SBN 173911)
2  Joshua A. Rosenthal  (SBN 190284)
   MEDLIN & HARGRAVE
3  A Professional Corporation
   One Kaiser Plaza, Suite 1305
4  Oakland, CA 94612
   Telephone:   (510) 832-2900
5  Facsimile:   (510) 832-2945
   E-mail:      jrosenthal@mhlawcorp.com
6
   Attorneys for Defendants
7

8                     UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10  James W. Bowman, Jr. and Pacific Real Estate        Case No.: C 07 3140 SI
    Management Company, Inc., a Washington
11  Corporation,                                        REQUEST FOR PRODUCTION OF
                                                        DOCUMENTS UNDER RULE 34
12                          Plaintiffs,
                      vs.
13
    CMG Mortgage Inc., a California Corporation;
14  CMG Mortgage, Inc., d/b/a Pacific Guarantee
    Mortgage, CMG Mortgage Services, Inc., a
15  California Corporation, CMG Mortgage Services,
    Inc. d/b/a Pacific Guarantee Mortgage,
16
                            Defendants.
17  _____/

18          Defendants CMG Mortgage Inc., CMG Mortgage, Inc., d/b/a Pacific Guarantee Mortgage, CMG

19  Mortgage Services, Inc., CMG Mortgage Services, Inc. d/b/a Pacific Guarantee Mortgage requests

20  plaintiffs James W. Bowman, Jr. and Pacific Real Estate Management Company, Inc., a Washington

21  Corporation respond within 30 days to the following requests. The time and date for the inspection

22  shall be 10:00 a.m. on January 14, 2008. The place for the inspection shall be the law offices of Medlin

23  & Hargrave, a P.C., One Kaiser Plaza, Suite 1305, Oakland, California 94612.

24                                      **DEFINITIONS**

25          The terms "YOU" and "YOUR" shall mean and refer to the responding parties.

26          The term "VANCOUVER BRANCH" shall mean and refer to the Pacific Guarantee Mortgage

27  branch that was located at 500 West 8th Street, Suite 100, Vancouver, WA 98660.

28  ///

                                              1

1    The term "FEDERAL WAY BRANCH" shall mean and refer to the Pacific Guarantee Mortgage
2    branch that was located at 2505 South 320th Street, Suite 260, Federal Way, WA 98003

3    **REQUEST NO. 1**

4    That responding parties produce and permit propounding parties to inspect and to copy each of
5    the following documents:

6    a)    All documents evidencing YOUR claim that propounding parties failed to pay in excess
7    of $1.2 million in expenses for the VANCOUVER BRANCH and FEDERAL WAY
8    BRANCH, in violation of the facilities agreements for said branches.

9    b)    All documents evidencing YOUR claim that YOU suffered losses in excess of $500,000
10    as a result of having to close the office located at 500 West 8th Street, Suite 100,
11    Vancouver, WA 98660 in September of 2007.

12    c)    All documents evidencing YOUR claim that propounding parties are liable for any
13    losses YOU suffered as a result of having to close the office located at 500 West 8th
14    Street, Suite 100, Vancouver, WA 98660 in September of 2007.

15    d)    All documents evidencing YOUR claim that propounding parties overpaid any
16    compensation to loan officers or employees that worked at the VANCOUVER
17    BRANCH or FEDERAL WAY BRANCH.

18    e)    All contracts signed by any loan officers or employees that worked at the
19    VANCOUVER BRANCH or FEDERAL WAY BRANCH, whom you claim were
20    overpaid any compensation.

21    f)    All documents evidencing YOUR claim that Jim Bowman withdrew any funds from any
22    retirement account as a result of any action by propounding parties.

23    g)    All documents evidencing YOUR claim that propounding parties withheld any money
24    owed to YOU as a result of 401k contributions for loan officers or employees that
25    worked at the VANCOUVER BRANCH or FEDERAL WAY BRANCH.

26    h)    All documents evidencing YOUR claim that YOU are entitled to any unvested 401k
27    contributions made by propounding parties for loan officers or employees that worked at
28    the VANCOUVER BRANCH or FEDERAL WAY BRANCH.

2

1        i)    All documents evidencing YOUR claim that propounding parties withheld any money

2            owed to YOU as a result of paying any taxes on behalf of the VANCOUVER BRANCH

3            or FEDERAL WAY BRANCH.

4        j)    All documents evidencing YOUR claim that any money paid for taxes by propounding

5            parties on behalf of the VANCOUVER BRANCH or FEDERAL WAY BRANCH was

6            not, in fact, owed.

7        k)    All documents evidencing YOUR claim that propounding parties withheld any money

8            owed to YOU for any accounting fees charged by propounding parties.

9        l)    Copies of all loan files started by any loan officer or employee at the VANCOUVER

10           BRANCH or FEDERAL WAY BRANCH between September 1, 2006 and February 1,

11           2007.

12       m)    All documents identified in YOUR initial disclosures.

13       n)    All documents evidencing any communications between YOU and any of the

14           propounding parties

15       o)    All documents and drafts of documents evidencing any contracts or agreements between

16           YOU and propounding parties.

17

18

19   Date: December 12, 2007                                     **MEDLIN & HARGRAVE**

20                                        A PROFESSIONAL CORPORATION

21

22                                   By:    _____

                                           Joshua A. Rosenthal,

23                                              Attorneys for Defendants

24

25

26

27

28

DEFENDANTS' REQUEST FOR PRODUCTION OF DOCUMENTS C 07 3140 SI
M:\CMG\85-0706-02 Bowman\Discovery\Set 1 - insp dem.final.wpd

1                         **PROOF OF SERVICE BY MAIL**

2         I am over the age of eighteen years and not a party to the within action. My business address is

3 One Kaiser Plaza, Suite 1305, Oakland, California 94612, which business is located in the county where

4 the mailing described below took place.

5         I am readily familiar with my employer's business practice for collection and processing of

6 correspondence for mailing with the United States Postal Service. On the date set forth below, at my

7 place of business in Oakland, California, I served the within:

8        **REQUEST FOR PRODUCTION OF DOCUMENTS UNDER RULE 34**

9 by placing a true copy thereof enclosed in a sealed envelope, with postage fully prepaid, for collection

10 and mailing with the United States Postal Service where it would be deposited with the United States

11 Postal Service that same day in the ordinary course of business, addressed as follows:

12 Angela M. Xavier                     Alan F. Cohen
     Attorney At Law                      101 Montgomery Street, Suite 2050
13 900 Cherry Avenue, Suite 300          San Francisco, CA 94104
     San Bruno, CA 94583

14

15         I certify and declare under penalty of perjury under the laws of the State of California that the

16 foregoing is true and correct. Executed on December 12, 2007, at Oakland, California.

17

18                          Xinh Truong

19

20

21

22

23

24

25

26

27

28

# EXHIBIT C

ORIGINAL

1 | Alan F. Cohen (State Bar No. 194075)
**LAW OFFICES OF ALAN F. COHEN**
2 | 101 Montgomery Street, Suite 2050
San Francisco, CA 94104
3 | 415.984.1943 (tel.)
415.984.1953 (fax)
4 | cohenlaw@mindspring.com
5
6 | Angela M. Xavier (State Bar No. 165152)
900 Cherry Avenue, Suite 300
7 | San Bruno, CA 94066
650.355.0414 (tel.)
8 | 650.355.0842 (fax)
9
Attorneys for Plaintiffs
10

11 | UNITED STATES DISTRICT COURT

12 | NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION
13

14

15 | JAMES W. BOWMAN, JR. and PACIFIC     Case No.: C-07-3140-SI
REAL ESTATE MANAGEMENT
16 | COMPANY, INC., a Washington          **RESPONSE TO DEFENDANTS' REQUEST**
Corporation                           **FOR PRODUCTION OF DOCUMENTS**
17 |                                      **UNDER RULE 34**
Plaintiffs,
18

19 |     v.

20 | CMG MORTGAGE, INC., a California
Corporation; CMG MORTGAGE, INC.,
21 | d/b/a PACIFIC GUARANTEE
MORTGAGE, CMG MORTGAGE
22 | SERVICES, INC., a California corporation;
CMG MORTGAGE SERVICES, INC., d/b/a
23 | PACIFIC GUARANTEE MORTGAGE,
24
Defendants.
25

26 | PROPOUNDING PARTY:    DEFENDANTS CMG MORTGAGE, INC., CMG MORTGAGE,
INC., d/b/a PACIFIC GUARANTEE MORTGAGE, CMG
27 |                       MORTGAGE SERVICES, INC., CMG MORTGAGE
SERVICES, INC., d/b/a PACIFIC GUARANTEE MORTGAGE
28

LAW OFFICES OF
ALAN F. COHEN

1

**PLAINTIFF'S RESPONSE TO REQUEST FOR PRODUCTION, Set One**
**Case No. C-07-3140 SI**

RESPONDING PARTY:    PLAINTIFFS JAMES BOWMAN AND PACIFIC REAL
                      ESTATE MANAGEMENT COMPANY, INC.

SET NO:              ONE

### PRELIMINARY STATEMENT

Plaintiffs' responses to the Request for Production of Documents Under Rule 34 ("Request") are made based on Plaintiffs' present knowledge, information and belief. Said responses are at all times subject to such additional or different information or documents that discovery or further investigation may disclose and are subject to such refreshing of recollection, and such additional knowledge of facts, as may result from Plaintiffs' further discovery or investigation. Plaintiffs reserve the right to make any use of, and to introduce at any hearing and at trial, any information or documents responsive to the Discovery Request obtained through subsequent discovery or investigation.

To the extent that Plaintiffs respond to these Document Request by stating that Plaintiffs will provide documents which Plaintiffs or any other party to this litigation deem to embody material that is private, business confidential, proprietary, trade secret, or otherwise protected from disclosure pursuant to California Constitution, article I, section 1, Division 8 of the California Evidence Code or any other applicable source of privacy right arising under statute, constitutional provision or case law, Plaintiffs will do so only upon the entry of, and subject to, an appropriate protective order against the unauthorized use or disclosure of such information.

To the extent that the only documents in Plaintiffs' possession, custody or control responsive to a request are those produced by Defendants in initial disclosures, Plaintiffs will not re-produce those documents back to Defendants. Similarly, to the extent Plaintiffs have produced all documents within their possession, custody, or control to Defendants as part of their initial disclosure, Plaintiffs will not produce another copy of such documents. A contrary interpretation of the rules of discovery would be wasteful and unnecessary, and would impose an undue and unreasonable burden and expense on the responding party.

1    Plaintiffs reserve all objections or other questions as to the competency, relevance,

2    materiality, privilege or admissibility as evidence in any subsequent proceeding in or trial of this or

3    any other action for any purpose whatsoever of Plaintiffs' responses herein and of any document or

4    thing identified or provided in response to the Request.

5    Plaintiffs reserve the right to object on any ground at any time to such other or supplemental

6    Request for Production or any other discovery as Defendant may at any time propound involving or

7    relating to the subject matter of this Request.

8    **SPECIFIC RESPONSES AND OBJECTIONS TO DOCUMENT REQUEST**

9    **Request No. 1(a):**

10    All documents evidencing YOUR claim that propounding parties failed to pay in excess

11    of $1.2 million in expenses for the VANCOUVER BRANCH and FEDERAL WAY BRANCH,

12    in violation of the facilities agreements for said branches.

13    **Response to Request 1(a)**

14    Plaintiff objects to this Request to the extent that it:  seeks documents protected by the

15    attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, and overbroad

16    as to the phrase "evidencing YOUR claim;" seeks documents equally or more readily available

17    to Defendants and therefore is unduly burdensome and calculated to harass and annoy Plaintiff;

18    seeks documents protected by the right of privacy.  Notwithstanding and without waiving the

19    above objections Plaintiff will comply.

20    **Request No. 1(b):**

21    All documents evidencing YOUR claim that YOU suffered losses in excess of $500,000

22    as a result of having to close the office located at 500 West 8th Street, Suite 100, Vancouver,

23    WA 98660 in September of 2007.

24    **Response to Request 1(b)**

25    Plaintiff objects to this Request to the extent that it:  seeks documents protected by the

26    attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, and overbroad

27    as to the phrase "evidencing YOUR claim;" seeks documents equally or more readily available

28    to Defendants and therefore is unduly burdensome and calculated to harass and annoy Plaintiff;

LAW OFFICES OF
ALAN F. COHEN

3

1   seeks documents protected by the right of privacy. Notwithstanding and without waiving the

2   above objections Plaintiff will comply.

3   **Request No. 1(c):**

4          All documents evidencing YOUR claim that propounding parties are liable for any losses

5   YOU suffered as a result of having to close the office located at 500 West 8th Street, Suite 100,

6   Vancouver, WA 98660 in September of 2007.

7   **Response to Request 1(c)**

8          Plaintiff objects to this Request to the extent that it:  seeks documents protected by the

9   attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, and overbroad

10  as to the phrase "evidencing YOUR claim;" seeks documents protected by the right of privacy;

11  fails to describe the documents sought with sufficient particularity because it appears to seek a

12  legal conclusion, not documents. Notwithstanding and without waiving the above objections

13  Plaintiff will comply.

14  **Request No. 1(d):**

15         All documents evidencing YOUR claim that propounding parties overpaid any

16  compensation to loan officers or employees that worked at the VANCOUVER BRANCH or

17  FEDERAL WAY BRANCH.

18  **Response to Request 1(d)**

19         Plaintiff objects to this Request to the extent that it:  seeks documents protected by the

20  attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, and overbroad

21  as to the phrase "evidencing YOUR claim;" seeks documents equally or more readily available

22  to Defendants and therefore is unduly burdensome and calculated to harass and annoy Plaintiff.

23  Notwithstanding and without waiving the above objections Plaintiff will comply.

24  **Request 1(e)**

25         All contracts signed by any loan officers or employees that worked at the VANCOUVER

26  BRANCH or FEDERAL WAY BRANCH, whom you claim were overpaid any compensation.

27

28

1  **Response to Request 1(e)**

2         Plaintiff objects to this Request to the extent that it: seeks documents protected by the

3  attorney-client privilege or attorney work-product doctrine; seeks documents more readily

4  available to Defendants and therefore is unduly burdensome and calculated to harass and annoy

5  Plaintiff. Notwithstanding and without waiving the above objections Plaintiff will comply, to the

6  extent that such documents are in his possession, custody or control.

7  **Request 1(f)**

8         All documents evidencing YOUR claim that Jim Bowman withdrew any funds from any

9  retirement account as a result of any action by propounding parties.

10  **Response to Request 1(f)**

11         Plaintiff objects to this Request to the extent that it: seeks documents protected by the

12  attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, and overbroad

13  as to the phrase "evidencing YOUR claim;" seeks documents equally or more readily available

14  to Defendants and therefore is unduly burdensome and calculated to harass and annoy Plaintiff.

15  Notwithstanding and without waiving the above objections Plaintiff will comply. To the extent

16  responsive documents contain non-responsive information outside the scope of discovery and

17  protected by the right of privacy, such documents will only be produced in redacted form.

18  **Request 1(g)**

19        All documents evidencing YOUR claim that propounding parties withheld any money

20  owed to YOU as a result of 401k contributions for loan officers or employees that worked at the

21  VANCOUVER BRANCH or FEDERAL WAY BRANCH.

22  **Response to Request 1(g)**

23         Plaintiff objects to this Request to the extent that it: seeks documents protected by the

24  attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, and overbroad

25  as to the phrase "evidencing YOUR claim;" seeks documents equally or more readily available

26  to Defendants and therefore is unduly burdensome and calculated to harass and annoy Plaintiff.

27  Notwithstanding and without waiving the above objections Plaintiff will comply.

28

1 **Request 1(h)**

2        All documents evidencing YOUR claim that YOU are entitled to any unvested 401k
3 contributions made by propounding parties for loan officers or employees that worked at the
4 VANCOUVER BRANCH or FEDERAL WAY BRANCH.

5 **Response to Request 1(h)**

6        Plaintiff objects to this Request to the extent that it:  seeks documents protected by the
7 attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, and overbroad
8 as to the phrase "evidencing YOUR claim;" seeks documents equally or more readily available
9 to Defendants and therefore is unduly burdensome and calculated to harass and annoy Plaintiff;
10 fails to describe the documents sought with sufficient particularity because it appears to seek a
11 legal conclusion, not documents.  Notwithstanding and without waiving the above objections
12 Plaintiff will comply.

13 **Request 1(i)**

14        All documents evidencing YOUR claim that propounding parties withheld any money
15 owed to YOU as a result of paying any taxes on behalf of the VANCOUVER BRANCH or
16 FEDERAL WAY BRANCH.

17 **Response to Request 1(i)**

18        Plaintiff objects to this Request to the extent that it:  seeks documents protected by the
19 attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, and overbroad
20 as to the phrase "evidencing YOUR claim;" assumes that taxes were owed or paid on behalf of
21 the Vancouver or Federal Way branches; seeks documents equally or more readily available to
22 Defendants and therefore is unduly burdensome and calculated to harass and annoy Plaintiff.
23 Notwithstanding and without waiving the above objections Plaintiff will comply.

24 **Request 1(j)**

25        All documents evidencing YOUR claim that any money paid for taxes by  propounding
26 parties on behalf of the VANCOUVER BRANCH or FEDERAL WAY BRANCH was not, in
27 fact, owed.

28

1  **Response to Request 1(j)**

2       Plaintiff objects to this Request to the extent that it:  seeks documents protected by the

3  attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, overbroad and

4  unintelligible, as it appears to seek information relating to legal authority as opposed to

5  documents; as to the phrase "evidencing YOUR claim;" assumes that taxes were owed or paid on

6  behalf of the Vancouver or Federal Way branches; seeks documents equally or more readily

7  available to Defendants and therefore is unduly burdensome and calculated to harass and annoy

8  Plaintiff; fails to describe the documents sought with sufficient particularity because it appears to

9  seek a legal conclusion, not documents.  Notwithstanding and without waiving the above

10  objections, and to the extent they understand the request, Plaintiffs respond that they cannot

11  comply because they have no such documents within their possession, custody, or control.

12  **Request 1(k)**

13       All documents evidencing YOUR claim that propounding parties withheld any money

14  owed to YOU for any accounting fees charged by propounding parties.

15  **Response to Request 1(k)**

16       Plaintiff objects to this Request to the extent that it:  seeks documents protected by the

17  attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, and overbroad

18  as to the phrase "evidencing YOUR claim;" seeks documents equally or more readily available

19  to Defendants and therefore is unduly burdensome and calculated to harass and annoy Plaintiff.

20  Notwithstanding and without waiving the above objections Plaintiff will comply.

21  **Request 1(l)**

22       Copies of all loan files started by any loan officer or employee at the VANCOUVER

23  BRANCH or FEDERAL WAY BRANCH between September 1,2006 and February 1, 2007.

24  **Response to Request 1(l)**

25       Plaintiff is unable to comply because he has no documents in his possession, custody, or

26  control responsive to this request.  All such documents were shipped to Defendants by or before

27  March 2007.

28

7

**PLAINTIFF'S RESPONSE TO REQUEST FOR PRODUCTION, Set One**
**Case No. C-07-3140 SI**

1  **Request 1(m)**

2      All documents identified in YOUR initial disclosures.

3  **Response to Request 1(m)**

4      Plaintiff objects to this Request to the extent that it:  seeks documents protected by the

5  attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, and overbroad

6  in that if fails to describe the documents sought with particularity; seeks documents equally or

7  more readily available to Defendants and therefore is unduly burdensome and calculated to

8  harass and annoy Plaintiff; seeks documents protected by the right of privacy.  Notwithstanding

9  and without waiving the above objections, and to the extent that he can respond to such an

10  overbroad request, Plaintiff will comply.

11  **Request 1(n)**

12      All documents evidencing any communications between YOU and any of the

13  propounding parties

14  **Response to Request 1(n)**

15      Plaintiff objects to this Request to the extent that it:  seeks documents protected by the

16  attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, and overbroad

17  as to the term "evidencing;" seeks documents equally or more readily available to Defendants

18  and therefore is unduly burdensome and calculated to harass and annoy Plaintiff.

19  Notwithstanding and without waiving the above objections Plaintiff will comply.

20  **Request 1(o)**

21      All documents and drafts of documents evidencing any contracts or agreements between

22  YOU and propounding parties.

23  **Response to Request 1(o)**

24      Plaintiff objects to this Request to the extent that it:  seeks documents protected by the

25  attorney-client privilege or attorney work-product doctrine; is vague, ambiguous, and overbroad

26  as to the phrase "evidencing;" seeks documents equally or more readily available to Defendants

27  and therefore is unduly burdensome and calculated to harass and annoy Plaintiff.

28  Notwithstanding and without waiving the above objections Plaintiff will comply.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF ALAN F. COHEN

Dated: January 17, 2008

By _____
  Alan F. Cohen
  Attorneys for Plaintiffs

.

1

2

## **DECLARATION OF SERVICE**

3       I, Alan F. Cohen, declare that I am a resident of the State of California, am over the age
4  of eighteen years, and not a party to the within action. I am a member of the bar of this Court.
   My address is 101 Montgomery Street, Ste. 2050, San Francisco, CA 94104.

5       On the date set forth below I served a true and correct copy of:

6

7
## 1. **RESPONSE TO DEFENDANTS' REQUEST FOR PRODUCTION OF DOCUMENTS UNDER RULE 34**

8       ☒    (FIRST CLASS MAIL) by placing such copy in a sealed envelope postage
9            thereon fully prepaid, with the United States Postal Service for mailing this day
             from San Francisco, California.

10      ☐    (HAND DELIVERY) by hand delivery on to the party(ies) indicated below:

11      ☐    (FACSIMILE) by consigning such copy to a facsimile operator for transmittal on
             this date to the party(ies) indicated.

12
        ☐    (OVERNIGHT COURIER) by consigning such copy in a sealed envelope postage
13           thereon fully prepared, with the United States Postal Service or an overnight
             courier for next day delivery to the party(ies) indicated.
14
        I served the above document(s) on the following persons:
15
        David R. Medlin
16      G. Bradley Hargrave
        Joshua Rosenthal
17      Medlin & Hargrave
        One Kaiser Plaza, Suite 1305
18      Oakland, A  94612

19

20      *Attorneys for Defendants CMG Mortgage, Inc. et al.*

21      I am readily familiar with my firm's practices for processing of correspondence for
        delivery according to the instructions indicated above, under which correspondence would be
22  deposited in the mail or other delivery service set forth above on the date below.  The above-
    referenced documents were placed for deposit in accordance with the office's practice. I declare
23  under penalty of perjury under the laws of the State of California that the foregoing is true and
    correct. Executed at San Francisco, California on January 17, 2008.
24

25

26                                          Alan F. Cohen

27

28

10

**PLAINTIFF'S RESPONSE TO REQUEST FOR PRODUCTION, Set One**
**Case No. C-07-3140 SI**

.

