1   Alan F. Cohen (State Bar No. 194075)
    **LAW OFFICES OF ALAN F. COHEN**
2   101 Montgomery Street, Suite 2050
    San Francisco, CA  94104
3   415.984.1943 (tel.)
    415.984.1953 (fax)
4   cohenlaw@mindspring.com
5
    Angela M. Xavier (State Bar No. 165152)
6   Attorney At Law
    900 Cherry Avenue, Suite 300
7   San Bruno, CA  94066
    Telephone:  (650) 355-0414
8   Facsimile:   (650) 355-0842
9
    Attorneys for Plaintiffs James Bowman and
10  Pacific Real Estate Management Company, Inc.

11              **UNITED STATES DISTRICT COURT**

12           NORTHERN DISTRICT OF CALIFORNIA

13             SAN FRANCISCO DIVISION

14  JAMES W. BOWMAN, JR. and PACIFIC          Case No.: C-07-3140-SI
    REAL ESTATE MANAGEMENT
15  COMPANY, INC., a Washington               **PLAINTIFFS' OPPOSITION TO**
    Corporation                               **DEFENDANTS' MOTION FOR LEAVE TO**
16                                            **FILE COUNTERCLAIM AND AMEND**
                                              **ANSWER; DECLARATION OF ALAN F.**
17              Plaintiffs,                    **COHEN**
18       v.
19  CMG MORTGAGE, INC., a California          Date:   June 6, 2008
    Corporation; CMG MORTGAGE, INC.,          Time:  9:00 a.m.
20  d/b/a PACIFIC GUARANTEE                    Dept.: Courtroom 10
    MORTGAGE, CMG MORTGAGE                     Hon. Susan Illston
21  SERVICES, INC., a California
    corporation; CMG MORTGAGE
22  SERVICES, INC., d/b/a PACIFIC
    GUARANTEE MORTGAGE,                        Complaint filed:    June 14, 2007
23                                             Trial Date:         August 25, 2008
24              Defendants.
25
26       Plaintiffs oppose this motion only to the extent that Defendants somehow take the

27  position that they should be granted leave to add a counterclaim and amend their answer but that

28  Plaintiffs should not be allowed the identical right to amend their existing complaint. The

                                              1                    CASE NO.: C-07-3140-SI

distinctions drawn by Defendants amount to no more than exceptionalism; apparently, the rule that amendments should be "freely permitted" applies only where it benefits Defendants. Despite Defendants' protestations to the contrary, their proposed amendments alter the dynamics of this suit as much, or more than, those proposed by Plaintiffs'. The proposed counterclaim changes the shape of this case by asserting, for the first time, affirmative claims against Mr. Bowman.[1] There is no justification for allowing Defendants to have their cake and eat it too.

Plaintiffs do contest most of the "facts" stated in Defendants' motion and in the accompanying proposed counterclaim. There is no evidentiary support in Defendants' motion for any of these "facts" and by all rights they should be stricken. Plaintiffs deny these allegations, but that is a question going to their merits and will not be addressed here.

Plaintiffs also contest Defendants' misrepresentations about the procedural history of the case. It is telling that Defendants' tale of the record is absolutely devoid of evidentiary support. Not surprisingly, the Declaration of Joshua A. Rosenthal accompanying Defendants' motion is bereft of evidence supporting Defendants' allegations of discovery misconduct or any of the other events supposedly leading up to this motion. Plaintiffs did not conceal anything from Defendants, withhold documents without justification, or act inappropriately in any fashion. Nonetheless, Plaintiffs will not oppose the motion on this basis. If necessary, the Court can address these issues in the course of adjudicating discovery disputes or other matters that require such attention.

## I.    Discussion

Though Plaintiffs' position here is generally one of non-opposition, Plaintiffs are forced to respond to Defendants' more unsupportable positions. One is the sheer hypocrisy and unfairness in Defendants' simultaneously staking out positions in favor of amending their pleadings and against Plaintiffs' right to do the same. In truth, the arguments in favor of granting leave to amend are the same for both parties. Each side has obtained testimony in deposition

---

[1] That Defendants seek to sue only Mr. Bowman but not his co-plaintiff PREMCO is revealing: it shows once again how Defendants treated Mr. Bowman as an individual employee where it suits them, but as an independent entity (PREMCO) where it benefits them to do so.

within the last two months that they believe supports their amended pleadings; each argues that

the amendments arise "out of the same transaction or occurrence as the matters alleged in the

complaint." Motion at 5:19-20. Both parties face the same challenges (actually relatively

minimal) in addressing the new allegations in the face of an impending trial date. Yet, somehow,

Defendants argue that the same federal rules that provide for liberality in matters of pleadings

apply only in their favor.

### A.    Defendants concede that amendments to pleadings are "freely permitted"

This is a verbatim quote from Defendants' motion:

> "Such amendments are freely permitted. *Williams v. Lampe* (7th Cir. 2005) 399
> F.3d 867, 870. Federal policy strongly favors determination of cases on their
> merits. Therefore, the role of pleadings is limited, and leave to amend is freely
> given. *Formand v. Davis* (1962) 371 U.S. 178, 182.

Motion at 8:7-10.

### B.    The Counterclaim changes the nature of this action

In apparent hopes of distinguishing their position here from their diametrically opposite

position against Plaintiffs' motion to amend, Defendants argue that their proposed counterclaim

is a mere "clarification" of an existing affirmative defense. As the Court rightly pointed out at

the recent Case Management Conference, however, an affirmative defense is a far cry from a

counterclaim.   A counterclaim creates the equivalent of a whole new lawsuit against

Mr. Bowman that would survive the dismissal or defeat of Plaintiffs' claims.  Unlike a setoff, a

counterclaim may seek relief in excess of the amount demanded or different in kind from that

sought by the opposing party. Fed. R. Civ. Proc. 13(c); *see, e.g., Calnetics Corp. v. Volkswagen

of America, Inc.* (9th Cir. 1976) 532 F2d 674, 678.  They are apples and oranges.  To claim this

counterclaim is nothing but a "clarification of an affirmative defense" is simply untrue.

