LAW OFFICES OF
# ALAN F. COHEN

101 MONTGOMERY STREET
SUITE 2050
SAN FRANCISCO, CA 94104
TEL: 415.984.1943
FAX: 415.984.1953
cohenlaw@mindspring.com

June 11, 2008

**Via E-Filing and U.S. Mail**

Honorable Susan Illston
United States District Court
Northern District of California
450 Golden Gate Ave.
Courtroom 10, 19th Floor
San Francisco, CA 94102

> Re:  *Bowman et al. v. CMG Mortgage, Inc. et al.* – Case No. 3:07-cv-03140-SI
>
> **Plaintiffs' Motion to Compel Amended Responses to Interrogatories**

Dear Judge Illston:

Plaintiffs James Bowman and Pacific Real Estate Management Company, Inc. (PREMCO) ask the Court to compel Defendants CMG Mortgage, Inc. and CMG Mortgage Services, Inc. to amend their responses to the interrogatories discussed below. The full set of interrogatories is attached as **Exhibit A** to the accompanying Declaration of Alan F. Cohen ("Cohen Decl."). Defendants' Responses are attached as **Exhibit B**.

## I.   Factual and Procedural Background

This is an employment case, brought by Mr. Bowman against his former employers for failing to pay him all wages owed at the time of his termination, among other claims. Defendants are mortgage brokers and also operate a mortgage bank. From December 2003 until January 31, 2007, Defendants employed Mr. Bowman as a Branch Manager of two branches in Washington State.

Mr. Bowman was employed under a so-called "net branching" arrangement. His employment agreement called for him to receive the Net Income of the branches, calculated by subtracting branch operating expenses from the branches' Gross Income. See the Branch Management and Employment Agreement ("BMA"), attached as **Exhibit C** to the Cohen Decl.

"Gross Income" is defined in the BMA as "all income earned and derived from the Branch Office." *Id.* at p.4, ¶ 9. By any standard of contract construction, this is exceedingly broad language, and encompasses not only income "earned" directly at the Branch but also income Defendants "derived from" loans originated by the Branch. Plaintiffs' Second Amended Complaint alleges that Defendants breached this agreement in a number of ways; what is significant for the purpose of this motion is that Defendants underpaid Mr. Bowman by failing to include all income "earned and derived" from the branch when calculating his compensation.

Defendants generated income from loans in two ways. In their capacity as mortgage brokers, they originated, processed, and brokered residential mortgage loans that were underwritten by other lenders; broadly speaking, CMG received a broker's commission for this service. The interrogatories in dispute here are concerned with a second aspect of CMG's business, as a mortgage **lender**. As a lender, CMG earned

income in several ways "derived from" the loans generated by Mr. Bowman's branches. For the most part, these loans were almost immediately sold off to third-party investors, generating so-called secondary market income. Defendants also often realized a separate "service release premium," which was an additional price paid to CMG for the future value of servicing the loan. A third category of income CMG derived from these loans were administrative or underwriting fees paid by borrowers. The first two interrogatories at issue in this motion simply ask Defendants to quantify these categories of income "earned and derived from" loans originated in branches managed by Mr. Bowman.

Because Plaintiffs do not have access to Defendants' records, they have no other way of obtaining this information except through discovery. Plaintiffs therefore propounded interrogatories seeking an accounting of income earned and derived by CMG from loans originating in Mr. Bowman's branches.

### A. Plaintiffs' efforts to meet and confer

Before bringing this motion Plaintiffs exhausted attempts to resolve these disputes informally. Attached as **Exhibit D** to the Cohen Decl. is a letter sent to Defendants' counsel dated May 6 setting forth in detail the discovery Plaintiff is seeking, why these interrogatories were properly within the scope of discovery in this action, and why Defendants' objections were inapposite. Defendants' counsel responded by letter of May 23 agreeing to provide some other information but refusing to amend Defendants' responses to the interrogatories at issue here. **Exhibit E** to Cohen Decl. Plaintiffs made a final attempt to resolve this matter informally by letter dated June 3, attached as **Exhibit F** to the Cohen Decl. Defendants have not changed their position on these interrogatories (they amended certain other responses), and Plaintiffs require the Court's intervention in this matter.

## II. The Interrogatories at Issue

### A. Interrogatory Nos. 1 and 2

These interrogatories sought information about categories of Gross Income earned and derived from the Branch Offices managed by Mr. Bowman. Interrogatory No. 1 asks CMG in relevant part to:

> DESCRIBE IN DOLLARS the total amount of service release premiums YOU obtained derived from or arising out of loans originated in the BRANCHES.[1]

Interrogatory No. 2 asks CMG to:

> DESCRIBE IN DOLLARS the total amount of administrative fees and/or underwriting fees YOU received derived from or arising out of loans originated in the BRANCHES.

