# Exhibit A



1  Alan F. Cohen (State Bar No. 194075)
   **LAW OFFICES OF ALAN F. COHEN**
2  101 Montgomery Street, Suite 2050
3  San Francisco, CA  94104
   415.984.1943 (tel.)
4  415.984.1953 (fax)
   cohenlaw@mindspring.com
5
6  Angela M. Xavier (State Bar No. 165152)
   900 Cherry Avenue, Suite 300
7  San Bruno, CA  94066
   650.355.0414 (tel.)
8  650.355.0842 (fax)
9  Attorneys for Plaintiffs
10 James W. Bowman, Jr. and Pacific Real Estate

11              **UNITED STATES DISTRICT COURT**

12             NORTHERN DISTRICT OF CALIFORNIA

13                SAN FRANCISCO DIVISION

14

15 | JAMES W. BOWMAN, JR. and PACIFIC | Case No.: C-07-3140-SI |
   | REAL ESTATE MANAGEMENT | |

16 COMPANY, INC., a Washington          **PLAINTIFF'S SPECIAL**
17 Corporation                          **INTERROGATORIES TO DEFENDANT**
                                        **CMG MORTGAGE, INC.**
18              Plaintiffs,             **[SET ONE]**

19         v.

20 CMG MORTGAGE, INC., a California
21 Corporation; CMG MORTGAGE, INC.,
   d/b/a PACIFIC GUARANTEE
22 MORTGAGE, CMG MORTGAGE
   SERVICES, INC., a California corporation;
23 CMG MORTGAGE SERVICES, INC., d/b/a
24 PACIFIC GUARANTEE MORTGAGE,

25              Defendants.

26

27 PROPOUNDING PARTY:    PLAINTIFF JAMES W. BOWMAN, JR.

   RESPONDING PARTY:     CMG MORTGAGE, INC.
28
   SET NUMBER:           ONE

You are requested to answer the following interrogatories, separately, fully, in writing, and under oath, and serve a copy of the answers no later than thirty days from the date of service of this request.  Please furnish all responsive information that is presently available to you.

**SPECIAL INTERROGATORY NO. 1**

DESCRIBE IN DOLLARS the total amount of service yield premiums YOU obtained derived from or arising out of loans originated in the BRANCHES.  For purpose of these interrogatories, "YOU" refers to defendants CMG Mortgage, Inc. and CMG Mortgage Services, Inc., and includes all persons acting on their behalf; "DESCRIBE IN DOLLARS" means to state the total amount, describe how the amount was calculated, and identify the documents or other sources of information on which the calculation is based; "BRANCH" or "BRANCHES" refer to YOUR Vancouver and Federal Way branches managed by Bowman until January 31, 2007.

**SPECIAL INTERROGATORY NO. 2**

DESCRIBE IN DOLLARS the total amount of administrative fees and/or underwriting fees YOU received derived from or arising out of loans originated in the BRANCHES.

**SPECIAL INTERROGATORY NO. 3**

State all reasons YOU required Bowman to pay money into "reserves."

**SPECIAL INTERROGATORY NO. 4**

State all reasons YOU failed to regularly reimburse Plaintiffs for all expenses incurred in operating the Federal Way and Vancouver branches.

**SPECIAL INTERROGATORY NO. 5**

STATE ALL FACTS supporting YOUR refusal to refund Plaintiffs' security deposits. For purposes of these interrogatories, "STATE ALL FACTS" means to describe facts with particularity rather than generality.  For example, with regard to an action or event, this means that you should identify the individual(s) involved by name (who), the details of the event (what), the date on which the event occurred (when), the place it occurred (where) and, if germane, the reason it explains YOUR answer (why).

**SPECIAL INTERROGATORY NO. 6**

State each and every item or category of EXPENSE which YOU contend was or should have been offset from BRANCH revenues to calculate Net Profits due to Bowman under the Branch Management Agreements. For purposes of these interrogatories, "EXPENSE" has the same meaning as used in paragraph 9 of the Branch Management Agreements. You do not need to identify each instance of a recurring item – for example, if there were 20 invoices submitted for copier costs, you need only identify "copier costs" as an EXPENSE. "Bowman" refers to Plaintiff James Bowman.

**SPECIAL INTERROGATORY NO. 7**

If YOU contend that Bowman is not owed money from commission overpayments YOU made to BRANCH employees, STATE ALL FACTS that support YOUR contention.

**SPECIAL INTERROGATORY NO. 8**

If YOU contend that Bowman is not owed money from contributions to YOUR 401k plan that never vested in any BRANCH employees, STATE ALL FACTS that support your contention.

**SPECIAL INTERROGATORY NO. 9**

If YOU contend that Bowman is not owed money from overpayments of benefits to BRANCH employees, STATE ALL FACTS that support YOUR contention.

**SPECIAL INTERROGATORY NO. 10**

If YOU contend that Bowman is not owed money from earned marketing credits, STATE ALL FACTS that support YOUR contention.

**SPECIAL INTERROGATORY NO. 11**

If YOU contend that YOU paid Bowman all wages he was owed at the time of termination, STATE ALL FACTS that support YOUR contention. "Wages" as used in this interrogatory means all amounts for labor performed, whether under the Branch Management Agreements or otherwise, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation.

**SPECIAL INTERROGATORY NO. 12**

If YOU contend that Bowman owes YOU money, STATE ALL FACTS that support YOUR contention.

**SPECIAL INTERROGATORY NO. 13**

If YOU contend that Bowman owes YOU money, IDENTIFY all documents that support YOUR contention. For purposes of these interrogatories, the word "IDENTIFY" when used in reference to documents means to identify each such document by type, author, date, and title. Each document must be separately identified; it is not enough to refer to a category of documents.

**SPECIAL INTERROGATORY NO. 14**

If YOU contend that YOU continued to offer mortgage loan services after January 31, 2007 in the territories formerly serviced by the BRANCHES, STATE ALL FACTS supporting YOUR contention.

**SPECIAL INTERROGATORY NO. 15**

IDENTIFY the person or persons who made the decision to withhold payment of money owed Bowman under the Branch Management Agreements after January 31, 2007. For the purposes of these interrogatories, the word "IDENTIFY" when used in reference to individuals means to state the identity and last known telephone number and address.

**SPECIAL INTERROGATORY NO. 16**

IDENTIFY the person or persons responsible for YOUR human resources functions from December 1, 2003 to the present.

**SPECIAL INTERROGATORY NO. 17**

IDENTIFY the person or persons responsible for YOUR government compliance functions from December 1, 2003 to the present.

**SPECIAL INTERROGATORY NO. 18**

IDENTIFY the person or persons responsible for YOUR accounting functions from December 1, 2003 to the present.

**SPECIAL INTERROGATORY NO. 19**

STATE ALL FACTS that support YOUR affirmative defenses to Bowman's claims.

**SPECIAL INTERROGATORY NO. 20**

Except for this action, in the past 10 years has any employee filed a civil action or administrative proceeding against YOU regarding his or her employment?  If so, for each civil action:

(a)    state the name, **ADDRESS**, and telephone number of the employee;

(b)    state the court, names of the parties, and case number of the civil action;

(c)    state the name, **ADDRESS**, and telephone number of any attorney representing the **EMPLOYEE**; and

(d)    state whether the action has been resolved or is pending.

**SPECIAL INTERROGATORY NO. 21**

If YOU contend that YOU and Bowman were in a business relationship other than an employer-employee relationship, STATE ALL FACTS that support YOUR contention.

**SPECIAL INTERROGATORY NO. 22**

If YOU contend that there was a breach of any agreement between YOU and Bowman, for each breach describe STATE ALL FACTS that support YOUR contention.

**SPECIAL INTERROGATORY NO. 23**

If YOU contend that performance of any part of the agreements between YOU and Bowman was excused, for each such part STATE ALL FACTS that support YOUR contention.

**SPECIAL INTERROGATORY NO. 24**

If YOU contend that any term of the agreements between YOU and Bowman was ambiguous, for each such term STATE ALL FACTS that support YOUR contention.

1  **SPECIAL INTERROGATORY NO. 25**

2       IDENTIFY every branch manager you have employed since 2003.

3

4                                          LAW OFFICES OF ALAN F. COHEN

5

6  Dated: March 13, 2008                   By _____

7                                             Alan F. Cohen
                                             Attorney for Plaintiff
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE

I, Alan F. Cohen, declare that I am a resident of the State of California, am over the age of eighteen years, and not a party to the within action.  I am a member of the bar of this Court. My address is 101 Montgomery Street, Ste. 2050, San Francisco, CA 94104.

On the date set forth below I served a true and correct copy of:

**PLAINTIFF'S SPECIAL INTERROGATORIES TO DEFENDANT CMG MORTGAGE, INC. [SET ONE]**

☒ (FIRST CLASS MAIL) by placing such copy in a sealed envelope postage thereon fully prepaid, with the United States Postal Service for mailing this day from San Francisco, California.

☐ (HAND DELIVERY) by hand delivery on to the party(ies) indicated below:

☐ (FACSIMILE) by consigning such copy to a facsimile operator for transmittal on this date to the party(ies) indicated.

☐ (OVERNIGHT COURIER) by consigning such copy in a sealed envelope postage thereon fully prepared, with the United States Postal Service or an overnight courier for next day delivery to the party(ies) indicated.

I served the above document(s) on the following persons:

David Medlin
Joshua Rosenthal
Medlin & Hargrave
One Kaiser Plaza, Suite 1305
Oakland, CA  94612
jrosenthal@mhlawcorp.com

***Attorneys for Defendants CMG Mortgage, Inc., et al.***

I am readily familiar with my firm's practices for processing of correspondence for delivery according to the instructions indicated above, under which correspondence would be deposited in the mail or other delivery service set forth above on the date below.  The above-referenced  documents were placed for deposit in accordance with the office's practice.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed at San Francisco, California on March 13, 2008.

