# Exhibit D

| | |
|---|---|
| 1 | David R. Medlin    (SBN 77417) |
|  | G. Bradley Hargrave   (SBN 173911) |
| 2 | Joshua A. Rosenthal   (SBN 190284) |
|  | MEDLIN & HARGRAVE |
| 3 | A Professional Corporation |
|  | One Kaiser Plaza, Suite 1305 |
| 4 | Oakland, CA  94612 |
|  | Telephone:    (510) 832-2900 |
| 5 | Facsimile:    (510) 832-2945 |
| 6 | Attorneys for Defendants and Counter-Claimant |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| James W. Bowman, Jr. and Pacific Real Estate Management Company, Inc., a Washington Corporation, | Case No.: C 07 3140 SI |
|  | COUNTER-CLAIM FOR DAMAGES FOR: |
| Plaintiffs, | 1) BREACH OF CONTRACT |
| vs. | 2) CONVERSION |
|  | 3) VIOLATION OF THE UNIFORM TRADE SECRETS ACT |
| CMG Mortgage Inc., a California Corporation; CMG Mortgage, Inc., d/b/a Pacific Guarantee Mortgage, CMG Mortgage Services, Inc., a California Corporation, CMG Mortgage Services, Inc. d/b/a Pacific Guarantee Mortgage, | 4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE |
| Defendants. / | **JURY TRIAL DEMANDED** |
| CMG Mortgage Inc., a California Corporation |  |
| Counter-Claimant, |  |
| vs. |  |
| James W. Bowman, Jr., an individual, |  |
| Cross-Defendant. / |  |

Counter-claimant CMG Mortgage, Inc. alleges as follows:

**JURISDICTION**

1. The jurisdiction of this Court over the subject matter of this counter-claim is predicated on FRCP 13(a), 13(e) and due to this Court's supplemental jurisdiction over counterclaims that are not

---

1

DEFENDANT CMG MORTGAGE, INC.'S COUNTER-CLAIM C-07-3140 SI
M:\CMG\85-0706-02 Bowman\Pleadings\cross complaint.wpd

compulsory but sufficiently related to plaintiffs' claims that they form part of the same constitutional case or controversy. <u>HB Gen. Corp. V. Manchester Partners, L.P.</u> (3rd Cir. 1996) 95 F.3d 1185, 1198.

**PARTIES**

2. Counter-claimant CMG Mortgage, Inc. ("CMG") is a California corporation engaged in the business of originating and funding residential mortgage loans.

3. CMG is informed and believes and based thereon alleges that cross-defendant James Bowman ("Bowman") is, and at all times relevant herein was, a Washington resident. CMG is informed and believes and thereon alleges that Bowman is, and at all times relevant herein was, the president of Pacific Real Estate Management Company, Inc. ("PREMCO"), a Washington corporation

**STATEMENT OF FACTS**

4. For approximately 10 years Bowman has conducted business as a net branch operator with various residential mortgage companies such as Mortgage Market, Prism Financial, RBC Mortgage of California (a subside of Royal Bank of Canada) and Citybank. In 2003, CMG purchased RBC's net branching operation known as Pacific Guarantee Mortgage ("PGM"). Thereafter in 2003, Bowman became a net branch operator for CMG.

5. The term "net branch" is a term of art in the mortgage industry. It is essentially a method of business which allows a small mortgage business, often with fewer assets and/or limited lender relationships to be more competitive by affiliating with a larger company. In this instance, Bowman's affiliation with CMG afforded him access to CMG's nationwide network of lenders, as well as CMG's own mortgage banking operation. The essence of a net branching arrangement is to allow the smaller mortgage business effectively to remain in business for itself, while realizing the benefits of association with a much larger company. Because the small mortgage business (the "net branch operator") remains independent, at least to the maximum extent legally permissible, the operator (in this instance, Bowman) continues to be "in business for himself." Being in business for himself, the net branch operator realizes not merely most of the net profits of his net branch operation - but rather 100% of the net profits. All net profits enure to the benefit of the net branch operator.

6. The concept, therefore, of net branching is simple enough - individual operators, such as Bowman, associate themselves with much larger, usually nationwide operations, such as CMG. By

doing so, the net branch operator gains access to many more lenders, making his operation much more competitive. As well, the net branch operator enjoys the benefits of certain economies of scale, in terms of such things as the back office support, accounting and information technology systems which a larger operator can make available. The larger operation gets the benefit of the additional mortgage banking business which the net branch operator will hopefully be able to steer to it. While the concept of this relationship is fairly simple, implementation consistent with applicable state and federal laws regulating mortgage loan origination can be complex.

