Alan F. Cohen (State Bar No. 194075)
**LAW OFFICES OF ALAN F. COHEN**
101 Montgomery Street, Suite 2050
San Francisco, CA  94104
415.984.1943 (tel.)
415.984.1953 (fax)
cohenlaw@mindspring.com

Angela M. Xavier (State Bar No. 165152)
Attorney At Law
900 Cherry Avenue, Suite 300
San Bruno, CA  94066
Telephone:  (650) 355-0414
Facsimile:   (650) 355-0842

Attorneys for Plaintiffs and Cross-Defendants

## UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES W. BOWMAN, JR. and PACIFIC REAL ESTATE MANAGEMENT COMPANY, INC., a Washington Corporation<br><br>          Plaintiffs,<br>    v.<br>CMG MORTGAGE, INC., a California Corporation; CMG MORTGAGE, INC., d/b/a PACIFIC GUARANTEE MORTGAGE, CMG MORTGAGE SERVICES, INC., a California corporation; CMG MORTGAGE SERVICES, INC., d/b/a PACIFIC GUARANTEE MORTGAGE,<br><br>          Defendants. | Case No.: C-07-3140-SI<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION**<br><br>Date:   July 25, 2008<br>Time:  9:00 a.m.<br>Courtroom 10<br>Hon. Susan Illston |
| CMG Mortgage Inc., a California Corporation<br>          Counter-Claimant,<br>    v.<br><br>James W. Bowman, Jr., an individual,<br>          Cross-Defendant. | |

///

///

# TABLE OF CONTENTS

I.   Introduction ........................................................................................... 1

II.  Statement of Facts ................................................................................. 1

III. Argument ............................................................................................... 3

    A.   Defendants chose to be bound by the California Labor Code by
         inserting California choice-of-law provisions in all of the
         parties' contracts .............................................................................. 3

        1.   The Agreement ...................................................................... 3

        2.   California's choice of law rules determine the interpretation
            of this provision .................................................................... 3

        3.   Under California law, a choice of law clause in an
            employment contract encompasses statutory employment
            claims .................................................................................... 4

        4.   Defendants are estopped from arguing that California
            statutory law does not govern the parties' rights because
            they have also asserted rights under California statutes ............. 6

    B.   Plaintiffs are entitled to summary adjudication on the issue of
         liability on the Third and Fourth Causes of Action for breach of
         the Facilities Agreements .................................................................. 7

        1.   The elements of a contract claim ........................................... 7

        2.   The undisputed facts show that Defendants breached the
            Facilities Agreement by failing to pay the full Rental Fee ........ 8

    C.   Mr. Bowman is entitled to summary adjudication on the issue
         of liability on the Thirteenth Cause of Action for failure to
         reimburse expenses ........................................................................... 9

    D.   Mr. Bowman is entitled to summary adjudication on the issue
         of liability on the Seventh Cause of Action for Labor Code
         Waiting Time Penalties ..................................................................... 12

    E.   Plaintiffs are entitled to summary adjudication on the on the
         issue of liability on the Eleventh Cause of Action for Breach of
         Fiduciary Duties ................................................................................ 14

        1.   The elements of a cause of action for breach of fiduciary
            duty ....................................................................................... 15

**PLAINTIFF'S MEMO OF Ps & As ISO MOTION FOR SUMMARY ADJUDICATION**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2.   A fiduciary relationship existed between Defendants and Mr. Bowman................................................................................15

3.   Defendants breached their fiduciary duty to Mr. Bowman........................17

4.   Mr. Bowman has been damaged by Defendants' Breach of Fiduciary Duty........................................................................................19

IV. Conclusion..........................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Bradner v. Vasquez* (1954) 43 Cal.2d 147.................................................................19

*Committee On Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197.................................................................16

*Davis v. Morris* (1940) 37 Cal.App.2d 269 .................................................................13

*Delbon Radiology v. Turlock Diagnostic Ctr.* 839 F.Supp. 1388, 1391 (ED CA 1993) .................................................................3

*General Signal Corp. v. MCI Telecommunications Corp.* 66 F.3d 1500, (C.A.9 (Cal.),1995).................................................................3-4

*Grissom v. Vons Companies, Inc.* (1991) 1 Cal.App.4th 52.................................................................11

*Hudgins v. Neiman Marcus Group, Inc.* (1995) 34 Cal.App.4th 1109. .................................................................2

*Kerr's Catering Service v. Department of Indus. Relations* (1962) 57 Cal.2d 319.................................................................12-13

*Kinert v. Wright* (1947) 81 Cal.App.2d 919 .................................................................16

*Maudlin v. Pacific Decision Sciences Corp.* (2006) 137 C.A.4th 1001.................................................................12

*Moore v. Indian Spring, etc., Mining Co.* (1918) 37 Cal.App. 370 .................................................................12

*Nedlloyd Lines B.V. v. Superior Ct.* (1992) 3 Cal.4th 459 .................................................................5,6

*Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1137 (C.D.Cal. 2003) .................................................................15

*Olinick v. BMG Entertainment* (2006) 138 Cal.App.4th 1286 .................................................................4

*Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8 (2000).................................................................6

*Ramirez v. Yosemite Water Co.*, (1999) 20 Cal. 4th 785 .................................................................13

*RKO Radio Pictures v. Sheridan*, 195 F.2d 167 (9th Cir. (Cal.)1952 ).................................................................7

*S.G. Borello & Sons, Inc. v. DIR* (1989) 48 Cal. 3d 341.................................................................10-11

*Vai v. Bank of America* (1961) 56 Cal.2d 329 ........................................................16

**Statute**

Cal. Civil Code § 2223 ..............................................................................16

Cal. Civil Code § 2224 ..............................................................................16

Cal. Civil Code § 3426 *et seq* ......................................................................6

Cal. Code Civ. Proc. §§ 337, 338, 338.1, 339, 340, 343 ...............................6

Cal. Code Civ. Proc. § 1668 ......................................................................11

Cal. Code Civ. Proc. § 3513 ......................................................................11

Cal. Labor Code § 203 ..............................................................................12

Cal. Labor Code § 400 *et seq* .............................................................1,14-17

Cal. Labor Code § 2802 ..........................................................................9-11

