# Exhibit B

David R. Medlin        (SBN 77417)
G. Bradley Hargrave    (SBN 173911)
Joshua A. Rosenthal    (SBN 190284)
MEDLIN & HARGRAVE
A Professional Corporation
One Kaiser Plaza, Suite 1305
Oakland, CA 94612
Telephone:  (510) 832-2900
Facsimile:  (510) 832-2945

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| James W. Bowman, Jr. and Pacific Real Estate Management Company, Inc., a Washington Corporation, <br><br> Plaintiffs, <br> vs. <br><br> CMG Mortgage Inc., a California Corporation; CMG Mortgage, Inc., d/b/a Pacific Guarantee Mortgage, CMG Mortgage Services, Inc., a California Corporation, CMG Mortgage Services, Inc. d/b/a Pacific Guarantee Mortgage, <br><br> Defendants. | Case No.: C 07 3140 SI <br><br> DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE |

PROPOUNDING PARTY:    PLAINTIFF JAMES BOWMAN

RESPONDING PARTY:     DEFENDANT CMG MORTGAGE, INC.

SET NO.:              ONE

Responding Party has not fully completed an investigation of the facts relevant to this case, has not completed discovery, and has not completed preparation for trial. Accordingly, all of the responses contained herein are based only upon such information and documents as are presently available to and specifically known to the Responding Party and disclose only those contentions which presently occur to Responding Party.

It is anticipated that further discovery, independent investigation, legal research and analysis will supply additional facts and add meaning to known facts, as well as establishing entirely new factual

///

1

1  conclusions and legal contentions, all of which may lead to substantial additions to, changes in, and/or
2  variations from the contentions herein set forth.
3       Except for explicit facts admitted herein, no incidental or implied admissions are intended
4  hereby. The fact that Responding Party has responded to any interrogatory should not be taken as an
5  admission that Responding Party accepts or admits the existence of any facts set forth or assumed by
6  such response, or that such response constitutes admissible evidence. The fact that Responding Party
7  has responded to part or all of any interrogatory is not intended, and shall not be construed, to be a
8  waiver by Responding Party of all or any part of any objection to any response made by Responding
9  Party.
10      The following responses are given without prejudice to the Responding Party's right to produce
11 evidence of any subsequently discovered fact or facts which Responding Party may later recall or
12 discover. Responding Party accordingly reserves the right to change any and all responses herein as
13 additional facts are ascertained, analyses are made, legal research is completed, and contentions are
14 made. The responses contained herein are made in a good faith effort to supply as much factual
15 information and as much specification of legal contentions as are presently known, but should in no
16 way be utilized to the prejudice of this Responding Party in relation to further discovery, research or
17 analysis.
18      Responding Party objects to all of the interrogatories to the extent they, or any of them, call for
19 any matter which is protected from discovery as either attorney work product and/or an attorney client
20 communication. Responding Party will not divulge either attorney work product or attorney client
21 communications.
22      Without prejudice to the above and subject thereto Responding Party responds as follows:
23 **SPECIAL INTERROGATORY NO. 1**
24      DESCRIBE IN DOLLARS the total amount of service yield premiums YOU obtained
25 derived from or arising out of loans originated in the BRANCHES. For purpose of these
26 interrogatories, "YOU" refers to defendants CMG Mortgage, Inc. and CMG Mortgage Services,
27 Inc., and includes all persons acting on their behalf; "DESCRIBE IN DOLLARS" means to state
28 the total amount, describe how the amount was calculated, and identify the documents or other

1  sources of information on which the calculation is based; "BRANCH" or "BRANCHES" refer to
2  YOUR Vancouver and Federal Way branches managed by Bowman until January 31, 2007.

