# Exhibit D

457

FACILITIES AND EQUIPMENT RENTAL AGREEMENT

This Facilities and Equipment Rental Agreement ("Agreement") is entered into effective July 7, 2004, by and between CMG Mortgage, Inc., a California corporation doing business as Pacific Guarantee Mortgage ("PGM") and James Bowman and Pacific Real Estate Management, Inc. (collectively "Provider"), at San Ramon, California.

Whereas, PGM is engaged in business as a mortgage broker;

Whereas, PGM intends to operate a branch office at 500 West 8th Street, Suite 100, Vancouver, WA 98660 (the "Branch Office");

Whereas, PGM desires to secure facilities, equipment, services, supplies and office space sufficient to operate the Branch Office; and,

Whereas, Provider desires to provide such facilities, equipment, services, supplies and office space,

Now, therefore, in consideration of the mutual covenants and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, it is hereby agreed as follows:

## Article I
## Items Supplied by Provider

**1.1    Office Space.** Provider, as master tenant, hereby subleases to PGM the Leased Premises described and identified in the Master Lease attached hereto as Exhibit A.

**1.2    Facilities, Equipment Services and Supplies.** Provider hereby agrees to provide to PGM the facilities, equipment, services and supplies identified in Exhibit B attached hereto and incorporated herein, which shall include one or more of the following, as reasonably necessary to conduct the business of the Branch Office in a responsible business manner:

  a.   Office furniture, including desks, chairs and tables;
  b.   Office equipment, including computers, printers and typewriters;
  c.   Facsimile machines and photocopiers;
  d.   Common area and reception furniture; and,
  e.   Telephone equipment and handsets.
  f.   All computer, printer and typewriter supplies, including but not limited to software maintenance and upgrade, printer toner and supplies, and typewriter ribbons and supplies;
  g.   Facsimile and photocopier supplies, including but not limited to toner and paper; and,
  h.   Maintenance and repair of items (a) - (g), as reasonably needed.

**1.3    Changes in Items Supplied.** The parties reserve the right to increase, decrease or

modify the facilities, equipment, services and supplies which are the subject of this Agreement.

**1.4** **Insurance.** PGM shall obtain and maintain, at its sole cost and expense, such fire, theft, liability, hazard and other insurance on the Leased Premises and the facilities, equipment, services and supplies which are a subject of this Agreement, as reasonably necessary to provide coverage for all risks of loss or damage and all liability for use thereof.

**1.5** **Facilities.** All office space, facilities, equipment, services, supplies and insurance referred to in sections 1.1 through 1.5, inclusive, of this Article I shall be referred to herein, collectively, as the "Facilities."

## Article II
## Security Deposit

**2.1** **Security Deposit.** As a material consideration for PGM's agreement to enter into this Agreement, Provider agrees concurrently with the execution of this Agreement to deposit with PGM a security deposit in the sum of $_____. This security deposit is intended to secure any and all obligations of Provider, whether arising out of this Agreement or otherwise. Said security deposit, to the extent not used in accordance with the provisions of this Article II, shall be returned to Provider, without interest, within sixty (60) days following the termination of this Agreement.

**2.2** **Use of Security Deposit.** By signature below, Provider authorizes and instructs PGM, at its option and in its sole discretion, to use all, or any part of the security deposit, to satisfy any indebtedness now or hereafter owed by Provider to PGM, to the maximum extent permitted by law.

## Article III
## Term of Agreement

**3.1** **Term.** The term of this Agreement shall be one (1) month from the above date and shall continue for successive one (1) month terms unless written notice of an election not to so renew for a successive one (1) month term is given by one party to the other party at least fifteen (15) days prior to the commencement of the next successive one (1) month term.

## Article IV
## Rental

**4.1** **Rent.** As rent for the Facilities provided by Provider, PGM shall pay a monthly Rental Fee equal to one hundred and twenty five percent (125%) of Provider's actual cost of providing the Facilities which are the subject of this Agreement. As soon as commercially reasonable following the close of each month, Provider shall provide to PGM, in writing, a request for payment of a sum equal to the total of one hundred and twenty five percent (125%) of all costs incurred by Provider that month in providing the Facilities. The monthly Rental Fee for each month shall be due on the 15th day following PGM's receipt of such request. Each such

request shall be supported by a schedule, or other equivalent records, which need not be provided to PGM each month, but shall be available for inspection by PGM on reasonable notice during normal business hours. Such schedule, or other equivalent records, shall be prepared by Provider in accordance with generally accepted accounting principles and maintained for a period of not less than seven (7) years.

