David R. Medlin     (SBN 77417)
G. Bradley Hargrave (SBN 173911)
Joshua A. Rosenthal  (SBN 190284)
MEDLIN & HARGRAVE
A Professional Corporation
One Kaiser Plaza, Suite 1305
Oakland, CA 94612
Telephone:   (510) 832-2900
Facsimile:   (510) 832-2945
E-mail:      *jrosenthal@mhlawcorp.com*

Attorneys for Defendants/Counter-Claimant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| James W. Bowman, Jr. and Pacific Real Estate Management Company, Inc., a Washington Corporation,<br><br>                Plaintiffs,<br>vs.<br><br>CMG Mortgage Inc., a California Corporation; CMG Mortgage, Inc., d/b/a Pacific Guarantee Mortgage, CMG Mortgage Services, Inc., a California Corporation, CMG Mortgage Services, Inc. d/b/a Pacific Guarantee Mortgage,<br><br>                Defendants.<br>_____/ | Case No.: C 07 3140 SI<br><br>DECLARATION OF JOSHUA A. ROSENTHAL IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION<br><br>Dept:  Courtroom 10<br>Judge: Honorable Susan Illston<br><br>File date: June 14, 2007<br>Trial date: August 25, 2008 |
| CMG Mortgage Inc., a California Corporation<br><br>                Counter-Claimant,<br><br>vs.<br><br>James W. Bowman, Jr., an individual,<br><br>                Cross-Defendant.<br>_____/ | |

**DECLARATION OF JOSHUA A. ROSENTHAL**

   I, Joshua A. Rosenthal, declare:

   1.   I am an attorney at law duly licensed to practice before this court all courts of this state and an attorney with Medlin & Hargrave, a P.C.

1

1  2. On June 24, 2008, David Medlin took the deposition of plaintiff James Bowman, plaintiff of plaintiff Pacific Real Estate Management, Inc. Attached hereto as Exhibit A is a true and correct copy of excerpts from the court reporter's transcript of his deposition.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and if sworn as a witness, I could and would testify competently thereto.

Executed at Oakland, California, on July 3, 2008.

/s/
Joshua A. Rosenthal

DECLARATION OF JOSHUA A. ROSENTHAL
M:\CMG\85-0706-02 Bowman\Motion\Plaintiffs' Motion to file amended complaint\Decl of JAR for recon.wpd

# EXHIBIT A

```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3                         - - -
 4   JAMES W. BOWMAN, JR; and        )
     PACIFIC REAL ESTATE MANAGEMENT  )
 5   COMPANY, INC., a Washington     )
     Corporation,                    )
 6                                   )
              Plaintiffs,            )
 7                                   )
     vs.                             )   No. C 07 34140 SI
 8                                   )
     CMG MORTGAGE, INC., a           )
 9   California Corporation; CMG     )
     MORTGAGE, INC., dba PACIFIC     )
10   GUARANTEE MORTGAGE; CMG         )
     MORTGAGE SERVICES, INC., a      )
11   California Corporation; CMG     )
     MORTGAGE SERVICES, INC., dba    )
12   PACIFIC GUARANTEE MORTGAGE,     )
                                     )
13            Defendants.            )
     --------------------------------
14
15                   DEPOSITION OF
16                JAMES W. BOWMAN, JR.
17                     VOLUME II
18                 OAKLAND, CALIFORNIA
19                TUESDAY, JUNE 24, 2008
20
21   ATKINSON-BAKER, INC.
     COURT REPORTERS
22   (800) 288-3376
     www.depo.com
23
24   REPORTED BY:    Lisa D. Graham, RPR, CSR No. 8196
25   FILE NO:   A2056D2
```

