David R. Medlin       (SBN 77417)
G. Bradley Hargrave   (SBN 173911)
Joshua A. Rosenthal   (SBN 190284)
MEDLIN & HARGRAVE
A Professional Corporation
One Kaiser Plaza, Suite 1305
Oakland, CA  94612
Telephone:     (510) 832-2900
Facsimile:     (510) 832-2945
E-mail:        *jrosenthal@mhlawcorp.com*

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| James W. Bowman, Jr. and Pacific Real Estate Management Company, Inc., a Washington Corporation, | Case No.: C 07 3140 SI |
| Plaintiffs, | DECLARATION OF PAUL CHEVEZ IN SUPPORT OF OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION |
| vs. | |
| CMG Mortgage Inc., a California Corporation; CMG Mortgage, Inc., d/b/a Pacific Guarantee Mortgage, CMG Mortgage Services, Inc., a California Corporation, CMG Mortgage Services, Inc. d/b/a Pacific Guarantee Mortgage, | Date:   July 25, 2008<br>Time:   9:00 a.m.<br>Dept:   Courtroom 10<br>Judge:  Honorable Susan Illston |
| Defendants. | File date: June 14, 2007<br>Trial date: August 25, 2008 |
| _____/ | |
| CMG Mortgage Inc., a California Corporation | |
| Counter-Claimant, | |
| vs. | |
| James W. Bowman, Jr., an individual, | |
| Cross-Defendant. | |
| _____/ | |

**DECLARATION OF PAUL CHEVEZ**

I, Paul Chevez, declare:

1.      I am the Chief Financial Officer for CMG Mortgage, Inc. and a member of CMG's Executive Management team  I have been the CFO of CMG since in or about 2002.  My job duties

1

1  include overseeing the accounting department which provides accounting services for CMG's

2  branches, providing other financial reporting, which includes gathering the expense and revenue

3  information of the branches, inputting them into CMG's accounting software, sending the various

4  accounting reconciliations to the branch offices, sending check requests for distributions to the

5  branches and payroll, and communicating with the branch offices regarding issues and questions

6  related to the branch accounting.  My job duties also include overseeing aspects of CMG's lending

7  and sales of loans on the secondary market, as well as dealing with lenders making repurchase

8  demands on CMG related to brokered and banked loans.  Additionally, I used to be a loan officer for

9  CMG.

10      2.      CMG is contractually required to repurchase from investors (to whom it sells loans

11  into the secondary market) loans in which the borrower and/or mortgage broker has committed some

12  form of fraud and/or loans in which the borrower has defaulted on one or more of the borrower's

13  early monthly payment obligations.  This occurred with respect to two loans originated by

14  Bowman's branches, the Frazier loan and the Wilkins loan.

15      3.      On or about February 20, Aurora Loan Services (ALS) made a repurchase demand on

16  CMG for the Frazier loan, which was originated by the plaintiffs' branches.  Attached hereto and

17  marked as Exhibit 8 is a true and correct copy of the loan application for the Fraziers. The

18  repurchase demand is the amount of the loan, $387,200, plus unpaid interest and any expenses

19  related to the foreclosure.  ALS made a repurchase demand on CMG on February 20, 2007,

20  demanding that CMG purchase the loan from it.  The amount was $416,871.44 as of August 7, 2007.

21  Attached hereto and marked as Exhibit 9 is a true and correct copy of the repurchase demand.

22      4.      On or about February 9, 2007, Credit Suisse Securities, LLC (CSS) made a

23  repurchase demand on CMG for the Wilkins loan, which was originated by the plaintiffs' branches.

24  Attached hereto and marked as Exhibit 10 is a true and correct copy of the loan application for Josh

25  Wilkins.  The property was sold at foreclosure and CSS has made a repurchase demand on CMG for

26  its $2,983.36 loss on the lien in first position and its complete loss on the lien in second position of

27  $117,086.76 for a total of $120,070.12. Attached hereto and marked as Exhibit 11 is a true and

28

2

1   correct copy of the repurchase demand and a spreadsheet from CSS dated February 26, 2008, listing

2   the amount owed by CMG after the sale of the property.   CMG has made periodic payments to CSS

3   for payment of this loan, as well as other repurchase demands. As a result of the two repurchase

4   demands, CMG's expenses attributable to plaintiffs' branches exceeded its net income, plaintiffs'

5   claim for the cash value of marketing credits and all security deposits/reserves.

6          5.      When CMG "banks" a loan, i.e., when it acts as a lender, it thereafter sells that loan

7   into the secondary market, hopefully for a profit, but sometimes at a loss.  This is known and

8   referred to as secondary market income (or loss).  Plaintiffs never acted as a lender while affiliated

9   with CMG.  Plaintiff never "sold" any mortgage into the secondary market while affiliated with

10  CMG.  Each month CMG provided plaintiffs with a detailed accounting (Statement of Operations)

11  of all income and expenses for the Federal Way and Vancouver branches.  These accountings never

12  once included secondary market income, or loss.

13         6.      Each month during the parties' relationship CMG provided plaintiffs with a

14  Statement of Operations and an Income Statement.  The Statements would set forth the Gross

15  Income of Bowman's Branches (Federal Way and Vancouver) and some of the Expenses.

16  Specifically, the payroll costs and administrative expenses would be set forth on the Income

17  Statement to arrive at a number referred to by the parties as Net Income.  The Net Income was the

18  total cash on hand which was available for distribution.  At Bowman's option, this Net Income, i.e.,

19  this cash on hand, was available to be used to pay PREMCO for Facilities or, if Bowman preferred,

20  the Net Income (cash on hand) could be distributed entirely to Bowman as Net Profits.

21         7.      During the first two years of the parties' relationship, all Net Income earned from the

22  branches was to be paid to Bowman each month as Net Profits.  In other words, all cash on hand was

23  paid to him as Net Profits.  Accordingly, at Bowman's direction, from the beginning of the parties'

24  relationship in December of 2003, through October of 2005, no payments were made to PREMCO.

25  From CMG's perspective it was irrelevant how the money was distributed.  All of the Net Income

26  was cash on hand for Bowman's branches to be paid as he directed, either to his corporation, or to

27  himself, or any combination thereof.

28

3

8.    Except for the last month of the parties' relationship, 100% of all Net Income from Bowman's branches was distributed, at his direction.

9.    If Bowman elected to have the Net Income paid to PREMCO, CMG required that PREMCO first submit an Expense Voucher itemizing each of the various components of the actual cost incurred by PREMCO to provide the various Facilities, as set forth in the Facilities Agreement. Then, pursuant to the Facilities Agreement, to the extent of Net Income (i.e., to the extent of cash on hand), Bowman could elect to have PREMCO paid up to 125% of the amount PREMCO had submitted on its Expense Voucher. Such payment was considered an Expense, for purposes of calculating Net Profit (See, pages 4-5 of para. 9 of Exhibits A & C to Declaration of Bowman). Accordingly, to the extent there was any Net Profit after a payment to PREMCO for Facilities, that remaining cash, the Net Profit, was available to be paid to Bowman, pursuant to the Branch Management and Employment Agreement.

10.    The way the contracts were set up to work was that PREMCO was to submit Expense Vouchers each month to CMG for reimbursement. PREMCO was to get reimbursed at 125% of the submitted reimbursement. This extra 25% served 2 purposes. One - it was a tax benefit for the branch manager because he could receive money to his corporation as reimbursement for expenses and not W2 income and two - to compensate the branch manager for holding on to the facilities and leasing them to CMG on a month to month basis. The facilities, including the lease on the location of the branches, the copiers, office equipment, etc., were in the name of PREMCO. PREMCO had a lease with the landlord of the office space and presumably with the company that leases the copiers, all predating its relationship with CMG. CMG paid PREMCO an extra 25% so it could sub-lease the equipment and facilities from PREMCO on a month to month basis. If CMG cancelled the lease, it could walk away from the obligations while the main lease would still apply. This arrangement benefits the branch manager because he gets to use the same facility and equipment he had been using prior to contracting with CMG and gets to maintain the facilities after the relationship is over and he affiliates with another lender.

11.    A credit report for the borrower is necessary for just about any residential loan. It is

4

1   generally the first thing that is obtained by the loan officer in the loan process, as it is one of the

2   most important indicators of the type of loan for which the borrower may qualify.   The charge for

3   the credit report will usually appear on the loan closing statement, listing all of the charges

4   associated with the loan.  The credit report can be paid for by the borrower at the beginning of the

5   loan transaction, in which case it will not appear on the closing statement.  Also, the loan officer

6   could pay for the credit report and elect not to charge the borrower.  If the report appears on the

7   closing statement as being paid to the broker, as in this case - to Sierra Pacific or Pacific Trust

8   Lending - it means those organization are being paid for the credit report with the loan proceeds or

9   with proceeds brought to closing by the borrower.

10      12.     In addition to the Branch Management and Employment Agreement, Bowman signed

11  a loan officer agreement with CMG and was compensated for his individual loan production.  A true

12  and correct copy of the loan officer agreement is attached hereto and marked as Exhibit 12.

13      13.     CMG encourages branches to bank loans through CMG, instead of brokering the

14  loans through other lenders, because CMG makes the majority of its money from net branches

15  through banked loans.  Thus, it set up a program that assigned credits according to the banked

16  volume of a branch's loan activity, as spelled out in the memo establishing the program.  Attached

17  hereto and marked as Exhibit 13 is a true and correct copy of CMG's marketing credits program.

18  The credits are specifically to be used for marketing purposes.  It is not money that goes to the

19  branch manager as wages.  It is used only as an offset for a branch's expenditures for marketing.

20  CMG was under no obligation to convert the credits into cash value.  It was going to do so for the

21  benefit of the branches, if the expenses of the branches were less than the income.

22      14.     The Facility Agreements require PREMCO, the facilities provider, to deposit a

23  security deposit (the contract refers to the money as a security deposit, the accountings refer to it as

24  reserves - but it is the same thing).  The purpose of the security deposit is to cover 2 months' payroll

25  expenses.  This was explained to Bowman on more than one occasion, as explained in Exhibit 14.

26  Attached hereto and marked as Exhibit 14 is a true and correct copy of an email explaining to

27  Bowman how the security deposits are calculated, including refunding some security deposits,

28

5

1  which refunds were paid to PREMCO - not Bowman.  Since payroll to all employees of the branches

2  must be paid each month, regardless of income, the security deposit was established as an amount

3  that covered the payroll expenses for a branch that stopped performing or had to be terminated.

