

MEDLIN & HARGRAVE
A PROFESSIONAL CORPORATION

JOSHUA A. ROSENTHAL
jrosenthal@mhlawcorp.com

July 7, 2008

*Via E-Filing and U.S. Mail*

Honorable Susan Illston
Unisted States District Court,
Northern District of California
450 Golden Gate Ave.
Courtroom 10, 19th Floor
San Francisco, CA 94102

Re:   *Pacific Real Estate Man. Company, Inc. et al. v. CMG Mortgage, Inc. et al.*
      U.S. District Court, Northern District of California
      Case No.: C07-3140 MEJ

**Motion For Protective Order / Modification Re: Subpoena Issued By Plaintiffs on Bolliard, Takasugi & McBride**

Dear Judge Illston:

Defendant CMG Mortgage, Inc. ("CMG") is moving for a protective order/modification regarding the subpoena served by plaintiff on Bolliard, Takasugi & McBride ("Bolliard") on or about June 12, 2008. Bolliard is CMG's accounting firm. The firm performed accounting tasks related to plaintiffs' branches, which are the subject of this action, for a year or so. However, Bolliard also performed auditing and accounting functions for all CMG entities, completely unrelated to this action.

Plaintiffs sent defendants a letter on May 20, 2008, advising that they were seeking certain information from Bolliard via subpoena. On May 23, 2008, defendants responded that they would not object to the information sought from Bolliard that addressed Bolliard's involvement in the branch accountings related to plaintiffs' branches, which is the subject of this action. However, defendants did object to the demands that Bolliard produce bank account records of CMG accounts of any CMG entity, auditing reports and personal guarantees signed by Chris George, the president of CMG (who is not a party to this action). Declaration of Rosenthal, para. 2.

Plaintiffs did not respond to this letter and served essentially the same subpoena on or about June 12, 2008. The subpoena took a while to get to defendants' counsel's office because it was served on defendants' counsel's old address. Defendants' counsel contacted plaintiffs' counsel and informed him that they would be representing Bolliard for the purpose of responding to the

**MEDLIN & HARGRAVE**
*A Professional Corporation*

---

Honroable Susan Illston
Re: *Pacific Real Estate Management Company, Inc. et al v. CMG Mortgage, Inc. et al.*
July 7, 2008
Page 2

subpoena. Defendants' counsel stated that Bolliard's office was closing and he had limited staff to pull the tens of boxes of CMG related material in storage and then look through them to determine which documents are responsive to the subpoena. It took a few days to retrieve the boxes from storage and Bolliard would be away from approximately June 30, 2008 until July 7, 2008. Defendants' counsel stated that all parties could possibly avoid objections and a protective order motion related to the overbroad and harassing subpoena if Bolliard did not possess the documents in dispute. However, Bolliard would not know that until he had an opportunity to review the documents. He would not have an opportunity to do so until after July 7, 2008, when he returned from vacation, as defendants' counsel told plaintiffs' counsel. Declaration of Rosenthal, para. 3.

Plaintiffs' counsel granted an extension for Bolliard to respond and/or object to the subpoena to July 9, 2008, but gave defendants' counsel only until July 7, 2008 to file a protective order motion. As pointed out to plaintiffs' counsel, if Bolliard does not have an opportunity to determine whether he had the documents in dispute, defendants' counsel would not know whether they needed to file a protective order motion. However, plaintiffs counsel did not respond to this logic and no doubt only provided the extension to July 7, 2008, because he knew that was the same date defendants' opposition to plaintiffs' summary adjudication motion was due. Now, having little information about the documents in Bolliard's possession, defendants' file this motion for a protective order because if Bolliard does possess any of the documents in items 10-28 (excepting 17 & 20), defendants respectfully request that they not be ordered produced. Declaration of Rosenthal, para. 3.

