1  David R. Medlin      (SBN 77417)
   G. Bradley Hargrave   (SBN 173911)
2  Joshua A. Rosenthal   (SBN 190284)
   MEDLIN & HARGRAVE
3  A Professional Corporation
   One Kaiser Plaza, Suite 1305
4  Oakland, CA 94612
   Telephone:    (510) 832-2900
5  Facsimile:    (510) 832-2945
   E-mail:*jrosenthal@mhlawcorp.com*

6
   Attorneys for Defendants/Counter Claimant
7

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10 James W. Bowman, Jr. and Pacific Real Estate      Case No.: C 07 3140 SI
   Management Company, Inc., a Washington
11 Corporation,
                                                     DECLARATION OF JOSHUA A.
12            Plaintiffs,                            ROSENTHAL IN SUPPORT OF MOTION
                    vs.                              FOR PROTECTIVE ORDER/
13                                                   MODIFICATION OF SUBPOENA TO
   CMG Mortgage Inc., a California Corporation;      BOLLIARD, TAKASUGI & MCBRIDE
14 CMG Mortgage, Inc., d/b/a Pacific Guarantee
   Mortgage, CMG Mortgage Services, Inc., a
15 California Corporation, CMG Mortgage Services,
   Inc. d/b/a Pacific Guarantee Mortgage,
16                                                   Dept:  Courtroom 10
              Defendants.                            Judge: Honorable Susan Illston
17 _____/
                                                     File date: June 14, 2007
18 CMG Mortgage Inc., a California Corporation       Trial date: August 28, 2008

19            Counter-Claimant,

20
                    vs.
21
   James W. Bowman, Jr., an individual,
22

23            Cross-Defendant.
   _____/
24

25

26

27

28
                           1

DECLARATION OF JOSHUA A. ROSENTHAL IN SUPPORT OF MOTION FOR PROTECTIVE ORDER/
MODIFICATION OF SUBPOENA TO BOLLIARD, TAKASUGI & MCBRIDE C 07 3140 SI
M:\CMG\85-0706-02 Bowman\Motion\Motion For Protective Order\Decl of JAR.wpd

1 | **DECLARATION OF JOSHUA A. ROSENTHAL**

2 | I, Joshua A. Rosenthal, declare:

3 | 1. I am an attorney at law duly licensed to practice before this court and an attorney with
4 | Medlin & Hargrave, a P.C.

5 | 2. Plaintiffs sent defendants a letter on May 20, 2008, advising that they were seeking certain
6 | information from Bolliard, Takasugi & McBride, LLC ("Bolliard") via subpoena (CMG's accounting
7 | firm). Attached hereto as Exhibit A is a true and correct copy of plaintiffs' May 20, 2008 letter and draft
8 | subpoena. On May 23, 2008, I responded that defendants would not object to the information sought from
9 | Bolliard that addressed Bolliard's involvement in the branch accountings related to plaintiffs' branches
10 | (items 1-10), which is the subject of this action. However, I did object to the demands that Bolliard
11 | produce bank account records of CMG accounts of any CMG entity, auditing reports, personal guarantees
12 | signed by Chris George, the president of CMG (who is not a party to this action). Attached hereto as
13 | Exhibit B is a true and correct copy of my response letter of May 23, 2008.

14 | 3. Plaintiffs did not respond to this letter and served essentially the same subpoena on or
15 | about June 12, 2008. Attached hereto as Exhibit C is a true and correct copy of plaintiffs' subpoena to
16 | Bolliard. The subpoena took a while to get to defendants' counsel's office because it was served on
17 | defendants' counsel's old address. See proof of service on Exhibit C. I contacted plaintiffs' counsel and
18 | informed him that this firm would be representing Bolliard for the purpose of responding to the subpoena.
19 | I stated that Bolliard's office was closing and he had limited staff to pull the tens of boxes of CMG
20 | related material in storage and then look through them to determine which documents are responsive to
21 | the subpoena. It took a few days to retrieve the boxes from storage and Bolliard would be away FROM
22 | APPROXIMATELY June 30, 2008 until July 7, 2008 on vacation. I told plaintiffs' counsel that all
23 | parties could possibly avoid objections and a protective order motion related to the overbroad and
24 | harassing subpoena if Bolliard did not possess the documents in dispute. However, Bolliard would not
25 | know that until he had an opportunity to review the documents. He would not have an opportunity to do
26 | so until after July 7, 2008, when he returned from vacation, as I told plaintiffs' counsel.

27 | 4. Plaintiffs' counsel granted an extension for Bolliard to respond and/or object to the

28 |

2

1  subpoena to July 9, 2008, but gave defendants' counsel only until July 7, 2008 to file a protective order

2  motion. As pointed out to plaintiffs' counsel, if Bolliard does not have an opportunity to determine

3  whether he had the documents in dispute, defendants' counsel would not know whether they needed to

4  file a protective order motion. Attached hereto as Exhibit D is a true and correct copy of the email

5  exchange between counsel related to the subpoena. However, plaintiffs counsel did not respond to this

6  logic and no doubt only provided the extension to July 7, 2008, because he knew that was the same date

7  defendants' opposition to plaintiffs' summary adjudication motion was due.

8       5.     This firm represents Bolliard for the limited purpose of responding to the subpoena at

9  issue. Bolliard does not object to this Court hearing the matter of the disputed subpoena at issue.

