Alan F. Cohen (State Bar No. 194075)
**LAW OFFICES OF ALAN F. COHEN**
101 Montgomery Street, Suite 2050
San Francisco, CA 94104
415.984.1943 (tel.)
415.984.1953 (fax)
cohenlaw@mindspring.com

Angela M. Xavier (State Bar No. 165152)
Attorney At Law
900 Cherry Avenue, Suite 300
San Bruno, CA 94066
Telephone: (650) 355-0414
Facsimile: (650) 355-0842

Attorneys for Plaintiffs and Cross-Defendant

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES W. BOWMAN, JR. and PACIFIC REAL ESTATE MANAGEMENT COMPANY, INC., a Washington Corporation<br><br>Plaintiffs,<br><br>v.<br><br>CMG MORTGAGE, INC., a California Corporation; CMG MORTGAGE, INC., d/b/a PACIFIC GUARANTEE MORTGAGE, CMG MORTGAGE SERVICES, INC., a California corporation; CMG MORTGAGE SERVICES, INC., d/b/a PACIFIC GUARANTEE MORTGAGE,<br><br>Defendants. | Case No.: C-07-3140-SI<br><br>**REPLY TO OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION**<br><br>Date: July 25, 2008<br>Time: 9:00 a.m.<br>Courtroom 10<br>Hon. Susan Illston |
| CMG Mortgage Inc., a California Corporation<br><br>Counter-Claimant,<br><br>v.<br><br>James W. Bowman, Jr., an individual,<br><br>Cross-Defendant. | |

1                      CASE NO.: C-07-3140-SI

**REPLY ISO PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION**

## I. Introduction

Plaintiffs carefully selected five issues ripe for summary adjudication for this motion because, out of fourteen causes of action alleged in the Second Amended Complaint (SAC), Defendants cannot demonstrate the existence of a *genuine* issue of material fact regarding these six issues. Defendants' response has been to argue every fact at issue in the SAC and their counter-claim, in hopes of muddying the narrower inquiry into these five issues. What they have not done, however, is point to a true dispute of facts material to the subject matter of this motion.

## II. Argument

### A. Defendants concede that the California Labor Code governs Mr. Bowman's employment

Defendants do not even respond to Plaintiffs' motion for summary adjudication that the Mr. Bowman enjoys all rights and protections under the California Labor Code. Accordingly, this issue is conceded (as it must be) and Plaintiffs are entitled to summary adjudication.

### B. The Third and Fourth Causes of Action for Breach of the Facilities Agreement

Plaintiffs alleged causes of action for breach of two sets of agreements between the parties, but moved for summary adjudication as to only one – the Facilities Agreements. Notwithstanding this choice, Defendants respond with pages of argument concerning the parties' other contracts, even though the Facilities Agreement is fully integrated and neither references these other contracts nor is referenced therein. They tell us "What the contracts say" (which is not, in fact, what the contracts say) and "How the contracts work in practice" (which simply describes how they breached the plain terms of the written agreements). They do not demonstrate the existence of a factual dispute that can forestall summary adjudication.

#### 1. What is conceded

- Defendants do not dispute that they failed to pay the full Rental Fee under the Facilities Agreement.

- Defendants do not dispute that they failed to pay *any* portion of the $26,004 Rental Fee for Mr. Bowman's last month of employment.

- Defendants concede that the obligations of the Facilities Agreement are unambiguous.

Opposition at 13:10.

- While Defendants continually refer to the Facilities Agreement as a "business-to-business" relationship, they completely fail to respond to those portions of Plaintiffs' motion demonstrating that Mr. Bowman was an individual party to the Facilities Agreement separate from PREMCO.
- Defendants do not dispute that Mr. Bowman was required to employ PREMCO as a separate entity as a condition of his employment.

### 2. Defendants' invented contractual condition

Defendants' only defense boils down to the invention of a condition of payment under the Facilities Agreement that is found nowhere in that (or any other) agreement. The language of Article 4 of the Facilities Agreement is unconditional – it states that Defendants "**shall**" pay the Rental Fee, without condition. Exhibits B and D to Bowman Decl. Despite this clear and unambiguous language, Defendants argue that the contract should be read to mean that they are obligated to pay the Rental Fee out of, and only to the extent of, the Net Income generated by the Branches. This supposed condition on payment is completely untethered to any language in the Facilities Agreement, or the BMA, or any other agreement. The Facilities Agreements say nothing about any conditions on payment.

