Alan F. Cohen (State Bar No. 194075)
**LAW OFFICES OF ALAN F. COHEN**
101 Montgomery Street, Suite 2050
San Francisco, CA 94104
415.984.1943 (tel.)
415.984.1953 (fax)
cohenlaw@mindspring.com

Angela M. Xavier (State Bar No. 165152)
Attorney At Law
900 Cherry Avenue, Suite 300
San Bruno, CA 94066
Telephone: (650) 355-0414
Facsimile: (650) 355-0842

Attorneys for Plaintiffs and Cross-Defendant

**UNITED STATES DISTRICT COURT**

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES W. BOWMAN, JR. and PACIFIC REAL ESTATE MANAGEMENT COMPANY, INC., a Washington Corporation<br><br>    Plaintiffs,<br><br>    v.<br><br>CMG MORTGAGE, INC., a California Corporation; CMG MORTGAGE, INC., d/b/a PACIFIC GUARANTEE MORTGAGE, CMG MORTGAGE SERVICES, INC., a California corporation; CMG MORTGAGE SERVICES, INC., d/b/a PACIFIC GUARANTEE MORTGAGE,<br><br>    Defendants. | Case No.: C-07-3140-SI<br><br>**SUPPLEMENTAL DECLARATION OF ALAN F. COHEN IN SUPPORT OF PLAINTIFFS' REPLY TO OPPOSITION TO MOTION FOR SUMMARY ADJUDICATION**<br><br>Date: July 25, 2008<br>Time: 9:00 a.m.<br>Courtroom 10<br>Hon. Susan Illston |
| CMG Mortgage Inc., a California Corporation<br><br>    Counter-Claimant,<br><br>    v.<br><br>James W. Bowman, Jr., an individual,<br><br>    Cross-Defendant. | |

I, Alan F. Cohen, declare:

1

CASE NO.: C-07-3140-SI

**DECLARATION OF ALAN F. COHEN ISO REPLY ON MOTION FOR SUMMARY ADJUDICATION**

1. I am one of the attorneys of record for James W. Bowman, Jr. and Pacific Real Estate Management Company, Inc. (PREMCO) in this action, and am licensed to practice before all the Courts in the State of California. I have personal knowledge of the facts below, and could and would testify competently hereto if called upon to do so.

2. On April 29, 2008, I took the deposition of Christopher George, President of Defendants CMG Mortgage, Inc. and CMG Mortgage Services, Inc. Attached as Exhibit A is a true and correct copy of excerpts from the court reporter's transcript of his deposition.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 14th day of July, 2008, at San Francisco, California.

Respectfully submitted,

LAW OFFICES OF ALAN F. COHEN


    /s/ Alan F. Cohen

Attorney for Plaintiffs
James W. Bowman, Jr. and PREMCO

# Exhibit A

```
                    UNITED STATES DISTRICT COURT

                   NORTHERN DISTRICT OF CALIFORNIA

                            SAN FRANCISCO
                              -oOo-

JAMES K. BOWMAN, JR. and
PACIFIC REAL ESTATE MANAGEMENT
COMPANY, INC., a Washington
Corporation,


     Plaintiff,

vs.                                    No. C-07-3140-SI

CMG MORTGAGE, a California
Corporation; CMG MORTGAGE, INC,
CMG MORTGAGE SERVICES, INC, a
California corporation; CMG
MORTGAGE SERVICES, INC, d/b/a
PACIFIC GUARANTEE MORTGAGE,
Inclusive

     Defendants.
_____/

                              --oOo--                    CERTIFIED
                                                           COPY


                DEPOSITION OF CHRISTOPHER M. GEORGE

                    TUESDAY, APRIL 29, 2008



Reported by:
ALICE N. HALBERT
CSR 7889, RPR

                         NANCY SORENSEN
                     Court Reporting Services
                   41 Sutter Street, Suite 505
                  San Francisco, California 94104
                         (415) 986-4624
```

1

which is a subsidiary of Lehman Brothers.

Q. Who was alleged to have committed fraud?

A. I'm not sure what the fraud exactly was, but they had alleged that there was fraud in the file.

Q. And that was their reason for requesting repurchase?

A. That was one of their reasons for request for repurchase.

Q. Were there others?

A. Delinquency.

Q. When was this request for repurchase made? Do you know?

A. Sometimes in 2006.

Q. Mid? Late? Early 2006?

A. Second half.

Q. Did CMG repurchase this loan?

A. Not yet.

Q. Is such a repurchase in the works?

A. Yes.

Q. When will you be repurchasing the loan?

A. Can't gave definitive date. I can't give you a definitive date.

Q. But you're contemplating that you will definitely purchase this loan?

A. It is contractually obligated to purchase this

86

loan.

