LAW OFFICES OF
# ALAN F. COHEN

101 MONTGOMERY STREET
SUITE 2050
SAN FRANCISCO, CA 94104
TEL: 415.984.1943
FAX: 415.984.1953
cohenlaw@mindspring.com

July 25, 2008

**Via E-Filing and U.S. Mail**

Honorable Susan Illston
United States District Court
Northern District of California
450 Golden Gate Ave.
Courtroom 10, 19th Floor
San Francisco, CA 94102

Re:   *Bowman et al. v. CMG Mortgage, Inc. et al.* – Case No. 3:07-cv-03140-SI

Plaintiffs' Second Motion to Compel Production of Documents

Dear Judge Illston:

This will be the third motion to compel discovery filed by Plaintiffs James Bowman and Pacific Real Estate Management Company, Inc. (PREMCO). Plaintiff again is forced to come to the Court to obtain discoverable documents from Defendants. A copy of the Requests at issue is attached as **Exhibit A** to the accompanying Declaration of Alan F. Cohen ("Cohen Decl."). A copy of Defendants' responses is attached as **Exhibit B**. Prior to filing this motion, the parties met and conferred by telephone and were unable to resolve these disputes. *Id*. at ¶ 2.

   I.   **Factual and Procedural Background**

This is an employment case, brought by Mr. Bowman against his former employers for failure to pay him all wages owed at the time of his termination. Defendants are mortgage brokers and also operate a mortgage bank. Defendants employed Mr. Bowman from December 2003 until January 31, 2007 as a Branch Manager of two branches in Washington State.

Mr. Bowman was employed under a so-called "net branching" arrangement. His employment agreement called for him to receive the Net Income produced by the branches, calculated by subtracting branch operating expenses from the branches' Gross Income. See the Branch Management and Employment Agreement ("BMA"), attached as **Exhibit C** to the Cohen Decl. There is a dispute between the parties as to what Gross Income constituted.

"Gross Income" is defined in the BMA as "all income earned and derived from the Branch Office." See **Exhibit C** at p. 4, ¶ 9. By any standard of contract construction, this is exceedingly broad language, and encompasses not only income "earned" directly at the Branch but also income Defendants "derived from" loans originated by the Branch. Plaintiffs' Second Amended Complaint alleges that Defendants breached this agreement in a number of ways.

Defendants generated income from loans in two ways. In their capacity as mortgage brokers, they originated, processed, and brokered residential mortgage loans that were underwritten by other lenders; broadly speaking, CMG received a broker's commission for this service. In its other capacity, CMG not only brokered loans through

Re: *Bowman v. CMG et al.*, Case No. 3:07-cv-03140-SI
July 25, 2008
Page 2

other banks, it was itself a mortgage bank. As a lender, CMG earned income in several ways "derived from" the loans generated by Mr. Bowman's branches. For the most part, these loans were almost immediately sold off to third-party investors, generating so-called secondary market income. Defendants also often realized a separate "service release premium," which was an additional price paid to CMG for the future value of servicing the loan. A third category of income CMG derived from these loans were administrative or underwriting fees (sometimes known as garbage fees) paid by borrowers..

Because Plaintiffs do not have access to Defendants' records, they have no other way of obtaining about these matters except through discovery. Plaintiffs therefore propounded the discovery requests at issue here seeking documents that might lead to discovery of admissible evidence.

## II. Relief sought in this motion

### A. Defendants' failure to produce a privilege log and the ambiguous nature of their responses

Despite Plaintiffs' previous requests, and the Court's previous orders, Defendants still have not produced a privilege log describing the documents they are withholding based on privilege. This is especially problematic given the artful nature of their responses, which frequently state:

> "All responsive, non privileged documents have previously been produced."

Reasons to compel production: Given the lack of a privilege log, it is impossible to tell from these responses what supposedly privileged documents are being withheld. Neither Plaintiffs nor the Court have any basis for determining whether Defendants are withholding non-privileged documents. The responses' ambiguity give no assurance that Defendants have committed to producing all, some, or none of the documents responsive to these requests. As the leading treatise states:

> [11:1912.1] PRACTICE POINTER: Ambiguous responses are a common source of discovery disputes. E.g., agreeing to produce "responsive documents" creates an ambiguity as to whether some documents are being withheld on the basis of objections. Avoid the problem by either agreeing to produce "all documents requested in the demand" or specifying the particular documents and records that will be produced.

Schwarzer, Tashima, Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial* (Rutter 2007) § 11:1912.1. Plaintiffs therefore request that the Court order Defendants to 1) serve a privilege log; and 2) amend their responses to state unambiguously whether or not all documents requested will be or have been produced.

### B. Request No. 30

This request sought: All COMMUNICATIONS sent or received by Christopher George or Kim Callas during BOWMAN's deposition on April 30, 2008 referring or pertaining to BOWMAN, PREMCO, or this lawsuit.

