1  Alan F. Cohen (State Bar No. 194075)
   **LAW OFFICES OF ALAN F. COHEN**
2  101 Montgomery Street, Suite 2050
   San Francisco, CA  94104
3  415.984.1943 (tel.)
   415.984.1953 (fax)
4  cohenlaw@mindspring.com
5
   Angela M. Xavier (State Bar No. 165152)
6  Attorney At Law
   900 Cherry Avenue, Suite 300
7  San Bruno, CA  94066
   Telephone:  (650) 355-0414
8  Facsimile:   (650) 355-0842
9
   Attorneys for Plaintiffs James W. Bowman, Jr. and
10 Pacific Real Estate Management Company, Inc.

11              **UNITED STATES DISTRICT COURT**

12            NORTHERN DISTRICT OF CALIFORNIA

13               SAN FRANCISCO DIVISION

14 JAMES W. BOWMAN, JR. and PACIFIC       | Case No.: C-07-3140-SI
   REAL ESTATE MANAGEMENT
15 COMPANY, INC., a Washington            | **DECLARATION OF ALAN F. COHEN IN**
   Corporation                            | **SUPPORT OF PLAINTIFFS' MOTION TO**
16                                        | **COMPEL AMENDED RESPONSES TO**
                  Plaintiffs,             | **INTERROGATORIES**
17          v.

18 CMG MORTGAGE, INC., a California        | Letter Brief Filed:    July 25, 2008
   Corporation; CMG MORTGAGE, INC.,
19 d/b/a PACIFIC GUARANTEE
   MORTGAGE, CMG MORTGAGE
20 SERVICES, INC., a California           | Discovery Cutoff:      July 16, 2008
   corporation; CMG MORTGAGE           | Discovery Motion
21 SERVICES, INC., d/b/a PACIFIC         | Cutoff:                July 25, 2008
   GUARANTEE MORTGAGE,                  | Case Filed:            June 14, 2007
22                                        | Trial Date:            August 25, 2008
23               Defendants.

24 AND RELATED COUNTER-CLAIM
25

26

27      I, Alan F. Cohen , declare:

28
                              1                        C-07-3140-SI
   **DECLARATION OF ALAN F. COHEN IN SUPPORT OF MOTION TO COMPEL PRODUCTION**

1.     I am one of the attorneys of record for James W. Bowman, Jr. and Pacific Real Estate Mortgage Company, Inc. (PREMCO), Plaintiffs in this action.  I have personal knowledge of the facts below, and could and would testify competently hereto if called upon to do so.

2.     Attached as Exhibit A is a true and correct copy of the request for production of documents I served on Defendants.

3.     Attached as Exhibit B is a true and correct copy of Defendants' responses to this request.

4.     Attached as Exhibit C is a true and correct copy of the document which I am informed and believed is one of the Branch Management and Employment Agreements between the parties.

5.     Before bringing this motion I made every effort to resolve this dispute informally and without involving the Court.  Most of these issues have been discussed several times with Defendants' counsel, Joshua Rosenthal, and are in fact already before the Court in Defendants' pending motion for a protective order regarding Plaintiffs' subpoena to Defendants' accountants, Boliard, Takasugi & McBride.  In addition, on July 24, 2008 Mr. Rosenthal and I spent close to an hour on the telephone attempting to resolve our respective discovery disputes.  We were not able to informally resolve the issues that are the subject of the accompanying motion.

6.     I took the deposition of Defendants' CFO, Paul Chevez, on March 18, 2008. Attached as Exhibit D is a true and correct copy of the portions of the reporter's transcript of Mr. Chevez's deposition relevant to this motion.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 25th day of July, 2008, at San Francisco, California.

LAW OFFICES OF ALAN F. COHEN

By _____
     Alan F. Cohen
     Attorney for Plaintiffs

2                                     C-07-3140-SI

**DECLARATION OF ALAN F. COHEN IN SUPPORT OF MOTION TO COMPEL PRODUCTION**

# Exhibit A

1  Alan F. Cohen (State Bar No. 194075)
   **LAW OFFICES OF ALAN F. COHEN**
2  101 Montgomery Street, Suite 2050
   San Francisco, CA  94104
3  415.984.1943 (tel.)
4  415.984.1953 (fax)
   cohenlaw@mindspring.com
5
6  Angela M. Xavier (State Bar No. 165152)
   900 Cherry Avenue, Suite 300
7  San Bruno, CA  94066
   650.355.0414 (tel.)
8  650.355.0842 (fax)
9  Attorneys for Plaintiffs
10 James W. Bowman, Jr. and Pacific Real Estate

11                  **UNITED STATES DISTRICT COURT**
12                  NORTHERN DISTRICT OF CALIFORNIA
13                      SAN FRANCISCO DIVISION
14

15 | JAMES W. BOWMAN, JR. and PACIFIC | Case No.: C-07-3140-SI |
   REAL ESTATE MANAGEMENT
16 COMPANY, INC., a Washington           **PLAINTIFF'S REQUEST FOR**
   Corporation                           **PRODUCTION OF DOCUMENTS, SET TWO**
17

18                 Plaintiffs,

19         *v.*

20 CMG MORTGAGE, INC., a California
   Corporation; CMG MORTGAGE, INC.,
21 d/b/a PACIFIC GUARANTEE
   MORTGAGE, CMG MORTGAGE
22 SERVICES, INC., a California corporation;
   CMG MORTGAGE SERVICES, INC., d/b/a
23 PACIFIC GUARANTEE MORTGAGE,
24
25                 Defendants.

26

27 PROPOUNDING PARTY:    PLAINTIFF JAMES W. BOWMAN, JR.

28 RESPONDING PARTIES:    CMG MORTGAGE, INC.; CMG MORTGAGE, INC., d/b/a
                          PACIFIC GUARANTEE MORTGAGE, CMG MORTGAGE

**LAW OFFICES OF**
**ALAN F. COHEN**

                                        1

SERVICES, INC.; CMG MORTGAGE SERVICES, INC., d/b/a PACIFIC GUARANTEE MORTGAGE

SET NUMBER:                      TWO

Plaintiff James W. Bowman, Jr. ("Plaintiff") hereby requests that Defendants CMG Mortgage, Inc., CMG Mortgage, Inc., d/b/a Pacific Guarantee Mortgage, CMG Mortgage Services, Inc., CMG Mortgage Services, Inc.,  d/b/a Pacific Guarantee Mortgage (collectively, "Defendants") respond to this Request for Production of Documents (the "Request").  Defendant must serve the response within 30 days of the date on which this Request was served, plus any additional amount of time provided for response under FRCP 6.  Within that same time period, Defendant must also produce for examination, inspection, and copying the documents described below.  The responses and documents must be served and produced by 10:00 a.m. at the Law Offices of Alan F. Cohen, 101 Montgomery Street, Suite 2050, San Francisco, California 94104.

In lieu of personal delivery as set forth above, Defendant may comply with this Request by mailing or delivering the response and documents requested to the above address on or before the date specified for production, along with the verification required by statute.

## INSTRUCTIONS

Defendant must produce the documents requested either: (1) as they are kept in the usual course of business; or (2) organized and labeled so as to correspond with each specific request.

If you object to part of a document request and refuse to answer that part, state YOUR objection and answer the remaining portion of that document request.  If you object to the scope or time period of a document request and refuse to answer for that scope or time period, state YOUR objection and answer the document request for the scope or time period you believe is appropriate.

Each copy of a DOCUMENT, regardless of when made, which is not identical to the original by reason of subsequent notation or modification of any kind whatsoever, including notations on the front or back of any of its pages, is a separate DOCUMENT and must be produced.

With respect to any requested document which you refuse to produce in response to these Requests for Production, please state:

    (a)    the full identity of the document including:

        (1) date of the document;

        (2) its title (if ANY);

        (3) its authors, addressees, recipients or parties;

        (4) the nature of the document (e.g., letter, memorandum, etc.);

        (5) the individual or source from whom or which you obtained it; and

        (6) its present location and identity of its custodian;

    (b)    whether YOUR objection or refusal is directed to the entire document or part thereof;

    (c)    if YOUR objection or refusal goes to part of the document, specify the specific part(s) of the document to which YOUR objection or refusal is directed;

    (d)    the specific factual basis which gives rise to the objection or refusal; and

    (e)    the specific legal ground on which the objection or refusal is based.

If any of the following requested DOCUMENTS cannot be located or produced after exercising due diligence to secure the information, please so state and respond to the extent possible, specifying YOUR inability to respond fully, and stating whatever information you have concerning the non-produced DOCUMENTS.  If YOUR response is qualified in any particular, please set forth the details of such qualification.

If any request is defined using a term of art or other terms that Defendant believes to be incorrect but Defendant understands the nature of the document requested, defendant shall produce the document notwithstanding the semantic or definitional error.

## **DEFINITIONS**

The following terms shall have the following meanings:

1.   "CMG," "YOU," or "YOUR" refers to Defendants CMG Mortgage, Inc., CMG Mortgage, Inc., d/b/a Pacific Guarantee Mortgage, CMG Mortgage Services, Inc., CMG Mortgage Services, Inc.,  d/b/a Pacific Guarantee Mortgage, individually and collectively. The term specifically includes any facilities, offices, locations, divisions, affiliates, subsidiaries,

successors, predecessors, affiliates and present or former partners.  Where the request involves the actions of an individual (for example, "all communications with CMG"), the term CMG also includes CMG's officers, directors, employees, agents, attorneys or representatives, and any other persons or entities acting, purporting to act or authorized to act on its behalf.

2.    "BOWMAN" refers to Plaintiff James W. Bowman, Jr.

3.    "PREMCO" refers to Pacific Real Estate Management Company, Inc.

4.    "PLAINTIFFS" refers to BOWMAN and PREMCO, collectively.

5.    "BRANCHES" refers to CMG's branch in Federal Way, Washington, which may be but is not necessarily referred to as Branch 455, and CMG's branch in Vancouver, Washington, which may be but is not necessarily referred to as Branch 457.

6.    "RESERVES" refers to both reserves and security deposits as those terms were used by CMG in its branch accounting and its Branch Management and Employment Agreements and Facilities Agreements.  The term "RESERVES" includes any money either received directly from Branch Managers or entities owned in whole or in part by Branch Managers, or money withheld from branch distributions and maintained as reserves or deposits.

7.    "COMMUNICATION" means the transmission of information of any sort, including, without limitation, facts, opinions, pictures, images or characters, alphabetic, mathematic or otherwise, by whatever means, whether written, oral, visual, electronic, digital, analog or otherwise.

