LAW OFFICES OF
# ALAN F. COHEN

101 MONTGOMERY STREET
SUITE 2050
SAN FRANCISCO, CA 94104
TEL: 415.984.1943
FAX: 415.984.1953
cohenlaw@mindspring.com

August 1, 2008

**Via E-Filing and U.S. Mail**

Honorable Susan Illston
United States District Court
Northern District of California
450 Golden Gate Ave.
Courtroom 10, 19th Floor
San Francisco, CA 94102

      **Re:** *Bowman et al. v. CMG Mortgage, Inc. et al.* – Case No. 3:07-cv-03140-SI

           **Plaintiffs' Opposition to Defendants' Motion to Compel Further Responses to Special Interrogatories and Request for Production of Documents**

Dear Judge Illston:

     This is written in response to Defendants' letter brief filed July 25, 2008 and listed in the docket as Document 93. Plaintiffs respond to Defendants' motion to compel further responses as follows:

**Interrogatories**

     <u>Special Interrogatory No. 9 from CMG Mortgage, Inc. to PREMCO</u>

     Interrogatory No. 9 asked PREMCO to itemize all attorneys' fees and costs incurred to date. This is objectionable on three grounds: First, attorneys' fees and costs are not damages to be sought at trial; they are costs, to be recovered by the prevailing party if a statute or contract so provides. The information is thus irrelevant to anything that could come up in trial. Second, the terms of any agreement between attorney and client are absolutely confidential under California law. Bus. & Prof. Code § 6149 (written fee agreement "deemed to be a confidential communication" within the meaning of Bus. & Prof. Code § 6068(e). Given that the amounts incurred would likely reveal the terms of Plaintiffs' attorney-client agreements, this information is confidential under California law. Finally, because Plaintiffs will be entitled to an award of "reasonable" fees if they prevail, the amount of actual fees and costs incurred is irrelevant at this juncture: the amount of fees to be awarded will be determined by the Court based on a lodestar calculation, not by the amounts billed.

     <u>Special Interrogatory No. 10 from CMG Mortgage, Inc. to PREMCO</u>

     This interrogatory demands the names of borrowers whose loans were closed either by PREMCO, Mr. Bowman, or "any entity located at either address of the branches." To get the first out of the way, PREMCO was not in the business of closing

loans and thus cannot respond. As for Mr. Bowman, during this time period he was employed either by CMG or Sierra Pacific Mortgage. To the extent any loans closed under CMG, they already have this information. However, to the extent loans were closed by Mr. Bowman as an employee of Sierra Pacific, he has no power to reveal the borrower's identities. There is a strong privacy right in the borrower's loan applications, as Defendants well know. Note that they do not claim that no such right exist – they claim instead that these identities will be adequately protected by the protective order between the parties.

When Sierra Pacific produced documents to Defendants in response to subpoena, they did so under a stipulation that all borrower identities would be redacted. As an employee of Sierra Pacific, Mr. Bowman has no right to waive the borrower's privacy. He can do so only if either Sierra Pacific gives permission for him to reveal these identities or if the Court so orders.

### Special Interrogatory No. 25 from CMG Mortgage, Inc. to PREMCO

This interrogatory asks whether PREMCO filed federal tax returns and if so, in what years. Plaintiff objected that the interrogatory sought private information, and also that it was outside the scope of discovery.

Information concerning tax returns is privileged under California law:

> California courts . . . have interpreted state taxation statutes as creating a statutory privilege against disclosing tax returns. ( *Schnabel v. Superior Court* (1993) 5 Cal.4th 704, 718-721, 21 Cal.Rptr.2d 200, 854 P.2d 1117; *Webb v. Standard Oil Co.* (1957) 49 Cal.2d 509, 513, 319 P.2d 621.) The purpose of the privilege is to encourage voluntary filing of tax returns and truthful reporting of income, and thus to facilitate tax collection. (*Webb v. Standard Oil, supra*, 49 Cal.2d at p. 513, 319 P.2d 621.)

*Weingarten v. Superior Court* (2002) 102 Cal.App.4th 268, 274. Although Defendants cite the *Webb v. Standard Oil* case, they apparently misread it since it stands for the opposite of the proposition they seek to find in it.

Secondly, whether or not Plaintiff PREMCO filed tax returns is not relevant to any issue in this case and not likely to lead to the discovery of admissible evidence. Plaintiffs keep repeating that Plaintiffs are taking a position that PREMCO is a "sham corporation," but that is simply untrue. All that Plaintiffs have argued is that PREMCO is a legitimate corporation that Defendants have used to try to get around their employee's unwaivable statutory rights. Plaintiffs' argument that Defendants cannot avoid the protections of the Labor Code by requiring an employee to use a corporation to pay the employer's expenses does not equate to an argument that the corporation is itself a sham. The fact that CMG's practice makes a sham of the Labor Code, does not mean that the branch managers' corporation is itself a sham.

Defendants claim they need this information to determine that PREMCO is not a sham corporation. That is easily solved: Plaintiffs stipulate that PREMCO is not a sham corporation.

