IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES W. BOWMAN, et al., | No. C 07-03140 SI |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY ADJUDICATION** |
| v. | |
| CMG MORTGAGE INC., et al., | |
| Defendants. | |

Plaintiffs have filed a motion for summary adjudication on five issues. Argument on the matter was heard on July 25, 2008. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court hereby GRANTS IN PART and DENIES IN PART plaintiffs' motion for summary adjudication.

## BACKGROUND[1]

In December 2003, plaintiffs James W. Bowman and Pacific Real Estate Management Company ("PREMCO") entered into a series of written agreements with defendants CMG Mortgage and CMG Mortgage Services, doing business as Pacific Guarantee Mortgage ("PGM"). Plaintiffs were to manage defendants' branch offices in Federal Way, Washington, and Vancouver, Washington, and defendants were to perform various services and make various payments to plaintiffs, in accordance with the agreements. Plaintiff Bowman entered into a "Branch Management and Employment Agreement" ("BMA") with defendants for each branch, dated December 1, 2003 and June 30, 2004, respectively,

---

[1] Unless otherwise stated, the following factual allegations are taken from plaintiff's Second Amended Complaint.

under which Bowman was compensated according to the net profits of the branch offices, calculated as "net income after expense but before taxes." Bowman Decl. ex. A at 4 and ex. C at 4. Expenses were defined as operating expenses of the branch offices, including but not limited to "rent, copiers, office supplies, telephone services and utilities," as well as "all costs incurred by PGM in connection with the repurchase, by reason of fraud, of any loans originated by the Branch Office." Bowman Decl. ex. A at 5 and ex. C at 4. The BMA includes an integration clause stating that it is the "entire agreement between the parties regarding the subject matter." Bowman Decl. ex. A at 9.

Plaintiffs also entered into a "Facilities Agreement" ("FA") with defendants, under which defendants allegedly were required to pay plaintiffs one hundred and twenty five percent (125%) of the actual costs incurred by both branch offices. The FA has an integration clause and does not refer to the BMA; nor does the BMA refer to the FA. Plaintiffs allege that they were not fully reimbursed for facilities expenses because they incurred at least $987,325 in rental expenses during the employment relationship, of which 125% would total $1,234,157, yet defendants paid only $1,179,270. Bowman Decl. at ¶ 27. Further, plaintiffs allege that they incurred and submitted expenses of $20,803 for January 2007, the last month of the employment relationship, of which 125% would total $26,004, yet defendants have not made any payments for that period.

Bowman contends that defendants deducted amounts from branch net profits to hold as reserves and security deposits. Defendants informed Bowman that these reserves were required under Department of Housing and Urban Development ("HUD") regulations, and that he would be paid these reserves upon termination. However, plaintiffs allege that they have not been paid these reserves and that defendants commingled them with their own operating funds. Bowman also contends that he was not paid earned marketing credits totaling $12,306 that were to be paid to him as a bonus. On January 31, 2007, defendants terminated Bowman's employment as well as the BMA and FA.

On June 14, 2007, plaintiffs filed this lawsuit against defendants, and later filed a Second Amended Complaint ("SAC") in June 2008. The SAC includes claims for breach of contract and the implied covenant of good faith and fair dealing, violation of California Labor Code §§ 201 and 218.5 for nonpayment of wages, waiting time penalties under California Labor Code § 203, breach of fiduciary duty under California Labor Code § 400-410, and unlawful conversion of property. Plaintiffs now move

for summary adjudication on some of the claims.

**LEGAL STANDARD**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the Court that there is an absence of evidence to support the non-moving party's case. *See id.* at 325.

The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are to be drawn in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when she] is ruling on a motion for summary judgment." *Id.* In contractual disputes, summary judgment is improper where contractual language is susceptible to at least two reasonable interpretations because a material issue of fact exists as to the parties' intent. *Wards Co., Inc. v. Stamford Ridgeway Assocs.,* 761 F. 2d 117, 120 (2nd Cir. 1985).