# EXHIBIT D

03-06-'08 11:45  FROM-Digital Escrow           253-839-7567              T-087  P005/008 F-252

**** REAL ESTATE CLOSING ****

18567

Buyer/Borrower: Theresa L. Johnson, Married as her separate estate
Seller: The Heirs and Devisees of Lavona I. Johnson, deceased Lavona I Johnson, deceased
Lender: Washington Mutual Bank                    0729934109/073000379
Property: 1305 South Puget Drive #826 / Renton
Settlement Date: March 9, 2007                    Closer/Responsible Party: Young Martz
Disbursement Date: March 9, 2007
Check Amount: $ 4,837.28           (2006712.PFD/2006712/131)
    Pay To: Pacific Trust Lending
    For: Loan Closing

        Credit Report $32.28
        Processing fee $595.00
        Loan Origination Fee $2,970.00
        Yield Spread Premium $1,240.00

---

18567

**DIGITAL ESCROW, INC.**                    KEY BANK
2505 S. 320TH ST., SUITE 240            MIDWAY BRANCH
FEDERAL WAY, WA 98003               23250 PACIFIC HWY. SO
PHONE: (253) 839-7555                  KENT, WA 98032
                                            18-57/1250                    2006712
                                                                       Loan Closing

--Four Thousand Eight Hundred Thirty Seven and 28/100 ----------------- DATE -------------- AMOUNT Dollars

PAY
TO THE                                           March 9, 2007         $ ****4,837.28
ORDER
OF

Pacific Trust Lending                             ESCROW TRUST ACCOUNT 340-1.
2505 S 320th St, Ste 260
Federal Way, WA 98003

                                                 AUTHORIZED SIGNATURE

        ⑈O18567⑈  ⑈125000574⑈47908102297B⑈

---

DIGITAL ESCROW, INC.                                                    18567

                                                                       18567

Buyer/Borrower: Theresa L. Johnson, Married as her separate estate
Seller: The Heirs and Devisees of Lavona I. Johnson, deceased Lavona I Johnson, deceased
Lender: Washington Mutual Bank                    0729934109/073000379
Property: 1305 South Puget Drive #826 / Renton
Settlement Date: March 9, 2007                    Closer/Responsible Party: Young Martz
Disbursement Date: March 9, 2007
Check Amount: $ 4,837.28           (2006712.PFD/2006712/131)
    Pay To: Pacific Trust Lending
    For: Loan Closing

        Credit Report $32.28
        Processing fee $595.00
        Loan Origination Fee $2,970.00
        Yield Spread Premium $1,240.00

TO REORDER CALL ACS NORTHWEST, INC. 1-800-238-0900

81N021-11/06) 04:093

03-06-'08 11:45 FROM-Digital Escrow                253-839-7567              T-087 P006/008 F-252

OMB NO. 2502-0265

| A.<br>U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT<br>**SETTLEMENT STATEMENT** | B. TYPE OF LOAN:<br>1. ☐ FHA  2. ☐ FmHA  3. ☒ CONV. UNINS.  4. ☐ VA  5. ☐ CONV. INS.<br>6. FILE NUMBER:<br>2006712     7. LOAN NUMBER:<br>0729934109/073000379<br>8. MORTGAGE INS CASE NUMBER: |
|---|---|

C. NOTE:   This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "[POC]" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.
     1.0   3/96   (2006712.PFD/2006712/139)

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| Theresa L. Johnson<br>4719 S Bond St<br>Seattle, WA 98118 | The Heirs and Devisees of<br>Lavona I Johnson, deceased | Washington Mutual Bank<br>5300 SW Meadows Road, Ste 250<br>Lake Oswego, OR 97035 |

| G. PROPERTY LOCATION:<br>1305 South Puget Drive #826<br>Renton, WA 98065<br>King County, Washington | H. SETTLEMENT AGENT:        51-0476339<br>Digital Escrow Inc.<br><br>PLACE OF SETTLEMENT<br>2505 S. 320th Street, Suite 240<br>Federal Way, WA 98003 | I. SETTLEMENT DATE:<br><br>March 9, 2007<br><br>FINAL<br>Revised |
|---|---|---|

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | 155,000.00 | 401. Contract Sales Price | 155,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 613.34 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes       to | | 406. City/Town Taxes       to | |
| 107. County Taxes   03/09/07 to 07/01/07 | 411.71 | 407. County Taxes       to | |
| 108. Hoa Dues   03/09/07 to 04/01/07 | 232.04 | 408. Hoa Dues   03/09/07 to 04/01/07 | 232.04 |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 156,257.09 | **420. GROSS AMOUNT DUE TO SELLER** | 155,232.04 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | 500.00 | 501. Excess Deposit (See instructions) | |
| 202. Principal Amount of New Loan(s) | 124,000.00 | 502. Settlement Charges to Seller (Line 1400) | 100,182.12 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. Funds to close | 1,526.82 | 504. Payoff First Mortgage to Select Portfolio Servicin | 54,807.95 |
| 205. Principal Amt of New Loan(s) | 31,000.00 | 505. Payoff Second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. Closing Costs | | 508. Closing Costs | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes       to | | 510. City/Town Taxes       to | |
| 211. County Taxes       to | | 511. County Taxes   01/01/07 to 03/09/07 | 241.97 |
| 212. Hoa Dues       to | | 512. Hoa Dues       to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 157,026.82 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 155,232.04 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 156,257.09 | 601. Gross Amount Due To Seller (Line 420) | 155,232.04 |
| 302. Less Amount Paid By/For Borrower (Line 220) | ( 157,026.82 ) | 602. Less Reductions Due Seller (Line 520) | ( 155,232.04 ) |
| **303. CASH ( FROM ) ( X TO ) BORROWER** | 769.73 | **603. CASH ( TO ) ( FROM ) SELLER** | 0.00 |

## HUD-1, Page 3

Borrower (s): Theresa L. Johnson
4719 S Bond St
Seattle, WA 98118

Seller(s): The Heirs and Devisees of Lavona I.
Johnson, deceased Lavona I Johnson,
deceased

Lender: Washington Mutual Bank
Settlement Agent: Digital Escrow Inc.
(253)839-7655
Place of Settlement: 2505 S. 320th Street, Suite 240
Federal Way, WA 98003
Settlement Date: March 9, 2007
Property Location: 1305 South Puget Drive #B26
Renton, WA 98055
King County, Washington

## Additional Disbursements

| Payee/Description | Note/Ref No. | Borrower | Seller |
|---|---|---|---|
| Theresa Johnson<br>Refund of Earnest Money | | 500.00 | |
| Department of Social and Health Services<br>Lien | #003615999 | | 3,601.34 |
| Harlan M. Reese & Associates<br>Release of Judgement | #1022429 | | 75.00 |
| Sunset Ridge Condominiums<br>Delinquent Hoa dues | Dues Dec. thru March | | 748.10 |
| Kappes-Miller Management<br>Transfer & Move in fee | Buyer $179.00 | | 179.00 |
| Sunset Ridge Condominiums<br>2 months Upfront HOA dues | Theresa Johnson | 510.88 | |
| Law Office of Cheryle Smith Harris Trust Account<br>Sellers Proceeds | Lavona Johnson Estat | | 79,512.31 |
| Law Office of Cheryle Smith Harris Trust Account<br>Held funds released | Lavona Johnson Estat | | 50.00 |
| Total Additional Disbursements shown on Line 1305 | | $ 1,010.88 | $ 84,165.75 |

## Seller Loan Payoff Details

| Payoff First Mortgage | to Select Portfolio Servicing, LP | | Re: Ln #0004720546 |
|---|---|---|---|
| Loan Payoff | 54,737.27 | As of 03/09/07 | |
| Total Additional Interest | 70.68 | 6 days @ | 11.780000 Per Diem |
| **Total Loan Payoff** | **54,807.95** | | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

_____
Theresa L. Johnson

The Heirs and Devisees of Lavona I.
Johnson, deceased

BY:_____
Theresa L. Johnson
Personal Representative

WARNING: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

(2006712.PFD/2006712/135)

FROM DIGITAL ESCROW                    (THU)MAR  8  2008 11:49/ST. 11:48/No. 8842902001 P  4

**** REAL ESTATE CLOSING ****                    18567

Buyer/Borrower: Theresa L. Johnson, Married as her separate estate
    Seller: The Heirs and Devisees of Lavona I. Johnson, deceased Lavona I Johnson, deceased
    Lender: Washington Mutual Bank                    0729934109/073000379
    Property: 1305 South Puget Drive #B26 / Renton
Settlement Date: March 9, 2007                    Closer/Responsible Party: Young Martz
Disbursement Date: March 9, 2007
Check Amount: $ 4,837.28                    (2006712.PFD/2006712/131)
    Pay To: Pacific Trust Lending
    For: Loan Closing

    Credit Report $32.28
    Processing fee $595.00
    Loan Origination Fee $2,970.00
    Yield Spread Premium $1,240.00

---

18567

**DIGITAL ESCROW, INC.**
2505 S. 320TH ST., SUITE 240
FEDERAL WAY, WA 98003
PHONE: (253) 839-7555

KEY BANK
MIDWAY BRANCH
23230 PACIFIC HWY. SO
KENT, WA 98032
19-57/1250

2006712
Loan Closing

—Four Thousand Eight Hundred Thirty Seven and 28/100 —————    DATE    AMOUNT Dollars

PAY
TO THE
ORDER
OF

March 9, 2007        $ *****4,837.28

    Pacific Trust Lending
    2505 S 320th St, Ste 260
    Federal Way, WA 98003

ESCROW TRUST ACCOUNT 240-1

AUTHORIZED SIGNATURE

⑈018567⑈ ⑆125000574⑆ 4790810 22978⑈

---

DIGITAL ESCROW, INC.                    18567

18567

Buyer/Borrower: Theresa L. Johnson, Married as her separate estate
    Seller: The Heirs and Devisees of Lavona I. Johnson, deceased Lavona I Johnson, deceased
    Lender: Washington Mutual Bank                    0729934109/073000379
    Property: 1305 South Puget Drive #B26 / Renton
Settlement Date: March 9, 2007                    Closer/Responsible Party: Young Martz
Disbursement Date: March 9, 2007
Check Amount: $ 4,837.28                    (2006712:PFD/2006712/131)
    Pay To: Pacific Trust Lending
    For: Loan Closing

    Credit Report $32.28
    Processing fee $595.00
    Loan Origination Fee $2,970.00
    Yield Spread Premium $1,240.00

TO REORDER CALL ACB NORTHWEST, INC. 1-800-292-0900

51N321 (10/06) 541087

FROM DIGITAL ESCROW                    (THU)MAR  8 2008 11:50/ST.11:48/No.6842902001 P 5

OMB NO. 2502-0265

| A. | | B. TYPE OF LOAN: | | | |
|---|---|---|---|---|---|
| U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT | 1. ☐ FHA   2. ☐ FmHA   3. ☒ CONV. UNINS.   4. ☐ VA   5. ☐ CONV. INS. | | | | |
| **SETTLEMENT STATEMENT** | 6. FILE NUMBER: 2006712 | | 7. LOAN NUMBER: 0729934109/073000379 | | |
| | 8. MORTGAGE INS CASE NUMBER: | | | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "[POC]" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| Theresa L. Johnson. 4719 S Bond St Seattle, WA 98118 | The Heirs and Devisees of Lavone I Johnson, deceased | Washington Mutual Bank 5300 SW Meadows Road, Ste 250 Lake Oswego, OR 97035 |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT:   51-0475339 | I. SETTLEMENT DATE: |
|---|---|---|
| 1305 South Puget Drive #B26 Renton, WA 98055 King County, Washington | Digital Escrow Inc. | March 8, 2007 |
| | PLACE OF SETTLEMENT 2505 S. 320th Street, Suite 240 Federal Way, WA 98003 | **FINAL** |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | 155,000.00 | 401. Contract Sales Price | 155,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 613.34 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes        to | | 406. City/Town Taxes        to | |
| 107. County Taxes   03/09/07  to  07/01/07 | 411.71 | 407. County Taxes        to | |
| 108. Hoa Dues      03/09/07  to  04/01/07 | 232.04 | 408. Hoa Dues   03/09/07  to  04/01/07 | 232.04 |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 156,257.09 | **420. GROSS AMOUNT DUE TO SELLER** | 155,232.04 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | 500.00 | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 124,000.00 | 502. Settlement Charges to Seller (Line 1400) | 100,182.12 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. Funds to close | 1,526.82 | 504. Payoff First Mortgage to Select Portfolio Servicin | 54,807.95 |
| 205. Principal Amt of New Loan(s) | 31,000.00 | 505. Payoff Second Mortgage | |
| 206. | | 506. | |
| 207. | | 507. | |
| 208. Closing Costs | | 508. Closing Costs | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes        to | | 510. City/Town Taxes        to | |
| 211. County Taxes        to | | 511. County Taxes   01/01/07  to  03/09/07 | 241.97 |
| 212. Hoa Dues        to | | 512. Hoa Dues        to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. | |
| 217. | | 517. | |
| 218. | | 518. | |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 157,026.82 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 155,232.04 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 156,257.09 | 601. Gross Amount Due To Seller (Line 420) | 155,232.04 |
| 302. Less Amount Paid By/For Borrower (Line 220) | 157,026.82 | 602. Less Reductions Due Seller (Line 520) | 155,232.04 |
| **303. CASH ( FROM ) ( X TO ) BORROWER** | 769.73 | **603. CASH ( TO ) ( FROM ) SELLER** | 0.00 |

## L. SETTLEMENT CHARGES

| | | | | | | PAID FROM BORROWERS FUNDS AT SETTLEMENT | PAID FROM SELLERS FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|---|---|
| 700. TOTAL COMMISSION Based on Price | | $ | @ | % | 3,875.00 | | |
| Division of Commission (line 700) as Follows: | | | | | | | |
| 701. $ | to | | | | | | |
| 702. $ 3,875.00 | to  Christensen Properties | | | | | | |
| 703. Commission Paid at Settlement | | | | | | | |
| 704. | | to | | | | | 3,875.00 |
| **800. ITEMS PAYABLE IN CONNECTION WITH LOAN** | | | | | | | |
| 801. Loan Origination Fee | % | to  Washington Mutual Bank | | | | | |
| 802. Loan Discount | % | to  Washington Mutual Bank | | | | | |
| 803. Appraisal Fee | | to  Thomas M. Love | | | Buyer $400.00 | | 400.00 |
| 804. Credit Report | | to  Credco | | | Buyer $32.28 | | 32.28 |
| 805. Lender's Inspection Fee | | to | | | | | |
| 806. Mortgage Ins. App. Fee | | to | | | | | |
| 807. Assumption Fee | | to | | | | | |
| 808. Processing fee | | to  Pacific Trust Lending | | | Buyer $595.00 | | 595.00 |
| 809. Tax Service fee | | to  Washington Mutual Bank, F.A. | | | Buyer $81.00 | | 81.00 |
| 810. Flood Cert. fee | | to  LandAmerica | | | Buyer $8.00 | | 8.00 |
| 811. Lender Funding & Review Fee | | to  Washington Mutual Bank | | | Buyer $799.00 | | 799.00 |
| 812. Intrm Int 03/09/07 to 03/01/07 | | to  Washington Mutual Bank | | | | -72.72 | |
| 813. AU Fee | | to  Association Underwriters of Washington, LLC | | | Inv #53348 Buyer $38 | | 38.00 |
| 814. Prem Yld Adj to Brkr | | to  Pacific Trust Lending | | | POC1,1240.00 | | |
| 815. 2nd Lender Processing Fee | | to  Washington Mutual Bank | | | Buyer $299.00 | | 299.00 |
| 816. 2nd Flood Search Fee | | to  LandAmerica | | | Buyer $4.00 | | 4.00 |
| 817. Loan Origination Fee | | to  Pacific Trust Lending | | | Buyer $2970.00 | | 2,970.00 |
| 818. | | | | | | | |
| 819. | | | | | | | |
| 820. | | | | | | | |
| **900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE** | | | | | | | |
| 901. Interest From  03/09/07  to  03/01/07 | | @  $ | 28.500000/day | ( | -8 days | %) | -212.00 | |
| 902. Mortgage Insurance Premium for | months to | | | | | | |
| 903. Hazard Insurance Premium for | 1.0 years to | | | | | | |
| 904. | | | | | | | |
| 905. | | | | | | | |
| **1000. RESERVES DEPOSITED WITH LENDER** | | | | | | | |
| 1001. Hazard Insurance | | | months @ $ | | per  month | | | |
| 1002. Mortgage Insurance | | | months @ $ | | per  month | | | |
| 1003. City/Town Taxes | | | months @ $ | | per  month | | | |
| 1004. County Taxes | | 8.000 | months @ $ | 112.91 per  month | | Buyer $903.20 | 0.08 | 903.20 |
| 1005. Hoa Dues | | | months @ $ | | per  month | | | |
| 1006. | | | months @ $ | | per  month | | | |
| 1007. Aggregate Adjustment | | | months @ $ | | per  month | | -112.90 | |
| 1008. | | | months @ $ | | per  month | | | |
| **1100. TITLE CHARGES** | | | | | | | |
| 1101. Settlement or Closing Fee | | to  Digital Escrow Inc. | | | Buyer $475.00 | | 950.00 |
| 1102. Sales Tax for escrow charges | | to  Digital Escrow Inc. | | | Buyer $51.48 | | 97.68 |
| 1103. Overnight/Courier fee | | to  Digital Escrow Inc. | | | Buyer $35.00 | | 85.00 |
| 1104. Wire fee | | to  Digital Escrow Inc. | | | Buyer $25.00 | | 50.00 |
| 1105. Escrow Fee | | to  Digital Escrow Inc. | | | Buyer $272.00 | | 272.00 |
| 1106. Wire Fee | | to  Digital Escrow Inc. | | | Buyer $25.00 | | 25.00 |
| 1107. E-mail doc fee | | to  Digital Escrow Inc. | | | Buyer $50.00 | | 50.00 |
| (includes above item numbers: | | | | | | | |
| 1108. Title Insurance | | to  Pacific Northwest Title | | | Buyer $454.78 | | 1,111.93 |
| (includes above item numbers: | | | | | | | |
| 1109. Lender's Coverage | | $ | 124,000.00 | | 454.78 | | |
| 1110. Owner's Coverage | | $ | 155,000.00 | | 657.15 | | |
| 1111. Tech Fund | | to  Digital Escrow Inc. | | | Buyer $5.00 | | 5.00 |
| 1112. 2nd Title Fee | | to  Pacific Northwest Title | | | Buyer $201.28 | | 201.28 |
| 1113. | | Pacific Northwest Title | | | | | |
| 1114. Recording of Quitclaim Deed | | to  Pacific Northwest Title | | | Buyer $45.00 | | 45.00 |
| 1115. Legal Doc Fee | | to  Digital Escrow Inc. | | | Buyer $150.00 | | 150.00 |
| 1116. | | | | | | | |
| 1117. | | | | | | | |
| 1118. | | | | | | | |
| **1200. GOVERNMENT RECORDING AND TRANSFER CHARGES** | | | | | | | |
| 1201. Recording Fees: Deed $ | 35.00; Mortgage $ | 105.00; | | Releases $ | | Buyer $140.00 | | 140.00 |
| 1202. City/County Tax/Stamps: Deed | | : Mortgage | | | | | |
| 1203. State Tax/Stamps:  Revenue Stamps | | : Mortgage | | | | | |
| 1204. Local Excise Tax | | to  King County Treasurer | | | | | 775.00 |
| 1205. State Excise Tax | | to  King County Treasurer | | | | | 1,964.00 |
| **1300. ADDITIONAL SETTLEMENT CHARGES** | | | | | | | |
| 1301. Survey | | to | | | | | |
| 1302. Pest Inspection | | to | | | | | |
| 1303. Reconveyance tracking fee | | to  Digital Escrow Inc. | | | | | 70.00 |
| 1304. Final utility holdback | | | | | | | |
| 1305. See addit'l disb. exhibit | | to | | | | 1,010.88 | 84,165.75 |
| **1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K)** | | | | | | | 613.34 | 100,182.12 |

FINAL



# HUD-1, Page 3

**Borrower (s):** Theresa L. Johnson
4719 S Bond St
Seattle, WA 98118

**Seller(s):** The Heirs and Devisees of Lavona I. Johnson, deceased Lavona I Johnson, deceased

**Lender:** Washington Mutual Bank
**Settlement Agent:** Digital Escrow Inc.
(253)839-7555
**Place of Settlement:** 2505 S. 320th Street, Suite 240
Federal Way, WA 98003
**Settlement Date:** March 9, 2007
**Property Location:** 1305 South Puget Drive #B26
Renton, WA 98055
King County, Washington

## Additional Disbursements

| Payee/Description | Note/Ref No. | Borrower | Seller |
|---|---|---|---|
| Theresa Johnson<br>Refund of Earnest Money | | 500.00 | |
| Department of Social and Health Services<br>Lien | #003615999 | | 3,601.34 |
| Harlan M. Reese & Associates<br>Release of Judgement | #1022429 | | 75.00 |
| Sunset Ridge Condominiums<br>Delinquent Hoa dues | Dues Dec. thru March | | 748.10 |
| Kappes-Miller Management<br>Transfer & Move in fee | Buyer $179.00 | | 179.00 |
| Sunset Ridge Condominiums<br>2 months Upfront HOA dues | Theresa Johnson | 510.88 | |
| Law Office of Cheryle Smith Harris Trust Account<br>Sellers Proceeds | Lavona Johnson Estat | | 79,512.31 |
| Law Office of Cheryle Smith Harris Trust Account<br>Held funds released | Lavona Johnson Estat | | 50.00 |
| **Total Additional Disbursements shown on Line 1305** | | $ 1,010.88 | $ 84,165.75 |

## Seller Loan Payoff Details

**Payoff First Mortgage** **to Select Portfolio Servicing, LP** **Re:Ln #0004720546**

| | | | |
|---|---|---|---|
| Loan Payoff | 54,737.27 | As of 03/09/07 | |
| Total Additional Interest | 70.68 | 6 days @ | 11.780000 Per Diem |
| **Total Loan Payoff** | **54,807.95** | | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

Theresa L. Johnson

The Heirs and Devisees of Lavona I. Johnson, deceased

BY:________________
Theresa L. Johnson
Personal Representative

WARNING: It is a crime to knowingly make false statements to the United States on this or any similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Section 1001 and Section 1010.