Moreover, the proposed counterclaim is based on different facts than the affirmative

defense cited by Defendants.  Curiously enough, Defendants do not actually append the answer

or quote this affirmative defense in their motion.  To remedy that oversight, here is the

affirmative defense cited in Defendants brief:

**PLAINTIFF'S OPP. TO DEFENDANTS' MOTION FOR LEAVE TO FILE
COUNTERCLAIM AND AMEND ANSWER**

**Seventh Affirmative Defense**

The defendants allege, upon information and belief, that plaintiffs are barred from the relief sought in the first amended complaint and/or are entitled to a set off of the relief sought based upon plaintiffs' conversion and/or embezzlement of commission amounts received by plaintiffs but due and owing to defendants.

The proposed counterclaim has only tangentially to do with "conversion and/or embezzlement of commission amounts." Instead, Defendants are now alleging breach of contract, with damages for solicitation of customers and loss of future business (First Cause of Action); conversion of loan files and customer lists (Second Cause of Action); violation of the Uniform Trade Secrets Act (Third Cause of Action); and intentional interference with prospective economic advantage (Fourth Cause of Action). Might these causes of action be brought *alongside* a setoff for conversion and/or embezzlement of commission amounts? Perhaps. Are they the factual, legal or even functional equivalent of the Seventh Affirmative Defense? Not a chance. While they might or might not arise out of the same series of transactions or occurrences, that is an entirely different matter than asserting that these affirmative claims were present in the case since Day One.

**C.    The proposed counterclaim requires additional discovery in the same measure as Plaintiffs' proposed amended complaint**

Defendants argue that the subject matter of the counterclaim "is not an area that [Plaintiffs] need to discover because they possess all of the documents necessary to defend the counter-claim." Motion at 6:21-24. That is completely untrue, and appears to be a holdover from Defendants' misinformed idea that Plaintiffs are withholding documents. Actually, Plaintiffs are still waiting to learn the facts and evidence underlying the counterclaim. However, these are matters that can be dealt with through reasonable discovery efforts before trial.

The actual truth is that Plaintiffs are still waiting to learn what evidence and witnesses will be adduced at trial to supports this counterclaim. It appears from Defendants' motion that they, too, have no idea what the evidence will be. Their brief is based on inferences: "Obviously. . .," "this necessarily means that . . .," "The requested documents, if produced, would demonstrate . . .," "it is very likely that . . . ." It is readily apparent that Defendants

1   have no clear idea what the evidence will show.  Moreover, neither Defendants nor Plaintiff have

2   any idea at this point what damages Defendants are seeking.

3       To address this last question, Plaintiffs propounded an interrogatory asking Defendants:

4   "If YOU contend that Bowman owes YOU money, STATE ALL FACTS that support YOUR

5   contention."  Defendants stated in response only that they could not calculate the amount of

6   damages they are claiming because of Plaintiffs' refusal to produce documents related to the

7   loans.  "Discovery is on going and at such time as the information is ascertained, Responding

8   Party will amend this response."  Declaration of Alan F. Cohen at **Exhibit A,** at 10:3-14.

9   Plaintiffs await Defendants' (no doubt voluntary) amendment to this response.  However, given

10  that the counterclaim alleges four new causes of action, they also will have to propound

11  additional discovery addressing each of these, along with the numerous facts newly alleged in

12  this ten-page pleading.[2]

13      Plaintiffs point this out not because they oppose amending the pleadings or fear a

14  reasonable amount of additional discovery but to point out the rank falsity of Defendants'

15  position.  Amendments to pleadings are to be freely granted under the federal rules of pleading,

16  and Defendants' request for leave to amend is no better and no worse than Plaintiffs', nor more

17  or less likely to require a certain additional measure of discovery.  Defendants' claim that

18  Plaintiffs' modest amendment to the complaint requires a nine month continuance and

19  "change[s] . . . the entire litigation landscape 3 months before the trial date" is no more true than

20  their claim that inserting a counterclaim at the same juncture is a mere "clarification" requiring

21  no further discovery.

22          **D.    Plaintiffs reserve the right to challenge the counterclaim on any basis**

23      By staking out a neutral position on the propriety of granting Defendants' leave to file

24  their counterclaim and amended answer, Plaintiffs do not concede any fact or issue alleged in

25

26  [2] And these are entirely new allegations from Plaintiffs' perspective; Plaintiffs had no idea what new facts and
    claims Defendants planned to allege until they received the instant motion.  Unlike Plaintiffs, Defendants did not
27  float their proposed counterclaim to the other side before bringing this motion.  Defendants' claim that Plaintiffs
    refused to stipulate to the amendment is false.

28

CASE NO.: C-07-3140-SI
**PLAINTIFF'S OPP. TO DEFENDANTS' MOTION FOR LEAVE TO FILE
COUNTERCLAIM AND AMEND ANSWER**

those pleadings.  Plaintiffs do not concede Defendants' argument that this is a compulsory counterclaim under Fed. R. Civ. Pro. 13(a).  Nor do they waive their right to challenge the counterclaim on any basis, including failure to state a claim, lack of subject-matter jurisdiction, any other basis under Rule 12, judgment as a matter of law, by summary judgment, or on any other cognizable ground.

## II.    Conclusion

It is unfortunate that Defendants have chosen to waste the Court's time addressing motions to amend the pleadings in the face of the extreme liberality with which such motions must be granted under the federal rules.  It is equally unfortunate that in search of a justification for an unjustifiable position Defendants made so many misstatements that Plaintiffs felt obligated to respond instead of filing a simple statement of non-opposition.

Plaintiffs believe all proposed amendments should – indeed, under the federal rules, **must** – be granted.  They oppose this motion only in the event that the Court declines to allow Plaintiffs to amend their own pleadings.

LAW OFFICES OF ALAN F. COHEN


Dated: May 27, 2008                          By _____
                                                 Alan F. Cohen
                                                 Attorney for Plaintiff


## DECLARATION OF ALAN F. COHEN

1.      I am one of the attorneys of record for James W. Bowman, Jr. and Pacific Real Estate Mortgage Company, Inc. ("PREMCO"), Plaintiffs in this action.  I have personal knowledge of the facts below, and could and would testify competently hereto if called upon to do so.