These are straightforward questions seeking data from which to quantify aspects of Plaintiffs' contract damages. Defendants first objected on the ground that the interrogatory was vague and ambiguous, but Defendants' May 23 letter makes it clear that they understood the nature of the question but object because "To the extent that the SRP's you are seeking are secondary market income, plaintiffs are not entitled to the money . . . ." **Exhibit F** at 1. That Defendants believe Plaintiffs are not entitled to the money, *i.e.*, that they believe they will defeat Plaintiff's claims, is irrelevant in determining

---

[1] The original language of the interrogatory contained an error, in that Plaintiff's counsel mistakenly wrote "service *yield* premium" instead of "service *release* premium." Defendants' counsel, Mr. Rosenthal, graciously agreed to respond to the interrogatory as if corrected.

Re: *Bowman v. CMG et al.*, Case No. 3:07-cv-03140-SI
Page 3

the scope of permissible discovery. The pleadings put these claims at issue, and Plaintiffs are entitled to conduct discovery into the value of the contract damages.

The scope of discovery is set by the pleadings; parties have a right to discovery of "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. Proc. 26(b)(1). The case has had a claim for breach of the Branch Management Agreements since it was originally filed, and the Court recently granted Plaintiffs leave to file a Second Amended Complaint, which *expressly* seeks damages for the failure to include the service release premiums and borrower fees in Gross Income. SAC ¶ 18(d). The proposed SAC is attached as **Exhibit G** to Cohen Decl. (The SAC has not been filed pending the Court's decision on Plaintiffs' Motion for Partial Reconsideration).

The interrogatories are therefore relevant to Plaintiffs' claims and so necessarily within the scope of discovery. If Defendants believe the contracts confer no right to recovery, they may contest the issue at trial or summary judgment, but until that point these matters are relevant to the claims and defenses of the parties and are therefore discoverable.

Defendants next objected to the request on the grounds that compiling this information was unduly burdensome. Neither Defendants' Responses nor their meet and confer letter provided evidence that a response would be unduly burdensome, or why this burden was so great that it should outweigh Plaintiffs' right to discovery. Such an empty objection must be overruled. *See, e.g., Nagele v. Electronic Data Systems Corp.*, 193 FRD 94, 109 (WD NY 2000) (objection that interrogatories were "burdensome" overruled because objecting party failed to "particularize" basis for objection).

In truth, Defendants' CEO has testified that such records were readily accessible:

```
   Q. Okay.  Does CMG have records showing what
 3 service release premiums it receives on the sales of the
 4 loan?
 5    A. Yes.
 6    Q. Are these records kept by Mr. Chevez's
 7 department?
 8    A. Yes.
 9    Q. Anybody in particular?  Do you know?
10    A. Paul would know how to get there.
11    Q. Okay.
12    A. Paul Chevez would know how to get them.
13    Q. Can you determine the income that CMG receives
14 from any given loan?
15    A. (Pause.)
16    Q. Do you have a way of tracking what that income
17 was?
18    A. Can we tell on an individual loan basis?
19    Q. Yes.
20    A. Yes.
```

Deposition of Christopher George at 69:2-20, **Exhibit H** to Cohen Decl.

Finally, Defendants' objection of burden must fail because Plaintiff has no other means of obtaining information regarding these aspects of his contract damages. Even if Defendants face some burden in compiling this information, they have not and cannot show that doing so would create any **undue** hardship. Given that there is no alternative source for this information, Defendant must provide the requested information, else Plaintiffs will be denied an opportunity to vindicate their claim.

### B. Interrogatory Nos. 16-18

These interrogatories required Defendants to provide contact information about various employee witnesses, most of whom apparently no longer work for Defendants. *See* **Exhibit B** at 11:26-12:21. Defendants refuse to provide this contact information, claiming that it is protected by the third parties' privacy rights. They state instead only that they would "work with Plaintiffs to get in touch with said individuals." *Id.*

This is as empty a promise as can be imagined. Whatever "working with Plaintiffs" means, it is certainly not a promise to guarantee the individuals' attendance. Even if Defendants' promises had been less vague, they still have no power to compel any former employee to do anything. The only way that Plaintiffs can obtain discovery or trial testimony from these individuals is through a subpoena. Moreover, Plaintiffs have the same right to contact these witnesses informally in investigating their case as have Defendants.

Rule 26(b) has long allowed discovery of "the identity and location of persons who know of any discoverable matter." This necessarily includes the witnesses' addresses. *Gillespie v. Civiletti*, 629 F.2d 637, 643 (9th Cir. 1980). Defendants may argue that the former employees have a privacy right in their contact information, but California law does not support this argument. If it were true, employees would be forever hampered from obtaining needed discovery in actions against their employers, who have full access to former employee witnesses.