_____
Alan F. Cohen

**Exhibit B**

1  David R. Medlin     (SBN 77417)
   G. Bradley Hargrave   (SBN 173911)
2  Joshua A. Rosenthal   (SBN 190284)
   MEDLIN & HARGRAVE
3  A Professional Corporation
   One Kaiser Plaza, Suite 1305
4  Oakland, CA  94612
   Telephone:     (510) 832-2900
5  Facsimile:     (510) 832-2945

6  Attorneys for Defendants

7

8               UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10 James W. Bowman, Jr. and Pacific Real Estate       Case No.: C 07 3140 SI
   Management Company, Inc., a Washington
11 Corporation,

12               Plaintiffs,
            vs.                                DEFENDANT CMG MORTGAGE, INC.'S
13                                             RESPONSES TO PLAINTIFF'S SPECIAL
   CMG Mortgage Inc., a California Corporation;  INTERROGATORIES, SET ONE
14 CMG Mortgage, Inc., d/b/a Pacific Guarantee
   Mortgage, CMG Mortgage Services, Inc., a
15 California Corporation, CMG Mortgage Services,
   Inc. d/b/a Pacific Guarantee Mortgage,
16
                Defendants.
17 _____/

18 PROPOUNDING PARTY:     PLAINTIFF JAMES BOWMAN

19 RESPONDING PARTY:      DEFENDANT CMG MORTGAGE, INC.

20 SET NO.:               ONE

21      Responding Party has not fully completed an investigation of the facts relevant to this case, has

22 not completed discovery, and has not completed preparation for trial.  Accordingly, all of the responses

23 contained herein are based only upon such information and documents as are presently available to and

24 specifically known to the Responding Party and disclose only those contentions which presently occur

25 to Responding Party.

26      It is anticipated that further discovery, independent investigation, legal research and analysis

27 will supply additional facts and add meaning to known facts, as well as establishing entirely new factual

28 ///

                                        1

1  conclusions and legal contentions, all of which may lead to substantial additions to, changes in, and/or
2  variations from the contentions herein set forth.

3      Except for explicit facts admitted herein, no incidental or implied admissions are intended
4  hereby.  The fact that Responding Party has responded to any interrogatory should not be taken as an
5  admission that Responding Party accepts or admits the existence of any facts set forth or assumed by
6  such response, or that such response constitutes admissible evidence.  The fact that Responding Party
7  has responded to part or all of any interrogatory is not intended, and shall not be construed, to be a
8  waiver by Responding Party of all or any part of any objection to any response made by Responding
9  Party.

10      The following responses are given without prejudice to the Responding Party's right to produce
11  evidence of any subsequently discovered fact or facts which Responding Party may later recall or
12  discover.  Responding Party accordingly reserves the right to change any and all responses herein as
13  additional facts are ascertained, analyses are made, legal research is completed, and contentions are
14  made.  The responses contained herein are made in a good faith effort to supply as much factual
15  information and as much specification of legal contentions as are presently known, but should in no
16  way be utilized to the prejudice of this Responding Party in relation to further discovery, research or
17  analysis.

18      Responding Party objects to all of the interrogatories to the extent they, or any of them, call for
19  any matter which is protected from discovery as either attorney work product and/or an attorney client
20  communication.  Responding Party will not divulge either attorney work product or attorney client
21  communications.

22      Without prejudice to the above and subject thereto Responding Party responds as follows:
23  **SPECIAL INTERROGATORY NO. 1**

24      DESCRIBE IN DOLLARS the total amount of service yield premiums YOU obtained
25  derived from or arising out of loans originated in the BRANCHES. For purpose of these
26  interrogatories, "YOU" refers to defendants CMG Mortgage, Inc. and CMG Mortgage Services,
27  Inc., and includes all persons acting on their behalf; "DESCRIBE IN DOLLARS" means to state
28  the total amount, describe how the amount was calculated, and identify the documents or other

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE

1  sources of information on which the calculation is based; "BRANCH" or "BRANCHES" refer to

2  YOUR Vancouver and Federal Way branches managed by Bowman until January 31, 2007.

3  **RESPONSE TO SPECIAL INTERROGATORY NO. 1**

4      Objection on the ground that the interrogatory is vague and ambiguous with respect to "Service

5  Yield Premiums." Objection on the ground that the information sought by the interrogatory is

6  irrelevant and is not likely to lead to the discovery of admissible evidence. Objection on the ground

7  that the interrogatory seeks information that is so burdensome to compile compared to its utility that it

8  constitutes harassment of this Responding Party.  Responding party does not compile information

9  related to service release premiums in a manner that would allow it to easily determine the service

10 release premiums generated from the sale of loans originated by individual branches.  Since service

11 release prem

12 **SPECIAL INTERROGATORY NO. 1A**

13     DESCRIBE IN DOLLARS the total amount of service release premiums YOU obtained

14 derived from or arising out of loans originated in the BRANCHES.  (As a courtesy to Plaintiffs,

15 Responding Party agreed to provide a response to the interrogatory that was propounded incorrectly .

16 Plaintiffs claimed they meant "Service Release Premium" not "Service Yield Premium.")

17 **RESPONSE TO SPECIAL INTERROGATORY NO. 1A**

18     Objection on the ground that the interrogatory is vague and ambiguous with respect to "Service

19 Release Premiums." Objection on the ground that the information sought by the interrogatory is

20 irrelevant and is not likely to lead to the discovery of admissible evidence.  Objection on the ground

21 that the interrogatory seeks information that is so burdensome to compile compared to its utility that it

22 constitutes harassment of this Responding Party.  Responding party does not compile information

23 related to service release premiums in a manner that would allow it to easily determine the service

24 release premiums generated from the sale of loans originated by individual branches.  Since service

25 release premiums have nothing to do with any income that Plaintiffs could lay claim to, the

26 extraordinary effort required to compile the information is far outweighed by the utility of the

27 information.

28 ///

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE

1  **SPECIAL INTERROGATORY NO. 2**

2  DESCRIBE IN DOLLARS the total amount of administrative fees and or underwriting

3  fees YOU received derived from or arising out of loans originated in the BRANCHES.

4  **RESPONSE TO SPECIAL INTERROGATORY NO. 2**

5  Objection on the ground that the information sought by the interrogatory is irrelevant and is not

6  likely to lead to the discovery of admissible evidence.  Objection on the ground that the interrogatory

7  seeks information that is so burdensome to compile compared to its utility that it constitutes harassment

8  of this Responding Party.

9  **SPECIAL INTERROGATORY NO. 3**

10  State all reasons YOU required Bowman to pay money into "reserves."

11  **RESPONSE TO SPECIAL INTERROGATORY NO. 3**

12  Objection on the ground that the interrogatory assumes facts not established in this litigation.

13  Responding Party did not require Bowman to pay money into "reserves."

14  **SPECIAL INTERROGATORY NO. 4**

15  State all reasons YOU failed to regularly reimburse Plaintiffs for all expenses incurred in

16  operating the Federal Way and Vancouver branches.

17  **RESPONSE TO SPECIAL INTERROGATORY NO. 4**

18  Objection on the ground that the interrogatory assumes facts not established in this litigation.

19  Responding Party paid all regularly and properly submitted and requested expenses of the Federal Way

20  and Vancouver branches as long as there was sufficient income to cover the submitted expenses.

21  **SPECIAL INTERROGATORY NO. 5**

22  STATE ALL FACTS supporting YOUR refusal to refund Plaintiffs' security deposits. For

23  purposes of these interrogatories, "STATE ALL FACTS" means to describe facts with particularity

24  rather than generality. For example, with regard to an action or event, this means that you should

25  identify the individual(s) involved by name (who), the details of the event (what); the date on which the

26  event occurred (when), the place it occurred (where) and, if germane, the reason it explains YOUR

27  answer (why).

28  ///

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE

**RESPONSE TO SPECIAL INTERROGATORY NO. 5**

Objection on the ground that the interrogatory is vague and ambiguous with respect to "refusal to refund Plaintiffs' security deposits" and assumes facts not established in this litigation. Responding Party did not refuse to refund Plaintiffs' security deposits. Without prejudice to such objection, and subject thereto, Responding Party responds as follows: Responding Party did not refuse to refund Plaintiffs' security deposit. Responding Party never collected security deposits/reserves from Bowman, so there was nothing to reimburse to Bowman.

The purpose of the security deposit is to pay for any expenses as a result of the branches' activities that are not covered by the gross profits of the branch. The security deposit/reserves were paid by Pacific Real Estate Management Company (PREMCO) to Responding Party. No security deposits/reserves were returned to PREMCO at the time of termination or thereafter because there are outstanding expenses attributable to the branches that exceed the amount of the security deposit/reserves.

**SPECIAL INTERROGATORY NO. 6**

State each and every item or category of EXPENSE which YOU contend was or should have been offset from BRANCH revenues to calculate Net Profits due to Bowman under the Branch Management Agreements. For purposes of these interrogatories, "EXPENSE" has the same meaning as used in paragraph 9 of the Branch Management Agreements. You do not need to identify each instance of a recurring item - for example, if there were 20 invoices submitted for copier costs, you need only identify "copier costs" as an EXPENSE. "Bowman" refers to Plaintiff James Bowman.

**RESPONSE TO SPECIAL INTERROGATORY NO. 6**

Objection, the interrogatory requires the preparation of a list or compilation. Additionally, Plaintiffs are asking Responding Party to go through documents that Plaintiffs submitted to Responding Party and repeat entries on the printed page. Such a request is a harassing abuse of the discovery process. Without prejudice to such objection, and subject thereto, Responding Party responds as follows: The information responsive to this interrogatory is included in documents already produced in this litigation, including but not limited to CMG Bates Stamp Number 1735-1775 and 1939-1980.

1    Additionally, the categories of expenses are listed in Paragraph 9 of the Branch Management &

2    Employment Agreements.

3    **SPECIAL INTERROGATORY NO. 7**

4         If YOU contend that Bowman is not owed money from commission overpayments YOU

5    made to BRANCH employees, STATE ALL FACTS that support YOUR contention.

6    **RESPONSE TO SPECIAL INTERROGATORY NO. 7**

7         Objection on the ground that the interrogatory is vague, ambiguous and unintelligible.

8    Responding Party cannot state facts to prove a negative. Without prejudice to such objection, and

9    subject thereto, Responding Party responds as follows: Plaintiffs were provided with accountings of the

10   monthly distributions and expenses each month for approval and comment prior to being finalized. If

11   there were any errors or overpayments in the proposed monthly accountings, Plaintiffs knew to specify

12   any mistakes prior to the accountings being finalized and all employees received their wages.

13   Additionally, Plaintiffs were the only ones that could know if there were any errors in the accounting.

14   Responding Party is not aware of any over payment in wages that either Plaintiff raised prior to any

15   accounting being final. Thus, Responding Party assumed that all payments of wages and/or

16   commissions were accurate since they were approved by Plaintiffs. Moreover, and in any event, the net

17   sum is not sufficient to offset the total losses suffered by the Vancouver and Federal Way branches,

18   which of course is the reason there were no net profits/profit sharing available for Bowman.