7. The rather complex set of contracts governing the relationships of the parties (i.e., the contracts which are the subject of this dispute) were designed by CMG to achieve two goals: (1) allow Bowman, to the maximum extent legally possible, to conduct his net branching operation as an independent business; and, (2) achieve this first goal in a manner which is compliant with applicable state and federal law. On a state level the primary concern is usually state licensing laws. On the federal level, the concerns include FHA requirements, RESPA concerns, HUD mandates and a variety of other laws, rules and regulations governing mortgage loans. The contracts achieve these goals in the following manner.

8. Working together, the contracts create two relationships: (1) a sub-leasing relationship, which is memorialized in the Facilities Agreement entered into between PREMCO and CMG, for each branch office; and, (2) an office management/employment relationship, which is memorialized in the Branch Manager & Employment Agreement ("BMA") entered into between CMG and Bowman for each office.

9. Licensing and various other laws governing mortgage loan origination mandate that, in order for Bowman to enjoy the lender relationships of CMG and to be able to bank loans through CMG, his operation must operate as an extension of CMG. Among other things, this necessitates that CMG pay certain core expenses of Bowman's operation, including office rent, furniture, fixtures and equipment. Since such "facilities" are typically already owned or possessed by net branch operators as was true here, the Facilities Agreement affords a mechanism for PREMCO (Bowman's corporation) to sub-lease these facilities to CMG on a month to month basis. In this manner, CMG pays for the core expenses of the net branch operation, but since an important component of any net branching

1  relationship is that the net branch operator is effectively in business for himself, Bowman retains
2  ultimate control of these facilities, since they are sub-leased on a month to month basis by the
3  corporation he controlls.

4      10.    The "rent" which CMG pays PREMCO under the Facilities Agreement is an amount
5  equal to 125% of the actual costs to PREMCO of securing the "facilities." In other words, effectively
6  PREMCO determines its monthly cost for "facilities," marks it up by 25% and submits that to CMG as
7  "rent," pursuant to the Facilities Agreement. The markup simply affords an opportunity for the net
8  branch operator to permissibly divert earnings into an entity he controls, for a variety of potential
9  reasons. Significantly, although in the Facilities Agreement PREMCO is the sublessor (effectively the
10 landlord) and CMG is the sublessee (effectively the tenant), the Facilities Agreement requires PREMCO
11 to post a security deposit.

12     11.    The BMA complies with various mortgage law requirements, including that each branch
13 office be managed by a responsible person. It also provides the means for funneling 100% of the net
14 profits to the net branch operator, Bowman. Although admittedly complex, ultimately the Branch
15 Manager Agreement provides that Bowman's profit sharing income/net profits shall be equal to the total
16 of all income of his branches, minus all expenses, including of course the costs associated with the
17 Facilities Agreement. Therefore, all income is calculated, then all expenses - most certainly including
18 those paid pursuant to the Facilities Agreement - are deducted to arrive at net profits, which are then
19 paid to Bowman - assuming there are net profits to be distributed. Accordingly, the "cash flow" is
20 effectively as follows:

21     a.    Income is generated by the net branch operator's (Bowman's) branches;
22     b.    CMG collects that money and withholds for itself any fees due it;
23     c.    Pursuant to the Facilities Agreement PREMCO submits a bill to CMG for its expenses +
24         25%, which CMG pays to PREMCO from funds remaining from that left over after the
25         deduction of those amounts listed in sub-paragraph (b) above; and
26     d.    The balance is net profits and is paid to Bowman, pursuant to the BMA.

27     12.    Ultimately, it is inconsequential as to how the numbers are broken down as between
28 expenses and profit sharing/net profits. The net branch operator's branches generate whatever income

4

1  they generate. CMG retains its fee. The balance is available to pay "rent" to the net branch operator's
2  entity (PREMCO). Once that "rent" is paid, if there is anything left over it is profit sharing/net profits
3  and is paid to the net branch operator (Bowman).

4      13.    On or about December 18, 2008, CMG notified Bowman and PREMCO that it was
5  terminating the contracts between them in 30 days, pursuant to the contracts' termination provisions.
6  Bowman asked for and CMG granted an extension so the termination would be effective on the close of
7  business on January 31, 2007. The BMA's signed by Bowman contained a provision requiring that all
8  loans started by the branches prior to 5:00 p.m. on the day of termination must be completed with CMG,
9  at Paragraph 20 of Exhibits 1 & 2 to Plaintiffs' First Amended Complaint. Bowman has admitted, in
10 testimony under oath at his deposition April 30, 2008, that he had started loans with CMG prior to
11 January 31, 2007 and did not close those loans with CMG after January 31, 2007. This is the first time
12 CMG had affirmative proof that Bowman misappropriated loan files and customer information.

### FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT

14     14.    CMG realleges and incorporates herein by this reference paragraphs 1 through 13,
15 inclusive, of this counter-claim.