Cal. Labor Code § 2804 ..........................................................................9-10

Fed R. Civ. Proc. 56(d)(2) ..........................................................................7

Prob. Code § 16002 ..................................................................................18

Prob. Code § 16004 ...............................................................................18-19

Prob. Code § 16006 ..................................................................................19

Prob. Code § 16007 ..................................................................................19

**Regulations, Administrative Agency Interpretations**

HUD Mortgagee Letter 00-15........................................................................12

HUD Mortgagee Approval Handbook 4060.1 REV-2 ........................................12

Industrial Welfare Commission Wage Orders § 2 ............................................10

Labor Commissioner Opinion Letter 1997.03.21-2 ..........................................10

## I.   Introduction

Defendants employed Plaintiff James Bowman as a Branch Manager in their residential mortgage brokerage business.  Defendants' employment scheme is unlawful in numerous respects, but this might never have come to light had Defendants not refused to pay Mr. Bowman his earned wages and other amounts he was owed on his termination.  Since he was forced to file suit to recover those wages and subsequent damages, it has become apparent that many other aspects of Defendants' employment agreements are illegal, including:

- requiring Mr. Bowman to surrender "Reserves" and "security deposits" as a hedge against Defendants' business losses, a practice that is no more than an unlawful cash bond (Cal. Labor Code § 400 *et seq.*);

- failing to safeguard Mr. Bowman's Reserves (which must be held in trust) and using them as operating capital without notifying Mr. Bowman;

- failing to reimburse Mr. Bowman for all expenses incurred in the course of employment (Cal. Labor Code § 2802);

- requiring the Branch Managers to enter into contracts in their own names or in the names of corporations they owned in contravention of both the Labor Code and federal regulations governing the mortgage business.

Many of these practices are unlawful as a matter of law and are susceptible to summary adjudication.  Other issues in the case, including the measure of damages, are subject to dispute and likely will have to await trial for resolution.

## II.   Statement of Facts

Plaintiff James Bowman was employed in Defendants' residential mortgage brokerage business as the Branch Manager of two retail mortgage branches in Washington State.  Bowman Decl. at ¶ 2-6.  The terms and conditions of his employment were controlled by two sets of form contracts drafted by Defendants, a Branch Management and Employment Agreement (BMA) and a separate Facilities Agreement (FA).  *Id.* at Exhibits A through D.  These agreements established a relationship known in the industry as a "net branch" arrangement, in which the Branch Manager was compensated in part by the net income earned and derived from the branch

**PLAINTIFF'S MEMO OF Ps & As ISO MOTION FOR SUMMARY ADJUDICATION**

1   after operating expenses were counted against revenues. *Id.* at ¶ 3. Just what constituted income

2   "earned and derived from the branch" and "expenses" under these agreements are contested

3   issues and in some ways probably not susceptible to summary adjudication.

4        Such net branch arrangements are disfavored by the Department of Housing and Urban

5   Development. Among other things, HUD rules prohibit brokers from requiring branch managers

6   to personally obligate themselves on the brokers' debts, or to enter into contracts in their own

7   names rather than in the name of the broker. Request for Judicial Notice, Exhibits A and  B.

8   Defendants' net branch arrangement violated these rules in numerous ways. Bowman Decl.,

9   Exhibits A and C (BMA ¶9(c), (d), and B and D (FA Arts. 1 and 2). As discussed below,

10  Defendants' net branching scheme also violated unwaivable statutory employment rights by

11  making Mr. Bowman act as an insurer of Defendants' business losses. *Id.*

12       For example, Defendants required Mr. Bowman to lease the branch offices through a

13  separate corporation he owned, PREMCO, and required him and his corporation to front many of

14  the operating expenses of the branch. Deposition of Christopher George at 134:8-135:17,

15  attached as Exhibit A to Cohen Decl.; Bowman Decl., Exhibit B at Art. 1, Art. 4 (Facilities

16  Agreement). They also required him to indemnify them against business losses such as "loss or

17  costs, including reasonable attorneys' fees arising out of suits, actions, audits, foreclosures; or

18  legal proceedings of any nature, arising out of the activities or operations of the Branch Office."

19  Bowman Decl., Exhibit A  at ¶ 9(d)); Exhibit B at Art. 2); Cohen Decl., Exh. A (George Depo at

20  92:12-94:3). Defendants also required Mr. Bowman to pay "security deposits" and maintain

21  "Reserves" that Defendants claim can be applied to pay off branch expenses, or any other loss

22  they decide can be attributed to Mr. Bowman. Cohen Decl., Exhibit A (George Depo at 144:3-

23  146:22). As discussed below, all of these practices are unlawful; an employer may not make its

24  employees an insurer of the employer's business losses. *See, e.g., Hudgins v. Neiman Marcus*

25  *Group, Inc.* (1995) 34 Cal.App.4th 1109, 1118-1124.

26       Defendants terminated Mr. Bowman, effective January 31, 2007, when he refused to sign

27  an even more onerous set of agreements. Bowman Decl. at ¶ 9. Defendants then refused to pay

28

**PLAINTIFF'S MEMO OF Ps & As ISO MOTION FOR SUMMARY ADJUDICATION**

1   Mr. Bowman all wages he was owed on his last day of employment and refused to return his

2   Reserves and security deposits to him.  Bowman Decl. at ¶¶ 10-22.

3   **III.    Argument**

4   **A.  Defendants chose to be bound by the California Labor Code by inserting California choice-of-law provisions in all of the parties' contracts**

5

6   Plaintiff Bowman seeks summary adjudication on the issue of whether the California

7   Labor Code governs his employment.   Given that Defendants made the decision to insert a

8   California choice of law provision in their adhesive employment contracts, there can be no doubt

9   that the Labor Code applies.  It is settled law in California that this choice of law controls every

10  aspect of the employment relationship, including which state's statutory scheme applies to

11  regulate the rights and duties of employer and employee.

12  This presents a pure question of law that is proper for the Court to decide on summary

13  judgment. *Delbon Radiology v. Turlock Diagnostic Ctr.* 839 F.Supp. 1388, 1391 (ED CA 1993)

14  (when facts controlling the application of a rule of law are undisputed, the application raises a

15  question of law for the court, and summary judgment is appropriate).