**RESPONSE TO SPECIAL INTERROGATORY NO. 1**

Objection on the ground that the interrogatory is vague and ambiguous with respect to "Service Yield Premiums." Objection on the ground that the information sought by the interrogatory is irrelevant and is not likely to lead to the discovery of admissible evidence. Objection on the ground that the interrogatory seeks information that is so burdensome to compile compared to its utility that it constitutes harassment of this Responding Party. Responding party does not compile information related to service release premiums in a manner that would allow it to easily determine the service release premiums generated from the sale of loans originated by individual branches. Since service release prem

**SPECIAL INTERROGATORY NO. 1A**

DESCRIBE IN DOLLARS the total amount of service release premiums YOU obtained derived from or arising out of loans originated in the BRANCHES. (As a courtesy to Plaintiffs, Responding Party agreed to provide a response to the interrogatory that was propounded incorrectly. Plaintiffs claimed they meant "Service Release Premium" not "Service Yield Premium.")

**RESPONSE TO SPECIAL INTERROGATORY NO. 1A**

Objection on the ground that the interrogatory is vague and ambiguous with respect to "Service Release Premiums." Objection on the ground that the information sought by the interrogatory is irrelevant and is not likely to lead to the discovery of admissible evidence. Objection on the ground that the interrogatory seeks information that is so burdensome to compile compared to its utility that it constitutes harassment of this Responding Party. Responding party does not compile information related to service release premiums in a manner that would allow it to easily determine the service release premiums generated from the sale of loans originated by individual branches. Since service release premiums have nothing to do with any income that Plaintiffs could lay claim to, the extraordinary effort required to compile the information is far outweighed by the utility of the information.

///

**SPECIAL INTERROGATORY NO. 2**

DESCRIBE IN DOLLARS the total amount of administrative fees and or underwriting fees YOU received derived from or arising out of loans originated in the BRANCHES.

**RESPONSE TO SPECIAL INTERROGATORY NO. 2**

Objection on the ground that the information sought by the interrogatory is irrelevant and is not likely to lead to the discovery of admissible evidence. Objection on the ground that the interrogatory seeks information that is so burdensome to compile compared to its utility that it constitutes harassment of this Responding Party.

**SPECIAL INTERROGATORY NO. 3**

State all reasons YOU required Bowman to pay money into "reserves."

**RESPONSE TO SPECIAL INTERROGATORY NO. 3**

Objection on the ground that the interrogatory assumes facts not established in this litigation. Responding Party did not require Bowman to pay money into "reserves."

**SPECIAL INTERROGATORY NO. 4**

State all reasons YOU failed to regularly reimburse Plaintiffs for all expenses incurred in operating the Federal Way and Vancouver branches.

**RESPONSE TO SPECIAL INTERROGATORY NO. 4**

Objection on the ground that the interrogatory assumes facts not established in this litigation. Responding Party paid all regularly and properly submitted and requested expenses of the Federal Way and Vancouver branches as long as there was sufficient income to cover the submitted expenses.

**SPECIAL INTERROGATORY NO. 5**

STATE ALL FACTS supporting YOUR refusal to refund Plaintiffs' security deposits. For purposes of these interrogatories, "STATE ALL FACTS" means to describe facts with particularity rather than generality. For example, with regard to an action or event, this means that you should identify the individual(s) involved by name (who), the details of the event (what); the date on which the event occurred (when), the place it occurred (where) and, if germane, the reason it explains YOUR answer (why).

///

4

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE

**RESPONSE TO SPECIAL INTERROGATORY NO. 5**

Objection on the ground that the interrogatory is vague and ambiguous with respect to "refusal to refund Plaintiffs' security deposits" and assumes facts not established in this litigation. Responding Party did not refuse to refund Plaintiffs' security deposits. Without prejudice to such objection, and subject thereto, Responding Party responds as follows: Responding Party did not refuse to refund Plaintiffs' security deposit. Responding Party never collected security deposits/reserves from Bowman, so there was nothing to reimburse to Bowman.

The purpose of the security deposit is to pay for any expenses as a result of the branches' activities that are not covered by the gross profits of the branch. The security deposit/reserves were paid by Pacific Real Estate Management Company (PREMCO) to Responding Party. No security deposits/reserves were returned to PREMCO at the time of termination or thereafter because there are outstanding expenses attributable to the branches that exceed the amount of the security deposit/reserves.