## Article V

**5.1  Mandatory Negotiation, Mediation and Arbitration.** The parties will attempt in good faith to resolve through negotiation any dispute, claim or controversy arising out of or relating to this Agreement. Either party may initiate negotiations by providing written notice in letter form to the other party. Such notice shall set forth the subject of the dispute and the relief requested. The recipient of such notice will respond in writing within five (5) days with a statement of his/her/its position on and recommended solution to the dispute. If the dispute is not resolved by this exchange of correspondence, the representatives of each party with full settlement authority will meet at a mutually agreeable time and place within ten (10) days of the date of the initial notice in order to exchange relevant information and perspectives, and to attempt to resolve the dispute. If the dispute is not resolved by these negotiations, the matter will be submitted to JAMS, or its successor, for mediation in accordance with the terms of this section 5.1.

Either party may commence mediation by providing to JAMS and the other party a written request for mediation. Such request shall set forth the subject of the dispute and the relief requested. The parties will cooperate with JAMS and with one another in selecting a mediator from JAMS' panel of neutrals, and in scheduling the mediation proceedings. The parties covenant that they will participate in the mediation in good faith, and that they will share equally in its costs. All offers, promises, conduct and statements, whether oral or written, made in the course of the mediation by any of the parties, their agents, employees, experts and attorneys, and by the mediator or any JAMS employees, are confidential, privileged, and inadmissible for any purpose, including impeachment, in any arbitration or other proceeding involving the parties, provided that evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its use in the mediation.

Either party may initiate arbitration in accordance with this section 5.1 by filing a written demand for arbitration at any time following the initial mediation session or forty-five (45) days after the date of filing the written request for mediation, whichever occurs first. The mediation may continue after the commencement of arbitration if the parties so desire. Unless otherwise agreed by the parties, the mediator shall be disqualified from serving as arbitrator in the case. It is the intent of the parties to this Agreement that any and every dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, which can not be resolved by negotiation and/or mediation, be resolved by binding arbitration. This includes, but is not limited to the determination of the scope or applicability of this agreement to arbitrate. Arbitration shall be conducted in San Francisco, California, before a sole arbitrator, in accordance with the laws of the State of California for agreements made in and to be performed in California. The arbitration shall be

administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures. Judgment on the Award may be entered in any court having jurisdiction.

Provider may seek to obtain a waiver of costs associated with the initiation and maintenance of the arbitration, to the extent such costs: 1) are in excess of the costs of bringing and maintaining an equivalent court action; and, 2) to the extent such costs exceed Provider's ability to pay. The arbitrator shall, in the Award, allocate all of the costs of the arbitration and the mediation, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail.

The provisions of this section 5.1 may be enforced by any court having jurisdiction, and the party seeking enforcement shall be entitled to an award of all costs, fees and expenses, including attorneys' fees, to be paid by the party against whom enforcement is ordered.

### Article VI
### Miscellaneous

**6.1    Choice of Law.** This Agreement shall be governed by and construed under the laws of the State of California, without regard to conflicts of laws principles.

**6.2    Integration.** This Agreement is the entire agreement between the parties regarding the subject matter and supersedes any prior oral or written agreement among them regarding the subject matter contained herein.

**6.3    Statute of Limitations.** Any action arising under this Agreement or because of its breach much be commenced within one year after the cause of action accrues.

**6.4    No Partnership or Joint Venture Intended.** Provider and PGM intend that, to the maximum extent permissible by law, this Agreement shall not be construed as a partnership and/or joint venture.

    **6.5**    **Signatures.** The undersigned persons represent that they are authorized and have the legal capacity to enter into this Agreement.

PGM:

Dated: _____

**CMG Mortgage, Inc., doing business as Pacific Guarantee Mortgage**

By: _____
    Christopher M. George, President

Provider:

Dated: _____ 6/3d/04

**Pacific Real Estate Management, Inc.**

By: _____
    Branch Manager

By: _____
    James Bowman
    Pacific Real Estate Management, Inc.

Dated: _____ 6/30/04

## PGM Facilities Agreement
## Exhibit "B"

| Item | Estimated Monthly Expenses |
|---|---|
| Office Rent/Lease | 1500⁰⁰ |
| Office furniture (including desks, chairs and tables) | |
| Office equipment, including computers, printers and typewriters | |
| Facsimile machines and photocopiers | 750⁰⁰ |
| Common area and reception furniture | |
| Telephone equipment and handsets | |
| Supplies - Computer, printer, typewriter | |
| Supplies - Facsimile and photocopiers including not limited to toner and paper | 750⁰⁰ |
| Maintenance and repair of all equipment | 200⁰⁰ |
| Software supplies and maintenance & upgrades | |
| Other - List | |
| Other - List | |
| Other - List | |
| Sub Total | 32 00 |
| Plus 25% (of Sub Total) | 800 |
| Estimated Total Monthly Payment | 4000⁰⁰ |

CMG001938