1  Q   Did Chris use the word "wages" in that
2  conversation?
3  A   No.
4  Q   Is it your understanding that the statement
5  which Chris made to you that HUD required that the
6  reserves be increased, that your reserves be
7  increased, is it your understanding that that was a
8  false statement?
9  A   At that time, no.
10 Q   Is it your understanding today that that's
11 a false statement?
12 A   I believe that is a false statement today.
13 Q   And what is the basis for your belief?
14 A   Because I think we've asked for evidence
15 that HUD required these increased reserves from CMG,
16 and I've never seen any instructions from HUD.  I'm
17 not aware of any time HUD ever instructed anybody to
18 do that.
19 Q   Is there any other basis for your belief
20 that Chris George's statement was false?
21 A   No.
22 Q   Is it your belief that when Chris George
23 made that statement to you he knew it was false?
24     MR. COHEN:  I'm going to object to the
25 extent the question calls for speculation as to what

1  somebody else knew, but you can certainly tell us
2  your understanding.
3        THE WITNESS:  I believe today he knew it
4  was false.
5        MR. MEDLIN:  Q.  And why do you believe
6  that; what's the basis for that belief?
7     A    I just explained it to you.
8     Q    So is it your testimony that because you
9  haven't seen CMG provide you with proof that HUD
10 required you to post reserves, you therefore believe
11 Chris George made a false statement to you when he
12 told you HUD required that?
13    A    That's what I believe.
14    Q    Is there any other basis for your belief
15 that Chris knowingly told you a false statement?
16    A    Other than I have not seen any requirement
17 from HUD about reserves.
18    Q    Do you have any belief as to why Chris
19 would make this false statement to you?
20    A    No, that would be speculative.  I don't
21 know why he would.
22    Q    Do you believe the converse?  Do you
23 believe that Chris George knew in December of 2004
24 that HUD did not require you to post reserves?
25    A    I -- At that time?

1    Q    Yes.

2    A    At that time I don't know what he knew.  So
3 I don't know; I can't say what he would have known.

4    Q    Do you have an understanding as to why
5 Chris George made the false statement to you that
6 HUD required you to post reserves?

7    A    My only understanding --

8         MR. COHEN:  Let me just object that the
9 question calls for speculation.

10        You can answer.

11        THE WITNESS:  My only understanding is what
12 I stated Chris George told me, that HUD required
13 those reserves because of the change in the
14 licensing for the branches.

15        MR. MEDLIN:  Q.  And you've told me what he
16 said and that you believe it was not true.  Do you
17 have any belief as to why he said that to you then?

18   A    I just --

19        MR. COHEN:  Same objection --

20        THE WITNESS:  I just stated it.

21        MR. COHEN:  -- calls for speculation.

22        THE WITNESS:  Sorry.  I overtalked and
23 spoke over the top of him.  So now I need you --
24 Could you please repeat that.

25        MR. MEDLIN:  I'm going to ask the reporter

1  to read it back if she would.
2          MR. COHEN:  Before we do that, David, I
3  need a break within five minutes.
4          MR. MEDLIN:  Okay.
5            (Record read:  "Q.  And you've told me
6             what he said and that you believe it was
7             not true.  Do you have any belief as to
8             why he said that to you then?")
9          MR. COHEN:  Same objection; calls for
10 speculation.
11         THE WITNESS:  Yeah, I don't know why he
12 said that.
13         MR. MEDLIN:  Q.  Do you believe that he
14 said that false statement to you in order to trick
15 you into doing something?
16         MR. COHEN:  Same objection; calls for
17 speculation.
18         THE WITNESS:  Actually he didn't -- I
19 didn't do anything, so I don't know what he could
20 have tricked me into doing.  But I know that by
21 saying that, it gave him the ability to take
22 excessive money that I planned to get as net income
23 for that month that I did not receive.
24         MR. MEDLIN:  Q.  And do you believe that's
25 why he made that false statement to you, in order to

```
 1  get that reserve?
 2      A    I don't know if he made it to get the
 3  reserve or not.  I can only speculate why he did it.
 4  I just know the result was CMG kept more of my net
 5  income by doing that.
 6      Q    Do you believe Chris George was trying to
 7  defraud you?
 8      A    Today that's what I believe.
 9      Q    And why do you believe that today?
10           MR. COHEN:  Objection; vague, calls for
11  speculation.
12           THE WITNESS:  I've also already stated the
13  answer to that.
14           MR. MEDLIN:  Q.  Because you believe Chris
15  knew that that was not a true statement; is that
16  accurate?
17           MR. COHEN:  Objection; vague.
18           THE WITNESS:  No, I didn't say I knew he
19  knew that was a true statement or not.
20           MR. MEDLIN:  Q.  Then why do you believe
21  that he was trying to defraud you?
22           MR. COHEN:  Objection; vague.
23           THE WITNESS:  Like I said, the only
24  benefit -- There was no benefit for me to have money
25  taken away from me; the only person or entity that
```