4  Since a party can give 30 days notice for termination, the security deposit is calculated as the payroll

5  expenses that would likely have to be paid until the termination is complete.  However, it can be

6  used to offset any expense at any time.  Exhibits B & D to Declaration of Bowman, Para 2.2.  It can

7  be periodically increased or decreased, depending on the payroll expenses of the previous quarter.

8      15.    Neither PREMCO nor Bowman paid $10,724.00 as security deposits at the outset of

9  the business relationship, as the Facility Agreements state.  The Federal Way Facility Agreement

10  states that plaintiffs will pay $10,724.00 in security deposits.  However, that money was never paid

11  as a lump sum.  Bowman informed CMG that PREMCO did not have the money at the outset and

12  asked if CMG could add the money as expenses when the branch began earning money.  Thus, CMG

13  charged security deposits as expenses, as an accommodation to PREMCO.

14      16.    By way of example, a review of the income statements for February of 2004 and

15  September of 2004, indicate that reserves were added as expenses.  In the February, 2004 Statement

16  of Operations, it indicates that $5,586 in expenses were added in order to begin collecting the

17  security deposit/reserves required by the contract.  Previously, there were no reserves.  Then on the

18  September, 2004 Statement of Operations another $5,000 in expenses was added to bring the

19  security deposit up to the amount required.  Attached hereto as Exhibit 15, are true and correct

20  copies of the Statements of Operations for the Vancouver branch for February, 2004 and September,

21  2004.  When additional reserves/security deposits were required, due to increases in payroll

22  expenses, this is always how it would be handled - as an additional expense.  When payroll expenses

23  decreased, CMG would reduce the reserves/security deposit by providing an expense reimbursement

24  to reflect the smaller reserves/security deposit.

25      17.    CMG earns income with its net branch operation, in large part, by banking loans.  By

26  plaintiffs' branches not closing loans it started with CMG prior to termination ("Pipeline Loans"),

27  CMG lost the income it would have earned for banking those loans.  CMG regularly earns additional

28

6

1  income from Pipeline Loans and pays Net Profits from Pipeline Loans for departing branches.

2  Additionally, when a CMG affiliated net branch closes a loan and has earned commission, that

3  money goes to CMG, gets paid to the loan officer as a commission ( according to the commission

4  schedule with that loan officer) and the remainder is Net Income to the branch, which is used to

5  compute Net Profit.  If plaintiffs do not close loans with CMG and do not earn commissions, there is

6  no income to offset expenses.

7  　　　I declare under penalty of perjury under the laws of the United States that the foregoing is

8  true and correct, and if sworn as a witness, I could and would testify competently thereto.

9  　　　Executed at Oakland, California, on July 7, 2008.

10

11

12  　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

13  　　　　　　　　　　　　　　　　Paul Chevez

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

# EXHIBIT 8

60510622

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower _____  Co-Borrower _Elaine Frazier_

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA ☐ FHA | ☑ Conventional ☐ USDA/Rural Housing Service | ☐ Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|---|---|

| Amount | Interest Rate | No. of Months | Amortization Type: | |
|---|---|---|---|---|
| $ 387,200 | 9.125 % | 360/360 | ☐ Fixed Rate ☐ GPM | ☐ Other (explain): ☑ ARM (type): 5 Yr - 6 Mon Libor ARM |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) | | No. of Units |
|---|---|---|
| 32231 25th Avenue SW, Federal Way, WA 98023   County: King | | 1 |
| Legal Description of Subject Property (attach description if necessary) | | Year Built |
| See Preliminary Title Report | | |

| Purpose of Loan | ☐ Purchase ☑ Refinance | ☐ Construction ☐ Construction-Permanent | ☐ Other (explain): | Property will be: ☐ Primary Residence ☐ Secondary Residence ☑ Investment |
|---|---|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a+b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | ☐ made ☐ to be made |
|---|---|---|---|---|---|
| 1995 | $ 315,000   235,000 | $ 325,000   314,472 | Cash-Out/Other | Cost: $ | |

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| Elaine Frazier Bill Frazier | Community property | ☑ Fee Simple ☐ Leasehold (show expiration date) |

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|
| Equity from Subject Property |

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) | Bill Frazier | Co-Borrower's Name (include Jr. or Sr. if applicable) Elaine Frazier |

| | Borrower | Co-Borrower |
|---|---|---|
| Social Security Number | 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 | 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 |
| Home Phone (incl. area code) | 253-661-5772 | 253-661-5772 |
| DOB (mm/dd/yyyy) | 03/06/1943 | 09/03/1950 |
| Yrs. School | 24 | 22 |

| Borrower | Co-Borrower |
|---|---|
| ☑ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | ☑ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated |
| Dependents (not listed by Co-Borrower) no. ___ ages ___ | Dependents (not listed by Borrower) no. 1 ages 14 |
| Present Address (street, city, state, ZIP) ☑ Own ☐ Rent 10 No. Yrs. | Present Address (street, city, state, ZIP) ☑ Own ☐ Rent 10 No. Yrs. |
| 524 SW 321st St Federal Way, WA 98023 | 524 SW 321st St Federal Way, WA 98023 |
| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |

If residing at present address for less than two years, complete the following:

| Borrower | Co-Borrower |
|---|---|
| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |
| Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent ___ No. Yrs. |

Fannie Mae Form 1003   07/05
CALYX Form Loanapp1.frm 09/05

Page 1 of 5

Borrower _____
Co-Borrower _____

Freddie Mac Form 65   07/05

CMG000011

mailbox Full

| | Borrower | | IV. EMPLOYMENT INFORMATION | Co-Borrower | | |
|---|---|---|---|---|---|---|
| Name & Address of Employer ☑ Self Employed | | Yrs. on this job 6 yr(s) | Name & Address of Employer ☐ Self Employed | | Yrs. on this job 4 yr(s) | |
| Sytac, York, Towne & Co. P.C. | | | Avaya Inc | | | |
| 31919 First Ave S Suite 103 | | Yrs. employed in this line of work/profession | 901 N Lake Destiny Road | | Yrs. employed in this line of work/profession | |
| Federal Way, WA 98003 | | 6 | Maitland, FL 32751 | | 4 | |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) | |
| Managing Director | | 253-948-1400 | National Account Rep/Telecommunical | | 866-462-8292 | |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 23,000.00 | $ 7,500.00 | $ 30,500.00 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | 1,121.00 | $ 2,944.33 |
| Bonuses | | | | Other Financing (P&I) | 381.00 | |
| Commissions | | 6,000.00 | 6,000.00 | Hazard Insurance | 116.67 | 60.00 |
| Dividends/Interest | | | | Real Estate Taxes | 268.51 | 375.00 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 23,000.00 | $ 13,500.00 | $ 36,500.00 | Total | $ 1,887.18 | $ 3,379.33 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income    Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

Fannie Mae Form 1003   07/05
CALYX Form Loanapp2.frm 09/05

Borrower
Co-Borrower

Freddie Mac Form 65   07/05

CMG000012

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed by that spouse or other person also.

Completed ☑ Jointly ☐ Not Jointly

| ASSETS<br>Description | Cash or<br>Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | |
| | | **LIABILITIES** | Monthly Payment &<br>Months Left to Pay | **Unpaid Balance** |
| *List checking and savings accounts below* | | Name and address of Company<br>SAXON MORTGAGE SERVICE | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | 3809 SW 321st | | |
| | | Acct. no. 2000144386 | (2,893) | 478,546 |
| Acct. no. | $ | Name and address of Company<br>COUNTRYWIDE HOME LOANS | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | 524 SW 321st | | |
| | | Acct. no. 103825481 | (1,121) | 353,774 |
| Acct. no. | $ | Name and address of Company<br>GMAC MORTGAGE CORP | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | 32613 39 PI SW | | |
| | | Acct. no. 359238812 | (1,645) | 337,644 |
| Acct. no. | $ | Name and address of Company<br>SPECIALIZED LOAN SERVI | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number description) | $ | | | |
| Avaya | 71,139 | 32231 25th Ave Sw | | |
| | | Acct. no. 1000294884 | * (1,435) | 261,435 |
| Life insurance net cash value | $ | Name and address of Company<br>CHASE MANHATTAN MORTGA | $ Payment/Months | $ |
| Face amount: $ | | 174 Florentia | | |
| **Subtotal Liquid Assets** | $ 71,139 | Acct. no. 19183995 | (1,149) | 198,351 |
| Real estate owned (enter market value from schedule of real estate owned) | $ 3,190,000 | Name and address of Company<br>SPECIALIZED LOAN SERVI<br>2nd Mortg | $ Payment/Months | $ |
| Vested interest in retirement fund | $ | 32613 39th PI SW | | |
| Net worth of business(es) owned (attach financial statement) | $ | Acct. no. 1001216603 | (1,269) | 120,937 |
| Automobiles owned (make and year)<br>Autos | $ 40,000 | Alimony/Child Support/Separate<br>Maintenance Payments Owed to: | $ | |
| Other Assets (itemize)<br>HHG | $ 150,000 | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | **Total Monthly Payments** | $ 5,097 | |
| **Total Assets a.** | $ 3,451,139 | Net Worth a minus b. $ 361,095 | **Total Liabilities b.** | $ 3,090,044 |

Schedule of Real Estate Owned (if additional properties are owned, use continuation sheet)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|---|
| 524 SW 321st St<br>Federal Way, WA 98023 | | SFR | Countrywide, Wilshire<br>$ 650,000 | $ 522,352 | $ | $ 1,511 | $ 385 | $ |
| 3809 SW 321st St<br>Federal Way, WA 98023 | R | SFR | Saxon, Chapel<br>600,000 | 598,344 | 3,300 | 4,162 | 482 | -2,169 |
| 32231-25th Ave SW<br>Federal Way, WA 98023 | R | SFR | Specialized Loan, Specialized Loan 2nd<br>525,000 | 326,786 | 2,200 | 2,154 | 388 | |
| * See page 5 for the additional properties | | Totals | $ 3,190,000 | $ 2,566,758 | $ 9,650 | $ 14,837 | $ 2,530 | $ -7,342 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

Alternate Name      Creditor Name      Account Number

Fannie Mae Form 1003   07/05
CALYX Form Loanapp3.frm 09/05

Page 3 of 5

Borrower
Co-Borrower

Freddie Mac Form 65   07/05

CMG000013

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: **Bill Frazier** | Agency Case Number: |
|---|---|---|
| | Co-Borrower: **Elaine Frazier** | Lender Case Number: 60510622 |