As stated in previous motions, this case is about plaintiffs' claims that CMG Mortgage, Inc. did not pay final net profits, refund security deposits and pay marketing credits at termination. Plaintiffs have served a subpoena duces tecum on Bolliard seeking documents related to the lawsuit, items 1-9, 17 and 20, and harassing items completely unrelated to the lawsuit, items 10-28 (excluding 17 & 20). Thus, defendants seek an order protecting CMG from undue harassment by having these documents produced in litigation when it is the private financial information of a company and the demands have no bearing on this lawsuit. FRCP 26(c). Defendants also seek an order modifying the subpoena so Bolliard does not have to produce items 10-28 (excluding 17 & 20) because it is otherwise protected information. FRCP 45(c)(3)(A).

This motion is filed in this court because the deponent consents to this court's jurisdiction over him for purposes of this subpoena. <u>Fincher v. Keller Industries, Inc.</u> (MD NC 1990) 129 F.R.D. 123, 125. Declaration of Rosenthal, para. 5. Of the offensive documents sought, there are two general categories: 1) documents indicating the financial status (bank statements, revenue information) of all CMG entities, with no relation to the allegations of this case (items 11, 21-26) and 2) Audits of all CMG entities unrelated to this case (items 12-16, 19).

**MEDLIN & HARGRAVE**
*A Professional Corporation*

Honroable Susan Illston
Re: *Pacific Real Estate Management Company, Inc. et al v. CMG Mortgage, Inc. et al.*
July 7, 2008
Page 3

      10. All DOCUMENTS evidencing, referring to, or pertaining to revenues earned and derived from the BRANCHES, including:
      a. All fees obtained in connection with loans originated in the BRANCHES, including those for loan origination, administration, processing, accounting, or underwriting;
      b. All Service Release Premiums resulting from loans originated in the BRANCHES;
      c. All Yield Spread Premiums resulting from loans originated in the BRANCHES;
      d. Income earned by CMG on the sale to third parties of loans originated in the BRANCHES;
      11. All DOCUMENTS evidencing capital contributions to CMG Mortgage, Inc., CMG Mortgage Services, Inc., and/or CMG Financial Services, Inc. from any source.
      12. All audited financial statements for all CMG entities from December 2003 to the present.
      13. All Statement of Auditing Standards (SAS 29) opinions or other opinion letters pertaining to any CMG entities from December 2003 to the present.
      14. All Independent Auditor's Reports pertaining to any CMG entities from December 2003 to the present.
      15. All schedules of audit findings pertaining to any CMG entities from December 2003 to the present.
      16. All corrective action plans pertaining to any CMG entities from December 2003 to the present.
      18. All DOCUMENTS evidencing interest earned on any reserves held for or received from all CMG Branch Managers.
      19. All DOCUMENTS constituting audits ofCMG.
      21. All DOCUMENTS constituting, referring to, or pertaining to bank records for any and all accounts which currently or have ever contained any RESERVES associated with any branch, any branch manager, or any branch manager's corporate entity.
      22. All bank records for any and all CMG operating accounts from December 2003 to the present.
      23. All bank records for CMG's GMAC Excess Cash Account from December 2003 to the present.
      24. All bank records for CMG's GMAC warehouse bank accounts from December 2003 to the present.

**MEDLIN & HARGRAVE**
*A Professional Corporation*

Honroable Susan Illston
Re: *Pacific Real Estate Management Company, Inc. et al v. CMG Mortgage, Inc. et al.*
July 7, 2008
Page 4

        25. All bank records for CMG's GMAC warehouse line of credit accounts from December 2003 to the present.
        26. All bank records for CMG's Natty Mac warehouse line of credit accounts from December 2003 to the present.
        27. All DOCUMENTS setting forth the terms and conditions of any line of credit used by CMG from 2003 to the present.
        28. All DOCUMENTS constituting, evidencing, or referring to a personal guarantee by Christopher George for any line of credit available to CMG from 2003 to the present.