10       I declare under penalty of perjury under the laws of the United States that the foregoing is true and

11  correct, and if sworn as a witness, I could and would testify competently thereto.

12       Executed at Oakland, California, on July 7, 2008.

15                                  Joshua A. Rosenthal

13

14

16

17

18

19

20

21

22

23

24

25

26

27

28

3

# EXHIBIT A

LAW OFFICES OF
**ALAN F. COHEN**

**101 MONTGOMERY STREET**
**SUITE 2050**
**SAN FRANCISCO, CA 94104**
**TEL: 415.984.1943**
**FAX: 415.984.1953**
cohenlaw@mindspring.com

May 20, 2008

**Via email and U.S. Mail**

Joshua Rosenthal
David Medlin
Medlin & Hargrave, P.C.
One Kaiser Plaza, Suite 1305
Oakland CA 94612

Re:    *Bowman v. CMG, Inc. et al.* – **Subpoena of CMG's Accountants**

Dear Counsel:

I intend to subpoena records from CMG's accountants on behalf of the Plaintiffs. I am enclosing the list of documents we intend to request for your review and comment, as provided by the federal rules. If you object to the subpoena or any portion thereof, please let me know the nature of your objection by this Friday, May 23.

Sincerely,

*Alan Cohen*

Alan F. Cohen

Encl.

## Attachment A

## INSTRUCTIONS

You must produce the documents requested either: (1) as they are kept in the usual course of business; or (2) organized and labeled so as to correspond with each specific request.

Each copy of a DOCUMENT, regardless of when made, which is not identical to the original by reason of subsequent notation or modification of any kind whatsoever, including notations on the front or back of any of its pages, is a separate DOCUMENT and must be produced.

With respect to any requested document which you refuse to produce in response to these Requests for Production, please state:

(a)     the full identity of the document including:

   (1) date of the document;

   (2) its title (if any);

   (3) its authors, addressees, recipients or parties;

   (4) the nature of the document (e.g., letter, memorandum, etc.);

   (5) the individual or source from whom or which you obtained it; and

   (6) its present location and identity of its custodian;

(b)     whether YOUR objection or refusal is directed to the entire document or part thereof;

(c)     if YOUR objection or refusal goes to part of the document, specify the specific part(s) of the document to which YOUR objection or refusal is directed;

(d)     the specific factual basis which gives rise to the objection or refusal; and

(e)     the specific legal ground on which the objection or refusal is based.

If any request is defined using a term of art or other terms YOU believe to be incorrect but YOU understand the nature of the document requested, YOU must produce

the document notwithstanding the semantic or definitional error.

## DEFINITIONS

The following terms shall have the following meanings:

"CMG" refers to Defendants CMG Mortgage, Inc., CMG Mortgage Services, Inc., CMG Financial Services, Inc., and all fictitious names under which they have done business, including but not limited to Pacific Guarantee Mortgage, individually and collectively. The term specifically includes any facilities, offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, affiliates and present or former partners. Where the request involves the actions of an individual (for example, "all communications with CMG"), the term CMG also includes CMG's officers, directors, employees, agents, attorneys or representatives, and any other persons or entities acting, purporting to act or authorized to act on its behalf.

"YOU," "YOUR," and "YOURS" refers to Boliard Takasugi & McBride and any facilities, offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, affiliates and present or former partners, officers, directors, employees, agents, attorneys or representatives, and any other persons or entities acting, purporting to act or authorized to act on YOUR behalf.

"BOWMAN" refers to Plaintiff James W. Bowman, Jr.

"PREMCO" refers to Pacific Real Estate Management Company, Inc.

"PLAINTIFFS" refers to BOWMAN and PREMCO, individually or collectively.

"BRANCHES" refers to CMG's branch in Federal Way, Washington, which may be but is not necessarily referred to as Branch 455, and CMG's branch in Vancouver, Washington, which may be but is not necessarily referred to as Branch 457.

"RESERVES" refers to both reserves and security deposits as those terms were used by CMG in its branch accounting and its Branch Management and

Employment Agreements and Facilities Agreements. The term "RESERVES" includes any money either received directly from Branch Managers or entities owned in whole or in part by Branch Managers, or money withheld from branch distributions and maintained as reserves or deposits.

"COMMUNICATION" means the transmission of information of any sort, including, without limitation, facts, opinions, pictures, images or characters, alphabetic, mathematic or otherwise, by whatever means, whether written, oral, visual, electronic, digital, analog or otherwise.

The term "DOCUMENT" is used in the broadest possible sense and incorporates any writing as defined broadly in California Evidence Code § 250, including any typewritten, handwritten, graphic, photographic, printed or otherwise recorded matter or recording of symbols in tangible form, however produced or reproduced, of every kind and regardless of where located, which is in YOUR possession, custody, or control, or in the possession, custody or control of any YOUR servants or agents of YOUR attorneys. Among other things, DOCUMENTS may consist of electronically recorded information such as electronic mail ("email"), html files, databases, data processing cards or tapes, computerized data, computer diskettes, or information otherwise contained on a computer's hard drive, disks or backup tapes; video tapes, audio tapes, view-graphs, or any information maintained on digital, electronic, magnetic or other media; any other summary, schedule, memorandum, note, statement, letter, telegram, interoffice COMMUNICATION, report, diary, worksheet, list, graph, chart, or index, tape record, partial or complete report of telephone or oral conversation, transcript or minutes, compilation, tabulation, study, analysis, or other such writing or recording. The term "DOCUMENT" includes originals, file copies, any other copies, no matter how prepared, and any drafts prepared in connection with such DOCUMENTS, whether or not used, as well as the file in which the DOCUMENTS are maintained.