Instead, Defendants argue that the Facilities Agreement and the Branch Management and Employment Agreement (BMA) must be read together, and that one can divine this new condition from the result. To begin with, Defendants' arguments are internally inconsistent. Defendants argue vociferously that the Facilities Agreement is only between Defendants and PREMCO, and the BMA is only between Defendants and Mr. Bowman. How could an agreement with Mr. Bowman limit PREMCO's right to payment under another agreement to which Mr. Bowman supposedly is not a party?

Secondly, neither set of contracts references the other. Defendants do not point to a single term within either the Facilities Agreement or the BMA that refers to or incorporates the

other even by implication. Incorporation by reference must be clear and unequivocal.[1]
*Kleveland v. Chicago Title Ins. Co.* (2006) 141 Cal.App.4th 761, 765. Moreover, even if these independent agreements could be read together, there still is nothing in either agreement that would support the condition Defendants claim is in there somewhere. Defendants have not identified any portion of either agreement that gives rise to this supposed condition that their obligation to pay the 125% Rental Fee was conditioned on the Net Income of the Branch.

### 3. The written agreements are each separately integrated and unambiguous

Defendants' argument is not supported either by the rules of contract interpretation or the facts. For one thing, each of the contracts is fully integrated. Each contains this identical clause:

> This Agreement is the entire agreement between the parties regarding the subject matter and supersedes any prior oral or written agreement among them regarding the subject matter contained herein.

This language precludes the sort of parol evidence that Defendants seek to introduce here to the effect that the parties' alleged "mutual intention" was to insert additional terms and conditions into the operation of the Facilities Agreement. "This type of clause has been held conclusive on the issue of integration, so that parol evidence to show that the parties did not intend the writing to constitute the sole agreement will be excluded." 2 Witkin, *Evidence*, Ch. VIII, § 70.[2]

As Defendants concede, the contracts are unambiguous, and the Facilities Agreement contains a mandatory, unconditional promise to pay Mr. Bowman and PREMCO the Rental Fee equal to 125% of the costs they incurred. Defendants' subjective intent is irrelevant; under California's "objective theory of contracts," the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, controls interpretation of the

---

[1] Note that the Branch Management and Employment Agreement references Mr. Bowman's Loan Officer Agreement. The inclusion of one agreement and exclusion of another must be read as a decision not to incorporate the Facilities Agreement.

[2] Citing *Hanrahan-Wilcox Corp. v. Jenison Machinery Co.* (1937) 23 Cal.App.2d 642, 646; *Salyer Grain & Milling Co. v. Henson* (1970) 13 Cal.App.3d 493, 501; *Blumenfeld v. R.H. Macy & Co.* (1979) 92 Cal.App.3d 38, 44,; *Malmstrom v. Kaiser Aluminum & Chemical Corp.* (1986) 187 Cal.App.299, 315; *Haggard v. Kimberly Quality Care* (1995) 39 Cal.App.4th 508, 518, 519.

contract, that is, one party's subjective and undisclosed intent is simply irrelevant to contract interpretation. *Headlands Reserve, LLC v. Center For Natural Lands Management*, 523 F.Supp.2d 1113 (C.D.Cal.2007).

### 4. The unambiguous, written agreements could not be modified by the actions of the parties

Since the contracts unquestionably do not support their argument, Defendants turn instead to the "consistent pattern of the parties" as presumably altering the terms of the agreement. Defendants seem to be unable to articulate a theory of contract, but it seems likely that they believe this pattern of the parties *modified* the Facilities Agreement.[3] They do discuss the supposed custom and usage of their business, but custom and usage can be invoked only to interpret, not to create, contractual terms. *Peiser v. Mettler* (1958) 50 Cal.2d 594, 609.

The rule in California is that a written contract cannot be modified except by a subsequent agreement of the parties. Civ. Code § 1698. To prove an oral modification to a written contract, Defendants would have to demonstrate proof of every element, as well as its execution, **by clear and convincing evidence**. *Coldwell Banker & Co. v. Pepper Tree Office Center Associates* (1980) 106 Cal.App.3d 272, 280. This is a very heavy burden, but Defendants do not point to any evidence of a subsequent agreement. Despite considerable verbiage, Defendants' **sole** evidence for their invented condition is that supposedly "According to Ms. Mitchell, who did all of the accounting for the branches, this is how it worked every month." Opposition at 14:17-18. There is no evidence that Mr. Bowman agreed to this modification.