Q. Have you committed to repurchasing this loan?

A. We are in the process of working through that with Shearson ALS, whatever way you want to call it.

Q. So is this no, you have not committed to repurchase the loan yet?

A. We are um, contractually committed to repurchase this loan.

Q. Have you -- has CMG made a commitment that they will repurchase this particular loan?

MR. MEDLIN: On the contract? Is that your question?

MR. COHEN:

Q. The contract just says that you will do something.

MR. MEDLIN: No. That's not --

MR. COHEN: I'm asking --

MR. MEDLIN: No, sir.

MR. COHEN: -- I am asking whether you have done something.

MR. MEDLIN: And he just answered you and said that he has a contractual obligation to purchase the loan. And you asked him the same question again. And all I'm asking you to do is clarify.

Are you asking for a commitment other than the

87

1  contractual commitment as he just answered, or do you
2  want him to repeat that over and over again?  Fine.
3          MR. COHEN:  If I wanted the same answer, I
4  wouldn't have asked the question again.
5          MR. MEDLIN:  It's --
6          MR. COHEN:  The question --
7          MR. MEDLIN:  It's the same question.  The same
8  question over again.
9          MR. COHEN:
10     Q.  The question is not what does the agreement
11 provide.  The question is, in fact, has CMG made a
12 commitment to repurchase this loan?
13         MR. MEDLIN:  Objection.  Asked and answered.
14 He told you twice that he had a contractual commitment
15 to purchase the loan.
16         MR. COHEN:  David, I heard his answer.  It was
17 not an answer to the question.  I'm not asking what the
18 contract provides.
19         You keep telling me I can't ask him what the
20 contract provides.  I'm asking whether CMG has committed
21 to pay for repurchasing this loan or not.  It's a simple
22 question.  It calls for yes-or-no answer.
23         MR. MEDLIN:  He's answered it.
24         MR. COHEN:  Mr. George, are you going to
25 answer the question?

                MR. MEDLIN:  Just let's try to get to this.  I
don't understand what the distinction is.  You've asked
him three times if he has a commitment.  He's told you
twice yes, I had a contractual commitment.  You don't
like that answer.

                MR. COHEN:  No.  That's not --

                MR. MEDLIN:  You keep asking that.

                MR. COHEN:  That's not the question that I
asked.

                If the problem is the word "commitment," then
I'll simply phrase it differently.

        Q.  Has CMG agreed to repurchase this particular
loan?

        A.  We have a contractual agreement to repurchase
that loan.

        Q.  Okay.  Are you breaching that contractual
agreement, or are you going to honor it?

        A.  I intend to honor my agreements.

        Q.  That is not what I asked.  This agreement, are
you going to honor this agreement to repurchase this
loan or not?

        A.  My intention is to honor my agreements.

        Q.  That's not the question that I asked.  I did
not ask you about your general practice of honoring
agreements.  I asked you whether you are honoring this

                                                        89

particular agreement. Will you repurchase this loan or not?

    A.  Ultimately, after we finish negotiating with ALS, Shearson-Lehman Brothers, we will be required to repurchase this loan.

    Q.  Okay. So the answer is no, you have not made any commitment or agreement to repurchase this loan; is that correct?

    MR. MEDLIN:  Well, objection. Argumentative. That isn't his testimony.

    Don't answer that question.

    MR. COHEN:

    Q.  Is there a time line for when this loan will be repurchased?

    A.  No.

    Q.  Who is responsible for negotiating the repurchase of this loan for CMG?

    A.  That's me.

    Q.  Who is responsible for negotiating the repurchase of this loan for Shearson-Lehman?

    A.  Whew! I could not begin to tell you.

    Q.  Why not? You're -- aren't you negotiating? Sorry. That is argumentative. You said that you were negotiating it?

    A.  For ourselves.

90

1  losses would be attributed to his branch while he were
2  my branch.  It's hard to collect them from him if he's
3  no longer my branch.
4      Q.  Do you know in the investor of the Wilkins
5  loans is alleging that there was any sort of fraud?
6      A.  I don't know.
7      Q.  Do you know whether there was a foreclosure in
8  that case?
9      A.  I do know.
10     Q.  And the answer is what?
11     A.  Yes.
12     Q.  Okay.  Has CMG repurchased the Wilkins loan?
13     A.  We have not.  But we are fully intending to.
14     Q.  Is there any time line for when CMG will
15 purchase that loan?
16     A.  We have made some payments to Credit Swiss
17 First Boston, which is the Wilkins investor.  Credit
18 Swiss First Boston is best briefed as CSFB.
19     Q.  You made some payments?
20     A.  To them.
21     Q.  What were these payments for?
22     A.  Repurchasing the Wilkins loan.
23     Q.  Any other loans?
24     A.  There may be a couple of other loans there as
25 well.