Reasons to compel production: During Mr. Bowman's deposition, these two senior officers of Defendants spent their time furiously sending emails or text messages from portable devices in response to Mr. Bowman's testimony. It appeared they were emailing their employees to check on facts and evidence as they came up in Mr. Bowman's testimony. To the extent that these communications relate to the subject matter of this lawsuit, they are discoverable. Although Defendants have objected on the

Re: *Bowman v. CMG et al.*, Case No. 3:07-cv-03140-SI
July 25, 2008
Page 3

ground of attorney-client privilege, they have not produced a privilege log (ever), and there is no evidence that these communications were to or from their attorneys and therefore privileged. Communications between Defendants' employees during a deposition that were not confidential communications between attorney and client are not rendered privileged by the fact that one party was sitting in a room where the deposition took place.

### C. Request No. 31

This request sought: Several categories of documents concerning Defendants' uses, practices, and policies concerning branch Reserves.

Reasons to compel production: The disputed documents may be divided into two categories: The first has to do with policies, procedures, and opinion letters relating to the Reserves. The Court has already ruled that Plaintiffs are entitled to these documents. Defendants can have no colorable reason for failing to produce them.

The second category has to do with Reserves taken from branches other than Plaintiffs'. Plaintiffs sought these documents in anticipation of amending their complaint to allege claims under the Labor Code Private Attorney General Act, Labor Code § 2699. Since Plaintiffs propounded these requests, the State on July 9 has given notice that it does not intend to investigate these claims, meaning that Plaintiffs have exhausted their administrative remedies and may now amend their complaint *as a matter of right* to seek remedies on behalf of all other aggrieved employees. These documents are therefore directly relevant and must be produced. Defendants' privacy objections are misplaced and cynical. First, Defendants' position is that these Reserves were internal accounting matters, and that in any case they were taken from corporations, not employees. If so, no employment privacy right is implicated. Second, it is hard to imagine that the other aggrieved employees would object to limited production of information about branch Reserves (not income or wages) where they have suffered as a result of Defendants' unlawful practices themselves and stand to gain from their disclosure. If there is any question in the Court's mind that these documents should be produced, Plaintiffs request the right to submit further briefing in a less abbreviated format.

### D. Request Nos. 35 and 64

This request sought: Several categories of documents concerning "secondary market" income earned or derived from the Branches Mr. Bowman managed.

Reasons to compel production: The Court has already ordered Defendants to answer interrogatories concerning this information in its July 9 order, thus establishing beyond question that these documents are within the scope of discovery. Despite the Court's order, Defendants have not to date produced any responsive documents. Plaintiffs propounded these document requests to make an independent analysis of the information, and to verify the accuracy of Defendants' interrogatory responses. Plaintiffs are entitled to calculate their damages.

Defendants' counsel, Mr. Rosenthal, has represented that he will produce all documents responsive to this request. In an abundance of caution and in the face of the passage of the discovery motion cutoff, Plaintiffs include this request for relief here. If and when Defendants comply with the requests, Plaintiffs will drop this prayer for relief.

### E. Request No. 36

<u>This request sought</u>: Documents evidencing capital contributions to Defendants.

<u>Reasons to compel production:</u> Plaintiffs' cause of action for breach of fiduciary duty alleges that Defendants wrongfully took money from Plaintiffs in the form of Reserves and security deposits, then mingled that money with Defendants' other funds and used it to operate their business and fund mortgages. <u>In other words, Defendants capitalized their business with Plaintiffs' money</u>. Since this gives rise to a cause of action for breach of fiduciary duty under both the common law and Labor Code § 405, Plaintiffs are entitled to seek all equitable remedies arising from such breach.

This Request goes to two issues that will have to be decided at trial. Since Plaintiff involuntarily capitalized Defendants' business, he may be a constructive owner, or at least entitled to a constructive trust or equitable lien over a portion of the business. Determining what percentage that portion comprises requires an analysis of what other capital the business has received. Secondly, Plaintiffs are entitled to recover other remedies available to a wronged beneficiary, including any profit made by the trustee through the breach of trust, with interest, and any lost profit that would have accrued to the trust estate. Prob. Code § 16440(a). Measuring these profits requires analyzing what percentage of the business capital used to fund loans can be traced to Plaintiffs. This is sufficient good cause to require Defendants and their accountant to provide the businesses' capital history. Defendants' privacy is sufficiently protected by the stipulated protective order the parties have entered into and the Court has signed. <u>Without these documents, Plaintiff has no means of determining his remedies</u> under this cause of action.

### F. Request Nos. 37-41, 44

<u>This request sought</u>: Audited financials and other documents relating to audits of CMG from December 2003 to the present.

<u>Reasons to compel production:</u> Plaintiffs allege that Defendants' "net branching" arrangement is unlawful under HUD mortgagee guidelines. Plaintiffs also allege that Defendants have harvested the Branch Managers' Reserves, mingled them with Defendants' operating funds, and used them to fund their operations. As a mortgage lender, Defendants are required under the terms of their Department of Corporations Residential Mortgage Lender license to undergo annual audits.

Given the broad scope of discovery, and the difficulty in tracing these funds, Plaintiffs are entitled to learn whether these audits reflect the unlawful practices alleged in the pleadings, whether Defendants have taken any steps to address these practices, and whether Defendants have instead proceeded with these unlawful practices despite notice from their auditors.