8.    The term "DOCUMENT" is used in the broadest possible sense and incorporates any writing as defined broadly in Evidence Code § 250, including any typewritten, handwritten, graphic, photographic, printed or otherwise recorded matter or recording of symbols in tangible form, however produced or reproduced, of every kind and regardless of where located, which is in YOUR possession, custody, or control, or in the possession, custody or control of any YOUR servants or agents of YOUR attorneys.  Among other things, DOCUMENTS may consist of electronically recorded information such as electronic mail ("email"), html files, databases, data processing cards or tapes, computerized data, computer diskettes, or information otherwise contained on a computer's hard drive, disks or backup tapes; video tapes, audio tapes, view-

graphs, or any information maintained on digital, electronic, magnetic or other media; any other summary, schedule, memorandum, note, statement, letter, telegram, interoffice COMMUNICATION, report, diary, worksheet, list, graph, chart, or index, tape record, partial or complete report of telephone or oral conversation, transcript or minutes, compilation, tabulation, study, analysis, or other such writing or recording. The term "DOCUMENT" includes originals, file copies, any other copies, no matter how prepared, and any drafts prepared in connection with such DOCUMENTS, whether or not used, as well as the file in which the DOCUMENTS are maintained.

9.     The phrases "RELATE TO" and "RELATING TO" include, but are not limited to, referring to, alluding to, responding to, concerning, supporting, connected with, commented on, in respect of, about, regarding, discussing, showing, describing, mentioning, reflecting, analyzing, comprising, constituting, evidencing, memorializing, and pertaining to, or which call into doubt

## REQUESTS FOR PRODUCTION OF DOCUMENTS

### REQUEST NO. 26

All COMMUNICATIONS, or DOCUMENTS referring to COMMUNICATIONS referring or pertaining to BOWMAN that have not previously been produced.

### REQUEST NO. 27

All COMMUNICATIONS, or DOCUMENTS referring to COMMUNICATIONS referring or pertaining to PREMCO that have not previously been produced.

### REQUEST NO. 28

All DOCUMENTS referring or pertaining to revenues or expenses of the BRANCHES that have not previously been produced.

### REQUEST NO. 29

All DOCUMENTS referring or pertaining to BOWMAN or PREMCO that have not previously been produced.

**REQUEST NO. 30**

All COMMUNICATIONS sent or received by Christopher George or Kim Callas during BOWMAN's deposition on April 30, 2008 referring or pertaining to BOWMAN, PREMCO, or this lawsuit.

**REQUEST NO. 31**

All DOCUMENTS evidencing, referring to, or pertaining to, CMG's policy and practice of maintaining branch RESERVES, including:

    a.  Any opinion letters referring to or pertaining to the RESERVES;

    b.  All DOCUMENTS referring or pertaining to the origin, rationale, nature, policies, use, and application of RESERVES;

    c.  CMG's policies and practices governing RESERVES;

    d.  CMG's accounting of RESERVES;

    e.  All bank account statements and other bank records for any and all accounts which currently or have ever contained any amount of the BRANCHES' RESERVES.

    f.  CMG's use of RESERVES to offset branch or any other expenses;

**REQUEST NO. 32**

ALL COMMUNICATIONS or other DOCUMENTS evidencing, referring to or pertaining to RESERVES associated with or belonging to BOWMAN, PREMCO, or the BRANCHES;

**REQUEST NO. 33**

All DOCUMENTS constituting, referring to, or pertaining to accounting records of RESERVES associated with or belonging to BOWMAN, PREMCO, or the BRANCHES.

**REQUEST NO. 34**

All DOCUMENTS evidencing, referring to, or pertaining to CMG's decision to withhold further payments to BOWMAN or PREMCO after January 31, 2007.

**REQUEST NO. 35**

All DOCUMENTS evidencing, referring to, or pertaining to revenues earned and derived from the BRANCHES, including:

    a.   All fees obtained in connection with loans originated in the BRANCHES, including those for loan origination, administration, processing, accounting, or underwriting;

    b.   All Service Release Premiums resulting from loans originated in the BRANCHES;

    c.   All Yield Spread Premiums resulting from loans originated in the BRANCHES;

    d.   Income earned by CMG on the sale to third parties of loans originated in the BRANCHES;

    e.   Any other secondary market income earned or derived from loans originated in the BRANCHES;

**REQUEST NO. 36**

All DOCUMENTS evidencing capital contributions to CMG Mortgage, Inc., CMG Mortgage Services, Inc., and/or CMG Financial Services, Inc. from any source.

**REQUEST NO. 37**

All audited financial statements for all CMG entities from December 2003 to the present.

**REQUEST NO. 38**

All Statement of Auditing Standards (SAS 29) opinions or other opinion letters pertaining to any CMG entities from December 2003 to the present.

**REQUEST NO. 39**

All Independent Auditor's Reports pertaining to any CMG entities from December 2003 to the present.

**REQUEST NO. 40**

All schedules of audit findings pertaining to any CMG entities from December 2003 to the present.

**REQUEST NO. 41**

All corrective action plans pertaining to any CMG entities from December 2003 to the present.

**REQUEST NO. 42**

All DOCUMENTS evidencing interest earned on reserves held for or received from BOWMAN, PREMCO, or the BRANCHES.

**REQUEST NO. 43**

All DOCUMENTS evidencing interest earned on any reserves held for or received from all CMG Branch Managers.

**REQUEST NO. 44**

All DOCUMENTS constituting audits of CMG.

**REQUEST NO. 45**

All DOCUMENTS constituting, referring to, or pertaining to bank records for any and all accounts which currently or have ever contained BOWMAN's, PREMCO's, or the BRANCHES' RESERVES.

**REQUEST NO. 46**

All DOCUMENTS constituting, referring to, or pertaining to bank records for any and all accounts which currently or have ever contained any RESERVES associated with any branch, any branch manager, or any branch manager's corporate entity.

**REQUEST NO. 47**

All bank records for any and all CMG operating accounts from December 2003 to the

present.

**REQUEST NO. 48**

All bank records for CMG's GMAC Excess Cash Account from December 2003 to the present.

**REQUEST NO. 49**

All bank records for CMG's GMAC warehouse bank accounts from December 2003 to the present.

**REQUEST NO. 50**

All bank records for CMG's GMAC warehouse line of credit accounts from December 2003 to the present.

**REQUEST NO. 51**

All bank records for CMG's Natty Mac warehouse line of credit accounts from December 2003 to the present.

**REQUEST NO. 52**

All DOCUMENTS setting forth the terms and conditions of any line of credit used by CMG from 2003 to the present.

**REQUEST NO. 53**

All DOCUMENTS constituting, evidencing, or referring to a personal guarantee by Christopher George for any line of credit available to CMG from 2003 to the present.

**REQUEST NO. 54**

All DOCUMENTS evidencing, pertaining to, or referring to any loss YOU claim to have suffered as a result of any action or inaction by BOWMAN or PREMCO.

**REQUEST NO. 55**

All DOCUMENTS evidencing, pertaining to, or referring to loans BOWMAN started

with CMG prior to January 31, 2007 and did not close with CMG after January 31, 2007.

**REQUEST NO. 56**

All DOCUMENTS evidencing, pertaining to, or referring to the allegation in YOUR Counter-Claim that BOWMAN solicited existing CMG customers after his termination so that they would close loans with BOWMAN and his new employer and not CMG.

**REQUEST NO. 57**

All DOCUMENTS evidencing, pertaining to, or referring to the allegation in YOUR Counter-Claim that BOWMAN wrongfully exercised dominion and control over the property of CMG and converted that property to his own use.

**REQUEST NO. 58**

All DOCUMENTS evidencing, pertaining to, or referring to the allegation in YOUR Counter-Claim that BOWMAN misappropriated or misused CMG's confidential and proprietary trade secret information.

**REQUEST NO. 59**

All DOCUMENTS evidencing, pertaining to, or referring to the allegation in YOUR Counter-Claim that BOWMAN interfered with CMG's existing economic relations with its customers.

**REQUEST NO. 60**

All DOCUMENTS evidencing, pertaining to, or referring to the allegation in YOUR Counter-Claim that BOWMAN interfered with CMG's existing economic relations with its customers with the intent to interfere with and damage those relationships to Bowman's own direct economic advantage.

**REQUEST NO. 61**

All DOCUMENTS evidencing, pertaining to, or referring to the allegation in YOUR Counter-Claim that any loan applications received by BOWMAN on or before January 31, 2007 but not closed with CMG would have been banked with CMG.

**REQUEST NO. 62**

All DOCUMENTS evidencing, pertaining to, or referring to the allegation in YOUR Counter-Claim that YOU have lost future business because of any action or inaction by BOWMAN or PREMCO.

**REQUEST NO. 63**

All DOCUMENTS constituting, evidencing, or referring to YOUR PIPELINE REPORTS for the BRANCHES for the period beginning December 1, 2006 through February 28, 2007. "PIPELINE REPORTS" includes any data YOU have RELATING TO loan files that have been started or opened in the BRANCHES.

**REQUEST NO. 64**

All DOCUMENTS evidencing, pertaining to, or referring to secondary market income YOU earned or derived from loans originated in the BRANCHES.

LAW OFFICES OF ALAN F. COHEN

Dated: June 6, 2008

By _Alan Cohen_
Alan F. Cohen
Attorney for Plaintiff

## PROOF OF SERVICE

I, Alan F. Cohen, declare that I am a resident of the State of California, am over the age of eighteen years, and not a party to the within action.  I am a member of the bar of this Court.  My address is 101 Montgomery Street, Ste. 2050, San Francisco, CA 94104.

On the date set forth below I served a true and correct copy of:

**PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS, SET TWO**

☒     (FIRST CLASS MAIL) by placing such copy in a sealed envelope postage thereon fully prepaid, with the United States Postal Service for mailing this day from San Francisco, California.

☐     (HAND DELIVERY) by hand delivery on to the party(ies) indicated below:

☐     (FACSIMILE) by consigning such copy to a facsimile operator for transmittal on this date to the party(ies) indicated.

☐     (OVERNIGHT COURIER) by consigning such copy in a sealed envelope postage thereon fully prepared, with the United States Postal Service or an overnight courier for next day delivery to the party(ies) indicated.

I served the above document(s) on the following persons:

David Medlin
Joshua Rosenthal
Medlin & Hargrave
One Kaiser Plaza, Suite 1305
Oakland, CA  94612
jrosenthal@mhlawcorp.com

***Attorneys for Defendants CMG Mortgage, Inc., et al.***

I am readily familiar with my firm's practices for processing of correspondence for delivery according to the instructions indicated above, under which correspondence would be deposited in the mail or other delivery service set forth above on the date below.  The above-referenced  documents were placed for deposit in accordance with the office's practice.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed at San Francisco, California on June 6, 2008.