### Special Interrogatory No. 1 from CMG Mortgage Services, Inc. to PREMCO

This interrogatory asks whether PREMCO filed Washington state tax returns and

if so, in what years. Plaintiffs incorporate their response to No. 25 above.

<u>Special Interrogatory No. 18 from CMG Mortgage, Inc. to Mr. Bowman</u>

This interrogatory asks Mr. Bowman to itemize his attorneys' fees and costs and is objectionable for the same reasons as No. 9 above. Mr. Bowman incorporates his response to that interrogatory.

<u>Special Interrogatory No. 4 from CMG Mortgage Services, Inc. to Mr. Bowman</u>

This interrogatory asks Mr. Bowman to state all facts in support of every one of his affirmative defenses to CMG Mortgage, Inc.'s counter-claim.

First of all, CMG Mortgage *Services*, Inc. is not a counter-claimant in this case and thus has no standing to seek this information.[1] It therefore cannot compel Mr. Bowman to answer anything about the Counter-claim.

Second, this interrogatory is hopelessly and unlawfully compound. Mr. Bowman's reply to the Counter-claim contains 25 affirmative defenses. FRCP 33(a)(1) provides that a party may not propound more than 25 interrogatories including all discrete subparts. This, however, is 25 separate interrogatories disguised as one. The facts supporting the affirmative defense of Waiver, for example, would be almost completely different from those supporting the defense Laches, Unclean Hands, Business Necessity, Failure to Mitigate Damages, Statutes of Limitations, etc. This may be labeled as one interrogatory, but it is one with 25 discrete subparts and therefore impermissible.

Finally, that a somewhat similar question is contained in the California form interrogatories has no bearing on whether it is compound under the federal rules (or the California Discovery Act, for that matter). The Judicial Council created the form interrogatories as an exception to the formats and requirements otherwise applicable to interrogatories. A similar specially drafted interrogatory would be objectionable under either the California or Federal rules. Consider this: an interrogatory asking a defendant to state all facts in support of all affirmative defenses is no different than one asking a plaintiff for all facts in support of all causes of action.

<u>Special Interrogatory No. 7 from CMG Mortgage Services, Inc. to Mr. Bowman</u>

This interrogatory asks Mr. Bowman to itemize all monetary damages that he suffered related to his emotional distress. The interrogatory is senseless. The amount of monetary damages awarded for emotional distress is entirely within the almost unbounded discretion of the factfinder. Mr. Bowman testified at deposition that he did not treat with any health provider to address his emotional distress, so there are no ready bases to quantify any portion of the monetary damages.

Counsel will indeed ask the Court for damages for Mr. Bowman's significant emotional distress at trial. However, for Defendants to ask *how* counsel will ask for such damages would seem to invade the province of work product.

---

[1] The only parties to the counter-claim are CMG Mortgage, Inc. (not CMG Mortgage Services, Inc., which propounded this interrogatory) and Mr. Bowman.

<u>Special Interrogatory No. 10 from CMG Mortgage Services, Inc. to Mr. Bowman</u>

This interrogatory is still virtually incomprehensible despite Defendants' multiple explanations. If I understand it correctly, Defendants are asking Mr. Bowman to speculate about a contention he does not make, about a hypothetical set of facts that does not exist in this case. Plaintiffs do not argue for any set of facts that would require return of funds to Defendants, and it is inappropriate for Defendants to ask Plaintiff to engage in such a flight of fancy. If Defendants wish to introduce a hypothetical circumstance into their argument, they may do so within the bounds of the rules of evidence. But that is not Plaintiff's responsibility.

**Document Requests**

<u>Request for Production of Documents 3(a)</u>

This request seeks contracts between Mr. Bowman and/or PREMCO and any other "mortgage loan originator" from 2000 to the present. Since that phrase usually refers to the individual employees who originate loans, and neither Mr. Bowman nor PREMCO have ever employed any loan originators, both Mr. Bowman and counsel originally responded that no such documents exist. Apparently, however, Defendants were seeking contracts between Mr. Bowman and/or PREMCO and his employers.

That ambiguity aside, however, Mr. Bowman's previous employment contracts are irrelevant to any issue in this action, and are private to boot. The "custom and practice" of the industry is irrelevant to understanding Defendants' net branch arrangement, since Defendants' contracts speak for themselves. Nor is the custom and practice of the industry relevant to determining whether the Defendants' contracts are lawful; plenty of industries have a "custom and practice" of breaking one or more sets of laws. For example, the fact that an entire retail sector has a practice of misclassifying store "managers" as exempt from the overtime laws neither explains their practice nor renders it lawful.

Finally, Defendants' naked assertion that they believe there are no privacy concerns does nothing to change the fact that these are, indeed, private employment records under California law. *See, e.g., El Dorado Savings & Loan Ass'n v. Superior Court* (1987) 190 Cal. App. 3d 342. Defendants' vague reasons for seeking this documents are a far cry from the showing of direct relevance and compelling need required for discovery of private personnel documents. *See also Harding Lawson Assocs. v. Superior Court*, (1992) 10 Cal. App. 4th 7, 10.