**DISCUSSION**

Plaintiffs move for summary adjudication on five issues: 1) whether the California Labor Code

3

applies to the employment relationship between plaintiff Bowman and defendants; 2) defendants' liability for breach of contract regarding rental payments; 3) defendants' failure to reimburse expenses in violation of Labor Code § 2802(a) and HUD regulations; 4) defendants' liability for waiting time penalties in violation of Labor Code § 203; and 5) defendants' liability for breach of fiduciary duty under Labor Code § 405. Each of these will be addressed in turn.

## I.    Applicability of the California Labor Code

Plaintiffs contend, and defendants do not dispute, that the California Labor Code applies to this action, because defendants included a California choice-of-law provision in all of their contracts with plaintiffs. In *Olinick v. BMG Entertainment*, the California Court of Appeal found enforceable a choice of law provision requiring that disputes between a California employee and a New York employer be resolved under New York law. The court approved a clause which provided that New York law would govern all causes of action arising from or related to the employment agreement, "including tortious breaches of duties emanating from that agreement or the legal relationship it creates." 138 Cal. App. 4th 1286, 1299 (2006). The *Olinick* court followed a United States Supreme Court decision, finding that the language of the choice-of-law provision, "governed  by . . . the laws of New York" was unambiguous. *Id.* at 1297.

Here, all four agreements between the parties (the two BMA's and the two FA's) provide that the agreements "shall be governed by and construed under the laws of the State of California, without regard to conflicts of law principles." Bowman Decl. ex. A at 9. The language of the choice-of-law provision is unambiguous. Accordingly, the Court holds that California law applies to plaintiffs' claims arising out of the employment relationship with defendant. The Court GRANTS plaintiffs' motion for summary adjudication as to applicability of the California Labor Code.

## II.    Breach of contract

Plaintiffs also seek summary adjudication on the issue of defendants' liability for breach of contract. According to plaintiffs, the FA required defendants to reimburse plaintiffs for facilities expenses (i.e. rent and related expenses) at an amount equal to 125% of expenses, which defendants did

4

not do.

In order to establish a breach of contract, plaintiffs must prove the following elements: (1) existence of a contract; (2) plaintiffs' performance; (3) defendants' breach; and (4) resulting damages to plaintiff. *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1388 (1990). Neither party disputes the first two elements. The FA is signed by both Bowman as branch manager of PGM and Bowman as President of PREMCO, and the rental provision refers to PREMCO and Bowman collectively as "Provider":

> As rent for the Facilities provided by the Provider, PGM *shall pay* a monthly Rental Fee equal to one hundred twenty-five percent (125%) of Provider's actual cost of providing the Facilities . . . . As soon as commercially viable following the close of each month, Provider shall provide to PGM a schedule which itemizes, in accordance with generally accepted accounting principles, all costs incurred by Provider that month in providing the Facilities. The monthly Rental Fee for each month shall be due on the 15th day following PGM's receipt of such schedule.

Bowman Decl. ex. B (emphasis added). The second FA, signed on June 30, 2004, uses very similar language. Neither FA includes a waiver or amendment clause, in contrast to the BMA, which provides that the agreement may not be amended or modified orally, except in a writing that makes reference to the agreement and is signed by defendants, and also provides that no waiver or consent to any action shall constitute a waiver of the agreement's provisions. Bowman Decl. ex. A and ex. C.

Plaintiffs contend that they have established defendants' breach, because defendants did not pay the full amount owed under the FA. Defendants claim that in practice, facilities expenses are only reimbursed to the extent that there is income from the branches to pay for the expenses. According to defendants, "not once during the entire relationship between plaintiffs and CMG did Bowman ever complain about the way the expenses and income were calculated and offset." Defendants' Opposition at 14. Further, defendants contend that any claims seeking relief for unpaid expenses are barred by the FA provisions that require such claims to be brought within one year of accrual: "any action arising under this Agreement or because of its breach must be commenced within one year after the cause of action accrues." Bowman Decl. ex. B at 3 and ex. D at 4.