V63843                    Sierra Pacific Mortgage dba Pacific Trust Lending                    273992

02/20/2007                                                                                    02/20/2007

Van House              YSP                                          6,187.50        $12,482.50
                       Broker Points                               6,295.00
                       Total Accumulation                        $12,482.50

24809 NE 222nd Ave:
Battle Ground, WA

Reference/Loan No.:

235418-000

        Van House                                                          273992

        24809 NE 222nd Ave: Battle Ground, WA                              02/20/2007

        Sierra Pacific Mortgage dba Pacific Trust Lending

        YSP                                                        6,187.50
        Broker Points                                             6,295.00
        Total Accumulation                                       $12,482.50



⑈273992⑈ ⑆121000358⑆ 1233122Q19⑈

HUD-1 (3/86) RESPA, HB 4305.2

Page 1 of 3

Form Approved OMB 2502-0265

## A. SETTLEMENT STATEMENT

**Fidelity National Title**

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

| | | |
|---|---|---|
| 1. ___ FHA | 2. ___ FMHA | 3. ___ CONV. UNINS |
| 4. ___ VA | 5. _X_ CONV. INS. | ___ OTHER |
| 6. File Number V63843 | | 7. Loan Number 0091765172 |
| 8. Mortgage Ins. Case No. | | |

C. NOTE: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(P.O.C.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

**D. NAME AND ADDRESS OF BORROWER:** Daniel R. Van House

24809 NE 222nd Ave
Battle Ground, WA 98604

**E. NAME, ADDRESS AND TIN OF SELLER:**

**F. NAME AND ADDRESS OF LENDER:** Greenpoint Mortgage Funding
981 Airway Ct #E
Santa Rosa, CA 95403

**G. PROPERTY LOCATION:** 24809 NE 222nd Ave
Battle Ground, WA 98604

**H. SETTLEMENT AGENT:** Fidelity National Title Insurance Company (360)750-3686

**PLACE OF SETTLEMENT:** 500 E. Broadway #120, Vancouver, WA 98660

**I. SETTLEMENT DATE** 2/20/2007  **FINAL**   **DISBURSEMENT DATE** 2/20/2007

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| 101 Contract sales price | | 401 Contract sales price | |
| 102 Personal Property | | 402 Personal Property | |
| 103 Settlement charges to borrower (line 1400) | 36,313.43 | 403 | |
| 104 EMC Mortgage 02/22/07 | 226,819.75 | 404 | |
| 105 Clark Public Utility District -(2/23/07) | 11,874.54 | 405 | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106 City/town taxes            to | | 406 City/town taxes            to | |
| 107 County taxes               to | | 407 County taxes               to | |
| 108 Assessments                to | | 408 Assessments                to | |
| 109 | | 409 | |
| 110 | | 410 | |
| 111 | | 411 | |
| 112 | | 412 | |
| 113 | | 413 | |
| 114 | | 414 | |
| 115 | | 415 | |
| 116 | | 416 | |
| 120 GROSS AMOUNT DUE FROM BORROWER | 275,007.72 | 420 GROSS AMOUNT DUE TO SELLER | |
| 201 Deposit or earnest money | | 501 Excess deposit (see instructions) | |
| 202 Principal amount of new loan   Greenpoint Mo | 275,000.00 | 502 Settlement charges to seller (line 1400) | |
| 203 Existing loan taken subject to | | 503 Existing loan taken subject to | |
| 204 | | 504 Payoff first mortgage | |
| 205 | | 505 Payoff second mortgage | |
| 206 | | 506 | |
| 207 | | 507 | |
| 208 | | 508 | |
| 209 | | 509 | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210 City/town taxes            to | | 510 City/town taxes            to | |
| 211 County taxes               to | | 511 County taxes               to | |
| 212 Assessments                to | | 512 Assessments                to | |
| 213 | | 513 | |
| 214 | | 514 | |
| 215 | | 515 | |
| 216 | | 516 | |
| 217 | | 517 | |
| 218 | | 518 | |
| 219 | | 519 | |
| 220 TOTAL PAID BY/FOR BORROWER | 275,000.00 | 520 TOTAL REDUCTION AMOUNT DUE SELL | |
| 301 Gross amount due from borrower (line 120) | 275,007.72 | 601 Gross amount due to seller (line 420) | |
| 302 Less amounts paid by/for borrower (line 220) | 275,000.00 | 602 Less reductions in amount due seller (line 520) | |
| 303 CASH (X FROM) (  TO) BORROWER | 7.72 | 603   CASH (  FROM) (  TO) SELLER | |

Tax Year 2007                                   Substitute Form 1099S Seller Statement

You are required by law to provide Fidelity National Title Insurance Company with your correct taxpayer identification number. If you do not provide Fidelity National Title Insurance Company with your identification number, you may be subject to civil or criminal penalties imposed by law. Seller's name(s), address and tax identification number(s) is shown in item B above and should be checked if correct. Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

The Information contained in Blocks E,G,H,J, and line 401 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

HUD-1 (3/86) RESPA, HR 4305.2 — Page 2 of 3 — Form Approved OMB 2502-0265

## L. SETTLEMENT CHARGES

| | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|
| BASED ON PRICE  $                  @        %= | | | | |
| Division of Commission (line 700) as follows: | | | | |
| 701. | to | | | |
| 702. | to | | | |
| 703. Commission paid at Settlement | | | | |
| 704. | | | | |
| 801. Loan Origination Fee        % | Greenpoint Mortgage Funding | | 725.00 | |
| 802. Loan Discount        % | | | | |
| 803. Appraisal Fee to | Mulligan & Associates Appraisal | | 400.00 | |
| 804. Credit Report to | First American CredCo | | 19.26 | |
| 805. Tax Service Fee | Greenpoint Mortgage Funding | | 79.00 | |
| 806. Flood Cert. Fee | Greenpoint Mortgage Funding | | 11.00 | |
| 807. ReDraw Fee | Greenpoint Mortgage Funding | | 125.00 | |
| 808. Yield Spread Premium to Broker | Sierra Pacific Mortgage dba Pacific Ti | (6,187.50L) | | |
| 809. Broker Points | Sierra Pacific Mortgage dba Pacific Ti | | 6,295.00 | |
| 810. | | | | |
| 811. | | | | |
| 812. | | | | |
| 813. | | | | |
| 814. | | | | |
| 901. Interest from 02/20/07  to  03/01/07  @  49.910000 /day  9 -days) | | | 449.19 | |
| 902. Mortgage Insurance Premium for | | | | |
| 903. Hazard Insurance Premium for | | | | |
| 904. | | | | |
| 905. | | | | |
| 1001. Hazard Insurance        12 months @ $ 61.26 | per month | | 735.12 | |
| 1002. Mortgage Insurance        months @ $ | per month | | | |
| 1003. City property taxes        months @ $ | per month | | | |
| 1004. County property taxes      2 months @ $ 212.16 | per month | | 424.32 | |
| 1005. Annual assessments        months @ $ | per month | | | |
| 1006. Aggregate Account Cred    1 months @ $ -245.15 | per month | | (245.15) | |
| 1007. | | | | |
| 1008. | | | | |
| 1101. Settlement or closing fee to | Fidelity National Title Insurance Com (41.00) | | 540.50 | |
| 1102. Abstract or title search to | | | | |
| 1103. Title examination to | | | | |
| 1104. Title insurance binder to | | | | |
| 1105. Document preparation to | | | | |
| 1106. Notary fee to | | | | |
| 1107. Attorney's fee to | | | | |
| (includes above items numbers:    1103, 1104 | | ) | | |
| 1108. Title insurance to | Fidelity National Title | | 506.38 | |
| (includes above items numbers: | | ) | | |
| 1109. Lender's coverage    $ 275,000.00 | $ 468.00        (38.38) | | | |
| 1110. Owner's coverage    $ | $ | | | |
| 1111. Delivery Charges | Fidelity National Title Insurance Com (5.24) | | 43.24 | |
| 1112. Trust Accounting Fee | Fidelity National Title Insurance Com (2.03) | | 27.03 | |
| 1113. Sub Total (line 1117) | | | 65.40 | |
| 1201. Recording:   Deed $ 240.00 | Mortgage $ 50.00    Release $ | | 290.00 | |
| 1202. City/county tax/stamps:   Deed $ | Mortgage $ | | | |
| 1203. State tax/stamps:    Deed $ | Mortgage $ | | | |
| 1204. | | | | |
| 1205. | | | | |
| 1301. 1st Half 2007 Taxes | Clark County Treasurer | | 1,272.86 | |
| 1302. consumer debt | Capital One | | 2,271.00 | |
| 1303. proceeds wired to Riverview | proceeds wired to Riverview | | 22,272.03 | |
| 1304. 1st Half fire patrol- 2007-235418000 | Clark County Treasurer | | 7.25 | |
| 1305. | | | | |
| 1306. | | | | |
| 1307. | | | | |
| 1308. | | | | |
| 1400. TOTAL SETTLEMENT CHARGES (enter on lines 103, Section J and 502, Section K) | | | 36,313.43 | |

I have carefully reviewed the HUD-1 Settlement Statement and, to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.

Daniel R. Van House

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

Fidelity National Title Insurance Company                                        Date
WARNING: It is a crime to knowingly make false statements to the United States or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see Title 18 U.S. Code Sections 1001 and Section 1010.

HUD-1 (3/86) RESPA, HR 4305.2                                    Form Approved OMB 2502-0265
File No. V63843                          Page 3 of 3
                                         Loan No. 0091765172

| 1114 E-Doc Fee | Fidelity National Title Insurance Cc | 54.05 | |
| 1115 UPS Fee | Fidelity National Title Insurance Cc (0.85) | 11.35 | |
| 1116 | | | |
| 1117 TOTAL (entered on line 1113 Section L) | | 65.40 | |

I have carefully reviewed the HUD-1 Settlement Statement and, to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.



V59477
02/27/2007

Sierra Pacific Mortgage
500 W 5th St, ...108
Vancouver, WA 98660

274189
02/27/2007

Barcus
Vaughters

36824 SE Sunset View
Road: Washougal, WA

| YSP | 5,588.00 | $9,537.26 |
| Broker Points - 1st | 3,932.00 | |
| Credit Report | 17.26 | |
| Total Accumulation | $9,537.26 | |

Reference/Loan No.:
129898-000

Barcus                    Vaughters

36824 SE Sunset View Road: Washougal, WA

Sierra Pacific Mortgage

| YSP | 5,588.00 |
| Broker Points - 1st | 3,932.00 |
| Credit Report | 17.26 |
| Total Accumulation | $9,537.26 |

274189
02/27/2007



FOR SECURITY PURPOSES THIS DOCUMENT HAS VISIBLE & FLUORESCENT FIBERS & A TRUE WATERMARK-HOLD TO LIGHT TO VIEW.

Nine Thousand Five Hundred Thirty-Seven and 26/100

⑆274189⑆ ⑆121000358⑆ 1233122019⑈

HUD-1 (3/86) RESPA, HB 4305.2         Page 1 of 3        Form Approved OMB 2502-0265

**A. SETTLEMENT STATEMENT**

| | |
|---|---|
| 1. ___ FHA | 2. ___ FMHA | 3. ___ CONV. UNINS |
| 4. ___ VA | 5. _X_ CONV. INS. | ___ OTHER |

**Fidelity National Title**

| 6. File Number | 7. Loan Number |
|---|---|
| V58477 | 0091778951 and 0091778969 |

8. Mortgage Ins. Case No.

U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

C. NOTE:  This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown.
Items marked "(P.O.C.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| D. NAME AND ADDRESS OF BORROWER: | Greg Barcus |
|---|---|
| | PO Box 187 |
| | Battle Ground, WA 98604 |

| E. NAME, ADDRESS AND TIN OF SELLER: | Kent D. Vaughters |
|---|---|
| | 36824 SE Sunset View Road |
| | Washougal, WA 98671 |

| F. NAME AND ADDRESS OF LENDER: | Greenpoint Mortgage Funding |
|---|---|
| | 981 Airway Ct #E |
| | Santa Rosa, CA 95403 |

| G. PROPERTY LOCATION: | 36824 SE Sunset View Road |
|---|---|
| | Washougal, WA 98671 |

| H. SETTLEMENT AGENT: | Fidelity National Title Insurance Company  (360)256-1400 |
|---|---|
| PLACE OF SETTLEMENT: | 500 E. Broadway #120, Vancouver, WA 98660 |
| I. SETTLEMENT DATE:   2/27/2007   FINAL | DISBURSEMENT DATE    2/27/2007 |

| J. | SUMMARY OF BORROWER'S TRANSACTION | | K. | SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|---|---|
| 101 | Contract sales price | 254,000.00 | 401 | Contract sales price | 254,000.00 |
| 102 | Personal Property | | 402 | Personal Property | |
| 103 | Settlement charges to borrower (line 1400) | 7,998.56 | 403 | | |
| 104 | | | 404 | | |
| 105 | | | 405 | | |
| | Adjustments for items paid by seller in advance | | | Adjustments for items paid by seller in advance | |
| 106 | City/town taxes        to | | 406 | City/town taxes        to | |
| 107 | County taxes          to | | 407 | County taxes          to | |
| 108 | Assessments          to | | 408 | Assessments          to | |
| 109 | | | 409 | | |
| 110 | | | 410 | | |
| 111 | | | 411 | | |
| 112 | | | 412 | | |
| 113 | | | 413 | | |
| 114 | | | 414 | | |
| 115 | | | 415 | | |
| 116 | | | 416 | | |
| 120 | GROSS AMOUNT DUE FROM BORROWER | 261,998.56 | 420 | GROSS AMOUNT DUE TO SELLER | 254,000.00 |
| 201 | Deposit or earnest money | 500.00 | 501 | Excess deposit (see instructions) | |
| 202 | Principal amount of new loan   Greenpoint Mo | 203,200.00 | 502 | Settlement charges to seller (line 1400) | 70,983.97 |
| 203 | Existing loan taken subject to | | 503 | Existing loan taken subject to | |
| 204 | Additional Cash | 29,544.47 | 504 | Payoff first mortgage        GMAC | 140,693.22 |
| 205 | Funds from 2nd | 23,712.65 | 505 | Payoff second mortgage     Schwabe, Willia | 36,829.03 |
| 206 | Seller - Paid Closing Costs - 2% | 5,080.00 | 506 | Seller - Paid Closing Costs - 2% | 5,080.00 |
| 207 | | | 507 | | |
| 208 | | | 508 | | |
| 209 | | | 509 | | |
| | Adjustments for items unpaid by seller | | | Adjustments for items unpaid by seller | |
| 210 | City/town taxes        to | | 510 | City/town taxes        to | |
| 211 | County taxes   01/01/07  to  02/27/07 | 411.06 | 511 | County taxes   01/01/07  to  02/27/07 | 411.06 |
| 212 | Assessments          to | | 512 | Assessments          to | |
| 213 | 2007 CWP   01/01/07  to  02/27/07 | 3.61 | 513 | 2007 CWP   01/01/07  to  02/27/07 | 3.61 |
| 214 | | | 514 | | |
| 215 | | | 515 | | |
| 216 | | | 516 | | |
| 217 | | | 517 | | |
| 218 | | | 518 | | |
| 219 | | | 519 | | |
| 220 | TOTAL PAID BY/FOR BORROWER | 262,451.79 | 520 | TOTAL REDUCTION AMOUNT DUE SELL | 254,000.89 |
| 301 | Gross amount due from borrower (line 120) | 261,998.56 | 601 | Gross amount due to seller (line 420) | 254,000.00 |
| 302 | Less amounts paid by/for borrower (line 220) | 262,451.79 | 602 | Less reductions in amount due seller (line 520) | 254,000.89 |
| 303 | CASH (  FROM) ( X TO) BORROWER | 453.23 | 603 | CASH ( X FROM) (  TO) SELLER | 0.89 |

Tax Year 2007            Substitute Form 1099 Seller Statement
You are required by law to provide Fidelity National Title Insurance Company with your correct taxpayer identification number. If you do not provide Fidelity National Title Insurance Company wi
identification number, you may be subject to civil or criminal penalties imposed by law. (Seller's name(s), address and tax identification number(s) is above in item E above and should be checked fi
Under penalties of perjury, I certify that the number shown on this statement is my correct taxpayer identification number.

The information contained in Blocks E,G,H,I, and line 401 is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a n
penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

HUD-1 (3/86) RESPA, HB 4305.2                                           Page 2 of 3                                          Form Approved OMB 2502-0265

**L.**

## SETTLEMENT CHARGES

| | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|
| BASED ON PRICE $ 254,000.00 @ %= | | | |
| Division of Commission (line 700) as follows: | | | |
| 701. to | | | |
| 702. to | | | |
| 703. Commission paid at Settlement | | | |
| 704. | | | |
| 801. Loan Origination Fee % | | | |
| 802. Loan Discount % | | | |
| 803. Appraisal Fee to | Gleason Appraisal | 425.00 | |
| 804. Credit Report to | Pacific Trust Lending | 17.26 | |
| 805. Origination Fee - 1st | Greenpoint Mortgage Funding | 550.00 | |
| 806. Tax Service Fee - 1st | Greenpoint Mortgage Funding | 79.00 | |
| 807. Assumption Fee to | | | |
| 808. Broker Yield Spread Premium | Pacific Trust Lending | (5,588.00L) | |
| 809. Broker Points - 1st | Pacific Trust Lending | 3,932.00 | |
| 810. Flood Cert fee | Greenpoint Mortgage Funding | 11.00 | |
| 811. | | | |
| 812. | | | |
| 813. | | | |
| 814. | | | |
| 901. Interest from to @ /day -days) | | 94.64 | |
| 902. Mortgage Insurance Premium for | | | |
| 903. Hazard Insurance Premium for 1 year to State Farm | | 456.00 | |
| 904. | | | |
| 905. | | | |
| 1001. Hazard Insurance months @ $ per month | | | |
| 1002. Mortgage Insurance months @ $ per month | | | |
| 1003. City property taxes months @ $ per month | | | |
| 1004. County property taxes months @ $ per month | | | |
| 1005. Annual assessments months @ $ per month | | | |
| 1006. | | | |
| 1007. | | | |
| 1008. | | | |
| 1101. Settlement or closing fee to Fidelity National Title Insurance Com (65.60) | | 432.40 | 432.40 |
| 1102. Abstract or title search to | | | |
| 1103. Title examination to | | | |
| 1104. Title insurance binder to | | | |
| 1105. Document preparation to | | | |
| 1106. Notary fee to | | | |
| 1107. Attorney's fee to | | | |
| (includes above items numbers: 1103, 1104 ) | | | |
| 1108. Title insurance to Fidelity National Title Insurance Company | | 446.45 | 968.39 |
| (includes above items numbers: ) | | | |
| 1109. Lender's coverage $ 203,200.00 $ 413.00 (33.45) | | | |
| 1110. Owner's coverage $ 254,000.00 $ 895.00 (73.39) | | | |
| 1111. | | | |
| 1112. Wire Transfer Fee Fidelity National Title Insurance Com (2.03) | | 27.03 | |
| 1113. Sub Total (line 1120) | | 75.67 | 446.47 |
| 1201. Recording: Deed $ 34.00 Mortgage $ 59.00 Release $ | | 93.00 | |
| 1202. City/county tax/stamps: Deed $ Mortgage $ | | | |
| 1203. State tax/stamps: Deed $ Mortgage $ | | | |
| 1204. | | | |
| 1205. Sub Total (line 1212) | | 43.00 | 4,526.20 |
| 1301. , doc. #18947 David W. Christel, Attorney at Law | | | 5,529.44 |
| 1302. Judgement # 7, to 3/2/08 Suttell & Associates, P.S. 3/02/07 | | | 12,900.42 |
| 1303. Federal Tax Lien # 8 to 03-01-2007 Internal Revenue Service 03-01-2007 | | | 6,714.58 |
| 1304. Appraisal Gleason Appraisal*** | | | 400.00 |
| 1305. 1st Half 2007 Taxes Clark County Treasurer | | 1,316.11 | |
| 1306. proceeds wired to WAMU proceeds wired to WAMU | | | 39,066.07 |
| 1307. | | | |
| 1308. | | | |
| **1400. TOTAL SETTLEMENT CHARGES** (enter on lines 103, Section J and 502, Section K) | | **7,998.56** | **70,983.97** |

I have carefully reviewed the HUD-1 Settlement Statement and, to the best of my knowledge and belief, it is a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction. I further certify that I have received a copy of HUD-1 Settlement Statement.

<br>

Greg Barcus              Kent D. Vaughters

To the best of my knowledge, the HUD-1 Settlement Statement which I have prepared is a true and accurate account of the funds which were received and have been or will be disbursed by the undersigned as part of the settlement of this transaction.

Fidelity National Title Insurance Company                         Date
WARNING: It is a crime to knowingly make false statements to the United States on this or any other similar form. Penalties upon conviction can include a fine and imprisonment. For details see: Title 18 U.S. Code Sections 1001 and Section 1010.

# EXHIBIT E

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
## UNITED STATES DISTRICT COURT

Northern _____ **DISTRICT OF** _____ California

James W. Bowman, Jr. et al.

V.

CMG Mortgage, Inc., et al.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  C 07 3140 SI

TO:  Sierra Pacific Mortgage Co., Inc.
50 Iron Point Circle, Suite 200
Folsom, CA 95630

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to
testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition
in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the
place, date, and time specified below (list documents or objects):
Please See Attachment

| PLACE   Legal Department, One Hour Legal Services, 1280 Boulevard Way, Suite 205, Walnut Creek, CA 94595 | DATE AND TIME 4/14/2008 10:00 am |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers,
directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the
matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)   Attorney for defendants | DATE 4/3/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Joshua A. Rosenthal, Medlin & Hargrave, P.C., One Kaiser Plaza, Suite 1305, Oakland, CA 94612

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88 (Rev. 12/06) Subpoena in a Civil Case

| PROOF OF SERVICE | | |
|---|---|---|
| | DATE | PLACE |
| SERVED | | |
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| | | |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
        DATE                                    SIGNATURE OF SERVER

                                                ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## Attachment

1.     Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) issued from February 1, 2007 to April 1, 2007 by YOU, or at YOUR direction, to Pacific Trust Lending or any of its employees, agents or assigns as commissions or any other payment in connection with any loan origination activity. For purposes of this subpoena duces tecum, the terms "YOU" and YOUR" shall refer to the responding party.