2.      Attached as Exhibit A is a true and correct copy of Defendants' Responses to Plaintiffs' Special Interrogatories.  The interrogatory response cited in the brief above is at page 10, lines 3-14.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27th day of May, 2008, at San Francisco, California.

LAW OFFICES OF ALAN F. COHEN


By _____
    Alan F. Cohen
    Attorney for Plaintiffs

**PLAINTIFF'S OPP. TO DEFENDANTS' MOTION FOR LEAVE TO FILE
COUNTERCLAIM AND AMEND ANSWER**

# Exhibit A

1  David R. Medlin    (SBN 77417)
   G. Bradley Hargrave   (SBN 173911)
2  Joshua A. Rosenthal   (SBN 190284)
   MEDLIN & HARGRAVE
3  A Professional Corporation
   One Kaiser Plaza, Suite 1305
4  Oakland, CA  94612
   Telephone:    (510) 832-2900
5  Facsimile:    (510) 832-2945

6  Attorneys for Defendants

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10 James W. Bowman, Jr. and Pacific Real Estate       Case No.: C 07 3140 SI
   Management Company, Inc., a Washington
11 Corporation,

12              Plaintiffs,
                                                      DEFENDANT CMG MORTGAGE, INC.'S
13      vs.                                           RESPONSES TO PLAINTIFF'S SPECIAL
                                                      INTERROGATORIES, SET ONE
14 CMG Mortgage Inc., a California Corporation;
   CMG Mortgage, Inc., d/b/a Pacific Guarantee
   Mortgage, CMG Mortgage Services, Inc., a
15 California Corporation, CMG Mortgage Services,
   Inc. d/b/a Pacific Guarantee Mortgage,
16
                Defendants.
17 _____/

18 PROPOUNDING PARTY:      PLAINTIFF JAMES BOWMAN

19 RESPONDING PARTY:       DEFENDANT CMG MORTGAGE, INC.

20 SET NO.:                ONE

21      Responding Party has not fully completed an investigation of the facts relevant to this case, has

22 not completed discovery, and has not completed preparation for trial.  Accordingly, all of the responses

23 contained herein are based only upon such information and documents as are presently available to and

24 specifically known to the Responding Party and disclose only those contentions which presently occur

25 to Responding Party.

26      It is anticipated that further discovery, independent investigation, legal research and analysis

27 will supply additional facts and add meaning to known facts, as well as establishing entirely new factual

28 ///

                                        1

conclusions and legal contentions, all of which may lead to substantial additions to, changes in, and/or variations from the contentions herein set forth.

Except for explicit facts admitted herein, no incidental or implied admissions are intended hereby. The fact that Responding Party has responded to any interrogatory should not be taken as an admission that Responding Party accepts or admits the existence of any facts set forth or assumed by such response, or that such response constitutes admissible evidence. The fact that Responding Party has responded to part or all of any interrogatory is not intended, and shall not be construed, to be a waiver by Responding Party of all or any part of any objection to any response made by Responding Party.

The following responses are given without prejudice to the Responding Party's right to produce evidence of any subsequently discovered fact or facts which Responding Party may later recall or discover. Responding Party accordingly reserves the right to change any and all responses herein as additional facts are ascertained, analyses are made, legal research is completed, and contentions are made. The responses contained herein are made in a good faith effort to supply as much factual information and as much specification of legal contentions as are presently known, but should in no way be utilized to the prejudice of this Responding Party in relation to further discovery, research or analysis.

Responding Party objects to all of the interrogatories to the extent they, or any of them, call for any matter which is protected from discovery as either attorney work product and/or an attorney client communication. Responding Party will not divulge either attorney work product or attorney client communications.

Without prejudice to the above and subject thereto Responding Party responds as follows:

**SPECIAL INTERROGATORY NO. 1**

DESCRIBE IN DOLLARS the total amount of service yield premiums YOU obtained derived from or arising out of loans originated in the BRANCHES. For purpose of these interrogatories, "YOU" refers to defendants CMG Mortgage, Inc. and CMG Mortgage Services, Inc., and includes all persons acting on their behalf; "DESCRIBE IN DOLLARS" means to state the total amount, describe how the amount was calculated, and identify the documents or other

2

1   sources of information on which the calculation is based; "BRANCH" or "BRANCHES" refer to

2   YOUR Vancouver and Federal Way branches managed by Bowman until January 31, 2007.

3   **RESPONSE TO SPECIAL INTERROGATORY NO. 1**

4     Objection on the ground that the interrogatory is vague and ambiguous with respect to "Service

5   Yield Premiums." Objection on the ground that the information sought by the interrogatory is

6   irrelevant and is not likely to lead to the discovery of admissible evidence. Objection on the ground

7   that the interrogatory seeks information that is so burdensome to compile compared to its utility that it

8   constitutes harassment of this Responding Party. Responding party does not compile information

9   related to service release premiums in a manner that would allow it to easily determine the service

10  release premiums generated from the sale of loans originated by individual branches. Since service

11  release prem

12  **SPECIAL INTERROGATORY NO. 1A**

13    DESCRIBE IN DOLLARS the total amount of service release premiums YOU obtained

14  derived from or arising out of loans originated in the BRANCHES. (As a courtesy to Plaintiffs,

15  Responding Party agreed to provide a response to the interrogatory that was propounded incorrectly .

16  Plaintiffs claimed they meant "Service Release Premium" not "Service Yield Premium.")

17  **RESPONSE TO SPECIAL INTERROGATORY NO. 1A**

18    Objection on the ground that the interrogatory is vague and ambiguous with respect to "Service

19  Release Premiums." Objection on the ground that the information sought by the interrogatory is

20  irrelevant and is not likely to lead to the discovery of admissible evidence. Objection on the ground

21  that the interrogatory seeks information that is so burdensome to compile compared to its utility that it

22  constitutes harassment of this Responding Party. Responding party does not compile information

23  related to service release premiums in a manner that would allow it to easily determine the service

24  release premiums generated from the sale of loans originated by individual branches. Since service

25  release premiums have nothing to do with any income that Plaintiffs could lay claim to, the

26  extraordinary effort required to compile the information is far outweighed by the utility of the

27  information.