The California courts have held that employee witness addresses are "basic civil discovery" . . . and "it is only under unusual circumstances that the courts restrict discovery of nonparty witnesses' residential contact information." *Puerto v. Superior Ct.* (2008) 158 Cal.App.4th 1242, 1254. No such unusual circumstances exist here. There is no evidence that Plaintiffs seek this information for an improper purpose, and Plaintiffs' interrogatory is narrowly tailored to seek only contact information. It is not as if Plaintiffs were seeking details of an employees' compensation, job performance, or finances.

Even if the information sought is protected by a minimal privacy right, a balancing test is applied to assess when other compelling interests outweigh an individual's right to privacy. "The constitutional right to privacy is not absolute; it may be abridged to accommodate a compelling public interest. One such interest, evidenced by California's broad discovery statutes, is the historically important state interest of facilitating the ascertainment of truth in connection with legal proceedings" (citations and internal quotation marks omitted). *Moskowitz v. Superior Court* (1982) 137 Cal.App.3d 313, 316. To the extent that any minimal privacy right exists here, it is outweighed by this public interest and Plaintiffs' own rights to due process. As further evidence that no expectation of privacy exists in this information, note that the California Judicial Council Form Interrogatories for Employment Law, drafted by a consensus of experienced employment law practitioners, implicitly found this inquiry uncontroversial enough to require responding employers to identify witnesses by address and telephone number.

### C. Interrogatory No. 20

This interrogatory, lifted verbatim from the California Employment Form Interrogatories, asked Defendants to provide basic information about any civil or administrative proceedings brought by employees against them in the last 10 years. **Exhibit A** at 5:3-12. Defendants' objections are undoubtedly brought in bad faith in an attempt to cover up the existence of previous complaints. The request is standard in any employment case. It is not unduly burdensome and harassing, as it seeks only minimal identifying information. *Id.* It is not irrelevant, as Defendants may have litigated central issues of contract interpretation, unlawful employment practices, fraud, intent, and other

matter present in this case in the course of previous proceedings.  If such cases were litigated to a conclusion they would be *res judicata* against Defendants.  Even if not conclusive, however, such cases could reveal discoverable information relevant to numerous claims and defenses of the parties, bringing them within the scope of discovery under Rule 26(b)(1).  The existence of previous claims would also be relevant to determining the reprehensibility of Defendants' actions and thus their liability for punitive damages.

Defendants' final objection, that these matters are in the public record, is specious.  Even if Plaintiffs could go to every possible civil and administrative jurisdiction and search for records they cannot identify and cannot be sure even exist – which would be unreasonable and perhaps impossible – the possible availability of information through other methods would not absolve Defendants of their obligation to respond.  Defendants may not refuse to respond to a discovery request on the ground that the requested information is in the possession of the requesting party (*Davidson v. Goord,* 215 FRD 73, 77 (WD NY 2003)), nor even on the ground that the information is more readily available to requesting party.  *DIRECTV, Inc. v. Puccinelli*, 224 FRD 677, 689 (D.KS 2004).  Here, where the information is far more readily available to Defendants, it is apparent that their only agenda in withholding this information is to obstruct Plaintiff's right to discovery.

### D.  Interrogatory No. 25

This interrogatory called on Defendants to identify all other Branch Managers employed since 2003, when Plaintiffs' employment began, and provide their contact information.  This information is relevant because this case involves difficult issues of the interpretation of Defendants' Branch Management Agreement, the accounting of Branch income and expenses, the representations Defendants made to Branch Managers (both in Plaintiff's presence and separately), Defendants' treatment of the Branch Managers' Reserves, deduction of Defendants' business losses from Branch Managers' wages, and numerous other issues for which these individuals are <u>direct, percipient witnesses</u>.

How Defendants handled these matters with other Branch Managers is relevant to understanding the rights and obligations of the parties here.  It will aid in contract interpretation, may estop Defendants from taking certain positions, may impeach Defendants' testimony, and may provide direct evidence in support of Plaintiffs' claims.  Just as an example, Defendants represented to the Branch Managers that CMG was required to obtain "Reserves" (*i.e.*, an unlawful cash bond) from Branch Managers because of HUD regulations.  Plaintiff is entitled to learn how other Branch Managers will testify to these and other misrepresentations.  These are important witnesses.

Plaintiff is entitled to contact and communicate with his fellow Branch Managers just as he would be with any other witness in any other case.  There is certainly no justification for withholding their very identities.  Nor is there anything private about their contact information; if they do not want to talk to Plaintiffs they are under no obligation to do so.  But it would be unjust to deprive Plaintiffs of the means of contacting these potentially valuable witnesses while that option is left open to Defendants.

Plaintiffs could draft another dozen pages of argument on these issues but hope that setting forth the issues in this simple fashion is sufficient.  Plaintiffs will provide more complete briefing if the Court requests.

Respectfully submitted,

Alan F. Cohen