19   **SPECIAL INTERROGATORY NO. 8**

20        If YOU contend that Bowman is not owed money from contributions to YOUR 401k plan

21   that never vested in any BRANCH employees, STATE ALL FACTS that support your

22   contention.

23   **RESPONSE TO SPECIAL INTERROGATORY NO. 8**

24        Objection on the ground that the interrogatory is vague, ambiguous and unintelligible.

25   Responding Party cannot state facts to prove a negative. Without prejudice to such objection, and

26   subject thereto, Responding Party responds as follows: Neither Responding Party nor any one of

27   Responding Party's attorneys is an ERISA expert. However, through long experience, Responding

28   Party and its counsel, do know the following.

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE
M:\CMC\85 0706 02 Bowman\Discovery\Responses\ResInterrogatoriesSet1.wpd

1       Employer contributions to a 401K are subject to numerous rules and regulations, including

2  vesting requirements. Full vesting varies between plans, but typically takes several years. If an

3  employee terminates his/her employment before he/she is fully vested, employer contributions as to

4  which the employee is not vested may not be removed by the employee, or anyone else. Forfeited sums

5  must remain in the employer's 401K trust account. These "forfeited" sums may not be removed by

6  anyone and, instead must be applied toward the employer's contributions to its employees the following

7  year. Of course, in this instance the Vancouver and Federal Way branches directly benefitted from such

8  forfeitures.

9       As indicated, forfeited sums remain in the employer's 401K trust account and are applied,

10  during the next full calendar year, towards the employer's contribution that year. So, for example, if an

11  employee of Plaintiffs' branches forfeited any portion of his/her employer contributions in any one year,

12  the forfeited sum was available, the following year, to apply towards the employer's contribution due

13  that year to all employees then in its employ. Accordingly, in each year that Plaintiffs were associated

14  with Responding Party, the total of Plaintiffs' contribution otherwise due by reason of employees of the

15  Vancouver and Federal Way branches was reduced, by all forfeitures from the previous year - including

16  not only the forfeitures from the Vancouver and Federal Way branches, but also by reason of forfeitures

17  from all other Responding Party branches as well. Indeed, in Plaintiffs' first year of association with

18  Responding Party, Plaintiffs realized a reduction in the contribution which would have otherwise been

19  owing by Plaintiffs, on behalf of the employees of the Vancouver and Federal Way branches, because

20  of forfeitures from employees of other Responding Party branches from the prior year, i.e., the year

21  immediately preceding the year that Plaintiffs joined Responding Party. By reason of ERISA rules and

22  regulations, this "benefit" rolls forward each year from the previous year. Therefore, in each year of

23  Plaintiffs' association with Responding Party, Plaintiffs' share of the employer contribution otherwise

24  due on behalf of the employees of Plaintiffs' branches was reduced, not only by reason of any

25  forfeitures from the former employees of the Vancouver and Federal Way branches, but also by reason

26  of forfeitures throughout Responding Party and all of its branches. Accordingly, since Plaintiffs

27  realized this benefit in the first year of Plaintiffs' association with Responding Party, and since in each

28  year Plaintiffs benefitted from forfeitures throughout Responding Party (not only from any forfeitures at

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE
M:\CMG\05 0706 02 Bowman\Discovery\Responding\...

1  the Vancouver and Federal Way ), it is certainly the case that the cumulative dollar benefit realized by

2  Plaintiffs far exceed the total dollar value of all forfeitures by all employees of the Vancouver and

3  Federal Way branches throughout Plaintiffs' association with Responding Party. Moreover, and in any

4  event, the net sum is not sufficient to offset the total losses suffered by the Vancouver and Federal Way

5  branches, which of course is the reason there were no net profits/profit sharing available for Bowman.

6        The analysis is further complicated by ERISA rules as to when a "forfeiture" takes place. A

7  forfeiture does not occur simply because an employee terminates employment or even ceases to

8  participate in the plan. It is not until the employee elects to remove his/her vested funds from the plan

9  that the portion which is not vested is made available, the following year, for distribution to the

10  remaining employees. Accordingly, it is almost certainly the case that Plaintiffs benefitted from

11  forfeitures of CMG employees, whose employment terminated years before Plaintiffs' first association

12  with CMG. Further, if any terminated employees of Vancouver and Federal Way branches have not yet

13  withdrawn their funds from the plan, even those sums have not yet "forfeited." As to any such

14  employee,  the date and the amount of the forfeiture's value is speculative and undeterminable at any

15  point prior to the time when every one of the former employees of the Vancouver and Federal Way

16  branches who participated in the plan actually have removed his/her vested funds from the plan.

17  However, once again, and in any event, the net sum could not conceivably be enough to offset all of

18  Plaintiffs' losses.

19  **SPECIAL INTERROGATORY NO. 9**

20        If YOU contend that Bowman is not owed money from overpayments of benefits to BRANCH

21  employees, STATE ALL FACTS that support YOUR contention.

22  **RESPONSE TO SPECIAL INTERROGATORY NO. 9**

23        Objection on the ground that the interrogatory is vague, ambiguous and unintelligible.

24  Responding Party cannot state facts to prove a negative. Without prejudice to such objection, and

25  subject thereto, Responding Party responds as follows: Responding Party paid benefits to employees

26  based upon Plaintiffs' representations that the employees continued to work for the branches. If certain

27  employees left Responding Party's employment and were not so informed by Plaintiffs, Responding

28  Party would continue to pay benefits until so informed by Plaintiffs. As a courtesy to Plaintiffs,

1  Responding Party asked the employees to repay the amount of benefits they received after they left.

2  However, said benefit payments are expenses of the branches and were properly charged against profits.

3  Moreover, and in any event, the net sum is not sufficient to offset the total losses suffered by the

4  Vancouver and Federal Way branches, which of course is the reason there were no net profits/profit

5  sharing available for Bowman.

6  **SPECIAL INTERROGATORY NO. 10**

7      If YOU contend that Bowman is not owed money from earned marketing credits, STATE

8  ALL FACTS that support YOUR contention.

9  **RESPONSE TO SPECIAL INTERROGATORY NO. 10**

10      Objection on the ground that the interrogatory is vague, ambiguous and unintelligible.

11  Responding Party cannot state facts to prove a negative.  Objection on the ground that the interrogatory

12  is vague and ambiguous with respect to "Bowman is not owed money from earned marketing credits"

13  and assumes facts not established in this litigation.  Without prejudice to such objection, and subject

14  thereto, Responding Party responds as follows: Bowman does not receive the earned marketing credits.

15  Additionally, they are negative expenses that are deducted from ordinary expenses under the Facilities

16  Agreements.  Since the earned marketing credits program is paid as an offset of expenses of the

17  branches and because of the outstanding expenses attributable to the branches, the expenses of the

18  branches exceed any marketing credits.  Thus, the marketing credits were not earned.

19  **SPECIAL INTERROGATORY NO. 11**

20      If YOU contend that YOU paid Bowman all wages he was owed at the time of termination,

21  STATE ALL FACTS that support YOUR contention. "Wages" as used in this interrogatory means all

22  amounts for labor performed, whether under the Branch Management Agreements or otherwise,

23  whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or

24  other method of calculation.

25  **RESPONSE TO SPECIAL INTERROGATORY NO. 11**

26      Bowman was paid all of his wages at the time of termination and was even paid wages as a loan

27  officer after his termination for his individual loan activity.   As a result of the outstanding expenses of

28  the branches as a result of the repurchase obligations on the Wilkins and Frazier loans, the expenses of

1  the branch exceeded the profits of the branch.  Thus, there were no net profits/profit sharing to pay

2  Bowman under the profit sharing agreement.

3  **SPECIAL INTERROGATORY NO. 12**

4      If YOU contend that Bowman owes YOU money, STATE ALL FACTS that support YOUR

5  contention.

6  **RESPONSE TO SPECIAL INTERROGATORY NO. 12**

7      Plaintiffs closed loans with Sierra Pacific Mortgage that were started with CMG prior to his

8  termination.  These loans were ones that Bowman was contractually obligated to close with CMG.

9  Transfer of these loans to Sierra Pacific constitutes a breach of Bowman's contracts with CMG,

10 constitutes theft and constitutes a violation of the Uniform Trade Secrets Act.  Since Plaintiffs have

11 refused to provide the documents related to the loans, as requested by Responding Party, Responding

12 Party is unable at this time to calculate its damages as a result of Bowman's wrongful activity and

13 conduct.  Discovery is on going and at such time as the information is ascertained, Responding Party

14 will amend this response.

15 **SPECIAL INTERROGATORY NO. 13**

16     If YOU contend that Bowman owes YOU money, IDENTIFY all documents that support

17 YOUR contention. For purposes of these interrogatories, the word "IDENTIFY" when used in

18 reference to documents means to identify each such document by type, author, date, and title. Each

19 document must be separately identified; it is not enough to refer to a category of documents.

20 **RESPONSE TO SPECIAL INTERROGATORY NO. 13**

21     Since Plaintiffs have refused to provide the documents related to the loans started before

22 January 31, 2007 and closed thereafter, as requested by Responding Party, Responding Party is unable

23 at this time to specifically identify documents.  However, Responding Party did receive three closing

24 statements and checks, in response to subpoenas, for borrowers Theresa Johnson, Daniel Van House,

25 and Greg Barcus.  Additionally, Responding Party did receive a document from Sierra Pacific

26 Mortgage, pursuant to subpoena, that indicated in excess of 15 other loans that were most likely started

27 prior to January 31, 2007.

28 ///

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE
M:\CMG\85 0706 02 Bowman\Discovery\Responding\special resp 5-1.doc

1  **SPECIAL INTERROGATORY NO. 14**

2       If YOU contend that YOU continued to offer mortgage loan services after January 31,

3  2007 in the territories formerly serviced by the BRANCHES, STATE ALL FACTS supporting

4  YOUR contention.

5  **RESPONSE TO SPECIAL INTERROGATORY NO. 14**

6       Objection, vague and ambiguous with respect to the term "territories formerly serviced by the

7  BRANCHES." Responding Party does not know if propounding party is referring to already existing

8  branches in the same geographical area, if Plaintiffs are asking if Responding Party opened new

9  branches with the same address as the BRANCHES or if Plaintiffs are asking if Responding Party had

10  branches that served the same states as the BRANCHES. Objection on the ground that the information

11  sought by the interrogatory is irrelevant and is not likely to lead to the discovery of admissible evidence.