16     15.    On or about December 18, 2008, CMG notified Bowman and PREMCO that it was
17 terminating the written contracts between them in 30 days, pursuant to the termination provisions in the
18 contracts. Bowman asked for and CMG granted an extension so the termination would be effective on
19 the close of business on January 31, 2007. The BMA agreements signed by Bowman contained a
20 provision requiring that all loans started by the branches prior to 5:00 p.m. on the day of termination
21 must be completed with CMG. Paragraph 20 of Exhibits 1 & 2 to Plaintiffs' First Amended Complaint.
22 Bowman admitted, in testimony under oath, that he had started loans with CMG prior to January 31,
23 2007 and did not close those loans with CMG after January 31, 2007.

24     16.    Additionally, the contracts also contained a provision that prohibited solicitation of
25 CMG's prospective or existing clients. See Paragraph 10 of Exhibits 1 & 2 to Plaintiffs' First Amended
26 Complaint. Bowman has admitted, in testimony under oath, that he had started loans with CMG prior to
27 ///
28 ///

5

1  January 31, 2007 and did not close those loans with CMG after January 31, 2007.  Thus, CMG is
2  informed and believes and thereon alleges that Bowman solicited these existing CMG customers after
3  his termination so that they would close loans with Bowman and his new employer and not CMG.

4       17.    As a result of the breaches of Paragraphs 10 and 20 of the BMA's, CMG did not earn
5  income it would have earned on the loans that started with the branches prior to January 31, 2007.
6  Additionally, CMG is informed and believes and thereon alleges that due to Bowman moving the loans
7  to another mortgage loan originator and other lenders after January 31, 2007, CMG did not earn the
8  income it would have otherwise earned if it was going to be the lender on the loans at issue.  CMG also
9  did not receive the payment for the loans that it was entitled to receive to offset the expenses of the
10 branches, which exceeded the income of the branches at the time of termination.  Finally, CMG lost the
11 benefit of the continued and future business of the solicited customers.

12      18.    Except as excused by the acts and/or omissions of Bowman, CMG has performed all
13 conditions, covenants, and promises required by it on its part to be performed in accordance with the
14 terms and conditions of the BMA's.

15      19.    As a proximate result of Bowman's breaches, including, without limitation, those set
16 forth herein, CMG has been damaged in an amount to be proven at trial, plus attorneys' fees per the
17 contracts.

18               **SECOND CAUSE OF ACTION FOR CONVERSION**

19      20.    CMG realleges and incorporates herein by this reference paragraph 1 through 19,
20 inclusive, of this counter-claim.

21      21.    On or about December 18, 2008, CMG notified Bowman and PREMCO that it was
22 terminating the written contracts between them in 30 days, pursuant to the termination provisions in the
23 contracts.  Bowman asked for and CMG granted an extension so the termination would be effective on
24 the close of business on January 31, 2007. The Branch Management agreements signed by Bowman
25 contained a provision requiring that all loans started by the branches prior to 5:00 p.m. on the day of
26 termination must be completed with CMG.  Paragraph 20 of Exhibits 1 & 2 to Plaintiffs' First Amended
27 Complaint.   Bowman has admitted, in testimony under oath, that he had started loans with CMG prior
28 to January 31, 2007 and did not close those loans with CMG after January 31, 2007.

22. Up until 5:00 p.m. on January 31, 2007, Bowman was a CMG's employee and the president of PREMCO. The loan files and customers serviced by Bowman prior to 5:00 p.m. on January 31, 2007, were the property of CMG. CMG is informed and believes and thereon alleges that by taking the loans and the physical loan files that were made in the name of CMG prior to January 31, 2007, and changing the name to another mortgage loan originator and/or closing them with another mortgage broker and/or loan originator, after January 31, 2007, Bowman wrongfully exercised dominion and control over the property of CMG, and converted the property to his own use.

23. CMG is entitled to a return of the physical loan files and the income earned by all others as a result of the closing of the loans in question. As a result of cross-defendant's actions as alleged herein, CMG has been denied the possession, use and present and future financial benefits of the loan files.

24. As a proximate result of cross-defendant's conversion, CMG has suffered injury as a natural, reasonable and proximate result of the conversion, including, but not limited to, not earning the secondary market income on the loans, many of which would have been banked with CMG and any fees and processing charges related to any loans that would have been brokered through CMG.

25. Bowman's acts alleged above were willful, wanton, malicious, and oppressive were undertaken with the intent to defraud and justify the awarding of exemplary and punitive damages.

26. Except as excused by the acts and/or omissions of Bowman, CMG has performed all conditions, covenants, and promises required by it on its part to be performed in accordance with the terms and conditions of the BMA's.

**THIRD CAUSE OF ACTION FOR**

**FOR VIOLATION OF THE UNIFORM TRADE SECRETS ACT**

27. CMG realleges and incorporates herein by this reference paragraph 1 through 26, inclusive, of this counter-claim.

28. The loan files started by Bowman prior to January 31, 2007, and the confidential information contained therein, including, but not limited to the identity of the customers, the customers's financial information contained in their loans files and their financing history, separately and as a whole, are trade secrets subject to protection under California Civil Code Section 3426, et seq.