16  **1.    The Agreement**

17  All four of the agreements between the parties contain an identical choice of law

18  provision:

19          This Agreement shall be governed by and construed under the laws of the State of
        California, without regard to choice of laws principles.

20

21  Bowman Declaration, Exhibits A and C at ¶ 21(c) and Exhibits B and D at ¶ 5.1.   It is

22  undisputed that this provision was drafted by Defendants, and Mr. Bowman had no more power

23  to alter this term than he did any other term of the agreement.  Bowman Decl. at ¶ 3.

24  **2.    California's choice of law rules determine the interpretation of this provision**

25  A federal court sitting in diversity applies the choice of law rules of the forum state for

26  the action.  *General Signal Corp. v. MCI Telecommunications Corp.*  66 F.3d 1500, 1505 -1506

27  (C.A.9 (Cal.),1995).  This Court therefore applies California's analysis of a choice of law

28  provision.  *Id.*

**3.    Under California law, a choice of law clause in an employment contract encompasses statutory employment claims**

The result here is controlled by the recent case of *Olinick v. BMG Entertainment* (2006) 138 Cal.App.4th 1286.  In *Olinick*, the Court of Appeal held that a choice of law provision *identical in language to the one here* in an employment contract applied not only to actions directly arising out of the contract but to all actions arising out of or related to the entire employment relationship, including statutory claims for age discrimination and state common law claims for tortious discharge.  The facts of that case are illuminating here.  Olinick was a music business executive who had lived and worked in California for decades.  He was, however, employed by a New York corporation pursuant to a contract with a New York choice of law provision.  When he was fired at the age of 59, Olinick brought suit in California (his home state) under the California Fair Employment and Housing Act (FEHA) and California common law.  Rejecting numerous arguments attacking the imposition of another state's statutory employment scheme to a California employee's rights in California, the Court of Appeal held that the choice of law provision required Olinick to bring his claims under New York's anti-discrimination statutes, rather than those of the state in which he lived and worked.

The *Olinick* court recognized that the FEHA claims and tortious wrongful discharge claims were not predicated on the employment agreement, but held that the parties' choice of law encompassed **all** claims arising out of or related to the employment relationship, contractual or otherwise.  *Id.* at 1299-1300.  Because the legal relations governing the employment relationship emanated from the agreement and the interpretation of the agreement would be an issue in the discrimination case (because it allowed for termination at-will), Olinick's age discrimination claims were inextricably intertwined with the construction and enforcement of the agreement. *Id.*

If the connection between contract and statute in *Olinick* was tangential but still enough to tie the statutory rights to the contract's choice of law, the connection in Mr. Bowman's case is exponentially more direct.  Mr. Bowman's Labor Code claims arise **directly** out of the provisions of his contract governing his compensation, expense reimbursement, and cash

reserves. *See, e.g.,* Second Amended Complaint, 6th Cause of Action (Labor Code claims for failure to pay all wages under the BMA and FA); 7th Cause of action (Labor Code "waiting time" penalties for failure to pay all wages due under the contracts on termination); 8th, 9th 11th, and 12th Causes of Action (fraud and breach of fiduciary duty as to the security deposits/Reserves required under the Facilities Agreement); (13th Cause of Action (failure to reimburse expenses under the Facilities Agreement).

Under California law, contractual choice of law provisions are not applied narrowly or in a piecemeal fashion. They determine the law governing not only actions arising directly out of the contract but that governing all claims arising out of *or related to* the parties' legal relationship, including "tortious breaches of duties emanating from the agreement or the legal relationships it creates." *Nedlloyd Lines B.V. v. Superior Ct.* (1992) 3 Cal.4th 459, 469, 470. *Nedlloyd Lines* is the seminal California case on the interpretation of choice of law provisions. There, the Supreme Court held that a contract provision requiring application of Hong Kong law encompassed claims for breach of fiduciary duty as well as claims under the contract. The plaintiff had contended that the breach of fiduciary duty claim was independent of the contract and thus outside the intended scope of the choice of law provision. *Id.* at 468. The Court rejected this narrow view:

> If Hong Kong law were not applied to these duties, it would effectively control only part of the agreement, not all of it. Such an interpretation would be inconsistent with the unrestricted character of the choice-of-law clause.

The Supreme Court went on to point out that any contrary interpretation would clash with both common sense and commercial reality. Its reasoning is worth citing at some length:

> When a rational businessperson enters into an agreement establishing a transaction or relationship and provides that disputes arising from the agreement shall be governed by the law of an identified jurisdiction, the logical conclusion is that he or she intended that law to apply to all disputes arising out of the transaction or relationship. We seriously doubt that any rational businessperson, attempting to provide by contract for an efficient and businesslike resolution of possible future disputes, would intend that the laws of multiple jurisdictions would apply to a single controversy having its origin in a single, contract-based relationship. Nor do we believe such a person would reasonably desire a protracted litigation battle concerning only the threshold question of what law was to be applied to which asserted claims or issues. Indeed, the manifest purpose of a

choice-of-law clause is precisely to avoid such a battle.

*Id.* at 469, 470.  As the court held in *Olinick*, "[w]e need not envelop choice-of-law clauses in this fog of uncertainty and ambiguity."  138 Cal.App.4[th] at 1299.

> To reiterate *Nedlloyd*, we seriously doubt the parties would intend "that the laws of multiple jurisdictions would apply to a single controversy having its origin in a single, contract-based relationship." We conclude the choice-of-law provision, calling for the application of New York law, encompasses Olinick's age discrimination claims.

*Id.* at 1300 (internal citation omitted).  The same concerns apply here, and the reasoning and holdings of *Nedlloyed Lines* and *Olinick* control the outcome.