**SPECIAL INTERROGATORY NO. 6**

State each and every item or category of EXPENSE which YOU contend was or should have been offset from BRANCH revenues to calculate Net Profits due to Bowman under the Branch Management Agreements. For purposes of these interrogatories, "EXPENSE" has the same meaning as used in paragraph 9 of the Branch Management Agreements. You do not need to identify each instance of a recurring item - for example, if there were 20 invoices submitted for copier costs, you need only identify "copier costs" as an EXPENSE. "Bowman" refers to Plaintiff James Bowman.

**RESPONSE TO SPECIAL INTERROGATORY NO. 6**

Objection, the interrogatory requires the preparation of a list or compilation. Additionally, Plaintiffs are asking Responding Party to go through documents that Plaintiffs submitted to Responding Party and repeat entries on the printed page. Such a request is a harassing abuse of the discovery process. Without prejudice to such objection, and subject thereto, Responding Party responds as follows: The information responsive to this interrogatory is included in documents already produced in this litigation, including but not limited to CMG Bates Stamp Number 1735-1775 and 1939-1980.

Additionally, the categories of expenses are listed in Paragraph 9 of the Branch Management & Employment Agreements.

**SPECIAL INTERROGATORY NO. 7**

If YOU contend that Bowman is not owed money from commission overpayments YOU made to BRANCH employees, STATE ALL FACTS that support YOUR contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 7**

Objection on the ground that the interrogatory is vague, ambiguous and unintelligible. Responding Party cannot state facts to prove a negative. Without prejudice to such objection, and subject thereto, Responding Party responds as follows: Plaintiffs were provided with accountings of the monthly distributions and expenses each month for approval and comment prior to being finalized. If there were any errors or overpayments in the proposed monthly accountings, Plaintiffs knew to specify any mistakes prior to the accountings being finalized and all employees received their wages. Additionally, Plaintiffs were the only ones that could know if there were any errors in the accounting. Responding Party is not aware of any over payment in wages that either Plaintiff raised prior to any accounting being final. Thus, Responding Party assumed that all payments of wages and/or commissions were accurate since they were approved by Plaintiffs. Moreover, and in any event, the net sum is not sufficient to offset the total losses suffered by the Vancouver and Federal Way branches, which of course is the reason there were no net profits/profit sharing available for Bowman.

**SPECIAL INTERROGATORY NO. 8**

If YOU contend that Bowman is not owed money from contributions to YOUR 401k plan that never vested in any BRANCH employees, STATE ALL FACTS that support your contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 8**

Objection on the ground that the interrogatory is vague, ambiguous and unintelligible. Responding Party cannot state facts to prove a negative. Without prejudice to such objection, and subject thereto, Responding Party responds as follows: Neither Responding Party nor any one of Responding Party's attorneys is an ERISA expert. However, through long experience, Responding Party and its counsel, do know the following.

Employer contributions to a 401K are subject to numerous rules and regulations, including vesting requirements. Full vesting varies between plans, but typically takes several years. If an employee terminates his/her employment before he/she is fully vested, employer contributions as to which the employee is not vested may not be removed by the employee, or anyone else. Forfeited sums must remain in the employer's 401K trust account. These "forfeited" sums may not be removed by anyone and, instead must be applied toward the employer's contributions to its employees the following year. Of course, in this instance the Vancouver and Federal Way branches directly benefitted from such forfeitures.