1  could benefit was CMG by having access to more cash.
2          MR. MEDLIN:  Q.  And in what way did CMG
3  benefit by Chris making false -- that false
4  statement to you?
5      A    Something that we're trying to discover.
6      Q    So you don't know how CMG benefited?
7      A    No, I don't.
8      Q    Do you have any belief as to how CMG
9  benefited?
10     A    I have some belief.
11     Q    And what is that?
12     A    That CMG put reserves into their operating
13 accounts and used it for other things other than
14 reserves.
15         MR. COHEN:  Is this a good time for a
16 break, David?
17         MR. MEDLIN:  No.
18     Q    Do you believe Chris George personally
19 benefited from making false statements to you?
20     A    Again, I don't know.
21     Q    Do you believe he did?
22     A    I will believe it when I see the discovery
23 that we've requested.
24     Q    So as you sit here today, you have no
25 knowledge of any personal benefit Chris George

1  realized by making this false statement to you?
2     A    That's true.
3     Q    Do you believe that Chris George made this
4  false statement to you with the intent to oppress
5  you?
6          MR. COHEN:  Objection; vague.
7          THE WITNESS:  Yeah, again I don't know what
8  his intention was.  He didn't -- he didn't tell me
9  his intention.  He told me why he was doing it, and
10 I believed why he was doing it at the time.  And it
11 did have an adverse impact on me because it took
12 away income that I was entitled to and expecting at
13 that time.
14         MR. MEDLIN:  Q.  So as you sit here today,
15 you have no personal knowledge of any intent to
16 oppress you by Chris George?
17         MR. COHEN:  Object; it's vague and it calls
18 for speculation.
19         THE WITNESS:  Yeah.  Like I said, I can't
20 answer that question.  I don't know what his
21 intention really was.
22         MR. MEDLIN:  Q.  Do you believe he was
23 acting maliciously when he told you this?
24    A    Then?
25    Q    Yes, sir.

```
 1              MR. COHEN:  I'm going to object to the
 2   extent that these are legal terms of art, but you
 3   can respond based on your understanding of the
 4   meaning of the word "malicious."
 5              THE WITNESS:  Yeah, I guess -- Sorry; I was
 6   mumbling.
 7              MR. COHEN:  No mumbling.  Could you read
 8   the question back please.  David, if you still want
 9   it answered?
10              MR. MEDLIN:  Yes, please.  I'll just ask it
11   again.
12       Q    Do you believe, when Chris made this
13   statement to you, that he was acting maliciously?
14       A    I have no knowledge of his intent, whether
15   it was malicious or nonmalicious when he requested
16   or required or moved reserves or made it happen at
17   that time.  The result I don't know.
18              MR. MEDLIN:  Let's take our break now.  If
19   that works for you.
20              MR. COHEN:  Thank you.  Go off the record.
21                   (Recess taken.)
22              MR. MEDLIN:  Let's mark this as the next
23   exhibit in order please.
24         (Exhibit 17 marked for identification.)
25              MR. MEDLIN:  Q.  Would you look at the
```