### ASSETS AND LIABILITIES

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company **MBNA AMERICA** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No.  2558 | 297 | 13,691 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company **MBNA AMERICA** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No.  8284 | 379 | 13,015 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company **CITI** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No.  541065477849 | 327 | 12,073 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company **CHASE** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No.  5401683025643245 | 374 | 10,659 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company **MBNA AMERICA** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No.  4402 | 203 | 10,562 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company **MID ATLANTIC EMP FCU** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No.  43110100163 | 316 | 10,008 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company **BANK OF AMERICA** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No.  488860310107 | 106 | 9,319 |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: X | Date 11/3/2016 | Co-Borrower's Signature: X Elaine Frazier | Date 11/3/06 |
|---|---|---|---|

Fannie Mae Form 1003   09/05
CALYX Form 1003 cont.frm 9/05

Freddie Mac Form 65   07/05

Page 5 of 5

CMG000014

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:<br>**Bill Frazier** | Agency Case Number: |
|---|---|---|
| | Co-Borrower:<br>**Elaine Frazier** | Lender Case Number:<br>**60510622** |

### ASSETS AND LIABILITIES

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>**CHAPEL MORTGAGE**<br>**2nd Mortg**<br><br>**3809 SW 321st St** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 2369501005 | (1,080) | 119,798 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>**SPECIALIZED LOAN SERVI**<br>**2nd Mortg**<br><br>**32231-25th Ave SW** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 1000294684 | * (719) | 65,351 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>**WILSHIRE CREDIT CORP**<br>**2nd Mortg**<br><br>**524 SW 321st St** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 1016700 | (390) | 43,806 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>**AMEX** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. -017604809011383962 | 573 | 19,103 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>**MBNA AMERICA** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 96 | 416 | 17,266 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>**CHASE** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 5184450110269127 | 507 | 14,515 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>**CHASE** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 4417168415559842 | 343 | 14,140 |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature:<br>X | Date<br>11/2/2006 | Co-Borrower's Signature:<br>X Elaine Frazier | Date<br>11/3/06 |
|---|---|---|---|

Fannie Mae Form 1003  07/05
CALYX Form 1003 cont.frm 9/05

Page 5 of 5

Freddie Mac Form 65  07/05

CMG000015

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:<br>**Bill Frazier** | Agency Case Number: |
|---|---|---|
| | Co-Borrower:<br>**Elaine Frazier** | Lender Case Number:<br>60510822 |

### ASSETS AND LIABILITIES

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>CHASE | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 4366163844975862 | 174 | 7,591 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>CAPITAL 1 BK | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 400344188729 | 182 | 7,316 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>CHASE | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 4357870200004817 | 175 | 6,848 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>CHASE | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 5417122605184587 | 127 | 6,399 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>MBNA AMERICA | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 1625 | 159 | 6,159 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>CITI | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 542418032224 | 84 | 5,177 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>CBUSASEARS | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. 512107181261 | 112 | 4,902 |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X | 11/3/2006 | X Elaine Frazier | 11 3 06 |

Fannie Mae Form 1003   07/05
CALYX Form 1003 LoanScan firm 9/05

Page 5 of 5

Freddie Mac Form 65   07/05

CMG000016

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: Bill Frazier | Agency Case Number: |
| --- | --- | --- |
| | Co-Borrower: Elaine Frazier | Lender Case Number: 60510622 |

### ASSETS AND LIABILITIES

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
| --- | --- | --- | --- | --- |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company CHASE | $ Payt./Mos. | $ |
| Acct. no.                     $ | | Acct. No.  4417129997430737 | 102 | 3,885 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company CITI | $ Payt./Mos. | $ |
| Acct. no.                     $ | | Acct. No.  427138206989 | 51 | 2,463 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company NORDSTROM FSB | $ Payt./Mos. | $ |
| Acct. no.                     $ | | Acct. No.  13875 | 85 | 1,650 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company DSNB MACYS | $ Payt./Mos. | $ |
| Acct. no.                     $ | | Acct. No.  4855893084520 | 5 | 130 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company AMEX | $ Payt./Mos. | $ |
| Acct. no.                     $ | | Acct. No.  -017804809011331392 | (31) | 31 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company Argent Mortgage Company (Replaced Countrywide and Americas Serv & concurrent CMG refi 2014 S 308th St | $ Payt./Mos. | $ |
| Acct. no.                     $ | | Acct. No.  0100792191 | (3,946) | 450,000 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company CMG LOAN (PAYING OFF ARGENT) 2014 S 308TH ST | $ Payt./Mos. | $ |
| Acct. no.                     $ | | Acct. no. | (2,661) | 412,000 |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: X | Date 11/3/2006 | Co-Borrower's Signature: X  Elaine Frazier | Date 11/3/06 |
| --- | --- | --- | --- |

Fannie Mae Form 1003   07/05
CALYX Form 4003 Lnap5asl.frm 6/05

Page 5 of 5

Freddie Mac Form 65   07/05

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:<br>**Bill Frazier** | Agency Case Number: |
|---|---|---|
| | Co-Borrower:<br>**Elaine Frazier** | Lender Case Number:<br>60510622 |

### VI. ASSETS AND LIABILITIES

| ASSETS | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company<br>**CMG MORTGAGE**<br>**PAYING OFF ARGENT**<br><br>**2014 S 308TH STREET** | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | (570) | 51,500 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payt./Mos. | $ |
| Acct. no. | $ | Acct. No. | | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature:<br>X | Date<br>11/3/06 | Co-Borrower's Signature:<br>X Elaine Frazier | Date<br>11/3/06 |
|---|---|---|---|

Fannie Mae Form 1003   07/05
CALYX Form loac.frm 8/06

Page 5 of 5

Freddie Mac Form 65   07/05

CMG000018

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:<br>**Bill Frazier** | Agency Case Number: |
|---|---|---|
| | Co-Borrower:<br>**Elaine Frazier** | Lender Case Number:<br>60510622 |

### VI. ASSETS AND LIABILITIES

**Schedule of Real Estate Owned**

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|---|
| 2014 S 308th St | | | Argent Mortgage | | | | | |
| Federal Way, WA 98003 | R | SFR | 515,000 | 463,500 | | 3,136 | 435 | -3,571 |
| 32613 39th Pl SW | | | GMAC | | | | | |
| Federal Way, WA 98023 | R | SFR | 500,000 | 457,425 | 2,200 | 2,725 | 378 | -1,453 |
| 174 Florentia | | | Chase | | | | | |
| Seattle, WA | R | CONDO | 400,000 | 198,351 | 1,950 | 1,149 | 462 | -149 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date | Co-Borrower's Signature: | Date |
|---|---|---|---|
| X | 11/3/2006 | X  Elaine Frazier | 11/3/06 |

Fannie Mae Form 1003   07/05
CALYX Form Loanapp6.frm 09/05

Page 5 of 5

Freddie Mac Form 65   07/05

CMG000019

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 326,786.00 |
| e. Estimated prepaid items | 2,192.17 |
| f. Estimated closing costs | 6,877.00 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 335,855.17 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 387,200.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 387,200.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -51,344.83 |

## VIII. DECLARATIONS

| If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | ☐ | ☑ | ☐ | ☑ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☑ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☑ |
| d. Are you a party to a lawsuit? | ☐ | ☑ | ☐ | ☑ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | ☐ | ☑ | ☐ | ☑ |
| (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ | ☑ | ☐ | ☑ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☑ |
| h. Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☑ |
| i. Are you a co-maker or endorser on a note? | ☐ | ☑ | ☐ | ☑ |
| j. Are you a U. S. citizen? | ☑ | ☐ | ☑ | ☐ |
| k. Are you a permanent resident alien? | ☐ | ☑ | ☐ | ☑ |
| l. Do you intend to occupy the property as your primary residence? If "Yes," complete question below. | ☑ | ☐ | ☑ | ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☑ | ☐ | ☑ | ☐ |
| (1) What type of property did you own-principal residence (PR), second home (SH), or investment property (IP)? | PR | | PR | |
| (2) How did you hold title to the home-solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | SP | | SP | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature X | Date 11/3/2006 | Co-Borrower's Signature X Teaune Frazier | Date 11/3/06 |
|---|---|---|---|

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish this information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER ☐ I do not wish to furnish this information | | | CO-BORROWER ☐ I do not wish to furnish this information | | |
|---|---|---|---|---|---|
| **Ethnicity:** ☐ Hispanic or Latino  ☑ Not Hispanic or Latino | | | **Ethnicity:** ☐ Hispanic or Latino  ☑ Not Hispanic or Latino | | |
| **Race:** ☐ American Indian or Alaska Native  ☐ Asian  ☑ Black or African American | | | **Race:** ☐ American Indian or Alaska Native  ☐ Asian  ☑ Black or African American | | |
| ☐ Native Hawaiian or Other Pacific Islander  ☐ White | | | ☐ Native Hawaiian or Other Pacific Islander  ☐ White | | |
| **Sex:** ☐ Female  ☑ Male | | | **Sex:** ☑ Female  ☐ Male | | |

| To be Completed by Interviewer This application was taken by: | Interviewer's Name (print or type) Jim Bowman | | Name and Address of Interviewer's Employer CMG Mortgage Inc. dba Pacific Trust Lending |
|---|---|---|---|
| ☐ Face-to-face Interview ☐ Mail ☑ Telephone ☐ Internet | Interviewer's Signature | Date 11/05/06 | 2505 South 320th St, Suite 260 Federal Way, WA 98003 |
| | Interviewer's Phone Number (incl. area code) 253-839-9088 | | (P) 253-839-9088 (F) 253-839-9095 |

| | |
|---|---|
| Fannie Mae Form 1003   07/05 | Freddie Mac Form 65   07/05 |
| CALYX Form Loanapp4.frm 09/05 | |

CMG000020

# EXHIBIT 9

## AURORA LOAN SERVICES
*A Lehman Brothers Company*

August 7, 2007

CMG Mortgage Inc.
3160 Crow Canyon Road
San Ramon, CA 94583

Attn:    Christopher George

Re:    Aurora Loan Number:      0033574492
       Borrower:              Bill Frazier
       Property Address:      32231 25th Ave SW
                             Federal Way, WA 98023

Dear Mr. George:

Pursuant to the Indemnification Agreement executed on April 23, 2007 for the subject loan, (copy attached) Section 1: Indemnification states,

     ..."Agreement to Repurchase. The Seller agrees to repurchase the Mortgage loan(s) no later than July 31, 2007 if not paid in full by that date."

Aurora hereby informs the Seller, CMG Mortgage, Inc., that the Repurchase of the above subject loan is $416,871.44 (see breakdown below) less the $0.00 on deposit. Therefore, additional funds in the amount of $416,871.44 are required to satisfy the repurchase good through August 17, 2007.

| | |
|---|---|
| Principal Balance: | $387,200.00 |
| Interest Due | 19,214.78 |
| Corporate Advances | 3,231.64 |
| Late Fees | 441.66 |
| Premium | 6,783.36 |
| Total Due | $416,871.44 |
| Less Seller Deposit | 0.00 |
| **Balance Due** | **$416,871.44** |

327 Inverness Drive South
Englewood, CO 80112

CMG000413

● Page 2                                                                                    August 7, 2007

Please wire funds in the amount of $416,871.44. See the attached Contract Administration Form for Wiring Instructions.