Plaintiffs also seek personal guarantees signed by Chris George, who is not a party to this action (item 28) (and even if he was, there is no possible reason for the documents to be produced other than to harass) and terms and conditions of CMG lines of credit (item 27), for all CMG entities and unrelated to any allegations in the operative complaint.[1]

Corporations have a right to privacy. Roberts v Gulf Oil Corp. (1983) 147 Cal. App. 3d 770, 796. This right to privacy is to be balanced with the need for the document sought in discovery. Davis v. Superior Court (1992) 7 Cal. App. 4th 1008, 1014. The bottom line is that there is no need for bank account statements and warehouse line statements for any and all CMG entities. Plaintiffs are not suing CMG Financial Services, Inc. Moreover, bank account records of warehouse lines of credit for CMG are completely unrelated to this lawsuit. CMG, as a mortgage banker, lends money from lines of credit. Plaintiffs' claim for unpaid wages/security deposits and unpaid expenses is completely unrelated to CMG's bank accounts.

Plaintiffs may claim that it was Bowman, not his corporation, that funded the security deposits and because these security deposits went into CMG's general operating account, that he is entitled to look at all the accounts sought. First, PREMCO funded the security deposit, as demonstrated in defendants' opposition to plaintiffs' motion for summary adjudication - thus, there is no issue with the security deposit being placed in CMG's general operating account. Second, even it there was a problem with money going into CMG's general operating account, whether it was paid

---

[1] Defendants object to item 10 for the same reasons spelled out in their opposition to plaintiffs' motion to compel special interrogatory responses (with respect to special interrogatory no. 1), which the Court has not yet ruled on. Plaintiffs are not entitled to the SRP's and secondary market income earned by CMG. Thus, it is harassing and unduly burdensome to make any party locate this irrelevant information. With respect to the YSP's, plaintiffs were paid YSP's on each loan they closed that had a YSP and possess the information and can produce it much more easily as this third party witness.

**MEDLIN & HARGRAVE**
*A Professional Corporation*

---

Honroable Susan Illston
Re: *Pacific Real Estate Management Company, Inc. et al v. CMG Mortgage, Inc. et al.*
July 7, 2008
Page 5

by Bowman or PREMCO, looking at the GMAC and NattyMac accounts will not shed any light on plaintiffs' allegations.

Plaintiffs are also seeking documents related to all security deposits provided by all entities that do business with CMG (items 18 and 21). These demands are completely overbroad and seek information not relevant and not likely to lead to the discovery of admissible evidence.

With respect to the demands for audit reports related to all CMG entities, this is completely harassing and unduly invasive of CMG's privacy rights. CMG does mortgage banking with retail branches, net branches and third party originators. Thus, audit reports would reveal private information about all of CMG's business which has no relation to the limited scope of this lawsuit - a dispute over wages and expenses related to 2 net branches. Plaintiffs have not even bothered to narrow the requests to limit them to the four corners of the pleadings.

As will be raised in the objection to this subpoena to be filed by Bolliard, requesting these documents from Bolliard is simply harassing to a non-party to this litigation. The documents being sought - like audits, account information and personal guarantees - are all documents that are in CMG's possession. It is harassing and an abuse of the subpoena power to seek these documents from a third party. It requires the third party to retain counsel to respond to the subpoena and it requires a protective order motion to be filed instead of an objection to discovery by CMG.

Defendants were reasonable in responding to the subpoena. They offered to provide the relevant documents on 2 occasions and plaintiffs refused both and insisted on seeking these documents from a third party. This is harassing and invades the privacy interests of CMG due to its overbreadth. Thus, defendants respectfully request that a protective order be granted or a modification of the subpoena be ordered to prevent Bolliard's compliance with items 10-28 (with the exception of 17 & 20).

Sincerely,

Joshua A. Rosenthal

JAR:xt
prot order motion.wpd
cc:     Client
        Angela Xavier