The phrases "RELATE TO" and "RELATING TO" include, but are not

limited to, referring to, alluding to, responding to, concerning, supporting, connected
with, commented on, in respect of, about, regarding, discussing, showing, describing,
mentioning, reflecting, analyzing, comprising, constituting, evidencing, memorializing,
and pertaining to, or which call into doubt.

## REQUESTED DOCUMENTS

1. All COMMUNICATIONS, or DOCUMENTS referring to COMMUNICATIONS,
   with CMG referring or pertaining to BOWMAN.

2. All COMMUNICATIONS, or DOCUMENTS referring to COMMUNICATIONS,
   with CMG referring or pertaining to PREMCO.

3. All DOCUMENTS referring or pertaining to CMG's branch in Federal Way,
   Washington, which may be but is not necessarily referred to as Branch 455.

4. All DOCUMENTS referring or pertaining to CMG's branch in Vancouver,
   Washington, which may be but is not necessarily referred to as Branch 457.

5. All DOCUMENTS referring or pertaining to BOWMAN or PREMCO.

6. All DOCUMENTS evidencing, referring to, or pertaining to, CMG's policy and
   practice of maintaining branch RESERVES, including:

   a. Any opinion letters authored by YOU or anyone else referring to or pertaining to
      the RESERVES;

   b. COMMUNICATIONS RELATING to the RESERVES, including but not limited
      to those referring or pertaining to the origin, rationale, nature, policies, use, and
      application of RESERVES;

   c. CMG's policies and practices governing RESERVES;

   d. CMG's accounting of RESERVES;

   e. All bank account statements and other bank records for any and all accounts
      which currently or have ever contained any branch RESERVES;

   f. CMG's use of reserves to offset branch or any other expenses;

7. ALL COMMUNICATIONS or other DOCUMENTS evidencing, referring to or pertaining to RESERVES associated with or belonging to BOWMAN, PREMCO, or the BRANCHES;

8. All DOCUMENTS constituting, referring to, or pertaining to accounting records of RESERVES associated with or belonging to BOWMAN, PREMCO, or the BRANCHES.

9. All DOCUMENTS evidencing, referring to, or pertaining to CMG's decision to withhold further payments to BOWMAN or PREMCO after January 31, 2007.

10. All DOCUMENTS evidencing, referring to, or pertaining to revenues earned and derived from the BRANCHES, including:

    a. All fees obtained in connection with loans originated in the BRANCHES, including those for loan origination, administration, processing, accounting, or underwriting;

    b. All Service Release Premiums resulting from loans originated in the BRANCHES;

    c. All Yield Spread Premiums resulting from loans originated in the BRANCHES;

    d. Income earned by CMG on the sale to third parties of loans originated in the BRANCHES;

11. All DOCUMENTS evidencing capital contributions to CMG Mortgage, Inc., CMG Mortgage Services, Inc., and/or CMG Financial Services, Inc. from any source.

12. All audited financial statements for all CMG entities from December 2003 to the present.

13. All Statement of Auditing Standards (SAS 29) opinions or other opinion letters pertaining to any CMG entities from December 2003 to the present.

14. All Independent Auditor's Reports pertaining to any CMG entities from December 2003 to the present.

15. All schedules of audit findings pertaining to any CMG entities from December 2003 to the present.

16. All corrective action plans pertaining to any CMG entities from December 2003 to the present.

17. All DOCUMENTS evidencing interest earned on reserves held for or received from BOWMAN, PREMCO, or the BRANCHES.

18. All DOCUMENTS evidencing interest earned on any reserves held for or received from all CMG Branch Managers.

19. All DOCUMENTS constituting, evidencing, or referring to audits of CMG.

20. All DOCUMENTS constituting, referring to, or pertaining to bank records for any and all accounts which currently or have ever contained BOWMAN's, PREMCO's, or the BRANCHES' RESERVES.

21. All DOCUMENTS constituting, referring to, or pertaining to bank records for any and all accounts which currently or have ever contained any RESERVES associated with any branch, any branch manager, or any branch manager's corporate entity.

22. All DOCUMENTS constituting, referring to, or pertaining to bank records for any and all CMG operating accounts from December 2003 to the present.

23. All DOCUMENTS constituting, referring to, or pertaining to bank records for CMG's GMAC Excess Cash Account from December 2003 to the present.

24. All DOCUMENTS constituting, referring to, or pertaining to bank records for CMG's GMAC warehouse bank accounts from December 2003 to the present.

25. All DOCUMENTS constituting, referring to, or pertaining to bank records for CMG's GMAC warehouse line of credit accounts from December 2003 to the present.

26. All DOCUMENTS constituting, referring to, or pertaining to bank records for CMG's Natty Mac warehouse line of credit accounts from December 2003 to the present.

27. All DOCUMENTS setting forth the terms and conditions of any line of credit used by CMG from 2003 to the present.

28. All DOCUMENTS constituting, evidencing, or referring to a personal guarantee by
Christopher George for any line of credit available to CMG from 2003 to the present.