In other words, Defendants can point only to their own actions, which are in breach of the unambiguous obligations of the contract. To accept their argument would transform every actionable breach of contract into a modification without remedy. Defendants do not point to any evidence, or offer any argument cognizable under the law of contract, that would operate to

---

[3] This is not an issue of interpreting the contract, since the contract is not reasonably susceptible of the interpretation given by Defendants. Defendants cannot "interpret" a new term or condition into a contract. While Defendants may introduce evidence to explain ambiguous terms, they may not introduce evidence of terms not specifically included in contract or evidence that contradicts terms of contract. *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1091 (9th Cir. (Cal.) 2005). The canons of contract interpretation are inapplicable where the contract is not ambiguous or uncertain. *Eaton v. Thieme* (App. 1 Dist. 1936) 15 Cal.App.2d 458

insert this novel, unwritten condition into the parties' agreement.[4]

### 5. The evidence demonstrates that the January 2007 Expenses did not exceed Net Income

Finally, even if one accepted every portion of Defendants' faulty contractual argument, their case **still** fails because the Expenses for January 2007 did not exceed the Net Income, as discussed at length in section D below. In other words, even if the contract could be read to contain this condition, the condition was satisfied. Defendants have failed to meet their burden of proof and summary adjudication must be granted.

### C. The Thirteenth Cause of Action for failure to reimburse expenses

#### 1. What is conceded

- Defendants do not dispute that Mr. Bowman was an employee.

- Defendants do not dispute that they required Mr. Bowman to enter into the Facilities Agreement as a condition of employment.

- Defendants do not dispute that they **required** Mr. Bowman to utilize a corporation to enter into the branch lease and incur numerous other obligations.

- Defendants do not dispute that PREMCO had no separate business, employees, income, or reason for existence during the parties' relationship other than handling CMG-related transactions.

- Defendants do not dispute that Mr. Bowman personally funded these obligations through PREMCO or otherwise.

- Defendants fail to address Plaintiffs' authorities holding that these practices are unlawful.

#### 2. The undisputed facts demonstrate that Mr. Bowman personally funded Defendants' obligations and has not been reimbursed

According to Defendants, when Mr. Bowman paid over $20,000 in Branch expenses each month through PREMCO he wasn't paying CMG's expenses, he was *investing in a corporation*. Opposition at 16:7-8. How is that an investment? Investment is expending money with the

---

[4] Moreover, this condition would be unlawful because it would limit Mr. Bowman's absolute right under the Labor Code to reimbursement of expenses incurred in the course of employment. Under Defendants' interpretation, if the Net Income of the Branch is insufficient to reimburse Mr. Bowman for these expenses, he would not be reimbursed. This, in fact, happened several times during their relationship. As argued in Plaintiffs' moving papers, this right to reimbursement <u>cannot be waived</u> by any agreement, express or implied. Labor Code § 2804.

expectation of achieving a profit. Paying one's own bills is an investment only when there's an expectation of profit. Paying someone else's bills is just payment. Being required to pay your employer's bills is exploitation and a breach of the Labor Code.[5] It is undisputed that PREMCO had no separate business during the parties' relationship and all the money passing through PREMCO went to pay CMG's expenses. There is no factual basis for characterizing this as an investment.

Defendants would have this Court ignore the substance of their relationship with Mr. Bowman and focus only on the form. In substance, there is no factual dispute that Mr. Bowman paid CMG's expenses on a monthly basis and that he was required to do so. The authorities cited on pages 10 and 11 of Plaintiffs' Memorandum of Points and Authorities establishes that the form is irrelevant; Defendants do not cite *any* authority to the contrary. They cannot evade the Labor Code by requiring an employee to interpose a corporate entity between them.

### 3. There is no factual dispute that Defendants required Mr. Bowman to personally guarantee CMG expenses

Defendants completely mischaracterize the purpose of the documents attached as Exhibit G to Mr. Bowman's declaration. The sixth page of that exhibit contains a vendor contract signed by CMG's CEO, Christopher George, stating that "We will not be responsible for the fees that [the vendor] charges Agent [Bowman] for Information Services, and Agent will be solely responsible for all such fees." Defendants' Opposition admits that these documents reflect a CMG vendor contract.