Plaintiffs are also entitled to review these audit-related documents to calculate their remedies for Defendants' breach of fiduciary duty. A key problem in this case is following the trail of the Reserves from the time they passed from Plaintiffs, through Defendants' accounts, through their use in Defendants' operations, up to their present form and location. Defendants' counsel has already informed Plaintiffs that Defendants are allegedly having difficulty determining what bank account records will demonstrate this information, even though the Court ordered them to be produced by Order of June 20, 2008. Plaintiffs hope that these additional documents from the auditors will make this inquiry simpler; it may even prove impossible to conduct this inquiry without the audit documents. Again, Plaintiffs have no other means of obtaining this information

other than from Defendants and their accountants, and Defendants' proprietary and privacy interests will be protected by the parties' stipulated protective order.

### G. Request No. 43

<u>This request sought</u>: All DOCUMENTS evidencing interest earned on any reserves held for or received from all CMG branch managers.

<u>Reasons to compel production</u>: Plaintiff has alleged a cause of action under California's Business and Professions Code § 17200, the Unfair Competition Law, and intends to amend his complaint to allege claims under Labor Code § 2699, the Labor Code Private Attorney General Act. Under these causes of action, Plaintiff has standing to seek remedies on behalf of himself and all other Branch Managers aggrieved by Defendants' unlawful use of the Reserves.

Plaintiff must be allowed to conduct discovery into these Reserves in order to prosecute these causes of action. With a current trial date pending on August 25, and discovery about to be cut off, this discovery cannot be postponed any further.

Defendants' practices with regard to these other Reserves are also relevant to showing that Defendants have engaged in a systematic pattern of unlawful and unfair conduct, and that they should be subjected to punitive damages. Given that Plaintiffs have more than made a *prima facie* showing that these practices were unlawful and widespread, they must be entitled to discover all evidence necessary to prove liability for punitive damages at trial.

### H. Request No. 47-51

<u>These requests sought</u>: Bank records for CMG operating accounts, GMAC Excess Cash Account, GMAC warehouse bank accounts, GMAC warehouse line of credit accounts, Natty Mac warehouse line of credit accounts.

<u>Reasons to compel production</u>: Again, these requests have two goals: The first is to trace the storage and use of the so-called Reserves. The second is to try to determine the uses to which Defendants put those Reserves and the profits made thereby. This latter will help calculate what remedies are appropriate for the breach of Defendants' fiduciary duty to safeguard and not appropriate the Reserves.

The plain fact is that Defendants have no clue which of their accounts has held or are holding these Reserves, because they shifted the funds as necessary to take advantage of the resulting liquid capital. Defendants' CFO testified:

> Standard is all the money that goes into the account we utilize the funds for operation of business and things, and part of operation of business is moving the funds to our warehouse lines, and again, we like to try to keep as much funds in our warehouse lines as possible, so we keep smaller balances in our operating account locally.

**Exhibit D** (Chevez depo) at 148:22-149:3.

Mr. Chevez went on to state: "We have reserves held in several accounts, but I would say the most likely place for the reserves being held are in our GMAC Warehouse Bank called Excess Cash Account." **Exhibit D** at 116:6-17. Mr. Chevez testified that the Reserves went into CMG's operating accounts, and that CMG put as much of those funds as possible into their warehouse accounts. *Id.* at 150:5-24. "[W]e also have a warehouse line with a company called Natty Mac." *Id.* at 155:23-24. Defendants have stated that they are unable to ascertain the actual location of Mr. Bowman's reserves.

Given that uncertainty, Plaintiffs should be allowed to review the reasonable potential locations for their funds.

### I. Request No. 52

<u>This request sought</u>: All DOCUMENTS setting forth the terms and conditions of any line of credit used by CMG from 2003 to the present.

<u>Reasons to compel production:</u> These documents, too, are necessary to calculate the proper remedy for Defendants' misuse of the Reserves. The terms of Defendants' lines of credit require that Defendants have an unknown percentage of liquid cash available to fund loan transactions – perhaps 3% of the loan amount. *Id.* (Chevez depo) at 152:13-153:5. If that 3% number is correct, Plaintiffs' Reserves of $39,682.24 would allow Defendants to finance $1,322,741.33 in loans on any given day, multiple times per month. This would represent profits wrongfully gained by Defendants through the misuse of the entrusted Reserves. But Plaintiffs cannot be required to guess at that 3% number – they are entitled to learn what, precisely, the terms of these credit lines are.

If this argument, or any other in this abbreviated brief, is unclear, Plaintiffs request an opportunity to discuss these issues further with the Court to make sure that Plaintiffs' legitimate need for evidence has been heard as trial approaches. Plaintiffs cannot claim an entitlement to have the Court agree with every argument they may make, but due process does require that they have an opportunity to make their case before the Court. As always, we thank the Court for its attention to these matters.

Sincerely,

Alan F. Cohen

cc: Joshua Rosenthal
Angela Xavier