_____
Alan F. Cohen

# Exhibit B

David R. Medlin     (SBN 77417)
G. Bradley Hargrave   (SBN 173911)
Joshua A. Rosenthal   (SBN 190284)
MEDLIN & HARGRAVE
A Professional Corporation
One Kaiser Plaza, Suite 1305
Oakland, CA  94612
Telephone:     (510) 832-2900
Facsimile:      (510) 832-2945
E-mail:        jrosenthal@mhlawcorp.com

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| James W. Bowman, Jr. and Pacific Real Estate Management Company, Inc., a Washington Corporation,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>CMG Mortgage Inc., a California Corporation; CMG Mortgage, Inc., d/b/a Pacific Guarantee Mortgage, CMG Mortgage Services, Inc., a California Corporation, CMG Mortgage Services, Inc. d/b/a Pacific Guarantee Mortgage,<br><br>                    Defendants.<br>_____ / | Case No.: C 07 3140 SI<br><br>DEFENDANTS' RESPONSE TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS UNDER RULE 34, SET TWO |
| CMG Mortgage Inc., a California Corporation<br><br>                    Counter-Claimant,<br><br>          vs.<br><br>James W. Bowman, Jr., an individual,<br><br><br>                    Cross-Defendant.<br>_____ / | |

PROPOUNDING PARTY:    James W. Bowman, Jr. and Pacific Real Estate Management
                      Company, Inc., a Washington Corporation

RESPONDING PARTY:     CMG Mortgage Inc., a California Corporation; CMG Mortgage,
                      Inc., d/b/a Pacific Guarantee Mortgage, CMG Mortgage Services,
                      Inc., a California Corporation, CMG Mortgage Services, Inc. d/b/a
                      Pacific Guarantee Mortgage

SET NO.:              TWO

1

1   Responding parties have not fully completed an investigation of the facts relevant to this case,

2   has not completed discovery, and has not completed preparation for trial. Accordingly, all of the

3   responses contained herein are based only upon such information and documents as are presently

4   available to and specifically known to the responding parties and disclose only those contentions which

5   presently occur to responding party.

6   It is anticipated that further discovery, independent investigation, legal research and analysis

7   will supply additional facts and add meaning to known facts, as well as establishing entirely new factual

8   conclusions and legal contentions, all of which may lead to substantial additions to, changes in, and/or

9   variations from the contentions herein set forth.

10   Except for explicit facts admitted herein, no incidental or implied admissions are intended

11   hereby. The fact that responding parties have answered any request should not be taken as an admission

12   that responding parties accept or admit the existence of any facts set forth or assumed by such request,

13   or that such response constitutes admissible evidence. The fact that responding parties have answered

14   part or all of any request is not intended, and shall not be construed to be a waiver by responding parties

15   of all or any part of any objection to any request made by responding parties.

16   The following responses are given without prejudice to the responding parties' right to produce

17   evidence of any subsequently discovered fact or facts which responding parties may later recall or

18   discover. Responding parties accordingly reserve the right to change any and all answers herein as

19   additional facts are ascertained, analyses are made, legal research is completed, and contentions are

20   made. The responses contained herein are made in a good faith effort to supply as much factual

21   information and as much specification of legal contentions as are presently known, but should in no

22   way be utilized to the prejudice of these responding parties in relation to further discovery, research or

23   analysis.

24   Responding parties object to all of the requests to the extent they, or any of them, call for any

25   matter which is protected from discovery as either attorney work product and/or an attorney client

26   communication. Responding parties will not divulge either attorney work product or attorney client

27   communications.

28   ///

DEFENDANTS' RESPONSE TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET TWO C 07
3140 SI

M:\CMG\85-0706-02 Bowman\Discovery\Responding\response to f Set 2 - insp dem.wpd

1    Without prejudice to the above and subject thereto responding party responds as follows:

2    **REQUEST FOR PRODUCTION NO. 26**

3    All COMMUNICATIONS, or DOCUMENTS referring to COMMUNICATIONS

4    referring or pertaining to BOWMAN that have not previously been produced.

5    **RESPONSE TO REQUEST FOR PRODUCTION NO. 26**

6    All responsive, non privileged documents have previously been produced.

7    **REQUEST FOR PRODUCTION NO. 27**

8    All COMMUNICATIONS, or DOCUMENTS referring to COMMUNICATIONS

9    referring or pertaining to PREMCO that have not previously been produced.

10    **RESPONSE TO REQUEST FOR PRODUCTION NO. 27**

11    All responsive, non privileged documents have previously been produced.

12    **REQUEST FOR PRODUCTION NO. 28**

13    All DOCUMENTS referring or pertaining to revenues or expenses of the BRANCHES

14    that have not previously been produced.

15    **RESPONSE TO REQUEST FOR PRODUCTION NO. 28**

16    All responsive, non privileged documents have previously been produced.

17    **REQUEST FOR PRODUCTION NO. 29**

18    All DOCUMENTS referring or pertaining to BOWMAN or PREMCO that have not

19    previously been produced.

20    **RESPONSE TO REQUEST FOR PRODUCTION NO. 29**

21    All responsive, non privileged documents have previously been produced.

22    **REQUEST FOR PRODUCTION NO. 30**

23    All COMMUNICATIONS sent or received by Christopher George or Kim Callas during

24    BOWMAN's deposition on April 30, 2008 referring or pertaining to BOWMAN, PREMCO, or

25    this lawsuit.

26    ///

27    ///

28    ///

DEFENDANTS' RESPONSE TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET TWO C 07
3140 SI

M:\CMG\85-0706-02 Bowman\Discovery\Responding\response to f Set 2 - insp dem.wpd

**RESPONSE TO REQUEST FOR PRODUCTION NO. 30**

Objection on the ground that the request is harassing. Objection on the ground that the request seeks documents not likely to lead to the discovery of admissible evidence. Objection on the ground that it invades the attorney client privilege.

**REQUEST FOR PRODUCTION NO. 31**

All DOCUMENTS evidencing, referring to, or pertaining to, CMG's policy and practice of maintaining branch RESERVES, including:

    a.    Any opinion letters referring to or pertaining to the RESERVES;

    b.    All DOCUMENTS referring or pertaining to the origin, rationale, nature, policies, use, and application of RESERVES;

    c.    CMG's policies and practices governing RESERVES;

    d.    CMG's accounting of RESERVES;

    e.    All bank account statements and other bank records for any and all accounts which currently or have ever contained any amount of the BRANCHES' RESERVES.

    f.    CMG's use of RESERVES to offset branch or any other expenses;

**RESPONSE TO REQUEST FOR PRODUCTION NO. 31**

Responding parties object to this request to the extent it seeks documents regarding accounting of reserves, bank statements indicating reserves or use of reserves with respect to any branches other than 455 and 457 as being harassing, irrelevant and unlikely to lead to the discovery of admissible evidence. It is also unduly invasive of the privacy of the other corporations which provide the reserves. Responding party has already provided documents that evidence the accounting of the reserves with respect to branches 455 and 457 as well as policies and practices governing reserves, rationale and application, with respect to branch 455 and 457. With respect to bank account statement or other bank records, responding party is determining whether the information is traceable in a bank account statement. If so, responding party will provide the redacted documents pursuant to the June 20, 2008 court order regarding plaintiffs' request for production of documents, set one.

///

///

4

1    **REQUEST FOR PRODUCTION NO. 32**

2        ALL COMMUNICATIONS or other DOCUMENTS evidencing, referring to or pertaining to

3    RESERVES associated with or belonging to BOWMAN, PREMCO, or the BRANCHES.

4    **RESPONSE TO REQUEST FOR PRODUCTION NO. 32**

5        All responsive, non privileged documents have previously been produced.

6    **REQUEST FOR PRODUCTION NO. 33**

7        All DOCUMENTS constituting, referring to, or pertaining to accounting records of RESERVES

8    associated with or belonging to BOWMAN, PREMCO, or the BRANCHES.

9    **RESPONSE TO REQUEST FOR PRODUCTION NO. 33**

10       All responsive, non privileged documents have previously been produced.

11   **REQUEST FOR PRODUCTION NO. 34**

12       All DOCUMENTS evidencing, referring to, or pertaining to CMG's decision to withhold

13   further payments to BOWMAN or PREMCO after January 31, 2007.

14   **RESPONSE TO REQUEST FOR PRODUCTION NO. 34**

15       All responsive, non privileged documents have previously been produced.  Responding parties

16   will comply with this request by producing additional responsive documents in responding parties'

17   possession, custody and control.

18   **REQUEST FOR PRODUCTION NO. 35**

19       All DOCUMENTS evidencing, referring to, or pertaining to revenues earned and derived

20   from the BRANCHES, including:

21       a.    All fees obtained in connection with loans originated in the BRANCHES, including

22   those for loan origination, administration, processing, accounting, or underwriting;

23       b.    All Service Release Premiums resulting from loans originated in the BRANCHES;

24       c.    All Yield Spread Premiums resulting from loans originated in the BRANCHES;

25       d.    Income earned by CMG on the sale to third parties of loans originated in the

26   BRANCHES;

27       e.    Any other secondary market income earned or derived from loans originated in the

28   BRANCHES.

5

**RESPONSE TO REQUEST FOR PRODUCTION NO. 35**

Objection on the ground that the request is vague and ambiguous and is internally inconsistent. Revenues earned and derived from the BRANCHES do not include administrative and underwriting fees incurred by CMG for administrative and underwriting tasks, nor does it include secondary market income. Objection on the ground that secondary market income is not income plaintiffs are entitled to and thus it seeks information that is not likely to lead to the discovery of admissible evidence.

With respect to loan origination fees, commissions YSP's, administrative and processing fees paid to Bowman, objection on the ground that this is information equally available to plaintiffs. Moreover, this information has already been provided in the accountings.

**REQUEST FOR PRODUCTION NO. 36**

All DOCUMENTS evidencing capital contributions to CMG Mortgage, Inc., CMG Mortgage Services, Inc., and/or CMG Financial Services, Inc. from any source.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 36**

Objection on the ground that the request seeks information that is not relevant to the dispute and not likely to lead to the further discovery of admissible evidence. Objection on the ground that the request is overbroad and unduly burdensome and harassing. Objection on the ground that the request is unduly invasive of the responding parties' privacy.