<u>Request for Production of Documents 3(c)-(d)</u>

These requests seek corporate by-laws and articles of incorporation for PREMCO. These documents are irrelevant to any issue in this case. PREMCO is not a defendant or cross-defendant, and no alter ego allegations have been made. Nor is there been any allegation in the pleadings that PREMCO has done anything wrong. Once again: **Plaintiffs do not contend that PREMCO is a sham corporation**. Perhaps if Plaintiffs state this often enough in a loud enough typeface Defendants will stop repeating this canard. Plaintiffs do not contend that PREMCO was inadequately capitalized. None of the claims, counter-claims, or defenses in this case entitle Defendants to learn about the inner workings of PREMCO.

Request for Production of Documents 3(e), (i)-(s), (v), (ee)

Plaintiffs incorporate the arguments in the paragraph relating to request 3(c)-(d) above.  As Defendants have argued repeatedly in objecting to Plaintiff's discovery request, even corporations have a privacy right in their financial records.  "Although corporations have a lesser right to privacy than human beings and are not entitled to claim a right to privacy in terms of a fundamental right, some right to privacy exists.  Privacy rights accorded artificial entities are not stagnant, but depend on the circumstances."  *Roberts v. Gulf Oil Corp*. (1983) 147 Cal.App.3d 770, 796.  The court in that case directed an inquiry into two factors to determine the strength of the privacy right: "the strength of the nexus between the artificial entity and human beings and the context in which the controversy arises."

Here we speak of Mr. Bowman's personal corporation, not a large organization like the various CMG entities; there is a direct nexus between the artificial entity and the human being.  As for the context of this inquiry, it is a tangential issue, based on the false premise Defendants continue to repeat.  PREMCO's internal finances are not relevant except in the narrow arena in which it interacted with CMG.  To the extent these requests could be said to lead to the discovery of admissible evidence, they are massively overbroad.

PREMCO is a plaintiff, not defendant; its internal financial workings are irrelevant in this action.  Nothing either PREMCO or Mr. Bowman, or Defendants, for that matter, have alleged has the effect of waiving the right of privacy and placing PREMCO's corporate status at issue.

These financial records are not within the scope of discovery created by anything in the pleadings.  If the Court finds that any portion of these records should be produced, however, Plaintiffs request that the Court take two steps to protect Plaintiffs' privacy:  1)  narrow the requests to those transactions involving CMG and, 2) perform an *in camera* inspection of all records that are required to be produced.  Mr. Bowman's action to collect his unpaid wages and related damages do not grant Defendants carte blanche to rummage around his corporation's financial records.

Request for Production of Documents 3(w)-(dd)

These requests seek Mr. Bowman's private financial records.  Defendants apparently believe that by alleging a counter-claim they can prise open Mr. Bowman's and his family's finances.  Their sole justification is that they have alleged a claim for punitive damages in their Counter-claim.  Happily, the law protects from such intrusiveness.

Even where private financial information is relevant to the substantive claims of a case, a right of privacy exists.  *Cobb v. Superior Ct.* (1979) 99 Cal.App.3d 543, 550.  More to the point, special rules exist barring discovery into financial records where they are sought to justify a later claim for punitive damages, special rules exist.  Counter-claimants must make a showing that there is a **substantial probability that they will prevail** on their claim for punitive damages and must seek a court order based on that showing before they can be allowed to pursue discovery into these records.  Civ. Code § 3295(c).[2]  *See Kerr v. Rose* (1990) 216 Calo.App.3d 1551, 1565.  To obtain such an order,

---

[2] The right to recover damages in a diversity action is substantive and therefore determined by

Defendants must file a motion supported by "appropriate affidavits," *i.e.,* affidavits sufficient to establish "oppression, fraud, or malice." Civ. Code § 3295(c).

Counter-Claimants have made no such showing, and their requests must be denied. There is nothing in the record that suggests a substantial likelihood of punitive damages – far from it. It is not even enough for them to present evidence that would support a prima facie showing; the Court would have to determine that Counter-Claimants are "very likely" to prevail on their claim for punitive damages. *Jabro v. Superior Ct.* (2002) 95 Cal.App.4th 754, 758. They have not made **any** showing and in any event cannot do so here.

**Conclusion**

Defendants' discovery is overreaching, and seeks information that is not necessary for trial of this case. They complain that Plaintiffs did not have time to meet and confer further over this discovery, but that is a function of the time pressure created by the accelerated schedule for dealing with dispositive motions, discovery motion cutoffs, pre-trial filings, and trial preparation. Plaintiffs ask the Court again for a trial continuance to allow proper time to address these issues before trial.

Sincerely,

Alan F. Cohen

cc:   Joshua Rosenthal  
      Angela Xavier

---

reference to state law. *In re Air Crash Disaster Near Cerritos, California On Aug. 31, 1986* 982 F.2d 1271, 1277 (9th Cir. 1992).