Defendants argue that the parties modified the contract terms through their performance of the contract. In general, a written contract may be modified by subsequent agreement of the parties, either oral or written. Cal. Civ. Code § 1698. However, the terms of the contract may only be changed by

5

consent of all the parties. *Slavin v. Borinstein*, 25 Cal. App. 4th 713, 720 (1994). Here, there is a genuine dispute as to whether the parties mutually assented to the new contract terms. The Court DENIES plaintiffs' motion for summary judgment on the issue of defendants' liability for breach of contract under the FA.[2]

### III. Failure to reimburse expenses

Plaintiffs contend that Bowman incurred expenses on behalf of defendants and that defendants failed to reimburse Bowman even though they had an absolute duty to do so under California Labor Code § 2802. According to plaintiffs, Bowman paid expenses out of pocket and was required to personally guarantee defendants' vendor agreements. Bowman Decl. at ¶ 23 and ex. G. Under the Labor Code, therefore, plaintiffs contend that defendants are required to reimburse the expenses incurred by Bowman.

Labor Code § 2802(a) provides: "an employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." Plaintiffs are correct that this provision is unwaivable by any agreement. *See* Cal. Labor Code § 2804. However, defendants contend that the expenses were paid by PREMCO, not by Bowman as an employee, and that the Labor Code provisions do not apply to dealings between two corporations.

Plaintiffs do not contest that at least some of the financial obligations were incurred by PREMCO, such as the expenses incurred under the FA. However, plaintiffs argue that Bowman was required to utilize a corporate entity to become a PGM branch manager, that Bowman personally funded these obligations, albeit through PREMCO, and that PREMCO had no separate business, employees or income other than handling transactions related to PGM. Bowman Depo. at 320:19-325:5. Defendants contend that Bowman never directly paid for expenses related to the business, and Bowman's deposition reveals that he never transferred money from a personal account to PGM. Rosenthal Decl. ex. 1 at

---

[2]Defendants also contend that this claim is barred by the one-year limit on bringing claims for breach of contract. The parties have not sufficiently briefed the application of this one-year limitation to plaintiffs' claims, and the Court does not reach this question now.

430:11-23. In short, there is a dispute of material fact as to what expenses were paid by Bowman personally, and what were paid by PREMCO. Plaintiffs do not cite any authority supporting their contention that an individual who personally funds a corporation which pays expenses on behalf of the individual's employer is entitled to be reimbursed as an employee under Labor Code § 2802(a). It remains unclear whether Bowman could be treated as an employee of defendants under California law, and whether Bowman's other income as a loan originator has any effect on his claims here. The Court therefore DENIES plaintiffs' motion for summary adjudication on the issue of defendants' failure to reimburse expenses.

## IV.   Waiting time penalties

Bowman argues that he is owed waiting time penalties for unpaid wages under California Labor Code § 203. The unpaid wages he seeks are in the form of unpaid net profits for the month of January 2007 in the amount of $31,047, marketing credits in the amount of $12,306, and reserves in the amount of $39,682. Defendants contend that they do not owe Bowman net profits because there were no net profits for the month of January 2007. Defendants also contend that market credits and reserves are not wages at all.

California Labor Code § 203 provides that if an employer "willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." The Labor Code also provides that "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Labor Code § 201. Under the BMA, Bowman's compensation is defined as:

> one hundred percent (100%) of all Net Profits realized from the operation of the Branch Office. The term "Net Profits," as used herein, shall mean Net Income from operations after Expenses but before taxes, in conformity with mortgage industry accounting practices, all as determined according to sound accounting principles. Net Income shall be determined by deducting Expenses from Gross Income. The term "Gross Income" shall mean all income earned from the Branch Office. The term "Expenses" shall mean all operating costs of the Branch Office . . . .

BMA at ¶ 9. Therefore, Bowman was to receive as wages all of the net profits generated by the branch.

As to Bowman's claim that he is owed net profits for the month of January 2007, Bowman's

7

entitlement depends on whether there were any net profits to distribute upon Bowman's departure. Defendants argue there were no net profits, in part because they received demands to repurchase approximately $536,000 in defaulting loans that defendants sold on the secondary mortgage market. The Court does not agree with defendants that this "loss" is clearly deductible as an expense from any profits that Bowman would otherwise receive. First, it is undisputed that defendants have not actually repurchased both mortgages. Second, it is undisputed that the repurchase demands were made after the termination of Bowman's employment relationship, such that defendants' obligation to pay Bowman's wages arose prior to defendants' knowledge of the repurchase demands. *See* Cal. Labor Code § 201. Third, even if defendants were to repurchase the mortgages, it may be too simplistic to say that they suffered a loss equal to the cost of the loans. Defendants would presumably own the loans and the rights associated with the loans, which presumably are backed by collateral. The loans would therefore have some value, which defendants do not take into account.[3]  While the Court is skeptical concerning the propriety of any such deductions, their propriety and amount remain disputed issues.