2.     Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) issued from February 1, 2007 to April 1, 2007 by YOU, or at YOUR direction, to Pacific Real Estate or any of its employees, agents or assigns as commissions or any other payment in connection with any loan origination activity.

3.     Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) issued from February 1, 2007 to April 1, 2007 by YOU, or at YOUR direction, to Pacific Real Estate Management Company or any of its employees, agents or assigns as commissions or any other payment in connection with any loan origination activity.

4.     Records of all compensation of any form (including, but not limited to, check, cash, wire transfer of otherwise) issued from February 1, 2007 to April 1, 2007 by YOU, or at YOUR direction, to James Bowman or any of his employees, agents or assigns as commissions or any other payment in connection with any loan origination activity.

5.     Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) issued from February 1, 2007 to April 1, 2007 by YOU, or at YOUR direction, to any business entity or person located at 500 West 8th Street, Suite 100, Vancouver, WA 98660, or any employees, agents or assigns of such person and/or entity, as commissions or  any other payment in connection with any loan origination activity.

6.     Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) issued from February 1, 2007 to April 1, 2007 by YOU, or at YOUR direction, to any business entity or person located at 2505 South 320th Street, Suite 260, Federal Way, WA 98003, or any employees, agents or assigns of such person and/or entity, as commissions or any other  payment in connection with any loan origination activity.

7.     Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) received by YOU from, or at the direction of, any title company, escrow company, mortgage lender, mortgage banker or mortgage broker from February 1, 2007 to April 1, 2007 as a result of any loan origination activity by Pacific Trust Lending or any of its employees, agents or assigns.

8.     Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) received by YOU from, or at the direction of, any title company, escrow company, mortgage lender, mortgage banker or mortgage broker from February 1, 2007

to April 1, 2007 as a result of any loan origination activity by Pacific Real Estate or any of it employees, agents or assigns.

9.      Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) received by YOU from, or at the direction of, any title company, escrow company, mortgage lender, mortgage banker or mortgage broker from February 1, 2007 to April 1, 2007 as a result of any loan origination activity by Pacific Real Estate Management Company or any of its employees, agents or assigns.

10.     Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) received by YOU from, or at the direction of, any title company, escrow company, mortgage lender, mortgage banker or mortgage broker from February 1, 2007 to April 1, 2007 as a result of any loan origination activity by James Bowman or any of his employees, agents or assigns.

11.     Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) received by YOU from, or at the direction of, any title company, escrow company, mortgage lender, mortgage banker or mortgage broker from February 1, 2007 to April 1, 2007 as a result of any loan origination activity by any business entity or person located at 2505 South 320th Street, Suite 260, Federal Way, WA 98003 or any employees, agents or assigns of such person and/or entity.

12.     Records of all compensation of any form (including, but not limited to, check, cash, wire transfer or otherwise) received by YOU from, or at the direction of, any title company, escrow company, mortgage lender, mortgage banker or mortgage broker from February 1, 2007 to April 1, 2007 as a result of any loan origination activity by any business entity or person located at 500 West 8th Street, Suite 100, Vancouver, WA 98660 or any employees, agents or assigns of any such person and/or entity.

13. For each record of compensation produced in compliance with any of the above requests:

a)      the HUD-1 or HUD-1A for each related mortgage loan transaction.

b)      Any 1003 loan applications for each related mortgage loan transaction.

1

## PROOF OF SERVICE BY MAIL

2    I am over the age of eighteen years and not a party to the within action. My business address is

3  One Kaiser Plaza, Suite 1305, Oakland, California 94612, which business is located in the county where

4  the mailing described below took place.

5    I am readily familiar with my employer's business practice for collection and processing of

6  correspondence for mailing with the United States Postal Service. On the date set forth below, at my

7  place of business in Oakland, California, I served the within:

8

## SUBPOENA IN A CIVIL CASE-SIERRA PACIFIC MORTGAGE CO., INC.

9

10  by placing a true copy thereof enclosed in a sealed envelope, with postage fully prepaid, for collection

and mailing with the United States Postal Service where it would be deposited with the United States
11

Postal Service that same day in the ordinary course of business, addressed as follows:
12

13  Angela M. Xavier                          Alan F. Cohen
    Attorney At Law                           101 Montgomery Street, Suite 2050
    900 Cherry Avenue, Suite 300              San Francisco, CA 94104
14  San Bruno, CA 94583

15    I certify and declare under penalty of perjury under the laws of the State of California that the

16  foregoing is true and correct. Executed on April 3, 2008, at Oakland, California.

17

18                        Xinh Truong

19

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE
M:\CMG\85-0706-02 Bowman\Proof\mail.wpd

AO88 (Rev. 12/06) Subpoena in a Civil Case

| PROOF OF SERVICE | |
|---|---|
| DATE 4/3/08    2:10PM | PLACE 50 IRON POINT CIRCLE, STE 200 FOLSOM, CA 95630 |

| SERVED SIERRA PACIFIC MORTGAGE CO., INC. | |
|---|---|
| SERVED ON (PRINT NAME) JAMIE SCOTT, EXECUTIVE ASSISTANT, AUTHORIZED TO ACCEPT | MANNER OF SERVICE PERSONAL |
| SERVED BY (PRINT NAME) GARI GREENHALGH | TITLE REGISTERED CALIFORNIA PROCESS SERVER #92-007 SACRAMENTO COUNTY |

| DECLARATION OF SERVER | |
|---|---|

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER    ONE HOUR LEGAL
1280 BOULEVARD WAY, #205
WALNUT CREEK, CA 94596
ADDRESS OF SERVER    925-947-3470

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service. serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

| *Attorney or Party without Attorney:* JOSHUA A. ROSENTHAL MEDLIN & HARGRAVE ONE KAISER PLAZA, SUITE 1305 Oakland, CA 94612 | | | | | *For Court Use Only* |
|---|---|---|---|---|---|
| *Telephone No:* 510-832-2900 | *FAX No:* 510-832-2945 | | | | |
| *Attorney for:* Plaintiff | | *Ref. No. or File No.:* 85-0706-01 CMG BOWMAN | | | |
| *Insert name of Court, and Judicial District and Branch Court:* | | | | | |
| United States District Court, Northern District Of California | | | | | |
| *Plaintiff:* BOWMAN | | | | | |
| *Defendant:* CMG | | | | | |
| PROOF OF SERVICE SUBPOENA IN A CIVIL | *Hearing Date:* Mon, Apr. 14, 2008 | *Time:* 10:00AM | *Dept/Div:* | | *Case Number:* C073140SI |

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUBPOENA IN A CIVIL CASE; ATTACHMENT

*3. a. Party served:*  
    *b. Person served:*

        SIERRA PACIFIC MORTGAGE CO., INC.  
        JAMIE SCOTT, EXECUTIVE ASSISTANT, AUTHORIZED TO ACCEPT

*4. Address where the party was served:*

        50 IRON POINT CIRCLE, SUITE 200  
        Folsom, CA 95630

*5. I served the party:*  
    a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on: Thu., Apr. 03, 2008 (2) at: 2:10PM  
    *b. I received this subpena for service on:*    Thursday, April 03, 2008

*6. Witness fees were not demanded or paid.*

*7. Person Who Served Papers:*  
    a. GARI GREENHALGH

    1280 BOULEVARD WAY #205  
    WALNUT CREEK, CA 94595  
    (925) 947-3470  
    FAX (925) 947-3480  
    WWW.ONEHOUR.NET

Recoverable Cost Per CCP 1033.5(a)(4)(B)  
d. *The Fee for Service was:*  $110.00

e. I am: (3) registered California process server  
    *(i)* Employee  
    *(ii) Registration No.:*  #92-007  
    *(iii) County:*  SACRAMENTO

*8. I declare under penalty of perjury under the laws of the State of California and under the laws of the United States Of America that the foregoing is true and correct.*

Date:Fri, Apr. 04, 2008

        (GARI GREENHALGH)

Judicial Council Form  
Rule 2.150.(a)&(b) Rev January 1, 2007

PROOF OF SERVICE  
SUBPOENA IN A CIVIL

medljr.11152

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | | | |
|---|---|---|---|
| | 2:10PM | DATE 4/3/08 | PLACE 50 IRON POINT CIRCLE, STE 200 FOLSOM, CA 95630 |

SERVED SIERRA PACIFIC MORTGAGE CO., INC.

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| JAMIE SCOTT, EXECUTIVE ASSISTANT, AUTHORIZED TO ACCEPT | PERSONAL |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| GARI GREENHALGH | REGISTERED CALIFORNIA PROCESS SERVER #92-007/SACRAMENTO COUNTY |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER    ONE HOUR LEGAL
1280 BOULEVARD WAY, #205
WALNUT CREEK, CA 94596
ADDRESS OF SERVER    925-947-3470

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but it is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

# EXHIBIT F

Page 1 of 1

## Joshua A. Rosenthal

| From: | Anthony R. Eaton [aeaton@wilkefleury.com] |
|---|---|
| Sent: | Wednesday, April 02, 2008 3:32 PM |
| To: | jrosenthal@mhlawcorp.com |
| Subject: | Information Request |

**Attachments:** bowman.pdf

Josh,

Attached is the information we have gathered.

Thanks,

Tony

Anthony Eaton
Wilke, Fleury, Hoffelt, Gould & Birney, LLP
400 Capitol Mall, 22nd Floor
Sacramento, CA 95814
Tel  (916) 441-2430
Fax (916) 442-6664
Email:  aeaton@wilkefleury.com

CONFIDENTIALITY NOTICE: E-mail may contain confidential information that is legally privileged. Do not read this e-mail if you are not the intended recipient.

This e-mail transmission and any documents, files or previous e-mail messages attached to it may contain confidential information that is legally privileged. If you are not the intended recipient or a person responsible for delivering it to the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is strictly prohibited. If you have received this transmission in error, please immediately notify us by reply e-mail, by forwarding the message to postmaster@wilkefleury.com <mailto:postmaster@wilkefleury.com> or by telephone at (916) 441-2430 and destroy the original transmission and its attachments without reading or saving in any manner. Thank you.

loans closed 2/1/07 - 3/31/07



| FIRST_NAME | LAST_NAME | LOAN_OFFICE | LOAN_OFFICER_NAME | FUNDED_DATE |
|---|---|---|---|---|
| | | 59002 | | 21-Feb |
| | | 59002 | | 21-Feb |
| | | 58992 | | 14-Feb |
| | | 59002 | | 9-Feb |
| | | 58996 | | 20-Feb |
| | | 58996 | | 27-Feb |
| | | 58996 | | 27-Feb |
| | | 59004 | | 22-Feb |
| | | 59004 | | 26-Feb |
| | | 59001 | | 26-Feb |
| | | 59004 | | 19-Mar |
| | | 59000 | | 9-Mar |
| | | 59000 | | 8-Mar |
| | | 59000 | | 8-Mar |
| | | 59004 | | 30-Mar |
| | | 59001 | | 28-Mar |
| | | 59001 | | 5-Mar |
| | | 5900 | | 13-Mar |
| | | 59002 | | 14-Mar |
| | | 59001 | | 20-Mar |
| | | 59002 | | 30-Mar |
| | | 59004 | | 26-Mar |
| | | 59001 | | 30-Mar |
| | | 5899 | | 16-Mar |
| | | 59001 | | 29-Mar |
| | | 59001 | | 29-Mar |
| | | 58989 | | 9-Mar |
| | | 59000 | | 28-Mar |
| | | 59000 | | 28-Mar |

GENERAL LEDGER DETAIL REPORT

## SIERRA PACIFIC MORTGAGE CO.

*DETAIL POSTINGS FOR DATES 02/01/07 THRU 04/01/07*

| ACCOUNT NO / PER | DATE | JOURNAL | POSTING REMARKS | BEGINNING BAL | DEBIT | CREDIT | NET CHANGE | ENDING BAL |
|---|---|---|---|---|---|---|---|---|
| 3220-318 | | Loan Origination Fees: | | 00 | | | | 00 |
| 02 | 03/23/07 | GJ-J0551 | | | | 7,008 56 | | 7,008 56CR |
| 02 | 03/22/07 | GJ-J0551 | | | | 605 00 | | 7,613 56CR |
| 02 | 03/28/07 | GJ-J0641 | | | | 680 00 | | 8,293 56CR |
| 03 | 03/01/07 | CR-J0151 | | | | 4,966 20 | | 13,259 76CR |
| 03 | 03/06/07 | CR-J0166 | | | | 1,350 00 | | 14,609 76CR |
| 03 | 03/06/07 | CR-J0166 | | | | 3,315 51 | | 17,925 27CR |
| 03 | 03/08/07 | GJ-J0752 | | | | 6,173 28 | | 24,098 55CR |
| 03 | 03/08/07 | GJ-J0752 | | | | 582 00 | | 24,680 55CR |
| 03 | 03/09/07 | CR-J0174 | | | | 2,370 00 | | 27,050 55CR |
| 03 | 03/09/07 | CR-J0174 | | | | 797 00 | | 27,847 55CR |
| 03 | 03/09/07 | CR-J0174 | | | | 9,158 01 | | 37,005 56CR |
| 03 | 03/09/07 | GJ-J0830 | | | | 4,391 78 | | 41,397 34CR |
| 03 | 03/13/07 | GJ-J0888 | | | | 3,464 27 | | 44,861 61CR |
| 03 | 03/26/07 | CR-J0229 | | | | 3,826 06 | | 48,687 67CR |
| 03 | 03/26/07 | CR-J0229 | | | | 4,837 28 | | 53,524 95CR |
| 03 | 03/26/07 | CR-J0229 | | | | 11 89 | | 53,536 84CR |
| 03 | 03/26/07 | CR-J0229 | | | | 2,807 13 | | 56,343 97CR |
| 03 | 03/29/07 | CR-J0229 | | | | 997 37 | | 57,341 34CR |
| 03 | 03/30/07 | GJ-J1125 | | | | 5,333 38 | | 62,674 72CR |
| 03 | 03/30/07 | GJ-J1128 | | | | 1,480 19 | | 64,154 91CR |
| | | | | 00 | 00 | 64,154 91 | 64,154 91CR | 64,154 91CR |
| | | | REPORT TOTAL: | 00 | .00 | 64,154.91 | 64,154.91CR | 64,154.91CR |



.

# EXHIBIT G

# WILKE, FLEURY, HOFFELT, GOULD & BIRNEY, LLP

400 CAPITOL MALL
TWENTY - SECOND FLOOR
SACRAMENTO, CALIFORNIA 95814

PHILIP R. BIRNEY*
SCOTT L. GASSAWAY
ERNEST JAMES KRTIL
ROBERT R. MIRKIN
MATTHEW W. POWELL
STEPHEN K. MARMADUKE
DAVID A. FRENZNICK
JOHN R. VALENCIA
KELLI M. KENNADAY
ANTHONY J. DECRISTOFORO
ROBERT F. TYLER
MICHAEL G. POLIS
DANIEL L. EGAN
DANIELLE M. GUARD
DANIEL L. BAXTER

* PROFESSIONAL CORPORATION

TELEPHONE
(916) 441-2430

TELECOPIER
(916) 442-6664

RICHARD H. HOFFELT
WILLIAM A. GOULD, JR.
GENE E. PENDERCAST, JR.
THOMAS G. REDMON
RONALD R. LAMB

KIM JOHNSTON
MEGAN A. LEWIS
ERIN E. WEBER
TREVOR L. STAPLETON
ANTHONY R. EATON
CRAIG A. CARNES, JR.
MARISSA L. DRAGOO

AEATON@WILKEFLEURY.COM

April 10, 2008

Joshua A. Rosenthal
Medlin & Hargrave, P.C.
One Kaiser Plaza, Suite 1305
Oakland, CA 94612

### Re:    Subpoena re Bowman, et al. v. CMG Mortgage, Inc., et al.

Dear Mr. Rosenthal:

This firm represents Sierra Pacific Mortgage Company, Inc. ("Sierra Pacific"). We request that any further communication and correspondence regarding the above-referenced matter be directed to this office.

Enclosed you will find Sierra Pacific's written objections to the subpoena delivered via fax to Sierra Pacific on or about April 3, 2008. These objections are provided pursuant to Federal Rule of Civil Procedure 45(c)(2)(B). As there was no proof of service included with the fax received by my client, I am unaware of the identity or service information related to any party to the underlying litigation other than Mr. Bowman. I do have contact information for counsel to Mr. Bowman and, by copy of this letter, have provided them with Sierra Pacific's objections.

In order to avoid the specter of my client being accused of providing information to one party at the expense of all others, please ensure that all parties receive our initial response to this subpoena.

While I am certain that many of the issues raised in our response can be worked out, I do anticipate requiring the Court's guidance relative to the applicability of California's Consumer Notice Statutes relative to the personal and confidential information that you are seeking.

Joshua A. Rosenthal
April 10, 2008
Page 2

Please do not hesitate to contact me with any questions or concerns that you may have.

Very truly yours,

WILKE, FLEURY, HOFFELT, GOULD &
BIRNEY, LLP

Anthony R. Eaton

ARE:vg
Enclosure
351424.1

1  WILKE, FLEURY, HOFFELT, GOULD & BIRNEY, LLP
   ANTHONY R. EATON (SBN 238070)
2  400 Capitol Mall, Twenty-Second Floor
   Sacramento, CA 95814
3  Telephone:    (916) 441-2430
   Facsimile:    (916) 442-6664
4
   Attorneys for Non-Party
5
   SIERRA PACIFIC MORTGAGE COMPANY, INC.
6

7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10

11                                        Case No. C 07 3140 SI (as stated on
   JAMES W. BOWMAN,                       subpoena)
12
                Plaintiff,
13
        v.
14
   CMG Mortgage, Inc., et al.
15
                Defendants.
16

17     **SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA
       ISSUED BY JOSHUA A. ROSENTHAL, "ATTORNEY FOR DEFENDANTS"**
18

19         Pursuant to Rule 45 of the Federal Rules of Civil Procedure SIERRA PACIFIC

20 MORTGAGE COMPANY, INC. ("Sierra Pacific"), a non-party, objects to the Subpoena issued

21 by Joshua A. Rosenthal ("Subpoena") on the following grounds.

22                          **GENERAL OBJECTIONS**

23         1.     Sierra Pacific generally objects to the Subpoena on the ground that the Subpoena

24 was delivered to Sierra Pacific via facsimile to a general facsimile number. Delivery by fax to a

25 general facsimile number at a corporation does not constitute valid service of a subpoena under

26 Federal Rule of Civil Procedure 45.

27         2.     Sierra Pacific generally objects that the Subpoena fails to allow reasonable time to

28 comply as required by Federal Rule of Civil Procedure 45.

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP        351334.1                    - 1 -
ATTORNEYS AT LAW
SACRAMENTO         SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL

1    3.    Sierra Pacific generally objects that notice of the Subpoena has not been served to
2    all parties as required by Federal Rule of Civil Procedure 45.

3    4.    Sierra Pacific generally objects that the Subpoena subjects it to undue burden and
4    cost to recover and produce any potentially responsive documentation.

5    5.    Sierra Pacific generally objects to the Subpoena in that the document requests are
6    not reasonably calculated to lead to the discovery of admissible evidence and, therefore, are
7    outside the permissible scope of discovery.

8    6.    Sierra Pacific generally objects to the Subpoena on the ground that it is overbroad
9    in terms of the breadth of the document requests themselves.

10    7.    Sierra Pacific generally objects to the Subpoena to the extent it purports to impose
11    burdens beyond the scope allowable under the applicable Federal Rules of Civil Procedure.

12    8.    Sierra Pacific generally objects to the Subpoena to the extent that it purports to
13    seek or require the production of documents subject to, and in violation of the Consumer's Right
14    to Privacy, Sierra Pacific's borrowers (who are also not parties to this lawsuit) Rights to Privacy
15    and any other applicable privilege or protection.

16    9.    Sierra Pacific generally objects to the production of any of Sierra Pacific's
17    confidential or proprietary documents.

18    10.    Sierra Pacific generally objects that the Subpoena purports to seek trade secrets
19    and confidential commercial information in violation of Federal Rule of Civil Procedure 45.

20                                   **SPECIFIC OBJECTIONS**

21    **REQUEST NO. 1:**

22    Records of all compensation of any form (including, but not limited to, check, cash, wire
23    transfer or otherwise) issued from February 1, 2007 to April 1, 2007 by YOU, or at YOUR
24    direction, to Pacific Trust Lending or any of its employees, agents or assigns as commissions or
25    any other payment in connection with any loan origination activity. For purposes of this
26    subpoena deuces tecum, the terms "YOU" and "YOUR" shall refer to the responding party.

27    **OBJECTION TO REQUEST NO. 1:**

28    Sierra Pacific incorporates its General Obligations.

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

351334.1                                   - 2 -

SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL

1    Sierra Pacific specifically objects to this document request on the ground that it is vague

2    and ambiguous.  The request is vague and ambiguous to the extent it seeks records of all

3    compensation of any form issued to "Pacific Trust Lending or any of its employees, agents or

4    assigns" without identifying Pacific Trust Lending and/or any of its employees, agents or assigns.

5    The request is also vague and ambiguous to the extent that it seeks records of "commissions or

6    any other payment in connection with any loan origination activity" without defining what falls

7    under the term "loan origination activity."

8    Sierra Pacific further objects that this request is overbroad as to scope to the extent that it

9    is not limited to records that have any bearing on, or relationship to, the matters at issue in the

10   underlying action.

11   Sierra Pacific further objects to this document request on the ground that it seeks

12   documents not relevant to the subject matter of this action or reasonably calculated to lead to the

13   discovery of admissible evidence.

14   Sierra Pacific further objects to this document request on the ground that it seeks

15   documents from a non-party to this litigation that should be sought and obtained from the parties

16   to the litigation and/or from James Bowman, the plaintiff in the related action.

17   Sierra Pacific further objects to this document request on the ground that it seeks

18   production of confidential documents, the disclosure of which would violate the constitutional

19   right to privacy of persons not a party to the underlying litigation.

20   Sierra Pacific further objects that disclosure of the requested documents would be in

21   violation of California Code of Civil Procedure §1985.3.

22   Sierra Pacific further objects to this request to the extent that it seeks production of trade

23   secrets and other confidential commercial information such as the identity and personal/financial

24   information of the customers/borrowers of Sierra Pacific.  Such information is critical in the

25   marketing of mortgage services.