28  ///

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE

**SPECIAL INTERROGATORY NO. 2**

DESCRIBE IN DOLLARS the total amount of administrative fees and or underwriting fees YOU received derived from or arising out of loans originated in the BRANCHES.

**RESPONSE TO SPECIAL INTERROGATORY NO. 2**

Objection on the ground that the information sought by the interrogatory is irrelevant and is not likely to lead to the discovery of admissible evidence. Objection on the ground that the interrogatory seeks information that is so burdensome to compile compared to its utility that it constitutes harassment of this Responding Party.

**SPECIAL INTERROGATORY NO. 3**

State all reasons YOU required Bowman to pay money into "reserves."

**RESPONSE TO SPECIAL INTERROGATORY NO. 3**

Objection on the ground that the interrogatory assumes facts not established in this litigation. Responding Party did not require Bowman to pay money into "reserves."

**SPECIAL INTERROGATORY NO. 4**

State all reasons YOU failed to regularly reimburse Plaintiffs for all expenses incurred in operating the Federal Way and Vancouver branches.

**RESPONSE TO SPECIAL INTERROGATORY NO. 4**

Objection on the ground that the interrogatory assumes facts not established in this litigation. Responding Party paid all regularly and properly submitted and requested expenses of the Federal Way and Vancouver branches as long as there was sufficient income to cover the submitted expenses.

**SPECIAL INTERROGATORY NO. 5**

STATE ALL FACTS supporting YOUR refusal to refund Plaintiffs' security deposits. For purposes of these interrogatories, "STATE ALL FACTS" means to describe facts with particularity rather than generality. For example, with regard to an action or event, this means that you should identify the individual(s) involved by name (who), the details of the event (what); the date on which the event occurred (when), the place it occurred (where) and, if germane, the reason it explains YOUR answer (why).

///

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE

1  **RESPONSE TO SPECIAL INTERROGATORY NO. 5**

2      Objection on the ground that the interrogatory is vague and ambiguous with respect to "refusal

3  to refund Plaintiffs' security deposits" and assumes facts not established in this litigation.  Responding

4  Party did not refuse to refund Plaintiffs' security deposits.   Without prejudice to such objection, and

5  subject thereto, Responding Party responds as follows: Responding Party did not refuse to refund

6  Plaintiffs' security deposit.  Responding Party never collected security deposits/reserves from Bowman,

7  so there was nothing to reimburse to Bowman.

8      The purpose of the security deposit is to pay for any expenses as a result of the branches'

9  activities that are not covered by the gross profits of the branch.  The security deposit/reserves were

10  paid by Pacific Real Estate Management Company (PREMCO) to Responding Party.  No security

11  deposits/reserves were returned to PREMCO at the time of termination or thereafter because there are

12  outstanding expenses attributable to the branches that exceed the amount of the security

13  deposit/reserves.

14  **SPECIAL INTERROGATORY NO. 6**

15      State each and every item or category of EXPENSE which YOU contend was or should

16  have been offset from BRANCH revenues to calculate Net Profits due to Bowman under the

17  Branch Management Agreements. For purposes of these interrogatories, "EXPENSE" has the

18  same meaning as used in paragraph 9 of the Branch Management Agreements. You do not need

19  to identify each instance of a recurring item - for example, if there were 20 invoices submitted

20  for copier costs, you need only identify "copier costs" as an EXPENSE. "Bowman" refers to

21  Plaintiff James Bowman.

22  **RESPONSE TO SPECIAL INTERROGATORY NO. 6**

23      Objection, the interrogatory requires the preparation of a list or compilation.  Additionally,

24  Plaintiffs are asking Responding Party to go through documents that Plaintiffs submitted to Responding

25  Party and repeat entries on the printed page.  Such a request is a harassing abuse of the discovery

26  process.  Without prejudice to such objection, and subject thereto, Responding Party responds as

27  follows: The information responsive to this interrogatory is included in documents already produced in

28  this litigation, including but not limited to CMG Bates Stamp Number 1735-1775 and 1939-1980.

1   Additionally, the categories of expenses are listed in Paragraph 9 of the Branch Management &

2   Employment Agreements.

3   **SPECIAL INTERROGATORY NO. 7**

4        If YOU contend that Bowman is not owed money from commission overpayments YOU

5   made to BRANCH employees, STATE ALL FACTS that support YOUR contention.

6   **RESPONSE TO SPECIAL INTERROGATORY NO. 7**

7        Objection on the ground that the interrogatory is vague, ambiguous and unintelligible.

8   Responding Party cannot state facts to prove a negative.  Without prejudice to such objection, and

9   subject thereto, Responding Party responds as follows: Plaintiffs were provided with accountings of the

10  monthly distributions and expenses each month for approval and comment prior to being finalized.  If

11  there were any errors or overpayments in the proposed monthly accountings, Plaintiffs knew to specify

12  any mistakes prior to the accountings being finalized and all employees received their wages.

13  Additionally, Plaintiffs were the only ones that could know if there were any errors in the accounting.

14  Responding Party is not aware of any over payment in wages that either Plaintiff raised prior to any

15  accounting being final.  Thus, Responding Party assumed that all payments of wages and/or

16  commissions were accurate since they were approved by Plaintiffs.  Moreover, and in any event, the net

17  sum is not sufficient to offset the total losses suffered by the Vancouver and Federal Way branches,

18  which of course is the reason there were no net profits/profit sharing available for Bowman.

19  **SPECIAL INTERROGATORY NO. 8**

20       If YOU contend that Bowman is not owed money from contributions to YOUR 401k plan

21  that never vested in any BRANCH employees, STATE ALL FACTS that support your

22  contention.