12  **SPECIAL INTERROGATORY NO. 15**

13       IDENTIFY the person or persons who made the decision to withhold payment of money

14  owed Bowman under the Branch Management Agreements after January 31, 2007. For the

15  purposes of these interrogatories, the word "IDENTIFY" when used in reference to individuals

16  means to state the identity and last known telephone number and address.

17  **RESPONSE TO SPECIAL INTERROGATORY NO. 15**

18       Objection on the ground that the interrogatory assumes facts not established and not true.

19  Responding Party did not withhold payment of money owed Bowman under the Branch Management

20  Agreements. There were no payments due Bowman. All income of the Vancouver and Federal Way

21  branches are not sufficient to offset the total losses suffered by said branches, which is the reason there

22  were no net profits/profit sharing available for Bowman

23  **SPECIAL INTERROGATORY NO. 16**

24       IDENTIFY the person or persons responsible for YOUR human resources functions from

25  December 1, 2003 to the present.

26  **RESPONSE TO SPECIAL INTERROGATORY NO. 16**

27       Lorraine Coppa - can be reached through this office. Teresa Ones and Beth Anne Fitzgibbons

28  are Responding Party's former employees. Responding Party will not provide the contact information

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE

1  of these individuals in respect to the privacy rights of third parties to this lawsuit, and objects on such

2  ground. Should Plaintiffs require the deposition of these individuals or to contact them, Responding

3  Party will work with Plaintiffs to get in contact with said individuals.

4  **SPECIAL INTERROGATORY NO. 17**

5      IDENTIFY the person or persons responsible for YOUR government compliance functions from

6  December 1, 2003 to the present.

7  **RESPONSE TO SPECIAL INTERROGATORY NO. 17**

8      Debbie Peterson can be reached through this office. Larry Ward and Katie Proefke are

9  Responding Party's former employees. Responding Party will not provide the contact information of

10  these individuals in respect to the privacy rights of third parties to this lawsuit, and objects on such

11  ground. Should Plaintiffs require the deposition of these individuals or to contact them, Responding

12  Party will work with Plaintiffs to get in contact with said individuals.

13  **SPECIAL INTERROGATORY NO. 18**

14      IDENTIFY the person or persons responsible for YOUR accounting functions from

15  December 1, 2003 to the present.

16  **RESPONSE TO SPECIAL INTERROGATORY NO. 18**

17      Paul Chevez can be reached through this office. Marshall Griffin is a former employee of

18  Responding Party. Responding Party will not provide the contact information of this individual in

19  respect to the privacy rights of third parties to this lawsuit, and objects on such ground. Should

20  Plaintiffs require the deposition of this individual or to contact him Responding Party will work with

21  Plaintiffs to get in contact with said individual.

22  **SPECIAL INTERROGATORY NO. 19**

23      STATE ALL FACTS that support YOUR affirmative defenses to Bowman's claims.

24  **RESPONSE TO SPECIAL INTERROGATORY NO. 19**

25      First Affirmative defense - Plaintiffs have not stated any facts upon which relief can be granted

26  because propounding Plaintiffs are not due any money under the contract at issue. Bowman was paid

27  all of his final salary as an employee. There were no net profit to distribute to Bowman from

28  Responding Party's profit sharing plan as of January 31, 2007 or at any time since, as outstanding

1  expenses attributable to the branches exceed all income of the branches. Additionally, there were no

2  security deposits or reserves to pay PREMCO as the outstanding expenses attributable to the branches

3  exceeded all income of the branches. Thus, the security deposit/reserves were needed to cover the

4  expenses of the branches.

5      Second Affirmative defense - Due to Plaintiffs' taking loans that were started prior to January

6  31, 2007, and closing them with Bowman's new employer, propounding parties have unclean hands,

7  which bar their recovery herein. Additionally, as a result of Plaintiffs' delay in bringing the claims, as

8  alleged in the complaint and later alleged in subsequent documents, they have waived and otherwise

9  surrendered their ability to bring some or all of the claims because they have abandoned said claims and

10  because the contract excluded claims made beyond one year from their accrual. Also, since Plaintiffs

11  were provided each monthly accounting regarding the branch expenses and activities prior to their

12  being finalized, Plaintiffs have acquiesced, ratified and abandoned their damages, if any there are.

13      Third Affirmative defense- As stated in the response to the First Affirmative defense, Plaintiffs

14  are not entitled to any damages from Responding Party. Thus, they have not suffered damages vis-a-vis

15  Responding Party.

16      Fourth Affirmative defense - To the extent that Plaintiffs' claim that they have suffered damages

17  as a result of any improper actions of Responding Party, which are entirely denied, any damages as a

18  result of improperly relying on Plaintiffs' actions are a result of Plaintiffs' failure to mitigate their

19  alleged damages.

20      Fifth Affirmative defense - Plaintiffs' claims, to the extent that they are for claims outside of a

21  year from their accrual, are not enforceable via this contract action, per section 5.4 of the Facilities

22  Agreement and section 21(p) of the Branch Management and Facilities Agreement. Also, to the extent

23  that any claims made by Plaintiffs are pursuant to an oral contract, they are not enforceable as being

24  outside of the two year statute of limitations for breach of contract.

25      Sixth Affirmative defense - Bowman engaged in self help with respect to closing loans, as

26  alleged with Sierra Pacific Mortgage in violation of Bowman's Branch Management and Employment

27  ///

28  ///

13

1  Agreements with CMG and in violation of the Uniform Trade Secrets Act - specifically, loans started

2  prior to January 31, 2007 and closed thereafter. Such action puts Plaintiffs *in pari delicto* and bars their

3  claims.

4      Seventh Affirmative defense - Bowman engaged in self help with respect to closing loans with

5  Sierra Pacific Mortgage in violation of Bowman's Branch Management and Employment Agreements

6  with CMG and in violation of the Uniform Trade Secrets Act - specifically, loans started prior to

7  January 31, 2007 and closed thereafter. Due to the revenue that Responding Party did not earn as a

8  result of such action, it is entitled to a set off of the amount sought by Plaintiffs or the benefit of a

9  complete bar to the requested recovery.

10     Eighth Affirmative defense - Plaintiffs engaged in self help with respect to closing loans with

11  Sierra Pacific Mortgage in violation of Bowman's Branch Management and Employment Agreements

12  with CMG and in violation of the Uniform Trade Secrets Act - specifically, loans started prior to

13  January 31, 2007 and closed thereafter. Due to the revenue that Responding Party did not earn as a

14  result of such action, it is entitled to a set off of the amount sought by Plaintiffs and Plaintiffs are

15  responsible for those alleged damages.

16     Ninth and Tenth Affirmative defenses - The affirmative defenses and the applicable

17  constitutional provisions speak for themselves.

18     Eleventh Affirmative defense - Responding Party paid Plaintiffs all money due and owing to

19  them, as indicated by their accounting, based on the information provided to Responding Party by

20  Plaintiffs and then approved each month by Plaintiffs prior to being made final. To the extent that any

21  money was not paid to Plaintiffs that was in fact owed to them, which Responding Party expressly

22  denies, it was not done with any malice or intent to harm Plaintiffs, which harm is expressly denied.

23     Twelfth Affirmative defense - Bowman was an employee for Responding Party in Washington

24  state. Thus, he is arguably not subject to and due the protections of California Labor law.

25  **SPECIAL INTERROGATORY NO. 20**

26     Except for this action, in the past 10 years has any employee filed a civil action or

27  administrative proceeding against YOU regarding his or her employment? If so, for each civil

28  action:

14

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE
M:\CMG\85-0706-02 Bowman\Discovery\Responding\special rogs Set 1- wpd

1       (a)    state the name, ADDRESS, and telephone number of the employee;

2       (b)    state the court, names of the parties, and case number of the civil action;

3       (c)    state the name, ADDRESS, and telephone number of any attorney representing

4 the EMPLOYEE; and

5       (d)    state whether the action has been resolved or is pending.

6 **RESPONSE TO SPECIAL INTERROGATORY NO. 20**

7     Objection on the ground that this interrogatory seeks information not relevant to this dispute and

8 not likely to lead to the discovery of admissible evidence. Objection on the ground that this

9 interrogatory is overbroad and thus unduly burdensome and harassing. Objection on the ground that

10 this interrogatory seeks information in the public record and thus equally available to propounding

11 party.

12 **SPECIAL INTERROGATORY NO. 21**

13     If YOU contend that YOU and Bowman were in a business relationship other than an

14 employer-employee relationship, STATE ALL FACTS that support YOUR contention.

15 **RESPONSE TO SPECIAL INTERROGATORY NO. 21**

16     Bowman was the branch manager for two branch offices in Washington state for Responding

17 Party. Bowman's company, PREMCO, had a contract with Responding Party whereby it provided

18 services and facilities to Responding Party, in connection with the operations of the two branch offices.

19     Bowman, in his capacity as branch manager, was paid in two ways. First, he was paid based on

20 his individual performance as a loan officer for Responding Party. Thus, he was paid twice a month on

21 the basis of how many loans he personally closed. Second, Bowman received the net profits of both

22 branches, as part of a profit sharing plan. He received this money once a month, if there were, and to

23 the extent there were, any net profits. The net profit/profit sharing calculation was based upon the

24 actual profits of the branches and was calculated by determining gross revenue of the branches, offset

25 by any and all expenses of the branches. PREMCO was paid separately, and directly, for the services it

26 provided to Responding Party. All payments to PREMCO are considered an expense of the branches,

27 for purposes of determining any net/profit sharing.

28 ///

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE
M:\CMG\85-0706-02 Bowman\Discovery\Responding\special rogs Set 1~.wpd

1  Thus, Bowman was an employee of Responding Party and was paid on a W2 basis for his own

2  individual loan activity.  He was an employee for purposes of receiving net profits/profit sharing, as it

3  was paid on W2 basis and once a month, if any net profits/profit sharing existed for that month.

4  However, his company, PREMCO, had a separate contract and business relationship with Responding

5  Party.  Thus, while Bowman was an employee, his net profits/profit sharing revenue, if any, was

6  affected by PREMCO's expenses and obligations.

7  **SPECIAL INTERROGATORY NO. 22**

8  If YOU contend that there was a breach of any agreement between YOU and Bowman,

9  for each breach describe STATE ALL FACTS that support YOUR contention.