7

29. This information is information that derives independent economic value by not being accessible to competitors, such as Bowman's current employer, who can profit from it.

30. CMG has taken reasonable and appropriate steps and measures to protect and maintain the secrecy of this information including, but not limited to, making its employees, such as Bowman, sign employment agreements whereby they agree not to solicit CMG customers after termination and agree that all loan files started with CMG prior to termination must be closed with CMG after termination.

31. The foregoing conduct of Bowman, as alleged herein, constitutes misappropriation and misuse of CMG's confidential and proprietary trade secret information.

32. As a consequence of the foregoing, CMG has suffered and will continue to suffer irreparable harm, loss and damage.

33. Bowman's acts alleged above were willful, wanton, malicious, and oppressive were undertaken with the intent to defraud and justify the awarding of exemplary and punitive damages.

## FOURTH CAUSE OF ACTION
## FOR INTENTIONAL INTERFERENCE WITH
## PROSPECTIVE ECONOMIC ADVANTAGE

34. CMG realleges and incorporates herein by this reference paragraph 1 through 33, inclusive, of this counter-claim.

35. As more fully set forth herein, Bowman's conduct in misappropriating loan files, soliciting CMG's customers and their financial information and misappropriating other proprietary and confidential information, Bowman has interfered with CMG's existing economic relations with its customers.

36. Bowman has done this with full knowledge of the existence of those relationships and with full intent to interfere with and damage those relationships to Bowman's own direct economic advantage.

37. As a proximate result of Bowman's acts, as alleged herein, CMG has suffered injury as a natural, reasonable and proximate result of the intentional interference with CMG's economic advantage, including, but not limited to, not earning the secondary market income on the loans, many of

8

1  which would have been banked with CMG, and any fees and processing charges related to any loans
2  that would have been brokered through CMG. Additionally, CMG has lost the future ability to market
3  to these customers and to have important financial information about these customers to assist CMG in
4  conducting future business with said customers.

5      38.    Bowman's acts alleged above were willful, wanton, malicious, and oppressive and were
6  undertaken with the intent to defraud and justify the awarding of exemplary and punitive damages.

7      WHEREFORE, CMG prays for judgment against cross-defendant as follows:
8      As to the First Cause of Action:
9      1.    For general damages according to proof at trial;
10     2.    For special damages in an amount according to proof at trial to compensate CMG for its
11         lost secondary market profits on the loans;
12     3.    For prejudgment interest at the maximum rate allowable;
13     4.    For reasonable attorney's fees pursuant to the Agreement;
14     5.    For costs of suit herein incurred;
15     6.    For such other relief as the Court may deem proper
16     As to the Second Cause of Action:
17     1.    For general damages according to proof at trial;
18     2.    For special damages in an amount according to proof at trial to compensate CMG for its
19         lost secondary market profits on the loans;
20     3.    For punitive damages in an amount appropriate to punish Bowman and deter others from
21         engaging in similar misconduct;
22     4.    For costs of suit herein incurred;
23     5.    For such other relief as the Court may deem proper.
24     As to the Third Cause of Action:
25     1.    For general damages according to proof at trial;
26     2.    For punitive damages in an amount appropriate to punish Bowman and deter others from
27         engaging in similar misconduct;
28     3.    For costs of suit herein incurred;

DEFENDANT CMG MORTGAGE, INC.'S COUNTER-CLAIM C-07-3140 SI
M:\CMG\85-0706-02 Bowman\Pleadings\cross complaint.wpd

|   |    |   |
|---|---|---|
| 1 | 4. | For reasonable attorney's fees; |
| 2 | 5. | For such other relief as the Court may deem proper. |

As to the Fourth Cause of Action:

1. For general damages according to proof at trial;
2. For punitive damages in an amount appropriate to punish Bowman and deter others from engaging in similar misconduct;
3. For costs of suit herein incurred;
4. For reasonable attorney's fees;
5. For such other relief as the Court may deem proper.

Dated: May 20, 2008                     **MEDLIN & HARGRAVE**
                                        A PROFESSIONAL CORPORATION


                                        By:    ___/s/_____
                                               Joshua A. Rosenthal,
                                               Attorneys for Counter-Claimant,
                                               CMG Mortgage, Inc.


## **JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), counter-claimant demands a trial by jury on all issues in its counter-claim.

Dated: May 20, 2008                     **MEDLIN & HARGRAVE**
                                        A PROFESSIONAL CORPORATION


                                        By:    ___/s/_____
                                               Joshua A. Rosenthal,
                                               Attorneys for Counter-Claimant,
                                               CMG Mortgage, Inc.