**4.      Defendants are estopped from arguing that California statutory law does not govern the parties' rights because they have also asserted rights under California statutes**

Defendants are estopped from taking any contrary position because they have themselves invoked California law in the pleadings.  Defendants' recently-filed Counter-claim, for example, alleges a cause of action under California Civil Code § 3426 *et seq.*  Counter-Claim at 7:21-8:13, attached as Exhibit D to Request for Judicial Notice.  Having argued that they enjoy statutory rights under California law in their own case, they are estopped from taking a directly contrary position when it comes to Plaintiffs' claims.  *See, e.g., Pegram v. Herdrich*, 530 U.S. 211, 227, n. 8 (2000) (doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.")  Defendants' Answer to the First Amended Complaint also alleges affirmative defenses under California Code Civ. Proc. §§ 337, 338, 338.1, 339, 340, 343 (Fifth Affirmative Defense), and under the California constitution (Ninth and Tenth).   Defendants' allegations of substantive rights under California statutes is no different from Plaintiffs' and estops them from arguing that California statutory law does not govern claims arising out of or related to the contracts.

 Since Defendants themselves chose California law to govern their employment contracts, they can hardly plead unfairness or surprise now at the application of California law in an action arising out of those contracts.  Moreover, to the extent that any ambiguity exists as to the scope of the choice of law clauses, it must be construed strictly against Defendants.  *See RKO Radio*

*Pictures v. Sheridan*, 195 F.2d 167 (9th Cir. (Cal.)1952 ) (Where employer drafted employment contract, employer was responsible for any ambiguity created by its use of language, and such ambiguous language was construed strictly against employer).  Had Defendants intended some more limited application of their choice-of-law provision, they could have inserted limiting language into the contract.  Instead, they inserted the broadest possible language, requiring the contracts to be **governed by and construed under** California law.  As a matter of law, Mr. Bowman's employment was subject to the strictures of the California Labor Code.

**B.    Plaintiffs are entitled to summary adjudication on the issue of liability on the Third and Fourth Causes of Action for breach of the Facilities Agreements**

The Facilities Agreements between the parties are fairly simple, at least in comparison to the much lengthier BMA employment agreements.  The Facilities Agreements required Plaintiffs to lease and obtain facilities and equipment sufficient to run a CMG branch office and sub-lease them to Defendants.  Bowman Decl. at ¶ 4 and Exhibits B and D at ¶¶ 1.1-1.6.  In turn, Defendants were required to pay Plaintiffs a "Rental Fee" of  125% of the actual invoiced costs incurred by Plaintiffs in providing the Facilities.  *Id.*, Exhibits B and D at ¶ 4.1.  Plaintiffs are entitled to summary adjudication establishing that Defendants have breached the Facilities Agreements.  Rule 56(d)(2) specifically provides that summary judgment may be rendered on the issue of liability alone even if there is a genuine issue as to the amount of damages.

**1.    The elements of a contract claim**

To prevail on a claim for breach of a written agreement, Plaintiffs must prove each of the following elements: (1) the existence of the contract; (2) the plaintiff's performance or excuse for non-performance; (3) the defendants' breach; and (4) resulting damage to plaintiffs.  Here, the existence of the Facilities Agreement is undisputed.  Bowman Decl. at ¶ 4; Cohen Decl., Exhibit A (George depo, 137:15-22).

Defendants may argue that it is disputed whether Mr. Bowman is a party to the Facilities Agreement.  This is both incorrect and also irrelevant to summary adjudication on this cause of action.  It is undisputed that PREMCO is a party to the agreement, and since PREMCO is one of

1  the Plaintiffs suing under this cause of action, the existence of the agreement is undisputed as to

2  PREMCO.

3        As to Mr. Bowman, there still is no *genuine* dispute as to whether he is a party to the

4  Facilities Agreement.  He is named as a party in the Agreement's very first paragraph, which

5  defines the agreement as one "by and between  CMG Mortgage Services, Inc. . . . and Jim

6  Bowman and Pacific Real Estate Management (collectively "Provider) . . . ."  Bowman Decl.,

7  Exhibits B and D at 1.  Not only is "Provider" defined to include Mr. Bowman, he is named as

8  an individual party responsible under the agreement in paragraph 2.1 and 2.2.  The latter reads:

9        By signature below, Jim Bowman and Pacific Real Estate Mgt each authorize and
         instruct PGM, at its option and in its sole discretion, to use all, or any part of the
10       security deposit to satisfy any indebtedness now or hereafter owed by Jim
         Bowman and/or Pacific Real Estate Mgmt to the maximum extent permitted by
11       law

12  *Id.*  The agreement is signed by Mr. Bowman twice, once in his individual capacity as an

13  employee and once in his capacity as President of PREMCO.  *Id.* at 4.

14        By contrast, PREMCO's name is only handwritten into the agreement, while

15  Mr. Bowman's was typed and prepared beforehand.  Even where it was written in, the

16  company's name is consistently mislabeled.  *Id.*  It is clear that PREMCO is more of an

17  afterthought in this agreement than a party.

18        As to the second element, it is undisputed that Plaintiffs performed all obligations under

19  the Facilities Agreement. Cohen Decl., Exhibit A (George depo, 143:23-25; 145:22-146:2).

20    **2.    The undisputed facts show that Defendants breached the Facilities**
              **Agreement by failing to pay the full Rental Fee**
21

22        Plaintiffs incurred at least $987,325 in Facilities expenses during their relationship.

23  Bowman  Decl. at ¶ 26 and Exhibits H and I.  The total Rental Fee under the Facilities

24  Agreements for that time period therefore would be 125% of $987,325, or $1,234,157.  That

25  exceeds the full amount paid to Mr. Bowman and PREMCO combined during their entire

26  relationship, whether characterized as net income, wages, facilities reimbursements, or

27  otherwise.  *Id.* at ¶¶ 26-27 .  It cannot be disputed, then, that Defendants have breached the

28

                                      8                        CASE NO.: C-07-3140-SI

Facilities Agreements. Defendants concede that there was no excuse for their non-performance of any part of the Facilities Agreement.  Cohen Decl., Exhibit B at 16:20-24.  Plaintiffs are entitled to partial summary judgment establishing Defendants' liability for breach of the Facilities Agreement in the Third and Fourth Causes of Action.

The analysis is even simpler if only the last month of the parties' relationship is examined.  Bowman and PREMCO incurred and submitted expenses of $20,803 for that period.  Bowman Decl. at ¶ 11, Exhibit F.  The 125% Rental Fee equals $26,004.  *Id.*  Defendants have made **no** payments to either Bowman or PREMCO for that period.  *Id.*  Liability is established and summary adjudication must be granted.