As indicated, forfeited sums remain in the employer's 401K trust account and are applied, during the next full calendar year, towards the employer's contribution that year. So, for example, if an employee of Plaintiffs' branches forfeited any portion of his/her employer contributions in any one year, the forfeited sum was available, the following year, to apply towards the employer's contribution due that year to all employees then in its employ. Accordingly, in each year that Plaintiffs were associated with Responding Party, the total of Plaintiffs' contribution otherwise due by reason of employees of the Vancouver and Federal Way branches was reduced, by all forfeitures from the previous year - including not only the forfeitures from the Vancouver and Federal Way branches, but also by reason of forfeitures from all other Responding Party branches as well. Indeed, in Plaintiffs' first year of association with Responding Party, Plaintiffs realized a reduction in the contribution which would have otherwise been owing by Plaintiffs, on behalf of the employees of the Vancouver and Federal Way branches, because of forfeitures from employees of other Responding Party branches from the prior year, i.e., the year immediately preceding the year that Plaintiffs joined Responding Party. By reason of ERISA rules and regulations, this "benefit" rolls forward each year from the previous year. Therefore, in each year of Plaintiffs' association with Responding Party, Plaintiffs' share of the employer contribution otherwise due on behalf of the employees of Plaintiffs' branches was reduced, not only by reason of any forfeitures from the former employees of the Vancouver and Federal Way branches, but also by reason of forfeitures throughout Responding Party and all of its branches. Accordingly, since Plaintiffs realized this benefit in the first year of Plaintiffs' association with Responding Party, and since in each year Plaintiffs benefitted from forfeitures throughout Responding Party (not only from any forfeitures at

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE

the Vancouver and Federal Way ), it is certainly the case that the cumulative dollar benefit realized by Plaintiffs far exceed the total dollar value of all forfeitures by all employees of the Vancouver and Federal Way branches throughout Plaintiffs' association with Responding Party. Moreover, and in any event, the net sum is not sufficient to offset the total losses suffered by the Vancouver and Federal Way branches, which of course is the reason there were no net profits/profit sharing available for Bowman.

The analysis is further complicated by ERISA rules as to when a "forfeiture" takes place. A forfeiture does not occur simply because an employee terminates employment or even ceases to participate in the plan. It is not until the employee elects to remove his/her vested funds from the plan that the portion which is not vested is made available, the following year, for distribution to the remaining employees. Accordingly, it is almost certainly the case that Plaintiffs benefitted from forfeitures of CMG employees, whose employment terminated years before Plaintiffs' first association with CMG. Further, if any terminated employees of Vancouver and Federal Way branches have not yet withdrawn their funds from the plan, even those sums have not yet "forfeited." As to any such employee, the date and the amount of the forfeiture's value is speculative and undeterminable at any point prior to the time when every one of the former employees of the Vancouver and Federal Way branches who participated in the plan actually have removed his/her vested funds from the plan. However, once again, and in any event, the net sum could not conceivably be enough to offset all of Plaintiffs' losses.

**SPECIAL INTERROGATORY NO. 9**

If YOU contend that Bowman is not owed money from overpayments of benefits to BRANCH employees, STATE ALL FACTS that support YOUR contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 9**

Objection on the ground that the interrogatory is vague, ambiguous and unintelligible. Responding Party cannot state facts to prove a negative. Without prejudice to such objection, and subject thereto, Responding Party responds as follows: Responding Party paid benefits to employees based upon Plaintiffs' representations that the employees continued to work for the branches. If certain employees left Responding Party's employment and were not so informed by Plaintiffs, Responding Party would continue to pay benefits until so informed by Plaintiffs. As a courtesy to Plaintiffs,

Responding Party asked the employees to repay the amount of benefits they received after they left. However, said benefit payments are expenses of the branches and were properly charged against profits. Moreover, and in any event, the net sum is not sufficient to offset the total losses suffered by the Vancouver and Federal Way branches, which of course is the reason there were no net profits/profit sharing available for Bowman.

**SPECIAL INTERROGATORY NO. 10**

If YOU contend that Bowman is not owed money from earned marketing credits, STATE ALL FACTS that support YOUR contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 10**

Objection on the ground that the interrogatory is vague, ambiguous and unintelligible. Responding Party cannot state facts to prove a negative. Objection on the ground that the interrogatory is vague and ambiguous with respect to "Bowman is not owed money from earned marketing credits" and assumes facts not established in this litigation. Without prejudice to such objection, and subject thereto, Responding Party responds as follows: Bowman does not receive the earned marketing credits. Additionally, they are negative expenses that are deducted from ordinary expenses under the Facilities Agreements. Since the earned marketing credits program is paid as an offset of expenses of the branches and because of the outstanding expenses attributable to the branches, the expenses of the branches exceed any marketing credits. Thus, the marketing credits were not earned.