If you have any questions, please contact me at (720) 945-4740 or at sflaig@*alservices.com* within 5 days of the date of this letter.

Thank you for your prompt response to this letter.

Sincerely,

Shirley Flaig
Claims Analyst
Contract Administration

CMG000414

# EXHIBIT 10

MAY 03 2006 1:25PM    HP LASERJET 3200                                    P.7

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

_____                          _____
Borrower                                               Co-Borrower

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☑ Conventional  ☐ Other (explain): ☐ FHA  ☐ USDA/Rural Housing Service | | Agency Case Number | Lender Case Number 50510059 |
|---|---|---|---|---|
| Amount $ 99,600 | Interest Rate 11.750 % | No. of Months 360/180 | Amortization Type: ☑ Fixed Rate  ☐ Other (explain): ☐ GPM  ☐ ARM (type): | |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & ZIP) | No. of Units |
|---|---|
| 4704 Christansen Muck Rd East, Eatonville, WA 98328  County: Pierce | 1 |
| Legal Description of Subject Property (attach description if necessary) see title | Year Built 2006 |

| Purpose of Loan ☑ Purchase  ☐ Construction  ☐ Other (explain): ☐ Refinance  ☐ Construction-Permanent | Property will be: ☑ Primary Residence  ☐ Secondary Residence  ☐ Investment |
|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+b) $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost $ | Amount Existing Liens $ | Purpose of Refinance | Describe Improvements  ☐ made  ☐ to be made Cost. $ |
|---|---|---|---|---|

| Title will be held in what Name(s) Josh J Wilkins | Manner in which Title will be held Single man | Estate will be held in: ☑ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|
| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) Cash on Hand | | |

## III. BORROWER INFORMATION

| Borrower's Name (include Jr. or Sr. if applicable) | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|
| Josh J Wilkins | |

| Social Security Number 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 | Home Phone (incl. area code) 253-350-5331 | DOB (mm/dd/yyyy) 11/18/1978 | Yrs. School 16 | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☐ Married  ☑ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no.       ages | ☐ Married  ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no.       ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP)  ☑ Own  ☐ Rent  20  No. Yrs. 409 Hardefeldt St Orting, WA 98360 | Present Address (street, city, state, ZIP)  ☐ Own  ☐ Rent ____ No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address PO Box 1433 Orting, WA 98360 | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent ____ No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent ____ No. Yrs. |
|---|---|
| Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent ____ No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent ____ No. Yrs. |

CMG000421

MAY 03 2006 1:25PM    HP LASERJET 3200                                    P.8

## IV. EMPLOYMENT INFORMATION

| Name & Address of Employer | ☐ Self Employed | Yrs. on this job | Name & Address of Employer | ☐ Self Employed | Yrs. on this job |
|---|---|---|---|---|---|
| | | Yrs. employed in this line of work/profession | | | Yrs. employed in this line of work/profession |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |

*If employed in current position for less than two years or if currently employed in more than one position, complete the following:*

| Name & Address of Employer | ☐ Self Employed | Dates (from-to) | Name & Address of Employer | ☐ Self Employed | Dates (from-to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |

| Name & Address of Employer | ☐ Self Employed | Dates (from-to) | Name & Address of Employer | ☐ Self Employed | Dates (from-to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |

| Name & Address of Employer | ☐ Self Employed | Dates (from-to) | Name & Address of Employer | ☐ Self Employed | Dates (from-to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |

| Name & Address of Employer | ☐ Self Employed | Dates (from-to) | Name & Address of Employer | ☐ Self Employed | Dates (from-to) |
|---|---|---|---|---|---|
| | | Monthly Income $ | | | Monthly Income $ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | Position/Title/Type of Business | | Business Phone (incl. area code) |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ | $ | $ | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | 925.00 | $ 2,717.79 |
| Bonuses | | | | Other Financing (P&I) | 312.00 | 1,005.37 |
| Commissions | | | | Hazard Insurance | Inc | 116.20 |
| Dividends/Interest | | | | Real Estate Taxes | Inc | 498.00 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ | $ | $ | Total | $ 1,237.00 | $ 4,337.36 |

\* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

**Describe Other Income**    *Notice:* Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

Fannie Mae Form 1003   07/05
CALYX Form Loanapp2.fm 09/05

Page 2 of 5    Borrower _____    Co-Borrower _____

Freddie Mac Form 65   07/05

CMG000422

MAY 03 2006 1:27PM    HP LASERJET 3200

p.9

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed by that spouse or other person also.

Completed [✓] Jointly   ☐ Not Jointly

| ASSETS Description | Cash or Market Value | LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use the continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
| List checking and savings accounts below | | Name and address of Company LITTON LOAN SERVICING | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. 00000000014512511 | (925) | 144,672 |
| Acct. no. | $ | Name and address of Company LITTON LOAN SERVICING | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. 00000000014512388 | (316) | 35,283 |
| Acct. no | $ | Name and address of Company GROUP HEALTH C U | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | Acct. no. 132390151 | 336 | 19,789 |
| Acct. no. | $ | Name and address of Company GLELSUBONY AS ELT FOR | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number description) | $ | | | |
| | | Acct. no. 1539843788833622 | 94 | 17,809 |
| Life Insurance net cash value | $ | Name and address of Company HSBC/BSBUY | $ Payment/Months | $ |
| Face amount: $ | | | | |
| Subtotal Liquid Assets | $ | Acct. no. 271215 | 10 | 500 |
| Real estate owned (enter market value from schedule of real estate owned) | $  300,000 | Name and address of Company MBNA AMERICA | $ Payment/Months | $ |
| Vested interest in retirement fund | $ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | Acct. no. 6045 | 15 | 76 |
| Automobiles owned (make and year) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | $ | |
| Total Assets a. | $  300,000 | $  80,871 | Total Liabilities b. | $  219,129 |

**Schedule of Real Estate Owned** (if additional properties are owned, use continuation sheet)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|---|
| 409 Hardefeldt St Orting, WA 98360 | R | SFR | $  300,000 | 180,955 | $ | $  1,243 | Inc | -1,243 |
| | | | Will be rented out after purchase | | | | | |
| | Totals | | $  300,000 | $  180,955 | $ | $  1,243 | $ | -$  1,243 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|

Fannie Mae Form 1003   07/05
CALYX Form Loanapp3.frm 09/05

Page 3 of 5

Borrower _____
Co-Borrower _____

Freddie Mac Form 65   07/05

CMG000423

MAY 03 2006 1:27PM   HP LASERJET 3200                                    P.10

| | | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | Borrower | | Co-Borrower | |
|---|---|---|---|---|---|---|
| | | | Yes | No | Yes | No |
| a. Purchase price | $ 498,000.00 | | | | | |
| b. Alterations, improvements, repairs | | a. Are there any outstanding judgments against you? | ☐ | ☑ | ☐ | ☐ |
| c. Land (if acquired separately) | | b. Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☐ |
| d. Refinance (incl. debts to be paid off) | | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☐ |
| e. Estimated prepaid items | | | | | | |
| f. Estimated closing costs | 1,846.00 | d. Are you a party to a lawsuit? | ☐ | ☑ | ☐ | ☐ |
| g. PMI, MIP, Funding Fee | | e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | ☐ | ☑ | ☐ | ☐ |
| h. Discount (if Borrower will pay) | | (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | | | |
| i. Total costs (add items a through h) | 499,846.00 | | | | | |
| j. Subordinate financing | | | | | | |
| k. Borrower's closing costs paid by Seller | | f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ | ☑ | ☐ | ☐ |
| l. Other Credits (explain) | | | | | | |
| | | g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☐ |
| | | h. Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☐ |
| | | i. Are you a co-maker or endorser on a note? | ☐ | ☑ | ☐ | ☐ |
| New First Mortgage | 398,400.00 | | | | | |
| New 1st Mtg Closing Costs | -10,987.83 | j. Are you a U. S. citizen? | ☑ | ☐ | ☐ | ☐ |
| | | k. Are you a permanent resident alien? | ☐ | ☑ | ☐ | ☐ |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | | l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☑ | ☐ | ☐ | ☐ |
| n. PMI, MIP, Funding Fee financed | 99,600.00 | | | | | |
| | | m. Have you had an ownership interest in a property in the last three years? | ☑ | ☐ | ☐ | ☐ |
| o. Loan amount (add m & n) | | (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | | PR | | |
| | 99,600.00 | (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | S | | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | 12,813.63 | | | | | |

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 5-3-06 | X | |

X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information | | | | CO-BORROWER | ☐ I do not wish to furnish this information | | |
|---|---|---|---|---|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino | ☑ Not Hispanic or Latino | | | Ethnicity: | ☐ Hispanic or Latino | ☐ Not Hispanic or Latino | |
| Race: | ☐ American Indian or Alaska Native | ☐ Asian | ☐ Black or African American | | Race: | ☐ American Indian or Alaska Native | ☐ Asian | ☐ Black or African American |
| | ☐ Native Hawaiian or Other Pacific Islander | ☑ White | | | | ☐ Native Hawaiian or Other Pacific Islander | ☐ White | |
| Sex: | ☐ Female | ☑ Male | | | Sex: | ☐ Female | ☐ Male | |

| To be Completed by Interviewer This application was taken by: | Interviewer's Name (print or type) Chris Fox | | Name and Address of Interviewer's Employer CMG, Inc. dba Pacific Trust Lending |
|---|---|---|---|
| ☐ Face-to-face interview | Interviewer's Signature | Date 05/3/06 | 2505 S. 320th St. Ste. 28 Federal Wa, WA 98003 |
| ☐ Mail | | | |
| ☑ Telephone | Interviewer's Phone Number (incl. area code) 253-839-9088 | | (P) 253-839-908 |
| ☐ Internet | | | (F) 253-839-9093 |

Fannie Mae Form 1003  07/05
CALYX Form Loanapp4.frm 09/05

Page 4 of 5

Freddie Mac Form 65  07/05

CMG000424



| | Residential Loan Application | | |
|---|---|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower: Josh J Wilkins | | Agency Case Number: |
| | Co-Borrower: | | Lender Case Number: 60510069 |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | 5-3-06 | X | |

Freddie Mac Form 65  07/05
CALYX Form LnapScnt.frm 09/05

Page 5 of 5

Fannie Mae Form 1003  07/05

CMG000425

# EXHIBIT 11

DLJ Mortgage Capital, Inc.
C/O Credit Suisse Securities (USA) LLC
Eleven Madison Avenue - 4th Floor
New York, NY 10010-3629

Purchaser: CMG Mortgage, Inc.