# EXHIBIT B



MEDLIN &
HARGRAVE
A PROFESSIONAL CORPORATION

JOSHUA A. ROSENTHAL
*jrosenthal@mhlawcorp.com*

May 23, 2008

*Via Facsimile & U.S. Mail*

Alan F. Cohen
101 Montgomery Street, Suite 2050
San Francisco, CA 94104

> **Re:** *Pacific Real Estate Man. Company, Inc. et al. v. CMG Mortgage, Inc. et al.*
> *U.S. District Court, Northern District of California*
> *Case No.: C07-3140 MEJ*

Dear Mr. Cohen:

This letter is in response to your proposed subpoena to the Bolliard firm. Most of the categories of documents you are seeking are completely unacceptable. The fact that this witness will not have most of the documents are seeking is besides the point. You are basically seeking all accounting records, audits and financial information about CMG as well as Chris George's personal guarantees. This information is not likely to lead to the discovery of further admissible evidence, it is unduly invasive of defendants' privacy right in so far as it is not in any way narrowly tailored to the four corners of this lawsuit.

CMG will agree to a subpoena seeking the documents listed in 1-5, 6 with the exception of 6(e). CMG will not permit discovery of its bank accounts for the reasons stated in its opposition to plaintiffs last discovery motion. Finally, CMG will agree to 7-10. The rest of the documents are outrageously overbroad and are a complete invasion of CMG's privacy rights. There is no need for the documents being sought other than to harass CMG. Plaintiffs certainly have no right to Mr. George's personal guarantees as well as most of the documents requested in this over the top proposal.

If you have any questions, please do not hesitate to contact me.

Sincerely,

Joshua A. Rosenthal

JAR:alb
cohen.09.jar.wpd

cc:    Angela Xavier
       Client

THE ORDWAY BUILDING | ONE KAISER PLAZA, SUITE 1305 | OAKLAND, CA 94612 | TEL (510) 832-2900 | FAX (510) 832-2945

# EXHIBIT C

AO88 (Rev. 12/06) Subpoena in a Civil Case

# Issued by the
# UNITED STATES DISTRICT COURT

|  | EASTERN |  | DISTRICT OF |  | CALIFORNIA |  |
|---|---|---|---|---|---|---|

JAMES W. BOWMAN, JR.

## SUBPOENA IN A CIVIL CASE

V.

CMG MORTGAGE, INC.

Case Number:[1]  C073140SI

**Custodian of Records For:**
TO: BOLLARD TAKASUGI & MCBRIDE LLP
950 IRON POINT ROAD, STE. 240
FOLSOM, CA 95630

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

**RE: SEE ATTACHMENT A**

| PLACE   Quest Discovery Services   3750 Auburn Blvd., Ste. B<br>Sacramento, CA 95821<br>(800) 477-6886 | DATE AND TIME   06/26/08<br>9:30 A.M. |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| /S/                              Attorney for: Plaintiff | 06/12/08 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER    ALAN F. COHEN, ESQ.    BAR #: 194075
LAW OFFICES OF ALAN F. COHEN    ATTORNEY AT LAW
101 MONTGOMERY ST., STE. #2050
SAN FRANCISCO, CA 94104   415/984-1943

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

| AO88 (Rev. 12/06) Subpoena in a Civil Case | Address and Phone # Confirmed: |
|---|---|
| | COR Phone # 916/965-6305 |
| | (          )          - |

## PROOF OF SERVICE

| | DATE | PLACE | 950 IRON POINT ROAD, STE. 240 |
|---|---|---|---|
| SERVED | | | FOLSOM, CA 95630 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | Quest Discovery Services |
| | Santa Clara #886 |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

3750 Auburn Blvd., Ste. B

ADDRESS OF SERVER

Sacramento, CA  95821

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a company to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

SAS804744

# Attachment 3

File #: **SAS804744**

**BOLLARD TAKASUGI & MCBRIDE LLP**

Pertaining To:   **SEE ATTACHMENT A**

**SEE ATTACHMENT A**

**Attachment A**

## INSTRUCTIONS

You must produce the documents requested either: (1) as they are kept in the usual course of business; or (2) organized and labeled so as to correspond with each specific request.

Each copy of a DOCUMENT, regardless of when made, which is not identical to the original by reason of subsequent notation or modification of any kind whatsoever, including notations on the front or back of any of its pages, is a separate DOCUMENT and must be produced.

With respect to any requested document which you refuse to produce in response to this subpoena, please state:

(a)    the full identity of the document including:

       (1) date of the document;

       (2) its title (if any);

       (3) its authors, addressees, recipients or parties;

       (4) the nature of the document (e.g., letter, memorandum, etc.);

       (5) the individual or source from whom or which you obtained it; and

       (6) its present location and identity of its custodian;

(b)    whether YOUR objection or refusal is directed to the entire document or part thereof;

(c)    if YOUR objection or refusal goes to part of the document, specify the specific part(s) of the document to which YOUR objection or refusal is directed;

(d)    the specific factual basis which gives rise to the objection or refusal; and

(e)    the specific legal ground on which the objection or refusal is based.

If any request is defined using a term of art or other terms YOU believe to be incorrect but YOU understand the nature of the document requested, YOU must produce

the document notwithstanding the semantic or definitional error.