Defendants' long argument about how these particular fees are for Pipeline loans and that a material dispute exists as to whether Mr. Bowman is entitled to be reimbursed in full or in part for the specific amounts set forth in the accompanying invoices completely misses the point. Mr. Bowman is not seeking reimbursement for these amounts through this motion. He is

---

[5] Also, requiring "investments . . . in connection with the securing of a position are illegal as against the public policy of the State." Labor Code § 407. There is no dispute that Mr. Bowman was required to pay these expenses by his employer. Even if this could be viewed as an "investment" the obligation would be unlawful under § 407.

establishing that Defendants unlawfully required him to personally guarantee their business expenses.

Finally, Defendants argue that Exhibit G is the only evidence in support of summary adjudication on this cause of action and Exhibit G is not properly authenticated. They are wrong on all counts. First of all, Mr. Bowman testified in his declaration that he incurred $20,803 in expenses in January 2007, that he submitted vouchers for these expenses to Defendants, and that CMG failed to reimburse these expenses. Bowman Decl. at ¶ 11. Defendant fail to dispute this evidence in their opposition papers. Exhibit F to Mr. Bowman's declaration contains an authenticated copy of these invoices. Defendants fail to dispute the admissibility and relevance of this document. Secondly, Mr. Bowman testifies in his declaration that he was required to offer a personal guaranty on vendor contracts. Bowman Decl. at ¶ 23. This establishes the fact in question and shifts the burden to Defendants to dispute this testimony. They failed to do so.

Even as to Exhibit G, Mr. Bowman properly authenticates this in his Declaration from personal knowledge. *Id.* No more is needed. Defendants cannot defeat this motion by passively trying to cast doubt on what the documents "could be." "It is not sufficient for the opposing party simply to raise issues as to the credibility of the moving party's evidence " Schwarzer, Tashima, Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial* (Rutter 2008) § 14:147, *citing National Union Fire Ins. Co. v. Argonaut Ins.* Co. 701 F2d 95, 97 (9th Cir. 1983).[6]

### D. The undisputed facts show that Mr. Bowman is owed wages and summary adjudication must be granted on the Seventh Cause of Action

Defendants do not dispute that Mr. Bowman's wages were calculated by deducting Branch Expenses from Branch revenues, and that any Net Profit remaining constituted his wages. They do not dispute that the resulting Net Profit constitutes "wages" within the broad meaning of Labor Code section 200. Instead, they argue that a dispute exists as to whether

---

[6] Defendants object that Exhibit G had not previously been produced in discovery. They are correct, although in mitigation, Plaintiffs' counsel only received notice of its existence recently, long after documents last had been produced. However, Defendants can hardly argue that they were prejudiced by this oversight, since the relevant portion of the document was signed by Defendants' CEO. This document (and many like it) are not foreign to Defendants.

Mr. Bowman is owed any wages because the Expenses were greater than the Branch revenues at the time his employment terminated. This argument fails on both the facts and the law. It fails as a matter of fact because the undisputed facts show that Defendants never incurred the Expense in question. And even if they had incurred this expense, as a matter of law this is the type of expense that cannot be passed on to an employee. *Quillian v. Lion Oil Co*. (1979) 96 Cal.App.3d 156, 163.

### 1. Defendants neglect to mention that they never incurred the unliquidated "loss" they attribute to Mr. Bowman's Branches

The Branch Management Agreement defines Expenses to include "loss or costs, including reasonable attorneys' fee arising out of suits, actions, audits, foreclosures; or legal proceedings of any nature, arising out of the activities or operations of the Branch Office." Exhibit A to Bowman Decl. at ¶9(d). This is an unlawful provision, as discussed below, but even at face value it cannot possibly encompass an unliquidated, inchoate charge that may never be paid.