**REQUEST FOR PRODUCTION NO. 37**

All audited financial statements for all CMG entities from December 2003 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 37**

Objection on the ground that the request seeks information that is not relevant to the dispute and not likely to lead to the further discovery of admissible evidence. Objection on the ground that the request is overbroad and unduly burdensome and harassing. Objection on the ground that the request is unduly invasive of the responding parties' privacy.

**REQUEST FOR PRODUCTION NO. 38**

All Statement of Auditing Standards (SAS 29) opinions or other opinion letters pertaining to any CMG entities from December 2003 to the present.

///

6

1 **RESPONSE TO REQUEST FOR PRODUCTION NO. 38**

2     Objection on the ground that the request seeks information that is not relevant to the dispute and

3 not likely to lead to the further discovery of admissible evidence. Objection on the ground that the

4 request is overbroad and unduly burdensome and harassing. Objection on the ground that the request is

5 unduly invasive of the responding parties' privacy.

6 **REQUEST FOR PRODUCTION NO. 39**

7     All Independent Auditor's Reports pertaining to any CMG entities from December 2003

8 to the present.

9 **RESPONSE TO REQUEST FOR PRODUCTION NO. 39**

10     Objection on the ground that the request seeks information that is not relevant to the dispute and

11 not likely to lead to the further discovery of admissible evidence. Objection on the ground that the

12 request is overbroad and unduly burdensome and harassing. Objection on the ground that the request is

13 unduly invasive of the responding parties' privacy.

14 **REQUEST FOR PRODUCTION NO. 40**

15     All schedules of audit findings pertaining to any CMG entities from December 2003 to

16 the present.

17 **RESPONSE TO REQUEST FOR PRODUCTION NO. 40**

18     Objection on the ground that the request seeks information that is not relevant to the dispute and

19 not likely to lead to the further discovery of admissible evidence. Objection on the ground that the

20 request is overbroad and unduly burdensome and harassing. Objection on the ground that the request is

21 unduly invasive of the responding parties' privacy.

22 **REQUEST FOR PRODUCTION NO. 41**

23     All corrective action plans pertaining to any CMG entities from December 2003 to the

24 present.

25 **RESPONSE TO REQUEST FOR PRODUCTION NO. 41**

26     Objection on the ground that the request seeks information that is not relevant to the dispute and

27 not likely to lead to the further discovery of admissible evidence. Objection on the ground that the

28 ///

1  request is overbroad and unduly burdensome and harassing.  Objection on the ground that the request is

2  unduly invasive of the responding parties' privacy.

3  **REQUEST FOR PRODUCTION NO. 42**

4       All DOCUMENTS evidencing interest earned on reserves held for or received from

5  BOWMAN, PREMCO, or the BRANCHES.

6  **RESPONSE TO REQUEST FOR PRODUCTION NO. 42**

7       To the extent this request seeks information in bank account statement or other bank records,

8  responding party is determining whether the information is traceable in a bank account statement.  If so,

9  responding party will provide the redacted documents pursuant to the June 20, 2008 court order

10  regarding plaintiffs' request for production of documents, set one.

11  **REQUEST FOR PRODUCTION NO. 43**

12       All DOCUMENTS evidencing interest earned on any reserves held for or received from

13  all CMG Branch Managers.

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 43**

15       Objection on the ground that the request seeks information that is not relevant to the dispute and

16  not likely to lead to the further discovery of admissible evidence.  Objection on the ground that the

17  request can not be responded to as Branch Managers do not provide security deposits/reserves,

18  corporations do.  Objection on the ground that the request is overbroad and unduly burdensome and

19  harassing.  Objection on the ground that the request is unduly invasive of the responding parties'

20  privacy as well as the privacy rights of the corporations that have provided security deposits/reserves..

21  **REQUEST FOR PRODUCTION NO. 44**

22       All DOCUMENTS constituting audits of CMG.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 44**

24       Objection on the ground that the request seeks information that is not relevant to the dispute and

25  not likely to lead to the further discovery of admissible evidence.  Objection on the ground that the

26  request is overbroad and unduly burdensome and harassing.  Objection on the ground that the request is

27  unduly invasive of the responding parties' privacy.

28  ///

1  **REQUEST FOR PRODUCTION NO. 45**

2      All DOCUMENTS constituting, referring to, or pertaining to bank records for any and all

3  accounts which currently or have ever contained BOWMAN's, PREMCO's, or the BRANCHES'

4  RESERVES.

5  **RESPONSE TO REQUEST FOR PRODUCTION NO. 45**

6      To the extent this request seeks information in bank account statement or other bank records,

7  responding party is determining whether the information is traceable in a bank account statement.  If so,

8  responding party will provide the redacted documents pursuant to the June 20, 2008 court order

9  regarding plaintiffs' request for production of documents, set one.

10  **REQUEST FOR PRODUCTION NO. 46**

11      All DOCUMENTS constituting, referring to, or pertaining to bank records for any and all

12  accounts which currently or have ever contained any RESERVES associated with any branch,

13  any branch manager, or any branch manager's corporate entity.

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 46**

15      Objection on the ground that the request seeks information that is not relevant to the dispute and

16  not likely to lead to the further discovery of admissible evidence.  Objection on the ground that the

17  request can not be responded to as Branch Managers do not provide security deposits/reserves,

18  corporations do.  Objection on the ground that the request is overbroad and unduly burdensome and

19  harassing.  Objection on the ground that the request is unduly invasive of the responding parties'

20  privacy as well as the privacy rights of the corporations that have provided security deposits/reserves..

21  **REQUEST FOR PRODUCTION NO. 47**

22      All bank records for any and all CMG operating accounts from December 2003 to the present.

23  **RESPONSE TO REQUEST FOR PRODUCTION NO. 47**

24      Objection on the ground that the request seeks information that is not relevant to the dispute and

25  not likely to lead to the further discovery of admissible evidence.  Objection on the ground that the

26  request is overbroad and unduly burdensome and harassing.  Objection on the ground that the request is

27  unduly invasive of the responding parties' privacy.

28  ///

1  **REQUEST FOR PRODUCTION NO. 48**

2       All bank records for CMG's GMAC Excess Cash Account from December 2003 to the

3  present.

4  **RESPONSE TO REQUEST FOR PRODUCTION NO. 48**

5       Objection on the ground that the request seeks information that is not relevant to the dispute and

6  not likely to lead to the further discovery of admissible evidence.  Objection on the ground that the

7  request is overbroad and unduly burdensome and harassing.  Objection on the ground that the request is

8  unduly invasive of the responding parties' privacy.

9  **REQUEST FOR PRODUCTION NO. 49**

10      All bank records for CMG's GMAC warehouse bank accounts from December 2003 to

11  the present.

12  **RESPONSE TO REQUEST FOR PRODUCTION NO. 49**

13      Objection on the ground that the request seeks information that is not relevant to the dispute and

14  not likely to lead to the further discovery of admissible evidence.  Objection on the ground that the

15  request is overbroad and unduly burdensome and harassing.  Objection on the ground that the request is

16  unduly invasive of the responding parties' privacy.

17  **REQUEST FOR PRODUCTION NO. 50**

18      All bank records for CMG's GMAC warehouse line of credit accounts from December 2003 to

19  the present.

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 50**

21      Objection on the ground that the request seeks information that is not relevant to the dispute and

22  not likely to lead to the further discovery of admissible evidence.  Objection on the ground that the

23  request is overbroad and unduly burdensome and harassing.  Objection on the ground that the request is

24  unduly invasive of the responding parties' privacy.

25  **REQUEST FOR PRODUCTION NO. 51**

26      All bank records for CMG's Natty Mac warehouse line of credit accounts from

27  December 2003 to the present.

28  ///

DEFENDANTS' RESPONSE TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET TWO C 07
3140 SI
M:\CMG\85-0706-02 Bowman\Discovery\Responding\response to f Set 2 - insp dem.wpd

**RESPONSE TO REQUEST FOR PRODUCTION NO. 51**

Objection on the ground that the request seeks information that is not relevant to the dispute and not likely to lead to the further discovery of admissible evidence. Objection on the ground that the request is overbroad and unduly burdensome and harassing. Objection on the ground that the request is unduly invasive of the responding parties' privacy.

**REQUEST FOR PRODUCTION NO. 52**

All DOCUMENTS setting forth the terms and conditions of any line of credit used by CMG from 2003 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 52**

Objection on the ground that the request seeks information that is not relevant to the dispute and not likely to lead to the further discovery of admissible evidence. Objection on the ground that the request is overbroad and unduly burdensome and harassing. Objection on the ground that the request is unduly invasive of the responding parties' privacy.

**REQUEST FOR PRODUCTION NO. 53**

All DOCUMENTS constituting, evidencing, or referring to a personal guarantee by Christopher George for any line of credit available to CMG from 2003 to the present.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 53**

Objection on the ground that the request seeks information that is not relevant to the dispute and not likely to lead to the further discovery of admissible evidence. Objection on the ground that the request is overbroad and unduly burdensome and harassing. Objection on the ground that the request is unduly invasive of the responding parties' privacy as well as to the privacy rights of Mr. George.

**REQUEST FOR PRODUCTION NO. 54**

All DOCUMENTS evidencing, pertaining to, or referring to any loss YOU claim to have suffered as a result of any action or inaction by BOWMAN or PREMCO.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 54**

Responsive documents have already been produced. Responding parties are producing additional documents within their possession, custody and control.

///

1  **REQUEST FOR PRODUCTION NO. 55**

2      All DOCUMENTS evidencing, pertaining to, or referring to loans BOWMAN started with

3  CMG prior to January 31, 2007 and did not close with CMG after January 31, 2007.

4  **RESPONSE TO REQUEST FOR PRODUCTION NO. 55**

5      Responsive documents have already been produced.

6  **REQUEST FOR PRODUCTION NO. 56**

7      All DOCUMENTS evidencing, pertaining to, or referring to the allegation in YOUR

8  Counter-Claim that BOWMAN solicited existing CMG customers after his termination so that they

9  would close loans with BOWMAN and his new employer and not CMG.

10  **RESPONSE TO REQUEST FOR PRODUCTION NO. 56**

11      Responsive documents have already been produced.

12  **REQUEST FOR PRODUCTION NO. 57**

13      All DOCUMENTS evidencing, pertaining to, or referring to the allegation in YOUR

14  Counter-Claim that BOWMAN wrongfully exercised dominion and control over the property of

15  CMG and converted that property to his own use.

16  **RESPONSE TO REQUEST FOR PRODUCTION NO. 57**

17      Responsive documents have already been produced.

18  **REQUEST FOR PRODUCTION NO. 58**

19      All DOCUMENTS evidencing, pertaining to, or referring to the allegation in YOUR

20  Counter-Claim that BOWMAN misappropriated or misused CMG's confidential and proprietary

21  trade secret information.