There are also disputed issues of material fact regarding the other sources of wages claimed by Bowman. It is not clear whether the marketing credits are wages and how the marketing credits are treated for accounting purposes. There are also disputed issues as to whether the reserves are wages and whether they are owed to Bowman or to PREMCO. As discussed above, the role of PREMCO and its effect on Bowman's ability to assert the protection of the California Labor Code is a disputed issue that the Court cannot resolve here. For these reasons, the Court DENIES Bowman's motion for summary adjudication as to waiting time penalties for unpaid wages.

---

[3]In addition, the Court has significant doubts whether it would be lawful for defendants to shift unforeseen costs arising out of loans originated in Bowman's branches to Bowman himself. *See Hudgins v. Neiman Marcus Group, Inc.*, 34 Cal. App. 4th 1109, 1123-24 (Cal. Ct. App. 1995) (explaining that an employer violates California law when it makes an employee an insurer of the employer's business losses); *Kerr's Catering Serv. v. Dept. of Indus. Relations*, 57 Cal. 2d 319, 327 (1962) (same). It was defendants, not Bowman, who sold these loans on the secondary market, and defendants do not allege that the repurchase demands were brought about by anything Bowman or his branches did.

8

### V. Breach of fiduciary duty

Finally, plaintiffs argue that summary adjudication should be entered on the question whether defendants violated a fiduciary duty owed to Bowman. Bowman's claim is based on the cash bond provisions of the California Labor Code, which provides that "[n]o employer shall demand, exact, or accept any cash bond from any employee" unless certain limited exceptions apply. Cal. Labor Code § 402. The code defines a cash bond as "[a]ny property put up by an employee, or applicant as part of the contract of employment, directly or indirectly . . . [regardless] whether the property is put up on a note or as a loan or an investment and regardless of the wording of the agreement under which it is put up." Cal. Labor Code § 406. If property is put up as a bond, the code requires that it "shall be held in trust . . . and not mingled with the property of the employer," and an employer who misappropriates or commingles the property may be held criminally liable for theft. Cal. Labor Code § 405.

Bowman argues that the cash bond provisions of the Labor Code, specifically the trust provisions of § 405, created a fiduciary relationship between the parties regarding the funds that were held by defendants as reserves or security deposits, alleged by Bowman to be $39,682.24. Bowman argues that defendants breached this duty by mingling these funds with defendants' funds, Cal. Labor Code § 405, by failing to return the funds with interest to Bowman, Cal. Labor Code § 404, and by failing to receive Bowman's permission prior to making any withdrawals, Cal. Labor Code § 403. Bowman alleges that the precise measure of damages stemming from these breaches is not yet known, but that he suffered at least some damage because defendants have not returned the funds.

Defendants argue that the reserves and security deposits were either unpaid wages or were a bond, but cannot be considered both, as Bowman argues. Assuming the funds are a cash bond, there is no dispute between the parties that a fiduciary duty existed and that defendants breached this duty by commingling the funds and generally by not following the requirements of the cash bond provisions of the Labor Code. The Court is inclined to agree with Bowman that the reserves and security deposits, if paid by him as a condition of his employment, may be considered a cash bond, and that defendants improperly handled the funds in violation of §§ 403, 404, and 405. That said, the Court does not find summary judgment appropriate at this time because, as defendants argue, it is undisputed that some of these funds were paid by or taken from PREMCO, not Bowman. Bowman argues that he was ultimately

1  the source of the funds; however, as discussed above, important factual and legal questions remain
2  regarding the role of PREMCO and how it affects Bowman's ability to assert claims under the Labor
3  Code. The Court therefore DENIES Bowman's motion for summary adjudication on his fiduciary duty
4  claim.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiffs' motion for summary adjudication on the issue of the applicability of the California Labor Code and DENIES plaintiffs' motion for summary adjudication on all other issues [Docket No. 72].

**IT IS SO ORDERED.**

Dated: August 4, 2008

SUSAN ILLSTON
United States District Judge