26   **REQUEST NO. 2:**

27   Records of all compensation of any form (including, but not limited to, check, cash, wire

28   transfer or otherwise) issued from February 1, 2007 to April 1, 2007 by YOU, or at YOUR

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

351334.1                                           - 3 -

SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL

1   direction, to Pacific Real Estate or any of its employees, agents or assigns as commissions or any

2   other payment in connection with any loan origination activity.

3   **OBJECTION TO REQUEST NO. 2:**

4         Sierra Pacific incorporates its General Obligations.

5         Sierra Pacific specifically objects to this document request on the ground that it is vague

6   and ambiguous. The request is vague and ambiguous to the extent it seeks records of all

7   compensation of any form issued to "Pacific Real Estate or any of its employees, agents or

8   assigns" without identifying Pacific Real Estate and/or any of its employees, agents or assigns.

9   The request is also vague and ambiguous to the extent that it seeks records of "commissions or

10   any other payment in connection with any loan origination activity" without defining what falls

11   under the term "loan origination activity."

12         Sierra Pacific further objects that this request is overbroad as to scope to the extent that it

13   is not limited to records that have any bearing on, or relationship to, the matters at issue in the

14   underlying action.

15         Sierra Pacific further objects to this document request on the ground that it seeks

16   documents not relevant to the subject matter of this action or reasonably calculated to lead to the

17   discovery of admissible evidence.

18         Sierra Pacific further objects to this document request on the ground that it seeks

19   documents from a non-party to this litigation that should be sought and obtained from the parties

20   to the litigation and/or from James Bowman, the plaintiff in the related action.

21         Sierra Pacific further objects to this document request on the ground that it seeks

22   production of confidential documents, the disclosure of which would violate the constitutional

23   right to privacy of persons not a party to the underlying litigation.

24         Sierra Pacific further objects that disclosure of the requested documents would be in

25   violation of California Code of Civil Procedure §1985.3.

26         Sierra Pacific further objects to this request to the extent that it seeks production of trade

27   secrets and other confidential commercial information such as the identity and personal/financial

28

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

351334.1          - 4 -

SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL

1    information of the customers/borrowers of Sierra Pacific. Such information is critical in the

2    marketing of mortgage services.

3    **REQUEST NO. 3:**

4        Records of all compensation of any form (including, but not limited to, check, cash, wire

5    transfer or otherwise) issued from February 1, 2007 to April 1, 2007 by YOU, or at YOUR

6    direction, to Pacific Real Estate Management Company or any of its employees, agents or assigns

7    as commissions or any other payment in connection with any loan origination activity.

8    **OBJECTION TO REQUEST NO. 3:**

9        Sierra Pacific incorporates its General Obligations.

10       Sierra Pacific specifically objects to this document request on the ground that it is vague

11   and ambiguous. The request is vague and ambiguous to the extent it seeks records of all

12   compensation of any form issued to "Pacific Real Estate Management Company or any of its

13   employees, agents or assigns" without identifying Pacific Real Estate Management Company

14   and/or any of its employees, agents or assigns. The request is also vague and ambiguous to the

15   extent that it seeks records of "commissions or any other payment in connection with any loan

16   origination activity" without defining what falls under the term "loan origination activity."

17       Sierra Pacific further objects that this request is overbroad as to scope to the extent that it

18   is not limited to records that have any bearing on, or relationship to, the matters at issue in the

19   underlying action.

20       Sierra Pacific further objects to this document request on the ground that it seeks

21   documents not relevant to the subject matter of this action or reasonably calculated to lead to the

22   discovery of admissible evidence.

23       Sierra Pacific further objects to this document request on the ground that it seeks

24   documents from a non-party to this litigation that should be sought and obtained from the parties

25   to the litigation and/or from James Bowman, the plaintiff in the related action.

26       Sierra Pacific further objects to this document request on the ground that it seeks

27   production of confidential documents, the disclosure of which would violate the constitutional

28   right to privacy of persons not a party to the underlying litigation.

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

351334.1                                  - 5 -

SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL

1    Sierra Pacific further objects that disclosure of the requested documents would be in
2    violation of California Code of Civil Procedure §1985.3.

3    Sierra Pacific further objects to this request to the extent that it seeks production of trade
4    secrets and other confidential commercial information such as the identity and personal/financial
5    information of the customers/borrowers of Sierra Pacific. Such information is critical in the
6    marketing of mortgage services.

7    **REQUEST NO. 4:**

8    Records of all compensation of any form (including, but not limited to, check, cash, wire
9    transfer or otherwise) issued from February 1, 2007 to April 1, 2007 by YOU, or at YOUR
10   direction, to James Bowman or any of his employees, agents or assigns as commissions or any
11   other payment in connection with any loan origination activity.

12   **OBJECTION TO REQUEST NO. 4:**

13   Sierra Pacific incorporates its General Obligations.

14   Sierra Pacific specifically objects to this document request on the ground that it is vague
15   and ambiguous. The request is vague and ambiguous to the extent it seeks records of all
16   compensation of any form issued to "James Bowman or any of his employees, agents or assigns"
17   without identifying any of James Bowman's employees, agents or assigns. The request is also
18   vague and ambiguous to the extent that it seeks records of "commissions or any other payment in
19   connection with any loan origination activity" without defining what falls under the term "loan
20   origination activity."

21   Sierra Pacific further objects that this request is overbroad as to scope to the extent that it
22   is not limited to records that have any bearing on, or relationship to, the matters at issue in the
23   underlying action.

24   Sierra Pacific further objects to this document request on the ground that it seeks
25   documents not relevant to the subject matter of this action or reasonably calculated to lead to the
26   discovery of admissible evidence.

27
28

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

351334.1                                      - 6 -

SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL

1    Sierra Pacific further objects to this document request on the ground that it seeks
2    documents from a non-party to this litigation that should be sought and obtained from the parties
3    to the litigation and/or from James Bowman, the plaintiff in the related action.

4    Sierra Pacific further objects to this document request on the ground that it seeks
5    production of confidential documents, the disclosure of which would violate the constitutional
6    right to privacy of persons not a party to the underlying litigation.

7    Sierra Pacific further objects that disclosure of the requested documents would be in
8    violation of California Code of Civil Procedure §1985.3.

9    Sierra Pacific further objects to this request to the extent that it seeks production of trade
10   secrets and other confidential commercial information such as the identity and personal/financial
11   information of the customers/borrowers of Sierra Pacific.  Such information is critical in the
12   marketing of mortgage services.

13   **REQUEST NO. 5:**

14   Records of all compensation of any form (including, but not limited to, check, cash, wire
15   transfer or otherwise) issued from February 1, 2007 to April 1, 2007 by YOU, or at YOUR
16   direction, to any business entity or person located at 500 West 8th Street, Suite 100, Vancouver,
17   WA 98660, or any employees, agents or assigns of such person and/or entity, as commissions or
18   any other payment in connection with any loan origination activity.

19   **OBJECTION TO REQUEST NO. 5:**

20   Sierra Pacific incorporates its General Obligations.

21   Sierra Pacific specifically objects to this document request on the ground that it is vague
22   and ambiguous.  The request is vague and ambiguous to the extent it seeks records of all
23   compensation of any form issued to "any business entity or person located at 500 West 8th Street,
24   Suite 100, Vancouver, WA 98660, or any employees, agents or assigns of such person and/or
25   entity" without identifying any such entities and/or any of those entities' employees, agents or
26   assigns.  The request is also vague and ambiguous to the extent that it seeks records of
27   "commissions or any other payment in connection with any loan origination activity" without
28   defining what falls under the term "loan origination activity."

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

351334.1                                      - 7 -

SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL

1    Sierra Pacific further objects that this request is overbroad as to scope to the extent that it

2    is not limited to records that have any bearing on, or relationship to, the matters at issue in the

3    underlying action.

4    Sierra Pacific further objects to this document request on the ground that it seeks

5    documents not relevant to the subject matter of this action or reasonably calculated to lead to the

6    discovery of admissible evidence.

7    Sierra Pacific further objects to this document request on the ground that it seeks

8    documents from a non-party to this litigation that should be sought and obtained from the parties

9    to the litigation and/or from James Bowman, the plaintiff in the related action.

10    Sierra Pacific further objects to this document request on the ground that it seeks

11    production of confidential documents, the disclosure of which would violate the constitutional

12    right to privacy of persons not a party to the underlying litigation.

13    Sierra Pacific further objects that disclosure of the requested documents would be in

14    violation of California Code of Civil Procedure §1985.3.

15    Sierra Pacific further objects to this request to the extent that it seeks production of trade

16    secrets and other confidential commercial information such as the identity and personal/financial

17    information of the customers/borrowers of Sierra Pacific.  Such information is critical in the

18    marketing of mortgage services.

19    **REQUEST NO. 6:**

20    Records of all compensation of any form (including, but not limited to, check, cash, wire

21    transfer or otherwise) issued from February 1, 2007 to April 1, 2007 by YOU, or at YOUR

22    direction, to any business entity or person located at 2505 South 320th Street, Suite 260, Federal

23    Way, WA 98003, or any employees, agents or assigns of such person and/or entity, as

24    commissions or any other payment in connection with any loan origination activity.

25    **OBJECTION TO REQUEST NO. 6:**

26    Sierra Pacific incorporates its General Obligations.

27    Sierra Pacific specifically objects to this document request on the ground that it is vague

28    and ambiguous.  The request is vague and ambiguous to the extent it seeks records of all

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

351334.1                                    - 8 -

1    compensation of any form issued to "any business entity or person located at 2505 South 320th

2    Street, Suite 260, Federal Way, WA 98003, or any employees, agents or assigns of such person

3    and/or entity" without identifying any such entities and/or any of those entities' employees,

4    agents or assigns. The request is also vague and ambiguous to the extent that it seeks records of

5    "commissions or any other payment in connection with any loan origination activity" without

6    defining what falls under the term "loan origination activity."

7        Sierra Pacific further objects that this request is overbroad as to scope to the extent that it

8    is not limited to records that have any bearing on, or relationship to, the matters at issue in the

9    underlying action.

10        Sierra Pacific further objects to this document request on the ground that it seeks

11    documents not relevant to the subject matter of this action or reasonably calculated to lead to the

12    discovery of admissible evidence.

13        Sierra Pacific further objects to this document request on the ground that it seeks

14    documents from a non-party to this litigation that should be sought and obtained from the parties

15    to the litigation and/or from James Bowman, the plaintiff in the related action.

16        Sierra Pacific further objects to this document request on the ground that it seeks

17    production of confidential documents, the disclosure of which would violate the constitutional

18    right to privacy of persons not a party to the underlying litigation.

19        Sierra Pacific further objects that disclosure of the requested documents would be in

20    violation of California Code of Civil Procedure §1985.3.

21        Sierra Pacific further objects to this request to the extent that it seeks production of trade

22    secrets and other confidential commercial information such as the identity and personal/financial

23    information of the customers/borrowers of Sierra Pacific. Such information is critical in the

24    marketing of mortgage services.

25    **REQUEST NO. 7:**

26        Records of all compensation of any form (including, but not limited to, check, cash, wire

27    transfer or otherwise) received by YOU from, or at the direction of, any title company, escrow

28    company, mortgage lender, mortgage banker or mortgage broker from February 1, 2007 to April

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

351334.1                                    - 9 -

SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL

1    1, 2007 as a result of any loan origination activity by Pacific Trust Lending or any of its

2    employees, agents or assigns.

3    **OBJECTION TO REQUEST NO. 7:**

4        Sierra Pacific incorporates its General Obligations.

5        Sierra Pacific specifically objects to this document request on the ground that it is vague

6    and ambiguous. The request is vague and ambiguous to the extent that it seeks records of

7    compensation received "as a result of any loan origination activity by Pacific Trust Lending or

8    any of its employees, agents or assigns" without defining what falls under the term "loan

9    origination activity" or identifying Pacific Trust Lending and/or any of its employees, agents or

10    assigns.

11        Sierra Pacific further objects to this request in that it calls for speculation and lacks

12    foundation in that Sierra Pacific is unaware of any direction relative to compensation given by

13    any (as of yet unidentified) title companies, escrow companies, mortgage lenders, mortgage

14    bankers or mortgage brokers.

15        Sierra Pacific further objects to this request to the extent that it seeks production of trade

16    secrets and other confidential commercial information such as the identity and personal/financial

17    information of the customers/borrowers of Sierra Pacific. Such information is critical in the

18    marketing of mortgage services.

19        Sierra Pacific further objects that this request is overbroad as to scope to the extent that it

20    is not limited to records that have any bearing on, or relationship to, the matters at issue in the

21    underlying action.

22        Sierra Pacific further objects to this document request on the ground that it seeks

23    documents not relevant to the subject matter of this action or reasonably calculated to lead to the

24    discovery of admissible evidence.

25        Sierra Pacific further objects to this document request on the ground that it seeks

26    production of confidential documents, the disclosure of which would violate Sierra Pacific's right

27    to privacy as an entity which is not a party to the underlying litigation.

28

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

351334.1           - 10 -

SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL

1    **REQUEST NO. 8:**

2    Records of all compensation of any form (including, but not limited to, check, cash, wire

3    transfer or otherwise) received by YOU from, or at the direction of, any title company, escrow

4    company, mortgage lender, mortgage banker or mortgage broker from February 1, 2007 to April

5    1, 2007 as a result of any loan origination activity by Pacific Real Estate or any of its employees,

6    agents or assigns.

7    **OBJECTION TO REQUEST NO. 8:**

8    Sierra Pacific incorporates its General Obligations.

9    Sierra Pacific specifically objects to this document request on the ground that it is vague

10    and ambiguous.   The request is vague and ambiguous to the extent that it seeks records of

11    compensation received "as a result of any loan origination activity by Pacific Real Estate or any

12    of its employees, agents or assigns" without defining what falls under the term "loan origination

13    activity" or identifying Pacific Real Estate and/or any of its employees, agents or assigns.

14    Sierra Pacific further objects to this request in that it calls for speculation and lacks

15    foundation in that Sierra Pacific is unaware of any direction relative to compensation given by

16    any (as of yet unidentified) title companies, escrow companies, mortgage lenders, mortgage

17    bankers or mortgage brokers.

18    Sierra Pacific further objects to this request to the extent that it seeks production of trade

19    secrets and other confidential commercial information such as the identity and personal/financial

20    information of the customers/borrowers of Sierra Pacific.   Such information is critical in the

21    marketing of mortgage services.

22    Sierra Pacific further objects that this request is overbroad as to scope to the extent that it

23    is not limited to records that have any bearing on, or relationship to, the matters at issue in the

24    underlying action.

25    Sierra Pacific further objects to this document request on the ground that it seeks

26    documents not relevant to the subject matter of this action or reasonably calculated to lead to the

27    discovery of admissible evidence.

28

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

351334.1                                   - 11 -

SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL

1      Sierra Pacific further objects to this document request on the ground that it seeks

2   production of confidential documents, the disclosure of which would violate Sierra Pacific's right

3   to privacy as an entity which is not a party to the underlying litigation.

4   **REQUEST NO. 9:**

5      Records of all compensation of any form (including, but not limited to, check, cash, wire

6   transfer or otherwise) received by YOU from, or at the direction of, any title company, escrow

7   company, mortgage lender, mortgage banker or mortgage broker from February 1, 2007 to April

8   1, 2007 as a result of any loan origination activity by Pacific Real Estate Management Company

9   or any of its employees, agents or assigns.

10   **OBJECTION TO REQUEST NO. 9:**

11      Sierra Pacific incorporates its General Obligations.

12      Sierra Pacific specifically objects to this document request on the ground that it is vague

13   and ambiguous. The request is vague and ambiguous to the extent that it seeks records of

14   compensation received "as a result of any loan origination activity by Pacific Real Estate

15   Management Company or any of its employees, agents or assigns" without defining what falls

16   under the term "loan origination activity" or identifying Pacific Real Estate Management

17   Company and/or any of its employees, agents or assigns.

18      Sierra Pacific further objects to this request in that it calls for speculation and lacks

19   foundation in that Sierra Pacific is unaware of any direction relative to compensation given by

20   any (as of yet unidentified) title companies, escrow companies, mortgage lenders, mortgage

21   bankers or mortgage brokers.

22      Sierra Pacific further objects to this request to the extent that it seeks production of trade

23   secrets and other confidential commercial information such as the identity and personal/financial

24   information of the customers/borrowers of Sierra Pacific. Such information is critical in the

25   marketing of mortgage services.

26      Sierra Pacific further objects that this request is overbroad as to scope to the extent that it

27   is not limited to records that have any bearing on, or relationship to, the matters at issue in the

28   underlying action.

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

351334.1                                      - 12 -

1    Sierra Pacific further objects to this document request on the ground that it seeks

2  documents not relevant to the subject matter of this action or reasonably calculated to lead to the

3  discovery of admissible evidence.

4    Sierra Pacific further objects to this document request on the ground that it seeks

5  production of confidential documents, the disclosure of which would violate Sierra Pacific's right

6  to privacy as an entity which is not a party to the underlying litigation.

7  **REQUEST NO. 10:**

8    Records of all compensation of any form (including, but not limited to, check, cash, wire

9  transfer or otherwise) received by YOU from, or at the direction of, any title company, escrow

10  company, mortgage lender, mortgage banker or mortgage broker from February 1, 2007 to April

11  1, 2007 as a result of any loan origination activity by James Bowman or any of his employees,

12  agents or assigns.

13  **OBJECTION TO REQUEST NO. 10:**

14    Sierra Pacific incorporates its General Obligations.

15    Sierra Pacific specifically objects to this document request on the ground that it is vague

16  and ambiguous.  The request is vague and ambiguous to the extent that it seeks records of

17  compensation received as a result of any loan origination activity by James Bowman or any of his

18  employees, agents or assigns" without defining what falls under the term "loan origination

19  activity" or identifying any of James Bowman's employees, agents or assigns.

20    Sierra Pacific further objects to this request in that it calls for speculation and lacks

21  foundation in that Sierra Pacific is unaware of any direction relative to compensation given by

22  any (as of yet unidentified) title companies, escrow companies, mortgage lenders, mortgage

23  bankers or mortgage brokers.

24    Sierra Pacific further objects to this request to the extent that it seeks production of trade

25  secrets and other confidential commercial information such as the identity and personal/financial

26  information of the customers/borrowers of Sierra Pacific.  Such information is critical in the

27  marketing of mortgage services.

28

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

351334.1                                   - 13 -

1        .      Sierra Pacific further objects that this request is overbroad as to scope to the extent that it

2  is not limited to records that have any bearing on, or relationship to, the matters at issue in the

3  underlying action.

4         Sierra Pacific further objects to this document request on the ground that it seeks

5  documents not relevant to the subject matter of this action or reasonably calculated to lead to the

6  discovery of admissible evidence.

7         Sierra Pacific further objects to this document request on the ground that it seeks

8  production of confidential documents, the disclosure of which would violate Sierra Pacific's right

9  to privacy as an entity which is not a party to the underlying litigation.

10  **REQUEST NO. 11:**

11         Records of all compensation of any form (including, but not limited to, check, cash, wire

12  transfer or otherwise) received by YOU from, or at the direction of, any title company, escrow

13  company, mortgage lender, mortgage banker or mortgage broker from February 1, 2007 to April

14  1, 2007 as a result of any loan origination activity by any business entity or person located at

15  2505 South 320th Street, Suite 260, Federal Way, WA 98003 or any employees, agents or assigns

16  of such person and/or entity.

17  **OBJECTION TO REQUEST NO. 11:**

18         Sierra Pacific incorporates its General Obligations.

19         Sierra Pacific specifically objects to this document request on the ground that it is vague

20  and ambiguous. ·The request is vague and ambiguous to the extent that it seeks records of

21  compensation received "as a result of any loan origination activity by any business entity or

22  person located at 2505 South 320th Street, Suite 260, Federal Way, WA 98003 or any employees,

23  agents or assigns of such person and/or entity" without defining what falls under the term "loan

24  origination activity" or identifying any business entity or person located at 2505 South 320th

25  Street, Suite 260, Federal Way, WA 98003 and/or any employees, agents or assigns of such

26  person and/or entity.

27         Sierra Pacific further objects to this request in that it calls for speculation and lacks

28  foundation in that Sierra Pacific is unaware of any direction relative to compensation given by

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

351334.1                                    - 14 -

1    any (as of yet unidentified) title companies, escrow companies, mortgage lenders, mortgage

2    bankers or mortgage brokers.

3        Sierra Pacific further objects to this request to the extent that it seeks production of trade

4    secrets and other confidential commercial information such as the identity and personal/financial

5    information of the customers/borrowers of Sierra Pacific.  Such information is critical in the

6    marketing of mortgage services.

7        Sierra Pacific further objects that this request is overbroad as to scope to the extent that it

8    is not limited to records that have any bearing on, or relationship to, the matters at issue in the

9    underlying action.

10       Sierra Pacific further objects to this document request on the ground that it seeks

11   documents not relevant to the subject matter of this action or reasonably calculated to lead to the

12   discovery of admissible evidence.

13       Sierra Pacific further objects to this document request on the ground that it seeks

14   production of confidential documents, the disclosure of which would violate Sierra Pacific's right

15   to privacy as an entity which is not a party to the underlying litigation.

16   **REQUEST NO. 12:**

17       Records of all compensation of any form (including, but not limited to, check, cash, wire

18   transfer or otherwise) received by YOU from, or at the direction of, any title company, escrow

19   company, mortgage lender, mortgage banker or mortgage broker from February 1, 2007 to April

20   1, 2007 as a result of any loan origination activity by any business entity or person located at 500

21   West 8th Street, Suite 100, Vancouver, WA 98660 or any employees, agents or assigns of such

22   person and/or entity.

23   **OBJECTION TO REQUEST NO. 12:**

24       Sierra Pacific incorporates its General Obligations.

25       Sierra Pacific specifically objects to this document request on the ground that it is vague

26   and ambiguous.  The request is vague and ambiguous to the extent that it seeks records of

27   compensation received "as a result of any loan origination activity by any business entity or

28   person located at 500 West 8th Street, Suite 100, Vancouver, WA 98660 or any employees, agents

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

351334.1                                    - 15 -

SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL

1   or assigns of such person and/or entity" without defining what falls under the term "loan

2   origination activity" or identifying any business entity or person located at 500 West 8th Street,

3   Suite 100, Vancouver, WA 98660 and/or any employees, agents or assigns of such person and/or

4   entity.

5        Sierra Pacific further objects to this request in that it calls for speculation and lacks

6   foundation in that Sierra Pacific is unaware of any direction relative to compensation given by

7   any (as of yet unidentified) title companies, escrow companies, mortgage lenders, mortgage

8   bankers or mortgage brokers.