23  **RESPONSE TO SPECIAL INTERROGATORY NO. 8**

24       Objection on the ground that the interrogatory is vague, ambiguous and unintelligible.

25  Responding Party cannot state facts to prove a negative.  Without prejudice to such objection, and

26  subject thereto, Responding Party responds as follows: Neither Responding Party nor any one of

27  Responding Party's attorneys is an ERISA expert.  However, through long experience, Responding

28  Party and its counsel, do know the following.

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE

1    Employer contributions to a 401K are subject to numerous rules and regulations, including

2  vesting requirements. Full vesting varies between plans, but typically takes several years. If an

3  employee terminates his/her employment before he/she is fully vested, employer contributions as to

4  which the employee is not vested may not be removed by the employee, or anyone else. Forfeited sums

5  must remain in the employer's 401K trust account. These "forfeited" sums may not be removed by

6  anyone and, instead must be applied toward the employer's contributions to its employees the following

7  year. Of course, in this instance the Vancouver and Federal Way branches directly benefitted from such

8  forfeitures.

9    As indicated, forfeited sums remain in the employer's 401K trust account and are applied,

10  during the next full calendar year, towards the employer's contribution that year. So, for example, if an

11  employee of Plaintiffs' branches forfeited any portion of his/her employer contributions in any one year,

12  the forfeited sum was available, the following year, to apply towards the employer's contribution due

13  that year to all employees then in its employ. Accordingly, in each year that Plaintiffs were associated

14  with Responding Party, the total of Plaintiffs' contribution otherwise due by reason of employees of the

15  Vancouver and Federal Way branches was reduced, by all forfeitures from the previous year - including

16  not only the forfeitures from the Vancouver and Federal Way branches, but also by reason of forfeitures

17  from all other Responding Party branches as well. Indeed, in Plaintiffs' first year of association with

18  Responding Party, Plaintiffs realized a reduction in the contribution which would have otherwise been

19  owing by Plaintiffs, on behalf of the employees of the Vancouver and Federal Way branches, because

20  of forfeitures from employees of other Responding Party branches from the prior year, i.e., the year

21  immediately preceding the year that Plaintiffs joined Responding Party. By reason of ERISA rules and

22  regulations, this "benefit" rolls forward each year from the previous year. Therefore, in each year of

23  Plaintiffs' association with Responding Party, Plaintiffs' share of the employer contribution otherwise

24  due on behalf of the employees of Plaintiffs' branches was reduced, not only by reason of any

25  forfeitures from the former employees of the Vancouver and Federal Way branches, but also by reason

26  of forfeitures throughout Responding Party and all of its branches. Accordingly, since Plaintiffs

27  realized this benefit in the first year of Plaintiffs' association with Responding Party, and since in each

28  year Plaintiffs benefitted from forfeitures throughout Responding Party (not only from any forfeitures at

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE
M:\CMG\85-0706-02 Bowman\Discovery\Responding

1  the Vancouver and Federal Way ), it is certainly the case that the cumulative dollar benefit realized by

2  Plaintiffs far exceed the total dollar value of all forfeitures by all employees of the Vancouver and

3  Federal Way branches throughout Plaintiffs' association with Responding Party.  Moreover, and in any

4  event, the net sum is not sufficient to offset the total losses suffered by the Vancouver and Federal Way

5  branches, which of course is the reason there were no net profits/profit sharing available for Bowman.

6       The analysis is further complicated by ERISA rules as to when a "forfeiture" takes place.  A

7  forfeiture does not occur simply because an employee terminates employment or even ceases to

8  participate in the plan.  It is not until the employee elects to remove his/her vested funds from the plan

9  that the portion which is not vested is made available, the following year, for distribution to the

10 remaining employees.  Accordingly, it is almost certainly the case that Plaintiffs benefitted from

11 forfeitures of CMG employees, whose employment terminated years before Plaintiffs' first association

12 with CMG.  Further, if any terminated employees of Vancouver and Federal Way branches have not yet

13 withdrawn their funds from the plan, even those sums have not yet "forfeited."  As to any such

14 employee,  the date and the amount of the forfeiture's value is speculative and undeterminable at any

15 point prior to the time when every one of the former employees of the Vancouver and Federal Way

16 branches who participated in the plan actually have removed his/her vested funds from the plan.

17 However, once again, and in any event, the net sum could not conceivably be enough to offset all of

18 Plaintiffs' losses.

19 **SPECIAL INTERROGATORY NO. 9**

20      If YOU contend that Bowman is not owed money from overpayments of benefits to BRANCH

21 employees, STATE ALL FACTS that support YOUR contention.

22 **RESPONSE TO SPECIAL INTERROGATORY NO. 9**

23      Objection on the ground that the interrogatory is vague, ambiguous and unintelligible.

24 Responding Party cannot state facts to prove a negative.  Without prejudice to such objection, and

25 subject thereto, Responding Party responds as follows: Responding Party paid benefits to employees

26 based upon Plaintiffs' representations that the employees continued to work for the branches.  If certain

27 employees left Responding Party's employment and were not so informed by Plaintiffs, Responding

28 Party would continue to pay benefits until so informed by Plaintiffs.  As a courtesy to Plaintiffs,

1   Responding Party asked the employees to repay the amount of benefits they received after they left.

2   However, said benefit payments are expenses of the branches and were properly charged against profits.

3   Moreover, and in any event, the net sum is not sufficient to offset the total losses suffered by the

4   Vancouver and Federal Way branches, which of course is the reason there were no net profits/profit

5   sharing available for Bowman.

6   **SPECIAL INTERROGATORY NO. 10**

7       If YOU contend that Bowman is not owed money from earned marketing credits, STATE

8   ALL FACTS that support YOUR contention.

9   **RESPONSE TO SPECIAL INTERROGATORY NO. 10**

10      Objection on the ground that the interrogatory is vague, ambiguous and unintelligible.

11  Responding Party cannot state facts to prove a negative.  Objection on the ground that the interrogatory

12  is vague and ambiguous with respect to "Bowman is not owed money from earned marketing credits"

13  and assumes facts not established in this litigation.  Without prejudice to such objection, and subject

14  thereto, Responding Party responds as follows: Bowman does not receive the earned marketing credits.

15  Additionally, they are negative expenses that are deducted from ordinary expenses under the Facilities

16  Agreements.  Since the earned marketing credits program is paid as an offset of expenses of the

17  branches and because of the outstanding expenses attributable to the branches, the expenses of the

18  branches exceed any marketing credits.  Thus, the marketing credits were not earned.