10  **RESPONSE TO SPECIAL INTERROGATORY NO. 22**

11  Bowman closed loans with Sierra Pacific Mortgage that were started with Responding Party

12  prior to his termination.  These loans were ones that Bowman was contractually obligated to close with

13  CMG.  Transfer of these loans to Sierra Pacific constitutes a breach of Bowman's contracts with

14  Responding Party, constitutes theft and constitutes a violation of the Uniform Trade Secrets Act as well

15  as the provisions of the contract that address Bowman's acknowledgment of Responding Party's trade

16  secrets.  Since Bowman has refused to provide the documents related to the loans, as requested by

17  Responding Party, Responding Party is unable at this time to calculate its damages as a result of

18  Bowman's activities.  Discovery is on going and at such time as the information is ascertained,

19  Responding Party will amend this response.

20  **SPECIAL INTERROGATORY NO. 23**

21  If YOU contend that performance of any part of the agreements between YOU and

22  Bowman was excused, for each such part STATE ALL FACTS that support YOUR contention.

23  **RESPONSE TO SPECIAL INTERROGATORY NO. 23**

24  No.

25  **SPECIAL INTERROGATORY NO. 24**

26  If YOU contend that any term of the agreements between YOU and Bowman was

27  ambiguous, for each such term STATE ALL FACTS that support YOUR contention.

28  ///

1  **RESPONSE TO SPECIAL INTERROGATORY NO. 24**

2      No.

3  **SPECIAL INTERROGATORY NO. 25**

4      IDENTIFY every branch manager you have employed since 2003.

5  **RESPONSE TO SPECIAL INTERROGATORY NO. 25**

6      Objection on the ground that this interrogatory seeks information not relevant to this dispute and

7  not likely to lead to the discovery of admissible evidence.  Objection on the ground that this

8  interrogatory is overbroad and thus unduly burdensome and harassing.  Objection on the ground that

9  this interrogatory seeks the private information of third parties.

10

11 Date:    April 22, 2008

                                       **MEDLIN & HARGRAVE**

12                                        A PROFESSIONAL CORPORATION

13

14                                   By:           _____

15                                        Joshua A. Rosenthal,
                                       Attorneys for Defendants

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE
M:\CMG\85-0706-02 Bowman\Discovery\Responding\special rogs Set 1-.wpd

1
2
3
4
5

### VERIFICATION

6  I, Paul Chevez, declare:

7  I am Chief Financial Officer of CMG Mortgage, Inc. a defendant in the above-entitled action.  I

8  have read the foregoing:

9  **DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFFS' SPECIAL**
   **INTERROGATORIES, SET ONE**

10

11  and know the contents thereof.  The same is true of my own knowledge, except as to those matters

12  which are therein alleged on information and belief and as to those matters, I believe them to be true.

13  I declare under penalty of perjury under the laws of the United States that the foregoing is true

14  and correct.

15  Executed April 22, 2008, at San Ramon, California.

16
17
18  _____
    Paul Chevez
19
20
21
22
23
24
25
26
27
28

1

## PROOF OF SERVICE BY MAIL

2        I am over the age of eighteen years and not a party to the within action.  My business address is

3   One Kaiser Plaza, Suite 1305, Oakland, California 94612, which business is located in the county where

4   the mailing described below took place.

5        I am readily familiar with my employer's business practice for collection and processing of

6   correspondence for mailing with the United States Postal Service.  On the date set forth below, at my

7   place of business in Oakland, California, I served the within:

8   **DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL**
    **INTERROGATORIES, SET ONE**
9

10  by placing a true copy thereof enclosed in a sealed envelope, with postage fully prepaid, for collection

11  and mailing with the United States Postal Service where it would be deposited with the United States

12  Postal Service that same day in the ordinary course of business, addressed as follows:

13  Angela M. Xavier
    Attorney At Law                          Alan F. Cohen
14  900 Cherry Avenue, Suite 300             101 Montgomery Street, Suite 2050
    San Bruno, CA 94583                      San Francisco, CA 94104
15

16        I certify and declare under penalty of perjury under the laws of the State of California that the

17  foregoing is true and correct.  Executed on April 22, 2008, at Oakland, California.

18

19                                    Xinh Truong

20

21

22

23

24

25

26

27

28

# Exhibit C

MAR-27-2006 MON 12:41 PM Pacific Guarantee Mrtg.     FAX NO. 5109707930          P. 01

Case 3:07-cv-03141-JST   Document 653   Filed 06/22/2008   Page 30 of 46

#455

# BRANCH MANAGEMENT AND EMPLOYMENT AGREEMENT

This Branch Management and Employment Agreement (hereinafter referred to as "Agreement") is entered into as of the Effective Date, as that term is defined herein, by and between CMG Mortgage, Inc., a California corporation doing business as Pacific Guarantee Mortgage (hereinafter referred to as "PGM"), and Jim Bowman (hereinafter referred to as "Branch Manager").

## RECITALS

WHEREAS PGM and Branch Manager desire to reduce to writing their understanding and agreement pursuant to which Branch Manager will assist PGM in the management, administration and supervision of activities of its staff and employees, and the activities of all unlicensed assistants and support personnel, at PGM's branch office located at 2505 South 320th Street, Suite 260 Federal Way, WA 98003 ("Branch Office"); and,

WHEREAS PGM and Branch Manager also desire to reduce to writing the terms and conditions of Branch Manager's employment with PGM;

In consideration of the covenants, agreements and representations contained herein, PGM and Branch Manager agree as follows:

1.       **PGM.** PGM represents that PGM is duly licensed by all applicable governmental authorities and is doing business as a mortgage broker under the name Pacific Guarantee Mortgage. Concurrently with the execution of this Agreement, PGM will obtain the necessary branch license for the Branch Office.

2.       **Employment at Will.** PGM employs Branch Manager and Branch Manager accepts employment with PGM as branch manager of PGM's Branch Office. Either PGM or Branch Manager may terminate this Agreement in accordance with the provisions of paragraph 19 herein, or with or without cause, at any time on thirty (30) days notice to the other pursuant to the notice provisions of paragraph 12 herein. The rights and duties set forth in this paragraph may not be modified in any way except pursuant to the terms of paragraph 21 (e) herein.

3.       **Licensed Status.** Branch Manager represents that he/she holds all such licenses as required by state and/or federal law to conduct mortgage brokerage activity at PGM's Branch Office, and that he/she has a minimum of three (3) years of full time experience in mortgage brokerage activity gained during the immediately preceding five (5) year period. Branch Manager further represents that while this Agreement is in effect he/she will maintain in good standing each and every such license.

4.       **Devotion to PGM's Business.** During the term of this Agreement, all of Branch Manager's time and attention dedicated to mortgage loan brokerage and/or origination, shall be devoted solely to the business of PGM at the Branch Office. During the term of this Agreement, Branch Manager shall not engage in any other business duties or pursuits whatsoever, or directly or indirectly render any services of a business, commercial or professional nature to any other person or organization, whether for compensation or otherwise, without the prior written consent

MAR-27-2006 MON 12:41 PM Pacific Guarantee Mrtg.    FAX NO. 5109707930    P. 02

Case 3:07-cv-03140-SI    Document 53    Filed 06/22/2008    Page 31 of 46

of PGM. During the term of this Agreement, Branch Manager shall not, directly or indirectly, either as an employee, employer, consultant, agent, principal, partner, stockholder, corporate officer, director, or in any other individual or representative capacity, engage or participate in any business that is in competition in any manner whatsoever with the business of PGM

    **5.**    **Duties of Branch Manager.** Branch Manager shall do and perform all services, acts, or things necessary or advisable to fulfill his/her duties as such, subject to the direction of PGM and to the policies established by it. Pursuant thereto, PGM and Branch Manager intend for Branch Manager to assist PGM in administering reasonable supervision over the activities of all licensed activity at Branch Office, and over the activities of unlicensed assistants and support personnel, assigned to PGM's Branch Office. "Reasonable supervision" includes, as appropriate, the establishment of policies, rules, procedures and systems to review, oversee, inspect and manage:

    a)    transactions requiring a license;

    b)    documents which may have a material effect upon the rights or obligations of a party to every such transaction;

    c)    filing, storage and maintenance of all documents created in connection with every such transaction;

    d)    the handling of trust funds, (Branch Manager agrees not to establish or use a trust account unless approved by PGM, in advance, and in writing);

    e)    advertising of any service for which a license is required, (Branch Manager agrees that all advertising material must be approved by PGM, in advance, and in writing);

    f)    familiarizing licensed employees, and unlicensed assistants and support personnel, with the requirements of federal and state laws relating to the prohibition of discrimination;

    g)    familiarizing licensed employees with the requirements of federal and state laws relating to disclosures to be given in connection with mortgage loan transactions;

    h)    regular and consistent reports of licensed activities of all employees;

    i)    ensuring that in every transaction Branch Manager, and every employee associate involved in each such transaction, honors all affirmative obligations owed to each client, as required by federal law, state law and/or ethical practices, including but not limited to: the duty of utmost *care, integrity, honesty and loyalty*; the duty to disclose all material loan terms or any other material facts that may affect the decision to borrow and to encumber real property; the duty to maintain *confidentiality*, except to the extent that information must be disclosed to a potential lender in order to permit the lender to make an informed and considered

MAR-27-2006 MON 12:41 PM Pacific Guarantee Mrtg.          FAX NO. 5109707930                    P. 03

Case 3:07-cv-03314-SI   Document 6533   Filed 08/22/2008   Page 32 of 46

decision to extend credit; and the duty to recommend a *competitive* loan product in the right class of loans (e.g., "A", "A-", "B", "C", etc.) when considering the borrower's income and credit history, financial standing and net worth (including the capacity to repay the loan), personal and financial needs, the loan terms requested at the time of application, the type and location of the proposed real property security, the purpose for obtaining the loan, and any time limits the borrower has imposed to receive the loan in question;

j)     assist in ensuring that all independent contractors serving the Branch Office are properly licensed by any applicable state licensing authority and in good standing throughout the duration of their employment (including such things as timely payment of annual licensing fees and assessments and compliance with continuing education requirements);

k)     assist in ensuring that Branch Office and its employees function in compliance with all applicable state and federal employment laws including, but not limited to the Federal Fair Labor Standards Act.