### C.   Mr. Bowman is entitled to summary adjudication on the issue of liability on the Thirteenth Cause of Action for failure to reimburse expenses

The undisputed facts show that Mr. Bowman incurred substantial expenses in the course of his employment.  Defendants have an absolute, non-waivable obligation to reimburse Mr. Bowman for these expenses and indemnify him against loss.  It cannot be disputed that Defendants failed to reimburse Mr. Bowman, and so he must be granted summary adjudication on the Thirteenth Cause of Action.

Labor Code § 2802(a) provides:

(a) An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

As a matter of public policy, the Labor Code further provides that any agreement, express or implied, that purports to waive the benefits of § 2802 is **null and void**.  Labor Code § 2804.[1]  Thus, regardless of Defendants' contentions and the interpretation the Court ultimately puts on the parties' agreements, if Mr. Bowman incurred loss or expense in discharging his duties for

---

[1] Section 2804 provides:  "Any contract or agreement, express or implied, made by any employee to waive the benefits of this article or any part thereof, is null and void, and this article shall not deprive any employee or his personal representative of any right or remedy to which he is entitled under the laws of this State."

1    Defendants, he is entitled to reimbursement, interest, costs, and attorneys' fees.  Labor Code

2    § 2802(b), (c).

3        Defendants may argue that Mr. Bowman, an employee, did not incur unreimbursed

4    expenses; instead, the argument will be that only PREMCO, a corporation, incurred these

5    expenses, and PREMCO is not protected by the Labor Code.  However, Mr. Bowman paid some

6    of these expenses out of his own pocket, and in other cases was required to personally guarantee

7    CMG's vendor agreements.  Bowman Decl. at ¶ 23 and Exhibit G.  In any case, as discussed in

8    section B.1 above, the face of the agreement reveals that both Mr. Bowman and PREMCO were

9    obligated to pay Facilities Expenses.

10       Moreover, Defendants cannot avoid the limits of the Labor Code by the simple expedient

11   of ordering an employee to utilize a corporate entity to carry out the employer's orders.  **No**

12   **agreement can waive an employee's right to reimbursement.**  Labor Code § 2804.  Defendants

13   have testified that Mr. Bowman was required to sign the Facilities Agreement along with the

14   Branch Management Employment Agreement **as a condition of employment**.  Defendants

15   required Branch Managers to form a corporation in order to become a CMG branch.  Cohen

16   Decl. at Exhibit C (Mitchell Depo at 46:17-47:11; Cohen Decl., Exhibit A (George Depo at

17   151:6-13).[2]  Employees are entitled to the protection of the Labor Code whether they are

18   employed directly **or indirectly** through a corporation.  *See* § 2 of the IWC Wage Orders:

19   "'Employer' means any person . . . who directly or indirectly, or through an agent or any other

20   person, employs or exercises control over the wages, hours, or working conditions of any

21   person."  "The label placed by the parties on their relationship is not dispositive, and subterfuge

22   will not be countenanced."  *S.G. Borello & Sons, Inc. v. DIR* (1989) 48 Cal. 3d 341, 349.  The

23   courts will  look behind any such agreement in order to examine the facts that characterize the

24   parties' actual relationship.  *Id.*

25

26

27   _____
[2] Under § 2802, merely requiring employees to undertake the expense of establishing or maintaining a corporation is
illegal in and of itself.  *See, e.g.,* Labor Commissioner Opinion Letter 1997.03.21-2 (unlawful to require employee to
28   open bank account to receive direct deposit payments), attached as Exhibit C to the Request for Judicial Notice.

1    An unlawful arrangement, demanded by Defendants as a condition of employment, will

2  not vitiate the protections of the employment laws. It is undisputed that Mr. Bowman was an

3  employee. Cohen Decl., Exhibit C (George Depo at 25:8-26:19). As such, he is entitled to the

4  protections of the Labor Code regardless of any particular scheme the employer concocts to

5  insulate itself from the law. Section 2802 embodies the Legislature's determination that the

6  state's public policy is "to protect employees from suffering expenses in direct consequence of

7  doing their jobs." *Grissom v. Vons Companies, Inc.* (1991) 1 Cal.App.4th 52, 59-60. A remedial

8  statute written for the protection of employees cannot be avoided through agreement with the

9  employee. Code Civ. Proc. §§ 1668[3] and 3513.[4]

10    Mr. Bowman was the source of all funds funneled used to pay branch expenses.

11  Bowman Decl. at ¶ 25. During the time that Mr. Bowman worked for Defendants, PREMCO

12  had no business other than as a shell for Mr. Bowman's transactions with or on behalf of CMG.

13  *Id*. It had no employees other than Mr. Bowman. *Id.* It had no source of capital other than

14  Mr. Bowman. *Id.* Its sole function was as a conduit for CMG-related transactions. *Id.* The

15  Facilities Agreement was a scheme that was drafted, authorized, ratified, and demanded as a

16  condition of employment by Defendants. Its sole, ingenious, function was to avoid the

17  employment laws and, at the same time, HUD regulations, and put Mr. Bowman on the front

18  lines of liability for the employer's debts. It has no lawful purpose.

19    Moreover, the Facilities Agreement is an illegal contract because its use of a third party

20  to pay branch expenses was unlawful under HUD guidelines. Defendants cannot use it as a tool

21  to insulate themselves from liability for failing to reimburse Mr. Bowman. Under HUD's

22  guidelines, no one other than the HUD/FHA approved mortgagee (*i.e.,* CMG) is permitted to

23  enter into contracts on behalf of the branch or pay branch expenses out of a non-CMG account.

24  *See* HUD Mortgagee Letter 00-15 (attached as Exhibit A to Request for Judicial Notice.;

25

26  [3] Civil Code § 1668 provides: "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

27  [4] Civil Code § 3513 provides: "Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement."

28

Mortgagee Approval Handbook 4060.1 REV-2 at 2-11, 2-12 ("A branch compensation plan that includes the payment of operating expenses by the branch manager, any other employee or by a third party is a prohibited arrangement.") *Id.*, Exhibit B. To the extent that the Facilities Agreements' use of a third party corporation was devised to avoid HUD's regulation of net branch arrangements *and* the laws barring the imposition of business expenses, it is void, but Mr. Bowman is not precluded from enforcing his rights under the contract. *Maudlin v. Pacific Decision Sciences Corp.* (2006) 137 C.A.4th 1001, 1012.