**SPECIAL INTERROGATORY NO. 11**

If YOU contend that YOU paid Bowman all wages he was owed at the time of termination, STATE ALL FACTS that support YOUR contention. "Wages" as used in this interrogatory means all amounts for labor performed, whether under the Branch Management Agreements or otherwise, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation.

**RESPONSE TO SPECIAL INTERROGATORY NO. 11**

Bowman was paid all of his wages at the time of termination and was even paid wages as a loan officer after his termination for his individual loan activity. As a result of the outstanding expenses of the branches as a result of the repurchase obligations on the Wilkins and Frazier loans, the expenses of

the branch exceeded the profits of the branch. Thus, there were no net profits/profit sharing to pay Bowman under the profit sharing agreement.

**SPECIAL INTERROGATORY NO. 12**

If YOU contend that Bowman owes YOU money, STATE ALL FACTS that support YOUR contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 12**

Plaintiffs closed loans with Sierra Pacific Mortgage that were started with CMG prior to his termination. These loans were ones that Bowman was contractually obligated to close with CMG. Transfer of these loans to Sierra Pacific constitutes a breach of Bowman's contracts with CMG, constitutes theft and constitutes a violation of the Uniform Trade Secrets Act. Since Plaintiffs have refused to provide the documents related to the loans, as requested by Responding Party, Responding Party is unable at this time to calculate its damages as a result of Bowman's wrongful activity and conduct. Discovery is on going and at such time as the information is ascertained, Responding Party will amend this response.

**SPECIAL INTERROGATORY NO. 13**

If YOU contend that Bowman owes YOU money, IDENTIFY all documents that support YOUR contention. For purposes of these interrogatories, the word "IDENTIFY" when used in reference to documents means to identify each such document by type, author, date, and title. Each document must be separately identified; it is not enough to refer to a category of documents.

**RESPONSE TO SPECIAL INTERROGATORY NO. 13**

Since Plaintiffs have refused to provide the documents related to the loans started before January 31, 2007 and closed thereafter, as requested by Responding Party, Responding Party is unable at this time to specifically identify documents. However, Responding Party did receive three closing statements and checks, in response to subpoenas, for borrowers Theresa Johnson, Daniel Van House, and Greg Barcus. Additionally, Responding Party did receive a document from Sierra Pacific Mortgage, pursuant to subpoena, that indicated in excess of 15 other loans that were most likely started prior to January 31, 2007.

///

**SPECIAL INTERROGATORY NO. 14**

If YOU contend that YOU continued to offer mortgage loan services after January 31, 2007 in the territories formerly serviced by the BRANCHES, STATE ALL FACTS supporting YOUR contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 14**

Objection, vague and ambiguous with respect to the term "territories formerly serviced by the BRANCHES." Responding Party does not know if propounding party is referring to already existing branches in the same geographical area, if Plaintiffs are asking if Responding Party opened new branches with the same address as the BRANCHES or if Plaintiffs are asking if Responding Party had branches that served the same states as the BRANCHES. Objection on the ground that the information sought by the interrogatory is irrelevant and is not likely to lead to the discovery of admissible evidence.

**SPECIAL INTERROGATORY NO. 15**

IDENTIFY the person or persons who made the decision to withhold payment of money owed Bowman under the Branch Management Agreements after January 31, 2007. For the purposes of these interrogatories, the word "IDENTIFY" when used in reference to individuals means to state the identity and last known telephone number and address.

**RESPONSE TO SPECIAL INTERROGATORY NO. 15**

Objection on the ground that the interrogatory assumes facts not established and not true. Responding Party did not withhold payment of money owed Bowman under the Branch Management Agreements. There were no payments due Bowman. All income of the Vancouver and Federal Way branches are not sufficient to offset the total losses suffered by said branches, which is the reason there were no net profits/profit sharing available for Bowman

**SPECIAL INTERROGATORY NO. 16**

IDENTIFY the person or persons responsible for YOUR human resources functions from December 1, 2003 to the present.