Issue Date: N/A - Actual
Settlement Date: February 26, 2008

| DLJMC Loan # | Servicer Loan # | Seller Loan # | Name | Settlement Date | Lien Position | Servicer | As of Date | Balance | Next Due Date | Note Rate | Daily Interest | Days Interest To Repurchase | Total Interest | Repurchase Price | Recapture of Premium | Total Due DLJMC | Loan Status | Reason For Repurchase | Date Requested |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Active 1st Liens** | | | | | | | | | | | | | | | | | | | |
| 500880333 | 10093599 | 30532890 | ANDREWS | 11/01/06 | 1 | FAIRBK | 01/31/08 | $746,012.80 | 12/01/07 | 7.3750 | $152.83 | 115 | $17,575.34 | 102.0013 | $14,929.95 | $778,518.09 | EPD - Feb payment 60 | 04/27/07 |
| 500889902 | 10236388 | 22530740 | TOLSON | 11/29/06 | 1 | FAIRBK | 01/31/08 | $139,400.00 | 08/01/07 | 7.5000 | $28.83 | 235 | $6,775.83 | 103.0948 | $4,283.20 | $149,459.04 | Foreclosure | 02/21/07 |
| 500942072 | 10806727 | 31504384 | DAVIDSON | 03/13/07 | 1 | FAIRBK | 01/31/08 | $57,865.75 | 07/01/07 | 7.7500 | $12.46 | 265 | $3,301.16 | 102.8421 | $1,644.60 | $62,811.51 | Foreclosure | 07/18/07 |
| | | | | | | | | $942,278.55 | | | | | $27,652.33 | | $20,857.76 | $990,788.64 | | | |
| **2nds and Liquidated 1st Liens** | | | | | | | | | | | | | | | | | | | |
| 500762514 | 1205317017 | 60510029 | WILKINS | 05/17/06 | 1 | WELLS | 01/31/08 | $2,983.36 | 02/01/07 | 0.0000 | $0.00 | 415 | $0.00 | 100.0000 | $0.00 | $2,983.36 | Make Whole | 60 days Late for August | 02/09/07 |
| 500769628 | 1205321051 | 30531803 | SIMPAO | 05/30/06 | 1 | FAIRBK | 01/31/08 | $92,858.97 | 08/01/06 | 0.0000 | $0.00 | 595 | $0.00 | 100.0000 | $0.00 | $92,858.97 | Make Whole | 60 Days Late for Aug, A | 10/19/06 |
| 500884761 | 10185411 | 32503137 | ROSAS | 11/10/06 | 1 | FAIRBK | 01/31/08 | $7,026.28 | 04/01/07 | 0.0000 | $0.00 | 355 | $0.00 | 100.0000 | $0.00 | $7,026.28 | Make Whole | 30 Days Late for Feb; N | 06/21/07 |
| 500889015 | 10186765 | 22530820 | SIMKUS | 11/13/06 | 1 | FAIRBK | 01/31/08 | $75,150.46 | 02/01/07 | 0.0000 | $0.00 | 475 | $0.00 | 100.0000 | $0.00 | $75,150.46 | Make Whole | 60 Days Late for Dec & | 02/21/07 |
| 500797735 | 1205321808 | 31503581 | MAIRS | 07/12/06 | 1 | WELLS | 01/31/08 | $70,060.85 | 10/01/06 | 0.0000 | $0.00 | 535 | $0.00 | 100.0000 | $0.00 | $70,060.85 | Make Whole | 60 days late for October | 02/09/07 |
| 500577115 | 9477118 | 31501894 | MCDOWELL | 10/18/05 | 2 | FAIRBK | 01/31/08 | $139,827.14 | 03/01/06 | 12.0000 | $46.61 | 745 | $34,723.74 | 97.8250 | -$3,320.89 | $171,229.99 | Unsecured | 60 days Late for Jan & l | 03/16/06 |
| 500762519 | 9444035 | 60510069 | WILKINS | 05/22/06 | 2 | FAIRBK | 01/31/08 | $99,539.47 | 09/01/06 | 11.7500 | $32.49 | 565 | $18,366.05 | 99.1875 | -$908.76 | $117,096.76 | No Equity Loan | 60 Days Late for July | 09/26/06 |
| 500797748 | 9602723 | 31503582 | MAIRS | 07/03/06 | 2 | FAIRBK | 01/31/08 | $50,154.03 | 10/01/06 | 11.0000 | $15.32 | 535 | $8,198.79 | 98.0625 | -$971.73 | $57,381.09 | Unsecured | 90 Days Late for Oct, A | 01/12/07 |
| 500881619 | 10099091 | 30533121 | POOLE | 11/03/06 | 2 | FAIRBK | 01/31/08 | $84,629.50 | 10/01/07 | 10.2500 | $24.10 | 175 | $4,216.78 | 101.1875 | $1,004.98 | $89,851.26 | Bankruptcy | EPD - 01/01 & 02/01 pr | 06/28/07 |
| 500889028 | 10186773 | 22530821 | SIMKUS | 11/13/06 | 2 | FAIRBK | 01/31/08 | $65,367.83 | 01/01/07 | 9.5000 | $17.25 | 445 | $7,676.18 | 102.1000 | $1,372.72 | $74,416.74 | Unsecured | 60 Days Late for Jan & : | 03/26/07 |
| 500889930 | 10236396 | 22530741 | TOLSON | 11/29/06 | 2 | FAIRBK | 01/31/08 | $34,488.48 | 02/01/07 | 11.8750 | $11.38 | 415 | $4,721.21 | 96.5000 | -$1,207.10 | $38,002.59 | No Equity Loan | 60 Days Jan & 30 Days | 03/26/07 |
| | | | | | | | | $722,080.37 | | | | | $77,892.75 | | -$3,930.78 | $796,048.33 | | | |
| | 14 | | | | | | | $1,664,364.92 | | | $341.26 | | $105,545.08 | | $16,926.98 | | | | |

The Following are DLJ Mortgage Capital, Inc. wiring instructions:
Citibank NYC
ABA : 021-000-089
A/C # 30489038
A/C: DLJ Mortgage Capital, Inc.
Reference: CMG Mortgage, Inc.
Attn: Olivia Hafner

TOTAL DUE DLJ MORTGAGE CAPITAL, INC.: $3,673,673.95

Per Diem (for repurchase after settlement date) $341.26
In addition to the foregoing, please note that you (The Purchaser) shall be responsible to reimburse the loan servicer for
outstanding corporate and escrow advances related to the loans at the time of the servicing transfer.

CMG002228

# Credit Suisse Securities (USA) LLC

DLJ Mortgage Capital, Inc. ●Eleven Madison Avenue, 4th Floor, New York, New York 10010-3629 ●(212) 325-2000

## By Overnight Courier

February 09, 2007

Mr. Paul Chevez
CMG Mortgage, Inc.
3150 Crow Canyon Road
Suite 210
San Ramon, CA, 94583 USA

### RE: Repurchase of Mortgage Loans With Early Payment Defaults

Dear Mr. Chevez:

Pursuant to Section --- of the , dated as of January 01, 1850 (the "Agreement"), by and between DLJ Mortgage Capital, Inc. ("DLJMC") and CMG Mortgage, Inc. (the "Seller"), please accept this letter as DLJMC's request for repurchase of the Loans (as defined herein) in the amount of $714,725.66. All terms used herein and not otherwise defined shall have the meanings ascribed to them in the agreement.

Section --- of the Agreement requires the Seller to repurchase at the repurchase price, each loan with an early payment default (as described in such Section). The borrower's failure to pay certain monthly payments due under the Agreement for each of the loans listed on the attached Schedule A (the "Loans") violates the terms of Section --- of the Agreement. The attached schedule B details the computation of the amount due. Borrower pay history and collector comments have also been enclosed to assist you in the review.

Accordingly, please wire the above funds on February 16, 2007 to DLJMC as follows:

> Citibank
> New York, NY
> ABA #:021-000-089
> Account:DLJ Mortgage Capital, Inc.
> Account #:30489038
> Attn:Frederick Hahn
> Ref: CMG Mortgage, Inc.

For a repurchase date after the above date, please increase the amount due DLJMC by $146.71 per diem interest. In addition to the foregoing, the Seller shall reimburse the loan servicer for outstanding corporate and escrow advances related to the Loans at the time of the servicing transfer.

CMG001022

If have any questions or if you should require any additional information, please contact Ms. Olivia Hafner of our Client Management Group at 212-325-7624 or e-mail her at olivia.hafner@credit-suisse.com.

Please call me at (212) 538-1426 when the funds are wired to DLJMC and to discuss the return of the collateral files.

Sincerely,
DLJ Mortgage Capital, Inc.


By: Rick Hahn

cc:  – Olivia Hafner
cc:  – Kelvin Fynaardt

# EXHIBIT 12

## BROKER-LOAN ORIGINATOR EMPLOYMENT AGREEMENT

This Broker-Loan Originator Employment Agreement ("Agreement") is entered into by and between CMG Mortgage, Inc., a California corporation doing business as _Pacific Trust Lending_ (hereinafter "Broker"), and _Jim Bowman_ , (hereinafter "Originator").

## RECITALS

A.    Broker is engaged in the business of arranging residential mortgage loans for its borrowers.

B.    Broker desires to employ Originator to assist Broker in arranging residential mortgage loans for Broker's borrowers.

C.    Originator desires to arrange residential mortgage loans for Broker's borrowers on the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants, promises and conditions set forth herein, Broker and Originator mutually agree as follows:

### 1.    EFFECTIVE DATE AND AT-WILL NATURE OF EMPLOYMENT

1.1    Effective Date. This Agreement shall become effective on _12/15/03_ , or at such time as the last party to sign this Agreement has delivered a fully executed copy thereof to the other party, whichever is the last to occur (the "Effective Date").  .

1.2    At Will Employment. Originator understands and agrees that he/she is employed by Broker on an "at will" basis. As such, this Agreement is terminable by either party at any time, with or without cause. In addition, Originator understands and agrees that any positive comments or evaluations by Broker as to Originator's performance, whether oral or written, shall in no way contradict the parties' intent that this Agreement is terminable at will, nor shall any such comments or evaluations alter the nature of Originator's at will employment with Broker.