## DEFINITIONS

The following terms shall have the following meanings:

"CMG" refers to Defendants CMG Mortgage, Inc., CMG Mortgage Services, Inc., CMG Financial Services, Inc., and all fictitious names under which they have done business, including but not limited to Pacific Guarantee Mortgage, individually and collectively. The term specifically includes any facilities, offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, affiliates and present or former partners. Where the request involves the actions of an individual (for example, "all communications with CMG"), the term CMG also includes CMG's officers, directors, employees, agents, attorneys or representatives, and any other persons or entities acting, purporting to act or authorized to act on its behalf.

"YOU," "YOUR," and "YOURS" refers to Boliard Takasugi & McBride and any facilities, offices, locations, divisions, affiliates, subsidiaries, successors, predecessors, affiliates and present or former partners, officers, directors, employees, agents, attorneys or representatives, and any other persons or entities acting, purporting to act or authorized to act on YOUR behalf.

"BOWMAN" refers to Plaintiff James W. Bowman, Jr.

"PREMCO" refers to Pacific Real Estate Management Company, Inc.

"PLAINTIFFS" refers to BOWMAN and PREMCO, individually or collectively.

"BRANCHES" refers to CMG's branch in Federal Way, Washington, which may be but is not necessarily referred to as Branch 455, and CMG's branch in Vancouver, Washington, which may be but is not necessarily referred to as Branch 457.

"RESERVES" refers to both reserves and security deposits as those terms were used by CMG in its branch accounting and its Branch Management and

Employment Agreements and Facilities Agreements. The term "RESERVES" includes any money either received directly from Branch Managers or entities owned in whole or in part by Branch Managers, or money withheld from branch distributions and maintained as reserves or deposits.

"COMMUNICATION" means the transmission of information of any sort, including, without limitation, facts, opinions, pictures, images or characters, alphabetic, mathematic or otherwise, by whatever means, whether written, oral, visual, electronic, digital, analog or otherwise.

The term "DOCUMENT" is used in the broadest possible sense and incorporates any writing as defined broadly in California Evidence Code § 250, including any typewritten, handwritten, graphic, photographic, printed or otherwise recorded matter or recording of symbols in tangible form, however produced or reproduced, of every kind and regardless of where located, which is in YOUR possession, custody, or control, or in the possession, custody or control of any YOUR servants or agents of YOUR attorneys. Among other things, DOCUMENTS may consist of electronically recorded information such as electronic mail ("email"), html files, databases, data processing cards or tapes, computerized data, computer diskettes, or information otherwise contained on a computer's hard drive, disks or backup tapes; video tapes, audio tapes, view-graphs, or any information maintained on digital, electronic, magnetic or other media; any other summary, schedule, memorandum, note, statement, letter, telegram, interoffice COMMUNICATION, report, diary, worksheet, list, graph, chart, or index, tape record, partial or complete report of telephone or oral conversation, transcript or minutes, compilation, tabulation, study, analysis, or other such writing or recording. The term "DOCUMENT" includes originals, file copies, any other copies, no matter how prepared, and any drafts prepared in connection with such DOCUMENTS, whether or not used, as well as the file in which the DOCUMENTS are maintained.

The phrases "RELATE TO" and "RELATING TO" include, but are not

limited to, referring to, alluding to, responding to, concerning, supporting, connected with, commented on, in respect of, about, regarding, discussing, showing, describing, mentioning, reflecting, analyzing, comprising, constituting, evidencing, memorializing, and pertaining to, or which call into doubt.

### REQUESTED DOCUMENTS

1. All COMMUNICATIONS, or DOCUMENTS referring to COMMUNICATIONS, with CMG referring or pertaining to BOWMAN.

2. All COMMUNICATIONS, or DOCUMENTS referring to COMMUNICATIONS, with CMG referring or pertaining to PREMCO.

3. All DOCUMENTS referring or pertaining to CMG's branch in Federal Way, Washington, which may be but is not necessarily referred to as Branch 455.

4. All DOCUMENTS referring or pertaining to CMG's branch in Vancouver, Washington, which may be but is not necessarily referred to as Branch 457.

5. All DOCUMENTS referring or pertaining to BOWMAN or PREMCO.

6. All DOCUMENTS evidencing, referring to, or pertaining to, CMG's policy and practice of maintaining branch RESERVES, including:

   a. Any opinion letters authored by YOU or anyone else referring to or pertaining to the RESERVES;

   b. COMMUNICATIONS RELATING to the RESERVES, including but not limited to those referring or pertaining to the origin, rationale, nature, policies, use, and application of RESERVES;

   c. CMG's policies and practices governing RESERVES;

   d. CMG's accounting of RESERVES;

   e. All bank account statements and other bank records for any and all accounts which currently or have ever contained any branch RESERVES;

   f. CMG's use of reserves to offset branch or any other expenses;

7. ALL COMMUNICATIONS or other DOCUMENTS evidencing, referring to or pertaining to RESERVES associated with or belonging to BOWMAN, PREMCO, or the BRANCHES;

8. All DOCUMENTS constituting, referring to, or pertaining to accounting records of RESERVES associated with or belonging to BOWMAN, PREMCO, or the BRANCHES.

9. All DOCUMENTS evidencing, referring to, or pertaining to CMG's decision to withhold further payments to BOWMAN or PREMCO after January 31, 2007.

10. All DOCUMENTS evidencing, referring to, or pertaining to revenues earned and derived from the BRANCHES, including:

   a. All fees obtained in connection with loans originated in the BRANCHES, including those for loan origination, administration, processing, accounting, or underwriting;

   b. All Service Release Premiums resulting from loans originated in the BRANCHES;

   c. All Yield Spread Premiums resulting from loans originated in the BRANCHES;

   d. Income earned by CMG on the sale to third parties of loans originated in the BRANCHES;

11. All DOCUMENTS evidencing capital contributions to CMG Mortgage, Inc., CMG Mortgage Services, Inc., and/or CMG Financial Services, Inc. from any source.