Although Defendants imply *ad nauseum* that they have incurred a "loss" of $536,941.56 relating to two of the loans they underwrote that were originated in Mr. Bowman's Branches, their evidence shows only that they have received a repurchase *demand* for this money. A year-and-a-half after receiving these demands, they *still* have not paid a penny toward these demands and likely never will. CMG has not repurchased the loans, and it appears likely they never will. Cohen Suppl. Decl. at Exhibit A (George Depo) at 86:11-90:15; 94:12-13. Thus, even giving the plain terms of the contract their most generous interpretation and excusing for the moment its transgression of the Labor Code, Defendants *still* have not incurred any "loss or costs" due to these demands. This is not a question of credibility, nor is it in dispute: Defendants has not pointed to any evidence that they have incurred an actual loss in their Opposition papers.[7]

Moreover, Defendants admit the repurchase demands were only made after Mr. Bowman's employment terminated. Chevez Decl. at ¶¶ 3 and 4. An employer has an absolute, non-waivable obligation to pay all wages owed on the terminated employee's last day

---

[7] This "Expense" does not appear on the Branches' final Statements of Operations. Exhibit E to Bowman Decl.

of work. Labor Code sections 201, 219. Even where the employee owes a legitimate debt to the employer, it is not entitled to engage in self-help by setting off that debt against final wages. *Barnhill v. Robert Saunders & Co.* 125 Cal.App.3d 1, 6, 177 Cal.Rptr. 803, 806 (Cal.App., 1981). Defendants cannot hold Mr. Bowman's wages hostage indefinitely on the theory that someday they might decide to pay some portion of the repurchase demand and account for this as an Expense of the Branch. California's public policy precludes this: "Wages are not ordinary debts . . . . Because of the economic position of the average worker and, in particular, his dependence on wages for the necessities of life for himself and his family, it is essential to the public welfare that he receive his pay promptly." *Mamika v. Barca* (1998) 68 Cal.App.4th 487, 492 (citations omitted).

### 2. It is unlawful to shift the cost of Defendants' underwriting mistakes to Mr. Bowman, and Defendants would be unjustly enriched

This case is about a scheme to shift CMG's risks inherent in operating multiple branches onto the Branch Managers. As part of this scheme, Defendants purported to retain the right to recover just about any "loss and costs" supposedly arising out of the activities and operations of the Branch. Plaintiffs ask the Court to consider the sheer breadth of ¶ 9(c) of the BMA, and what this could mean to Branch Managers' wages. As interpreted by Defendants, the entire cost of any dispute, cost or litigation remotely connected to any loan originated in one of Mr. Bowman's branches can be deducted from his wages. As applied here – to the demand by a third party investor that CMG repurchase a loan sold on the secondary market – this provision is simply unlawful.

The California courts have long held that an employer may not make its employees insurers of the employer's business losses. Employers cannot subject employees to unpredictable deductions from their wages for losses due to factors beyond their control. *See, e.g., Hudgins v. Neiman Marcus Group, Inc.,* 34 Cal.App.4th 1109, 1123, 1124. In the *Neiman Marcus* case, the Court of Appeal held that an employer could not allocate the cost of "unidentified returns," (*i.e.,* those which could not be associated with any one salesperson) against the commissions due an entire group of salespersons. Doing so would make the

employees individually responsible for general business losses of the employer, and make them insurers of the employer's profits for circumstances wholly outside the employee's ability to control. *Id. See also Kerr's Catering Service v. DIR* (1962) 57 Cal.2d 319 (deductions for cash shortages beyond employee's control unlawfully transforms employee into an insurer against business losses); *Quillian v. Lion Oil Co.* (1979) 96 Cal.App.3d 156 (deducting gas station losses not attributable to station manager from her commissions violates Labor Code section 400).

Here, Defendants seek to hold Mr. Bowman responsible not for some personal misconduct, an operating expense of his branch, or anything else he could control. He is not even being asked to return the loan origination fees he received. Instead, he is being asked to bear the full cost of repurchasing a loan previously sold on the secondary market due to the borrower's later failure to make payments on the loan. The cost is being passed on to Mr. Bowman simply because the loan was originated in one of his Branches.

There is no allegation that Mr. Bowman acted inappropriately in originating these loans, and the repurchase demand has nothing to do with anything he did or failed to do. It was CMG, not Mr. Bowman or anyone in his Branch, that underwrote the loan and decided that the borrower was a good credit risk. It was CMG that entered into the agreement with the investor providing for the repurchase right. And perhaps most importantly, CMG, not Mr. Bowman, enjoyed all of the fruits of the sale. All Mr. Bowman realized was a few thousand dollars in loan origination fees.[8] Now, however, CMG maintains that Mr. Bowman must pay more than half a million dollars out of his Net Income to bail Defendants out of the risks of approving and making the loan, entering into complex agreements with third party investors, and bundling the loans in transactions with these investors – none of which he had anything to do with. Defendants are arguing that the contract allows them (but not Mr. Bowman) to keep all the money they received when the loan was sold while Mr. Bowman (but not Defendants) is responsible for the cost of repurchase. This is not just a violation of the Labor Code, it is straight unjust enrichment.