22  **RESPONSE TO REQUEST FOR PRODUCTION NO. 58**

23      Responsive documents have already been produced.

24  **REQUEST FOR PRODUCTION NO. 59**

25      All DOCUMENTS evidencing, pertaining to, or referring to the allegation in YOUR

26  Counter-Claim that BOWMAN misappropriated or misused CMG's confidential and proprietary

27  trade secret information.

28  ///

DEFENDANTS' RESPONSE TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET TWO C 07 3140 SI

M:\CMG\85-0706-02 Bowman\Discovery\Responding\response to f Set 2 - insp dem.wpd

1  **RESPONSE TO REQUEST FOR PRODUCTION NO. 59**

2      Responsive documents have already been produced.

3  **REQUEST FOR PRODUCTION NO. 60**

4      All DOCUMENTS evidencing, pertaining to, or referring to the allegation in YOUR

5  Counter-Claim that BOWMAN interfered with CMG's existing economic relations with its

6  customers with the intent to interfere with and damage those relationships to Bowman's own

7  direct economic advantage.

8  **RESPONSE TO REQUEST FOR PRODUCTION NO. 60**

9      Responsive documents have already been produced.

10  **REQUEST FOR PRODUCTION NO. 61**

11      All DOCUMENTS evidencing, pertaining to, or referring to the allegation in YOUR

12  Counter-Claim that any loan applications received by BOWMAN on or before January 31, 2007

13  but not closed with CMG would have been banked with CMG.

14  **RESPONSE TO REQUEST FOR PRODUCTION NO. 61**

15      Responsive documents have already been produced.

16  **REQUEST FOR PRODUCTION NO. 62**

17      All DOCUMENTS evidencing, pertaining to, or referring to the allegation in YOUR

18  Counter-Claim that YOU have lost future business because of any action or inaction by BOWMAN or

19  PREMCO.

20  **RESPONSE TO REQUEST FOR PRODUCTION NO. 62**

21      Responsive documents have already been produced.

22  **REQUEST FOR PRODUCTION NO. 63**

23      All DOCUMENTS constituting, evidencing, or referring to YOUR PIPELINE REPORTS for

24  the BRANCHES for the period beginning December 1,2006 through February 28,2007. "PIPELINE

25  REPORTS" includes any data YOU have RELATING TO loan files that have been started or opened in

26  the BRANCHES.

27  ///

28  ///

DEFENDANTS' RESPONSE TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET TWO C 07
3140 SI

M:\CMG\85-0706-02 Bowman\Discovery\Responding\response to f Set 2 - insp dem.wpd

1  **RESPONSE TO REQUEST FOR PRODUCTION NO. 63**

2  After diligent searches and reasonable inquiries, responding party does not have any responsive

3  documents in its possession, custody and control.

4  **REQUEST FOR PRODUCTION NO. 64**

5  All DOCUMENTS evidencing, pertaining to, or referring to secondary market income

6  YOU earned or derived from loans originated in the BRANCHES.

7  **RESPONSE TO REQUEST FOR PRODUCTION NO. 64**

8  Objection on the ground that secondary market income is not income plaintiffs are entitled to

9  and thus it seeks information that is not likely to lead to the discovery of admissible evidence and is

10  unduly harassing.

11

12  Date: July 9, 2008

MEDLIN & HARGRAVE
A PROFESSIONAL CORPORATION

13

14

15  By: _____

Joshua A. Rosenthal,
16  Attorneys for Defendants

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' RESPONSE TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS, SET TWO C 07
3140 SI

M:\CMG\85-0706-02 Bowman\Discovery\Responding\response to f Set 2 - insp dem.wpd

1

## PROOF OF SERVICE BY MAIL

2      I am over the age of eighteen years and not a party to the within action.  My business address is

3 One Kaiser Plaza, Suite 1305, Oakland, California 94612, which business is located in the county where

4 the mailing described below took place.

5      I am readily familiar with my employer's business practice for collection and processing of

6 correspondence for mailing with the United States Postal Service.  On the date set forth below, at my

7 place of business in Oakland, California, I served the within:

8

9    **DEFENDANTS' RESPONSE TO PLAINTIFFS' REQUEST FOR PRODUCTION OF**
10                **DOCUMENTS UNDER RULE 34, SET TWO**

11

12 by placing a true copy thereof enclosed in a sealed envelope, with postage fully prepaid, for collection

and mailing with the United States Postal Service where it would be deposited with the United States
13
Postal Service that same day in the ordinary course of business, addressed as follows:
14

Angela M. Xavier                          Alan F. Cohen
15 Attorney At Law                          101 Montgomery Street, Suite 2050
900 Cherry Avenue, Suite 300              San Francisco, CA 94104
16 San Bruno, CA 94583

17

18      I certify and declare under penalty of perjury under the laws of the United States of America that

19 the foregoing is true and correct.  Executed on July 9, 2008, at Oakland, California.

20

21

22 Xinh Truong

23

24

25

26

27

28

# Exhibit C

#455

## BRANCH MANAGEMENT AND EMPLOYMENT AGREEMENT

This Branch Management and Employment Agreement (hereinafter referred to as "Agreement") is entered into as of the Effective Date, as that term is defined herein, by and between CMG Mortgage, Inc., a California corporation doing business as Pacific Guarantee Mortgage (hereinafter referred to as "PGM"), and Jim Bowman (hereinafter referred to as "Branch Manager").

### RECITALS

WHEREAS PGM and Branch Manager desire to reduce to writing their understanding and agreement pursuant to which Branch Manager will assist PGM in the management, administration and supervision of activities of its staff and employees, and the activities of all unlicensed assistants and support personnel, at PGM's branch office located at 2505 South 320th Street, Suite 260 Federal Way, WA 98003 ("Branch Office"); and,

WHEREAS PGM and Branch Manager also desire to reduce to writing the terms and conditions of Branch Manager's employment with PGM;

In consideration of the covenants, agreements and representations contained herein, PGM and Branch Manager agree as follows:

1. **PGM.** PGM represents that PGM is duly licensed by all applicable governmental authorities and is doing business as a mortgage broker under the name Pacific Guarantee Mortgage. Concurrently with the execution of this Agreement, PGM will obtain the necessary branch license for the Branch Office.

2. **Employment at Will.** PGM employs Branch Manager and Branch Manager accepts employment with PGM as branch manager of PGM's Branch Office. Either PGM or Branch Manager may terminate this Agreement in accordance with the provisions of paragraph 19 herein, or with or without cause, at any time on thirty (30) days notice to the other pursuant to the notice provisions of paragraph 12 herein. The rights and duties set forth in this paragraph may not be modified in any way except pursuant to the terms of paragraph 21 (e) herein.

3. **Licensed Status.** Branch Manager represents that he/she holds all such licenses as required by state and/or federal law to conduct mortgage brokerage activity at PGM's Branch Office, and that he/she has a minimum of three (3) years of full time experience in mortgage brokerage activity gained during the immediately preceding five (5) year period. Branch Manager further represents that while this Agreement is in effect he/she will maintain in good standing each and every such license.

4. **Devotion to PGM's Business.** During the term of this Agreement, all of Branch Manager's time and attention dedicated to mortgage loan brokerage and/or origination, shall be devoted solely to the business of PGM at the Branch Office. During the term of this Agreement, Branch Manager shall not engage in any other business duties or pursuits whatsoever, or directly or indirectly render any services of a business, commercial or professional nature to any other person or organization, whether for compensation or otherwise, without the prior written consent

Page 1 of 12

MAR-27-2006 MON 12:41 PM Pacific Guarantee Mrtg.          FAX NO. 5109707930          P. 02
Case 3:07-cv-03040-SI   Document 22-3   Filed 08/22/2007   Page 34 of 53
Case 3:07-cv-03040-SI   Document 22-3   Filed 03/25/2008   Page 3 of 13

of PGM. During the term of this Agreement, Branch Manager shall not, directly or indirectly, either as an employee, employer, consultant, agent, principal, partner, stockholder, corporate officer, director, or in any other individual or representative capacity, engage or participate in any business that is in competition in any manner whatsoever with the business of PGM

    **5.**    **Duties of Branch Manager.** Branch Manager shall do and perform all services, acts, or things necessary or advisable to fulfill his/her duties as such, subject to the direction of PGM and to the policies established by it. Pursuant thereto, PGM and Branch Manager intend for Branch Manager to assist PGM in administering reasonable supervision over the activities of all licensed activity at Branch Office, and over the activities of unlicensed assistants and support personnel, assigned to PGM's Branch Office. "Reasonable supervision" includes, as appropriate, the establishment of policies, rules, procedures and systems to review, oversee, inspect and manage:

    a)    transactions requiring a license;

    b)    documents which may have a material effect upon the rights or obligations of a party to every such transaction;

    c)    filing, storage and maintenance of all documents created in connection with every such transaction;

    d)    the handling of trust funds, (Branch Manager agrees not to establish or use a trust account unless approved by PGM, in advance, and in writing);

    e)    advertising of any service for which a license is required, (Branch Manager agrees that all advertising material must be approved by PGM, in advance, and in writing);

    f)    familiarizing licensed employees, and unlicensed assistants and support personnel, with the requirements of federal and state laws relating to the prohibition of discrimination;

    g)    familiarizing licensed employees with the requirements of federal and state laws relating to disclosures to be given in connection with mortgage loan transactions;

    h)    regular and consistent reports of licensed activities of all employees;

    i)    ensuring that in every transaction Branch Manager, and every employee associate involved in each such transaction, honors all affirmative obligations owed to each client, as required by federal law, state law and/or ethical practices, including but not limited to: the duty of utmost *care, integrity, honesty and loyalty*; the duty to disclose all material loan terms or any other material facts that may affect the decision to borrow and to encumber real property; the duty to maintain *confidentiality*, except to the extent that information must be disclosed to a potential lender in order to permit the lender to make an informed and considered

MAR-27-2006 MON 12:41 PM Pacific Guarantee Mrtg.          FAX NO. 5109707930          P. 03

Case 3:07-cv-03440-SI   Document 93-2   Filed 08/25/2008   Page 35 of 53

decision to extend credit; and the duty to recommend a *competitive* loan product in the right class of loans (e.g., "A", "A-", "B", "C", etc.) when considering the borrower's income and credit history, financial standing and net worth (including the capacity to repay the loan), personal and financial needs, the loan terms requested at the time of application, the type and location of the proposed real property security, the purpose for obtaining the loan, and any time limits the borrower has imposed to receive the loan in question;

j)      assist in ensuring that all independent contractors serving the Branch Office are properly licensed by any applicable state licensing authority and in good standing throughout the duration of their employment (including such things as timely payment of annual licensing fees and assessments and compliance with continuing education requirements);

k)      assist in ensuring that Branch Office and its employees function in compliance with all applicable state and federal employment laws including, but not limited to the Federal Fair Labor Standards Act.