9        Sierra Pacific further objects to this request to the extent that it seeks production of trade

10   secrets and other confidential commercial information such as the identity and personal/financial

11   information of the customers/borrowers of Sierra Pacific.  Such information is critical in the

12   marketing of mortgage services.

13        Sierra Pacific further objects that this request is overbroad as to scope to the extent that it

14   is not limited to records that have any bearing on, or relationship to, the matters at issue in the

15   underlying action.

16        Sierra Pacific further objects to this document request on the ground that it seeks

17   documents not relevant to the subject matter of this action or reasonably calculated to lead to the

18   discovery of admissible evidence.

19        Sierra Pacific further objects to this document request on the ground that it seeks

20   production of confidential documents, the disclosure of which would violate Sierra Pacific's right

21   to privacy as an entity which is not a party to the underlying litigation.

22   **REQUEST NO. 13:**

23        For each record of compensation produced in compliance with any of the above requests:

24       a)    The HUD-1 or HUD-1A for each related mortgage loan transaction.

25       b)    Any 1003 loan applications for each related mortgage loan transaction.

26   **OBJECTION TO REQUEST NO. 13:**

27        Sierra Pacific incorporates its General Obligations.

28

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

351334.1              - 16 -

1    Sierra Pacific further objects that this request is overbroad as to scope to the extent that it

2    is not limited to records that have any bearing on, or relationship to, the matters at issue in the

3    underlying action.

4    Sierra Pacific further objects to this document request on the ground that it seeks

5    documents not relevant to the subject matter of this action or reasonably calculated to lead to the

6    discovery of admissible evidence.

7    Sierra Pacific further objects to this document request on the ground that it seeks

8    documents from a non-party to this litigation that should be sought and obtained from the parties

9    to the litigation and/or from James Bowman, the plaintiff in the related action.

10    Sierra Pacific further objects to this document request on the ground that it seeks

11    production of confidential documents, the disclosure of which would violate the constitutional

12    right to privacy of persons not a party to the underlying litigation.

13    Sierra Pacific further objects to this request to the extent that it purports to seek or require

14    the production of documents subject to, and in violation of the Consumer's Right to Privacy,

15    Sierra Pacific's borrowers (who are also not parties to this lawsuit) Rights to Privacy and any

16    other applicable privilege or protection.

17    Sierra Pacific further objects that disclosure of the requested documents would be in

18    violation of California Code of Civil Procedure §1985.3.

19    Sierra Pacific further objects to this request to the extent that it seeks production of trade

20    secrets and other confidential commercial information such as the identity and personal/financial

21    information of the customers/borrowers of Sierra Pacific. Such information is critical in the

22    marketing of mortgage services.

23    Dated:    April 10 , 2008                    WILKE, FLEURY, HOFFELT,
                                                    GOULD & BIRNEY, LLP
24

25                                                BY: _____

26                                                    ANTHONY R. EATON
                                                    Attorneys for Non-Party
27                                                SIERRA PACIFIC MORTGAGE COMPANY,
                                                    INC.
28

WILKE, FLEURY,
HOFFELT, GOULD &
BIRNEY, LLP
ATTORNEYS AT LAW
SACRAMENTO

351334.1                            - 17 -

SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL

**PROOF OF SERVICE**

I, Victoria Garner, declare:

I am a citizen of the United States and employed in Sacramento County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 400 Capitol Mall, Twenty-Second Floor, Sacramento, California 95814. On April 10, 2008, I served a copy of the within document(s):

**SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL, "ATTORNEY FOR DEFENDANTS"**

☒ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Sacramento, California addressed as set forth below.

☒ by placing the document(s) listed above in a sealed Federal Express envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a Federal Express agent for delivery.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

Joshua A. Rosenthal
Medlin & Hargrave, P.C.
One Kaiser Plaza, Suite 1305
Oakland, CA 94612
Fax: (510) 832-2945

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

WILKE, FLEURY, HOFFELT, GOULD & BIRNEY, LLP
ATTORNEYS AT LAW

351601.1

1    Executed on April 10, 2008, at Sacramento, California.

2

3    _____

4    Victoria Garner

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I, Victoria Garner, declare:

I am a citizen of the United States and employed in Sacramento County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 400 Capitol Mall, Twenty-Second Floor, Sacramento, California 95814. On April 10, 2008, I served a copy of the within document(s):

> **SIERRA PACIFIC MORTGAGE COMPANY'S OBJECTIONS TO SUBPOENA ISSUED BY JOSHUA A. ROSENTHAL, "ATTORNEY FOR DEFENDANTS"**

☒ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Sacramento, California addressed as set forth below.

☐ by placing the document(s) listed above in a sealed _____ envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a _____ agent for delivery.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

Alan Cohen
101 Montgomery Street, Suite 2050
San Francisco, CA 94104
Fax: (415) 984-1953

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on April 10, 2008, at Sacramento, California.

Victoria Garner

# EXHIBIT H

1  David R. Medlin      (SBN 77417)
   G. Bradley Hargrave   (SBN 173911)
2  Joshua A. Rosenthal   (SBN 190284)
   MEDLIN & HARGRAVE
3  A Professional Corporation
   One Kaiser Plaza, Suite 1305
4  Oakland, CA  94612
   Telephone:    (510) 832-2900
5  Facsimile:    (510) 832-2945

6  Attorneys for Defendants and Counter-Claimant

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10 James W. Bowman, Jr. and Pacific Real Estate     Case No.: C 07 3140 SI
   Management Company, Inc., a Washington
11 Corporation,                                     COUNTER-CLAIM FOR DAMAGES FOR:

12              Plaintiffs,                          1)   BREACH OF CONTRACT
            vs.                                      2)   CONVERSION
13                                                   3)   VIOLATION OF THE UNIFORM
   CMG Mortgage Inc., a California Corporation;           TRADE SECRETS ACT
14 CMG Mortgage, Inc., d/b/a Pacific Guarantee       4)   INTENTIONAL INTERFERENCE
   Mortgage, CMG Mortgage Services, Inc., a              WITH PROSPECTIVE ECONOMIC
15 California Corporation, CMG Mortgage Services,        ADVANTAGE
   Inc. d/b/a Pacific Guarantee Mortgage,
16
                Defendants.
17
   _____/       **JURY TRIAL DEMANDED**
18
   CMG Mortgage Inc., a California Corporation
19
                Counter-Claimant,
20
21          vs.

22 James W. Bowman, Jr., an individual,

23
                Cross-Defendant.
24 _____/

25        Counter-claimant CMG Mortgage, Inc. alleges as follows:

26 **JURISDICTION**

27        1.    The jurisdiction of this Court over the subject matter of this counter-claim is predicated

28 on FRCP 13(a), 13(e) and due to this Court's supplemental jurisdiction over counterclaims that are not

                                          1

1  compulsory but sufficiently related to plaintiffs' claims that they form part of the same constitutional

2  case or controversy.  HB Gen. Corp. V. Manchester Partners, L.P. (3rd Cir. 1996) 95 F.3d 1185, 1198.

3  **PARTIES**

4       2.      Counter-claimant CMG Mortgage, Inc. ("CMG") is a California corporation engaged in

5  the business of originating and funding residential mortgage loans.

6       3.      CMG is informed and believes and based thereon alleges that cross-defendant James

7  Bowman ("Bowman") is, and at all times relevant herein was, a Washington resident.  CMG is informed

8  and believes and thereon alleges that Bowman is, and at all times relevant herein was, the president of

9   Pacific Real Estate Management Company, Inc. ("PREMCO"), a Washington corporation

10  **STATEMENT OF FACTS**

11       4.      For approximately 10 years Bowman has conducted business as a net branch operator

12  with various residential mortgage companies such as Mortgage Market, Prism Financial, RBC Mortgage

13  of California (a subside of Royal Bank of Canada) and Citybank.  In 2003, CMG purchased RBC's net

14  branching operation known as Pacific Guarantee Mortgage ("PGM").  Thereafter in 2003, Bowman

15  became a net branch operator for CMG.

16       5.      The term "net branch" is a term of art in the mortgage industry.  It is essentially a method

17  of business which allows a small mortgage business, often with fewer assets and/or limited lender

18  relationships to be more competitive by affiliating with a larger company.  In this instance, Bowman's

19  affiliation with CMG afforded him access to CMG's nationwide network of lenders, as well as CMG's

20  own mortgage banking operation.  The essence of a net branching arrangement is to allow the smaller

21  mortgage business effectively to remain in business for itself, while realizing the benefits of association

22  with a much larger company.  Because the small mortgage business (the "net branch operator") remains

23  independent, at least to the maximum extent legally permissible, the operator (in this instance, Bowman)

24  continues to be "in business for himself."  Being in business for himself, the net branch operator realizes

25  not merely most of the net profits of his net branch operation - but rather 100% of the net profits.  All net

26  profits enure to the benefit of the net branch operator.

27       6.      The concept, therefore, of net branching is simple enough - individual operators, such as

28  Bowman, associate themselves with much larger, usually nationwide operations, such as CMG.  By

DEFENDANT CMG MORTGAGE, INC.'S CROSS-COMPLAINT 07-3140 SI

1    doing so, the net branch operator gains access to many more lenders, making his operation much more

2    competitive.  As well, the net branch operator enjoys the benefits of certain economies of scale, in terms

3    of such things as the back office support, accounting and information technology systems which a larger

4    operator can make available.  The larger operation gets the benefit of the additional mortgage banking

5    business which the net branch operator will hopefully be able to steer to it.  While the concept of this

6    relationship is fairly simple, implementation consistent with applicable state and federal laws regulating

7    mortgage loan origination can be complex.

8        7.    The rather complex set of contracts governing the relationships of the parties (i.e., the

9    contracts which are the subject of this dispute) were designed by CMG to achieve two goals: (1) allow

10   Bowman, to the maximum extent legally possible, to conduct his net branching operation as an

11   independent business; and, (2) achieve this first goal in a manner which is compliant with applicable

12   state and federal law.  On a state level the primary concern is usually state licensing laws.  On the federal

13   level, the concerns include FHA requirements, RESPA concerns, HUD mandates and a variety of other

14   laws, rules and regulations governing mortgage loans.  The contracts achieve these goals in the following

15   manner.

16       8.    Working together, the contracts create two relationships: (1) a sub-leasing relationship,

17   which is memorialized in the Facilities Agreement entered into between PREMCO and CMG, for each

18   branch office; and, (2) an office management/employment relationship, which is memorialized in the

19   Branch Manager & Employment Agreement ("BMA") entered into between CMG and Bowman for each

20   office.

21       9.    Licensing and various other laws governing mortgage loan origination mandate that, in

22   order for Bowman to enjoy the lender relationships of CMG and to be able to bank loans through CMG,

23   his operation must operate as an extension of CMG.  Among other things, this necessitates that CMG

24   pay certain core expenses of Bowman's operation, including office rent, furniture, fixtures and

25   equipment. Since such "facilities" are typically already owned or possessed by net branch operators as

26   was true here, the Facilities Agreement affords a mechanism for PREMCO (Bowman's corporation) to

27   sub-lease these facilities to CMG on a month to month basis.  In this manner, CMG pays for the core

28   expenses of the net branch operation, but since an important component of any net branching

1    relationship is that the net branch operator is effectively in business for himself, Bowman retains

2    ultimate control of these facilities, since they are sub-leased on a month to month basis by the

3    corporation he controlls.

4    10.    The "rent" which CMG pays PREMCO under the Facilities Agreement is an amount

5    equal to 125% of the actual costs to PREMCO of securing the "facilities."  In other words, effectively

6    PREMCO determines its monthly cost for "facilities," marks it up by 25% and submits that to CMG as

7    "rent," pursuant to the Facilities Agreement.  The markup simply affords an opportunity for the net

8    branch operator to permissibly divert earnings into an entity he controls, for a variety of potential

9    reasons.  Significantly, although in the Facilities Agreement PREMCO is the sublessor (effectively the

10   landlord) and CMG is the sublessee (effectively the tenant), the Facilities Agreement requires PREMCO

11   to post a security deposit.

12   11.    The BMA complies with various mortgage law requirements, including that each branch

13   office be managed by a responsible person.  It also provides the means for funneling 100% of the net

14   profits to the net branch operator, Bowman.  Although admittedly complex, ultimately the Branch

15   Manager Agreement provides that Bowman's profit sharing income/net profits shall be equal to the total

16   of all income of his branches, minus all expenses, including of course the costs associated with the

17   Facilities Agreement.  Therefore, all income is calculated, then all expenses - most certainly including

18   those paid pursuant to the Facilities Agreement - are deducted to arrive at net profits, which are then paid

19   to Bowman - assuming there are net profits to be distributed.  Accordingly, the "cash flow" is effectively

20   as follows:

21       a.    Income is generated by the net branch operator's (Bowman's) branches;

22       b.    CMG collects that money and withholds for itself any fees due it;

23       c.    Pursuant to the Facilities Agreement PREMCO submits a bill to CMG for its expenses +

24             25%, which CMG pays to PREMCO from funds remaining from that left over after the

25             deduction of those amounts listed in sub-paragraph (b) above; and

26       d.    The balance is net profits and is paid to Bowman, pursuant to the BMA.

27   12.    Ultimately, it is inconsequential as to how the numbers are broken down as between

28   expenses and profit sharing/net profits.  The net branch operator's branches generate whatever income

4

1  they generate.  CMG retains its fee.  The balance is available to pay "rent" to the net branch operator's

2  entity (PREMCO).  Once that "rent" is paid, if there is anything left over it is profit sharing/net profits

3  and is paid to the net branch operator (Bowman).

4      13.    On or about December 18, 2008, CMG notified Bowman and PREMCO that it was

5  terminating the contracts between them in 30 days, pursuant to the contracts' termination provisions.

6  Bowman asked for and CMG granted an extension so the termination would be effective on the close of

7  business on January 31, 2007.  The BMA's signed by Bowman contained a provision requiring that all

8  loans started by the branches prior to 5:00 p.m. on the day of termination must be completed with CMG,

9  at Paragraph 20 of Exhibits 1 & 2 to Plaintiffs' First Amended Complaint.   Bowman has admitted, in

10  testimony under oath at his deposition April 30, 2008, that he had started loans with CMG prior to

11  January 31, 2007 and did not close those loans with CMG after January 31, 2007.  This is the first time

12  CMG had affirmative proof that Bowman misappropriated loan files and customer information.

13              **FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT**

14      14.    CMG realleges and incorporates herein by this reference paragraphs 1 through 13,

15   inclusive, of this counter-claim.

16      15.    On or about December 18, 2008, CMG notified Bowman and PREMCO that it was

17  terminating the written contracts between them in 30 days, pursuant to the termination provisions in the

18  contracts.  Bowman asked for and CMG granted an extension so the termination would be effective on

19  the close of business on January 31, 2007.  The BMA agreements signed by Bowman contained a

20  provision requiring that all loans started by the branches prior to 5:00 p.m. on the day of termination

21  must be completed with CMG.  Paragraph 20 of Exhibits 1 & 2 to Plaintiffs' First Amended Complaint.

22  Bowman admitted, in testimony under oath, that he had started loans with CMG prior to January 31,

23  2007 and did not close those loans with CMG after January 31, 2007.

24      16.    Additionally, the contracts also contained a provision that prohibited solicitation of

25  CMG's prospective or existing clients.  See Paragraph 10 of Exhibits 1 & 2 to Plaintiffs' First Amended

26  Complaint.  Bowman has admitted, in testimony under oath, that he had started loans with CMG prior to

27  January 31, 2007 and did not close those loans with CMG after January 31, 2007.  Thus, CMG is

28  informed and believes and thereon alleges that Bowman solicited these existing CMG customers after

1   his termination so that they would close loans with Bowman and his new employer and not CMG.

2       17.    As a result of the breaches of Paragraphs 10 and 20 of the BMA's, CMG did not earn

3   income it would have earned on the loans that started with the branches prior to January 31, 2007.

4   Additionally, CMG is informed and believes and thereon alleges that due to Bowman moving the loans

5   to another mortgage loan originator and other lenders after January 31, 2007, CMG did not earn the

6   income it would have otherwise earned if it was going to be the lender on the loans at issue.  CMG also

7   did not receive the payment for the loans that it was entitled to receive to offset the expenses of the

8   branches, which exceeded the income of the branches at the time of termination.  Finally, CMG lost the

9   benefit of the continued and future business of the solicited customers.

10      18.    Except as excused by the acts and/or omissions of Bowman, CMG has performed all

11  conditions, covenants, and promises required by it on its part to be performed in accordance with the

12  terms and conditions of the BMA's.

13      19.    As a proximate result of Bowman's breaches, including, without limitation, those set

14  forth herein, CMG has been damaged in an amount to be proven at trial, plus attorneys' fees per the

15  contracts.

16                      **SECOND CAUSE OF ACTION FOR CONVERSION**

17      20.    CMG realleges and incorporates herein by this reference paragraph 1 through 19,

18   inclusive, of this counter-claim.

19      21.    On or about December 18, 2008, CMG notified Bowman and PREMCO that it was

20  terminating the written contracts between them in 30 days, pursuant to the termination provisions in the

21  contracts.  Bowman asked for and CMG granted an extension so the termination would be effective on

22  the close of business on January 31, 2007.  The Branch Management agreements signed by Bowman

23  contained a provision requiring that all loans started by the branches prior to 5:00 p.m. on the day of

24  termination must be completed with CMG.  Paragraph 20 of Exhibits 1 & 2 to Plaintiffs' First Amended

25  Complaint.   Bowman has admitted, in testimony under oath, that he had started loans with CMG prior

26  to January 31, 2007 and did not close those loans with CMG after January 31, 2007.

27      22.    Up until 5:00 p.m. on January 31, 2007, Bowman was a CMG's employee and the

28  president of PREMCO.  The loan files and customers serviced by Bowman prior to 5:00 p.m. on January

---

6

DEFENDANT CMG MORTGAGE, INC.'S CROSS-COMPLAINT 07-3140 SI

1   31, 2007, were the property of CMG. CMG is informed and believes and thereon alleges that by taking

2   the loans and the physical loan files that were made in the name of CMG prior to January 31, 2007, and

3   changing the name to another mortgage loan originator and/or closing them with another mortgage

4   broker and/or loan originator, after January 31, 2007, Bowman wrongfully exercised dominion and

5   control over the property of CMG, and converted the property to his own use.

6        23.    CMG is entitled to a return of the physical loan files and the income earned by all others

7   as a result of the closing of the loans in question. As a result of cross-defendant's actions as alleged

8   herein, CMG has been denied the possession, use and present and future financial benefits of the loan

9   files.

10        24.    As a proximate result of cross-defendant's conversion, CMG has suffered injury as a

11   natural, reasonable and proximate result of the conversion, including, but not limited to, not earning the

12   secondary market income on the loans, many of which would have been banked with CMG and any fees

13   and processing charges related to any loans that would have been brokered through CMG.

14        25.    Bowman's acts alleged above were willful, wanton, malicious, and oppressive were

15   undertaken with the intent to defraud and justify the awarding of exemplary and punitive damages.

16        26.    Except as excused by the acts and/or omissions of Bowman, CMG has performed all

17   conditions, covenants, and promises required by it on its part to be performed in accordance with the

18   terms and conditions of the BMA's.

19   <div align="center">**THIRD CAUSE OF ACTION FOR**</div>

20   <div align="center">**FOR VIOLATION OF THE UNIFORM TRADE SECRETS ACT**</div>

21        27.    CMG realleges and incorporates herein by this reference paragraph 1 through 26,

22    inclusive, of this counter-claim.

23        28.    The loan files started by Bowman prior to January 31, 2007, and the confidential

24   information contained therein, including, but not limited to the identity of the customers, the customers's

25   financial information contained in their loans files and their financing history, separately and as a whole,

26   are trade secrets subject to protection under California Civil Code Section 3426, et seq.

27        29.    This information is information that derives independent economic value by not being

28   accessible to competitors, such as Bowman's current employer, who can profit from it.

DEFENDANT CMG MORTGAGE, INC.'S CROSS-COMPLAINT 07-03140 SI

M:\CMG\85-0706-02 Bowman\Pleadings\cross complainta.wpd

30.     CMG has taken reasonable and appropriate steps and measures to protect and maintain the secrecy of this information including, but not limited to, making its employees, such as Bowman, sign employment agreements whereby they agree not to solicit CMG customers after termination and agree that all loan files started with CMG prior to termination must be closed with CMG after termination.

31.     The foregoing conduct of Bowman, as alleged herein, constitutes misappropriation and misuse of CMG's confidential and proprietary trade secret information.

32.      As a consequence of the foregoing, CMG has suffered and will continue to suffer irreparable harm, loss and damage.

33.     Bowman's acts alleged above were willful, wanton, malicious, and oppressive were undertaken with the intent to defraud and justify the awarding of exemplary and punitive damages.

### FOURTH CAUSE OF ACTION

### FOR INTENTIONAL INTERFERENCE WITH

### PROSPECTIVE ECONOMIC ADVANTAGE

34.     CMG realleges and incorporates herein by this reference paragraph 1 through 33, inclusive, of this counter-claim.

35.     As more fully set forth herein, Bowman's conduct in misappropriating loan files, soliciting CMG's customers and their financial information and misappropriating other proprietary and confidential information, Bowman has interfered with CMG's existing economic relations with its customers.

36.     Bowman has done this with full knowledge of the existence of those relationships and with full intent to interfere with and damage those relationships to Bowman's own direct economic advantage.

37.     As a proximate result of Bowman's acts, as alleged herein, CMG has suffered injury as a natural, reasonable and proximate result of the intentional interference with CMG's economic advantage, including, but not limited to, not earning the secondary market income on the loans, many of which would have been banked with CMG, and any fees and processing charges related to any loans that would have been brokered through CMG.  Additionally, CMG has lost the future ability to market to

1    these customers and to have important financial information about these customers to assist CMG in

2    conducting future business with said customers.

3         38.    Bowman's acts alleged above were willful, wanton, malicious, and oppressive and were

4    undertaken with the intent to defraud and justify the awarding of exemplary and punitive damages.

5         WHEREFORE, CMG prays for judgment against cross-defendant as follows:

6         As to the First Cause of Action:

7         1.    For general damages according to proof at trial;

8         2.    For special damages in an amount according to proof at trial to compensate CMG for its

9               lost secondary market profits on the loans;

10        3.    For prejudgment interest at the maximum rate allowable;

11        4.    For reasonable attorney's fees pursuant to the Agreement;

12        5.    For costs of suit herein incurred;

13        6.    For such other relief as the Court may deem proper

14        As to the Second Cause of Action:

15        1.    For general damages according to proof at trial;

16        2.    For special damages in an amount according to proof at trial to compensate CMG for its

17              lost secondary market profits on the loans;

18        3.    For punitive damages in an amount appropriate to punish Bowman and deter others from

19              engaging in similar misconduct;

20        4.    For costs of suit herein incurred;

21        5.    For such other relief as the Court may deem proper.