19  **SPECIAL INTERROGATORY NO. 11**

20      If YOU contend that YOU paid Bowman all wages he was owed at the time of termination,

21  STATE ALL FACTS that support YOUR contention. "Wages" as used in this interrogatory means all

22  amounts for labor performed, whether under the Branch Management Agreements or otherwise,

23  whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or

24  other method of calculation.

25  **RESPONSE TO SPECIAL INTERROGATORY NO. 11**

26      Bowman was paid all of his wages at the time of termination and was even paid wages as a loan

27  officer after his termination for his individual loan activity.   As a result of the outstanding expenses of

28  the branches as a result of the repurchase obligations on the Wilkins and Frazier loans, the expenses of

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE

1   the branch exceeded the profits of the branch. Thus, there were no net profits/profit sharing to pay

2   Bowman under the profit sharing agreement.

3   **SPECIAL INTERROGATORY NO. 12**

4        If YOU contend that Bowman owes YOU money, STATE ALL FACTS that support YOUR

5   contention.

6   **RESPONSE TO SPECIAL INTERROGATORY NO. 12**

7        Plaintiffs closed loans with Sierra Pacific Mortgage that were started with CMG prior to his

8   termination. These loans were ones that Bowman was contractually obligated to close with CMG.

9   Transfer of these loans to Sierra Pacific constitutes a breach of Bowman's contracts with CMG,

10  constitutes theft and constitutes a violation of the Uniform Trade Secrets Act. Since Plaintiffs have

11  refused to provide the documents related to the loans, as requested by Responding Party, Responding

12  Party is unable at this time to calculate its damages as a result of Bowman's wrongful activity and

13  conduct. Discovery is on going and at such time as the information is ascertained, Responding Party

14  will amend this response.

15  **SPECIAL INTERROGATORY NO. 13**

16       If YOU contend that Bowman owes YOU money, IDENTIFY all documents that support

17  YOUR contention. For purposes of these interrogatories, the word "IDENTIFY" when used in

18  reference to documents means to identify each such document by type, author, date, and title. Each

19  document must be separately identified; it is not enough to refer to a category of documents.

20  **RESPONSE TO SPECIAL INTERROGATORY NO. 13**

21       Since Plaintiffs have refused to provide the documents related to the loans started before

22  January 31, 2007 and closed thereafter, as requested by Responding Party, Responding Party is unable

23  at this time to specifically identify documents. However, Responding Party did receive three closing

24  statements and checks, in response to subpoenas, for borrowers Theresa Johnson, Daniel Van House,

25  and Greg Barcus. Additionally, Responding Party did receive a document from Sierra Pacific

26  Mortgage, pursuant to subpoena, that indicated in excess of 15 other loans that were most likely started

27  prior to January 31, 2007.

28  ///

10

1  **SPECIAL INTERROGATORY NO. 14**

2      If YOU contend that YOU continued to offer mortgage loan services after January 31,

3  2007 in the territories formerly serviced by the BRANCHES, STATE ALL FACTS supporting

4  YOUR contention.

5  **RESPONSE TO SPECIAL INTERROGATORY NO. 14**

6      Objection, vague and ambiguous with respect to the term "territories formerly serviced by the

7  BRANCHES." Responding Party does not know if propounding party is referring to already existing

8  branches in the same geographical area, if Plaintiffs are asking if Responding Party opened new

9  branches with the same address as the BRANCHES or if Plaintiffs are asking if Responding Party had

10  branches that served the same states as the BRANCHES. Objection on the ground that the information

11  sought by the interrogatory is irrelevant and is not likely to lead to the discovery of admissible evidence.

12  **SPECIAL INTERROGATORY NO. 15**

13      IDENTIFY the person or persons who made the decision to withhold payment of money

14  owed Bowman under the Branch Management Agreements after January 31, 2007. For the

15  purposes of these interrogatories, the word "IDENTIFY" when used in reference to individuals

16  means to state the identity and last known telephone number and address.

17  **RESPONSE TO SPECIAL INTERROGATORY NO. 15**

18      Objection on the ground that the interrogatory assumes facts not established and not true.

19  Responding Party did not withhold payment of money owed Bowman under the Branch Management

20  Agreements. There were no payments due Bowman. All income of the Vancouver and Federal Way

21  branches are not sufficient to offset the total losses suffered by said branches, which is the reason there

22  were no net profits/profit sharing available for Bowman

23  **SPECIAL INTERROGATORY NO. 16**

24      IDENTIFY the person or persons responsible for YOUR human resources functions from

25  December 1, 2003 to the present.

26  **RESPONSE TO SPECIAL INTERROGATORY NO. 16**

27      Lorraine Coppa - can be reached through this office. Teresa Ones and Beth Anne Fitzgibbons

28  are Responding Party's former employees. Responding Party will not provide the contact information

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE

1  of these individuals in respect to the privacy rights of third parties to this lawsuit, and objects on such

2  ground. Should Plaintiffs require the deposition of these individuals or to contact them, Responding

3  Party will work with Plaintiffs to get in contact with said individuals.

4  **SPECIAL INTERROGATORY NO. 17**

5   IDENTIFY the person or persons responsible for YOUR government compliance functions from

6  December 1, 2003 to the present.

7  **RESPONSE TO SPECIAL INTERROGATORY NO. 17**

8   Debbie Peterson can be reached through this office. Larry Ward and Katie Proefke are

9  Responding Party's former employees. Responding Party will not provide the contact information of

10  these individuals in respect to the privacy rights of third parties to this lawsuit, and objects on such

11  ground. Should Plaintiffs require the deposition of these individuals or to contact them, Responding

12  Party will work with Plaintiffs to get in contact with said individuals.

13  **SPECIAL INTERROGATORY NO. 18**

14   IDENTIFY the person or persons responsible for YOUR accounting functions from

15  December 1, 2003 to the present.

16  **RESPONSE TO SPECIAL INTERROGATORY NO. 18**

17   Paul Chevez can be reached through this office. Marshall Griffin is a former employee of

18  Responding Party. Responding Party will not provide the contact information of this individual in

19  respect to the privacy rights of third parties to this lawsuit, and objects on such ground. Should

20  Plaintiffs require the deposition of this individual or to contact him Responding Party will work with

21  Plaintiffs to get in contact with said individual.

22  **SPECIAL INTERROGATORY NO. 19**

23   STATE ALL FACTS that support YOUR affirmative defenses to Bowman's claims.

24  **RESPONSE TO SPECIAL INTERROGATORY NO. 19**

25   First Affirmative defense - Plaintiffs have not stated any facts upon which relief can be granted

26  because propounding Plaintiffs are not due any money under the contract at issue. Bowman was paid

27  all of his final salary as an employee. There were no net profit to distribute to Bowman from

28  Responding Party's profit sharing plan as of January 31, 2007 or at any time since, as outstanding

12

1   expenses attributable to the branches exceed all income of the branches.  Additionally, there were no

2   security deposits or reserves to pay PREMCO as the outstanding expenses attributable to the branches

3   exceeded all income of the branches.  Thus, the security deposit/reserves were needed to cover the

4   expenses of the branches.