Additionally, subject to PGM policies and procedures, Branch Manager shall be responsible for the general management of the Branch Office, consistent with the intent of this Agreement and sound business practices, including but not limited to:

a)     recruiting of employees and support staff;

b)     creation, maintenance and monitoring of relationships with suppliers, vendors, lenders, real estate agents and other settlement service providers to ensure courtesy, efficient, legal and ethical conduct of business;

c)     accurate reporting to PGM, in such form and such manner as PGM may require, of all mortgage loan transactions and related financial information as necessary to carry out the terms and covenants of this Agreement;

d)     maintenance of any and all records and other data at the Branch Office for such periods and in such manner as state and/or federal law may require;

e)     locating, securing and arranging for the lease of Branch Facilities as necessary to conduct the business of the Branch Office;

f)     maintenance of all mortgage loan files originated by Branch Office (whether closed, cancelled, withdrawn or denied) on site, or as PGM may otherwise approve, in writing, for such period of time as required by state and/or federal law. All mortgage loan files are to be delivered to PGM upon termination of this Agreement; and,

g)     primary responsibility to ensure that all employees of Branch Office are covered under the scope of all applicable state licensing requirements for loan originators

MAR-27-2006 MON 12:42 PM Pacific Guarantee Mrtg.        FAX NO. 5109707930        P. 04

Case 3:07-cv-03140-SI    Document 65-3    Filed 08/22/2007    Page 5 of 13
Case 3:07-cv-03140-SI    Document 65-3    Filed 08/14/2008    Page 33 of 46

and are duly licensed and in good standing throughout the duration of their employment (including such things as timely payment of annual licensing fees and assessments and compliance with continuing education requirements).

6.      **Duties of PGM.** PGM shall assume responsibility for all accounting and the disbursement of all funds for the operation of the Branch Office. PGM shall forward to Branch Manager a monthly statement of income and expenses of the Branch Office, determined in accordance with the provisions of paragraph 9 below. In addition, PGM shall have those other and further duties and responsibilities set forth on Schedule A attached hereto and incorporated herein. The parties understand and agree that said schedule is subject to amendment by PGM by notice given in accordance with the provisions of paragraph 11 below. Any such amendment shall become a part of this Agreement thirty (30) days after notice.

7.      **Compliance with Laws, Regulations and Policies.** PGM and Branch Manager each acknowledge that state and federal law impose certain obligations on PGM with regard to the supervision, employment and compensation of any person who acts on behalf of PGM in furtherance of licensed activity. PGM shall review and supervise the activities of Branch Manager as required by law, and as more particularly set forth above, Branch Manager shall assist PGM in carrying out its supervisory obligations. However, this Agreement shall not be construed as, and is not intended as, PGM's relinquishment of overall responsibility for the supervision of the acts of salesperson associates licensed to PGM. Branch Manager agrees to comply with all federal, state and local laws, rules, regulations, policies and procedures to which PGM and/or Branch Manager are subject as a result of engaging in mortgage brokerage activity, including without limitation, those of HUD and guidelines of Fannie Mae, Freddie Mac and other investors. Branch Manager agrees to provide to borrowers and potential borrowers such disclosures, in such form and in such manner as PGM, in its sole discretion, shall require from time to time. The parties understand and agree that changes in federal, state and/or local laws, rules, regulations, policies and procedures may necessitate, in PGM's sole discretion, future amendment of this Agreement in order to maintain full compliance. Accordingly, such amendments may be made by notice given in accordance with the provisions of paragraph 11 below. Any such amendment shall become a part of this Agreement thirty (30) days after notice.

8.      **Errors and Omissions Insurance.** PGM shall obtain and keep in place professional liability insurance in such amounts and subject to such deductibles, endorsements, exceptions and exclusions as PGM, in its sole discretion, shall deem appropriate. The proportionate costs of such insurance attributable to PGM's Branch Office shall be considered an expense of operations in the calculation of Net Profits, as that term is defined herein.

9.      **Compensation.** As compensation for the services to be rendered by Branch Manager hereunder, PGM shall pay Branch Manager one hundred percent (100%) of all Net Profits realized from the operation of the Branch Office. The term "Net Profits," as used herein, shall mean Net Income from operations after Expenses but before taxes, in conformity with mortgage industry accounting practices, all as determined according to sound accounting principles. Net Income shall be determined by deducting Expenses from Gross Income. The term "Gross Income" shall mean all income earned and derived from the Branch Office. The

Page 4 of 12

MAR-27-2006 MON 12:42 PM Pacific Guarantee Mrtg.     FAX NO. 5109707930          P. 05

Case 3:07-cv-03140-SI   Document 53   Filed 06/22/2008   Page 34 of 46

term "Expenses" shall mean all operating expenses of the Branch Office, including those items of Expense identified elsewhere in this Agreement and including but not limited to the following:

a)  rent, copiers, office supplies, telephone service and utilities;

b)  commissions, salaries, payroll costs and expenses, and benefits of all employees and loan agents, including but not limited to commissions paid to Branch Manager in his/her capacity as a loan agent;

c)  all costs incurred by PGM in connection with the repurchase, by reason of fraud, of any loans originated by the Branch Office. Such costs may include, without limitation, disputes or settlements involving demands to repurchase loans;

d)  loss or costs, including reasonable attorneys' fees arising out of suits, actions, audits, foreclosures, or legal proceedings of any nature, arising out of the activities or operations of the Branch Office;

e)  all costs incurred by PGM in connection with Early Pay-offs or Early Payment Defaults, by reason of fraud, of any loans originated by the Branch Office;

f)  all costs (including up-front fees) to lock and/or extend locked loans; and,

g)  monthly shortages resulting from, but not limited to, non-collection of fees paid for credit reports, appraisals, etc.

Additionally, as set forth in Schedule B, which schedule is incorporated herein, there shall be other fees and expenses associated with Branch Office loan activity which shall be treated as Expenses. The parties understand and agree that Schedule B is subject to amendment by PGM by notice given in accordance with the provisions of paragraph 11 below. Any such amendment shall become a part of this Agreement thirty (30) days after notice.

Net Profits for any one month shall be paid to Branch Manager, or Branch Manager's designee, on the 30th day following the last day of that month. All such payments to Branch Manager shall be considered an Expense of the Branch Office.

10.  **No solicitation.** After termination of this Agreement, Branch Manager shall not solicit PGM's prospective or existing clients or customers based upon PGM-generated leads obtained during the term of this Agreement, nor may he/she solicit any client or customer with existing contractual obligations to PGM. Furthermore, after termination of this Agreement, Branch Manager shall not solicit Branch Office personnel in accordance with paragraph 21(v) of this Agreement.

Nothing contained in this paragraph is intended to preclude Branch Manager from purchasing and/or developing, at his/her own cost and expense, customer lists which shall be considered the separate property of Branch Manager and not subject to the provisions of this paragraph 10.

11.     **Notices.**  Any notice required or permitted under this Agreement shall be in writing, delivered to the party at the address set forth for such party below, and shall be deemed effectively delivered upon (i) personal delivery, (ii) one (1) day after deposit for overnight delivery with Federal Express or a comparable national express courier, or (iii) two (2) days after deposit in the United States mail, by first-class mail, postage prepaid.  Notices shall be delivered to the parties at the following addresses:

*If to PGM:*

Christopher M. George
Pacific Guarantee Mortgage
c/o CMG Mortgage Services, Inc.
3160 Crow Canyon Road, Suite 350
San Ramon, CA 94583

*If to Branch Manager:*

Jim Bowman
Pacific Guarantee Mortgage
2505 South 320th Street, Suite 260
Federal Way, WA 98003

A party may designate another address for notice purposes upon written notice thereof pursuant to the provisions of this paragraph.

12.     **Indemnity.**

a) Branch Manager shall indemnify, defend, and hold PGM, its officers, directors, shareholders and affiliates, and their respective successors and assigns, harmless from and against any and all liability, claims, losses, costs, expenses, penalties, fines, forfeitures, judgments, or damages, including reasonable attorneys' fees and court costs, arising out of or in connection with any fraud or willful misconduct of Branch Manager.

b) PGM shall indemnify Branch Manager for all that Branch Manager loses in direct consequence of the discharge of his/her duties as such, or which result from his/her obedience to the directions of PGM, even though unlawful, unless Branch Manager, at the time of obeying such directions believed them to be unlawful.  However, this paragraph shall not, in any respect, release or exempt Branch Manager from his/her duties under paragraph 7 of this Agreement, nor from his/her independent obligation(s) pursuant to his/her status as a licensed real estate broker/salesperson.

13.     **Mandatory Negotiation, Mediation and Arbitration.**  The parties will attempt in good faith to resolve through negotiation any dispute, claim or controversy arising out of or relating to this Agreement.  Either party may initiate negotiations by providing written notice in letter form to the other party, in accordance with the provisions of paragraph 11 above.  Such notice shall set forth the subject of the dispute and the relief requested.  The recipient of such notice will respond in writing within five days with a statement of its position on and recommended solution to the dispute.  If the dispute is not resolved by this exchange of correspondence, the representatives of each party with full settlement authority will meet at a mutually agreeable time and place within ten days of the date of the initial notice in order to exchange relevant information and perspectives, and to attempt to resolve the dispute.  If the

MAR-27-2006 MON 12:42 PM Pacific Guarantee Mrtg.   FAX NO. 5109707930   P. 07

Case 3:07-cv-03140-SI  Document 63-3  Filed 08/22/2008  Page 36 of 46

dispute is not resolved by these negotiations, the matter will be submitted to JAMS, or its successor, for mediation in accordance with the terms of this paragraph 13.

Either party may commence mediation by providing to JAMS and the other party a written request for mediation, pursuant to the provisions of paragraph 11 above. Such request shall set forth the subject of the dispute and the relief requested. The parties will cooperate with JAMS and with one another in selecting a mediator from JAMS' panel of neutrals, and in scheduling the mediation proceedings. The parties covenant that they will participate in the mediation in good faith, and that they will share equally in its costs. All offers, promises, conduct and statements, whether oral or written, made in the course of the mediation by any of the parties, their agents, employees, experts and attorneys, and by the mediator or any JAMS employees, are confidential, privileged, and inadmissible for any purpose, including impeachment, in any arbitration or other proceeding involving the parties, provided that evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its use in the mediation.

Either party may initiate arbitration in accordance with this paragraph 13 by filing a written demand for arbitration at any time following the initial mediation session or 45 days after the date of filing the written request for mediation, whichever occurs first. The mediation may continue after the commencement of arbitration if the parties so desire. Unless otherwise agreed by the parties, the mediator shall be disqualified from serving as arbitrator in the case. It is the intent of the parties to this Agreement that any and every dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, which can not be resolved by negotiation and/or mediation, be resolved by binding arbitration. This includes, but is not limited to the determination of the scope or applicability of this agreement to arbitrate. Arbitration shall be conducted in San Francisco, California, before a sole arbitrator, in accordance with the laws of the State of California for agreements made in and to be performed in California. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures. Judgment on the Award may be entered in any court having jurisdiction. The arbitrator shall, in the Award, allocate all of the costs of the arbitration and the mediation, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail.