It cannot be disputed that Mr. Bowman incurred expenses on behalf of Defendants. The facts are equally undisputed that Defendants did not reimburse Mr. Bowman for all of these expenses. Bowman Decl. at ¶¶ 11, 13. He is entitled to summary adjudication on the issue of liability on the Thirteenth Cause of Action.

### D. Mr. Bowman is entitled to summary adjudication on the issue of liability on the Seventh Cause of Action for Labor Code Waiting Time Penalties

Defendants willfully failed to pay Mr. Bowman all wages owed on his last day of employment. They are therefore liable for "waiting-time" penalties under Labor Code § 203.

Wages are not ordinary debts. A long line of cases recognizes a public policy singling out wages for special protection, based on the particular vulnerability employees face when deprived of their wages even for the briefest of times. As far back as 1918, the Court of Appeal held that "Delay of payment or loss of wages results in deprivation of the necessities of life, suffering inability to meet just obligations to others, and in many cases may make the wage-earner a charge upon the public." *Moore v. Indian Spring, etc., Mining Co.* (1918) 37 Cal.App. 370, 379-380.

> "[I]t is essential to public welfare that he receive his pay when due. . . . An employer who knows that wages are due, has ability to pay them, and still refuses to pay them, acts against good morals and fair dealing, and necessarily intentionally does an act which prejudices the rights of his employee. Such conduct amounts to a 'case of fraud' . . . .

*Kerr's Catering Service v. Department of Indus. Relations* (1962) 57 Cal.2d 319, 326 (citations omitted).

Section 203 was created to ensure the prompt payment of wages on termination. It provides in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

As a remedial statute, § 203 must be construed liberally in Mr. Bowman's favor. *Ramirez v. Yosemite Water Co.*, (1999) 20 Cal. 4th 785, 794. Although Defendants' bad faith refusal to pay Plaintiff's earned wages does indeed evidence a deliberate, evil purpose to defraud him of his wages, the Court need not find that this is the case in order to award § 203 penalties. All the Court must find is that Defendants knew that they were withholding the amounts discussed, intended to withhold those amounts and were free agents. *Davis v. Morris* 37 Cal.App.2d at 274. These are the elements of a § 203 claim, and there is no question that they are met here.

"The term 'willful,' as it is used in section 203 of the Labor Code, does not mean that the refusal to pay wages must necessarily be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due, in order to subject him to the penalty." *Davis v. Morris* (1940) 37 Cal.App.2d 269, 274. Rather, "the term 'willful' in its ordinary use, merely means that one intentionally fails or refuses to perform an act which is required to be done." *Id.*

At the time Mr. Bowman's employment terminated on January 31, 2007, he was owed one or more of the following components of wages under the BMA and FA:[5]

1. <u>Branch net income</u> for January 2007 in the amount of $31,047. This is the amount that was payable to Mr. Bowman as net income under the BMA, and is apparent from the branch Statement of Operation. Bowman Decl. at ¶ 10, Exh E;

---

[5] Mr. Bowman's suit seeks additional wages beyond these, but these may not be susceptible to summary adjudication because of factual dispute.

2.    <u>Marketing Credits</u> in the amount of $12,306.  These were income to the branch and therefore wages belonging to Mr. Bowman.  Cohen Decl., Exh. C (Mitchell Depo at 176:5-21), Exhibit E (January 30, 2007 email from Kern Lewis).

3.    <u>Reserves</u>.  At the time of Mr. Bowman's termination, Defendants were holding $39,682 in Mr. Bowman's Reserves, most of which had been withheld from branch income and therefore constituted wages.  Bowman Decl. at ¶ 12.

Defendants' have testified that they were aware that Mr. Bowman was due unpaid wages after his termination.  For example, Defendants' CFO, Paul Chevez, testified that he had informed Mr. George that Mr. Bowman was owed marketing credits, Reserves, and net income wages after termination.  Cohen Decl., Exhibit D (Chevez depo at 202:20-203:25.).  Patricia Mitchell had even cut a check to Mr. Bowman for the Marketing Credits but withheld it on Mr. Chevez's orders.  Cohen Decl., Exhibit C (Mitchell depo 181:7-182:4).  Mr. Bowman had repeatedly requested payment of his unpaid wages.  Bowman Decl. at ¶¶ 16-19.

Patricia Mitchell testified that she would ordinarily have distributed wages to Mr. Bowman but that she was instructed not to do so by CMG management.  Cohen Decl., Exh. C (Mitchell Depo at 101:24-104:13).  Even though Ms. Mitchell was produced as CMG's "person most knowledgeable" about "the accounting, calculation, and payment of Bowman's compensation" to Mr. Bowman, she did not know why CMG's management had instructed her not to issue checks to Mr. Bowman. Cohen Decl., Exh C (Mitchell Depo at 15:5-9; 102:5-10).  Because Defendants knew that they were withholding these wages and intended to withhold those amounts, their failure to pay Mr. Bowman on termination was "willful" and they are liable for penalties under § 203.  *Davis v. Morris, supra,* 37 Cal.App.2d at 274.

**E.    Plaintiffs are entitled to summary adjudication on the issue of liability on the Eleventh Cause of Action for Breach of Fiduciary Duties**

This Cause of Action stems from Defendants' practice of demanding money from their Branch Manager Employees in the forms variously referred to as a "security deposit" or "Reserves" and then using that money as operating capital, unbeknownst to Mr. Bowman.  This is a violation of California's Cash Bond Law, Labor Code § 400 *et seq.*, which bars employers

from demanding, exacting, or accepting any money from employees except in limited circumstances not present here. Labor Code § 402.[6]  There is no question that the Cash Bond Law applies because *any* property put up by an employee, or applicant as a part of an employment contract, directly or indirectly, is deemed to be put up as a bond and subject to the Cash Bond Law. Labor Code § 406. It is also a breach of common law.