**RESPONSE TO SPECIAL INTERROGATORY NO. 16**

Lorraine Coppa - can be reached through this office. Teresa Ones and Beth Anne Fitzgibbons are Responding Party's former employees. Responding Party will not provide the contact information

11

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE

of these individuals in respect to the privacy rights of third parties to this lawsuit, and objects on such ground. Should Plaintiffs require the deposition of these individuals or to contact them, Responding Party will work with Plaintiffs to get in contact with said individuals.

**SPECIAL INTERROGATORY NO. 17**

IDENTIFY the person or persons responsible for YOUR government compliance functions from December 1, 2003 to the present.

**RESPONSE TO SPECIAL INTERROGATORY NO. 17**

Debbie Peterson can be reached through this office. Larry Ward and Katie Proefke are Responding Party's former employees. Responding Party will not provide the contact information of these individuals in respect to the privacy rights of third parties to this lawsuit, and objects on such ground. Should Plaintiffs require the deposition of these individuals or to contact them, Responding Party will work with Plaintiffs to get in contact with said individuals.

**SPECIAL INTERROGATORY NO. 18**

IDENTIFY the person or persons responsible for YOUR accounting functions from December 1, 2003 to the present.

**RESPONSE TO SPECIAL INTERROGATORY NO. 18**

Paul Chevez can be reached through this office. Marshall Griffin is a former employee of Responding Party. Responding Party will not provide the contact information of this individual in respect to the privacy rights of third parties to this lawsuit, and objects on such ground. Should Plaintiffs require the deposition of this individual or to contact him Responding Party will work with Plaintiffs to get in contact with said individual.

**SPECIAL INTERROGATORY NO. 19**

STATE ALL FACTS that support YOUR affirmative defenses to Bowman's claims.

**RESPONSE TO SPECIAL INTERROGATORY NO. 19**

First Affirmative defense - Plaintiffs have not stated any facts upon which relief can be granted because propounding Plaintiffs are not due any money under the contract at issue. Bowman was paid all of his final salary as an employee. There were no net profit to distribute to Bowman from Responding Party's profit sharing plan as of January 31, 2007 or at any time since, as outstanding

expenses attributable to the branches exceed all income of the branches. Additionally, there were no security deposits or reserves to pay PREMCO as the outstanding expenses attributable to the branches exceeded all income of the branches. Thus, the security deposit/reserves were needed to cover the expenses of the branches.

Second Affirmative defense - Due to Plaintiffs' taking loans that were started prior to January 31, 2007, and closing them with Bowman's new employer, propounding parties have unclean hands, which bar their recovery herein. Additionally, as a result of Plaintiffs' delay in bringing the claims, as alleged in the complaint and later alleged in subsequent documents, they have waived and otherwise surrendered their ability to bring some or all of the claims because they have abandoned said claims and because the contract excluded claims made beyond one year from their accrual. Also, since Plaintiffs were provided each monthly accounting regarding the branch expenses and activities prior to their being finalized, Plaintiffs have acquiesced, ratified and abandoned their damages, if any there are.

Third Affirmative defense- As stated in the response to the First Affirmative defense, Plaintiffs are not entitled to any damages from Responding Party. Thus, they have not suffered damages vis-a-vis Responding Party.

Fourth Affirmative defense - To the extent that Plaintiffs' claim that they have suffered damages as a result of any improper actions of Responding Party, which are entirely denied, any damages as a result of improperly relying on Plaintiffs' actions are a result of Plaintiffs' failure to mitigate their alleged damages.

Fifth Affirmative defense - Plaintiffs' claims, to the extent that they are for claims outside of a year from their accrual, are not enforceable via this contract action, per section 5.4 of the Facilities Agreement and section 21(p) of the Branch Management and Facilities Agreement. Also, to the extent that any claims made by Plaintiffs are pursuant to an oral contract, they are not enforceable as being outside of the two year statute of limitations for breach of contract.