### 2.    OBLIGATIONS OF ORIGINATOR

2.1    Compliance with Law. Originator agrees to arrange residential mortgage loans on behalf of Broker's borrowers, and to perform such related duties as are customary in the mortgage brokerage business or as may reasonably be required from time to time by Broker. Originator agrees during the term of this Agreement to remain apprised of and to comply with all United States Veteran's Administration ("VA"), United States Department of Housing and Urban Development ("HUD"), Federal Housing Administration ("FHA"), Federal National Mortgage Association ("FNMA"), Government National Mortgage Association ("GNMA") and Federal Home Loan Mortgage Corporation ("FHLMC") rules and regulations pertaining to the

Page 1 of 8

CMG002269

brokering of residential mortgage loans and to keep informed of, and to comply with, all federal, state and local laws governing residential mortgage loan origination.

    2.2    License. Originator warrants that he/she is licensed, registered and/or otherwise legally entitled to perform the services contemplated by this Agreement in the state in which such services are to be performed, and that he/she will remain as such throughout the term of his/her employment with Broker.

    2.3    Broker Forms and Instructions. Originator agrees to utilize all forms supplied by Broker which Broker determines, in its sole discretion, are necessary for the provision of the services to be performed by Originator while employed by Broker. Originator further agrees to perform the services contemplated under this Agreement in accordance with any manual or other training materials provided by Broker, and in accordance with any Broker advertising or promotional material then in effect.

    2.4    Markups. Originator acknowledges and agrees that he/she will comply with Broker's policy of never adding a surcharge or mark-up to the cost of any third party settlement service when performing loan origination services pursuant to this Agreement.

    2.5    Good Faith Estimate ("GFE"). Notwithstanding that Originator agrees to remain apprised of and to comply with all applicable federal, state and local laws and regulations related to residential mortgage loan origination, Originator acknowledges the critical importance of providing every borrower with a timely and complete GFE. Originator shall provide each borrower for which he/she provides loan origination services with a timely and complete GFE, and shall ensure that a copy of the GFE is placed in each such loan file. Broker shall have no obligation to pay Originator a commission otherwise earned under the terms of this Agreement on any loan for which Originator has failed to place, or caused to be placed, a GFE in a borrower's loan file, nor shall Broker have any obligation to pay any commission on any loan originated by Originator in which a GFE cannot be found by Broker in the borrower's loan file after the time that such disclosure should have been made.

    2.6    Assistants. Originator shall not hire, employ, compensate or utilize any licensed or unlicensed assistant who is not an employee of Broker.

    2.7    Location. Originator shall perform the services under this Agreement only at the branch or location at which he/she is employed by Broker. Originator shall not perform services pursuant to this Agreement at any other location without the prior written consent of Broker.

    2.8    Broker's Name. All loans, and all activities performed by Originator under this Agreement, shall be completed in the name of Broker.

Page 2 of 8

CMG002270

2.9    Payments. All loan fees, commissions, broker rebates, reimbursements and/or other income shall be payable to Broker.

2.10    Documents. Originator acknowledges that all documents received or prepared by Originator pertaining to the business of Broker are, and shall remain, the sole property of Broker.

### 3.    COMPENSATION

3.1    Commissions. As Originator's sole compensation, Broker agrees to pay Originator a commission on residential mortgage loans arranged by Originator on behalf of Broker's borrowers which thereafter fund and close. Originator shall be compensated in accordance with the compensation schedule attached to this Agreement as Exhibit "B." Such commissions shall be deemed earned by Originator only as and when the applicable fees and/or charges in connection with any such loans are actually received by Broker.

3.2    Modification of Commission Schedule. The compensation schedule at Exhibit "B" may be changed from time to time at the sole discretion of Broker. Any such change shall not affect any other terms and/or conditions of this Agreement or of Originator's employment.

3.3    Offsets. Notwithstanding anything to the contrary in this Agreement, Broker, in its sole discretion, may offset against any money due Originator from Broker a dollar amount equal to any loss, damage or expense, including reasonable attorneys' fees and court costs, incurred by Broker as a result of Originator's gross negligence, willful misconduct or knowing violation of law, including, without limitation, any loss, damage or expense related directly or indirectly to any intentional misrepresentation made by Originator to a borrower.

3.4    Loan Fraud. In the event that Broker, in its sole discretion, determines that Originator has violated Broker's policy on Loan Fraud, a copy of which is attached to this Agreement as Exhibit "A," Originator agrees that he/she shall not receive any commission on any loan arranged in violation of such policy. Originator agrees to repay Broker any compensation earned on any loan which was made in violation of Broker's policy on Loan Fraud which was received by Originator before Broker discovered such violation. Originator's direct or indirect involvement in loan fraud is grounds for immediate disciplinary action, up to and including termination of Originator's employment.

3.5    Anti-Churning Policy. Originator acknowledges and agrees that it is Broker's policy and practice to require its loan originators to pay any refund demanded by a lender due to a violation of that lender's "anti-churning" policies. Originator agrees that he/she shall be solely responsible for the entire payment of any such refund, either through direct repayment to the lender or by any other means authorized under this Agreement. Originator acknowledges that the term "churning" generally describes a practice wherein a lender pays a loan originator a

Page 3 of 8

CMG002271

broker rebate, and then that same loan originator arranges another loan for that same borrower, refinancing the first loan, all within a prohibited period of time set by the lender. In such an event, the lender may require a refund of any previously paid broker rebate. Originator acknowledges and agrees that each lender has established its own policies with respect to the prohibition of "churning," and that he/she covenants to remain apprised of and to comply with each such policy. Failure to do so will result in Originator being required to refund to lender any amounts claimed by lender for a violation of its anti-churning policies.

3.6    Broker Rebate Refunds.  Certain lenders with whom Broker and Originator place loans require the refund, in full, of any and all broker rebates paid in connection with a loan in the event it is refinanced within a specified period of time. This lender requirement that the rebate be refunded may exist despite the lack of any involvement in the refinancing by Broker or Originator.  Broker and Originator agree to share in any and all such refunds, in accordance with Originator's commission split. Originator agrees to pay Originator's portion of each such refund to Broker either (a) within thirty (30) days of demand by Broker; or (b) by having Broker offset such payment against any sums owed Originator by Broker.

## 4.    AUTHORITY

Originator acknowledges and agrees that he/she has no right or authority to bind Broker to any agreement, contract or undertaking without the prior written approval of Broker.

## 5.    ADVERTISING AND TELEMARKETING

5.1    Advertising.  Originator shall not place any advertisement in any medium related to residential mortgage loan origination without the prior, written consent of Broker. Originator agrees that any such advertising which is thereafter run by Originator shall comply with all applicable federal, state and local advertising laws, and any regulations or ordinances related thereto. Originator agrees to indemnify and hold Broker harmless from all suits, claims, demands, losses and/or liabilities, including court costs and reasonable attorneys' fees, arising from his/her violation of any federal, state or local advertising laws.

5.2    Telemarketing.  Originator shall not engage in any telemarketing related to residential mortgage loan origination without the prior, written consent of Broker. Originator agrees that any such telemarketing which is thereafter engaged in or initiated by Originator shall comply with all applicable federal, state and local telemarketing laws, and any regulations or ordinances related thereto. Originator agrees to indemnify and hold Broker harmless from all suits, claims, demands, losses and/or liabilities, including court costs and reasonable attorneys' fees, arising from his/her violation of any federal, state or local telemarketing laws.

Page 4 of 8

CMG002272

## 6.    NON-COMPETITION

6.1    Best Efforts. Originator shall at all times faithfully and industriously perform all services, acts and other things necessary to perform his/her obligations under this Agreement, using his/her best efforts consistent with good industry practices, the long-term best interests and reputation of Broker and the policies and procedures set by the management of Broker. Originator agrees that he/she shall not enter into the employ of, or perform services for, a competitor of Broker, or any other company engaged in the business of mortgage loan origination, while employed by Broker.

6.2    Confidential Information. Originator acknowledges that Broker owns proprietary Confidential Information which constitutes a valuable, special and unique asset of Broker. This Confidential Information has been compiled and developed by Broker, and its affiliated businesses, over time at considerable expense and effort, has not been divulged to third parties, and is not known to Broker's competitors, who could have obtained economic value from such information had it been known. As used herein, the term "Confidential Information" includes all information and materials belonging to, used by, or in the possession of Broker and its affiliated businesses relating to their products, processes, services, technologies, inventions, patents, ideas, contracts, forms, records, data, processes, financial information, business strategies, pricing, marketing plans, customer lists, and trade secrets of every kind and character, but shall not include (a) information that was already within the public domain at the time the information was acquired by Originator, or (b) information that subsequently becomes public through no act or omission of Originator. Originator agrees that all Confidential Information is and shall continue to be the exclusive property of Broker, whether or not prepared in whole or in part by Originator and whether or not disclosed to or entrusted to Originator's custody. Originator's obligation to preserve the secrecy of Confidential Information shall survive the termination of his/her employment with Broker. Upon termination of Originator's employment, Originator agrees to return to Broker all files, papers, and materials of any kind containing or relating to Confidential Information.

6.3    Non-Solicitation. Originator agrees that for a period of one (1) year after the termination of his/her employment with Broker that he/she shall not induce or attempt to induce any employee of Broker, or any independent contractor providing services to Broker, to discontinue his/her employment or association with Broker for the purpose of obtaining employment with or providing services to a competitor of Broker, including Originator.

## 7.    INDEMNIFICATION

Originator agrees to indemnify, defend and hold Broker harmless from all suits, claims, demands, losses and/or liabilities, including court costs and reasonable attorneys' fees, arising directly or indirectly from his/her gross negligence or willful misconduct, including, without

CMG002273

limitation, any suits, claims, demands, losses and/or liabilities related directly or indirectly to any intentional misrepresentation made by Originator to a borrower while employed by Broker.

## 8.    TERMINATION

8.1    Work in Progress.  Subject to section 3 and paragraph 8.2 herein, upon termination of Originator's employment, Originator shall be entitled to the following compensation for work in progress:

a.    One hundred percent (100%) of the amount due Originator under this Agreement on all loan transactions which close on, prior to or within sixty (60) days following the date of termination.

b.    Two-thirds (2/3) or sixty seven percent (67%) of the amount due Originator under this Agreement on all loan transactions which close more than sixty (60) days following the date of termination.

8.2    Early Termination.  In the event Originator's employment is terminated within six (6) months of the Effective Date, Originator shall receive future commissions for work in progress only as provided in  paragraph 8.1.a , and shall not be entitled to any amount pursuant to paragraph 8.1.b.

8.3    Loan Files.  Upon termination of Originator's employment, all loan files, whether pending or closed, shall remain with or be returned to Broker.