12. All audited financial statements for all CMG entities from December 2003 to the present.

13. All Statement of Auditing Standards (SAS 29) opinions or other opinion letters pertaining to any CMG entities from December 2003 to the present.

14. All Independent Auditor's Reports pertaining to any CMG entities from December 2003 to the present.

15. All schedules of audit findings pertaining to any CMG entities from December 2003 to the present.

16. All corrective action plans pertaining to any CMG entities from December 2003 to the present.

17. All DOCUMENTS evidencing interest earned on reserves held for or received from BOWMAN, PREMCO, or the BRANCHES.

18. All DOCUMENTS evidencing interest earned on any reserves held for or received from all CMG Branch Managers.

19. All DOCUMENTS constituting audits of CMG.

20. All DOCUMENTS constituting, referring to, or pertaining to bank records for any and all accounts which currently or have ever contained BOWMAN's, PREMCO's, or the BRANCHES' RESERVES.

21. All DOCUMENTS constituting, referring to, or pertaining to bank records for any and all accounts which currently or have ever contained any RESERVES associated with any branch, any branch manager, or any branch manager's corporate entity.

22. All bank records for any and all CMG operating accounts from December 2003 to the present.

23. All bank records for CMG's GMAC Excess Cash Account from December 2003 to the present.

24. All bank records for CMG's GMAC warehouse bank accounts from December 2003 to the present.

25. All bank records for CMG's GMAC warehouse line of credit accounts from December 2003 to the present.

26. All bank records for CMG's Natty Mac warehouse line of credit accounts from December 2003 to the present.

27. All DOCUMENTS setting forth the terms and conditions of any line of credit used by CMG from 2003 to the present.

28. All DOCUMENTS constituting, evidencing, or referring to a personal guarantee by
   Christopher George for any line of credit available to CMG from 2003 to the present.

.

**SA S8 04 744 - SAS804744**

## (PROOF OF SERVICE BY MAIL - Federal Rule 5(a))

I am employed in the county of SANTA CLARA, my business address is 981 RIDDER PARK DRIVE, SAN JOSE, CA 95131, I am over the age of eighteen (18), and am not a party to the within action(s). I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service, and that the correspondence described below will be deposited with the United States Postal Service today in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit. I served the within copy: SUBPOENA IN A CIVIL CASE, on the below listed entities in said actions by placing said documents in a sealed envelope with postage fully prepaid and addressed as follows:

**MEDLIN & STEA**
**ATTORNEYS AT LAW**
**ONE KAISER PLAZA**
**SUITE 445**
**OAKLAND, CA 94612**
**ATTN: DAVID R. MEDLIN, ESQ.**
**Represents: DEFENDANT**
**Name: CMG MORTAGE, INC., ET AL.**

and that they were deposited on 06/12/08 for deposit in the United States Postal Service and that the envelope was sealed and placed for collection and mailing that date at Quest Discovery Services, 981 RIDDER PARK DRIVE, SAN JOSE, CA 95131, following ordinary business practices.

   DATED:  06/12/08 AT SAN JOSE, CALIFORNIA

I Declare under penalty of perjury that the foregoing is true and correct.

> **This form was printed for**
> **all subpoenas in this series**

*Loraine Leonardo*

**signature**

/MAILSERV





*Quality • Uniformity • Excellence • Service • Teamwork*

## QUEST DISCOVERY SERVICES

http://www.questds.com/

06/12/08

# Records Request Form

ATTN: DAVID R. MEDLIN, ESQ.
MEDLIN & STEA
ATTORNEYS AT LAW
ONE KAISER PLAZA
SUITE 445
OAKLAND, CA 94612

| In Reply Refer to: | **Sacramento** |
|---|---|
| Our File Number: | **SAS804744** |
| QDS Client Number: | **MED335** |
| Client File Number: | |
| Claim Number: | |
| Insured: | |
| Deposition Date: | **06/26/08** |

RE:      JAMES W. BOWMAN, JR. VS. CMG MORTGAGE, INC.
Case No:    **C073140SI**
Records of: **SEE ATTACHMENT A**

Quest Discovery Services at the request of: **LAW OFFICES OF ALAN F. COHEN**
is obtaining records as listed on subpoena. Please mark the appropriate spaces   below for those items which you desire
and return by the deposition   date and time.  *Please mark "none" if you do not wish to receive any subpoenaed
items for any one deponent.*  Do not return this form unless you are placing an order and/or waiving time.

| None | X-rays | Records | Path | Echo | Deponent | File Number |
|---|---|---|---|---|---|---|
| ☐ | ☐ | | | | **BOLLARD TAKASUGI & MCBRIDE LLP**<br>950 IRON POINT ROAD, STE. 240 FOLSOM, CA 95630 | **SAS804744A** |

☐  ***BILLING INSTRUCTIONS OR DOLLAR LIMITATIONS:***

☐  ***BILL DIRECTLY TO INSURANCE CARRIER / THIRD PARTY:***

| Carrier Name: | _____ | Name of Insured: | _____ |
|---|---|---|---|
| Carrier Address: | _____ | Date of Loss: | _____  Claim #:  _____ |
| Carrier Address: | _____ | Adjuster's Name: | _____ |