---

[8] Defendants, after all, take the position that Mr. Bowman was entitled only to loan origination fees and categorically deny his right to any income earned from sale of the loan on the secondary market. Yet Defendants want to make him personally responsible for the full risks of entering into that market. They cannot have it both ways.

This is no "profit sharing arrangement" as described by Defendants' brief – if anything, it is a risk sharing arrangement. The one case cited by Defendants, *Prachasaisoradej v. Ralphs Grocery Co.* (2007) 42 Cal.4th 217, is thus wholly distinguishable. That case involved the validity of factoring store expenses into the calculation of a supplementary profit sharing bonus plan that existed as additional compensation over and above the employees' ordinary wages. *Id.* at 223. By contrast, the profit calculation here is no bonus; it is the totality of Mr. Bowman's Branch Manager compensation. No case in California has ever upheld a contract such as Defendants'.

The *Ralphs* case is distinguishable on numerous other grounds. There, the employer bore all the expenses, but if store profitability fell below certain levels, the employees collectively missed out on the bonus. In other words, not only was the risk limited to losing a bonus (rather than losing all wages), but the risk was spread collectively among all employees. *Id.* at 237. And this risk was limited, because the employer bore the full expense rather than the employees. The risk was further limited to factors relating to that store's profitability, factors that were within the employees' collective ability to control.

By contrast, Defendants' contract gives them the right to avoid paying the expense entirely, because they purport to retain the right to pass it through to the Branch Manager. *Id.* at 238 n.10. Rather than being limited and collective, Defendant would impose an outsized risk squarely on one employee. The only expenses in question in *Ralphs* were local store expenses, meaning that the plan was "designed to reward employees beyond their normal pay for their collective contribution to store profits." *Id.* at 244. Here, Defendants are seeking to make Mr. Bowman individually responsible for a cost arising completely outside his Branches and outside his control. It would be akin to the employer in the *Neiman Marcus* case deducting the cost of new fixtures in the cosmetics department in New York from the commissions paid to a jewelry salesperson in San Francisco.

Imposing these risks on employees violates California's public policy against subjecting employees to the "special hardship" of "unanticipated or undetermined" wage fluctuations. *Kerr's Catering, supra,* 57 Cal.2d at 329. It is hard to imagine a greater hardship, or a more

unanticipated or undetermined wage fluctuation, than to be held responsible for an unliquidated corporate debt that the employer values at half a million dollars.

The risk of absorbing all "loss or costs" including attorneys' fees, arising out of legal proceedings of any nature, related directly or indirectly to the activities or operations of the Branch is so vastly out of proportion to anything Mr. Bowman stood to gain from these transactions as to be oppressive and unenforceable even under common law. *See Allan v. Snow Summit, Inc.* (1996) 51 Cal.App.4th 1358, 1375-76 (Court will not enforce a contract of adhesion or an adhesive provision against the weaker or "adhering" party if the contract or provision does not fall within the reasonable expectations of the weaker party or an ordinary person in that party's position, or if doing so would offend public policy).

### 3. The Marketing Credits are wages because they result in Net Income to the Branch

Defendants' confusing description of Marketing Credits as "negative expenses" misses the mark. Regardless of this characterization, Defendants concede that the Marketing Credits were an offset to Branch Expenses: "if a branch has any marketing credits, they are subtracted from existing expenses. This net expense calculation will then be used to offset income to reach net profits." Opposition at 21:14-17. It is undisputed that Mr. Bowman's wages were calculated by subtracting these expenses from branch revenues to calculate Net Profit. Branch expenses are reduced by the Marketing Credit, resulting in greater Net Profit, *i.e.,* wages.

Defendants' remaining arguments are incomprehensible. They claim that they had no obligation to pay Mr. Bowman income derived from these credits, but this directly contradicts Patricia Mitchell's testimony at deposition. Exhibit C to Cohen Decl. at 176:5-21.[9] A party cannot create a contested issue of fact by a declaration contradicting its own deposition testimony. *See, e.g., Cleveland v. Policy Management Systems Corp.* (1999) 526 U.S. 795, 806; *Block v. City of Los Angeles* (9th Cir. 2001) 253 F.3d 410, 419, fn. 2. Defendants' argument that plaintiff's termination means that Mr. Bowman did not use the marketing credits for their

---

[9] Ms. Mitchell testified on behalf of CMG under Fed. R. Civ. Proc. 30(b)(6).

intended purpose ignores the evidence in the record demonstrating that the marketing credits were earned prior to termination.