Additionally, subject to PGM policies and procedures, Branch Manager shall be responsible for the general management of the Branch Office, consistent with the intent of this Agreement and sound business practices, including but not limited to:

a)      recruiting of employees and support staff;

b)      creation, maintenance and monitoring of relationships with suppliers, vendors, lenders, real estate agents and other settlement service providers to ensure courtesy, efficient, legal and ethical conduct of business;

c)      accurate reporting to PGM, in such form and such manner as PGM may require, of all mortgage loan transactions and related financial information as necessary to carry out the terms and covenants of this Agreement;

d)      maintenance of any and all records and other data at the Branch Office for such periods and in such manner as state and/or federal law may require;

e)      locating, securing and arranging for the lease of Branch Facilities as necessary to conduct the business of the Branch Office;

f)      maintenance of all mortgage loan files originated by Branch Office (whether closed, cancelled, withdrawn or denied) on site, or as PGM may otherwise approve, in writing, for such period of time as required by state and/or federal law. All mortgage loan files are to be delivered to PGM upon termination of this Agreement; and,

g)      primary responsibility to ensure that all employees of Branch Office are covered under the scope of all applicable state licensing requirements for loan originators

Page 3 of 12

MAR-27-2006 MON 12:42 PM Pacific Guarantee Mrtg.    FAX NO. 5109707930    P. 04

Case 3:07-cv-03410-SI   Document 92-2   Filed 08/22/2008   Page 36 of 53

and are duly licensed and in good standing throughout the duration of their employment (including such things as timely payment of annual licensing fees and assessments and compliance with continuing education requirements).

6.    **Duties of PGM.** PGM shall assume responsibility for all accounting and the disbursement of all funds for the operation of the Branch Office. PGM shall forward to Branch Manager a monthly statement of income and expenses of the Branch Office, determined in accordance with the provisions of paragraph 9 below. In addition, PGM shall have those other and further duties and responsibilities set forth on Schedule A attached hereto and incorporated herein. The parties understand and agree that said schedule is subject to amendment by PGM by notice given in accordance with the provisions of paragraph 11 below. Any such amendment shall become a part of this Agreement thirty (30) days after notice.

7.    **Compliance with Laws, Regulations and Policies.** PGM and Branch Manager each acknowledge that state and federal law impose certain obligations on PGM with regard to the supervision, employment and compensation of any person who acts on behalf of PGM in furtherance of licensed activity. PGM shall review and supervise the activities of Branch Manager as required by law, and as more particularly set forth above, Branch Manager shall assist PGM in carrying out its supervisory obligations. However, this Agreement shall not be construed as, and is not intended as, PGM's relinquishment of overall responsibility for the supervision of the acts of salesperson associates licensed to PGM. Branch Manager agrees to comply with all federal, state and local laws, rules, regulations, policies and procedures to which PGM and/or Branch Manager are subject as a result of engaging in mortgage brokerage activity, including without limitation, those of HUD and guidelines of Fannie Mae, Freddie Mac and other investors. Branch Manager agrees to provide to borrowers and potential borrowers such disclosures, in such form and in such manner as PGM, in its sole discretion, shall require from time to time. The parties understand and agree that changes in federal, state and/or local laws, rules, regulations, policies and procedures may necessitate, in PGM's sole discretion, future amendment of this Agreement in order to maintain full compliance. Accordingly, such amendments may be made by notice given in accordance with the provisions of paragraph 11 below. Any such amendment shall become a part of this Agreement thirty (30) days after notice.

8.    **Errors and Omissions Insurance.** PGM shall obtain and keep in place professional liability insurance in such amounts and subject to such deductibles, endorsements, exceptions and exclusions as PGM, in its sole discretion, shall deem appropriate. The proportionate costs of such insurance attributable to PGM's Branch Office shall be considered an expense of operations in the calculation of Net Profits, as that term is defined herein.

9.    **Compensation.** As compensation for the services to be rendered by Branch Manager hereunder, PGM shall pay Branch Manager one hundred percent (100%) of all Net Profits realized from the operation of the Branch Office. The term "Net Profits," as used herein, shall mean Net Income from operations after Expenses but before taxes, in conformity with mortgage industry accounting practices, all as determined according to sound accounting principles. Net Income shall be determined by deducting Expenses from Gross Income. The term "Gross Income" shall mean all income earned and derived from the Branch Office. The

MAR-27-2006 MON 12:42 PM Pacific Guarantee Mrtg.    FAX NO. 5109707930    P. 05

Case 3:07-cv-03404-SI   Document 92-3   Filed 08/25/2008   Page 37 of 53

term "Expenses" shall mean all operating expenses of the Branch Office, including those items of Expense identified elsewhere in this Agreement and including but not limited to the following:

a)    rent, copiers, office supplies, telephone service and utilities;

b)    commissions, salaries, payroll costs and expenses, and benefits of all employees and loan agents, including but not limited to commissions paid to Branch Manager in his/her capacity as a loan agent;

c)    all costs incurred by PGM in connection with the repurchase, by reason of fraud, of any loans originated by the Branch Office. Such costs may include, without limitation, disputes or settlements involving demands to repurchase loans;

d)    loss or costs, including reasonable attorneys' fees arising out of suits, actions, audits, foreclosures, or legal proceedings of any nature, arising out of the activities or operations of the Branch Office;

e)    all costs incurred by PGM in connection with Early Pay-offs or Early Payment Defaults, by reason of fraud, of any loans originated by the Branch Office;

f)    all costs (including up-front fees) to lock and/or extend locked loans; and,

g)    monthly shortages resulting from, but not limited to, non-collection of fees paid for credit reports, appraisals, etc.

Additionally, as set forth in Schedule B, which schedule is incorporated herein, there shall be other fees and expenses associated with Branch Office loan activity which shall be treated as Expenses. The parties understand and agree that Schedule B is subject to amendment by PGM by notice given in accordance with the provisions of paragraph 11 below. Any such amendment shall become a part of this Agreement thirty (30) days after notice.

Net Profits for any one month shall be paid to Branch Manager, or Branch Manager's designee, on the 30th day following the last day of that month. All such payments to Branch Manager shall be considered an Expense of the Branch Office.

10.    **No solicitation.** After termination of this Agreement, Branch Manager shall not solicit PGM's prospective or existing clients or customers based upon PGM-generated leads obtained during the term of this Agreement, nor may he/she solicit any client or customer with existing contractual obligations to PGM. Furthermore, after termination of this Agreement, Branch Manager shall not solicit Branch Office personnel in accordance with paragraph 21(v) of this Agreement.

Nothing contained in this paragraph is intended to preclude Branch Manager from purchasing and/or developing, at his/her own cost and expense, customer lists which shall be considered the separate property of Branch Manager and not subject to the provisions of this paragraph 10.

MAR-27-2006 MON 12:42 PM Pacific Guarantee Mrtg.          FAX NO. 5109707930          P. 06

Case 3:07-cv-03040-SI   Document 92-2   Filed 05/25/2008   Page 38 of 53

11.    **Notices.** Any notice required or permitted under this Agreement shall be in writing, delivered to the party at the address set forth for such party below, and shall be deemed effectively delivered upon (i) personal delivery, (ii) one (1) day after deposit for overnight delivery with Federal Express or a comparable national express courier, or (iii) two (2) days after deposit in the United States mail, by first-class mail, postage prepaid. Notices shall be delivered to the parties at the following addresses:

*If to PGM:*

Christopher M. George
Pacific Guarantee Mortgage
c/o CMG Mortgage Services, Inc.
3160 Crow Canyon Road, Suite 350
San Ramon, CA 94583

*If to Branch Manager:*

Jim Bowman
Pacific Guarantee Mortgage
2505 South 320th Street, Suite 260
Federal Way, WA 98003

A party may designate another address for notice purposes upon written notice thereof pursuant to the provisions of this paragraph.

12.    **Indemnity.**

a) Branch Manager shall indemnify, defend, and hold PGM, its officers, directors, shareholders and affiliates, and their respective successors and assigns, harmless from and against any and all liability, claims, losses, costs, expenses, penalties, fines, forfeitures, judgments, or damages, including reasonable attorneys' fees and court costs, arising out of or in connection with any fraud or willful misconduct of Branch Manager.

b) PGM shall indemnify Branch Manager for all that Branch Manager loses in direct consequence of the discharge of his/her duties as such, or which result from his/her obedience to the directions of PGM, even though unlawful, unless Branch Manager, at the time of obeying such directions believed them to be unlawful. However, this paragraph shall not, in any respect, release or exempt Branch Manager from his/her duties under paragraph 7 of this Agreement, nor from his/her independent obligation(s) pursuant to his/her status as a licensed real estate broker/salesperson.

13.    **Mandatory Negotiation, Mediation and Arbitration.** The parties will attempt in good faith to resolve through negotiation any dispute, claim or controversy arising out of or relating to this Agreement. Either party may initiate negotiations by providing written notice in letter form to the other party, in accordance with the provisions of paragraph 11 above. Such notice shall set forth the subject of the dispute and the relief requested. The recipient of such notice will respond in writing within five days with a statement of its position on and recommended solution to the dispute. If the dispute is not resolved by this exchange of correspondence, the representatives of each party with full settlement authority will meet at a mutually agreeable time and place within ten days of the date of the initial notice in order to exchange relevant information and perspectives, and to attempt to resolve the dispute. If the

dispute is not resolved by these negotiations, the matter will be submitted to JAMS, or its successor, for mediation in accordance with the terms of this paragraph 13.

Either party may commence mediation by providing to JAMS and the other party a written request for mediation, pursuant to the provisions of paragraph 11 above. Such request shall set forth the subject of the dispute and the relief requested. The parties will cooperate with JAMS and with one another in selecting a mediator from JAMS' panel of neutrals, and in scheduling the mediation proceedings. The parties covenant that they will participate in the mediation in good faith, and that they will share equally in its costs. All offers, promises, conduct and statements, whether oral or written, made in the course of the mediation by any of the parties, their agents, employees, experts and attorneys, and by the mediator or any JAMS employees, are confidential, privileged, and inadmissible for any purpose, including impeachment, in any arbitration or other proceeding involving the parties, provided that evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its use in the mediation.