22        As to the Third Cause of Action:

23        1.    For general damages according to proof at trial;

24        2.    For punitive damages in an amount appropriate to punish Bowman and deter others from

25              engaging in similar misconduct;

26        3.    For costs of suit herein incurred;

27        4.    For reasonable attorney's fees;

28        5.    For such other relief as the Court may deem proper.

9

As to the Fourth Cause of Action:

1.      For general damages according to proof at trial;

2.      For punitive damages in an amount appropriate to punish Bowman and deter others from engaging in similar misconduct;

3.      For costs of suit herein incurred;

4.      For reasonable attorney's fees;

5.      For such other relief as the Court may deem proper.

Dated: May 20, 2008                                    **MEDLIN & HARGRAVE**
                                                        A PROFESSIONAL CORPORATION


                                                        By:      /s/
                                                        Joshua A. Rosenthal,
                                                        Attorneys for Counter-Claimant,
                                                        CMG Mortgage, Inc.


## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), counter-claimant demands a trial by jury on all issues in its counter-claim.

Dated: May 20, 2008                                    **MEDLIN & HARGRAVE**
                                                        A PROFESSIONAL CORPORATION


                                                        By:      /s/
                                                        Joshua A. Rosenthal,
                                                        Attorneys for Counter-Claimant,
                                                        CMG Mortgage, Inc.

DEFENDANT CMG MORTGAGE, INC.'S CROSS-COMPLAINT-07-3140 SI
M:\CMG\85-0706-02 Bowman\Pleadings\cross complainta.wpd

# EXHIBIT I

1   7David R. Medlin      (SBN 77417)
    G. Bradley Hargrave   (SBN 173911)
2   Joshua A. Rosenthal   (SBN 190284)
    MEDLIN & HARGRAVE
3   A Professional Corporation
    One Kaiser Plaza, Suite 1305
4   Oakland, CA  94612
    Telephone:    (510) 832-2900
5   Facsimile:    (510) 832-2945

6   Attorneys for Defendants

7

8                        UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10  James W. Bowman, Jr. and Pacific Real Estate        Case No.: C 07 3140 SI
    Management Company, Inc., a Washington
11  Corporation,

12              Plaintiffs,                             **FIRST AMENDED ANSWER TO FIRST**
           vs.                                         **AMENDED COMPLAINT**
13
    CMG Mortgage Inc., a California Corporation;
14  CMG Mortgage, Inc., d/b/a Pacific Guarantee
    Mortgage, CMG Mortgage Services, Inc., a
15  California Corporation, CMG Mortgage Services,
    Inc. d/b/a Pacific Guarantee Mortgage,
16
                Defendants.
17
18  _____/

19          COMES NOW, defendants CMG Mortgage Inc., a California Corporation; CMG Mortgage, Inc.,

20  d/b/a Pacific Guarantee Mortgage, CMG Mortgage Services, Inc., a California Corporation, CMG

21  Mortgage Services, Inc. d/b/a Pacific Guarantee Mortgage and in answer to plaintiffs' first amended

22  complaint responds as follows:

23          1.      In response to paragraph 1, these answering defendants do not have sufficient information

24  or belief to enable them to admit or deny the allegations of said paragraph and, basing their denial

25  thereon, deny each and every allegation contained therein.

26          2.      In response to paragraph 2, these answering defendants admit that they reside in this

27  judicial district but do not have sufficient information or belief to enable them to admit or deny the

28  allegations of the rest of said paragraph and, basing their denial thereon, deny each and every allegation

---

1

1   contained therein.

2          3.      In response to paragraph 3, these answering defendants do not have sufficient information

3   or belief to enable them to admit or deny the allegations of said paragraph and, basing their denial

4   thereon, deny each and every allegation contained therein.

5          4.      In response to paragraph 4, these answering defendants admit the allegation contained

6   therein.

7          5.      In response to paragraph 5, these answering defendants admit that they subleased and

8   rented office space and equipment from PREMCO in the State of Washington.

9          6.      In response to paragraph 6, these answering defendants admit the allegation contained

10  therein.

11         7.      In response to the first four sentences of paragraph 7, these answering defendants admit

12  the allegations contained therein.  In response to the fifth sentence of paragraph 7, these answering

13  defendants admit that they subleased and rented office space and equipment from PREMCO in the State

14  of Washington.

15         8.      In response to the first, fourth, seventh and eighth sentences of paragraph 8, these

16  answering defendants admit the allegations contained therein.  In response to the second sentence of

17  paragraph 8, these answering defendants admit that the copies of the Agreements attached to plaintiffs'

18  first amended complaint are true and correct, and otherwise deny the rest of the allegations in said

19  sentence.  In response to the third, sixth and ninth sentence of paragraph 8, these answering defendants do

20  not have sufficient information or belief to enable them to admit or deny the allegations of said paragraph

21  and, basing their denial thereon, deny each and every allegation contained therein.  In response to the

22  fourth sentence of paragraph 8, these answering defendants admit the allegations contained therein.  In

23  response to the fifth and tenth sentences of paragraph 8, these answering defendants deny the allegations

24  contained therein.

25         9.      In response to the first, second and fourth sentences of paragraph 9, these answering

26  defendants admit the allegations contained therein.  In response to the third and fifth sentences of

27  paragraph 9, these answering defendants do not have sufficient information or belief to enable them to

28  admit or deny the allegations of said sentences and, basing their denial thereon, deny each and every

1  allegation contained therein.  In response to the sixth sentence of paragraph 9, these answering defendants

2  admit that the entirety of paragraph 9 of the Branch Management Agreements are accurately depicted in

3  the Branch Management and Employment Agreements attached to plaintiffs' first amended complaint,

4  and otherwise deny the rest of the allegations in said sentence.  In response to the seventh sentence of

5  paragraph 9, these answering defendants deny the allegations contained therein.

6        10.    In response to the first sentence of paragraph 10, these answering defendants admit the

7  allegations contained therein.  In response to the second, third, fourth and fifth sentences of paragraph 10,

8  these answering defendants deny the allegations contained therein.

9        11.    In response to the first sentence of paragraph 11, these answering defendants admit the

10  allegations contained therein.  In response to the second sentence of paragraph 11, these answering

11  defendants do not have sufficient information or belief to enable them to admit or deny the allegations of

12  said sentences and, basing their denial thereon, deny each and every allegation contained therein.  In

13  response to the third sentence of paragraph 11, these answering defendants deny the allegations contained

14  therein

15        12.    In response to the fourth and fifth sentences of paragraph 12, these answering defendants

16  admit the allegations contained therein.  In response to the first, third, seventh, eighth and ninth sentences

17  of paragraph 12, these answering defendants deny the allegations contained therein.   In response to the

18  second and sixth sentences of paragraph 12, these answering defendants do not have sufficient

19  information or belief to enable them to admit or deny the allegations of said sentences and, basing their

20  denial thereon, deny each and every allegation contained therein.

21        13.    In response to the first and second sentence of paragraph 13, these answering defendants

22  admit that CMG sent a memo on or about September of 2004, related to Marketing Credits and denies the

23  remaining allegations of the sentences.  In response to the fourth and fifth sentences of paragraph 13,

24  these answering defendants deny the allegations contained therein.   In response to the third sentence of

25  paragraph 13, these answering defendants do not have sufficient information or belief to enable them to

26  admit or deny the allegations of said sentence and, basing their denial thereon, deny each and every

27  allegation contained therein.

28

FIRST AMENDED ANSWER TO FIRST AMENDED COMPLAINT C 07 3140 SI
M:\CMG\85-0706-02 Bowman\Pleadings\Amended Answer.wpd

14.     In response to the first and second sentences of paragraph 14, these answering defendants admit that the entirety of paragraphs 6 and 9 of the Branch Management Agreements are accurately depicted in the Branch Management and Employment Agreements attached to plaintiffs' first amended complaint, and otherwise deny the rest of the allegations in said sentences.  In response to the third sentence of paragraph 14, these answering defendants deny the allegations contained therein.   In response to the fourth and fifth sentences of paragraph 14, these answering defendants do not have sufficient information or belief to enable them to admit or deny the allegations of said sentences and, basing their denial thereon, deny each and every allegation contained therein.

15.     In response to the first and second sentences of paragraph 15, these answering defendants admit the allegations contained therein.  In response to the third sentence of paragraph 15, these answering defendants deny the allegations contained therein.   In response to the fourth and fifth sentences of paragraph 15, these answering defendants do not have sufficient information or belief to enable them to admit or deny the allegations of said sentences and, basing their denial thereon, deny each and every allegation contained therein.

16.     In response to paragraph 16, these answering defendants admit the allegations contained therein.

17.     In response to paragraph 17, these answering defendants do not have sufficient information or belief to enable them to admit or deny the allegations of said paragraph and, basing their denial thereon, deny each and every allegation contained therein.

18.     In response to paragraph 18, these answering defendants deny each and every allegation contained therein.

19.     These answering defendants incorporate their previous responses as if set forth fully herein.

20.     In response to paragraph 20, these answering defendants admit that the Branch Management and Employment Agreements attached to plaintiff's first amended complaint describe the way in which Net Profits are paid under the Agreements, and otherwise deny the rest of the allegations in the paragraph.

FIRST AMENDED ANSWER TO FIRST AMENDED COMPLAINT C 07 3140 SI
M:\CMG\85-0706-02 Bowman\Pleadings\Amended Answer.wpd

21.     In response to paragraph 21, these answering defendants admit each and every allegation contained therein.

22.     In response to paragraph 22, these answering defendants deny each and every allegation contained therein.

23.     In response to paragraph 23, these answering defendants deny each and every allegation contained therein.

24.     In response to paragraph 24, these answering defendants deny the allegations contained therein.

25.     These answering defendants incorporate their previous responses as if set forth fully herein.

26.     In response to paragraph 26, these answering defendants admit that the Branch Management and Employment Agreements attached to plaintiff's first amended complaint describe the way in which Net Profits are paid and the responsibilities of the parties under the Agreement, and otherwise deny the rest of the allegations in the paragraph.

27.     In response to paragraph 27, these answering defendants deny each and every allegation contained therein.

28.     In response to paragraph 28, these answering defendants deny each and every allegation contained therein.

29.     In response to paragraph 29, these answering defendants deny each and every allegation contained therein.

30.     In response to paragraph 30, these answering defendants deny each and every allegation contained therein.

30a.    In response to paragraph 30a, these answering defendants deny each and every allegation contained therein.

31.     These answering defendants incorporate their previous responses as if set forth fully herein.

32.     In response to paragraph 32, these answering defendants deny each and every allegation contained therein.

33.     In response to paragraph 33, these answering defendants deny each and every allegation contained therein.

34.     In response to paragraph 34, these answering defendants deny each and every allegation contained therein.

35.     In response to paragraph 35, these answering defendants deny each and every allegation contained therein.

36.     These answering defendants incorporate their previous responses as if set forth fully herein.

37.     In response to paragraph 37, these answering defendants admit that the Branch Management and Employment Agreements attached to plaintiff's first amended complaint describe the way in which Net Profits are paid under the Agreements, and otherwise deny the rest of the allegations in the paragraph.

38.     In response to paragraph 38, these answering defendants deny each and every allegation contained therein.

39.     In response to paragraph 39, these answering defendants deny each and every allegation contained therein.

40.     In response to paragraph 40, these answering defendants deny each and every allegation contained therein.

41.     In response to paragraph 41, these answering defendants deny each and every allegation contained therein.

42.     In response to paragraph 42, these answering defendants deny each and every allegation contained therein.

43.     In response to paragraph 43, these answering defendants deny each and every allegation contained therein.

44.     In response to paragraph 44, these answering defendants deny each and every allegation contained therein.

45.     These answering defendants incorporate their previous responses as if set forth fully herein.

46.    In response to paragraph 46, these answering defendants deny each and every allegation contained therein.

47.    In response to paragraph 47, these answering defendants deny each and every allegation contained therein.

48.    In response to paragraph 48, these answering defendants deny each and every allegation contained therein.

49.    In response to paragraph 49, these answering defendants deny each and every allegation contained therein.

50.    In response to paragraph 50, these answering defendants deny the allegations contained therein.

51.    These answering defendants incorporate their previous responses as if set forth fully herein.

52.    In response to paragraph 52, these answering defendants deny each and every allegation contained therein.

53.    In response to paragraph 53, these answering defendants deny each and every allegation contained therein.

54.    In response to paragraph 54, these answering defendants deny each and every allegation contained therein.

55.    In response to paragraph 55, these answering defendants deny each and every allegation contained therein.

56.    In response to paragraph 56, these answering defendants deny each and every allegation contained therein.

56a.    In response to paragraph 56a, these answering defendants deny each and every allegation contained therein.

57.    These answering defendants incorporate their previous responses as if set forth fully herein.

58.    In response to paragraph 58, these answering defendants deny each and every allegation contained therein.

1    59.    In response to paragraph 59, these answering defendants deny each and every allegation

2    contained therein.

3    60.    In response to paragraph 60, these answering defendants deny each and every allegation

4    contained therein.

5    61.    In response to paragraph 61, these answering defendants deny each and every allegation

6    contained therein.

7    62.    These answering defendants incorporate their previous responses as if set forth fully

8    herein.

9    63.    In response to paragraph 63, these answering defendants deny each and every allegation

10   contained therein.

11   64.    In response to paragraph 64, these answering defendants deny each and every allegation

12   contained therein.

13   65.    In response to paragraph 65, these answering defendants deny each and every allegation

14   contained therein.

15   66.    In response to paragraph 66, these answering defendants deny each and every allegation

16   contained therein.

17   67.    In response to paragraph 67, these answering defendants deny each and every allegation

18   contained therein.

19   68.    In response to paragraph 68, these answering defendants deny each and every allegation

20   contained therein.

21   69.    In response to paragraph 69, these answering defendants deny each and every allegation

22   contained therein.

23   70.    In response to paragraph 70, these answering defendants deny each and every allegation

24   contained therein.

25   71.    These answering defendants incorporate their previous responses as if set forth fully

26   herein.

27   72.    In response to paragraph 72, these answering defendants admit that the Branch

28   Management and Employment Agreements attached to plaintiff's first amended complaint describe the

8

1  way in which Net Profits are paid and the responsibilities of the parties under the Agreement, and

2  otherwise deny the rest of the allegations in the paragraph.

3      73.    In response to paragraph 73, these answering defendants admit each and every allegation

4  contained therein.

5      74.    In response to paragraph 74, these answering defendants deny each and every allegation

6  contained therein.

7      75.    In response to paragraph 75, these answering defendants deny each and every allegation

8  contained therein.

9      76.    In response to paragraph 76, these answering defendants deny the allegations contained

10  therein.

11      77.    In response to paragraph 77, these answering defendants deny the allegations contained

12  therein.

13      78.    These answering defendants incorporate their previous responses as if set forth fully

14  herein.

15      79.    In response to paragraph 79, these answering defendants admit that the Branch

16  Management and Employment Agreements attached to plaintiff's first amended complaint describe the

17  way in which Net Profits are paid and the responsibilities of the parties under the Agreement, and

18  otherwise deny the rest of the allegations in the paragraph.

19      80.    In response to paragraph 80, these answering defendants admit each and every allegation

20  contained therein.

21      81.    In response to paragraph 81, these answering defendants deny each and every allegation

22  contained therein.

23      82.    In response to paragraph 82, these answering defendants deny each and every allegation

24  contained therein.

25      83.    In response to paragraph 83, these answering defendants deny each and every allegation

26  contained therein.

27      84.    These answering defendants incorporate their previous responses as if set forth fully

28  herein.

9

1       85.     In response to paragraph 85, these answering defendants admit that the Branch

2 Management and Employment Agreements attached to plaintiff's first amended complaint describe the

3 way in which Net Profits are paid and the responsibilities of the parties under the Agreement, and

4 otherwise deny the rest of the allegations in the paragraph.

5       86.     In response to paragraph 86, these answering defendants deny each and every allegation

6 contained therein.

7       87.     In response to paragraph 87, these answering defendants deny each and every allegation

8 contained therein.

9       88.     In response to paragraph 88, these answering defendants deny each and every allegation

10 contained therein.

11      89.     In response to paragraph 89, these answering defendants deny each and every allegation

12 contained therein.

13     89a.     In response to paragraph 89a, these answering defendants deny each and every allegation

14 contained therein.

15      90.    These answering defendants incorporate their previous responses as if set forth fully

16 herein.

17      91.     In response to paragraph 91, these answering defendants deny each and every allegation

18 contained therein.

19      92.     In response to paragraph 92, these answering defendants deny each and every allegation

20 contained therein.

21      93.     In response to paragraph 93, these answering defendants deny each and every allegation

22 contained therein.

23      94.     In response to paragraph 94, these answering defendants deny each and every allegation

24 contained therein.

25      95.    These answering defendants incorporate their previous responses as if set forth fully

26 herein.

27      96.     In response to paragraph 96, these answering defendants admit that the Branch

28 Management and Employment Agreements attached to plaintiff's first amended complaint describe the

1  way in which Net Profits are paid and the responsibilities of the parties under the Agreement, and

2  otherwise deny the rest of the allegations in the paragraph.

3      97.    In response to paragraph 97, these answering defendants deny each and every allegation

4  contained therein.

5      98.    In response to paragraph 98, these answering defendants deny each and every allegation

6  contained therein.

7      99.    In response to paragraph 99, these answering defendants deny each and every allegation

8  contained therein.

9      100.    In response to paragraph 100, these answering defendants deny each and every allegation

10  contained therein.

11      101.    In response to paragraph 101, these answering defendants deny each and every allegation

12  contained therein.

13      102.    In response to paragraph 102, these answering defendants deny each and every allegation

14  contained therein.

15      103.    In response to paragraph 103, these answering defendants deny each and every allegation

16  contained therein.

17      104.    These answering defendants incorporate their previous responses as if set forth fully

18  herein.

19      105.    In response to paragraph 105, these answering defendants deny each and every allegation

20  contained therein.

21      106.    In response to paragraph 106, these answering defendants deny each and every allegation

22  contained therein.

23      107.    In response to paragraph 107, these answering defendants deny each and every allegation

24  contained therein.

25      108.    In response to paragraph 108, these answering defendants deny each and every allegation

26  contained therein.

27      109.    In response to paragraph 109, these answering defendants deny each and every allegation

28  contained therein.

FIRST AMENDED ANSWER TO FIRST AMENDED COMPLAINT C 07 3140 SI
M:\CMG\85-0706-02 Bowman\Pleadings\Amended Answer.wpd

1    110.    These answering defendants incorporate their previous responses as if set forth fully
2    herein.

3    111.    In response to paragraph 111, these answering defendants deny each and every allegation
4    contained therein.

5    112.    In response to paragraph 112, these answering defendants deny each and every allegation
6    contained therein.

7    113.    In response to paragraph 113, these answering defendants deny each and every allegation
8    contained therein.

9    114.    In response to paragraph 114, these answering defendants deny each and every allegation
10   contained therein.

11   115.    In response to paragraph 115, these answering defendants deny each and every allegation
12   contained therein.

13   115a.   In response to paragraph 115a, these answering defendants deny each and every allegation
14   contained therein.

15   116.    These answering defendants incorporate their previous responses as if set forth fully
16   herein.

17   117.    In response to paragraph 117, these answering defendants deny each and every allegation
18   contained therein.

19   118.    In response to paragraph 118, these answering defendants deny each and every allegation
20   contained therein.

21   119.    In response to paragraph 119, these answering defendants deny each and every allegation
22   contained therein.

23   120.    In response to paragraph 120, these answering defendants deny each and every allegation
24   contained therein.

25   121.    These answering defendants incorporate their previous responses as if set forth fully
26   herein.

27   122.    In response to paragraph 122, these answering defendants deny each and every allegation
28   contained therein.

FIRST AMENDED ANSWER TO FIRST AMENDED COMPLAINT C 07 3140 SI
M:\CMG\85-0706-02 Bowman\Pleadings\Amended Answer.wpd

123.    In response to paragraph 123, these answering defendants deny each and every allegation contained therein.

124.    In response to paragraph 124, these answering defendants deny each and every allegation contained therein.

125.    In response to paragraph 125, these answering defendants deny each and every allegation contained therein.

126.    In response to paragraph 126, these answering defendants deny each and every allegation contained therein.

127.    In response to paragraph 127, these answering defendants deny each and every allegation contained therein.

128.    In response to paragraph 128, these answering defendants deny each and every allegation contained therein.

129.    In response to paragraph 129, these answering defendants deny each and every allegation contained therein.

130.    These answering defendants incorporate their previous responses as if set forth fully herein.

131.    In response to paragraph 131, these answering defendants admit that the Branch Management and Employment Agreements attached to plaintiff's first amended complaint describe the way in which Net Profits are paid and the responsibilities of the parties under the Agreement, and otherwise deny the rest of the allegations in the paragraph.

132.    In response to paragraph 132, these answering defendants admit each and every allegation contained therein.

133.    In response to paragraph 133, these answering defendants deny each and every allegation contained therein.

134.    In response to paragraph 134, these answering defendants deny each and every allegation contained therein.

135.    In response to paragraph 135, these answering defendants deny each and every allegation contained therein.

1      136.    In response to paragraph 136, these answering defendants deny each and every allegation

2  contained therein.

3      137.    These answering defendants incorporate their previous responses as if set forth fully

4  herein.

5      138.    In response to paragraph 138, these answering defendants deny each and every allegation

6  contained therein.

7      139.    In response to paragraph 139, these answering defendants deny each and every allegation

8  contained therein.

9      140.    In response to paragraph 140, these answering defendants deny each and every allegation

10  contained therein.

11      141.    In response to paragraph 141, these answering defendants deny each and every allegation

12  contained therein.

13      142.    In response to paragraph 142, these answering defendants deny each and every allegation

14  contained therein.

15      143.    These answering defendants incorporate their previous responses as if set forth fully

16  herein.

17      144.    In response to paragraph 144, these answering defendants deny each and every allegation

18  contained therein.

19      145.    In response to paragraph 145, these answering defendants deny each and every allegation

20  contained therein.

21      146.    In response to paragraph 146, these answering defendants deny each and every allegation

22  contained therein.