5        Second Affirmative defense - Due to Plaintiffs' taking loans that were started prior to January

6   31, 2007, and closing them with Bowman's new employer, propounding parties have unclean hands,

7   which bar their recovery herein.  Additionally, as a result of Plaintiffs' delay in bringing the claims, as

8   alleged in the complaint and later alleged in subsequent documents, they have waived and otherwise

9   surrendered their ability to bring some or all of the claims because they have abandoned said claims and

10  because the contract excluded claims made beyond one year from their accrual.  Also, since Plaintiffs

11  were provided each monthly accounting regarding the branch expenses and activities prior to their

12  being finalized, Plaintiffs have acquiesced, ratified and abandoned their damages, if any there are.

13       Third Affirmative defense- As stated in the response to the First Affirmative defense, Plaintiffs

14  are not entitled to any damages from Responding Party.  Thus, they have not suffered damages vis-a-vis

15  Responding Party.

16       Fourth Affirmative defense - To the extent that Plaintiffs' claim that they have suffered damages

17  as a result of any improper actions of Responding Party, which are entirely denied, any damages as a

18  result of improperly relying on Plaintiffs' actions are a result of Plaintiffs' failure to mitigate their

19  alleged damages.

20       Fifth Affirmative defense - Plaintiffs' claims, to the extent that they are for claims outside of a

21  year from their accrual, are not enforceable via this contract action, per section 5.4 of the Facilities

22  Agreement and section 21(p) of the Branch Management and Facilities Agreement.  Also, to the extent

23  that any claims made by Plaintiffs are pursuant to an oral contract, they are not enforceable as being

24  outside of the two year statute of limitations for breach of contract.

25       Sixth Affirmative defense - Bowman engaged in self help with respect to closing loans, as

26  alleged with Sierra Pacific Mortgage in violation of Bowman's Branch Management and Employment

27  ///

28  ///

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE
M:\CMG\85-0706-02 Bowman\Discovery\Responding\special rogs Set 1. wpd

1   Agreements with CMG and in violation of the Uniform Trade Secrets Act - specifically, loans started

2   prior to January 31, 2007 and closed thereafter. Such action puts Plaintiffs *in pari delicto* and bars their

3   claims.

4       Seventh Affirmative defense - Bowman engaged in self help with respect to closing loans with

5   Sierra Pacific Mortgage in violation of Bowman's Branch Management and Employment Agreements

6   with CMG and in violation of the Uniform Trade Secrets Act - specifically, loans started prior to

7   January 31, 2007 and closed thereafter. Due to the revenue that Responding Party did not earn as a

8   result of such action, it is entitled to a set off of the amount sought by Plaintiffs or the benefit of a

9   complete bar to the requested recovery.

10       Eighth Affirmative defense - Plaintiffs engaged in self help with respect to closing loans with

11   Sierra Pacific Mortgage in violation of Bowman's Branch Management and Employment Agreements

12   with CMG and in violation of the Uniform Trade Secrets Act - specifically, loans started prior to

13   January 31, 2007 and closed thereafter. Due to the revenue that Responding Party did not earn as a

14   result of such action, it is entitled to a set off of the amount sought by Plaintiffs and Plaintiffs are

15   responsible for those alleged damages.

16       Ninth and Tenth Affirmative defenses - The affirmative defenses and the applicable

17   constitutional provisions speak for themselves.

18       Eleventh Affirmative defense - Responding Party paid Plaintiffs all money due and owing to

19   them, as indicated by their accounting, based on the information provided to Responding Party by

20   Plaintiffs and then approved each month by Plaintiffs prior to being made final. To the extent that any

21   money was not paid to Plaintiffs that was in fact owed to them, which Responding Party expressly

22   denies, it was not done with any malice or intent to harm Plaintiffs, which harm is expressly denied.

23       Twelfth Affirmative defense - Bowman was an employee for Responding Party in Washington

24   state. Thus, he is arguably not subject to and due the protections of California Labor law.

25   **SPECIAL INTERROGATORY NO. 20**

26       Except for this action, in the past 10 years has any employee filed a civil action or

27   administrative proceeding against YOU regarding his or her employment? If so, for each civil

28   action:

1       (a)    state the name, ADDRESS, and telephone number of the employee;

2       (b)    state the court, names of the parties, and case number of the civil action;

3       (c)    state the name, ADDRESS, and telephone number of any attorney representing

4   the EMPLOYEE; and

5       (d)    state whether the action has been resolved or is pending.

6   **RESPONSE TO SPECIAL INTERROGATORY NO. 20**

7       Objection on the ground that this interrogatory seeks information not relevant to this dispute and

8   not likely to lead to the discovery of admissible evidence. Objection on the ground that this

9   interrogatory is overbroad and thus unduly burdensome and harassing. Objection on the ground that

10  this interrogatory seeks information in the public record and thus equally available to propounding

11  party.

12  **SPECIAL INTERROGATORY NO. 21**

13      If YOU contend that YOU and Bowman were in a business relationship other than an

14  employer-employee relationship, STATE ALL FACTS that support YOUR contention.

15  **RESPONSE TO SPECIAL INTERROGATORY NO. 21**

16      Bowman was the branch manager for two branch offices in Washington state for Responding

17  Party. Bowman's company, PREMCO, had a contract with Responding Party whereby it provided

18  services and facilities to Responding Party, in connection with the operations of the two branch offices.