The provisions of this paragraph 13 may be enforced by any court having jurisdiction, and the party seeking enforcement shall be entitled to an award of all costs, fees and expenses, including attorneys' fees, to be paid by the party against whom enforcement is ordered.

14.    **Proprietary Information.** All loan files, records, documents, lists, rate sheets, product guidelines, investor/secondary market information, databases, trade secrets (as defined in paragraph 21(q)), manuals (including policies and procedures), training manuals, forms, marketing materials, hardware and software obtained from PGM, and similar items relating to the business of PGM, (collectively "Proprietary Information") whether prepared by Branch Manager or otherwise, coming into the possession of the Branch Office, its personnel and/or Branch Manager during the term of this Agreement shall be, and remain, the exclusive property of PGM.

MAR-27-2006 MON 12:43 PM Pacific Guarantee Mrtg.     FAX NO. 5109707930          P. 08

Case 3:07-cv-03140-SI     Document 65-3     Filed 08/22/2008     Page 9 of 13     37 of 46

Nothing contained in this paragraph is intended to preclude Branch Manager from purchasing, at his/her own cost and expense, databases, marketing materials, hardware and/or software, which shall be considered the separate property of Branch Manager and not subject to the provisions of this paragraph 14.

15.    **Branch Facilities.** "Branch Facilities" shall include, but not be limited to office space, furnishing and business equipment. Branch Manager shall arrange for the execution by PGM of a month-to-month lease for appropriate Branch Facilities for a Fair Market Rent. "Fair Market Rent" shall mean a fixed monthly amount that does not vary with the volume or the value of mortgage loans originated by the Branch Office, and that is no more than the fair market rent paid by other similar businesses for comparable facilities in the geographic area in which the Branch Office is located.

16.    **Name.** The Branch Office shall conduct business under the name Pacific Guarantee Mortgage, or such other name as PGM shall approve in advance, in writing. Branch Manager acknowledges and agrees that the name Pacific Guarantee Mortgage, and any and all derivations thereof, including but not limited to PGM trade names, trademarks and/or logos used in the conduct of the business of the Branch Office, are proprietary and belong exclusively to PGM. Upon termination of this Agreement for any reason, Branch Manager shall cease to use, in any manner, the name Pacific Guarantee Mortgage, and all derivations thereof, together with all PGM trade names, trademarks and logos, and during the term of this Agreement, shall acquire no license, proprietary rights to, or interest in them, or in any derivations thereof.

17.    **Solicitation of Mortgage Loans in Other States.** Branch Manager shall limit solicitation of mortgage loan activity by Branch Manager and Branch Office personnel to the state in which the Branch Office is located, unless Branch Manager first receives the prior written approval of PGM. Such approval shall be subject to reasonable conditions, including but not limited to the requirement that PGM and all affected Branch Office personnel currently hold such licenses as necessary for the subject state and that Branch Manager and the affected personnel demonstrate a thorough familiarity with such state's laws and regulations related to loan solicitation and mortgage loan origination.

18.    **Authority to Contract.** Branch Manager shall have no authority to enter into any agreement in the name of PGM. Branch Manager agrees to indemnify and hold PGM harmless from and against any and all liability arising out of any agreement entered into without the prior written consent of PGM. This covenant of indemnity shall include all costs of defense, including reasonable attorney's fees, for any such claim asserted.

19.    **Events of Default/Termination.** This Agreement shall terminate upon any of the following events or for any of the following causes:

a) Immediately following notice of a material breach of any covenant, condition, representation or contractual obligation of a party, given by the party that is or could be adversely affected thereby; provided said breach remains uncured for a period of ten (10) days following such written notice of said breach;

MAR-27-2006 MON 12:43 PM Pacific Guarantee Mrtg.    FAX NO. 5109707930    P. 09

Case 3:07-cv-03140-SI    Document 53    Filed 08/21/2008    Page 36 of 46

b) Immediately in the event of insolvency, bankruptcy or receivership of either party; or,

c) Immediately in the event of Branch Manager's fraud or intentional breach of duty to a client.

Upon termination of this Agreement for any reason, Branch Manager shall promptly return to PGM all originals and copies of all Proprietary Information obtained by Branch Manager from PGM. Branch Manager acknowledges and agrees that all such materials are the sole and exclusive property of PGM, and agrees not to utilize such materials for any purpose other than as contemplated by this Agreement, or at all upon termination.

20.    **Status of Loans in Process at Termination.** Except in the case of termination for Branch Manager's fraud or intentional breach of duty to a client, and subject to any applicable law to the contrary, any mortgage loans which are in process or which have been originated by the Branch Office, up to and including any mortgage loans originated through 5:00 p.m., on the day of termination of this Agreement, shall be processed, submitted and closed by PGM. Branch Manager shall receive compensation related thereto in accordance with the terms of this Agreement, as if such loans had been closed prior to termination, provided that all loan files and other PGM property have been returned to PGM. All rights of Branch Manager to compensation under this Agreement shall immediately terminate in the event of termination of this Agreement by reason of Branch Manager's fraud or intentional breach of duty to a client.

21.    **Miscellaneous.**

a. **Effective Date.** The "Effective Date" of this Agreement shall be the date that it is signed by PGM.

b. **Assignment.** PGM shall have the right to assign its rights and duties under this Agreement to any party without the consent of Branch Manager. Any such assignee of PGM shall be an intended third-party beneficiary of the representations, warranties, covenants, agreements and remedies contained herein. Branch Manager shall have no right to assign his/her rights or duties under this Agreement without PGM's prior written consent, which may be withheld by PGM in its sole discretion.

c. **Choice of Law.** This Agreement shall be governed by and construed under the laws of the State of California, without regard to conflicts of laws principles.

d. **Integration.** This Agreement is the entire agreement between the parties regarding the subject matter and supersedes any prior oral or written agreement among them regarding the subject matter contained herein.

e. **Amendment.** Except as set forth herein, this Agreement may not be amended or modified orally and no provision of this Agreement may be waived or amended except in a writing which makes reference to this Agreement and which is signed by PGM.

MAR-27-2006 MON 12:43 PM Pacific Guarantee Mrtg.     FAX NO. 5109707930     P. 10

Case 3:07-cv-03140-SI     Document 95-3     Filed 08/02/2008     Page 13 of 46

**f. Severability.** If a court of competent jurisdiction finds any provision in this Agreement to be invalid, illegal, or otherwise unenforceable, that determination will not affect any other provision of this Agreement. The invalid provision will be severed from this Agreement and all remaining provisions will continue to be of full force and effect.

**g. Interpretation.** Any ambiguities in this Agreement will not be strictly construed against the drafter of the language concerned but will be resolved by applying the most reasonable interpretation under the circumstances giving full consideration to the intentions of the parties at the time of contracting. This Agreement will not be construed against any party by reason of its preparation.

**h. No Third Party Beneficiaries.** Except as expressly set forth in paragraph 21 (b), above, this Agreement has been made by, and is made solely for the benefit of Branch Manager and PGM, and PGM's successors and permitted assigns. Except as expressly set forth in paragraph 21 (b), above, nothing in this Agreement is intended to confer any rights or remedies under or because of this Agreement on any persons or entities other than the parties to it and their respective successors and permitted assigns. Nothing in this Agreement is intended to relieve or discharge the obligation or liability of any third person or entity to any party to this Agreement.

**i. Waiver.** No waiver of any provision of this Agreement or consent to any action shall constitute a waiver of any other provision of this Agreement or consent to any other action. No waiver or consent shall constitute a continuing waiver or consent, or commit a party to provide a future waiver.

**j. Further Assurances.** Branch Manager shall execute and deliver any and all additional papers, documents and other assurances and shall do any and all acts and things reasonably necessary in connection with his/her performance of his/her obligations hereunder to carry out the intent of this Agreement.

**k. Captions.** All captions and headings in this Agreement are for reference only and may not be used in the interpretation of this Agreement or any related document.

**l. Counterparts.** This Agreement may be executed in counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument. The parties agree that a signed copy of this Agreement transmitted by one party to the other by facsimile transmission shall be binding upon the sending party to the same extent as a signed original of this Agreement.

**m. Attorneys' Fees.** In the event that any action or arbitration is brought by either party to enforce the terms of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs.

**n. Venue.** PGM and Branch Manager agree that the proper venue for any legal action brought under this Agreement is either the County of Contra Costa, California or the United States District Court for the Northern District of California, as appropriate.

**o. Survival Upon Termination.** Branch Manager's representations, warranties, covenants and other obligations and agreements contained in this Agreement, including without limitation Branch Manager's indemnification obligations, shall survive any termination of this Agreement.

**p. Non-exclusive Remedies.** No remedy under this Agreement is exclusive of any other available remedy, but each remedy is cumulative and is in addition to other remedies given under this Agreement or existing in law or in equity.

**q. Confidentiality.** Each party understands, acknowledges and agrees that certain trade secrets and customer lists exist which are wholly owned and controlled by the other. These shall be referred to herein collectively as "trade secrets" and consist of information and materials that are valuable and not generally known by such party's competitors. All trade secrets, however maintained, shall be and remain the exclusive property of the originator thereof. Each party agrees not to disclose any of the other's trade secrets, directly or indirectly, or use them in any way, either during the term of this Agreement or at any time thereafter, except as required in the course of performance of this Agreement.

**r. Offset.** Amounts past due and owing by Branch Manager to PGM under this Agreement may, at PGM's option and in its sole discretion, be offset by PGM against any payments or other indebtedness then or thereafter owed by PGM to Branch Manager.

**s. Statute of Limitations.** Any action arising under this Agreement or because of its breach must be commenced within one year after the cause of action accrues.

**t. No Partnership or Joint Venture Intended.** PGM and Branch Manager intend that, to the maximum extent permissible by law, this Agreement shall not be construed as a partnership and/or joint venture.

**u. Regulatory Compliance.** PGM and Branch Manager recognize the importance of full compliance at all times with all state and federal laws, rules and regulations governing mortgage loan origination. Accordingly, notwithstanding anything to the contrary contained elsewhere herein, the parties recognize and agree that PGM retains the right to amend this Agreement as necessary, in its reasonable discretion, to ensure full compliance with all state and federal laws, rules and regulations. Any such amendment shall become a part of this Agreement thirty (30) days after notice thereof is given in accordance with paragraph 11 above.