Labor Code § 405 establishes a trust relationship: it states that the employer must hold any money it receives from an employee in trust, may not mingle the employee's money with the employer's, and may not use it for any purpose other than liquidating accounts in the narrow circumstances where the bond is lawful under § 402.  Any employer or agent or officer thereof who makes any forbidden use of employee funds not only breaches his or her obligations as a trustee, but is guilty of theft and faces criminal punishment under the Penal Code. Section 405.

### 1.     The elements of a cause of action for breach of fiduciary duty

The elements of a claim for breach of fiduciary duty under California law are 1) a fiduciary relationship, 2) its breach, and 3) damage proximately caused by the breach. *Neilson v. Union Bank of California, N.A.*, 290 F.Supp.2d 1101, 1137 (C.D.Cal. 2003).

### 2.     A fiduciary relationship existed between Defendants and Mr. Bowman

The Cash Bond Law expressly creates a fiduciary duty in Defendants by obligating them to hold Mr. Bowman's funds "in trust" and strictly limiting the conditions and uses to which the entrusted funds may be put. Section 405 provides in its entirety:

> Any property put up by any employee or applicant as a bond shall not be used for any purpose other than liquidating accounts between the employer and employee or for return to the employee or applicant and **shall be held in trust for this purpose and not mingled with the property of the employer**. No contract between the employer and employee or applicant shall abrogate the provisions of this section. Any employer or prospective employer, or agent or officer thereof, who misappropriates any such property, mingles it with his own, or uses it for any other purpose than that herein set forth **is guilty of theft** and shall be punished in accordance with the provisions of the Penal Code relating to theft. (emphasis added).

---

[6] Section 402(a) allows the employer to demand a bond where the employee is entrusted with property of an equivalent value.  The employer may also demand a bond where the employer advances regularly to the employee goods, wares or merchandise to be sold by the employee. Labor Code § 402(b).

The Cash Bond Law thus imposed a fiduciary obligation on Defendants to act with the utmost loyalty and good faith regarding Plaintiffs' property.  It is irrelevant that the parties never discussed the trust relationship; no magic language is needed to establish a fiduciary obligation where the law and/or the circumstances of the transaction imply one.  *See Kinert v. Wright* (1947) 81 Cal.App.2d 919, 925 ("It is of no consequence whether the word 'trustee' or 'agent' was spoken by the parties in their oral agreement or written in respondent's acknowledgment of the receipt of the money. The fiduciary relationship between the parties was brought into existence by their acts even though not expressed in apt words.").

A fiduciary obligation exists where the nature of the transaction imposes that undertaking as a matter of law.  *Committee On Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 221.  Section 405 expressly imposes that undertaking on Defendants.  Even if it had not, however, "[t]he key factor in the existence of a fiduciary relationship lies in control by a person over the property of another." *Vai v. Bank of America* (1961) 56 Cal.2d 329, 338.  Thus, whether analyzed in terms of an express trust or constructive trust, a fiduciary relationship was created.[7]

Defendants gained control over Mr. Bowman's property through the practice of exacting "security deposits" and "Reserves" from him.  They required Mr. Bowman to pay them a so-called "security deposit" at the beginning of their relationship, notwithstanding the fact that under the Facilities Agreement Mr. Bowman was the landlord and CMG the tenant.  The money was paid through PREMCO, but it cannot be disputed that the source of the funds was Mr. Bowman.  See discussion at section B.1 above.  Entering into the Facilities Agreement alongside a corporate entity such as PREMCO was a condition of Mr. Bowman's employment, and so paying the security deposits likewise was a condition of Mr. Bowman's employment. Bowman Decl at ¶ 4.  Defendants still have control over this property. *Id.* at ¶ 22.

---

[7] See Civil Code § 2223 ("One who wrongfully detains a thing is an involuntary trustee thereof, for the benefit of the owner;" Civil Code § 2224 (one who gains a thing by fraud, accident, mistake, undue influence, violation of a trust, or other wrongful act is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it).

In addition to the security deposits, Defendants also withheld "Reserves" from Branch net income that would otherwise have been distributed to Mr. Bowman as wages.  Cohen Decl, Exhibit C (Mitchell Depo at 90:21-91:6).  Defendants' documents make the connection explicit: For example, the January 2005 Branch Distribution Report has a notation stating "Jim will have $3,019.56 of his branch profit go to reserves.  The remaining $102.75 will be sent to him as a branch manager check."  Cohen Decl, Exhibit C (Mitchell depo at 60:7-23; 90:21-91:1) and Exhibit F (CMG001888); Bowman Decl. at ¶ 12.  All told, at the termination of Mr. Bowman's employment, Defendants were in possession of $39,682.24 that had either been paid by Mr. Bowman or (the bulk of it) withheld from distribution as wages.  Bowman Decl. at ¶ 12.[8] They have not returned this money.

**3.    Defendants breached their fiduciary duty to Mr. Bowman**

Labor Code §403 required Defendants to put Mr. Bowman's Reserves in a bank authorized to do business in this State, and required Mr. Bowman's written permission for any withdrawals.  Section 404 requires that any money Defendants took from Mr. Bowman be returned with interest.  Section 405 bars Defendants from mingling these funds with the property of the employer.  It is undisputed that Defendants breached each one of these obligations.

Defendants may at times have put Mr. Bowman's reserves into a bank authorized to do business in California, but Defendants' CFO, Paul Chevez, testified that they moved this money around freely to accounts in other states.  Mr. Chevez testified that reserves were held in several accounts, particularly in  an "Excess Cash Account" in CMG's GMAC Warehouse Bank in Pennsylvania.  Cohen Decl., Exhibit D (Chevez Depo at 116:6-118:1).  They did not segregate these reserves from their own funds. *Id.*  These are violations of § 403 (California bank) and § 405 (commingling).  The Reserves are not kept in interest-bearing accounts, a violation of § 404. *Id.* (Chevez Depo at 145:12-15).

This was not simply a failure to segregate funds:  What Defendants had hit upon was a scheme to fund their operations through the use of the Branch Managers' money.  Mr. Chevez

---

[8] CMG uses the terms "security deposit" and "Reserves" interchangeably and treats them in an identical fashion. Mitchell Depo at 99:7-23.  For simplicity's sake, this brief may refer to both under the rubric "Reserves."