Sixth Affirmative defense - Bowman engaged in self help with respect to closing loans, as alleged with Sierra Pacific Mortgage in violation of Bowman's Branch Management and Employment

///
///

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE
M:\CMG\85-0706-02 Bowman\Discovery\Responding\special rogs Set 1  wpd

1  Agreements with CMG and in violation of the Uniform Trade Secrets Act - specifically, loans started
2  prior to January 31, 2007 and closed thereafter. Such action puts Plaintiffs *in pari delicto* and bars their
3  claims.
4       Seventh Affirmative defense - Bowman engaged in self help with respect to closing loans with
5  Sierra Pacific Mortgage in violation of Bowman's Branch Management and Employment Agreements
6  with CMG and in violation of the Uniform Trade Secrets Act - specifically, loans started prior to
7  January 31, 2007 and closed thereafter. Due to the revenue that Responding Party did not earn as a
8  result of such action, it is entitled to a set off of the amount sought by Plaintiffs or the benefit of a
9  complete bar to the requested recovery.
10       Eighth Affirmative defense - Plaintiffs engaged in self help with respect to closing loans with
11  Sierra Pacific Mortgage in violation of Bowman's Branch Management and Employment Agreements
12  with CMG and in violation of the Uniform Trade Secrets Act - specifically, loans started prior to
13  January 31, 2007 and closed thereafter. Due to the revenue that Responding Party did not earn as a
14  result of such action, it is entitled to a set off of the amount sought by Plaintiffs and Plaintiffs are
15  responsible for those alleged damages.
16       Ninth and Tenth Affirmative defenses - The affirmative defenses and the applicable
17  constitutional provisions speak for themselves.
18       Eleventh Affirmative defense - Responding Party paid Plaintiffs all money due and owing to
19  them, as indicated by their accounting, based on the information provided to Responding Party by
20  Plaintiffs and then approved each month by Plaintiffs prior to being made final. To the extent that any
21  money was not paid to Plaintiffs that was in fact owed to them, which Responding Party expressly
22  denies, it was not done with any malice or intent to harm Plaintiffs, which harm is expressly denied.
23       Twelfth Affirmative defense - Bowman was an employee for Responding Party in Washington
24  state. Thus, he is arguably not subject to and due the protections of California Labor law.
25  **SPECIAL INTERROGATORY NO. 20**
26       Except for this action, in the past 10 years has any employee filed a civil action or
27  administrative proceeding against YOU regarding his or her employment? If so, for each civil
28  action:

1   (a)   state the name, ADDRESS, and telephone number of the employee;

2   (b)   state the court, names of the parties, and case number of the civil action;

3   (c)   state the name, ADDRESS, and telephone number of any attorney representing the EMPLOYEE; and

5   (d)   state whether the action has been resolved or is pending.

**RESPONSE TO SPECIAL INTERROGATORY NO. 20**

Objection on the ground that this interrogatory seeks information not relevant to this dispute and not likely to lead to the discovery of admissible evidence. Objection on the ground that this interrogatory is overbroad and thus unduly burdensome and harassing. Objection on the ground that this interrogatory seeks information in the public record and thus equally available to propounding party.

**SPECIAL INTERROGATORY NO. 21**

If YOU contend that YOU and Bowman were in a business relationship other than an employer-employee relationship, STATE ALL FACTS that support YOUR contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 21**

Bowman was the branch manager for two branch offices in Washington state for Responding Party. Bowman's company, PREMCO, had a contract with Responding Party whereby it provided services and facilities to Responding Party, in connection with the operations of the two branch offices.

Bowman, in his capacity as branch manager, was paid in two ways. First, he was paid based on his individual performance as a loan officer for Responding Party. Thus, he was paid twice a month on the basis of how many loans he personally closed. Second, Bowman received the net profits of both branches, as part of a profit sharing plan. He received this money once a month, if there were, and to the extent there were, any net profits. The net profit/profit sharing calculation was based upon the actual profits of the branches and was calculated by determining gross revenue of the branches, offset by any and all expenses of the branches. PREMCO was paid separately, and directly, for the services it provided to Responding Party. All payments to PREMCO are considered an expense of the branches, for purposes of determining any net/profit sharing.