## 9.    ARBITRATION

Any dispute, claim or controversy arising out of or relating to Originator's employment with Broker, including but not limited to any claim of wrongful termination or employment discrimination or any claim arising out of or relating to this Agreement and/or the enforceability of this agreement to arbitrate, shall be determined by binding arbitration before a neutral arbitrator through the office of the American Arbitration Association ("AAA") located closest to the branch or location at which Originator is employed, unless the parties mutually agree to an alternative location for the arbitration. The arbitration shall be administered pursuant to the AAA procedures and rules then in effect. Judgment on the arbitration award may be entered in any court having jurisdiction.

The arbitrator shall, in the arbitration award, allocate all of the costs of the arbitration, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail.

**NOTICE: BY SIGNING IN THE SPACE BELOW YOU ARE
AGREEING TO HAVE ANY DISPUTE ARISING OUT OF YOUR**

CMG002274

EMPLOYMENT WITH BROKER OR THIS AGREEMENT
DECIDED BY NEUTRAL BINDING ARBITRATION AND ARE
GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE
DISPUTE LITIGATED IN A COURT OR JURY TRIAL.

I have read and understand the foregoing notice and agree to submit any dispute arising out of my employment with Broker, or under this Agreement, to binding arbitration.

_____
(Originator's Signature)

### 10.    MISCELLANEOUS PROVISIONS

10.1    Integration. This Agreement supersedes any and all other agreements, either oral or written, between Broker and Originator with respect to Originator's performance of residential mortgage loan origination services on behalf of Broker, and contains all the covenants and agreements between the parties with respect to such services in any manner whatsoever. Each party to this Agreement acknowledges that no representations, inducements, promises or agreements, oral or otherwise, have been made by any party which are not embodied herein, and that no other agreement, statement or promise not contained in this Agreement shall be valid or binding.

10.2    Assignment. This Agreement may not be assigned by Originator, but shall inure to the benefit of and be binding upon the successors and assigns of Broker.

10.3    Receipt of Agreement. Each of the parties acknowledges that he, she or it has read this Agreement in its entirety and hereby acknowledges receipt of a fully-executed copy thereof.

10.4    Captions and Section Headings. Captions and section headings used herein are for convenience only and are not part of this Agreement and shall not be used in construing it.

10.5    Amendments and Waiver. This Agreement may be amended from time to time by Broker. A waiver of any of the terms and conditions of this Agreement shall not be construed as a waiver of any other provision, nor shall any waiver constitute a continuing waiver or commit a party to providing a waiver in the future.

10.6    Further Assurances. Originator shall execute and deliver any and all additional papers, documents and other assurances and shall do any and all acts and things reasonably necessary in connection with the performance of his/her obligations hereunder to carry out the intent of this Agreement.

Page 7 of 8

CMG002275

10.7    <u>Survival</u>. The covenants, agreements, representations and warranties made herein shall survive the termination of this Agreement, unless the context clearly provides otherwise.

10.8    <u>Severability</u>. If a court of competent jurisdiction finds any provision in this Agreement to be invalid, illegal, or otherwise unenforceable, that determination will not affect any other provision of this Agreement. The invalid provision will be severed from this Agreement and all remaining provisions will continue to be enforceable by their terms and of full force and effect.

10.9    <u>Third Party Beneficiary</u>. Except as expressly set forth in paragraph 10.2 above, this Agreement has been made by, and solely for the benefit of, Broker and Originator and their respective successors and permitted assigns. Nothing in this Agreement is intended to confer any rights or remedies under or because of this Agreement on any persons or entities other than the parties to it and their respective successors and permitted assigns. Nothing in this Agreement is intended to relieve or discharge the obligation or liability of any third persons or entities to any party to this Agreement.

10.10   <u>Legal and Regulatory Compliance</u>. Broker and Originator recognize the importance of full compliance at all times with all local, state and federal laws, rules and regulations. Accordingly, notwithstanding anything to the contrary contained elsewhere herein, the parties recognize and agree that Broker retains the right to amend this Agreement, and/or the terms and conditions of Originator's employment with Broker, as necessary, in its reasonable discretion, to ensure full compliance with all local, state and federal laws, rules and regulations.

10.11   <u>Signatures:</u> The undersigned persons represent that they are authorized and have the legal capacity to enter into this Agreement.

CMG MORTGAGE, INC.
("BROKER")

By _____    Dated: _12 - 22 - 03_____
   Christopher M. George,
   President

ORIGINATOR

By _____    Dated: _12/4/03_____
   _____
   Print Name

CMG002276

# EXHIBIT 13



**PACIFIC GUARANTEE MORTGAGE**
A CMG FINANCIAL SERVICES COMPANY

# Memorandum

To:   PGM Branch Managers

From: Kern Lewis

      PGM Marketing

CC:   T. Ones, C. George, M. Griffin, R. Farrell, D. Nesbit

Date:  9/8/2004

Re:   **PGM "Bank Your Business" Incentive Promotion**

---

**Summary:** PGM branches will be eligible to earn credits towards CMG-funded marketing campaigns based on the volume of business that each branch banks with CMG Mortgage.

**Business Goal:**
For the branches: Increase loan volume by expanding the business-building marketing initiatives run by the branch.
For CMG: Improve CMG's loan capture rate from PGM branches.

**Program Structure:**

- CMG will measure the monthly banked business being funded for each PGM branch.
- Using the attached matrix in Appendix A, CMG will award each branch monthly marketing support credits.
- The PGM branch may use these credits in three ways:
    - Participate in monthly mailings administered by PGM Marketing on behalf of the PGM branches.*
    - Work with PGM Marketing to develop a custom mailing campaign, using the marketing credits to cover some or all of the campaign expense.
    - Apply marketing credits to the development of local marketing initiatives (e.g.; newspaper, radio, special events), in coordination with PGM Marketing.
- PGM branches may also bank their monthly credits for use in future months.

---

* A sample of the creative to be used for the PGM Marketing monthly mailings is attached as Appendix C.

1

CMG001437

The number of credits required to participate in particular marketing programs is outlined in Appendix B.

## Program Schedule:

This program is scheduled to run from September 1, 2004 through February 28, 2005. All loans funded through CMG during that time will count towards earning marketing credits.

For those branches that choose to participate in the Monthly Marketing Mailing managed by PGM Marketing, the mailing schedule is set as follows:

| Mailing | Mailing Date | Mailing List Due |
|---------|--------------|------------------|
| 1 | October 18, 2004 | October 1, 2004 |
| 2 | November 15, 2004 | October 29, 2004 |
| 3 | December 27, 2004 | November 30, 2004 |
| 4 | January 18, 2005 | December 31, 2004 |
| 5 | February 15, 2005 | January 28, 2005 |
| 6 | March 15, 2005 | February 28, 2005 |

To participate, branch loan agents will have to provide a mailing list in Excel or Access, along with a high-resolution photograph and their preferred contact information. This material must be submitted to PGM Marketing at least two weeks prior to the mailing date. (For example, to participate in the October mailing agents will have to submit list, photo and contact information on or before October 1, 2004. Materials received after that date would be held for the November mailing if the branch manager/loan agent so wishes.)

If you have any comments or question about how this program will work, give me a call at 925-983-3010.

2

CMG001438

## PGM Branch Marketing
## "Bank Your Business" Incentive Program

Appendix A – Table of Marketing Credits Earned by Banked Business Volume

This table details how PGM branches may earn marketing credits that they can invest in business-building marketing programs.

| Monthly Banked Business ($) | Monthly Earned Marketing Credits |
|---|---|
| 2,000,000 | 800 |
| 3,000,000 | 1,200 |
| 4,000,000 | 1,600 |
| 5,000,000 | 2,000 |
| 6,000,000 | 2,400 |
| 7,000,000 | 2,800 |
| 8,000,000 | 3,200 |
| 9,000,000 | 3,600 |
| 10,000,000 | 4,000 |
| 11,000,000 | 4,400 |
| 12,000,000 | 4,800 |
| 13,000,000 | 5,200 |
| 14,000,000 | 5,600 |
| 15,000,000 | 6,000 |
| 16,000,000 | 6,400 |
| 17,000,000 | 6,800 |
| 18,000,000 | 7,200 |
| 19,000,000 | 7,600 |
| 20,000,000 | 8,000 |
| 21,000,000 | 8,400 |
| 22,000,000 | 8,800 |
| 23,000,000 | 9,200 |
| 24,000,000 | 9,600 |
| 25,000,000 | 10,000 |

Earned marketing credits may be used to participate in the monthly direct mail campaigns managed by PGM Marketing or to create custom campaigns with the support of PGM Marketing.

CMG001439

**PGM Branch Marketing**
**"Bank Your Business" Incentive Program**

Appendix B – Schedule of Credits Required For Marketing Programs

| | Credits Required for Indicated Mailing Quantity | | | | | |
|---|---|---|---|---|---|---|
| Mailing Quantity | 500 | 1,000 | 2,500 | 5,000 | 7,500 | 10,000 |
| PGM Marketing Monthly Mailing | | | | | | |
| Credits Required For: | | | | | | |
| Postcard | 400 | 800 | 2,000 | 4,000 | 6,000 | 8,000 |
| Newsletter | 500 | 1,000 | 2,500 | 5,000 | 7,500 | 10,000 |
| Customized Program Elements | | | | | | |
| Creative Development (All advertising types) | No Charge | No Charge | No Charge | No Charge | No Charge | No Charge |
| Credits Required For: | | | | | | |
| Postcard Printing | 180 | 250 | 375 | 560 | 750 | 940 |
| List Procurement | NA | NA | NA | 950 | 1,400 | 1,800 |
| Postage | 145 | 290 | 725 | 1,450 | 2,175 | 2,900 |
| Other Services Available | | | | | | |
| Media Placement | Must be calculated based on proposed media schedule | | | | | |
| Special Events | Must be calculated based on proposed event | | | | | |

*For quantities above 10,000, please call.

CMG001440

# EXHIBIT 14

**RE: Revised 3rd Quarter Reserve Account Adjustment - Message (HTML)**

File  Edit  View  Insert  Format  Tools  Actions  Help  Adobe PDF

Reply to All | Forward |

From:     Patricia Mitchell [PMitchell@cmgmortgage.com]          Sent:  Mon 11/14/2005 1:40 PM
To:       Jim Bowman
Cc:
Subject:  RE: Revised 3rd Quarter Reserve Account Adjustment

The increase is $8573.80; the full amount is being withheld to fulfill the requirement.
I put a line through the voided numbers but perhaps it does not transmit that way.