The entity requesting records agrees to pay to Quest Discovery Services its customary charges for this service which are:  $34 Basic per deponent, 38¢ per 8 1/2 x 11 page,  $15 Certificate of No Records, $8 Minimum Page Charge, $15 additional record charges when applicable,  plus sales tax and shipping/handling.  Call for prices on blueprints, x-rays, oversized pages  and other special items. If requested, quotations will be  provided with a $16 service fee per file if costs are not approved and $5 if costs are approved.  Orders received after deposition/due  date will be assessed a $25 retrieval fee.  In the event legal action is  necessary to collect past due amounts, requestor agrees to pay all  reasonable costs incurred in collection, including attorney's fees as  well as a service charge of 1.5% per month. Prices subject to change without notice.

Attorneys for: _____     Circle one:   Plaintiff    Defendant    Co-Defendant    Other
                    Client's name

Firm Name: _____

_____     Authorized Signature Required      Date
                                     (Applies to all attached pages)

| Corporate Office: | Branch Offices: | | | |
|---|---|---|---|---|
| 981 Ridder Park Drive | P.O. Box 214267 | 3438 Mendocino Ave., Ste. A | 2507 West Shaw Ave., Ste. 101 | 5730 Uplander Way, Ste. 101 |
| San Jose, CA 95131 | Sacramento, CA 95821-0267 | Santa Rosa, CA 95403 | Fresno, CA 93711 | Culver City, CA 90230 |
| (408) 441-7000 | (916) 483-7030 | (707) 528-2300 | · (559) 224-0909 | (310) 645-5557 |
| FAX (408) 441-7070 | FAX (916) 483-7037 | FAX (707) 528-6047 | FAX (559) 224-1122 | FAX (310) 645-1488 |

Loraine Leonardo / obtainrec

# EXHIBIT D

## Joshua A. Rosenthal

**From:**   Joshua A. Rosenthal [jrosenthal@mhlawcorp.com]

**Sent:**   Tuesday, June 24, 2008 2:47 PM

**To:**   'Alan Cohen'

**Subject:** Bowman v CMG

Hi Alan,

This email confirms our conversation of June 24, 2008, wherein you granted an extension for the compliance of the subpoena to the Bolliard firm. Compliance with the subpoena is now due by Monday, June 30, 2008.

If you have any questions, please do not hesitate to contact me.

Thank you,

Josh Rosenthal

Joshua A. Rosenthal
Medlin & Hargrave, P.C.
One Kaiser Plaza, Suite 1305
Oakland, CA 94612
Tel: (510) 832-2900
Fax: (510) 832-2945

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.

## Joshua A. Rosenthal

**From:**   Joshua A. Rosenthal [jrosenthal@mhlawcorp.com]

**Sent:**   Wednesday, June 25, 2008 5:00 PM

**To:**   'Alan Cohen'

**Cc:**   'David R. Medlin'; 'bhargrave@mhlawcorp.com'

**Subject:** Bowman v CMG

Hi Alan,

This email confirms our conversation of June 25, 2008, wherein we discussed the subpoena to Robert Bolliard. I told you that this firm was representing Mr. Bolliard and his firm with respect to the response to this subpoena. I informed you that Mr. Bolliard's firm was in the process of closing, he has limited staff and just was able to pull the boxes related to CMG from storage on Monday. It will take time to go through the documents, pull the ones requested, review them and bates stamp them for production. Thus, you agreed that Mr. Bolliard has until July 7, 2008, in which to comply with the subpoena in whole or in part and or provide an objection. Additionally, the CMG defendants have until July 7, 2008 to file for a protective order with respect to the documents sought.

As we discussed, I have problems with many of the documents you are seeking. However, there is no reason to waste each other's time with a protective order motion or objections to a subpoena if Mr. Bolliard does not have the documents that I find objectionable. Since I do not know what documents he has (and neither does Mr. Bolliard until he reviews the boxes), you have granted this extra time. I relayed this information to Mr. Bolliard after our conversation and he informs me that he will be on vacation from June 28, 2008 and returning July 7, 2008. He will be out of his office at meetings for much of the week of July 7, 2008. He will assign someone to start going through the boxes to pull responsive documents in his absence but will not be able to review them by July 7, 2008. Thus, we are seeking, on Mr. Bolliard's behalf, until July 14, 2008, to respond or object to the subpoena and for the CMG defendants to file for a protective order. Please let me know if you will be able to provide this extra time.

With respect to the subpoena, you wanted me to review it and let you know the categories of documents that I object to. As we discussed, since CMG will be producing bank records related to the deposit of the security deposits (with redactions and a privilege log) per the recent court order on the topic, you would not seek those records via the subpoena for the time being. All parties will be preserving their rights to do so at a later time and to object to the request at a later time. CMG is generally not objecting to the production of the accounting records sought in 1-9 as they apply to PGM and the plaintiffs (with the exception of 6(e) which is covered by our agreement re: the bank statements). The rest of the requests are generally harassing as it applies to Bolliard because those are requests that should be directed at CMG, not at a third party witness.

Demands 10-28 (with the exception of 20, which is covered by the above agreement) are all incredibly overbroad and harassing and if Mr. Bolliard is in possession of any of those documents, we will be seeking a protective order. If you wish to narrow the scope of the demands and remove some of the demands, we can meet and confer on that issue.