### 4. The Reserves are wages because they were withheld from Net Income distributions to Mr. Bowman

Defendants do not contest Mr. Bowman's evidence that Defendants took Net Income that would otherwise be paid to him and withheld it in the form of so-called "Reserves." Bowman Decl. at ¶ 12; Exhibit C to Cohen Decl. (Mitchell Depo) at 90:21-91:6, and Exhibit F. They first try to turn the focus only to the initial security deposits, which Plaintiffs never argued was income. The remainder of their argument, to the extent it is understandable, is that the Reserves were not wages because they were held by CMG as an offset of expenses. However, *why* CMG withheld the Reserves is not at issue in this cause of action; *where the money came from* is the inquiry here. Defendants fail to dispute that the remainder of the Reserves were taken from Branch revenues, and thus under the BMA constituted wages.

Any amounts improperly deducted in the course of calculating Mr. Bowman's net income constitute "wages" within the meaning of the Labor Code. It is irrelevant that the deduction is made in the middle of the calculation rather than directly from the end result. *Quillian v. Lion Oil Co*. (1979) 96 Cal.App.3d 156, 163. An employer who deducts amounts in the course of calculating wages for the impermissible purpose of passing the employer's business costs on to the employee, as CMG did here, is guilty of withholding "wages." *UI Video Stores, Inc*. 55 Cal.App.4th at 1091.

Defendants are also incorrect in arguing that Mr. Bowman claims PREMCO is a sham. Mr. Bowman does not make any such argument anywhere in his moving papers. The only "sham" is Defendants' unlawful requirement that its Branch Managers utilize a corporation to process transactions with Defendants. Defendants do not dispute the evidence showing that they required their Branch Managers to utilize a corporation as a condition of employment.

### E. There is no genuine issue of material fact on the Eleventh Cause of Action for Breach of Fiduciary Duty

As noted above, Defendants do not produce any evidence disputing that they withheld Branch income that otherwise would be paid as wages to Mr. Bowman in the form of Reserves.

*Id.* There is no dispute, then, that this was money received from an employee, used for an impermissible purpose as a cash bond, and not held in trust as required by the Cash Bond Law. In fact, Defendants admit that they used both the initial security deposits and the withheld Reserves to insure against CMG's business losses. Opposition at 22:25-26:1, 23:17-22.

Defendants do not dispute that the Cash Bond Law creates a fiduciary duty. They do not dispute that they failed to segregate the funds they received from Plaintiffs. They do not dispute that these funds were commingled with operating funds and used to fund the operations of the business – included making loans to borrowers.

Defendants do not dispute that Mr. Bowman was required to pay a security deposit (through PREMCO or otherwise) as a condition of employment. They do not dispute that the source of these funds was Mr. Bowman. They do not cite any authorities in rebuttal of those discussed in the moving papers demonstrating that an employer may not directly or indirectly, or through express or implied agreement, cause an employee to waive his rights to the protection of the Labor Code, whether by interposing a corporation between them or otherwise. As the Cash Bond Law itself provides, "No contract between the employer and employee or applicant shall abrogate the provisions of this section." Labor Code § 405.

Defendants state that the security deposits were "added to the expense of the branch under the Facilities Agreement as the relationship went forward." First of all, this doesn't make sense – how could deposits be added to expenses? More importantly, it gives no indication where the money came from. The undisputed evidence shows that the Reserves came from branch revenues, and constituted money that otherwise would have been paid to Mr. Bowman as wages. Defendants argue that this money cannot be both unpaid wages and an unlawful cash bond, but that does not make sense. Defendants withheld income from Mr. Bowman and kept it for the unlawful purpose of making Mr. Bowman an insurer of its losses in violation of Labor Code § 400 *et seq*.

Dated:  July 14, 2008

Respectfully submitted,
LAW OFFICES OF ALAN F. COHEN
By   /s/ Alan Cohen
     Alan F. Cohen
     Attorneys for Plaintiffs