Either party may initiate arbitration in accordance with this paragraph 13 by filing a written demand for arbitration at any time following the initial mediation session or 45 days after the date of filing the written request for mediation, whichever occurs first. The mediation may continue after the commencement of arbitration if the parties so desire. Unless otherwise agreed by the parties, the mediator shall be disqualified from serving as arbitrator in the case. It is the intent of the parties to this Agreement that any and every dispute, claim or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, which can not be resolved by negotiation and/or mediation, be resolved by binding arbitration. This includes, but is not limited to the determination of the scope or applicability of this agreement to arbitrate. Arbitration shall be conducted in San Francisco, California, before a sole arbitrator, in accordance with the laws of the State of California for agreements made in and to be performed in California. The arbitration shall be administered by JAMS pursuant to its Comprehensive Arbitration Rules and Procedures. Judgment on the Award may be entered in any court having jurisdiction. The arbitrator shall, in the Award, allocate all of the costs of the arbitration and the mediation, including the fees of the arbitrator and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail.

The provisions of this paragraph 13 may be enforced by any court having jurisdiction, and the party seeking enforcement shall be entitled to an award of all costs, fees and expenses, including attorneys' fees, to be paid by the party against whom enforcement is ordered.

14. **Proprietary Information.** All loan files, records, documents, lists, rate sheets, product guidelines, investor/secondary market information, databases, trade secrets (as defined in paragraph 21(q)), manuals (including policies and procedures), training manuals, forms, marketing materials, hardware and software obtained from PGM, and similar items relating to the business of PGM, (collectively "Proprietary Information") whether prepared by Branch Manager or otherwise, coming into the possession of the Branch Office, its personnel and/or Branch Manager during the term of this Agreement shall be, and remain, the exclusive property of PGM.

Nothing contained in this paragraph is intended to preclude Branch Manager from purchasing, at his/her own cost and expense, databases, marketing materials, hardware and/or software, which shall be considered the separate property of Branch Manager and not subject to the provisions of this paragraph 14.

15.    **Branch Facilities.** "Branch Facilities" shall include, but not be limited to office space, furnishing and business equipment. Branch Manager shall arrange for the execution by PGM of a month-to-month lease for appropriate Branch Facilities for a Fair Market Rent. "Fair Market Rent" shall mean a fixed monthly amount that does not vary with the volume or the value of mortgage loans originated by the Branch Office, and that is no more than the fair market rent paid by other similar businesses for comparable facilities in the geographic area in which the Branch Office is located.

16.    **Name.** The Branch Office shall conduct business under the name Pacific Guarantee Mortgage, or such other name as PGM shall approve in advance, in writing. Branch Manager acknowledges and agrees that the name Pacific Guarantee Mortgage, and any and all derivations thereof, including but not limited to PGM trade names, trademarks and/or logos used in the conduct of the business of the Branch Office, are proprietary and belong exclusively to PGM. Upon termination of this Agreement for any reason, Branch Manager shall cease to use, in any manner, the name Pacific Guarantee Mortgage, and all derivations thereof, together with all PGM trade names, trademarks and logos, and during the term of this Agreement, shall acquire no license, proprietary rights to, or interest in them, or in any derivations thereof.

17.    **Solicitation of Mortgage Loans in Other States.** Branch Manager shall limit solicitation of mortgage loan activity by Branch Manager and Branch Office personnel to the state in which the Branch Office is located, unless Branch Manager first receives the prior written approval of PGM. Such approval shall be subject to reasonable conditions, including but not limited to the requirement that PGM and all affected Branch Office personnel currently hold such licenses as necessary for the subject state and that Branch Manager and the affected personnel demonstrate a thorough familiarity with such state's laws and regulations related to loan solicitation and mortgage loan origination.

18.    **Authority to Contract.** Branch Manager shall have no authority to enter into any agreement in the name of PGM. Branch Manager agrees to indemnify and hold PGM harmless from and against any and all liability arising out of any agreement entered into without the prior written consent of PGM. This covenant of indemnity shall include all costs of defense, including reasonable attorney's fees, for any such claim asserted.

19.    **Events of Default/Termination.** This Agreement shall terminate upon any of the following events or for any of the following causes:

a) Immediately following notice of a material breach of any covenant, condition, representation of contractual obligation of a party, given by the party that is or could be adversely affected thereby; provided said breach remains uncured for a period of ten (10) days following such written notice of said breach;

MAR-27-2006 MON 12:43 PM Pacific Guarantee Mrtg.     FAX NO. 5109707930     P. 09

Case 3:07-cv-03140-SI     Document 92-2     Filed 08/22/2008     Page 10 of 53

b) Immediately in the event of insolvency, bankruptcy or receivership of either party; or,

c) Immediately in the event of Branch Manager's fraud or intentional breach of duty to a client.

Upon termination of this Agreement for any reason, Branch Manager shall promptly return to PGM all originals and copies of all Proprietary Information obtained by Branch Manager from PGM. Branch Manager acknowledges and agrees that all such materials are the sole and exclusive property of PGM, and agrees not to utilize such materials for any purpose other than as contemplated by this Agreement, or at all upon termination.

**20.     Status of Loans in Process at Termination.** Except in the case of termination for Branch Manager's fraud or intentional breach of duty to a client, and subject to any applicable law to the contrary, any mortgage loans which are in process or which have been originated by the Branch Office, up to and including any mortgage loans originated through 5:00 p.m., on the day of termination of this Agreement, shall be processed, submitted and closed by PGM. Branch Manager shall receive compensation related thereto in accordance with the terms of this Agreement, as if such loans had been closed prior to termination, provided that all loan files and other PGM property have been returned to PGM. All rights of Branch Manager to compensation under this Agreement shall immediately terminate in the event of termination of this Agreement by reason of Branch Manager's fraud or intentional breach of duty to a client.

**21.     Miscellaneous.**

**a. Effective Date.** The "Effective Date" of this Agreement shall be the date that it is signed by PGM.

**b. Assignment.** PGM shall have the right to assign its rights and duties under this Agreement to any party without the consent of Branch Manager. Any such assignee of PGM shall be an intended third-party beneficiary of the representations, warranties, covenants, agreements and remedies contained herein. Branch Manager shall have no right to assign his/her rights or duties under this Agreement without PGM's prior written consent, which may be withheld by PGM in its sole discretion.

**c. Choice of Law.** This Agreement shall be governed by and construed under the laws of the State of California, without regard to conflicts of laws principles.

**d. Integration.** This Agreement is the entire agreement between the parties regarding the subject matter and supersedes any prior oral or written agreement among them regarding the subject matter contained herein.

**e. Amendment.** Except as set forth herein, this Agreement may not be amended or modified orally and no provision of this Agreement may be waived or amended except in a writing which makes reference to this Agreement and which is signed by PGM.

Page 9 of 12

MAR-27-2006 MON 12:43 PM Pacific Guarantee Mrtg.        FAX NO. 5109707930        P. 10

Case 3:07-cv-03140-SI    Document 9-2    Filed 08/22/2008    Page 42 of 53

**f. Severability.** If a court of competent jurisdiction finds any provision in this Agreement to be invalid, illegal, or otherwise unenforceable, that determination will not affect any other provision of this Agreement. The invalid provision will be severed from this Agreement and all remaining provisions will continue to be of full force and effect.

**g. Interpretation.** Any ambiguities in this Agreement will not be strictly construed against the drafter of the language concerned but will be resolved by applying the most reasonable interpretation under the circumstances giving full consideration to the intentions of the parties at the time of contracting. This Agreement will not be construed against any party by reason of its preparation.

**h. No Third Party Beneficiaries.** Except as expressly set forth in paragraph 21 (b), above, this Agreement has been made by, and is made solely for the benefit of Branch Manager and PGM, and PGM's successors and permitted assigns. Except as expressly set forth in paragraph 21 (b), above, nothing in this Agreement is intended to confer any rights or remedies under or because of this Agreement on any persons or entities other than the parties to it and their respective successors and permitted assigns. Nothing in this Agreement is intended to relieve or discharge the obligation or liability of any third person or entity to any party to this Agreement.

**i. Waiver.** No waiver of any provision of this Agreement or consent to any action shall constitute a waiver of any other provision of this Agreement or consent to any other action. No waiver or consent shall constitute a continuing waiver or consent, or commit a party to provide a future waiver.

**j. Further Assurances.** Branch Manager shall execute and deliver any and all additional papers, documents and other assurances and shall do any and all acts and things reasonably necessary in connection with his/her performance of his/her obligations hereunder to carry out the intent of this Agreement.

**k. Captions.** All captions and headings in this Agreement are for reference only and may not be used in the interpretation of this Agreement or any related document.

**l. Counterparts.** This Agreement may be executed in counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument. The parties agree that a signed copy of this Agreement transmitted by one party to the other by facsimile transmission shall be binding upon the sending party to the same extent as a signed original of this Agreement.

**m. Attorneys' Fees.** In the event that any action or arbitration is brought by either party to enforce the terms of this Agreement, the prevailing party shall be entitled to reasonable attorneys' fees and costs.

**n. Venue.** PGM and Branch Manager agree that the proper venue for any legal action brought under this Agreement is either the County of Contra Costa, California or the United States District Court for the Northern District of California, as appropriate.

MAR-27-2006 MON 12:43 PM Pacific Guarantee Mrtg.          FAX NO. 5109707930                    P. 11

Case 3:07-cv-03140-SI    Document 93-2    Filed 08/22/2008    Page 240 of 353

**o. Survival Upon Termination.** Branch Manager's representations, warranties, covenants and other obligations and agreements contained in this Agreement, including without limitation Branch Manager's indemnification obligations, shall survive any termination of this Agreement.

**p. Non-exclusive Remedies.** No remedy under this Agreement is exclusive of any other available remedy, but each remedy is cumulative and is in addition to other remedies given under this Agreement or existing in law or in equity.

**q. Confidentiality.** Each party understands, acknowledges and agrees that certain trade secrets and customer lists exist which are wholly owned and controlled by the other. These shall be referred to herein collectively as "trade secrets" and consist of information and materials that are valuable and not generally known by such party's competitors. All trade secrets, however maintained, shall be and remain the exclusive property of the originator thereof. Each party agrees not to disclose any of the other's trade secrets, directly or indirectly, or use them in any way, either during the term of this Agreement or at any time thereafter, except as required in the course of performance of this Agreement.