23      147.    In response to paragraph 147, these answering defendants deny each and every allegation

24  contained therein.

25      148.    In response to paragraph 148, these answering defendants deny each and every allegation

26  contained therein.

27      148a.    In response to paragraph 148a, these answering defendants deny each and every allegation

28  contained therein.

1    149.    These answering defendants incorporate their previous responses as if set forth fully
2    herein.

3    150.    In response to paragraph 150, these answering defendants deny each and every allegation
4    contained therein.

5    151.    In response to paragraph 151, these answering defendants deny each and every allegation
6    contained therein.

7    152.    In response to paragraph 152, these answering defendants deny each and every allegation
8    contained therein.

9    153.    In response to paragraph 153, these answering defendants deny each and every allegation
10   contained therein.

11   154.    In response to paragraph 154, these answering defendants deny each and every allegation
12   contained therein.

13   155.    These answering defendants incorporate their previous responses as if set forth fully
14   herein.

15   156.    In response to paragraph 156, these answering defendants deny each and every allegation
16   contained therein.

17   157.    In response to paragraph 157, these answering defendants deny each and every allegation
18   contained therein.

19   158.    In response to paragraph 158, these answering defendants deny each and every allegation
20   contained therein.

21   159.    In response to paragraph 159, these answering defendants deny each and every allegation
22   contained therein.

23   160.    In response to paragraph 160, these answering defendants deny each and every allegation
24   contained therein.

25   161.    In response to paragraph 161, these answering defendants deny each and every allegation
26   contained therein.

27   162.    In response to paragraph 162, these answering defendants deny each and every allegation
28   contained therein.

FIRST AMENDED ANSWER TO FIRST AMENDED COMPLAINT C 07 3140 SI
M:\CMG\85-0706-02 Bowman\Pleadings\Amended Answer.wpd

1    163.    In response to paragraph 163, these answering defendants deny each and every allegation

2    contained therein.

3    164.    These answering defendants incorporate their previous responses as if set forth fully

4    herein.

5    165.    In response to paragraph 165, these answering defendants admit that the Facilities

6    Agreement attached to plaintiff's first amended complaint describes the way in which expenses are to be

7    allocated and paid under the Agreement, and otherwise deny the rest of the allegations in the paragraph.

8    166.    In response to paragraph 166, these answering defendants admit each and every allegation

9    contained therein.

10    167.    In response to paragraph 167, these answering defendants deny each and every allegation

11    contained therein.

12    168.    In response to paragraph 168, these answering defendants deny each and every allegation

13    contained therein.

14    169.    In response to paragraph 169, these answering defendants deny each and every allegation

15    contained therein.

16    170.    These answering defendants incorporate their previous responses as if set forth fully

17    herein.

18    171.    In response to paragraph 171, these answering defendants admit that the Facilities

19    Agreement attached to plaintiff's first amended complaint describes the way in which expenses are to be

20    allocated and paid under the Agreement, and otherwise deny the rest of the allegations in the paragraph.

21    172.    In response to paragraph 172, these answering defendants deny each and every allegation

22    contained therein.

23    173.    In response to paragraph 173, these answering defendants deny each and every allegation

24    contained therein.

25    174.    In response to paragraph 174, these answering defendants deny each and every allegation

26    contained therein.

27    175.    In response to paragraph 175, these answering defendants deny each and every allegation

28    contained therein.

16

1    176.    In response to paragraph 176, these answering defendants deny each and every allegation
2    contained therein.

3    177.    In response to paragraph 177, these answering defendants deny each and every allegation
4    contained therein.

5    178.    In response to paragraph 178, these answering defendants deny each and every allegation
6    contained therein.

7    179.    These answering defendants incorporate their previous responses as if set forth fully
8    herein.

9    180.    In response to paragraph 180, these answering defendants deny each and every allegation
10   contained therein.

11   181.    In response to paragraph 181, these answering defendants deny each and every allegation
12   contained therein.

13   182.    In response to paragraph 182, these answering defendants deny each and every allegation
14   contained therein.

15   183.    In response to paragraph 183, these answering defendants deny each and every allegation
16   contained therein.

17   184.    In response to paragraph 184, these answering defendants deny each and every allegation
18   contained therein.

19   185.    These answering defendants incorporate their previous responses as if set forth fully
20   herein.

21   186.    In response to paragraph 186, these answering defendants deny each and every allegation
22   contained therein.

23   187.    In response to paragraph 187, these answering defendants deny each and every allegation
24   contained therein.

25   188.    In response to paragraph 188, these answering defendants deny each and every allegation
26   contained therein.

27   188.    In response to paragraph 188, these answering defendants deny each and every allegation
28   contained therein.

1    189.    In response to paragraph 189, these answering defendants deny each and every allegation

2    contained therein.

3    190.    In response to paragraph 190, these answering defendants deny each and every allegation

4    contained therein.

5    191.    In response to paragraph 191, these answering defendants deny each and every allegation

6    contained therein.

7    192.    In response to paragraph 192, these answering defendants deny each and every allegation

8    contained therein.

9    193.    In response to paragraph 193, these answering defendants deny each and every allegation

10    contained therein.

11                                    **AFFIRMATIVE DEFENSES**

12    As separate, affirmative defenses to the first amended complaint, defendants allege:

13                                    **First Affirmative Defense**

14    The first amended complaint fails to state any cause of action against these defendants upon which

15    relief can be granted.

16                                    **Second Affirmative Defense**

17    Plaintiffs' claims against the defendants are barred by the equitable doctrines of estoppel, waiver,

18    laches, ratification, acquiescence, abandonment and unclean hands.

19                                    **Third Affirmative Defense**

20    Plaintiffs' claims against the defendants are barred by virtue of plaintiffs not having suffered any

21    damage from the events complained of, or if they have suffered any damage, such damage is nominal.

22                                    **Fourth Affirmative Defense**

23    Plaintiffs' claims against the defendants are barred by their failure to mitigate their alleged

24    damages.

25                                    **Fifth Affirmative Defense**

26    The first amended complaint is barred by the applicable statutes of limitation, including, but not

27    limited to, California Code of Civil Procedure §§ 337, 338, 338.1, 339, 340, and 343.  Additionally, the

28    Branch Management & Employment Agreements (Paragraph 21(s)) and the Facilities Agreement

1    (Paragraph 5.4) limit all actions arising under the agreements or because of their breach to be commenced

2    within one year after the cause of action accrues. Thus, any damages allegedly suffered by plaintiffs that

3    occurred prior to June 14, 2006, are not permitted pursuant to the contracts plaintiffs seek to enforce.

4                                    **Sixth Affirmative Defense**

5           The defendants allege that plaintiffs are barred from the relief requested in the first amended

6    complaint because plaintiffs engaged in acts and courses of conduct which rendered them *in pari delicto*.

7                                   **Seventh Affirmative Defense**

8           The defendants allege, upon information and belief, that plaintiffs are barred from the relief

9    sought in the first amended complaint and/or are entitled to a set off of the relief sought based upon

10   plaintiffs' conversion and/or embezzlement of commission amounts received by plaintiffs but due and

11   owing to defendants.

12          On or about December 18, 2008, CMG Mortgage, Inc. ("CMG") notified James Bowman

13   ("Bowman") and Pacific Real Estate Management Company, Inc. ("PREMCO") that it was terminating

14   the contracts between them in 30 days, pursuant to the contracts' termination provisions. Bowman asked

15   for and CMG granted an extension so the termination would be effective on the close of business on

16   January 31, 2007. The Branch Management and Employment Agreements signed by Bowman contained

17   a provision requiring that all loans started by the branches prior to 5:00 p.m. on the day of termination

18   must be completed with CMG, at Paragraph 20 of Exhibits 1 & 2 to Plaintiffs' First Amended Complaint.

19    Bowman has admitted, in testimony under oath at his deposition April 30, 2008, that he had started loans

20   with CMG prior to January 31, 2007 and did not close those loans with CMG after January 31, 2007.

21   Bowman admitted this despite falsely responding to a discovery request that asked him to produce all

22   loan files started prior to January 31, 2007. In the discovery response, Bowman claimed that he had

23   returned all such loan files started with CMG. However, by Bowman's later admission and through

24   discovery to third parties, it was discovered that his prior discovery response was untrue and Bowman

25   breached his contracts with CMG by not closing loans with CMG after termination and soliciting CMG's

26   customers, converting CMG's loan files, misappropriating CMG's trade secrets and intentionally

27   interfering with CMG's prospective economic advantage. CMG has suffered severe damage as a result of

28   Bowman's acts as alleged herein. Such harm should offset any recovery sought by Bowman, should act

1  as a complete and/or partial unclean hands defense and should allow CMG to affirmative relief for

2  Bowman's theft

### Eighth Affirmative Defense

4  Plaintiffs' damages, if any, should be apportioned among all parties, including plaintiffs, in

5  proportion to such parties' respective fault.

### Ninth Affirmative Defense

7  Plaintiffs' first amended complaint, to the extent it seeks exemplary or punitive damages, violates

8  the defendants' rights to protection from "excessive fines" as provided in the Eight Amendment of the

9  United States Constitution and Article I, Section 17 of the Constitution of the State of California, and

10  violates the defendants' rights to substantive due process as provided in the Fifth and Fourteenth

11  Amendment of the United States Constitution and the Constitution of the State of California, and

12  therefore fails to state a cause of action supporting punitive or exemplary damages claimed.

### Tenth Affirmative Defense

14  Plaintiffs' first amended complaint, to the extent it seeks exemplary or punitive damages, violates

15  the defendants' rights to procedural due process under the Fourteenth Amendment of the United States

16  Constitution and the Constitution of the State of California, and therefore fails to state a cause of action

17  upon which either punitive or exemplary damages can be awarded.

### Eleventh Affirmative Defense

19  Plaintiffs' first amended complaint and each cause of action therein fail to state facts sufficient to

20  entitle plaintiffs to recover punitive damages against the defendants.

### Twelfth Affirmative Defense

22  Plaintiffs' first amended complaint, to the extent it seeks relief under the California Labor Code

23  for employment in Washington State, fails to state causes of action against these defendants as such

24  causes of action are in violation of the California Labor Code, the Commerce Clause of the United States

25  Constitution and the Full Faith and Credit Clause of the United States Constitution.

### Thirteenth Affirmative Defense

27  An employee's claim for unpaid earned wages, based on an employer's alleged violations of the

28  Labor Code can not form a basis for a conversion claim.  Thomas v. Home Depot USA, Inc. (N.D. Cal.

FIRST AMENDED ANSWER TO FIRST AMENDED COMPLAINT C 07 3140 SI
M:\CMG\85-0706-02 Bowman\Pleadings\Amended Answer.wpd

1 | 2007) 527 F. Supp. 1003, 1009.

2 |     WHEREFORE, the defendants pray for judgment as follows:

3 |     (1)    That plaintiffs take nothing by their first amended complaint;

4 |     (2)    For costs of suit incurred herein;

5 |     (3)    For attorneys' fees; and,

6 |     (4)    For such other and further relief as the court deems just and proper.

7

8 | Date:   May 20, 2008                    **MEDLIN & HARGRAVE**
                                            A PROFESSIONAL CORPORATION
9

10
                                          By:    /s/
11                                               Joshua A. Rosenthal
                                                 Attorneys for Defendants
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21

FIRST AMENDED ANSWER TO FIRST AMENDED COMPLAINT C 07 3140 SI
M:\CMG\85-0706-02 Bowman\Pleadings\Amended Answer.wpd

# Exhibit J

1              UNITED STATES DISTRICT COURT
2              NORTHERN DISTRICT OF CALIFORNIA
3                      - - -
4   JAMES W. BOWMAN, Jr. and      )
    PACIFIC REAL ESTATE           )
5   MANAGEMENT COMPANY, INC., a   )      CERTIFIED COPY
    Washington Corporation,       )
6                                 )
                   Plaintiffs,    )
7   vs.                           )      No.  C 07 34140 SI
                                  )
8   CMG MORTGAGE, INC., a         )
    California Corporation; CMG   )
9   MORTGAGE, INC., d/b/a PACIFIC )
    GUARANTEE MORTGAGE, CMG       )
10  MORTGAGE SERVICES, INC., a    )
    California Corporation, CMG   )
11  MORTGAGE SERVICES, INC.,      )
    d/b/a PACIFIC GUARANTEE       )
12  MORTGAGE,                     )
                                  )
13                 Defendants.    )
    _____)
14
15
                   DEPOSITION OF
16
               JAMES W. BOWMAN, Jr.
17
               OAKLAND, CALIFORNIA
18
               APRIL 30th, 2008
19
20
21
    ATKINSON-BAKER, INC.
22  COURT REPORTERS
    (800) 288-3376
23  www.depo.com
24  REPORTED BY: JOAN F. MARTIN, CSR NO. 6036
25  FILE NO.: A203D59

1

1  2003?

2       A.   I just remember it was a topic of conversation.

3  I don't remember if it was brought up --

4       Q.   Go ahead.  I just wanted you to stop while he

5  was out.  You remember it being a topic of conversation?

6       A.   Yes.

7       MR. COHEN:   Thank you.

8       MR. MEDLIN:   Q.   And did you did you object to the

9  forfeitures being not paid back to the branches?

10      A.   Well, I did, of course.  I did in my complaint.

11      Q.   No, I know that.  I mean in 2003.

12      A.   That is when the topic came up, and it wasn't

13  resolved.

14      Q.   Was it ever resolved during the time you were

15  employed at CMG?

16      A.   No, not -- well, based on that memo that I saw,

17  yes, it was resolved.

18      Q.   Okay.  What does that -- do you recall what the

19  memo was saying?

20      A.   I don't -- I don't recall specifically, except

21  that there was a paragraph about the 401(k) and that it

22  should be credited back to the branch managers.  CMG

23  agrees.  I remember that specific verbiage.

24      Q.   Do you recall any discussions with any

25  particular individual at CMG concerning this topic, the

1  401(k) forfeitures?

2      A.  No.  Because it didn't matter until after my

3  termination.

4      Q.  Okay.  One your claims is for unpaid expenses,

5  unreimbursed expenses.  Is that correct?

6      A.  Correct.

7      Q.  And so, actually, if I understand your

8  testimony, 100 percent of the expenses incurred during

9  the time you were employed at CMG have not been -- there

10  are not any that have been repaid?

11      A.  I cannot directly say that any one of them were

12  paid.

13      Q.  So you're claiming all of your expenses?

14      A.  Correct.

15      MR. COHEN:  Objection, vague, and misstates

16  testimony.

17      THE WITNESS:  That's true.  All my expenses?  I

18  have personal expenses in my life.  So...

19      MR. MEDLIN:  Q.  No, no, no.  Of course.  Of

20  course.  I didn't mean that.  Your contention is that

21  there were no expenses reimbursed by CMG, period.

22      A.  Yeah.  My -- yes.  My contention was that all I

23  ever received was the net income, and I don't recall

24  ever seeing a direct reimbursement for expenses.

25      Q.  And that's several million dollars, isn't it?

1    A.   Potentially, yes.

2    Q.   Of expenses that were never reimbursed by CMG,

3    correct?

4    MR. COHEN:   Objection.   That calls for a legal

5    conclusion, and I believe it misstates testimony.

6    MR. MEDLIN:   Okay.   I don't mean to have a legal

7    conclusion.

8    Q.   I'm trying to understand what you're telling

9    me, sir.

10    A.   What I'm telling you is that I never saw an

11    itemization of the specific expenses being reimbursed to

12    me that I incurred.

13    Q.   Okay.   How about PREMCO?

14    A.   Or PREMCO.

15    Q.   So is it your testimony that you're not aware

16    of any expense, ever, being reimbursed to you or PREMCO

17    by CMG?

18    A.   As I stated before, I'm only aware that I

19    received the net income from the branch, either to

20    PREMCO -- it may have been labeled as a reimbursement,

21    as some of it did, or sometimes it was a distribution.

22    The labeling may have said that, but the actual check

23    itself, I could only trace it back to the net income.   I

24    could never -- the actual check didn't correlate or

25    didn't equate, ever, to the expenses.

1      MR. COHEN: Just so we all understand your answer

2  there, are you referring to checks made out to PREMCO?

3      THE WITNESS: Or myself.

4      MR. COHEN: Okay.

5      MR. MEDLIN: Q. Okay. So is it your testimony

6  that there were checks made out to you which purported

7  to be for expense reimbursement, but in fact were not?

8      A. All I'm saying, there were some checks that

9  were labeled as reimbursement.

10      Q. That were paid to you?

11      A. I -- I don't remember if there was some that

12  was labeled that way paid to me. I do recall some of

13  them being labeled to PREMCO, paid as reimbursement.

14      MR. MEDLIN: Can you read his last answer back?

15      (Record read.)

16      MR. MEDLIN: Q. And those checks that you can

17  recall which were paid to PREMCO and were labeled as

18  expense reimbursements, you believe were in fact net

19  income?

20      A. Correct.

21      Q. Is there any reason why you didn't object to

22  CMG about their failure to reimburse any expense at any

23  time for the entire period you worked for them?

24      A. I never even thought about it.

25      Q. You never even thought about it?

1    A.   Yes.  I filled it in for myself and signed it.

2    Q.   And you filled in the dollar ranges for

3  yourself?

4    A.   No, I actually used the same dollar ranges, I

5  believe, on all the documents.  Or something similar.

6    Q.   Even for yourself?

7    A.   Yes.

8    Q.   Before you signed it, did you read the contract

9  listed in here?

10    A.   I don't remember.

11    Q.   I would like to ask you to look at Page 6.  In

12  particular, there's a Paragraph 8, which is broken down

13  into subparagraphs, and I would like to draw your

14  attention to Paragraph 8.3 which is entitled "Loan

15  Files."  Do you see that?

16    A.   I see that.

17    Q.   Did you read that paragraph before you signed

18  the contract you signed?

19    A.   I don't recall.

20    Q.   Okay.  Did you know, at any time while you were

21  employed at CMG, that the terms as set forth in 8.3 were

22  included in the contract?

23    A.   Yeah.  I believe I understood that.

24    Q.   Okay.  So you understood, before you terminated

25  your relationship with CMG, that all loan files, whether

1   pending or closed, were to be returned to CMG?

2       A.   Again, I didn't terminate the relationship with

3   CMG.  CMG terminated the relationship with me.

4       Q.   Okay.  I apologize.  I wasn't trying to put

5   words in your mouth.

6       A.   I just want to be clear.  I don't know.

7       Q.   That's fair.  Let me see if I can reword the

8   question.

9       A.   Okay.

10      Q.   At the time your relationship with CMG ended,

11  you understood that you were to return all loan files to

12  CMG, whether pending or closed?

13      A.   Yes.

14      Q.   You understood that "pending" referred to

15  pipeline loans?

16      A.   Not necessarily, but...

17      MR. COHEN:  But what?

18      THE WITNESS:  Well, I mean, pending -- well, I

19  guess it could be the same thing as pipeline.  Yeah, I

20  don't see why not.

21      MR. COHEN:  You don't have to agree with him just

22  because he's asking you a question.

23      MR. MEDLIN:  And I'm charming as hell.

24      MR. COHEN:  Well, there's that, too.  So if you

25  want to clarify -- David, would you mind if I ask him to

1   clarify his answer?

2       MR. MEDLIN:  Of course not.

3       THE WITNESS:  By pending, do you -- is pipeline and

4   pending the same meaning to you?

5       MR. MEDLIN:  Q.  Sir, that's one rule I do have.  I

6   ask the questions.

7       MR. COHEN:  Would you ask a fresh question for the

8   witness, please?

9       MR. MEDLIN:  Q.  You understood, on the last day of

10  your employment with CMG, that you were required to

11  return all loan files to CMG, including pipeline loans?

12      A.  Yes.

13      Q.  Okay.  Is there any particular reason you did

14  not return the pipeline loan files to CMG?

15      A.  Yes.

16      Q.  What is that reason?

17      A.  Because on or about January 31st I called Kim

18  Callas about a loan that was in process with CMG.  It

19  was a home ownership accelerator loan.  And she told me

20  -- I was in the Vancouver branch.  She told me I had to

21  submit that -- or it might have been February 1st.

22  Because I asked specifically, as I understand the

23  contract, I am to close all loans, up to 5:00 p.m. on

24  the date of termination, with CMG.  So I had every

25  intention to do that.

WORD INDEX

1   | And there was a loan that was already submitted
2   | to CMG.  And Kim Callas instructed me that I had to
3   | submit all my loans through Sierra Pacific.

4   | Q.  Okay.  So it's your testimony that Kim Callas
5   | instructed you not to turn over the pipeline loans?

6   | A.  No.  It was --

7   | MR. COHEN:  Objection.  That misstates the
8   | testimony.

9   | THE WITNESS:  I was going to clarify.  That's not
10  | what I said.  I was to submit all the loans through
11  | Sierra Pacific.

12  | MR. MEDLIN:  Q.  And did you understand -- pardon
13  | me.  Did you understand that to be an instruction not to
14  | turn over the pipeline loan files?

15  | A.  Yes.

16  | Q.  Did you understand that Kim Callas was taking
17  | the position that CMG was not interested in the income
18  | to be generated from those files?

19  | A.  No, I didn't.

20  | MR. COHEN:  Objection.  Misstates the testimony.

21  | THE WITNESS:  Yeah.  I didn't understand that to be
22  | an issue at all.

23  | MR. MEDLIN:  Q.  Well, you understood from the
24  | conversation that she was not taking the position that
25  | CMG was entitled to that income?

1        MR. COHEN:  Objection.  That misstates the

2    testimony as well.

3        THE WITNESS:  No.  That nothing --

4        MR. COHEN:  Can I finish before you start your

5    answer?  Thank you.

6        THE WITNESS:  Sorry.

7        MR. MEDLIN:  Are you done yet, Alan?

8        MR. COHEN:  All done.

9        MR. MEDLIN:  Q.  Well, at the end of that telephone

10   conversation, you understood that Kim Callas was

11   effectively telling you, pick up the pending loan files

12   and take them with you?

13       MR. COHEN:  Objection.  That misstates the

14   testimony.

15       THE WITNESS:  That's not what I said.  It was

16   really simple.  I was supposed to submit the loans

17   through Sierra Pacific.

18       MR. MEDLIN:  Q.  And if you submit them through

19   Sierra Pacific, you're not submitting them through CMG?

20       A.  No.  Not necessarily.

21       Q.  Okay.  How can you submit them through Sierra

22   Pacific and through CMG?

23       A.  Because we were entering -- so immediately

24   after that, I asked for an approval for us to be a

25   wholesale broker with Sierra Pacific with CMG, so that