19      Bowman, in his capacity as branch manager, was paid in two ways. First, he was paid based on

20  his individual performance as a loan officer for Responding Party. Thus, he was paid twice a month on

21  the basis of how many loans he personally closed. Second, Bowman received the net profits of both

22  branches, as part of a profit sharing plan. He received this money once a month, if there were, and to

23  the extent there were, any net profits. The net profit/profit sharing calculation was based upon the

24  actual profits of the branches and was calculated by determining gross revenue of the branches, offset

25  by any and all expenses of the branches. PREMCO was paid separately, and directly, for the services it

26  provided to Responding Party. All payments to PREMCO are considered an expense of the branches,

27  for purposes of determining any net/profit sharing.

28  ///

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE
M:\CMG\85-0706-02 Bowman\Discovery\Responding\special rogs Set 1- .wpd

1    Thus, Bowman was an employee of Responding Party and was paid on a W2 basis for his own

2   individual loan activity. He was an employee for purposes of receiving net profits/profit sharing, as it

3   was paid on W2 basis and once a month, if any net profits/profit sharing existed for that month.

4   However, his company, PREMCO, had a separate contract and business relationship with Responding

5   Party. Thus, while Bowman was an employee, his net profits/profit sharing revenue, if any, was

6   affected by PREMCO's expenses and obligations.

7   **SPECIAL INTERROGATORY NO. 22**

8    If YOU contend that there was a breach of any agreement between YOU and Bowman,

9   for each breach describe STATE ALL FACTS that support YOUR contention.

10   **RESPONSE TO SPECIAL INTERROGATORY NO. 22**

11    Bowman closed loans with Sierra Pacific Mortgage that were started with Responding Party

12   prior to his termination. These loans were ones that Bowman was contractually obligated to close with

13   CMG. Transfer of these loans to Sierra Pacific constitutes a breach of Bowman's contracts with

14   Responding Party, constitutes theft and constitutes a violation of the Uniform Trade Secrets Act as well

15   as the provisions of the contract that address Bowman's acknowledgment of Responding Party's trade

16   secrets. Since Bowman has refused to provide the documents related to the loans, as requested by

17   Responding Party, Responding Party is unable at this time to calculate its damages as a result of

18   Bowman's activities. Discovery is on going and at such time as the information is ascertained,

19   Responding Party will amend this response.

20   **SPECIAL INTERROGATORY NO. 23**

21    If YOU contend that performance of any part of the agreements between YOU and

22   Bowman was excused, for each such part STATE ALL FACTS that support YOUR contention.

23   **RESPONSE TO SPECIAL INTERROGATORY NO. 23**

24    No.

25   **SPECIAL INTERROGATORY NO. 24**

26    If YOU contend that any term of the agreements between YOU and Bowman was

27   ambiguous, for each such term STATE ALL FACTS that support YOUR contention.

28   ///

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE
M:\CMG\85-0706-02 Bowman\Discovery\Responding\special rogs Set 1- wpd

1  **RESPONSE TO SPECIAL INTERROGATORY NO. 24**

2      No.

3  **SPECIAL INTERROGATORY NO. 25**

4      IDENTIFY every branch manager you have employed since 2003.

5  **RESPONSE TO SPECIAL INTERROGATORY NO. 25**

6      Objection on the ground that this interrogatory seeks information not relevant to this dispute and

7  not likely to lead to the discovery of admissible evidence.  Objection on the ground that this

8  interrogatory is overbroad and thus unduly burdensome and harassing.  Objection on the ground that

9  this interrogatory seeks the private information of third parties.

10

11  Date:    April 22, 2008

                                    **MEDLIN & HARGRAVE**
12                                      A PROFESSIONAL CORPORATION

13

14                                      By:  _____

                                          Joshua A. Rosenthal,
15                                            Attorneys for Defendants

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE
M:\CMG\85-0706-02 Bowman\Discovery\Responding\special rogs Set 1-.wpd

1
2
3
4
5                           **VERIFICATION**

6       I, Paul Chevez, declare:

7       I am Chief Financial Officer of CMG Mortgage, Inc. a defendant in the above-entitled action. I

8    have read the foregoing:

9    **DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFFS' SPECIAL**
     **INTERROGATORIES, SET ONE**
10

11   and know the contents thereof. The same is true of my own knowledge, except as to those matters

12   which are therein alleged on information and belief and as to those matters, I believe them to be true.

13       I declare under penalty of perjury under the laws of the United States that the foregoing is true

14   and correct.

15       Executed April 22, 2008, at San Ramon, California.

16

17

18                              _____
                                Paul Chevez
19

20

21

22

23

24

25

26

27

28

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE
M:\CMG\85-0706-02 Bowman\Discovery\Responding\special rogs Set 1-.wpd

1

**PROOF OF SERVICE BY MAIL**

2      I am over the age of eighteen years and not a party to the within action.  My business address is

3  One Kaiser Plaza, Suite 1305, Oakland, California 94612, which business is located in the county where

4  the mailing described below took place.

5      I am readily familiar with my employer's business practice for collection and processing of

6  correspondence for mailing with the United States Postal Service.  On the date set forth below, at my

7  place of business in Oakland, California, I served the within:

8      **DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL**
       **INTERROGATORIES, SET ONE**

9

10  by placing a true copy thereof enclosed in a sealed envelope, with postage fully prepaid, for collection

11  and mailing with the United States Postal Service where it would be deposited with the United States

12  Postal Service that same day in the ordinary course of business, addressed as follows:

13  Angela M. Xavier                         Alan F. Cohen
    Attorney At Law                          101 Montgomery Street, Suite 2050
14  900 Cherry Avenue, Suite 300             San Francisco, CA 94104
    San Bruno, CA 94583

15

16      I certify and declare under penalty of perjury under the laws of the State of California that the

17  foregoing is true and correct.  Executed on April 22, 2008, at Oakland, California.

18

19                                    Xinh Truong

20

21

22

23

24

25

26

27

28

PROOF OF SERVICE
M:\CMG\85-0706-02 Bowman\Proof\mail.wpd