**v. Anti-Poaching.** Branch Manager agrees not to solicit or in any way entice to leave, interview, hire or contract, either directly or indirectly, with any employees or independent contractors affiliated with PGM, or any of its affiliates, during the term of this Agreement, and for a period of two (2) years following termination of this Agreement.

**w. Jury Trial.** Pursuant to the provisions of paragraph 14 above, Branch Manager and PGM each agree to waive trial by jury in any action or proceeding arising out of this Agreement.

Page 11 of 12

MAR-27-2006 MON 12:43 PM Pacific Guarantee Mrtg.    FAX NO. 5109707930    P. 12

Case 3:07-cv-03140-SI    Document 85-3    Filed 06/11/2008    Page 41 of 46

    **x. Condition Precedent.** It is understood and agreed that the respective rights, duties and obligations of the parties hereto are expressly made subject to and conditioned upon the completion of the transaction by and between PGM and RBC, which transaction is expected to conclude on or about June 30, 2003. PGM will notify Jim Bowman once said transaction is concluded.

    IN WITNESS WHEREOF, the undersigned have executed this Agreement at San Ramon, California.

Dated:_____        Dated: ___12/1/03___

**CMG Mortgage Services, Inc., doing**        **Branch Manager**
**business as Pacific Guarantee Mortgage**

By: _____        By: _____
    Christopher M. George, President            Jim Bowman

# Exhibit D

L A W   O F F I C E S   O F
## ALAN F. COHEN

101 MONTGOMERY STREET
SUITE 2050
SAN FRANCISCO, CA  94104
TEL:  415.984.1943
FAX:  415.984.1953
cohenlaw@mindspring.com

May 6, 2008

**Via Email and U.S. Mail**

Joshua Rosenthal
Medlin & Hargrave, P.C.
One Kaiser Plaza, Suite 1305
Oakland CA 94612

Re:      *Bowman v. CMG Mortgage, Inc. et al.* – Case No. C-07-3140-SI

          **Meet and Confer Regarding Defendants' Inadequate Interrogatory
          Responses**

Dear Mr. Rosenthal:

Defendants' responses to Plaintiffs' First Set of Special Interrogatories are inadequate in several respects and must be supplemented in order to comply with Defendants' obligations under the FRCP.  I write in an attempt to meet and confer prior to filing motions to compel and for sanctions, in hopes that Defendants will be willing to strike their inappropriate objections and provide fully compliant responses.

Below, I will identify the responses which Plaintiffs deem to be inadequate and the reasons why further responses are required.  Should Defendants fail to commit to immediately withdraw their improper objections and provide the requested information, Plaintiffs will have no choice but to file a motion to compel further responses and for sanctions to compensate them for the costs stemming from Defendants' misuse of the discovery process.

Please respond to this letter by **May 12, 2008** with specific commitments to address each of the infirmities identified below by a date certain within two weeks from the date of this letter.  If we have not received a response by May 12, we will be forced to assume that Defendants have no interest in informally resolving these disputes and will proceed accordingly.

## Interrogatory No. 1 (responded to as 1A) and 2

Defendants objected to these interrogatories based on relevance.  Mr. Bowman's Branch Management Agreement entitled him to receive gross revenues based on "all income earned and derived from the Branch Office," which under any reasonable interpretation of the agreement would include service release premiums and fees derived from or arising out of loans originated in Mr. Bowman's branches.  You may contest this issue, but unless and until the issue is adjudicated in Defendants' favor the information is discoverable.  Defendants' objection is meritless.

Defendants also object on the grounds that compiling the information would be unduly burdensome.  There has been no showing that the burden would be so great as to be harassing.  Defendants are under a duty to search their records to provide the

answers. *See Govas v. Chalmers* (7th Cir. 1992) 965 F2d 298, 302. Alternatively, if the records are so voluminous as to require burdensome and expensive research, Defendants may specify the records containing this information and make them available to Plaintiffs for their own inspection. FRCP 33(d). If Defendants choose this option, however, the records must be offered "in a manner that permits the same direct and economical access that is available to the [responding] party." If compilations and summaries exist, these should be made available. Adv. Comm. Notes to 1980 Amendment to FRCP 33(d); *Puerto Rico Aqueduct & Sewer Authority v. Clow Corp.* (D PR 1985) 108 FRD 304, 306; and see *T.N. Taube Corp. v. Marine Midland Mortg. Corp.* (WD NC 1991) 136 FRD 449, 454 (responding party's familiarity with its records and methods of organization would facilitate review of records in ways unavailable to opposing party).

**Interrogatory No. 3**

Defendants responded to this interrogatory by stating that they did not require Bowman to pay into "reserves," although they did not explain their answer. Perhaps it is because reserves were replenished through deduction from branch revenues rather than paid out of pocket. It is a distinction without a difference; absent the unlawful deduction, these revenues were wages payable to Mr. Bowman.

Or perhaps Defendants are taking the position that PREMCO, and not BOWMAN was required to maintain reserves. This is provably false, and irrelevant in any case, as CMG is well aware that any payments from PREMCO came from its employee. Defendants cannot avoid their statutory duties under the Labor Code by the subterfuge of requiring a corporate entity to stand between themselves and their employees.

**Interrogatory No. 5**

This interrogatory required Defendants to STATE ALL FACTS supporting Defendants' refusal to refund Plaintiffs' security deposits. The conclusory answer you provided does not "state all facts," and is especially insufficient given that the interrogatory spelled out in great detail what was required in response. If there were "outstanding expenses" that Defendants believe justifies withholding Plaintiffs' security deposits, for example, they are required to spell out precisely what those expenses were and all of the surrounding facts and circumstances.

**Interrogatory No. 6**

There is nothing objectionable about having to prepare a list or compilation, or harassing for that matter. What makes up an "Expense" within the meaning of the Branch Management Agreements is an important factual and legal issue in this case; it is not sufficient for Defendants to complain that the interrogatory requires them to do some homework, or to point vaguely to some documents that have been produced. Defendants' reference to paragraph 9 of the BMA is likewise insufficient (unless you are taking the position that the items expressly listed therein are the only Expenses that apply). If the answer to the question were self-evident it would not have been asked.

**Interrogatory No. 7**

Defendants' response fails to STATE ALL FACTS with the level of specificity required by the interrogatory and is therefore inadequate.

**Interrogatory No. 8**

Defendants' response to this question is enlightening at least as to Defendants' view of the application of ERISA to the question of who bore the risk of loss where employees terminated short of vesting into Defendants' 401k plan. However, the interrogatory again required Defendants to STATE ALL FACTS, and Defendants stated only generalities. For example, you wrote that "it is certainly the case that the cumulative dollar benefit realized by Plaintiffs far exceed the total dollar value of all forfeitures . . . ." To answer the interrogatory, Defendants are required to state facts: what is the "cumulative dollar benefit?" What are the "net sum" and "total losses?" Is it or is it not "almost certainly the case" that Plaintiffs benefited from forfeitures?

Defendants' response makes factual assertions without stating any concrete facts, and is therefore inadequate. Please supplement the answer with actual facts, at the level of detail required by the definition of the term STATE ALL FACTS.

**Interrogatories No. 9-11**

The same failure to state all facts (or any concrete facts at all) renders these interrogatory responses inadequate and requires Defendants to supplement their answers.

**Interrogatory No. 15**

The interrogatory required Defendants to identify a responsible person. You contend that Mr. Bowman is not owed money, and the interrogatory requires you to identify the person or persons who made that determination. The failure to respond to the plain language of the interrogatory can only been seen as bad faith.

**Interrogatory Nos. 16-18**

There are two problems with the responses to these interrogatories. First, you have identified certain employees who were in charge of the organizational functions in question, but have not identified all other employees who worked under them. We are in possession of numerous documents indicating that other employees worked within the departments we have asked about, some of whom communicated directly with Mr. Bowman. Please supplement your responses to provide this information.

Secondly, you objected to the interrogatories based on privacy. There is no cognizable basis for this objection. While employees have firmly-established privacy rights in their personnel files and other documents related to the terms and conditions of their employment, their interests in maintaining the privacy of their contact information is comparatively minimal. This information is "basic civil discovery" . . . and "it is only under unusual circumstances that the courts restrict discovery of nonparty witnesses' residential contact information." *Puerto v. Superior Court* (2008) 158 Cal.App.4th 1242, 1254. No such unusual circumstances exist here. There is no evidence that Plaintiffs seek this information for an improper purpose. Plaintiffs are entitled to sufficient information to contact these potential witnesses (and if necessary serve subpoenas for deposition or trial).

**Interrogatory No. 20**

This is a standard interrogatory in any employment case – indeed, it is adapted from the form interrogatories prepared by the California Judicial Council. Every employer should expect to have to answer this question in litigation. Defendants' stock

Re: *Bowman v. CMG, Inc., et al.*
May 6, 2008
Page 4

form objections are meritless – the information is within the scope of discovery and it is not unduly burdensome or harassing. Defendants must answer the interrogatory fully.

**Interrogatory Nos. 23 and 24**

Defendants' response was ambiguous and we cannot tell what you mean by the one word response, "No." Does this mean that Defendants deny that performance was excused or that there was an ambiguity, or does it mean that Defendants are refusing to answer the interrogatory?

I am not trying to be picky here; I just need to know that there is no ambiguity in the answer so that we can be certain of Defendants' position.

**Interrogatory No. 25**

Defendants' objections are groundless. These are potential witnesses, and the interrogatory is therefore likely to lead to the discovery of admissible evidence. Defendants' course of conduct in performing under other branch managers' branch management agreements and facilities agreements will be admissible in this case. Similarly, communications between Defendants and the Branch Managers or Plaintiffs and the Branch Managers will be admissible. The objections of overbreadth, burden, and harassment are unsupportable. There is minimal, if any, privacy right involved, must bend before Plaintiffs' legitimate need for discovery and the Court's interest in the determination of the parties' rights. Defendants' refusal to provide this clearly discoverable information is sanctionable.

**Conclusion**

Please contact me by May 12 with specific responses to each of the points raised above. If Defendants do not commit at that time to withdrawing their baseless objections and amending their responses within a short time afterward, Plaintiffs will file motions with the Court to compel responses and for sanctions.

Sincerely,

*Alan Cohen*

Alan F. Cohen