1    testified that the accounts containing the Reserves were used for "operation of business and

2    things" "payments of commissions to the branches and it's used for, yeah, all operations I

3    guess." *Id.* (Chevez depo at 148:20-149:22.  In other words, Mr. Bowman's funds were being

4    used to pay the everyday operating costs of the business including, conceivably, his own

5    commissions!  It is undisputed that Defendants commingled Mr. Bowmans' funds with their

6    own, that they had no way of determining where their Mr. Bowman's Reserves ended and their

7    operating funds began, and that they applied the operating funds, including the unsegregated

8    Branch Manager Reserves, to the operations of their business.  *Id.* (Chevez depo at 150:3-151:6.

9        Not only was Mr. Bowman paying for operating costs, his funds were actually being used

10   to leverage Defendants' loans.  Mr. Chevez testified that Defendants' practices were to funnel all

11   available capital, including the Reserves, into so-called warehouse bank accounts.  *Id.*  (Chevez

12   depo at 145:16-146:8; 150:13-153:5.  By keeping the Branch Managers' funds in these

13   warehouse accounts, Defendants would not have to use their own operating funds to fund loans.

14   *Id.* (Chevez Depo at 151:1-10).[9]

15       Defendants' use of the entrusted funds violates every duty of a fiduciary.  A trustee has a

16   duty to administer the trust solely in the interest of the beneficiaries.  Prob. Code § 16002(a).

17   Instead, the undisputed evidence shows that Defendants not only commingled the Reserves with

18   their own funds but used the funds to pay operating costs and finance loans.  The trustee has a

19   duty not to use or deal with trust property for the trustee's own profit or for any other purpose

20   unconnected with the trust, nor to take part in any transaction in which the trustee has an interest

21   adverse to the beneficiary. Prob. Code § 16004(a).  It cannot be disputed that Defendants used

22   the Reserves for their own profit and for purposes unconnected with the trust. Moreover,

23           A transaction between the trustee and a beneficiary which occurs during the
             existence of the trust or while the trustee's influence with the beneficiary remains
24           and by which the trustee obtains an advantage from the beneficiary **is presumed**

25   _____

26   [9] Although the final analysis on these matters awaits further discovery and thus cannot be evidence in this motion, it
     helps to understand how great an advantage Defendants were obtaining from each branch manager's Reserves.
27   CMG financed loans almost entirely with a line of credit, with CMG required to put up only around three percent of
     the loan costs in cash.  Cohen Decl., Exh D (Chevez depo at 152:13-153:5).  Thus, the availability of Mr. Bowman's
28   $39,682.24 alone could allow Defendants to borrow sufficient money to finance $1,322,741.33 in loans on any
     given day, multiple times per month.  Bowman Decl. at ¶ 24.

**PLAINTIFF'S MEMO OF Ps & As ISO MOTION FOR SUMMARY ADJUDICATION**

**to be a violation of the trustee's fiduciary duties**. This presumption is a presumption affecting the burden of proof.

Prob. Code § 16004(c). Defendants' self-dealing falls within this presumption: "When a fiduciary enters into a transaction with a beneficiary whereby the fiduciary's position is improved, or he obtains a favorable opportunity, or where he otherwise gains, benefits, or profits, it may fairly be said that an advantage has been obtained." *Bradner v. Vasquez* (1954) 43 Cal.2d 147, 152.

The trustee has a duty to take reasonable steps to preserve the trust property. Prob. Code § 16006. Moreover, the trustee has a duty to make the trust property productive under the circumstances. Prob. Code § 16007. Defendants have breached these duties as well. Rather than taking any steps to preserve the trust property, they have commingled it with the operating funds of one of the world's most troubled financial sectors. And they did nothing to make the Reserves productive for Mr. Bowman; they did not even keep the funds in an interest-bearing account. *Id.* (Chevez Depo at 145:12-15). Their every transaction with the Reserves – from the moment they demanded them of their employees to their present refusal to relinquish them – has been a breach of their fiduciary duties to Plaintiffs.

**4.     Mr. Bowman has been damaged by Defendants' Breach of Fiduciary Duty**

The precise amount of damages Plaintiffs have sustained cannot be ascertained at this time, and so Plaintiffs seek summary adjudication only on the issue of liability. There is no doubt Plaintiffs have been damaged, however, given that Defendants still have not returned the Reserves. This is sufficient to compel a judgment of liability.

At trial, Plaintiffs will be entitled to establish the full panoply of remedies available to a wronged beneficiary, including general, special, and punitive damages; any loss or depreciation in value of the entrusted funds; an amount equal to that which would have been earned but for Defendants' failure to make the trust property productive; any profit that would have accrued to Plaintiffs but for Defendants' breach; interest; and any and all profits obtained by Defendants through the use of the entrusted funds.

1

## IV.    Conclusion

2      Defendants took advantage of Mr. Bowman throughout his employment.  They created a

3  contractual framework to evade the limitations that HUD places on mortgage "net branching"

4  arrangements and that the Labor Code places on employers' ability to shed their costs and the

5  risk of loss onto their employees.  Defendants took Mr. Bowman's money, likely made huge

6  profits on that money, and then refused to return even his principal to him.  Defendants did not

7  even deliver on what was promised in their contracts.

8      Mr. Bowman suffered very substantial losses, the measure of which will have to be taken

9  at trial.  However, the legal duties behind this relationship can be parsed and have been

10  established in the record of this motion.  Obtaining a decision on these issues now will benefit

11  the parties and the Court in narrowing the remaining issues for trial and will save substantial

12  judicial resources in the future.  Because the issues discussed in this motion can be decided as a

13  matter of law based on the record submitted, Plaintiffs respectfully request that the Court grant

14  summary adjudication against Defendants.

15

16                                   Respectfully submitted,

17                                   LAW OFFICES OF ALAN F. COHEN

18

19  Dated: June 23, 2008                 By   /s/ Alan Cohen
                                              Alan F. Cohen
20                                            Attorneys for Plaintiffs

21

22

23

24

25

26

27

28

**PLAINTIFF'S MEMO OF Ps & As ISO MOTION FOR SUMMARY ADJUDICATION**