///

15

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE
M:\CMG\85-0706-02 Bowman\Discovery\Responding\special rogs Set 1- wpd

Thus, Bowman was an employee of Responding Party and was paid on a W2 basis for his own individual loan activity. He was an employee for purposes of receiving net profits/profit sharing, as it was paid on W2 basis and once a month, if any net profits/profit sharing existed for that month. However, his company, PREMCO, had a separate contract and business relationship with Responding Party. Thus, while Bowman was an employee, his net profits/profit sharing revenue, if any, was affected by PREMCO's expenses and obligations.

**SPECIAL INTERROGATORY NO. 22**

If YOU contend that there was a breach of any agreement between YOU and Bowman, for each breach describe STATE ALL FACTS that support YOUR contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 22**

Bowman closed loans with Sierra Pacific Mortgage that were started with Responding Party prior to his termination. These loans were ones that Bowman was contractually obligated to close with CMG. Transfer of these loans to Sierra Pacific constitutes a breach of Bowman's contracts with Responding Party, constitutes theft and constitutes a violation of the Uniform Trade Secrets Act as well as the provisions of the contract that address Bowman's acknowledgment of Responding Party's trade secrets. Since Bowman has refused to provide the documents related to the loans, as requested by Responding Party, Responding Party is unable at this time to calculate its damages as a result of Bowman's activities. Discovery is on going and at such time as the information is ascertained, Responding Party will amend this response.

**SPECIAL INTERROGATORY NO. 23**

If YOU contend that performance of any part of the agreements between YOU and Bowman was excused, for each such part STATE ALL FACTS that support YOUR contention.

**RESPONSE TO SPECIAL INTERROGATORY NO. 23**

No.

**SPECIAL INTERROGATORY NO. 24**

If YOU contend that any term of the agreements between YOU and Bowman was ambiguous, for each such term STATE ALL FACTS that support YOUR contention.

///

16

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE
M:\CMG\85-0706-02 Bowman\Discovery\Responding\special rogs Set 1- wpd

**RESPONSE TO SPECIAL INTERROGATORY NO. 24**

No.

**SPECIAL INTERROGATORY NO. 25**

IDENTIFY every branch manager you have employed since 2003.

**RESPONSE TO SPECIAL INTERROGATORY NO. 25**

Objection on the ground that this interrogatory seeks information not relevant to this dispute and not likely to lead to the discovery of admissible evidence. Objection on the ground that this interrogatory is overbroad and thus unduly burdensome and harassing. Objection on the ground that this interrogatory seeks the private information of third parties.

Date:   April 22, 2008

MEDLIN & HARGRAVE
A PROFESSIONAL CORPORATION

By: _____
Joshua A. Rosenthal,
Attorneys for Defendants

i

## VERIFICATION

I, Paul Chevez, declare:

I am Chief Financial Officer of CMG Mortgage, Inc. a defendant in the above-entitled action. I have read the foregoing:

**DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFFS' SPECIAL INTERROGATORIES, SET ONE**

and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief and as to those matters, I believe them to be true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed April 22, 2008, at San Ramon, California.

_____
Paul Chevez

i

DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE
M:\CMG\85-0706-02 Bowman\Discovery\Responding\special rogs Set 1-.wpd

# PROOF OF SERVICE BY MAIL

I am over the age of eighteen years and not a party to the within action. My business address is One Kaiser Plaza, Suite 1305, Oakland, California 94612, which business is located in the county where the mailing described below took place.

I am readily familiar with my employer's business practice for collection and processing of correspondence for mailing with the United States Postal Service. On the date set forth below, at my place of business in Oakland, California, I served the within:

**DEFENDANT CMG MORTGAGE, INC.'S RESPONSES TO PLAINTIFF'S SPECIAL INTERROGATORIES, SET ONE**

by placing a true copy thereof enclosed in a sealed envelope, with postage fully prepaid, for collection and mailing with the United States Postal Service where it would be deposited with the United States Postal Service that same day in the ordinary course of business, addressed as follows:

Angela M. Xavier
Attorney At Law
900 Cherry Avenue, Suite 300
San Bruno, CA 94583

Alan F. Cohen
101 Montgomery Street, Suite 2050
San Francisco, CA 94104

I certify and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on April 22, 2008, at Oakland, California.

Xinh Truong