-Patricia

>>> "Jim Bowman" <jimbowman@pacifictrustlending.com> 11/14/05 01:40PM >>>
Regarding branch 457 what is the increase? Is it $12,064.08 or $8,573.80?
Your e-mail has 2 figures (see below):

"Branch 457 is increased by $12,064.08. $8,573.80.  An amount of $6,052.04
$8,573.80 is being withheld from the October distribution and will apply to
your reserve account."

Jim Bowman, Manager
Pacific Trust Lending
2505 S. 320th St. Suite 260
Federal Way, WA 98003

OFC:  253-839-9088
FAX: 253-839-9093

TOLL FREE: 866-958-7878

-----Original Message-----
From: Patricia Mitchell [mailto:PMitchell@cmgmortgage.com]
Sent: Monday, November 14, 2005 12:51 PM
To: jimbowman@pacifictrustlending.com
Cc: Marshall Griffin
Subject: Revised 3rd Quarter Reserve Account Adjustment

Jim,

CMG001822

Jim,

Please see the below revision to your reserve adjustment.

>>> Patricia Mitchell 11/11/05 04:57PM >>>
Dear Manager,

We have completed our review of 3rd quarter personnel costs to determine the required adjustment necessary to your reserves. Personnel costs consist of salaries, bonus, employer tax, employee benefits, and workers comp for July, August and September 2005. We arrive at the required amount by taking the total year to date personnel amount, divide it by three months and multiply it by two months. It is policy to have two months of personnel costs in the account.

Reserve account adjustments are as follows:

Branch 455 is being decreased by $10,444.11; making the required amount $28,604.20. The credit will be issued as a Facilities Distribution for October and will reflect on the November statement.

Branch 457 is increased by $12,064.08. $8,573.80. An amount of $6,032.04 $8,573.80 is being withheld from the October distribution and will apply to your reserve account.

Should you have any questions regarding this, please contact Marshall Griffin at (925) 983-3015.

Thank you.

Patricia Mitchell
Pacific Guarantee Mortgage
a CMG Financial Services Company
3160 Crow Canyon Road., Suite 320
San Ramon, CA  94583
Ph: 925-983-3203    Fax: 925-904-5015

CMG001823

# EXHIBIT 15

**STATEMENT OF OPERATIONS**

*FOR PGM, Federal Way, WA (455)*
*FOR THE 2 PERIODS ENDED FEBRUARY 29, 2004*

| | ACTUAL | PERIOD TO DATE PRIOR PERIOD | VARIANCE | YTD ACTUAL |
|---|---|---|---|---|
| **Revenue:** | | | | |
| **Revenue** | | | | |
| Brokered Origination Fees | $35,333.39 | 31,924.18 | 3,439.21 | 67,277.57 |
| Banked Origination: 455 | 9,946.94 | 4,105.00 | 5,841.94 | 14,051.94 |
| Incentives:455 | 996.19 | 367.50 | 628.69 | 1,363.69 |
| Processing Fees: 455 | 4,715.00 | 2,760.00 | 1,955.00 | 7,475.00 |
| Admin/Marketing Fees: 455 | (500.00) | 300.00 | (800.00) | (200.00) |
| Miscellaneous Income: 455 | 150.00 | .00 | 150.00 | 150.00 |
| Brokered Mgt Fees: 455 | 300.00 | .00 | 300.00 | 300.00 |
| **TOTAL Revenue** | 50,961.52 | 39,456.68 | 11,504.84 | 90,418.20 |
| **TOTAL Revenue** | 50,961.52 | 39,456.68 | 11,504.84 | 90,418.20 |
| **Cost of Sales:** | | | | |
| **Direct Costs** | | | | |
| Appraisal Fees: 455 | (714.00) | .00 | (714.00) | (714.00) |
| Credit Reports: 455 | (89.00) | (54.00) | (35.00) | (143.00) |
| Administration: 455 | 3,500.00 | 1,800.00 | 1,700.00 | 5,300.00 |
| Commissions: 455 | 30,784.36 | 20,272.35 | 10,512.01 | 51,056.71 |
| Management Fees - To Branch | 1,745.17 | 798.10 | 947.07 | 2,543.27 |
| **TOTAL Direct Costs** | 35,226.53 | 22,816.45 | 12,410.08 | 58,042.98 |
| **TOTAL Cost of Sales** | 35,226.53 | 22,816.45 | 12,410.08 | 58,042.98 |
| **Gross Profit** | 15,734.99 | 16,640.23 | (905.24) | 32,375.22 |
| **Expenses:** | | | | |
| **Personnel** | | | | |
| Salaries: 455 | 6,872.89 | 8,815.59 | (1,942.70) | 15,688.48 |
| Bonus: 455 | 550.00 | .00 | 550.00 | 550.00 |
| Employer Tax: 455 | 1,685.66 | 2,865.62 | (1,179.96) | 4,551.28 |
| Workers Comp Ins:455 | .00 | 188.09 | (188.09) | 188.09 |
| **TOTAL Personnel** | 9,108.55 | 11,869.30 | (2,760.75) | 20,977.85 |
| **Office Supplies & Services** | | | | |
| UPS & FedEx: 455 | .00 | 241.69 | (241.69) | 241.69 |
| Transbox: 455 | 235.40 | .00 | 235.40 | 235.40 |
| **TOTAL Office Supplies & Servic** | 235.40 | 241.69 | (6.29) | 477.09 |
| **TOTAL Expenses** | 9,343.95 | 12,110.99 | (2,767.04) | 21,454.94 |
| **Net Income from Operations** | 6,391.04 | 4,529.24 | 1,861.80 | 10,920.28 |
| **Other Income & Expense** | | | | |
| PY Carry Forward: | .00 | 21.38 | (21.38) | 21.38 |
| Reserves:455 | .00 | (5,586.20) | 5,586.20 | (5,586.20) |
| **TOTAL Other Income & Expense** | .00 | (5,564.82) | 5,564.82 | (5,564.82) |
| **Earnings before Income Tax** | 6,391.04 | (1,035.58) | 7,426.62 | 5,355.46 |
| **Net Income (Loss)** | $6,391.04 | (1,035.58) | 7,426.62 | 5,355.46 |

FOR PGM, Federal Way, WA (455)
FOR THE 9 PERIODS ENDED SEPTEMBER 30, 2004

| | PERIOD TO DATE | | YEAR TO DATE | |
|---|---|---|---|---|
| | ACTUAL | PERCENT | ACTUAL | PERCENT |
| **Revenue:** | | | | |
| Revenue | | | | |
| Brokered Origination Fees | $54,332.92 | 46.0 % | 483,973.19 | 66.8 |
| Banked Origination: 455 | 51,735.19 | 43.8 | 162,187.50 | 22.4 |
| Incentives:455 | 3,889.25 | 3.3 | 14,461.26 | 2.0 |
| Processing Fees: 455 | 8,285.00 | 7.0 | 51,560.21 | 7.1 |
| Admin/Marketing Fees: 455 | .00 | .0 | 1,900.00 | .3 |
| Miscellaneous Income: 455 | .00 | .0 | 9,970.00 | 1.4 |
| Brokered Mgt Fees: 455 | .00 | .0 | 900.00 | .1 |
| TOTAL Revenue | 118,242.36 | 100.0 | 724,952.16 | 100.0 |
| TOTAL Revenue | 118,242.36 | 100.0 | 724,952.16 | 100.0 |
| **Cost of Sales:** | | | | |
| Direct Costs | | | | |
| Appraisal Fees: 455 | 400.00 | .3 | (3,224.00) | (.4) |
| Credit Reports: 455 | (594.00) | (.5) | (4,629.10) | (.6) |
| Administration: 455 | 4,050.00 | 3.4 | 32,155.00 | 4.4 |
| Other: 455 | (1,350.00) | (1.1) | (3,822.08) | (.5) |
| Commissions: 455 | 58,076.58 | 49.1 | 340,777.62 | 47.0 |
| Lender Access Fees:455 | 2,716.65 | 2.3 | 22,622.46 | 3.1 |
| TOTAL Direct Costs | 63,299.23 | 53.5 | 383,879.90 | 53.0 |
| TOTAL Cost of Sales | 63,299.23 | 53.5 | 383,879.90 | 53.0 |
| Gross Profit | 54,943.13 | 46.5 | 341,072.26 | 47.0 |
| **Expenses:** | | | | |
| Personnel | | | | |
| Salaries: 455 | 11,883.74 | 10.1 | 68,110.00 | 9.4 |
| Bonus: 455 | 900.00 | .8 | 8,400.00 | 1.2 |
| Employer Tax: 455 | 3,922.46 | 3.3 | 30,131.77 | 4.2 |
| Employee Benefits: 455 | 317.91 | .3 | 4,152.47 | .6 |
| Employer 401K: 455 | 261.78 | .2 | 1,913.21 | .3 |
| Workers Comp:455 | 58.51 | .0 | 2,091.28 | .3 |
| TOTAL Personnel | 17,344.40 | 14.7 | 114,798.73 | 15.8 |
| Occupancy | | | | |
| Telephone: 455 | .00 | .0 | 633.92 | .1 |
| TOTAL Occupancy | .00 | .0 | 633.92 | .1 |

STATEMENT OF OPERATIONS

FOR PGM, Federal Way, WA (455
FOR THE 9 PERIODS ENDED SEPTEMBER 30, 200-

| | PERIOD TO DATE | | YEAR TO DATE | |
| --- | --- | --- | --- | --- |
| | ACTUAL | PERCENT | ACTUAL | PERCENT |
| Office Supplies & Services | | | | |
| UPS & FedEx: 455 | $.00 | .0 % | 241.69 | .0 |
| TOTAL Office Supplies & Servic | .00 | .0 | 241.69 | .0 |
| Interest & Other Expense | | | | |
| Payroll Fees:455 | 230.00 | .2 | 230.00 | .0 |
| TOTAL Interest & Other Expense | 230.00 | .2 | 230.00 | .0 |
| TOTAL Expenses | 17,574.40 | 14.9 | 115,904.34 | 16.0 |
| Net Income from Operations | 37,368.73 | 31.6 | 225,167.92 | 31.1 |
| Other Income & Expense | | | | |
| PY Carry Forward: | .00 | .0 | 21.38 | .0 |
| Manager Distribution: 455 | (24,878.88) | (21.0) | (182,234.37) | (25.1) |
| Reserves:455 | (5,000.00) | (4.2) | (10,586.20) | (1.5) |
| TOTAL Other Income & Expense | (29,878.88) | (25.3) | (192,799.19) | (26.6) |
| Earnings before Income Tax | 7,489.85 | 6.3 | 32,368.73 | 4.5 |
| Net Income (Loss) | $7,489.85 | 6.3 % | 32,368.73 | 4.5 |