If you have any questions, please do not hesitate to contact me.

Thank you,

Josh Rosenthal

Joshua A. Rosenthal
Medlin & Hargrave, P.C.
One Kaiser Plaza, Suite 1305
Oakland, CA 94612
Tel: (510) 832-2900
Fax: (510) 832-2945
This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE

LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.


## Joshua A. Rosenthal

**From:**  Joshua A. Rosenthal [jrosenthal@mhlawcorp.com]

**Sent:**  Monday, June 30, 2008 3:07 PM

**To:**  'Alan Cohen'

**Subject:** RE: Bowman v CMG

By giving CMG until July 7, 2008 to file a protective order motion you are not saving anyone any effort. I will not know what documents Mr. Bolliard has until after he has had time to review them, which will be after July 7, 2008, which means I will certainly file the motion. I will take the extension but it does not serve the purpose of attempting to minimize the cost of the parties and the Court's time.

Josh

**From:** Alan Cohen [mailto:cohenlaw@mindspring.com]
**Sent:** Thursday, June 26, 2008 5:35 PM
**To:** Joshua A. Rosenthal
**Subject:** Re: Bowman v CMG

Josh:

We have already granted a substantial extension of time for Mr. Boliard to respond. Given the impending trial date, my client cannot provide another week's extension before we even know what your position is going to be on these requests - especially since you have already signaled that you intend to object and withhold documents. I will attempt to further accommodate Mr. Boliard's schedule by allowing an extension until July 9 for him to produce documents, but we cannot provide any further extension of time to respond to the subpoena. If you plan to object to any of the categories of documents sought in the subpoena, you must file for a protective order by July 7.

Regards,

-Alan

Alan F. Cohen
*Attorney at Law*
101 Montgomery Street, Suite 2050
San Francisco, CA 94104
cohcnlaw@mindspring.com
415.984.1943 *(tel.)*
415.984.1953 *(fax)*

This email may contain confidential or legally privileged information. It is intended only for the addressee's use; if you are not the intended recipient please notify the sender by email that you have received this in error and delete this message from your computer. You are hereby notified that any disclosure, copying, forwarding, distribution, or any use of the contents of this email by anyone other than the intended recipient is strictly prohibited and may result in criminal or civil liability.

On Jun 25, 2008, at 4:59 PMJun/25/08, Joshua A. Rosenthal wrote:

Hi Alan,

This email confirms our conversation of June 25, 2008, wherein we discussed the subpoena to Robert Bolliard. I told you that this firm was representing Mr. Bolliard and his firm with respect to the response to this subpoena. I informed you that Mr. Bolliard's firm was in the process of closing, he has limited staff and just was able to pull the boxes related to CMG from storage on Monday. It will take time to go through the documents, pull the ones requested, review them and bates stamp them for production. Thus, you agreed that Mr. Bolliard has until July 7, 2008, in which to comply with the subpoena in whole or in part and or provide an objection. Additionally, the CMG defendants have until July 7, 2008 to file for a protective order with respect to the documents sought.

As we discussed, I have problems with many of the documents you are seeking. However, there is no reason to waste each other's time with a protective order motion or objections to a subpoena if Mr. Bolliard does not have the documents that I find objectionable. Since I do not know what documents he has (and neither does Mr. Bolliard until he reviews the boxes), you have granted this extra time. I relayed this information to Mr. Bolliard after our conversation and he informs me that he will be on vacation from June 28, 2008 and returning July 7, 2008. He will be out of his office at meetings for much of the week of July 7, 2008. He will assign someone to start going through the boxes to pull responsive documents in his absence but will not be able to review them by July 7, 2008. Thus, we are seeking, on Mr. Bolliard's behalf, until July 14, 2008, to respond or object to the subpoena and for the CMG defendants to file for a protective order. Please let me know if you will be able to provide this extra time.

With respect to the subpoena, you wanted me to review it and let you know the categories of documents that I object to. As we discussed, since CMG will be producing bank records related to the deposit of the security deposits (with redactions and a privilege log) per the recent court order on the topic, you would not seek those records via the subpoena for the time being. All parties will be preserving their rights to do so at a later time and to object to the request at a later time. CMG is generally not objecting to the production of the accounting records sought in 1-9 as they apply to PGM and the plaintiffs (with the exception of 6(e) which is covered by our agreement re: the bank statements). The rest of the requests are generally harassing as it applies to Bolliard because those are requests that should be directed at CMG, not at a third party witness.

Demands 10-28 (with the exception of 20, which is covered by the above agreement) are all incredibly overbroad and harassing and if Mr. Bolliard is in possession of any of those documents, we will be seeking a protective order. If you wish to narrow the scope of the demands and remove some of the demands, we can meet and confer on that issue.

If you have any questions, please do not hesitate to contact me.

Thank you,

Josh Rosenthal

Joshua A. Rosenthal
Medlin & Hargrave, P.C.
One Kaiser Plaza, Suite 1305
Oakland, CA 94612
Tel: (510) 832-2900
Fax: (510) 832-2945

This email communication may contain CONFIDENTIAL INFORMATION WHICH ALSO MAY BE LEGALLY PRIVILEGED and is intended only for the use of the intended recipients identified above. If you are not the intended recipient of this communication, you are hereby notified that any unauthorized review, use, dissemination, distribution, downloading, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by reply email, delete the communication and destroy all copies.