**r. Offset.** Amounts past due and owing by Branch Manager to PGM under this Agreement may, at PGM's option and in its sole discretion, be offset by PGM against any payments or other indebtedness then or thereafter owed by PGM to Branch Manager.

**s. Statute of Limitations.** Any action arising under this Agreement or because of its breach must be commenced within one year after the cause of action accrues.

**t. No Partnership or Joint Venture Intended.** PGM and Branch Manager intend that, to the maximum extent permissible by law, this Agreement shall not be construed as a partnership and/or joint venture.

**u. Regulatory Compliance.** PGM and Branch Manager recognize the importance of full compliance at all times with all state and federal laws, rules and regulations governing mortgage loan origination. Accordingly, notwithstanding anything to the contrary contained elsewhere herein, the parties recognize and agree that PGM retains the right to amend this Agreement as necessary, in its reasonable discretion, to ensure full compliance with all state and federal laws, rules and regulations. Any such amendment shall become a part of this Agreement thirty (30) days after notice thereof is given in accordance with paragraph 11 above.

**v. Anti-Poaching.** Branch Manager agrees not to solicit or in any way entice to leave, interview, hire or contract, either directly or indirectly, with any employees or independent contractors affiliated with PGM, or any of its affiliates, during the term of this Agreement, and for a period of two (2) years following termination of this Agreement.

**w. Jury Trial.** Pursuant to the provisions of paragraph 14 above, Branch Manager and PGM each agree to waive trial by jury in any action or proceeding arising out of this Agreement.

**x. Condition Precedent.** It is understood and agreed that the respective rights, duties and obligations of the parties hereto are expressly made subject to and conditioned upon the completion of the transaction by and between PGM and RBC, which transaction is expected to conclude on or about June 30, 2003. PGM will notify Jim Bowman once said transaction is concluded.

IN WITNESS WHEREOF, the undersigned have executed this Agreement at San Ramon, California.

Dated:_____      Dated: ___12/1/03___

**CMG Mortgage Services, Inc., doing business as Pacific Guarantee Mortgage**      **Branch Manager**

By: _____      By: _____
    Christopher M. George, President         Jim Bowman

# Exhibit D

```
 1                UNITED STATES DISTRICT COURT
 2               NORTHERN DISTRICT OF CALIFORNIA
 3                  SAN FRANCISCO DIVISION
 4                      ---o0o---
 5   JAMES W. BOWMAN, JR. and
     PACIFIC REAL ESTATE MANAGEMENT
 6   COMPANY, INC., a Washington
     Corporation,
 7
                      Plaintiff,
 8
          vs.                       Case No. C-07-3140-SI
 9
     CMG MORTGAGE, INC., a California
10   Corporation; CMG MORTGAGE, INC.,
     d/b/a PACIFIC GUARANTEE MORTGAGE;
11   CMG MORTGAGE SERVICES, INC.,
     a California corporation; CMG
12   MORTGAGE SERVICES, INC., d/b/a
     PACIFIC GUARANTEE MORTGAGE,
13   Inclusive,
14                    Defendants.
     _____/
15
16
17               DEPOSITION OF PAUL CHEVEZ
18               Tuesday, March 18, 2008
19
20   Reported by:
     CYNTHIA L. THOMAS
21   CSR 2950
22
23                    NANCY SORENSEN
                  Court Reporting Services
24               41 Sutter Street, Suite 505
                San Francisco, California 94104
25                    (415) 986-4624
```

1    A.        I'm discussing the Financial Statements from --

2    yeah, at the time of his termination.

3    Q.        Okay.  What other records reflect where the

4    reserves are now?

5    A.        I'm not sure I understand the point.

6    Q.        Well, CMG is holding these reserves somewhere;

7    is that correct?

8    A.        Uhm-hmm.

9    Q.        In a bank account?

10   A.        There's -- well, it's along with, yes, other --

11   other moneys.

12   Q.        Okay.  So what account are these reserves being

13   held in?

14   A.        We have reserves held in several accounts, but

15   I would say the most likely place for the reserves being

16   held are in our GMAC Warehouse Bank called Excess Cash

17   Account.

18   Q.        Are they earmarked in any way?  Is there a --

19   well, let me.  Let me start again.

20             Is there a separate account for the reserves?

21   A.        No.

22   Q.        They are thrown into what sort of an account?

23   Is it a general operating account?

24   A.        It's an operating account, yes.

25   Q.        And where is this bank?

```
 1   A.        They could be put around to different sources.
 2   Different places.  I'm sorry.
 3   Q.        Would it be your standard practice to have this
 4   money sitting in the operating account for -- since
 5   Mr. Bowman signed this Agreement in 2004?
 6   A.        In the same account?  I'm sorry.  Is that your
 7   question?
 8   Q.        Yes.
 9   A.        No.  I would say probably it's not in the same
10   account at that point.
11   Q.        Okay.  And where would this money have gone to
12   after being deposited into that account?
13   A.        It could have been processed and sent to our
14   GMAC warehouse account, where that's the account we keep
15   most of our funds in.
16   Q.        Is that your standard practice then when you
17   receive money for reserves, that you forward this account
18   to the warehouse account?
19   A.        No.
20   Q.        I'm sorry.  Just so the record is clear, that
21   you forward these reserves to the warehouse account?
22   A.        No.  Standard is all the money that goes into
23   the account we utilize the funds for operation of
24   business and things, and part of operation of business is
25   moving the funds to our warehouse lines, and again, we
```

1    like to try to keep as much funds in our warehouse lines

2    as possible, so we keep smaller balances in our operating

3    account locally.

4    Q.        So the reserves were actually commingled with

5    operating -- with your operating account; is that

6    correct?

7              MR. ROSENTHAL:  I'm going to object as to --

8    vague and ambiguous as to commingled.

9              THE WITNESS:  Uhm-hmm.

10   BY MR. COHEN:

11   Q.        Well, I don't think it's vague, but if there's

12   some misunderstanding, then maybe you can explain that to

13   me.

14   A.        Well, define commingled.

15   Q.        The reserves or security deposits were

16   deposited into an operating account; is that correct?

17   A.        That is correct.

18   Q.        And then these are used for operating expenses

19   of the business; is that correct?

20   A.        Operating, yes.  It also includes payment of

21   commissions to the branches and it's used for, yeah, all

22   operations, I guess.

23   Q.        They are not maintained in some sort of a trust

24   account?

25   A.        No.

1    Q.        Or an escrow or anything like that?

2    A.        No.

3    Q.        Did CMG use Mr. Bowman's deposits or reserves

4    to pay CMG's operating expenses?

5    A.        I don't know exactly the money of his that went

6    in, if it did.  Again I don't know if we received checks

7    or how it was set up.  And I could not tell you that it

8    exactly went to pay or if it went to pay for anything.

9    Again, if his -- any deposit check, any reserve check,

10   along with other checks all go into the operating

11   account, so I couldn't say his exact funds were used for

12   what -- for which purposes.

13   Q.        And it's your practice to put as much of this

14   money from the operating account into the warehouse

15   account.  Is that what you testified to?

16   A.        I think I testified that all -- most of our

17   funds we try to put into the warehouse account, correct.

18   Q.        And would you tell me again what this warehouse

19   account is used for?

20   A.        It's a cash account that we utilize at our

21   warehouse bank to -- if funds are needed for a funding

22   through our Mortgage Banking Division, then those funds

23   are transferred to the title company to help close that

24   loan.  And then again funds come back in when loans are

25   purchased and we receive wires, and after paying off the

1    Q.         It's in CMG's interest to maximize the amount

2    of money it has in the warehouse account; is that

3    correct?

4    A.         I would say yes, it is.

5    Q.         Okay.  And why is that?

6    A.         Because it -- we have the availability as we're

7    funding loans to not have to wire out of our own local

8    operating account.  They can utilize the funds from the

9    warehouse bank's account, and then the warehouse bank

10   sends it all in one wire.

11   Q.         It's one -- I'm not understanding this one wire

12   business.

13   A.         Sure.

14   Q.         What do you mean by that?

15   A.         One wire at a title.  So if I can give an

16   example, if we're funding a loan to a title company and

17   the loan amount is a hundred thousand dollars -- and

18   again this is just an example -- the warehouse bank will

19   usually advance $99,000 off of our line of credit, and

20   then take the rest of the money that needs to be wired to

21   title to close the loan, including the broker's

22   commission or other fees or anything that needs to be

23   sent to title to close the loan.  They take that from our

24   cash account, our operating account there, combine it

25   together and send one wire.

```
 1                So if the title company needs $102,000 to close

 2       that transaction, they'll advance $99,000 from our line

 3       of credit, and they'll take 3,000 from that cash account

 4       and put it together and wire out $102,000 to the title

 5       company.

 6       Q.       Does the amount of money you have in the

 7       warehouse account affect your line of credit?

 8       A.       No, I don't believe it does.

 9       Q.       Okay.  What is the line of credit secured by?

10       A.       A personal guarantee by Mr. George, and the --

11       the security instruments for the loans themselves.

12       Q.       Those would be the mortgages?

13       A.       Yes.

14       Q.       Is that correct?

15       A.       Right.

16       Q.       It sounds to me like CMG is using Mr. Bowman's

17       reserve to fund loans.  Is that correct?

18       A.       No, I don't think that's correct.

19       Q.       Why not?

20       A.       I think that we have -- again, it's -- it's

21       hard to say what exact dollars is used for what, but I

22       would say we have sufficient cash to fund our loans.  We

23       have sufficient reserves or excess cash, or whatever you

24       want to call it, for the reserves of the branches.

25       Q.       We, meaning CMG?
```

```
1    BY MR. COHEN:

2    Q.        For your?

3    A.        Your funds.

4    Q.        Yes.

5    A.        Not my personal, yes.

6    Q.        Right.  Although you mentioned that Mr. George

7    provides a personal guarantee; is that correct?

8    A.        For securing the warehouse lines.

9    Q.        Right.

10   A.        Yes.

11   Q.        I'm assuming that you do not make a similar

12   guarantee?

13   A.        I do not do that, no.  No, thank you.

14             MR. BOWMAN:  Come on, Paul.

15   BY MR. COHEN:

16   Q.        This personal guarantee by the -- by an

17   individual, is that a standard practice in your industry?

18   A.        I don't know standard practice in the industry.

19   I do know that the warehouse line that we have requested

20   a personal guarantee from Mr. George, which he had

21   signed.

22   Q.        And that's GMAC; is that correct?

23   A.        That is GMAC.  He also -- actually we also have

24   a warehouse line with a company called Natty Mac, and he

25   has a personal guarantee with them also.
```